IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　*Plaintiff*,<br><br>v.<br><br>NEKIMA VALDEZ LEVY ARMSTRONG, *et al.*,<br><br>　　　　*Defendants*. | Case No. 0:26-cr-00025-LMP-DLM<br><br>**DEFENDANTS' MOTION TO STRIKE IRRELEVANT AND PREJUDICIAL SURPLUSAGE FROM THE INDICTMENT** |

## INTRODUCTION

An indictment is the formal charging instrument of the United States. It carries the authority of the grand jury and is read to the petit jury as the Government's official accusation. Rule 7 confines an indictment to the offenses defined by statute. It must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Its function is limited to alleging the statutory elements and the essential facts necessary to support them.

Defendants are charged under 18 U.S.C. §§ 241 and 248. Section 241 requires proof of an agreement formed with the specific intent to injure, oppress, threaten, or intimidate in the exercise of a federally protected right. Section 248 requires proof of force, a threat of force, or physical obstruction undertaken because a person was exercising religious freedom. Those are the elements the jury must decide.

The Indictment includes additional language that does not correspond to those elements. It asserts that children wondered whether their parents were "going to die," describes gestures as a "potential prelude to a mass shooting," characterizes the alleged

1

conduct as a "coordinated takeover-style attack," and repeatedly labels participants "agitators." None of these formulations defines a statutory element or is necessary to plead the charged offenses.

An indictment frames the case before any evidence is presented. When it invokes imagery of mass-casualty violence, imminent death, or insurrectionary conduct, it places before the jury allegations unrelated to the statutory elements. Rule 7 confines an indictment to the crimes returned by the grand jury; it does not authorize narrative characterization untethered to those elements.

The Government remains free to attempt to prove that Defendants entered into an agreement with the requisite intent or used force, threatened force, or physically obstructed persons exercising religious freedom. The charging instrument, however, must remain confined to the statutory offenses. Rule 7(d) permits the Court to strike language that exceeds that function.

**LEGAL STANDARD**

An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Its constitutional purposes are to inform the defendant of the charge and to permit a plea of double jeopardy. U.S. Const. amends. V, VI; *Hamling v. United States*, 418 U.S. 87, 117–18 (1974).

Rule 7(d) authorizes the Court to strike surplusage. Surplusage consists of allegations that are not necessary to establish a statutory element and that are irrelevant or unfairly prejudicial. *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962). Although motions to strike are disfavored, courts grant them where language is immaterial to the

2

charged offenses and carries a risk of prejudice. *United States v. Figueroa*, 900 F.2d 1211, 1220 (8th Cir. 1990).

Striking surplusage narrows an indictment; it does not broaden it. Removing unnecessary allegations does not offend the Fifth Amendment so long as the essential elements remain. *United States v. Miller*, 471 U.S. 130, 144–45 (1985). The constitutional concern is expansion of the grand jury's charge, not contraction. *Stirone v. United States*, 361 U.S. 212, 215–16 (1960).

## IDENTIFICATION OF CHALLENGED LANGUAGE

The challenged language appears in discrete phrases throughout the Indictment (Doc. 39). Defendants do not seek to strike factual allegations necessary to prove the elements of §§ 241 or 248. They seek to strike only the following terms and characterizations:

1. The phrase "potential prelude to a mass shooting," appearing at Page 8 ("threats of violence and a potential prelude to a mass shooting");

2. The allegation that "young children were left to wonder … if their parents were going to die," appearing at Page 2, ¶ 4;

3. The phrases "coordinated takeover-style attack" and "takeover-style attack," appearing at Page 2, ¶ 3; Page 4; Page 7; Page 8; and Page 9;

4. The term "agitators," appearing at Page 2, ¶ 3 ("a group of approximately 20–40 agitators"); Page 6 ("other agitators"); Page 7 ("first wave of agitators"); Page 9 ("other agitators"); and Page 11 ("other agitators");

5. The term "menacing," appearing at Page 8 and Page 9; and

6.  The term "traumatizing," appearing at Page 8 and Page 10.

Each of these phrases exceeds what is necessary to plead the statutory elements and carries independent prejudicial force unrelated to the offenses charged.

