UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. 26-25 (LMP/DLM)

|  |  |
|---|---|
| United States of America,<br><br>       Plaintiff,<br><br>  v.<br><br>4.  Don Renaldo Lemon,<br>8.  Georgia Ellyse Fort, and<br>12. Michael Walker Beute,<br><br>       Defendants. | **DON LEMON, GEORGIA FORT,<br>and MICHAEL BEUTE'S JOINT<br>RESPONSE TO GOVERNMENT'S<br>MOTION TO EXTEND THE<br>DISCOVERY DEADLINE** |

Defendants Don Renaldo Lemon, Georgia Ellyse Fort, and Michael Walker Beute, through counsel, oppose the government's motion for extension of the discovery deadline. Dkt. #391. As explained below, there are no proper grounds for allowing the government to continue to delay and evade its obligation to produce discovery to the defendants (and certainly to the original defendants) charged in this case.

## I.   Background

On January 18, 2026, a group of individuals protested at the Cities Church in St. Paul, Minnesota. Several journalists, including Don Lemon and Georgia Fort, reported from the scene during the protest.

In the wake of the protest, President Trump and senior Department of Justice officials made incendiary statements about the protest and publicly demanded charges against Mr. Lemon and others.

1

On January 20, 2026, the government presented a complaint seeking to charge Mr. Lemon, Ms. Fort, and others with violating the FACE Act and conspiracy. *See* Case No. 26-mj-40 (LMP/DLM), Dkt. #23 (Jan. 20, 2026). This Court found there was no probable cause to charge Mr. Lemon and Ms. Fort.

The following day, January 21, the government asked the Chief Judge to conduct an expedited review of this Court's determination that no probable cause existed to charge Mr. Lemon and Ms. Fort. *See In re United States of America*, No. 26-01135, Emergency Pet. for Writ of Mandamus ("Pet.") at 4 (8th Cir. Jan. 22, 2026). The following day, after the Chief Judge indicated he could not meet the government's expedited timeline, the government filed an emergency petition for writ of mandamus with the Eighth Circuit Court of Appeals and requested a ruling by the next day.[1]

When the Eighth Circuit refused to issue a writ of mandamus, on January 29, the government rushed to the grand jury to indict Ms. Fort, Mr. Lemon, and seven other individuals.

On February 17, the government moved to designate the case as complex and for a 90-day extension of the deadline to produce discovery to the defendants. On February 23, the court denied the complex case designation but granted the

---

[1]    The government did not inform the Chief Judge prior to filing the petition for writ of mandamus. When the Eighth Circuit asked the Chief Judge to address the petition, he wrote a letter explaining that he agreed that no probable caused existed against Ms. Fort or Mr. Lemon. Second Letter from Chief Judge Schiltz to Chief Judge Colloton at 1 (Jan. 23, 2026) ("The government lumps all eight protestors together and says things that are true of some but not all of them. Two of the five protestors were not protestors at all; instead, they were a journalist and his producer. There is no evidence that those two engaged in any criminal behavior or conspiracy to do so.").

government a 30-day continuance of the discovery deadlines and ordered the government to produce its initial discovery by March 26.

On February 27, the government unsealed a superseding indictment adding an additional 30 defendants, including Michael Beute, who was present on January 18 not as a protestor but in his capacity as videographer for *The Don Lemon Show*.

During a meet and confer with Mr. Lemon's counsel on March 9, the prosecutors stated that the government intended to produce its first round of discovery in advance of the March 26 deadline. But as of today, the government has not produced any evidence to the defense.

On March 18, in response to the superseding indictment, the Court *sua sponte* designated this case complex, amended the case schedule, and excluded 26 days from the speedy-trial clock. Dkt. #390. In its order, the Court specifically left the government's March 26 discovery deadline in place, however. *Id*.

On the heels of the Court's order, later that same day, the government moved the Court to exclude an additional 64 days from the speedy-trial calculation and grant it 90 additional days to produce discovery based on the addition of new defendants and further investigation.

As set forth below, the Court should deny the government's request.

## II.    The government should not be allowed to further delay its discovery obligations

Despite its prior representation that it would produce discovery in advance of the March 26 deadline, the government now moves for a 90-day extension of its discovery deadline. In support of its request, the government says it cannot meet the

current discovery deadline because it has gathered additional discovery while investigating the case after Mr. Lemon and Ms. Fort were indicted.

The government's motion should be denied. The fact that the government decided to conduct its investigation only after charging the case is not grounds for relieving the government of its obligation to produce discovery to the defendants. The defendants are entitled to discovery so they can defend themselves against these charges. This is the core of due process.

The fact that the government is continuing to interview church congregants and other witnesses is not grounds to delay the deadline either. The government chose to charge Mr. Lemon and Ms. Fort nearly two months ago. When a federal magistrate judge refused to sign the government's complaint, it chose to appeal that decision to the Chief District Court Judge. When the Chief Judge refused to sign the complaint, the government chose to take the case to the Eighth Circuit Court of Appeals. Every step of the way, the courts have expressed confusion about the government's rush and skepticism about the factual basis for the charges. Nevertheless, the government doubled-down. The government even refused Mr. Lemon's offer to self-surrender and insisted on arresting him in Los Angeles. Having rushed to charge and make a public spectacle of this case, the government cannot avoid its discovery obligations now on the grounds that its investigation is purportedly ongoing.[2]

---

[2]    The government also notes that it "recently identified *another co-conspirator*." Dkt. #391 at 3 (emphasis in original). While the government has devoted considerable resources to identifying other individuals present during the protest, those efforts do not relieve the government of its obligation to produce discovery and provide due process to those individuals

The government made its choice, now it must live with it.

