| | |
|---|---|
| United States of America, | No. 26-CR-00025 (LMP/DLM) |
| *Plaintiff*, | |
| v. | **OPPOSING DEFENDANTS' BRIEF OPPOSING GOVERNMENT'S MOTION FOR EXTENSION OF (1) EXCLUDABLE TIME FOR COMPLEX CASE UNDER THE SPEEDY TRIAL ACT, AND (2) EXTENSION OF THE DISCOVERY DISCLOSURE DEADLINE** |
| Nekima Levy Armstrong, *et al.* | |
| *Defendants*. | |

## <u>INTRODUCTION</u>

This Court recognized nearly a month ago that—although this case may involve novel and important legal issues—it is not "particularly complex." (Doc. 140 at 4.) All the defendants have been charged with the same two offenses related to a single incident lasting approximately one hour at a single location. Despite the confined nature of the charges and allegations, the Government seeks a collective 120 days to be excluded from the Speedy Trial Act calculations to make its initial discovery disclosures. This extension is untethered to the reality of how long it should take to review and redact a couple thousand pages of documents. It is also untethered to practices in other cases in this District involving a similar number of defendants and millions more pages of discovery.

The Government's latest attempt to extend its disclosure deadlines and stop the Speedy Trial clock is full of rehashed arguments and short on the specifics that

would show that a 90-day continuance serves the ends of justice. Because the Government has not made a sufficient ends-of-justice showing here, the Opposing Defendants[1] request that the Government's renewed motion be denied. Alternatively, if any limited adjustment of the disclosure deadline is ordered, it should be narrowly tailored and confined to the minimum time necessary so that the interests of the public and the defendants can be served by a speedy trial.

## **FACTUAL BACKGROUND**

**A.      The Government's First Exclusion Motion.**

The Government filed a Complaint in this matter on January 20, 2026. (Doc. 23.) Nine days later, a grand jury returned an Indictment charging nine defendants with conspiracy against rights of religious freedom in violation of 18 U.S.C. § 241 and interference with the First Amendment right of religious freedom at a place of religious worship in violation of 18 U.S.C. § 248(a)(2). (Doc. 39.) The final arraignments on the initial Indictment occurred on February 17, 2026. (Docs. 128,

---

[1] The "Opposing Defendants" are the following parties with their names spelled as they appear in the Superseding Indictment: Nekima Valdez Levy Armstrong (#1), Chauntyll Louisa Allen (#2), William Scott Kelly (#3), Jerome Deangelo Richardson (#5), Trahern Jeen Crews (#7), Ian Davis Austin (#9), Aziza Mohammed Aboud (#10), Ezra Chaim Pye Blumenfeld (#13), Monique Cassandra Cullars-Doty (#16), Tiffany Lynn Dunlop (#17), Andrew Jared Edwards (#18), Rachel Rose Goligoski (#19), Amelia Hansa (#20), Ariel Hauptman (#21), Krista Erin Hogan (#22), Danielle Andrea Matthias (#24), Catie Anne Michaelson (#25), Eric Ryan Michaelson (#26), David Anthony Okar (#27), Jarmel James Perry (#28), Cheryl Ann Persigehl (#29), Katherine Elizabeth Shaw (#32), Charles Lee Swenson (#34), Robyn Elise Swenson (#35), Thomas Matthew Tier (#36), John Donald Vergin (#38), and Mark David Weinfurter (#39).

129.) That same day, the Court issued an Arraignment Order setting the case schedule. (Doc. 130.) Consistent with Local Rule 12.1(a)(2), the Court ordered the Government to make its Rule 16(a) disclosures within 7 days, by February 24, 2026. (*Id.* at 1.)

Instead of making those discovery disclosures, the Government requested that the Court designate this case complex under the Speedy Trial Act and extend the deadline for pretrial motions by 90 days ("First Exclusion Motion"). (Doc. 131.) The Government alternatively requested that the Court extend its initial discovery disclosure deadline by 30 days. (*Id.*) In support, the Government invoked a "large" volume of discovery, representing that the discovery would include:

- "approximately 2,000 pages of reports and various other documents"

- "multiple videos of the incident"

- "BWC videos of St. Paul PD interviews of some church members/victims"

- "photographs, and data from cellphones and social media"

(Doc. 131 at 4.) The Government noted that the process of reviewing and producing discovery would "be prolonged by the Government's use of a 'filter team' to conduct initial reviews and privilege screens of seized data." (*Id.* at 4–5.)

