UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

)
UNITED STATES OF AMERICA,            )         Criminal No.: 26-25 (LMP/DLM)
                                     )
          Plaintiff,                 )
                                     )         **MOTION FOR RELEASE OF**
     v.                              )         **GRAND JURY MATERIALS**
                                     )
SHANE RYAN BOLLMAN (14),             )
                                     )
          Defendant.                 )
_____)

Mr. Bollman, through counsel, hereby moves the Court for release of grand jury materials pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) based on his showing of a particularized need for the same. Mr. Bollman, to the extent necessary, moves the Court for leave to join the parallel motion of his co-defendants filed at Doc. No. 125. Mr. Bollman requests this matter be handled expeditiously, and that the Government be required to respond to this motion by Friday, March 27, 2026, which is the date for its response to Doc. 125, and other pending motions by Mr. Bollman.

FACTS

Mr. Bollman was charged in the superseding indictment in this case and will be arraigned tomorrow in the District of Minnesota, though he first appeared nearly a month ago after his initial arrest in the Central District of California.

Mr. Bollman is a credentialed photojournalist charged in the superseding indictment for allegedly taking photographs of a peaceful protest. Below are his redacted press credentials:

1



Mr. Bollman was present at the Cities Church protest on or about January 18, 2026, solely as a photojournalist. The videos[1] of the event speak for themselves, and clearly display Mr. Bollman silently photographing the peaceful protest with both SLR and cell phone cameras in his red jacket, apart from the protesters, alone on the right side of the video still below:



Mr. Bollman can be clearly seen throughout the videos made and posted online by others. It is apparent that he is not chanting, singing, marching, protesting, or impeding anyone. He simply stands silently, and photographs what is happening.

Furthermore, Mr. Bollman had never met any of his co-defendants prior to the day of the incident, and there is no information that he conspired with anyone, or shared a purpose with anyone. There is only information that he was present at the scene of a protest photographing it while carrying press credentials. He carried multiple cameras,

___

[1]  https://www.youtube.com/watch?v=v4ctuhv-cck at time stamp 00:46:00-00:48:31.

and can be seen moving out of the way of others to be polite, and to get a good shot. He can be seen in the photo below. He is again alone on the righthand side, holding multiple cameras, and taking photographs in his red jacket with his mouth closed:



After the protest, a complaint warrant for other journalists was rejected by a duty magistrate, and requests to force the Court to sign the warrant were rebuffed by the Chief Judge and the Eighth Circuit, all within this case file. *See* Doc. Nos. 7, 22, 33, and *In re United States*, No: 26-1135, 2026 WL 185713 (2026). The chief executive of the federal government then demanded[2] an indictment against journalists and protesters from this case, whom he viewed as political opponents, critics, and/or dissidents. This in turn

---

[2] *See Doc. No 125* at 6-8 for thorough factual discussion of the political pressure emanating from the executive branch to charge protesters and journalists alike.

resulted in a highly irregular series of events in the District of Minnesota, whereby career U.S. Attorneys refused, and outside lawyers were brought in from DOJ to do the chief executive's bidding here.[3]

An indictment was obtained. Doc. 39. Other journalist co-defendants filed a motion for release of grand jury transcripts. That motion is very thorough. *See* Doc. No. 125. A superseding indictment was subsequently obtained (Doc. 144), which included Mr. Bollman (14), defendant herein, a photojournalist. The indictment is noteworthy as to Mr. Bollman because it conspicuously fails to tie him to any of the alleged illegal actions or overt acts, other than being present at a meeting prior to the protest. *See* Doc. 144 at 8, Overt Act #13.

Mr. Bollman was subsequently arrested outside his home in Los Angeles and appeared in the Central District of California on February 27, 2026. Doc. 315. His arraignment is scheduled in the District of Minnesota for tomorrow. The government seized Mr. Bollman's photography equipment at the time of his arrest, and remains in possession of it. Bollman was provided no warrant, receipt, or other documentation the camera and equipment had been seized. However, the government, through counsel, has subsequently acknowledged that HSI is in possession of the equipment, which obviously contains *Brady* material.

Mr. Bollman sought out and was appointed counsel, the undersigned. Doc. 340. The government contacted counsel the next day, stated "the government will be producing

---

[3] See Doc. No. 125 at 8-9 for thorough factual discussion of the refusals, and case staffing.

discovery in the near future," and sought Mr. Bollman's position on complex designation. Mr. Bollman ultimately opposed the complex designation. The Court then designated the case complex. Doc. 390.

