UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

THOMAS MATTHEW TIER (36),

Defendant.

Case No. 0:26-cr-00025-LMP-DLM (36)

**MOTION TO COMPEL DISCOVERY**

Defendant Thomas Matthew Tier respectfully moves this Court to compel the Government to certify that it has conducted a complete search of the prosecution team for responsive evidence and to respond to the Defendant's specific discovery requests.

The defendant submitted a detailed, narrowly tailored written discovery to which the government quickly emailed a non-substantive response. The government's deficient response deprives the defendant of his constitutional right to a fair trial and to prepare an adequate defense. The defendant now moves the Court to order the government to certify that it has conducted a search for responsive evidence and provide specific responses to the defendant's specific requests either by:

(1) producing the requested evidence,

(2) stating that the government does not believe that the evidence exists, or

(3) stating that the defendants are not legally entitled to the material and the reason for that conclusion.

## I.    STATEMENT OF FACTS

The defendant stands charged in connection with protest-related conduct as part of the coordinated law enforcement initiative "Operation Metro Surge." On April 8, 2026, the defendant sent a detailed, targeted written discovery demand. Attached as **Exhibit A**. Defense counsel's written demand named four categories of *Brady* and *Giglio* evidence related to:

(1) evidence of instructions, incentives, pressure, quotas, targets, and discipline affecting prosecution team and witness credibility.

(2) identification procedures and witness identification information.

(3) military involvement in the prosecution team; and

(4) impeaching information regarding government witnesses.

Requests 1, 2, and 3 are narrowly tailored, specific, relevant, proportional, and made in good faith for pretrial and trial preparation purposes. Request 4 is a general request for impeaching information. The next day, on April 9, 2026, the government responded:

> The government acknowledges receipt of your discovery request. The government will comply with its Rule 16 obligations as well as obligations under Brady and its progeny. Discovery will be produced in accordance with the Court's standing order.

Attached as **Exhibit B.**

## II.   LAW AND ARGUMENT

a. *The Government's Generalized Response to the Defendant's Specific Requests Shows that the Government Has Not Conducted the Detailed Search Required by Law and its Own Policy.*

The prosecution's duty to disclose exculpating and impeaching evidence reaches beyond merely acknowledging the defendant's request. The prosecution cannot merely confirm receipt of a defense discovery request; it must provide a substantive response. *See* Fed. R. Crim. P. 16(a)(1) (duty to disclose upon defendant's request). "Because "[a] prosecutor has a duty to disclose evidence known by police officers, even if not known by the prosecutor," a prosecutor has an attendant duty to learn of such evidence.  This attendant duty to learn of material and favorable exculpatory or impeachment evidence necessarily anticipates that a prosecutor will have an opportunity to discover such evidence ***through the exercise of reasonable diligence.***" *United States v. Robinson*, 809 F.3d 991, 996 (8th Cir. 2016) *quoting United States v. Tyndall*, 521 F.3d 877, 882 (8th Cir. 2008) (emphasis added).

Justice Department policy incorporates this black letter law:

It is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all members of the prosecution team. Members of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant.

3

*Justice Manual 9-5.002(A) Where to look: The Prosecution Team*,

https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings#9-5.002.

A prosecutor's "duty of inquiry" is triggered when the prosecution is put on notice through a defense attorney request of possible Brady material. *See United States v. Burnside*, 824 F. Supp. 1215, 1254 (N.D. Ill. 1993) ("where the facts which were known by the prosecution should have prompted further investigation, Brady mandates the inquiry"); *see also United States v. Joseph*, 996 F.2d 36, 40 (3d Cir. 1993) (providing that when prosecution is aware of the existence of requested information, it cannot avoid its Brady obligations by failing to "take the minimal steps necessary to acquire the requested information"). Brady information and material is disclosable even if it is contained in a document that itself is protected from disclosure or that would not be admissible at trial. *See Giles v. State of Md.*, 386 U.S. 66, 74 (1967). For example, if a witness statement is contained in protected work product, or if the statement would not be admissible as substantive evidence, the government may still be required to disclose the underlying statement if it could be used to impeach a prosecution witness. Id. at 75–76.

In this case, one day after receiving the defendant's detailed, narrowly tailored, and specific requests, the government responded with an email which, at best, says the government would follow the law. It was impossible for the government to conduct a search at that time. This "papering the file" without conducting a search for responsive information is not "reasonable diligence," but is a clear and gross failure by the government to comply with its discovery obligations.

