UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No.: 26-25 (LMP/DLM) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GEORGIA FORT'S RESPONSE TO** |
| v. | ) | **THE GOVERNMENT'S** |
| | ) | **EXPEDITED MOTION FOR A** |
| [8] GEORGIA ELLYSE FORT, | ) | **PROTECTED ORDER GOVERNING** |
| | ) | **DISCOVERY** |
| Defendant. | ) | |
| | ) | |

_____

Georgia Fort does not actually oppose entry of a reasonable protected order, if the Court believes there is good cause for one. Rather, Fort's objection to the government's proposed order is that it is overbroad, one-sided, and incompatible with her need to defend herself in a civil case arising from the same set of events. Accordingly, Fort respectfully submits an alternative proposal aimed at striking a more reasonable balance between protecting the government's claimed confidentiality interests without (1) intruding on matters properly governed by this Court, (2) precluding Fort from appropriately using discovery in this case to defend herself in a substantially related case, and (3) imposing unnecessary burdens on constitutional and common law rights of access. As set forth below, to the extent the Court enters any protective order in this case, Fort respectfully asks that it be the proposal she provided to the government last week, which is attached to this response as Exhibit 1.

In support thereof, Fort states as follows:

1.     Rule 49.1 requires that any filing containing social security numbers, taxpayer identification numbers, dates of birth, minors' names, financial account numbers,

1

and home addresses be redacted or otherwise contain only limited information.

2.    Under Rule 16, the Court may also, at any time, "deny, restrict, or defer discovery or inspection, or grant other appropriate relief" for good cause. Fed. R. Crim. P. 16(d)(1); *United States v. Lee*, 374 F.3d 637, 652 (8th Cir. 2004). "The burden of showing 'good cause' is on the party seeking the order . . . ." *United States v. Ladeaux*, 61 F.4th 582, 585 (8th Cir. 2023) (citing *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015)). The same standard applies to the government, when it is the party seeking a protective order. *Ladeaux*, 61 F.4th at 586.

3.    In this case, the government seeks a protective order that broadly shields the disclosure of the identities of "victims and witnesses," the result of which would be to redact broad swaths of information of public concern and/or require filing *entire* court filings under seal, leaving them wholly inaccessible to the public. ECF No. 495 at 1-2.

4.    In support, the government speculates, without a supporting declaration or any other evidence, that disclosure of identities "could" adversely affect victims and witnesses and argues that its proposed, sweeping protective order is necessary "to ensure victims and other witnesses are not targeted for harassment" and to prevent the possibility of "publication of materials on the internet" involving witnesses. *Id*. at 2-3. As for specific concerns over disclosing these materials to Fort, the government has made no argument and no showing that Fort poses any risk to any individual in this case or that she will not comply with the requirements of Rule 49.1 or Local Rule 49.1. Of course, Fort poses no such risk, and she has and will continue to abide by all of her obligations under the relevant laws and court rules. Accordingly, the government has not shown that there is good cause

for the overbroad protective order it seeks.

5.      The impracticability of the government's proposal is further shown through a few particularly illustrative examples.  First, as Don Lemon noted in his response to the government's motion, the names of several witnesses in this case are already widely known, including the pastor from the Church and the pro se litigant who filed a civil lawsuit against several of the defendants in this case. ECF 499 at 4 & nn. 1-2; *see also* https://www.citieschurch.com/leadership (identifying, with photographs, nearly two dozen other church pastors, deacons, and staff). By the same token, it cannot be that the name and address of the pastor's workplace is "Protected Material" because "Cities Church" is likely to appear in nearly every filing in this case. The government offers no explanation why this information should be deemed "Protected Material" when exchanged in discovery or redacted if it appears in a filing. Moreover, its conspicuous failure to include in its motion any statement from any of the aforementioned individuals that they have been harassed as a result of being publicly identified and affiliated with Cities Church underscores the entirely speculative premise for the government's motion.

6.      Second, under the Minnesota Government Data Practices Act, the names and addresses of victims and witnesses is "public government data." Minn. Stat. § 13.82, subd. 6(g), (h).[1] As such, dozens of names and addresses of individuals present at Cities Church on January 18, 2026, have already been disclosed in accordance with state law. Under the terms of the government's protective order, because this information is obtainable through

---

[1] Juvenile names are generally exempted from disclosure. *See id.*, subd. 17(g).

a means other than discovery, it can be filed publicly, seemingly undermining the primary concern the government seeks to mitigate against. Moreover, to the extent some witnesses' names and addresses are publicly available, while others are not, it would only draw *more* attention to those individuals whose identities are already known and publicly available, yet again undermining the government's own rationale for the protective order it requests.

