**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | Case No. 26-cr-00025-LMP-DLM |
| v. | |
| [8] Georgia Ellyse Fort, | MOTION FOR IMMEDIATE DISCLOSURE AND FOR |
| Defendant. | HEARING/STATUS CONFERENCE |

This motion addresses the government's pervasive and serious non-compliance with its *Brady* obligations: First, the discovery produced by the government thus far demonstrates that it has made numerous material misrepresentations of fact about Ms. Fort's conduct in sworn affidavits submitted to the Court and in investigative reports. To the extent that those misrepresentations were repeated in either grand jury testimony or in other undisclosed documents, including additional sworn affidavits, they are classic *Brady* materials that should have but have not been disclosed.

Second, last week, Magistrate Judge John F. Docherty *sua sponte* unsealed a series of affidavits supporting the government's applications for search warrants—including as to Ms. Fort—that he had rejected both for lack of probable cause and for failure to comply with a federal statute expressly limiting warrants issued to journalists like Ms. Fort. Those recently unsealed affidavits, submitted under oath and with the government's imprimatur, likewise repeat numerous material misrepresentations of fact about Ms. Fort. Given the Court's probable cause ruling and recognition of Ms. Fort's status as a journalist and given

the newly released affidavits' misrepresentations of fact about Ms. Fort, they are also classic *Brady* materials and should have been produced long ago, without the intervention of Magistrate Judge Docherty. Moreover, Ms. Fort's counsel has urged the government to correct those material misrepresentations to each of the judges to whom they were made, and to correct similar misstatements in the superseding indictment, by Friday May 29, but, to Ms. Fort's knowledge, the government has failed to do so.[1]

Third, the government says there is more discovery to come, potentially later this week, including other search warrant materials that should have already been produced to comply with this Court's multiple orders (a) requiring the timely production of *Brady* materials, ECF 63, and (b) setting a deadline for discovery (an order which the government already violated by producing extensively redacted materials despite the issuance of a protective order), *see* ECF 522.

The government has engaged in a striking pattern of misconduct, presenting this Court (and presumably the grand jury) with material misrepresentations of fact about Ms. Fort, all while failing to meet its disclosure obligations under both *Brady* and this Court's orders. Accordingly, Ms. Fort requests that the Court (a) order the government, once again, to immediately produce all *Brady* materials, (b) disclose (or at least review *in camera*) the grand jury transcripts, including to determine whether the grand jury was also presented with materially false facts, (c) require the government to promptly and publicly

---

[1]   Counsel for Ms. Fort addressed these concerns in a letter to the government dated May 26, 2026, which is included herewith as Ex. 1 to this motion.  The parties held a lengthy meet-and-confer videoconference regarding the concerns raised in the letter on May 27, 2026.

correct its misrepresentations of fact about Ms. Fort, and (d) set a status hearing to address each of these issues.

## BACKGROUND

The government's constitutional requirement to comply with *Brady* is not optional, as the Court's January 30, 2026 *Brady* Obligation Order makes abundantly clear:

> Pursuant to the Due Process Protections Act the Court confirms the United States' obligation to disclose to [Ms. Fort] all exculpatory evidence-that is, evidence that favors [Ms. Fort] or casts doubt on the United States' case, as required by *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and orders the United States to do so. Failure to disclose exculpatory evidence in a timely manner may result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or other sanctions by the court.

*United States v. Fort*, Case No. 26-CR-25-LMP-DLM (ECF 63, Jan. 30, 2026).

On April 24, 2026, the government began producing discovery in this case. Ms. Fort's review of this discovery has revealed mounting, demonstrably false factual assertions about her conduct on January 18, 2026, while covering the protest at Cities Church in St. Paul. These false statements permeate sworn affidavits and investigative reports in this case, as discussed below.

