# Exhibit 1

# Ballard Spahr
### LLP

– – – – – – – – – – – – – – – – – –
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2119
TEL 612.371.3211
FAX 612.371.3207
www.ballardspahr.com

Matthew S. Ebert
Tel: 612.371.2418
Fax: 612.371.3207
ebertm@ballardspahr.com

May 26, 2026

Government Counsel of Record
U.S. Department of Justice

    Re:    *United States v. Armstrong, et al.*, No. 26-cr-25 (D. Minn.)

Counsel:

As you know, we represent defendant Georgia Ellyse Fort in connection with the above-referenced matter.

Based upon our ongoing review of the matter, including our ongoing review of discovery, the charges against our client suffer from numerous legal and factual deficiencies. We will address the *legal* flaws in the government's case in connection with forthcoming motions practice seeking to dismiss the superseding indictment (a) for failing to state an offense, (b) for violation of the First and Fifth Amendments, and (c) as a vindictive prosecution, among others. Today, however, we write to address the government's repeated false *factual* assertions about our client that permeate the superseding indictment, sworn affidavits, and investigative reports in this case.

Given the gravity of those falsehoods, especially in the aggregate, we request (a) immediate disclosure of additional affidavits and grand jury transcripts by 3:00 p.m. tomorrow, May 27, 2026, (b) an immediate meet-and-confer to address that issue at the earliest opportunity, but in no event later than 3:00 p.m. Central time tomorrow, and (c) a meet-and-confer to address more broadly the government's basis for its prosecution of Ms. Fort and its correction of the numerous factual misrepresentations about her made to the Court by no later than close of business Friday, May 29, 2026. We are otherwise prepared to seek immediate relief from the Court as to each of the issues outlined below.

First, we were deeply troubled to learn this morning that the government improperly sought a search warrant not once but *twice* for Ms. Fort's YouTube account with Google, both of which the Court appropriately rejected for lack of probable cause and under the Privacy Protection Act, 42 U.S.C. § 2000aa, which protects the use of warrants against journalists like Ms. Fort. *See* 26-MJ-206-JFD, ECF 1 and 3 (2/24/2026 and 3/06/2026 Application[s] for Search Warrant – Denied";

*May 26, 2026*
*Page 2 of 6*


26-MJ-205-JFD, ECF 1, 2/24/2025 Order Denying Search Warrant Applications). Including because they acknowledge her status as a journalist, these rejected warrants are quintessential *Brady* evidence that the government has a constitutional obligation to disclose.  However, we belatedly learned of this today—but not because the government complied with its *Brady* obligations.  Far from it, this incredibly significant *Brady* material came to light only because Magistrate Judge Docherty ordered its disclosure, having already opined in early March that he could "not foresee any harm that will come from advising the defendants [about] these . . . warrants." *Id.*, ECF 6, 5/1/26, at 3, quoting ECF 4, 3/6/26, at 7.

The government's constitutional requirement to comply with *Brady* is not optional, as the Court's January 30, 2026 *Brady* Obligation Order makes abundantly clear:

> Pursuant to the Due Process Protections Act the Court confirms the United States' obligation to disclose to [Ms. Fort] all exculpatory evidence-that is, evidence that favors [Ms. Fort] or casts doubt on the United States' case, as required by *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and orders the United States to do so. Failure to disclose exculpatory evidence in a timely manner may result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or other sanctions by the court.

*United States v. Fort*, Case No. 26-CR-25-LMP-DLM, ECF 63 (Jan. 30, 2026).

To make matters worse, Special Agent Timothy Gerber's rejected application about Ms. Fort is predicated on materially false information.  He falsely stated *under oath* in an affidavit in case number 26-MJ-206-JFD that "FORT went into the Cities Church, using her camera as the weapon to intimidate, threaten and scare the congregants." *See* 26-MJ-206-JFD, ECF 3, ¶ 27.  There is of course no factual (or legal) basis for such an assertion.  Special Agent Gerber also falsely stated that Don Lemon's livestream depicted Ms. Fort participating in various chants, including "ICE Out!," "Hands Up, Don't Shoot!," and "Stand Up, Fight Back!" *Id*. at ¶ 16.  The agent's statements about Ms. Fort are plainly contradicted by multiple livestreamed video streams from the church, including the Church's own.  In fact, those videos—and all other evidence produced so far by the government, including statements taken from eyewitnesses—shows the opposite, conclusively demonstrating that Ms. Fort did not chant with the agitators on January 18, 2026, and acted purely in her capacity as a journalist.