### **ARGUMENT**

### I. RULE 7(d) AUTHORIZES STRIKING LANGUAGE THAT IS IRRELEVANT TO THE STATUTORY ELEMENTS AND PREJUDICIAL

Rule 7(d) permits the Court to strike surplusage from an indictment. In this Circuit, striking is appropriate where the challenged language is not relevant to the offense charged and is prejudicial. *Dranow*, 307 F.2d at 558; *Figueroa*, 900 F.2d at 1220. Although motions to strike are disfavored, courts grant them when an indictment includes language that is unnecessary to the statutory elements and injects inflammatory or immaterial matter.

An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). A defendant may be tried only on the charges returned by the grand jury. *Stirone*, 361 U.S. at 215–16. The charging instrument is not a vehicle for rhetorical escalation or thematic framing beyond the elements returned by the grand jury.

The offenses charged here are 18 U.S.C. §§ 241 and 248. Section 241 requires proof of an agreement formed with specific intent to injure, oppress, threaten, or intimidate in the exercise of a protected right. Section 248 requires proof of force, threat of force, or physical obstruction because a person was exercising religious freedom. Those elements define the case.

4

The challenged language does not plead those elements. It does not define the alleged agreement. It does not clarify specific intent. It does not identify force, threat, or obstruction. Instead, it introduces allegations of imminent death, mass-casualty violence, and pejorative characterizations that go beyond what the statutes require.

Rule 7(d) does not permit that expansion. The challenged phrases exceed the limited charging function of an indictment and should be stricken.

### A. The Challenged Language Is Not Necessary to Plead §§ 241 or 248.

Sections 241 and 248 define liability in specific terms. Section 241 requires proof of an agreement formed with specific intent to injure, oppress, threaten, or intimidate in the exercise of a protected right. Section 248 requires proof of force, threat of force, or physical obstruction because a person was exercising religious freedom. Those elements control.

The challenged language does not plead those elements.

The Indictment alleges that children wondered whether their parents were "going to die" and that certain gestures were perceived as a "potential prelude to a mass shooting." Neither statute requires proof of imminent death, resemblance to a mass-casualty event, or the subjective fears of third parties. The Government must prove agreement, intent, force, threat, or obstruction. It need not prove that anyone feared a massacre.

The same is true of references to defendants as "agitators," descriptions of the events as a "coordinated takeover-style attack," and terms such as "menacing" and "traumatizing." These are not statutory terms. They do not define the alleged agreement.

5

They do not clarify specific intent. They do not describe force or obstruction. They characterize conduct rather than plead it.

If the Government believes these themes support intent or threat, it may attempt to prove that through admissible evidence at trial. The charging instrument itself, however, must remain confined to the essential facts constituting the offense. Allegations unnecessary to the elements may be treated as surplusage. *Miller*, 471 U.S. at 136–37. These phrases are unnecessary to charge §§ 241 and 248.

### B. The Language Carries Independent Prejudicial Force

To warrant striking under Rule 7(d), surplusage must also be prejudicial. That requirement is satisfied here.

An indictment is not a brief. It is the formal accusation of the United States. It is read to the jury at the outset of trial and frames the case before any evidence is presented. Language embedded in that document carries institutional weight distinct from advocacy. When the charging instrument employs terminology that exceeds the statutory elements, it shapes how the evidence will be understood.

Allegations invoking a "mass shooting" or asserting that children feared their parents would die introduce imagery of uncharged homicide-level violence. This case does not charge firearms offenses, attempted murder, or lethal conduct. Embedding massacre-level imagery in the indictment reframes a statutory conspiracy prosecution as something far more grave than the offenses Congress defined. That reframing risks inviting jurors to evaluate the evidence through an emotional narrative rather than through the elements of §§ 241 or 248.

The same is true of branding defendants as "agitators" or describing the events as a "coordinated takeover-style attack." Those characterizations do not track statutory language. They carry narrative and political connotations independent of the elements the Government must prove. When such terminology appears in the indictment itself, it risks shifting the jury's focus from whether the Government can prove agreement, specific intent, force, threat, or obstruction to whether the conduct fits a charged narrative of extremism or violent upheaval.

Rule 7(d) exists to prevent that shift. Striking the challenged phrases would confine the indictment to the offenses returned by the grand jury and ensure that trial proceeds on statutory elements rather than rhetorical amplification. Doing so would not alter any element or theory of prosecution. *Miller*, 471 U.S. at 144–45; *United States v. Nabors*, 762 F.2d 642, 651–52 (8th Cir. 1985).