The government's claim that it is unable to produce discovery in a timely fashion is also perplexing. The government explains that, while it had originally estimated it had 2,000 pages of documents to be produced, it now believes it will be producing approximately 3,500 to 4,000 pages of discovery. Dkt. #391 at 5. Simply put, 4,000 pages is not a lot of discovery. While the Court granted the government's motion to designate this case as complex due to the number of defendants, it correctly refused to grant an extended delay for the discovery production.[3] This case is complex insofar as there are 39 defendants; the discovery is notable only insofar as there is so little of it.[4]

Based on recent experience and knowledge, the defense estimates that the process of uploading 4,000 pages or 300 reports into Everlaw could be accomplished

---

it already charged in this case. If the government is struggling to meet the discovery deadlines imposed by the Court with respect to the already-charged defendants, it might consider re-directing its resources (including some of the seven prosecutors now assigned to the case) to meeting its constitutional, statutory, and court-ordered discovery obligations. The fact that the government has not chosen to do so is not grounds for relieving it of its duties.

[3]    There is no reason why, at a minimum, the government should not be obligated to produce discovery to the nine originally charged defendants by the March 24 deadline.

[4]    Other recent cases designated complex in the District of Minnesota have involved millions of pages of discovery. *See, e.g.*, *United States v. Aimee Marie Bock, et al.*, 22 CR 223 (NEB/DTS), Dkt. #95 (granting complex case designation in case involving $250 million fraud scheme where discovery included more than 600 grand jury subpoenas, financial records from hundreds of bank accounts, searches of more than 380 digital devices, and more than 250,000 emails), *United States v. Russell Jason Rahm, et al.*, 20 CR 232 (JRT/JFD), Dkt. #102 (granting complex case designation in case involving "millions of pages of investigative materials, the returns from more than 100 search warrants and 600 grand jury subpoenas, the seizure of approximately 600 electronic devices, and substantial audio and electronic surveillance materials").

in a matter of hours, if that. Indeed, the discovery is of such a low volume that it could be uploaded to a thumb drive and simply handed to the defense.

Administrative complexities or challenges likewise do not justify further delays in providing discovery. As an initial matter, those challenges are of the government's own making. Dkt. #391 at 7–8.  But to the extent the government claims that it needs months to organize this volume of materials or prepare its discovery for the defense's benefit, the defense can alleviate the government of that burden. It is happy to accept the government's discovery without organization—disorganized discovery is better than no discovery. To the extent the government claims additional time is needed because its investigation is not yet complete, the government can produce additional material it generates on a rolling basis (and, as the Court is well aware, rolling production and ongoing investigation are common features in any prosecution). In the meantime, the government cannot continue to escape its current discovery obligations under the guise of continuing to investigate or charging more defendants.

To put it bluntly, the government's desire to delay its discovery obligations is a predictable result of its decision to charge first, investigate later. But the government does not have a constitutional or statutory right to withhold discovery until it has completed its investigation. The defendants, in contrast, have a constitutional, statutory, and court-ordered right to obtain the discovery necessary to defend themselves against the current charges. For this reason, the Court should deny the government's motion to further delay their duty to produce discovery.

Finally, defendants object to continued exclusion of time under the Speedy Trial Act based on the government's decision to charge an additional 30 defendants on February 26. Mr. Lemon and Ms. Fort were initially charged in January and have the right to defend themselves in a timely fashion under the Speedy Trial Act.

## III. Conclusion

For the reasons set forth above, the government's motion should be denied.

Dated: March 20, 2026                                       Respectfully submitted,

/s/ *Abbe David Lowell*                                      /s/ *Matthew S. Ebert*
Abbe David Lowell (admitted pro hac vice)        Matthew S. Ebert
David A. Kolansky (admitted pro hac vice)         Leita Walker
Isabella M. Oishi (admitted pro hac vice)          Isabella Salomão Nascimento
LOWELL & ASSOCIATES, PLLC                       BALLARD SPAHR LLP
1250 H Street NW, Suite 250                          2000 IDS Center
Washington, DC 20005                                  80 South 8th Street
Tel: 202-964-6110                                         Minneapolis, MN 55402
Fax: 202-964-6116                                        Tel: (612) 371-3281
ALowellpublicoutreach@lowellandassociates.com  ebertm@ballardspahr.com
DKolansky@lowellandassociates.com                walkerl@ballardspahr.com
IOishi@lowellandassociates.com                      salomaonascimentoi@ballardspahr.com


/s/ *Joseph H. Thompson*                             Kevin C. Riach
Joseph H. Thompson                                    THE LAW FIRM OF KEVIN C. RIACH,
THOMPSON JACOBS PLLC                           PLLC
222 N. Second Street, Suite 220                     125 Main St. SE, Suite 339
Minneapolis, MN 55401                               Minneapolis, MN 55412
Tel: (612) 416-3322                                     Tel: (612) 203-8555
joe@thompsonjacobs.com                             kevin@riachdefense.com


*Counsel for Don R. Lemon*                          *Counsel for Georgia Ellyse Fort*

/s/ *William Mauzy*
William Mauzy
Mauzy Law Office
650 Third Avenue South Suite 260
Minneapolis, MN 55402
wmauzy@mauzylawfirm.com

*Counsel for Michael Walker Beute*