The Court denied the Government's request for a complex-case designation without prejudice. (Doc. 140.) The Court observed that the "case involves nine defendants, all charged with the same offenses arising out of the same discrete course

of conduct," which "is not particularly complex." (*Id.* at 5.) The Court did, however, grant a 30-day extension of time for the Government to make its initial Rule 16(a) disclosures, through March 26, 2026. (*Id.* at 6.) The Court excluded the time between March 10, 2026 (the prior motions deadline), and April 9, 2026 (the new motions deadline), from the case's Speedy Trial Act computations. (*Id.* at 7.)

**B.      The Government's Second Exclusion Motion.**

Three days after the Court's Order, the Government filed a Superseding Indictment that added the 30 codefendants already referenced in the First Exclusion Motion. (Doc. 144.) The Superseding Indictment involves the same two charged offenses arising from the same discrete incident. (*Id.*) Given the addition of 30 parties, the Court issued an amended Pretrial Scheduling Order that deemed the case "complex within the meaning of 18 U.S.C. § 3161(h)(7)(B)(ii)." (Doc. 390 at 2.) The amended Pretrial Scheduling Order retained the Government's March 26 disclosure deadline. (*Id.*) However, the Court directed the parties to meet and confer regarding the post-disclosure deadlines and extended the excludable time under the Speedy Trial Act by four days, through April 13, 2026. (*Id.*)

The Government now moves for an additional "90-day extension of the deadline for the Government's initial discovery disclosures," and a commensurate amount of time to be excluded under the Speedy Trial Act ("Second Exclusion Motion"). (Doc. 391 at 1.) The hyperbolic reason, according to the Government, is that the "amount of discovery has *ballooned* in the past month." (Doc. 390 at 2.) When it

comes to specifics, however, this voluminous discovery consists of around "3,500-4,000 pages" of documents. (Doc. 391 at 5.) Some of these are "pages for the applications and related documents" for the approximately 40 search warrants agents have obtained. (*Id.*) Others come from approximately "380 reports, to include reports from St. Paul PD" and from recent interviews of some of the congregants present at the Church. (*Id.*) There is also digital evidence, including BWC and other video evidence, as anticipated in the Government's First Exclusion Motion. (*Id.* at 6.)

Although this Court previously stated that "rolling discovery appears consistent with its interpretation of the government's discovery obligations" (Doc. 140 at 5), the Government has not yet made a single disclosure to Opposing Defendants.

## ARGUMENT

### I. The Speedy Trial Act's ends-of-justice exception is limited.

The right to a speedy trial has both constitutional and statutory roots. The Sixth Amendment guarantees defendants "the right to a speedy and public trial." U.S. Const. amend. VI. Congress enacted the Speedy Trial Act of 1974 "to solve some of the problems inherent in enforcing" this constitutional guarantee. *United States v. Pollock*, 726 F.2d 1456, 1459 (9th Cir. 1984). The Speedy Trial Act mandates that a defendant receive a trial within 70 days of indictment or initial appearance. 18 U.S.C. § 3161(c)(1). This 70-day timing requirement is "unequivocal." *Zedner v. United States*, 547 U.S. 489, 507 (2006).

A limited number of enumerated events—such as the filing of pretrial motions—stop the Speedy Trial clock. 18 U.S.C. § 3161(h)(1)(D). Aside from these specific events, the Court has discretion to exclude time under the Speedy Trial Act in only one circumstance—when doing so serves the "ends of justice" such that a continuance "outweigh[s] the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

The Court's discretionary authority to grant an ends-of-justice continuance is limited in two meaningful ways.