The government immediately filed a motion to exclude time and extend its discovery deadline by 90 days. Doc. 391. In its motion, the government made a number of factual assertions to the Court about the growing number of Defendants, investigative actions the government continued to undertake, and why timely discovery was too hard.

The defendants responded to the motion. Doc. Nos. 406, 407, 408. The Court granted a 30-day extension of discovery on March 20, 2026. Doc. 411. Four hours after the close of business on that same Friday evening, the government moved to dismiss an innocent Defendant it had not disclosed to the Court or the parties. Doc. 412. The motion did not state the reason for the dismissal, but the New York Times did. *See Ernesto Londoño*, "Charges Dropped Against Woman Mistaken for Protestor in Minnesota Church Case," New York Times available at https://www.nytimes.com/2026/03/21/us/charges-dropped-against-woman-mistaken-for-protester-in-minnesota-church-case.html?smid=nytcore-ios-share (last accessed March 24, 2026).

The journalist defendants then filed motions for immediate release of *Brady* materials, and for leave to file a motion for reconsideration of the Court's order at Doc. No. 411, because the order was based on misrepresentations to the Court. To date, no discovery has been produced to Mr. Bollman. His only notice of the *Brady* nature of the dismissal at Doc. 412 came from the newspaper, not the government.

Mr. Bollman now moves the Court for release of grand jury transcripts and materials

in this case due to the highly irregular prosecution of this case, the compounding *Brady* violations by the government, and the fact that irregularities must have tainted the grand jury proceedings in this case to obtain a conspiracy to violate civil rights indictment against a photojournalist who silently photographed a peaceful protest, while carrying press credentials, and who never communicated with any of the co-defendants in the case before or after January 18, 2026.

The government opposes this motion.

DISCUSSION

### 1. Standard.

In regular circumstances, grand jury proceedings are presumed secret. The "long-established policy of maintaining the secrecy of grand jury proceedings" is codified in Federal Rule of Criminal Procedure 6(e). *United States v. Penrod*, 609 F.2d 1092, 1096 (4th Cir. 1979). However, Rule 6(e) provides several exceptions under which a court may authorize disclosure of grand jury materials. *See Gallop v. United States*, 2012 WL 13081725, at *9 (E.D. Va. Jan. 9, 2012) ("The decision whether to order the disclosure of grand jury testimony is within the court's discretion.") (citing *United States v. Foggo*, 595 F. Supp. 2d. 672, 674 (E.D.Va. 2009)). However, this case does not present regular circumstances, and indeed, the government does not deserve the presumption of regularity.

### 2. Particularized Need.

Mr. Bollman will seek dismissal of the superseding indictment against him due to the irregularities that occurred before the grand jury in this case. Accordingly, the relevant exception is Rule 6(e)(3)(E)(ii), which permits a court to authorize disclosure "at a time,

7

in a manner, and subject to any other conditions that it directs . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]" The standard is a showing of "particularized need." *United States v. Broyles*, 37 F.3d 1314, 1318 (8th Cir.1994).

While there is a "long-established policy that maintains the secrecy of the grand jury proceedings," *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 (1958), courts may order disclosure of grand jury transcripts under Rule 6(e)(3)(E)(ii) when defendants establish a "particularized need" that outweighs the interest in maintaining grand jury secrecy. *United States v. Broyles*, 37 F.3d 1314, 1318 (8th Cir. 1994) (citing *Procter & Gamble*, 356 U.S. at 683). It should be noted that a prosecutor's remarks are not entitled to the same presumptive secrecy, and do not require a showing of particularized need. *See United States v. Woody's Trucking, LLC*, 2018 WL 457781, at *1 (D. Mont. Jan 17, 2018) (citing *United States v. Alter*, 482 F.2d 1016, 1029 n. 21 (9th Cir. 1973)). So too are the instructions on the law similarly not subject to secrecy. *United States v. Belton*, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015); *see also In re Cudahy*, 294 F.3d 947, 951 (7th Cir. 2002) (Posner, J.); *United States v. Rosen*, 471 F. Supp. 2d 651, 655 (E.D. Va. 2007).