4

b. *The Government Must Provide Specific Responses to Specific Discovery Requests 1, 2 and 3.*

The government must provide specific responses to each discovery request, stating whether the requested material exists, whether it is being withheld as non-discoverable, or whether it is not considered *Brady* material, along with the reasons for such determinations. "When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." *United States v. Agurs*, 427 U.S. 97, 106, 96 S. Ct. 2392, 2399 (1976); *United States v. Palmer*, No. 4:13CR338 RWS (FRB), 2013 U.S. Dist. LEXIS 187842 (E.D. Mo. Nov. 26, 2013) (requiring government to provide specific responses to specific discovery requests). This specificity is necessary to prevent the defense from abandoning potential lines of investigation or trial strategies based on an assumption that the requested information does not exist. *See United States v. Bagley*, 473 U.S. 667, 682–83 (1985) (noting that "the more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption"). *United States v. Peer*, No. S1-4:10CR255 CDP (FRB), 2013 U.S. Dist. LEXIS 203471, at *9 (E.D. Mo. Jan. 31, 2013).

Importantly, the government may respond by stating that the requested material does not exist, is not discoverable, or is not considered Brady material, provided it offers legally sufficient reasons for its position. *United States v. Palmer*, 2013 U.S. Dist. LEXIS 187842 (2013); *United States v. Vaid*, 2019 U.S. Dist. LEXIS 175460 (2019); *United*

5

*States v. Peer*, 2013 U.S. Dist. LEXIS 203471 (2013). What the government cannot do is ignore the defendant's requests and simply promise to follow the law. *Agurs*, 427 U.S. at 106, 96 S. Ct. at 2399 ("reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge, when the prosecutor receives a specific and relevant request"). Given the government's continuing conduct in this and numerous other courts in which it repeatedly and openly violates court orders, this promise to follow the Court's discovery order is unreliable, at best.[1]

        *c.  The Government's Response Must Be Timely.*

The government must disclose *Brady* and *Giglio* material on a schedule that permits the defendant to use it effectively. Here, where the defendant has announced (and filed) pretrial litigation and requested specific categories of material relevant to pretrial motions, disclosure must occur early enough to allow investigation and motion practice. The government cannot satisfy its *Brady* obligations by timing disclosure to coincide with trial when the defense needs the material for pretrial proceedings. While courts have held that the government does not have to make pretrial disclosures of material evidence, courts also note that ultimate disclosure must be made before it is too late for the

---

[1] *Officials Violated More Than 50 Court Orders in New Jersey, Justice Dept. Tells Judge*, New York Times (Feb. 18, 2026) (available at https://www.nytimes.com/2026/02/18/us/politics/court-orders-new-jersey-immigrants.html); *Two federal judges rebuke Minnesota U.S. Attorney after ICE fails to follow court orders*, MPRNEWS (Feb. 26, 2026) (available at https://www.mprnews.org/story/2026/02/26/judge-summons-minn-us-attorney-to-court-threatens-contempt).

defendant to make use of the evidence. *United States v. Olson*, 697 F.2d 273, 275 (8th Cir. 1983).

The defendant's need for this material is acute and immediate. The defense must prepare pretrial motions challenging evidence and identification procedures and the manner and means in which the government is prosecuting this case, including motions to dismiss the indictment or disqualify government counsel. Without specific responses and disclosures, the defense cannot effectively litigate these pretrial motions. If the government delays its disclosures until before trial, and the evidence is relevant to its pretrial motions, good cause will exist to file additional motions. Fed. R. Crim. P. 12(c)(3) (excusing late filed motions when a party shows good cause). Timely disclosure will eliminate the risk of unnecessary delays in this case.

     *d.  The Specific Categories of Requested Material are Discoverable Material.*

The defendant's April 8th discovery letter named four categories of material. Requests 1, 2, and 3 were specific and put the government on notice of its duty to disclose. The requests identified evidence, the "suppression [of which] undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985). The defendant's requests are not a generalized fishing expedition but are made in good faith based on government statements already in the public record. Each request is "sufficiently specific" because it "limits documents to a reasonable period of time and states with reasonable precision the subjects to which the documents relate." *United States v. Shepard*, No. 4:09 CR 423 RWS DDN, 2010 U.S. Dist. LEXIS 17333, at *3 (E.D. Mo. Feb. 26, 2010) (discovery sought through a Fed. R. Crim. P. 17(c) subpoena).