7.      Finally, the government's proposal would preclude Fort from using any "Protected Material" in connection with any other case, including the civil suit brought against her and several other defendants stemming from the same events. Moreover, the material is almost certainly discoverable in the civil lawsuit, and the government has offered no explanation why Fort should not be able to use it with appropriate safeguards in place.

8.      As a reasonable alternative, Fort proposes a more narrowly tailored protective order that safeguards against all of the government's purported concerns, while balancing the Court's inherent authority over its own records, Fort's ability to defend herself in a case arising out of the same set of facts, and the public's presumptive right to judicial documents.

9.      To that end, and for the avoidance of doubt, Fort agrees that the full names of minors[2] and the personally identifiable information of all individuals should be afforded appropriate protection in this case, much of which is already contemplated by Rule 49.1 and Local Rule 49.1. Indeed, Fort urged the government to add those important items to its definition of "Protected Material" in its own protective order, after the government failed

---

[2] Fort proposes that minors be identified by initials, as is customary under the rules.

to include them. It is also why a comparable list appears in Fort's proposed order. *See* Ex. 1 ¶ 1.

10.     Fort's attached proposal serves to preserve this Court's authority over court filings, rather than attempting to use a discovery order to circumvent the standards governing sealing of judicial records. Questions concerning redactions, sealed filings, and witness-related filings are already governed by Local Rule 49.1, this Court's supervisory authority, and established standards for restricting access to judicial records. The government's proposed order would unreasonably permit witness-related filings to be placed under seal through the mechanism of a protective order, rather than through the judicial scrutiny required by existing rules. Fort's proposal, by contrast, leaves those matters where they belong—with the Court and the governing rules. *Compare* ECF 495-1 ¶ 14, *with* Ex. 1 (omitting provision as it is governed by Local Rule 49.1 and the Court's individual procedures).

11.     Fort's attached proposal offers a reasonable mechanism for her to properly use the information disclosed in this matter to defend herself against any civil or criminal case arising from the same events at issue here. Fort has no objection to being bound by the terms of her proposed protective order in any such other case to the extent she is relying on "Protected Material" obtained in discovery from the government in this case. *See* Ex. 1 ¶ 2.

12.     Fort's proposed protective order also more appropriately accounts for First Amendment and common law principles governing press and public access to judicial records. Although unfiled discovery materials are distinct from court filings, once

information become part of the judicial record, restrictions on access require more than generalized assertions of confidentiality. *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573-74 (8th Cir. 1988) (collecting cases clearly establishing First Amendment right of access to judicial records and documents filed in connection with criminal prosecution); *see also Globe Newspaper Co. v. Super. Ct. for Norfolk Cnty.*, 457 U.S. 596, 606-07 (1982) (holding rule prohibiting public access during testimony of minor victims violated First Amendment; Where "the [government] attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must" show "that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest."). Fort's proposal preserves those principles by leaving judicial records in this case to the established rules and constitutional framework that govern them, not to the dictates of the government. *See* Ex. 1 ¶ 10.

13.     Finally, Fort's proposal applies reciprocal obligations on both parties, while the government's proposal unreasonably imposes the burden almost exclusively on the defense. A protective order governing information the Court determines there is "good cause" to shield from the public should operate evenhandedly and reasonably protect legitimate interests, regardless of which party possesses or disseminates covered materials. The government's proposal does not do so. It restricts the *defense*'s use and dissemination of discovery while imposing no comparable obligations on the government. Where the government seeks restrictions on dissemination, in part, based on concerns relating to privacy and safety concerns, then a reasonable protective order should address these concerns through reciprocal safeguards, not one-sided restraints. Fort's proposal avoids

6

that glaring defect by imposing reasonable, reciprocal protections on all individuals involved in this case, including the government. *See* Ex. 1 ¶¶ 3-4, 9.

For these reasons, Fort respectfully requests that, to the extent the Court enters any protective order in this case, it reject the government's overbroad proposal and enter Fort's proposed order, which more properly comports with Rules 16(d)(1) and 49.1, Local Rule 49.1, and governing First Amendment and common law principles of public access to court proceedings and judicial records.

Dated: April 21, 2026

Respectfully submitted,

BALLARD SPAHR LLP

By: *s/ Matthew S. Ebert*
Matthew S. Ebert
Leita Walker
Isabella Salomão Nascimento
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 371-3281
ebertm@ballardspahr.com
walkerl@ballardspahr.com
salomaonascimentoi@ballardspahr.com

Seth D. Berlin (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 508-1122
berlins@ballardspahr.com

THE LAW FIRM OF KEVIN C. RIACH, PLLC
Kevin C. Riach
125 Main St. SE, Suite 339
Minneapolis, MN 55412
Tel: (612) 203-8555
kevin@riachdefense.com

*Counsel for Defendant Georgia Ellyse Fort*