To make matters worse, Ms. Fort learned recently that the government improperly sought a search warrant not once but *twice* for her YouTube account with Google, which the Court appropriately rejected for lack of probable cause and under the Privacy Protection Act, 42 U.S.C. § 2000aa, which protects the use of warrants against journalists like Ms. Fort. *See* ECF 1 and 3, *In re Search Warrant*, 26-MJ-206-JFD (2/24/2026 and 3/06/2026 Application[s] for Search Warrant – Denied"); ECF 1 and 4, *In re Search*

*Warrant*, 26-MJ-205-JFD (2/24/2025 Order Denying Search Warrant Applications). Including because they acknowledge her status as a journalist, these rejected warrants are quintessential *Brady* evidence that the government had a constitutional obligation to disclose.

This incredibly significant *Brady* material came to light only because Magistrate Judge Docherty ordered its disclosure, having already opined in early March that he could "not foresee any harm that will come from advising the defendants [about] these . . . warrants."  Order to Show Cause at 3, *Id.* (ECF 6, May 1, 2025) (quoting Order at 7, *Id.* (ECF 4, Mar. 6, 2026)). In rejecting the government's improper attempts to obtain records of Ms. Fort, a journalist, Magistrate Judge Docherty rightly noted that "adherence to government counsel's duty of candor towards the tribunal should have led them to inform the Court" of the Privacy Protection Act, but the government failed to do so.  Order at 5, *Id.* (ECF 4, Mar. 6, 2026).[2]

Even more troubling, Special Agent Timothy Gerber's rejected application for Ms. Fort's YouTube records contains materially false allegations about Ms. Fort. Through Special Agent Gerber, the government falsely stated *under oath* in an affidavit in case number 26-MJ-206-JFD that Don Lemon's livestream depicted Ms. Fort participating in various chants, including "ICE Out!," "Hands Up, Don't Shoot!," and "Stand Up, Fight

---

[2]  Magistrate Judge Docherty additionally criticized the government's apparent failure to comply with the Justice Department's own regulations concerning the Privacy Protection Act when it tried to get warrants for Ms. Fort's records.  Order to Unseal at 1, *Id.*, (ECF 8, May 22, 2026). During the parties' meet-and-confer on May 27, an attorney for the government, Mr. Robert Keenan, stated his view that Magistrate Judge Docherty was somehow incorrect in his rulings.

Back!" *See* Appl. For Search Warrant ¶ 16, *In re Search Warrant*, 26-MJ-206-JFD (ECF 3, Mar. 6, 2026). The government also falsely stated in Special Agent Gerber's sworn affidavit that "FORT went into the Cities Church, using her camera as the weapon to intimidate, threaten and scare the congregants." *Id*. ¶ 16. But there is no factual (or legal) basis for such an assertion. The government's statements about Ms. Fort are plainly contradicted by multiple livestreamed video streams capturing the events in question, including the Church's own.[3]  In fact, those videos—and all other evidence produced so far by the government, *including* statements taken from *multiple* eyewitnesses—show the opposite: Ms. Fort did not chant with anyone on January 18 and acted purely as a professional journalist.

Importantly, these blatantly false assertions are disproven by video evidence the government possessed *at the time* it made them to the Court.  The government should have reviewed this evidence months ago, before indicting Ms. Fort, but is apparently just now

---

[3]  Copies of Ms. Fort's live-stream video, Mr. Lemon's live-stream video, and City Church's live-stream video, as produced by the government, are attached for the Court's convenience as Exhibits 2-4 respectively. Furthermore, relevant excerpts of those videos are attached as Ex. 2a and 2b (clips of the Fort live-stream), 3a (clip of the Lemon live-stream), and 4a and 4b (clips from the Cities Church live-stream), clearly disproving the government's false assertions in this affidavit and in others.

Ms. Fort is filing certain items under seal pursuant to the protective order. However, Ms. Fort does not believe the government can show a compelling government interest in continued sealing of these items, nor that such sealing is narrowly tailored, as is required under court rules, the common law, and the First Amendment, particularly since these videos are all publicly available. Ms. Fort respectfully requests the Court put the government to its burden to overcome the press and public's presumptive right of access to court filings in this matter, give the press and public an opportunity to be heard on that issue, and immediately unseal the items if the burden is not met.

undertaking such a review, in response to concerns expressed by the undersigned in the letter attached as Exhibit 1.  Crucially, in the parties' meet-and-confer on May 27, the government refused to answer when asked by Ms. Fort's counsel if these false statements about Ms. Fort had been presented to the grand jury.