Regrettably, the government doubled down on these false assertions.  For example, it repeated in numerous other investigative reports and *sworn* affidavits the

*May 26, 2026*
*Page 3 of 6*

allegation that "Broadcast video obtained from Cities Church shows" Ms. Fort "chanting with agitators," including:

- 26-MJ-88-SGE;
- 26-MJ-89-SGE;
- 26-MJ-107-DJF;
- 26-MJ-108-DJF;
- 26-MJ-109-DJF;
- 26-MJ-113-DJF; and
- January 31, 2026 Pen-Trap submitted in E.D. of Pennsylvania.

The factual misstatements in the government's case against Ms. Fort do not end there, however. The few allegations about Ms. Fort in the superseding indictment (and the dismissed complaint affidavit) are not only unfounded but—yet again—conclusively disproven by the government's own evidence. In other words, this is the rare case where the government's own evidence *confirms* a defendant's innocence. Specifically:

- The superseding indictment alleges that Ms. Fort purportedly engaged in "menacing and threatening behavior," ECF 144, Overt Act #26, but that assertion is directly contradicted and disproven by video footage and numerous witness statements;

- The superseding indictment alleges that Ms. Fort attempted "to oppress and physically intimidate" the ▮▮▮▮, ECF 144, Overt Act #35, but that contention is contradicted and disproven by video footage and his own statements; and

- The superseding indictment alleges that Ms. Fort purportedly blocked a van while conducting an interview outside the church, ECF 144, Overt Act #41, but that averment is similarly contradicted and disproven by video footage and all available witness statements—all of which refer to a *male* doing so.

Indeed, not a *single* witness statement describes Ms. Fort as chanting; physically "menacing," "threatening," "oppressing" or "intimidating" anyone; impeding the ▮▮▮▮; or blocking a van. The few witness statements that pertain to Ms. Fort at all almost universally refer to her as a reporter engaged in typical journalistic newsgathering activities, as do the real-time communications and reports by the St. Paul Police Department, which followed her livestreamed news reports to assess the situation inside the church. To put it mildly, there is now a troubling pattern of material inconsistencies between the government's allegations about Ms. Fort's conduct and the evidence.

*May 26, 2026*
*Page 4 of 6*

To the extent that the superseding indictment attempts to plead around these deficiencies by alleging that Ms. Fort somehow participated in a conspiracy with the protestors, and did so deliberately, that contention is both legally and factually without merit. A journalist does not conspire with protestors simply by covering them. *See Goyette v. City of Minneapolis*, 2021 WL 5003065, at *5 (D. Minn. Oct. 28, 2021) (exempting journalists from otherwise lawful dispersal orders, ruling that just because a journalist is reporting on an unlawful assembly does not equate "to *participating* in an unlawful assembly"). And to the extent that the superseding indictment attempts to allege that Ms. Fort actively participated in a conspiracy because she had been advised in advance of the object of the supposed conspiracy, ECF 144, all of the evidence confirms otherwise.

Taken together, the foregoing is extremely troubling. The government's failure to disclose key court records coupled with what is now a documented pattern of false factual statements about Ms. Fort leads to two inescapable conclusions.

**First**, there is now renewed urgency to both the government's compliance with its disclosure obligations and our pending motion for disclosure of grand jury transcripts. It is now imperative that the government disclose any other undisclosed affidavits and disclose grand jury transcripts so that we—and the Court—can confirm whether any of the demonstrably false statements about Ms. Fort's conduct carried forward into the government's presentation to the grand jury. Put bluntly, the lack of inculpatory (and, indeed, the abundance of exculpatory) evidence—combined with the misstatements cited above, and the government's apparent (mistaken) belief that the fundamental rights guaranteed by the U.S. Constitution and/or a statute's rules of construction need not inform grand jury proceedings because they are "affirmative defenses,"[1] among other things—underscores the need for complete disclosure. Accordingly, by 3:00 p.m. Central time tomorrow, we must insist that you provide copies of any other affidavits that have not been disclosed as well as grand jury transcripts that concern Ms. Fort for both original and superseding indictments, or alternatively, confirm in writing that there are no such materials concerning her. If