**C. Application to Specific Allegations in the Indictment**

i.   *"Potential prelude to a mass shooting" (Count I – 18 U.S.C. § 241)*

Count I charges conspiracy against rights under § 241. That statute criminalizes agreement coupled with specific intent to injure, oppress, threaten, or intimidate in the exercise of protected rights. It does not criminalize mass-casualty violence. It does not require proof of firearms offenses. It does not ask whether conduct resembled a massacre.

Yet the Indictment alleges that the conduct was perceived as a "potential prelude to a mass shooting."

That phrase does not identify an agreement. It does not define specific intent. It does not track any statutory term. Instead, it reframes the alleged conspiracy through the

7

vocabulary of catastrophic violence. A "mass shooting" is not shorthand for intimidation. It is a distinct and extreme category of criminal conduct with its own statutory framework and penalties. Section 241 does not require the Government to prove that defendants' conduct foreshadowed such an event. It requires proof of agreement and specific intent. Nothing more.

Including this language in the charging instrument shifts the jury's frame of reference from the elements of § 241 to imagery of impending slaughter. Courts strike language that imports an uncharged and more serious criminal framework into an indictment. *See United States v. Carey*, 152 F. Supp. 2d 415, 430 (S.D.N.Y. 2001); *United States v. Poindexter*, 725 F. Supp. 13, 35 (D.D.C. 1989).

The Government can attempt to prove agreement and intent without invoking homicide-level violence. Because this phrase neither advances proof of an element nor reflects the offense returned by the grand jury, and because it loads the indictment with imagery untethered to § 241, it should be stricken.

### ii. *"Children were left wondering if their parents were going to die"*

The Indictment alleges that children were "left wondering if their parents were going to die" and incorporates that allegation into the charged counts. Sections 241 and 248 do not require proof of lethal force, fear of death, or conduct suggesting homicide. Neither statute measures guilt by the intensity of third-party fear.

This allegation does not describe the charged agreement. It does not define specific intent. Fear of death is not an element of either offense. The Government may attempt to

prove force or threat of force. It need not and may not redefine the case through imagery of imminent killing.

An assertion that children feared their parents would die necessarily implies the use or threat of deadly force. That is an aggravated level of violence not charged by the grand jury and not required by the statutes. Embedding that imagery in the indictment reframes a statutory conspiracy prosecution as one involving mortal peril.

Where language injects homicide-level implications into statutes that do not require them, and does so in the charging instrument itself, the prejudice is obvious. Because this allegation neither advances proof of an element nor reflects the offense returned, it should be stricken.

    iii.    *"Coordinated takeover-style attack" (Count I – 18 U.S.C. § 241)*

Count I characterizes the alleged conduct as a "coordinated takeover-style attack." Section 241 requires proof of agreement and specific intent. If the Government seeks to establish coordination, it must prove agreement. If it seeks to establish intimidation or threat, the statute provides those terms. "Takeover-style attack" does not.

The phrase does not clarify the alleged agreement or define the required intent. It replaces statutory language with a narrative construct. A "takeover" connotes forcible seizure of institutional control. An "attack" connotes organized violent aggression. Combined, the terminology suggests institutional assault far beyond what § 241 requires. Section 241 requires no proof of institutional seizure, armed aggression, or organized violent overthrow.

9

By embedding this language in the indictment, the Government reframes a conspiracy charge as something qualitatively more severe than the offense Congress defined. The jury's task is to decide whether the elements of § 241 are met. It is not to decide whether the conduct resembles a dramatic institutional assault.

Because this phrase neither advances proof of an element nor reflects the statutory offense returned by the grand jury, and because it materially elevates the perceived gravity of the charge, it should be stricken.

    iv.    *"Agitators" (Count I – 18 U.S.C. § 241)*

Count I repeatedly refers to defendants as "agitators." Section 241 criminalizes conduct undertaken with a defined mens rea. It does not criminalize status, disposition, or ideology. It does not criminalize being an "agitator."

"Agitator" is not a statutory term. It does not describe an agreement, identify conduct, or define intent. It is a label. The term carries evaluative weight suggesting political extremism or social disruption rather than the elements of § 241.