First, the Speedy Trial Act specifies that no ends-of-justice "continuance . . . shall be granted" as a result of "lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." 18 U.S.C. § 3161(h)(7)(C). Courts accordingly deny ends-of-justice continuances or other relief from the Speedy Trial Act when the request for relief reflects nothing more than a failure on the Government's part to adequately prepare its case before indictment and trial. For example, in *United States v. Pitts*, the Government failed to complete a DNA test on evidence in its possession and sought to dismiss the case without prejudice before trial so it could have time to do so. 331 F.R.D. 199, 204 (D.D.C. 2019). The district court rejected this effort and dismissed the case *with* prejudice, explaining that the Speedy Trial Act cannot be avoided so that the government can "salvage" a prosecution "when the case is in a better posture for the government." *Id.* Similarly, in *United States v. Pikus*, the Second Circuit vacated a

conviction under the Speedy Trial Act because the district court had failed to hold "the Government accountable for its discovery obligations." 39 F.4th 39, 58 (2d Cir. 2022).

Second, the Speedy Trial Act requires judges to make specific findings to support an ends-of-justice continuance. The Court "'must set forth, in the record of the case, . . . its reasons for finding that the ends of justice are served and they outweigh other interests,'" including the interests of the public and the defendant in a speedy trial. *Id.* at 52 (quoting *Zedner*, 547 U.S. at 506). Any ends-of-justice exclusion accordingly must be supported by contemporaneous, on-the-record findings that are specific to the case and that demonstrate necessity, not convenience, and certainly not a lack of diligence on the Government's part. *See Zedner*, 547 U.S. at 506–07. The requirement of on-the-record findings is intended to mitigate the "risk of granting continuances for the wrong purposes" and the potential "overuse of this narrow [ends-of-justice] exception." *United States v. Williams*, 511 F.3d 1044, 1057 (10th Cir. 2007).

## II. The Government has not shown that a 90-day extension serves the ends of justice.

### A. The fundamental nature of the case remains unchanged from the First Exclusion Motion.

The Government's Second Exclusion Motion largely repackages arguments that have already been presented to the Court. As this Court has previously recognized, this case involves defendants "all charged with the same offenses arising out of the same discrete course of conduct." (Doc. 140 at 4.) Although the Government has

added defendants through the Superseding Indictment, it has not expanded the scope of the charged conduct. As before, all defendants are charged with the same two offenses arising out of the same time-limited event. (*See* Doc. 144.)

A side-by-side comparison of the Government's two exclusion motions underscores that the scope of the evidence and available (or anticipated) discovery is largely identical:

| First Exclusion Motion (Doc. 131) | Second Exclusion Motion (Doc. 391) |
| --- | --- |
| Identifying "40 individuals" as "participants in the charged conspiracy" | Noting that the Superseding Indictment "charges 39 defendants with two counts each" |
| Stating that "approximately 300 congregants and church staff were present at Cities Church and witnessed the events at issue" | Stating that "there were approximately 300-400 congregants and church staff at the church" |
| Estimating "approximately 2,000 pages of reports and various other documents" | Estimating "approximately 3,500-4,000 pages" of documents |
| Identifying "data from cellphones and social media," review of which "will be prolonged by the Government's use of a 'filter team'" | Noting the seizure of "20 cellphones," ten of which have been forensically imaged to date and some of which require "the use of a 'filter team'" |
| Identifying "multiple videos of the incident" plus "BWC videos of St. Paul PD interviews of some church members/victims" | Identifying approximately "140 BWC videos" and "45 videos from other sources" |
| Stating that the "investigation remains active" | Stating that "[t]he Government has continued its investigation" |

The Government does not identify a single item of discovery in its Second Exclusion Motion that was not already anticipated in its First Exclusion Motion.

Opposing Defendants acknowledge that the case has modestly expanded since the First Exclusion Motion, both in terms of number of defendants and discovery. But these changes are a result of the Government's own tactical choices. The nearly "40 individuals" referenced in the First Exclusion Motion have now been indicted, instead of simply referenced in the context of discovery. The volume of discovery has moderately increased because of the Government's choice to continue its investigation after charging. (Doc. 391 at 4.) This expansion in defendants and discovery follows the Government's strategic decision to supersede the Indictment and continue its investigation after charging. The Speedy Trial Act does not permit the Government to create additional workload for itself and then invoke that workload as a basis to suspend the Speedy Trial clock. Quite the opposite, the Act is designed to encourage the Government to be prepared to make its disclosures and try its case at the time of charging, since it knows a clock will be running from day one.