The absurd circumstances and political pressure that led to the charge against Mr. Bollman present a significant risk that the government misrepresented or misstated key facts and/or elements of the offenses charged during its presentation to the grand jury. Indeed, the government and its top executives have repeatedly done so publicly, calling into question the validity of the superseding indictment. Rule 6(e) permits disclosure when "needed to avoid a possible injustice in another judicial proceeding." *Douglas Oil*, 441

8

U.S. at 222; *see In re Grand Jury Investigation*, 55 F.3d 350, 354 (8th Cir. 1995). The grand jury is a check against unfounded prosecution—a bulwark between the accuser and the accused. *See Wood v. Georgia*, 370 U.S. 375, 390 (1962). "[T]he Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by 'a presentment or indictment of a Grand Jury'" in order to "protect[] citizens against arbitrary and oppressive governmental action." *United States v. Calandra*, 414 U.S. 338, 343 (1974). To that end, defendants have a constitutional right to "an independent and informed grand jury," *United States v. Williams*, 504 U.S. 36, 51 (1992), whose function is not only to determine whether probable cause exists to charge an offense, but also to protect from prosecution those for whom criminal charges are unfounded. *Calandra*, 414 U.S. at 343. Under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), a court may order the disclosure of grand jury materials "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). Mr. Bollman seeks disclosure of the grand jury transcripts to determine if the grand jury's probable cause determination was based on the same inaccurate or misleading representations that the government has rendered publicly, which would cast "'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988).

The request is not a fishing expedition, but is based on a particularized need demonstrated by Mr. Bollman and the facts of this case. *United States v. Reed*, 2018 WL 7504843, at *3 (D. Minn. Sept. 14, 2018) (quoting *United States v. Kocher*, 1992 WL

9

320979 (8th Cir. 1992)). Based on the readily available and self-evident facts of the case as they pertain to Mr. Bollman, it is highly likely that a misstatement of law or fact, or some other irregularity occurred before the grand jury to obtain a conspiracy to violate civil rights indictment against a photojournalist silently plying his trade at a peaceful protest. This core fact is buttressed somewhat by the ridiculous conduct of the government in relation to this case, from the President and Attorney General, down to the line. There is no information that Mr. Bollman protested, or agreed to protest, much less for an illegal purpose. There is only information that he took photographs of others protesting, and that the President demanded everyone be charged, including journalists.

And now, the government has dismissed charges against an innocent person without notifying the Court or the parties of their innocence and the mistaken identification. Indeed, the government affirmatively misrepresented to the Court the scope of the case one day, in reliance on the number of charged defendants, then dismissed one of the defendants without explanation after obtaining its requested relief from the Court the next day. This contumacious litigation conduct lacks candor to the tribunal, and further underscores the irregularities in these proceedings.

Indeed, the head of the civil rights division of DOJ tweeted an interview of herself misstating the law of the case based on a personal opinion.[4] Another member of the executive branch tweeted an altered photograph of a co-defendant made with artificial intelligence, appearing to show her sobbing upon arrest.[5] So, the government not only

---

[4] *See* https://x.com/AAGDhillon/status/2018710583290315193 (last visited March 24, 2026).
[5] https://x.com/WhiteHouse/status/2014365986388951194

misstates the law, and misrepresents the facts, but actually affirmatively altered discovery in the case and posted it on the internet before producing it in the case. This behavior is so highly irregular and prejudicial to the administration of justice that the government ought to lose its presumption of regularity. In any event, it certainly shows why Mr. Bollman, a credentialed photojournalist and silent observer of the protest has an acute, particularized, and time-sensitive need to examine the grand jury materials in this case, including any no bills, and all statements by the government before the grand jury, and statements of the law and facts, as well as witness testimonies.

Indeed, similar conclusions were reached by another federal court in markedly similar circumstances recently. *See United States v. Comey*, -- F. Supp. 3d ---, 2025 WL 3202693, at *12 (E.D. Va. Nov. 17, 2025). Mr. Bollman shares that court's concerns that "statements by the prosecutor to the grand jurors that on their face appear to be fundamental misstatements of the law that could compromise the integrity of the grand jury process" led directly to his unlawful indictment in this case *Id.* at *7.

As that court concluded*,* when the government may have misstated the law to the grand jury and thereby allowed corruption of the probable-cause assessment, the defense is entitled to examine what was said and how the law was presented. The case is all the stronger for production of grand jury materials here, where it appears the government not only misstates the law, but also affirmatively misrepresents the facts of the case to the Court, and to the public, including by affirmatively altering discovery and posting it on the internet before producing it in the case.

11

### 3. Balancing Interests.

The government's interest in grand jury secrecy is at its zenith prior to unsealing, and now that the indictment is publicly available, that interest is lowered. *In re Grand Jury Proceedings Relative to Perl Perl*, 838 F.2d 304 (8th Cir. 1988). Here, in fact, the government's chief executive announced there would be charges before the indictment was ever obtained, thus calling into question any interest the government may now claim in secrecy, and the public's interest in this case is very likely in favor of disclosure, not secrecy, as a result. Certainly, the public has an interest in knowing if the President and Attorney General can successfully order a person to be charged in violation of the law, or based on false, fabricated, or misrepresented facts, based on political considerations, or a perceived need for salacious headlines projecting unbridled executive power.