1. **Substantial evidence in the public record establishes the government has coerced and rewarded the prosecution team and probable witnesses for their conduct in this investigation.**

Impeachment evidence includes information that could undermine the credibility of a witness or expose biases, motivations, or external pressures influencing their testimony or investigative decisions. *United States v. Veras*, 51 F.3d 1365, 1368 (7th Cir. 1995) (evidence affecting the reliability of testimony must be disclosed). With respect to request 1, numerous public reports establish government conduct that may affect the motivation of prosecution team members and witnesses to testify truthfully and undercut the reliability of the government's investigation. A small sample of these reports establishes:

- "Federal employees involved in the massive operation that led to a surge of deportations and detentions around Minneapolis in recent months have *received a souvenir* from the controversial mission... One side of the coin features a skull, which has glowing eyes, a helmet, and mask. That grim visage, which is flanked by a pair of assault rifles, appears above the words: "OPERATION METRO SURGE MINNESOTA" and "ONE NATION UNDER GOD." Trump and a figure who appears to be Homan are depicted below the text along with an American flag, flames, a police dog, and a row of masked agents in tactical gear bearing the names of different Department of Homeland Security agencies and units that have played a key role in the White House's mass deportation efforts…The challenge coin distributed at the Whipple Building seemingly revels in the violence that occurred in

conjunction with Operation Metro Surge. On the flip side, the token showcases another helmeted skull with glowing eyes looming over officers in tactical gear carrying a U.S. flag amid an explosion, burning buildings, and a low flying military helicopter."[2] (emphasis added).

- "U.S. Immigration and Customs Enforcement officials have been directed by Trump officials to aggressively ramp up the number of people they arrest, from a few hundred per day to at least 1,200 to 1,500, because the president has been disappointed with the results of his mass deportation campaign so far, according to four people with knowledge of the briefings. *The quotas were outlined Saturday in a call with senior ICE officials, who were told that each of the agency's field offices should make 75 arrests per day and managers would be held accountable for missing those targets…*The orders significantly increase the chance that officers will engage in more indiscriminate enforcement tactics or face accusations of civil rights violations *as they strain to meet quotas*, according to current and former ICE officials."[3] (emphasis added).

---

[2] *Staff At Minnesota Deportation Hub Received 'Obscene' Trump-Themed Challenge Coins Adorned With Skulls*, Talking Points Memo (Apr. 11, 2026) (available at https://talkingpointsmemo.com/news/staff-at-minnesota-deportation-hub-received-obscene-trump-themed-challenge-coins-adorned-with-skulls).

[3] *Trump officials issue quotas to ICE officers to ramp up arrests,* The Washington Post (Jan. 26, 2026) (available at https://www.washingtonpost.com/immigration/2025/01/26/ice-arrests-raids-trump-quota).

- "Just days after Minneapolis erupted into protest over the second killing of a resident demonstrating against immigration agents, *a top Justice Department official delivered a hardball message to federal prosecutors. Go after the protesters with everything you have*…As *Justice Department leaders have pressed top prosecutors to bring cases against protesters*, at least one has quit rather than file charges."[4] (emphasis added).

- "The Department of Homeland Security (DHS) announced *new reimbursement opportunities for state and law enforcement* who are helping U.S. Immigration and Customs Enforcement (ICE) arrest and remove the worst of the worst including murderers, gang members, rapists, terrorists, and pedophiles from American communities."[5] (emphasis added).

- "In August 2025, reports surfaced of a pilot program that *offered cash bonuses specifically for speeding up deportations.* This program was reportedly canceled within hours after DHS officials stated it had not been properly authorized…Under its terms, ICE would hand out $200 bonuses

---

[4] *'Go Big and Go Loud': Inside the Justice Dept.'s Push to Prosecute Protesters*, New York Times (Mar. 19, 2026) (available at https://www.nytimes.com/2026/03/19/us/politics/justice-dept-prosecute-protesters.html).
[5] *DHS Announces New Reimbursement Opportunities for State and Local Law Enforcement Partnering with ICE to Arrest the Worst of the Worst Criminal Illegal Aliens*, Homeland Security Press Release (Sept. 2, 2025) (available at https://www.dhs.gov/news/2025/09/02/dhs-announces-new-reimbursement-opportunities-state-and-local-law-enforcement).

for each immigrant deported within seven days of being arrested and $100 for those deported within two weeks, according to an initial memo signed by Ms. Castano that was sent to the directors and deputy directors of ICE's field offices across the country." [6] (emphasis added).