The government has repeated the same false assertions Special Agent Gerber made about Ms. Fort throughout its investigation.  For example, it repeated in numerous other investigative reports and *sworn* affidavits the unfounded and false allegation that "Broadcast video obtained from Cities Church shows" Ms. Fort "chanting with agitators," including but not limited to the affidavits in:

- 26-MJ-87-SGE;
- 26-MJ-88-SGE;
- 26-MJ-89-SGE;
- 26-MJ-108-DJF;
- 26-MJ-113-DJF; and
- January 31, 2026 Pen-Trap submitted in E.D. of Pennsylvania.

To the contrary, that video shows no chanting by Ms. Fort.  Moreover, the few witness statements produced by the government that even pertain to Ms. Fort at all almost universally refer to her as a reporter engaged in typical journalistic newsgathering activities, as do the real-time communications and reports by the St. Paul Police Department, which followed her livestreamed news reports to assess the situation inside the church.  Indeed, although this motion pertains principally to the government's disclosure obligations under both *Brady* and this Court's orders, Ms. Fort's counsel also detailed to the government how each of the primary allegations against Ms. Fort in the

6

superseding indictment—which was obviously presented to the grand jury for its approval, are also materially false. *See* Ex. 1 at 3-5.

Given this pattern of (a) misrepresenting key facts about Ms. Fort to the Court and the grand jury, (b) failing to correct those misstatements to the Court, and (c) failing to disclose key materials to her counsel, Ms. Fort is now left with little choice but to seek the Court's intervention.

## ARGUMENT

The foregoing establishes an extremely troubling pattern of material inconsistencies between the government's averments about Ms. Fort's conduct, often made under oath, and the actual evidence. The government's failure to disclose key court records in 26-MJ-206-JFD coupled with what is now a documented pattern of false factual statements to the Court about Ms. Fort leads to several inescapable conclusions that precipitate this motion.

First, the government continues to disregard its *Brady* obligations even when ordered by the Court to comply. To the extent the government relied on or carried forward in the grand jury the same assertions about Ms. Fort that were rejected for lack of probable cause and/or that are patently false and misleading, those circumstances constitute potential *Brady* and *Giglio* material because they bear directly on the credibility, accuracy, and reliability of the government's evidence and theory of liability. *See United States v. Bagley*, 473 U.S. 667, 676 (1985) (holding that impeachment evidence in addition to exculpatory evidence falls within the *Brady* rule). Despite being placed on notice with Ms. Fort's specific and highly relevant request, the government has thus far refused to produce the relevant grand jury transcripts necessary to evaluate whether those allegations were

7

repeated or abandoned before the grand jury. *See United States v. Agurs*, 427 U.S. 97, 106 (1976) ("When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable."). The government must fulfill its legal and ethical duties to produce all *Brady* materials now, including providing all undisclosed affidavits or grand jury transcripts concerning Ms. Fort.

Conversely, if any of the seemingly inculpatory (yet actually and demonstrably false) allegations contained in prior affidavits were omitted by the government in its grand jury presentations about Ms. Fort, that omission itself is favorable evidence under *Brady* because it indicates the government did not regard those assertions as accurate or well-founded. Any retreat from false affidavit allegations about Ms. Fort tends to impeach the credibility and consistency of the government's investigation and therefore carries exculpatory value. As such, the government must fulfill its legal and ethical duties to produce any such *Brady* material now in whatever form it exists.

Second, the government's duty extends beyond mere disclosure. As officers of the Court, the government has a duty of candor to the Court—here, that requires the government to correct the record *immediately* in this case and in each of the MJ cases where a judge was supplied with materially false and inaccurate testimony about Ms. Fort (or any other defendant). Once the government becomes aware that factual assertions contained in affidavits are materially false, misleading, and unsupported, then principles of due process and prosecutorial candor require the government to correct the record, repudiate the false statements, and refrain from relying upon such false assertions in later proceedings. Repeating or recycling discredited assertions before the grand jury or the

8

Court raises serious concerns regarding due process and compliance with obligations under *Brady*, *Giglio*, and *Napue v. Illinois* and their progeny.  *See, e.g.*, *United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974) ("At the point at which he learned of the perjury before the grand jury, the prosecuting attorney was under a duty to notify the court and the grand jury, to correct the cancer of justice that had become apparent to him. To permit the appellants to stand trial when the prosecutor knew of the perjury before the grand jury only allowed the cancer to grow.")