---

[1] *See, e.g.*, Minute Order, *United States v. Handy*, Case No. 22-cr-096 (D.D.C. Aug. 14, 2023) (ruling with respect to 18 U.S.C. § 248(d)(1) that, "[a]s a threshold matter, a rule of construction is not an affirmative defense. . . . The statute here delineates no affirmative defenses"); *Planned Parenthood Ass'n of Southeastern Pennsylvania, Inc. v. Walton*, 949 F. Supp. 290, 293 (E.D. Pa. 1996) ("the [FACE] Act *by its terms* may not be construed to prohibit any expressive conduct . . . protected from legal prohibition by the First Amendment to the Constitution." (emphasis added)); *Zhang Jingrong v. Chinese Anti-Cult World All.*, 314 F. Supp. 3d 420, 438 (E.D.N.Y. 2018) (explaining, in the context of a FACE Act case, that invoking the First Amendment's limitations on the statute is not an affirmative defense).

*May 26, 2026*
*Page 5 of 6*

the government fails to provide this information by 3:00 p.m. tomorrow, we will file a motion promptly with the Court seeking full disclosure of such materials.

**Second**, the government's conduct more broadly calls into serious question the underlying basis for prosecuting Ms. Fort in the first place. Because the discovery you have produced to date serves only to exculpate her, please identify exactly what evidence you relied upon to support the charges brought against her. Specifically, please identify what evidence you relied on—and continue to rely on—to support the allegations against Ms. Fort in both Count 1 and Count 2 of the superseding indictment.

In that regard, the Justice Department's long-standing ethical requirements make clear that "[p]rosecutors have an ongoing obligation to evaluate a case and the provable evidence, even after offenses have been charged." *See* Justice Manual, 9-27.300 - Selecting Charges—Conducting an Individualized Assessment. After such an evaluation, "[i]f a prosecutor determines that, as a result of a change in the evidence or for another reason, a charge is no longer readily provable or appropriate, the prosecutor should dismiss those charges, consistent with the written policies of the district or litigating division and the *Principles of Federal Prosecution*." *Id.*

The Department of Justice was very recently reminded of its unyielding ethical obligations to which all federal prosecutors are bound. On May 21, in the Northern District of Illinois the government was forced to dismiss the remaining charges against protestors five days before trial as a result of improper government conduct before the grand jury. *See, e.g.*, Transcript, *United States v. Rabbit*, et al., Case No. 25-cr-693 (N.D. Ill. May 21, 2026). Judge April Perry's statements to the government in that case are of particular relevance here:

> I relied on all of you and your personal representations in this case about what has been issued in discovery, about the types of searches you have done for exculpatory material, about what arguments you will and will not make in this case. And I do that because, first of all, I treat every attorney who appears before me as an officer of the court. But secondly, because I put even more reliance on Department of Justice attorneys. Your sole goal is to do justice. Your client is justice itself.

Tr. at 23.

These important obligations—all in service of a single mission: *to do justice*—require the government to seriously and immediately reevaluate its case against Ms. Fort. The discovery produced so far quite conclusively demonstrates that the charges against Ms. Fort are neither readily provable nor appropriate and that continuing to press ahead with them would underscore the vindictive nature of this

*May 26, 2026*
*Page 6 of 6*

prosecution. *See, e.g., United States v. Abrego Garcia*, Case No. 3:25-cr-00115, ECF 312 at 12-13 (M.D. Tenn. May 22, 2026) (reviewing government's unfounded factual contentions and dismissing prosecution as vindictive, notwithstanding evidence of defendant's guilt (which is absent here)). As such, you should dismiss the case against Ms. Fort with prejudice, as your professional and ethical obligations require you to do. In addition, the government has a duty of candor to the Court—here, that requires the government to correct the record immediately in this case and in each of the MJ cases where a judge was supplied with false and inaccurate testimony about Ms. Fort.

In summary, before Ms. Fort seeks appropriate relief from the Court about these issues, we are notifying the government first with the expectation that you will do everything necessary to fulfill your legal and ethical duties to produce all *Brady* material now, including providing all sealed affidavits or grand jury transcripts concerning Ms. Fort by 3:00 p.m. Central time tomorrow. In addition, we request a meet and confer by no later than Friday, May 29, 2026, about your obligation to alert the judges to whom factually inaccurate information was provided and, ultimately, to discuss dismissal of the charges against Ms. Fort with prejudice in light of the substantial infirmities in the government's factual presentation.

We look forward to speaking with you promptly about these matters of grave concern.

Sincerely,

Matthew S. Ebert
Ballard Spahr LLP