An indictment must allege what defendants did and what they intended. It may not substitute branding for elements. Repeatedly labeling defendants as "agitators" shifts the inquiry from whether the Government can prove agreement and specific intent to whether defendants fit a pejorative narrative.

Courts strike comparable terminology when it injects moral branding untethered to the elements of the offense. *See United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979); *Carey*, 152 F. Supp. 2d at 430. Because this term neither advances proof of agreement nor

10

clarifies intent, and because it carries independent prejudicial force unrelated to the statutory elements, it serves no legitimate charging function and should be stricken.

      v.     *"Menacing" (Count I – 18 U.S.C. § 241)*

Count I characterizes the alleged conduct as "menacing." Section 241 defines liability in precise terms: agreement and specific intent to injure, oppress, threaten, or intimidate. "Menacing" is not one of those terms.

Unlike "threaten" or "intimidate," which have legal meaning, "menacing" is undefined and impressionistic. It describes atmosphere, not elements. It invites a jury to equate conduct that appears severe or alarming with conduct that satisfies the specific intent requirement imposed by statute.

That substitution blurs the governing standard. Section 241 demands proof of specific intent, not proof that conduct seemed ominous.

Because "menacing" does not track the statutory language and risks lowering the legal threshold the Government must meet, it should be stricken.

      vi.    *"Traumatizing" (Count I – 18 U.S.C. § 241)*

Count I describes the alleged conduct as "traumatizing." Section 241 turns on agreement and specific intent. It does not measure guilt by emotional aftermath.

"Traumatizing" states a conclusion about impact. It does not describe conduct. It does not define intent. It reframes an intent-based offense as a harm-based moral evaluation.

The jury's task is to determine whether the statutory elements are satisfied. It is not to assess whether the alleged conduct caused trauma. Because this term neither advances

proof of agreement nor clarifies intent, and because it invites evaluation on an emotional rather than statutory basis, it should be stricken.

### D. Removal of the Challenged Language Would Not Alter the Elements or Theory of Prosecution.

Rule 7(d) permits a court to strike surplusage without affecting the validity of an indictment. *Dranow*, 307 F.2d at 558. The Supreme Court has made clear that unnecessary averments may be disregarded so long as the essential elements remain. *Miller*, 471 U.S. at 136. The Fifth Amendment is implicated only when an indictment is broadened beyond the charges returned by the grand jury. Narrowing it does not raise that concern. *Id.* at 144–45; *Stirone*, 361 U.S. at 215–16.

The grand jury charged violations of 18 U.S.C. §§ 241 and 248. Those statutes define the elements the Government must prove. The challenged phrases do not define those elements and are not necessary to allege agreement, specific intent, force, threat of force, or obstruction.

Striking this language would remove no statutory element and alter no theory of liability. The alleged agreement under § 241 would remain. The alleged force, threat of force, or physical obstruction under § 248 would remain. The Government would bear the same burden of proof at trial.

Removal would excise only terminology untethered to the elements. The jury would decide the same charges based on the same alleged conduct, but without language that extends beyond what the statutes require.

12

Because the indictment would be narrowed, not expanded, striking this language would not constitute a constructive amendment. It would ensure that this case is tried on the offenses the grand jury actually charged.

## CONCLUSION

Rule 7(d) confines an indictment to the statutory offenses charged. The phrases identified above do not plead elements of §§ 241 or 248. They add characterization and catastrophic imagery that the Government does not need to prove its case. Striking them would not remove a single statutory requirement or alter the theory of prosecution. It would simply require that this case be tried on the elements returned by the grand jury.

For those reasons, the Court should grant the motion.

Respectfully submitted,

Date:  February 26, 2026            s/ Sarah R. Gad

Sarah R. Gad, ID 0403328
Attorney | Founding Partner
Gad & Gad Law Offices LLP
8 E 25th Street
Minneapolis, MN 55404
Telephone: (612) 412-1710
Email: sarah@gadlawoffice.com
**Attorney for Ian Davis Austin**

Date:  February 26, 2026            s/ James S. Becker

James S. Becker, ID 0388222
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Telephone: (612) 664-5858
Email: james_becker@fd.org

**Attorney for William Scott Kelly**

13