The bottom line is that the circumstances have not meaningfully changed since this Court ruled on the Government's First Exclusion Motion. As the Court recognized nearly one month ago, the Government's disclosures "will include thousands of pages of reports, and a significant amount of electronic media." (Doc. 140 at 5.) The disclosures will also include "information derived from searches of electronic devices, some of which will need to be reviewed by a filter team first." (*Id.*) This case may now

be deemed complex, but "complexity *per se* is not an excuse for indefinite delay or a means of circumventing the requirements of the Speedy Trial Act." *Pikus*, 39 F.4th at 54 (quotation and citation omitted). The same 30-day extension that the Court previously granted remains as reasonable today as it was one month ago.[2]

**B.      The requested 90-day extension would be grossly excessive.**

Even if the Court were to look at the Second Exclusion Motion in isolation, the Government's stated bases for an extension do not justify the broad 90-day (collectively, 120-day) exclusion it seeks. Neither the volume of discovery nor the form of productions can justify such a lengthy and sweeping extension.

The volume of discovery is in the ordinary bounds of federal criminal litigation. Although the BWC videos are apparently lengthy, it is not unusual for a federal criminal case to include a large volume of video footage or audio recordings. Moreover, these are not complex videos showing "circumstantial evidence obtained from electronic surveillance of" a notorious criminal enterprise. *United States v. Gambino*, 59 F.3d 353, 363 (2d Cir. 1995). The videos are footage of, and interviews concerning, a single, time-limited event. Nor is 4,000 pages of documents a substantially large number of documents to review, redact, and produce, especially since many of these pages are likely search warrants with repetitive dissertations of

---

[2] The Government notes that additional discovery is still being received. But nothing in its submission explains why discovery cannot proceed on a rolling basis while the case advances under the existing schedule. That is the ordinary course and eliminates the need for any blanket exclusion. *See* Fed. R. Crim. P. 16(c).

mundane facts. Electronic hosting platforms, searchable productions, redaction workflows, and privilege screening are standard components of modern federal practice. They are not indicators of exceptional complexity. Even in the unlikely event that each referenced "page" were a separate document and making conservative review-time assumptions, a small review team could easily review and redact that small number of documents in Everlaw in a week or less. (*See* Declaration of Virginia McCalmont, submitted contemporaneously with this brief.)

That leaves, then, the apparent logistics of making the disclosure in the first place, which the Government estimates to be 7–8 weeks using the standard processes followed by the U.S. Attorney's Office for the District of Minnesota. This focus on standard Minnesota practice is puzzling from the outset since almost every attorney who has appeared in the case works in the Civil Rights Division of Main Justice, which is leading the prosecution, or is on loan from the United States Military. Main Justice is fully capable of bringing and litigating its own cases. In any event, the Government's showing confirms that the requested exclusion is driven by a preference to produce discovery in a particular format—not by any inability to comply with the Act. The Speedy Trial Act does not permit the Government to suspend the statutory clock in order to organize, curate, and package discovery to its preferred standard. Discovery can and should proceed on a rolling basis, as it routinely does in federal cases, without halting the progression of the case.

Experiences in past cases in this District involving a similar number of defendants and far more discovery also belie the argument that a collective 120 days for initial disclosures is necessary here. Take, for example, the discovery disclosures in *United States v. Rahm et al.*, No. 20-232, a case involving even more defendants (there, 43 in a single Indictment). The Indictment was issued in late October 2020 and unsealed on October 27, 2020. The discovery included hundreds of subpoenas, millions of pages of documents, and over 600 seized electronic devices. *See* Gov't Mot. to Designate Case as Complex Under the Speedy Trial Act, ECF 72, *United States v. Rahm*, No. 20-CR-232 (D. Minn. Oct. 27, 2020). This Court deemed the case complex but nonetheless ordered the Government to make all Rule 16(a) disclosures by January 15, 2021—far less time than the Government collectively seeks here between its First and Second Exclusion Motions. Corrected Scheduling Order, ECF 376, *United States v. Rahm*, No. 20–CR-232 (D. Minn. Nov. 20, 2020). The Government did so. It served its initial Rule 16 discovery disclosures—totaling millions of pages of documents and hundreds of audio recordings—in two tranches, the latter of which it served on January 13, 2021. *See* Exhibit B, ECF 2231-2, *United States v. Rahm*, No. 20-CR-232 (D. Minn. Mar. 4, 2024).