And of course, Mr. Bollman's particularized and specific need for the grand jury materials as they pertain to him itself outweighs any claimed, or feigned, interest in grand jury secrecy in this case. This is so because Mr. Bollman is a demonstrably innocent person charged in contravention of the law and facts of the case for protected First Amendment activity of a free press, something that has been under attack generally by this government, and specifically in this case. How that could occur without malfeasance before the grand jury strains the imagination. The forthcoming government explanation will likely strain credulity, which segues nicely into the final argument presented in this memorandum: the loss of the presumption of regularity.

### 4. The Loss of the Presumption of Regularity.

The government is not entitled to the presumption of regularity before the grand jury

in this case because of the myriad irregular, absurd, unlawful, and untrue statements the government and its agents or executives have made in relation to this case, both in and out of court. *United States v. Kouba*, 822 F.2d 768, 774 (8th Cir. 1987). "Generations of presidential administrations and public officials have validated this underlying premise of the presumption of regularity," "[i]n just six months, the President of the United States may have forfeited the right to such a presumption" entirely. *Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74, 90–92 (D.D.C. 2025).

The parallel motion of Mr. Bollman's co-defendants filed at Doc. No. 125 at 20-25 argues this point thoroughly, and those arguments and facts need not be repeated here in their entirety. However, it is important to note that those irregularities have only grown, and been compounded, since the filing of that motion five weeks ago. Since then, the government has dismissed the charges against an innocent person without notifying the Court or the parties of the *Brady* material and nature of the dismissal. The government has misrepresented facts to the Court for the purpose of intentional subterfuge to obtain relief from its discovery obligations. The government insists it is actively investigating this case, months after charging it out, but has not disclosed any evidence or *Brady* material to the defendants. The government has altered discovery in the case and posted it to the internet for political purposes without producing the original discovery to the defendants.

Based on all of the absurd circumstances in this case, Mr. Bollman has grave and particularized concerns not only that something improper occurred before the grand jury to obtain his indictment, but also that improper things continue to occur in this "active" investigation. The government has a standing obligation to produce *Brady* materials on a

13

rolling basis, but has produced nothing. The government has altered photographs pertinent to the case and posted them online. The government has misstated the law and facts of the case publicly, and repeatedly. The likelihood that *Brady* information is being not only withheld, but spoliated, is real, and it is emergent. Disclosure of the grand jury materials to Mr. Bollman is necessary to correct a grave injustice, and the government is not entitled to any presumption of regularity as to those materials because of its highly irregular conduct in relation to this matter of public import, and elsewhere in the District, and country. *See Patin Arevalo v. Bondi et al.*, No. 26-CV-0396-LMP-JFD, ECF 8 at 3 (D. Minn. Jan. 23, 2026) ("In what is fast becoming a disturbing trend, the Government has yet again violated (and is continuing to violate)" court orders.); *Jin v. Noem et al.*, No. 25-CV-1391-PJS-DLM, ECF 13 at 6 (D. Minn. Apr. 17, 2025) ("[T]he Court cannot imagine how the public interest might be served by permitting federal officials to flaunt the very laws that they have sworn to enforce."); *Moreta Duran v. Bondi et al.*, No. 25-CV-4816-MJD-JFD, ECF 11 at 3 (D. Minn. Jan. 25, 2026) (finding the Government's tactics "disturbing" and part of "an undeniable move by the Government in the past month to defy court orders or at least to stretch the legal process to the breaking point in an attempt to deny noncitizens their due process rights"); *Duton Bueno v. Noem et al.*, No. 26-CV-0588-DWF-DJF, ECF 8 at 4 n.1 (D. Minn. Jan. 28, 2026) (finding that ICE's "deeply concerning" practice of racing detainees elsewhere to avoid due process in Minnesota federal courts "generally suggest[s] that ICE is attempting to hide the location of detainees").

14

Respectfully submitted.

**ANDREW IRLBECK LAWYER CHTD.**

Dated: March 24, 2026

/s/ Andrew M. Irlbeck
Andrew M. Irlbeck, #392626
First National Bank Bldg.
332 Minnesota St., Ste. W1610
St. Paul, MN 55101
Phone: 612-986-3895
Fax: 651-223-5179
andrew@irlbecklaw.com
ATTORNEY FOR DEFENDANT BOLLMAN