- "Two senior Immigration and Customs Enforcement (ICE) *officials have been reassigned amid frustration that deportation and arrest numbers were not increasing fast enough to meet Donald Trump's targets*. Russell Hott and Peter Berg*, the two highest-ranking members of ICE's enforcement agency, were removed from their positions*, the Washington Post first reported, citing three people with knowledge on the moves. Hott was reassigned to ICE's local office in Washington DC, and *Berg to St Paul, Minnesota*." [7](emphasis added).

- "Announcing *her presence "on the ground"* in Minneapolis Wednesday, U.S. Attorney General Pam Bondi said at least 16 people were arrested for allegedly assaulting federal law enforcement officers in the city. Bondi posted the news on social media, claiming those arrested "have been

---

[6] *ICE Offers, Then Quickly Withdraws, Cash Bonuses for Swiftly Deporting Immigrants, New York Times, The short-lived effort underscored the mounting pressure on ICE to meet President Trump's aggressive deportation targets*, New York Times (Aug. 5, 2025) (available at https://www.nytimes.com/2025/08/05/us/politics/ice-bonuses-immigrants-deportations.html).

[7] *Two senior ICE officials reassigned over slow rate of deportations and arrests, Top-ranking immigration enforcement officials removed from their positions reportedly due to deportation numbers*, The Guardian (Feb. 12, 2025) (available at https://www.theguardian.com/us-news/2025/feb/12/ice-officials-reassigned-deportation).

resisting and impeding our federal law enforcement agents." She added she expects "more arrests to come."[8] (emphasis added).

- "A St. Paul church member has filed a lawsuit against a group of protesters who disrupted a church service last month as part of an anti-ICE protest, *seeking damages* over mental distress caused by the demonstration."[9] (emphasis added).

- High-ranking Department of Justice (DOJ) officials were and are making inflammatory public statements. Members of the prosecution team may have been pressured by supervisors who were making inflammatory statements on social media disparaging the protest participants and also attempting to bully federal courts to approve charges.[10]

These reports establish that the prosecution of this case is part of a broader, coordinated initiative to punish and deter any and all protest-related conduct. The demand for information about quotas, targets, goals, and systemic pressure to prosecute cases during Operation Metro Surge establishes potential systemic factors that may have affected the investigation's reliability and the credibility of prosecution team members.

---

[8] *Bondi in Minnesota announces several more protester arrests*, KARE 11 News (Jan. 28, 2026) (available at https://www.kare11.com/article/news/local/ice-in-minnesota/bondi-in-minnesota-announces-several-more-protester-arrests/89-f2367db8-9a50-4e96-942c-fab7fe306335).

[9] *St. Paul church member files lawsuit over anti-ICE protest*, Fox9 KMSP (Feb. 24, 2026) (available at https://www.fox9.com/news/st-paul-church-parishioner-files-lawsuit-over-anti-ice-protest).

[10] Doc. No. 125, at pp. 5-9 (Lemon Motion), adopted and incorporated herein.

Evidence of incentives, gifts, pressure, quotas, and coordinated initiatives bears directly on the credibility and reliability of the investigation and the government's witnesses. When law enforcement officers work under pressure to achieve prosecution targets or quotas, or when they receive recognition or advancement based on securing convictions in particular types of cases, their investigative decisions and witness statements may be influenced by factors other than the pursuit of truth.

Witness motivations, remuneration, incentives, and communications to church members about lawsuits seeking damages on behalf of church congregants—all fall within the *Brady/Giglio* disclosure requirement. Communications reflecting a coordinated push to prosecute protest-related cases are relevant to impeaching the neutrality and objectivity of the prosecution team and witnesses. Known discipline of law enforcement tied to this case or the broader initiative can reveal whether investigative standards were compromised or whether certain officers were incentivized to cut corners. This evidence is impeachment material under *Giglio* because it bears on the credibility and potential bias of government witnesses and the reliability of the investigation itself.

### 2. The government's identification of defendants is unreliable, and discovery of their identification process is constitutionally mandated.

The government wrongfully named and then indicted an innocent person. The government then quietly moved to dismiss the charges against this defendant, a woman who apparently had nothing to do with the protest and never entered the church. Doc.