Ms. Fort has brought these issues directly to the government's attention, including the existence of materially false and misleading assertions contained throughout sworn affidavits and reports. *See* Ex. 1. Although the government indicated that it would apparently review the issue, this is of little comfort since the government itself injected the obvious falsities into this case months ago where they have remained without retraction or correction.  And even if the government could be trusted to review the issue on their own, they refused to provide any time frame for doing so or reporting back their decision, such that there is no guarantee that the cancerous injustice here will not spread in the meantime. Nor can these failures reasonably be attributed to oversight or lack of resources.  The government has assigned no fewer than *nine* prosecutors to this matter.  Under such circumstances, the failure to correct the record (and to produce relevant grand jury materials) raises serious concerns about the government's willingness to fulfill its obligations and to uphold the integrity of the process itself.

As Ms. Fort emphasized to the government on May 26, the U.S. Department of Justice was very recently reminded of the unyielding ethical obligations to which all federal

prosecutors are bound. Ex. 1. Specifically, on May 21, in the Northern District of Illinois, the government was forced to dismiss the remaining charges against protestors five days before trial in the "Broadview Six" case as a result of improper government conduct before the grand jury. *Id.* (citing Tr., *United States v. Rabbit, et al.*, 25-cr-693 (N.D. Ill. May 21, 2026)). Judge April Perry's statements to the government in that case are of particular relevance here:

> I relied on all of you and your personal representations in this case about what has been issued in discovery, about the types of searches you have done for exculpatory material, about what arguments you will and will not make in this case. And I do that because, first of all, I treat every attorney who appears before me as an officer of the court. But secondly, because I put even more reliance on Department of Justice attorneys. Your sole goal is to do justice. Your client is justice itself.

Tr. at 23. These important obligations—all in service of a single mission: *to do justice*—require the government to do exactly that by promptly complying with its disclosure obligations and its duties of candor.

Ms. Fort respectfully asks the Court for an order directing the immediate disclosure of all *Brady* materials—including grand jury transcripts that bear on whether the government recycled or abandoned the same false assertions about Ms. Fort in its factual or legal presentations to the grand jury. Alternatively, Ms. Fort requests that the Court conduct *in camera* review of all grand jury materials in this case since, as the government itself has requested in this case and previously acknowledged "might be warranted in certain instances of serious prosecutorial misconduct." Gov't Consolidated Opp'n to Def. Mots. For Disclosure at 20 (ECF 479, Mar. 27, 2026).

## CONCLUSION

For the foregoing reasons, Ms. Fort respectfully requests that the Court the Court (a) order the government, once again, to produce all *Brady* materials, (b) disclose (or at least review *in camera*) the grand jury transcripts, including to determine whether the grand jury was also presented with materially false facts, (c) require the government to promptly and publicly correct its misrepresentations of fact about Ms. Fort, and (d) set a status hearing to address each of these issues.

Dated:  June 1, 2026

Respectfully submitted,

By:  *s/ Matthew Ebert*

**BALLARD SPAHR LLP**
Leita Walker
Matthew S. Ebert
Isabella Salomão Nascimento
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 371-3211
walkerl@ballardspahr.com
ebertm@ballardspahr.com
salomaonascimentoi@ballardspahr.com

Seth D. Berlin (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 508-1122
berlins@ballardspahr.com

**THE LAW FIRM OF KEVIN C. RIACH, PLLC**
Kevin C. Riach
125 Main St. SE, Suite 339
Minneapolis, MN 55412
Tel: (612) 203-8555
kevin@riachdefense.com
*Counsel for Georgia Ellyse Fort*