The Government's requested extension here for a fraction of comparative discovery is not justified and does not serve the ends of justice. In *Rahm*, the Government made all of its initial disclosures—totaling in the millions of pages of documents for a similar number of defendants—***78 days*** after the Indictment had

been unsealed. Here, the Complaint was filed on January 20, 2026, the initial Indictment issued on January 29, 2026, and the Superseding Indictment issued on February 26, 2026. The Government seeks an extension until June 24, 2026 (90 days from March 26) to make its initial discovery disclosures. That is **155 days** after the Complaint issued, **146 days** after the Indictment issued, and **118 days** after the Superseding Indictment issued. A general reference to "typical[]" disclosure practice cannot justify the requested extension. (Doc. 391 at 7.)

The Government's ability to disclose millions of documents in half the time in another matter in this District underscores that the requested exclusion is not necessary. And on the other side of the ledger, unnecessarily lengthy criminal proceedings cause real harm to defendants. As Congress itself recognized when it passed the Speedy Trial Act, there are "a number of problems—such as disruption of family life, loss of employment, anxiety, suspicion, and public obloquy—that vex an individual who is forced to await trial for long periods of time." *Pollock*, 726 F.2d at 1460. There is also "a strong public interest in speedy justice," including to eliminate unnecessary "burdens on the criminal justice system." *Id.* The Speedy Trial Act serves these important interests.

Congress's concerns are on display in this case. The Government has brought two federal felony charges each carrying maximum sentences of ten years against 39 defendants who were participating in a non-violent political protest. Some defendants were even present only in journalistic capacities. Few if any of the

defendants have prior criminal records. They could not have reasonably anticipated that their actions would result in such an unprecedented federal prosecution. Meanwhile, their lives have been upended not only by the common trauma and disruption of federal prosecutions, but also by the Government's aggressive efforts to bring national publicity to this case for political purposes. The Government's irregular actions have included arresting and shackling non-violent defendants who would have appeared voluntarily, posting images of those arrests on social media, and even altering the image of one defendant to make it appear as if she was crying during her arrest (she was not).[3] Under these circumstances, the defendants have a particularly strong interest in the expeditious resolution of their cases so that they have a chance to clear their good names. At the same time, it is reasonable to expect that the Government's political decision to criminalize peaceful protests be accompanied by respect for the Opposing Defendants' interests in a speedy trial.

Opposing Defendants request that the Court deny the Government's motion in full. But to the extent the Court grants it, any ends-of-justice exclusion should be narrowly tailored, confined to the minimum period reasonably required, and nowhere near 90 days. On this record, the Government has not shown why a 90-day exclusion is necessary. It has shown only that additional time would be useful, which

---

[3] Monica Alba, Jennifer Jett & Rebecca Shabad, *White House Shares an Altered Photo of Arrested Minnesota Protestor Nekima Levy Armstrong*, NBC News (Jan. 23, 2026), https://www.nbcnews.com/politics/white-house/white-house-shares-altered-photo-arrested-minnesota-protester-nekima-l-rcna255595.

is not enough. To the extent the Government raises concerns about defendants' ability to review discovery and motion practice, those concerns can be addressed through targeted adjustments to specific deadlines as they arise. They do not justify a blanket 90-day exclusion of Speedy Trial time for the Government's own disclosures.

## CONCLUSION

Opposing Defendants respectfully request that the Government's Second Extension Motion be denied and that the Government's initial Rule 16(a) discovery disclosures remain due on March 26, 2026.

Dated: March 20, 2026

LAW OFFICE OF JORDAN S. KUSHNER

s/ *Jordan S. Kushner*
Jordan S. Kushner, Reg. No. 219307
431 South 7th Street, Suite 2446
Minneapolis, MN 55415
(612) 288-0545
jskushner@gmail.com

*Attorneys for Defendant Nekima Levy Armstrong (1)*

THE JAB FIRM

s/ *Jill A. Brisbois*
Jill A. Brisbois, Reg. No. 0345477
150 South 5th Street, Suite 1850
Minneapolis, MN 55402
(651) 209-7797
jill@thejabfirm.com