Nos. 412, 413.[11]  Evidence that a government agent or witness did not identify a defendant, misidentified another person, or gave materially different descriptions is directly exculpatory and favorable to the defendant. The inability of a witness to make any identification would be useful to a defendant. *Evans v. Janing*, 489 F.2d 470 (8th Cir. 1973). Non-identifications and misidentifications are evidence that a witness, including a law enforcement witness, could not reliably identify the defendant or that the witness identified someone other than the defendant.

Identification procedure details, including the time, place, and manner in which identifications were conducted, bear on the suggestiveness and reliability of the identification process. The exact words used by a witness in making an identification can reveal the degree of certainty, hesitation, or equivocation in the identification. The substance of any lookout broadcast can reveal whether the description provided to law enforcement was consistent with the defendant's appearance and whether the broadcast was suggestive or overly specific.

3. **Military prosecutors prosecuting a civilian in a civilian court for civilian offenses with no nexus to a military purpose is unlawful and bears on the reliability of the government's investigation.**

---

[11] *See* "Charges Dropped Against Woman Mistaken for Protestor in Minnesota Church Case," New York Times (Mar. 21, 2026) (available at https://www.nytimes.com/2026/03/21/us/chargesdropped-against-woman-mistaken-for-protester-in-minnesota-churchcase.html?smid=nytcore-ios-share).

14

Evidence of military involvement in this investigation bears on the lawfulness of this prosecution.[12] Military involvement may run afoul of the Posse Comitatus Act,[13] and relates to credibility, bias, and potential conflicts of interest of government witnesses and investigators. Military personnel working in a civilian law enforcement context may have different incentives, training, and command structures that could affect their investigative judgment and credibility. The identity and role of military personnel, their chain of command, and their evaluations can reveal whether they had incentives to secure convictions or whether they were subject to pressure from military superiors.

In response to the defendant's specific request, the government did not even confirm or deny the involvement of military personnel in the prosecution or investigation of this case. This is not enough. The government appears disdainful of its discovery obligations.

    e.   *Good Cause Exists to Enter an Order Compelling the Government to Respond to Defendant's Specific Requests*.

Under Fed. R. Crim. P. 16(d)(1), this Court possesses broad discretion to regulate discovery and grant appropriate relief upon a showing of good cause, including the authority to issue orders ensuring compliance with discovery obligations. *United States v.*

---

[12] Doc. No. 39, *United States v. Johnson,* 0:26-mj-00081-KMM-SGE (D. Minn. Mar 10, 2026) (motion seeking to disqualify military counsel serving as Special Assistant U.S. Attorney).

[13] "Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army, the Navy, the Marine Corps, the Air Force, or the Space Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both." 18 U.S.C. § 1385.

*Driscoll,* 122 F.4th 1067, 1069 (8th Cir. 2024); *United States v. Richmond*, No. 4:24-CR-40139-KES, 2026 LX 19046, at \*2-3 (D.S.D. Feb. 11, 2026). The government's email communication—promising compliance while demonstrating a continued pattern of disregarding orders in this District—suggests an unwillingness (at best) to fulfill its obligations. Consequently, the defendant requests that the Court exercise its discretion to compel the government to abide by its discovery obligations and certify that it has done so to the Court.

## III.    CONCLUSION

For the foregoing reasons, Defendant Thomas Matthew Tier respectfully requests that this Court enter an Order granting this Motion to Compel Discovery of Brady and Giglio Material and directing the government to:

(1) conduct a search for and file a detailed affidavit or certification that describes the specific steps taken to search for favorable and impeachment material in response to the defense's written demand, identifies the individuals or entities consulted at each agency, specifies the search terms, databases, and records reviewed, confirms that all material known to the prosecution team after reasonable inquiry has been produced, and certifies that the affiant has made reasonable efforts to ensure that all agencies have been consulted and that no responsive material remains undisclosed; and

(2) provide specific responses to the defendant's specific requests either by:

   a.  producing the requested evidence.

16

b. stating that after conducting a search of evidence within the knowledge or possession of the prosecution team, the government does not believe that the evidence exists; or

c. stating that the defendants are not legally entitled to the material and the reason why.

Dated:  April 14, 2026

DORSEY & WHITNEY LLP

By  */s/ John Marti*
    John Marti (#0388393)
    marti.john@dorsey.com
    Meredith LaVine (#0506725)
    lavine.meredith@dorsey.com
    Ashley Repp (#0399661)
    repp.ashley@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

*Attorneys for Defendant Thomas Matthew Tier (36)*