*Attorneys for Defendant Chauntyll Louisa Allen (2)*

OFFICE OF THE FEDERAL DEFENDER

s/ *James S. Becker*
James S. Becker, Reg. No. 388222
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5858
James_becker@fd.org

*Attorneys for Defendant William Scott Kelly (3)*

BIRRELL LAW FIRM, PLLC

s/ *Ian S. Birrell*
Ian S. Birrell, Reg. No. 0396379
Andrew S. Birrell, Reg. No. 133760
333 South 7th Street, Suite 2350
Minneapolis, MN 55402
(952) 356-2393
ian@birrell.law
andy@birrell.law

*Attorneys for Defendant Jerome Richardson (5)*

LAW OFFICES OF ROBERT D. RICHMAN, LLC

s/ *Robert D. Richman*
Robert D. Richman, Reg. No. 226142
P.O. Box 16643
St. Louis Park, MN 55416
(651) 278-4987
robert@rdrichmanlaw.com

*Attorneys for Defendant Trahern Jeen Crews (7)*

GAD & GAD LAW OFFICES LLP

s/ *Sarah R. Gad*
Sarah R. Gad, Reg. No. 0403328
8 E 25th Street
Minneapolis, MN 55402
(612) 512-1870
sarah@gadlawoffice.com

*Attorneys for Defendant Ian Davis Austin (9)*

DEVORE LAW OFFICE, P.A.

s/ *Kevin DeVore*
Kevin W. DeVore, Reg. No. 0267302
724 Bielenberg Drive, Ste 110
Woodbury, MN 55125
(651) 435-6500
kevin@devorelawoffice.com

*Attorneys for Defendant Ezra Chaim Pye Blumenfeld (13)*

MELVIN R. WELCH

s/ *Melvin R. Welch*
Melvin R. Welch, Reg. No. 0387750
Commerce at the Crossings Bldg
250 South Second Street, Suite 205
Minneapolis, MN 55401
(612) 741-3272
mel@melvinwelchlaw.com

*Attorneys for Defendant Tiffany Lynn Dunlap (17)*

KENNETH UBONG UDOIBOK, PA

s/ Kenneth U. Udoibok
Kenneth U. Udoibok, Reg. No. 0262523
Flour Exchange Building, Suite 5010
310 Fourth Ave S.
Minneapolis, MN 55415
(612) 808-6031
k@kenulaw.com

*Attorneys for Defendant Aziza M. Aboud (10)*

DE LEÓN & NESTOR, LLC

s/ *Bruce D. Nestor*
Bruce D. Nestor, Reg. No. 0318024
3547 Cedar Avenue South
Minneapolis, MN 55407
(612) 659-9019
nestor@denestlaw.com

*Attorneys for Defendant Monique Cullars-Doty (16)*

LAW OFFICE OF STEVEN J. WRIGHT, LLC

s/ Steven J. Wright
Steven J. Wright, Reg. No. 387336
331 Second Ave S, Suite 705
Minneapolis, MN 55401
(612) 669-8280
stevejameswright@gmail.com

*Attorneys for Defendant Andrew Edwards (18)*

CHARLES F. CLIPPERT

s/ *Charles F. Clippert*
Charles F. Clippert, Reg. No. 248848
101 East Fifth Street, Suite 1500
St. Paul, MN 55101
(651) 300-4109
charlie@clippertlaw.com

*Attorneys for Defendant Rachel Goligoski (19)*

FORSGREN FISHER McCALMONT DeMAREA TYSVER LLP

s/ *Caitlinrose H. Fisher*
Caitlinrose H. Fisher, Reg. No. 0398358
1500 Capella Tower
225 South 6th Street
Minneapolis, MN 55402
(612) 474-3300
cfisher@forsgrenfisher.com

*Attorneys for Defendant Ariel Hauptman (21)*

KOCH AND GARVIS, LLC

s/ *Andrew S. Garvis*
Andrew S. Garvis, Reg. No. 257989
3109 Hennepin Avenue South
Minneapolis, MN 55408
(612) 827-8101
andrew@uptownlawyer.com

*Attorneys for Defendant Danielle Andrea Matthias (24)*

THOMAS C. PLUNKETT

s/ *Thomas C. Plunkett*
Thomas C. Plunkett, Reg. No. 260162
332 Minnesota Street, Suite W1610
St. Paul, MN 55101
(651) 222-4357
tcp@tp4justice.com

*Attorneys for Defendant Amelia Hansa (20)*

LOTUS LEGAL PLLC

s/ *Caroline H. Brunkow*
Caroline H. Brunkow, Reg. No. 0398936
331 Second Ave South, Ste 420
Minneapolis, MN 55401
(612) 293-6963
cari@lotuslegalpllc.com

*Attorneys for Defendant Krista Erin Hogan (22)*

F. CLAYTON TYLER, P.A.

s/ *Karen Mohrlant*
Karen E. Mohrlant, Reg. No. 388093
331 Second Avenue South, Suite 230
Minneapolis, MN 55401
(612) 333-7309
kmohrlant@fctyler.com

*Attorneys for Defendant Catie Anne Michaelson (25)*

JOHNSON & GREENBERG PLLP

s/ *Lee R. Johnson*
Lee R. Johnson, Reg. No. 0189935
5775 Wayzata Boulevard, Suite 700
St. Louis Park, MN 55416
(952) 545-1621
lrjohnsonslp@gmail.com

*Attorneys for Defendant Eric Ryan Michaelson (26)*

LAW OFFICES OF THOMAS H. SHIAH, LTD.

s/ *Thomas H. Shiah*
Thomas H. Shiah, Reg. No. 100365
331 Second Avenue South, Ste 705
Minneapolis, MN 55401
(612) 338-0066
ths@tomshiah.com

*Attorneys for Defendant Jarmel Perry (28)*

ARNESON LAW OFFICE PLLC

s/ *Wyatt Arneson*
Wyatt Arneson, Reg. No. 0392071
1025 Grain Exchange Building
400 South 4th Street
Minneapolis, MN 55415
(612) 746-1188
wyatt@arnesonlawllc.com

*Attorneys for Defendant Katherine Shaw (32)*

LAW OFFICE OF ROBERT A. LENGELING, PLLC

s/ *Robert A. Lengeling*
Robert A. Lengeling, Reg. No. 304165
310 Fourth Avenue South, Suite 1050
Minneapolis, MN 55415
(612) 963-1555
robert@lengelinglaw.com

*Attorneys for Defendant David Okar (27)*

BEST & FLANAGAN LLP

s/ *Amy S. Conners*
Amy S. Conners, Reg. No. 0387375
60 South 6th Street, Suite 2700
Minneapolis, MN 55402
(612) 349-5665
aconners@bestlaw.com

*Attorneys for Defendant Cheryl Ann Persigehl (29)*

SIEBEN & COTTER, PLLC

s/ *Patrick L. Cotter*
Patrick L. Cotter, Reg. No. 0319120
105 Hardman Court, Suite 110
South St. Paul, MN 55075
(651) 455-1555
patrick@siebencotterlaw.com

*Attorneys for Defendant Charles Swenson (34)*

SAPIENTIA LAW GROUP, PLLC

s/ *Robin M. Wolpert*
Robin M. Wolpert, Reg. No. 0310219
120 South Sixth Street, Suite 100
Minneapolis, MN 55402
(612) 756-7100
robinw@sapientialaw.com

*Attorneys for Defendant Robyn Elise Swenson (35)*


LANGERT LAW, LLC

s/ *Maggie G. Langert*
Maggie G. Langert, Reg. No. 0308316
724 Bielenberg Drive #54
Woodbury, MN 55125
(612) 470-4810
maggie@langertlaw.com

*Attorneys for Defendant John Vergin (38)*

DORSEY & WHITNEY LLP

s/ *Meredith LaVine*
John Marti, Reg. No. 0388393
Meredith LaVine, Reg. No. 0506725
Ashley Repp, Reg. No. 0399661
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600
marti.john@dorsey.com
lavine.meredith@dorsey.com
repp.ashley@dorsey.com

*Attorneys for Defendant Thomas Matthew Tier (36)*


WOLD LAW

s/ *Peter B. Wold*
Peter B. Wold, Reg. No. 0118382
331 2nd Avenue South, Suite 705
Minneapolis, MN 55401
(612) 341-2525
pwold@wold-law.com

*Attorneys for Defendant Mark D. Weinfurter (39)*