**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br>v.<br><br>[8] Georgia Ellyse Fort,<br><br>Defendant. | Case No. 26-cr-00025-LMP-DLM<br><br>REPLY MEMORANDUM IN SUPPORT OF MOTION FOR IMMEDIATE DISCLOSURE AND FOR HEARING/STATUS CONFERENCE |

Defendant Georgia Ellyse Fort, through counsel, respectfully submits this brief reply memorandum, and states as follows:

1.     On the day after Ms. Fort filed the instant motion to address a series of factual misstatements about her, the government filed a "Notice of Intent to Respond" promising that its forthcoming response would address the concerns raised by Ms. Fort to such degree that "no hearing [would be] needed (on an expedited basis or otherwise)." ECF 533 at 2.

2.     When the government filed that response, it *admitted* that it included false statements about Ms. Fort "chanting" in eight separate affidavits presented to no fewer than three judges of this Court and at least one judge in another District. ECF 539 at 1-2, 7-8. The government further agreed that, upon reflection, "two lines" of grand jury testimony should be presented to this Court for *in camera* review. *Id.* at 16.[1] Addressing its past conduct, the government stated that "mistakes are inevitable," "it does its best to avoid

---

[1] The government separately asked for authorization to produce a percipient witness's testimony to defendants, ECF 531, which the Court granted on June 4, 2026, ECF 537. To date, the government has not produced that testimony to Ms. Fort's counsel.

1

them," and that, "[w]hen they occur, the Government discloses and fixes them in accordance with Department policy and the Court's justifiably high expectations." *Id.* at 2.

3.    However, the government's response actually confirms that it has *not* done so in multiple respects and underscores the need for a hearing on Ms. Fort's motion—and for the Court to review complete transcripts of the grand jury proceedings to see the extent to which the government's material misrepresentations about Ms. Fort's conduct infected the decision to indict her.

4.    **First**, the government suggests that its concededly false statements do not matter because they did not appear in the rejected complaint affidavit or in either iteration of the indictment. *Id*. at 2-5, 11-12. But that does not address whether the admitted falsehood about "chanting" was carried forward into the grand jury, which the government has steadfastly refused to address.

5.    **Second**, the government's response ignores the host of *other* material factual misrepresentations about Ms. Fort all of which *do* appear in the superseding indictment. Ms. Fort's counsel identified those falsehoods to the government more than two weeks ago and then again in her motion. *See* ECF 528 at 6-7 & Ex. 1 at 3-5. Yet, *nowhere* in the government's 18-page response does it address the following significant misstatements of fact about her conduct found in the superseding indictment:

- The allegation that Ms. Fort purportedly engaged in "menacing and threatening behavior," ECF 144, Overt Act #26, which is directly contradicted and disproven by video footage and numerous witness statements;

- The allegation that Ms. Fort attempted "to oppress and intimidate" the Pastor, ECF 144, Overt Act #35, which is contradicted and disproven by video footage *and* ███████████████████; and

- The allegation that Ms. Fort purportedly blocked a van while conducting an interview outside the church, ECF 144, Overt Act #41, which is contradicted and disproven by video footage and all available witness statements—all of which refer to a *male* doing so.

In fact, not a single witness statement describes Ms. Fort as physically "menacing," "threatening," "oppressing" or "intimidating" anyone; impeding the Pastor; or blocking a van. The substantial video footage in the government's possession likewise demonstrates that these factual averments are false. Since these are the key factual allegations asserted against Ms. Fort, the Court should convene a hearing and require the government to address at that time, if not before, (a) whether these averments about Ms. Fort in the superseding indictment, which the government presumably presented to the grand jury for its ratification, are also false, and (b) what steps it intends to take to correct those material falsehoods.

6. **Third**, the government's response argues that its false statements about Ms. Fort were "simple mistakes (*e.g.*, drafting errors)," not intentional inaccuracies. ECF 539 at 17. The government begins by attempting to draw a distinction between sworn affidavits and "about to be sworn" affidavits submitted to federal magistrate judges for approval. *Id*. at 1, 6 n.1, 7-8. But the government is of course required to present an accurate statement of material facts, regardless of whether they appear in a sworn affidavit or in a proposed affidavit submitted to a federal judge which, if approved, would then be sworn.

7.     Next, the government attempts to explain away its conduct claiming that it erroneously copied the "chanting" falsehood multiple times into successive affidavits and proposed affidavits.  But the government's "copy-paste" explanation of what happened here is itself based on a material misstatement.  On January 23, 2026, Special Agent Timothy Gerber swore, under penalty of perjury, that "Broadcast video obtained from Cities church shows" Fort "chanting with agitators."  *See* Appl. For Search Warrant, *In re Search Warran*t, No. 26-MJ-87-SGE (Jan. 27, 2026), ECF 3 ¶ 43.  In that same affidavit, Special Agent Gerber attested that the facts were based on his "personal observations" and "review of documents and other evidence," including portions of multiple livestreams of the January 18, 2026 events that he personally watched.  *Id*. ¶¶ 3, 14, 41.  The "chanting" allegation was false, as the government now concedes.

8.     More than a month later, on February 24, 2026, and March 6, 2026, the government submitted affidavits to Magistrate Judge Docherty.  Far from copying and pasting the earlier, generic allegation that Ms. Fort was "chanting," and despite previously attesting (under oath) to having personally reviewed the livestreams, Special Agent Gerber actually amplified his false allegations against Ms. Fort.  His later affidavits averred that Defendant Don Lemon's livestream footage depicts Ms. Fort shouting *specific* chants, including "ICE Out!," "Hands Up, Don't Shoot!," and "Stand Up, Fight Back."  *See* Appl. For Search Warrant, *In re Search Warrant*, No. 26-MJ-206-JFD (Mar. 6, 2026), ECF 3 ¶ 16.  This, too, was false.

9.     Moreover, although the government pats itself on the back for not also including the false "chanting" allegation in the superseding indictment, ECF 539 at 2-5,

4

11, the March 6 affidavit, which directly addressed and targeted Ms. Fort, post-dated that indictment and yet the government continued to include that unfounded averment about her. Thus, the government's contention that the repeated inclusion of the "chanting" falsehood, subsequently expanded with a host of false details, was "inadvertent or negligent" is simply not well-taken. The Court should also require the government to address at a hearing these misstatements, offered in an attempt to explain away its now-admitted falsehoods.

10.     **Fourth**, the government appears to contend that all its false statements about Ms. Fort's conduct ultimately do not matter because it indicted her for purportedly participating in a conspiracy. *See* ECF 539 at 13 (analogizing Ms. Fort to a getaway driver in a bank robbery). The government's theory is, of course, wrong as a matter of law. Unlike a getaway driver, a journalist does not conspire with protestors simply by covering them. *See, e.g.*, *Goyette v. City of Minneapolis*, 2021 WL 5003065, at *5 (D. Minn. Oct. 28, 2021) (exempting journalists from otherwise lawful dispersal orders, ruling that just because a journalist is *reporting* on an unlawful assembly does not equate "to *participating* in an unlawful assembly"). But, for present purposes, Ms. Fort focuses on the government's *factual* basis for alleging in the superseding indictment that her conduct—including supposedly "chanting," "threatening," "oppressing," "intimidating," impeding the Pastor, and blocking the van—supports a criminal conspiracy charge. As explained above, that foundation is built on incredibly shaky ground, including a raft of material factual

5

misrepresentations that it promised to address (and correct as necessary), but has yet to do so.[2]

11.    Accordingly, Ms. Fort renews her request for a prompt hearing or status conference, and asks that the Court direct the government to be prepared to address at that time, if not before: (a) the factual misrepresentations contained in the superseding indictment that the government failed to address in its response, *see* ¶ 5, *supra*, (b) the accuracy of the government's supposed explanation of how its false statements about chanting repeatedly made their way into sworn affidavits, growing as they went along, *see* ¶¶ 6-9, and (c) whether the government's various material falsehoods about Ms. Fort, especially taken in combination, require the disclosure of grand jury transcripts (or at a minimum *in camera* review of them), since it appears quite likely that the grand jury was misled on key, material facts about Ms. Fort's conduct.  Indeed, given the government's prior misstatements, including those it made as it tried to explain away its falsehoods about "chanting," the Court should not simply accede to the government's decision to disclose one witness's testimony to the defense and submit two other lines of the transcript *in camera*, *see* ¶ 2 & n.1, *supra*.  Simply put, in these circumstances, the government should not be permitted to serve as the sole arbiter of what the Court gets to see.

---

[2] The government also seems to suggest that it may address this issue by producing additional discovery, including additional *Brady* materials, on a rolling basis.  ECF 539 at 9.  Even if the government were correct that the Constitution does not require production of such materials until trial, *id.* at 9-11, the government is still required to abide by orders issued by this Court, which most recently ordered the government to complete its production of discovery by May 22, almost three weeks ago.  *See* ECF 540 at 9-10 (denying request for order requiring production of *Brady* material as moot because May 22, 2026 deadline for producing discovery had already passed).

Dated:  June 11, 2026

Respectfully submitted,

By: *s/ Matthew S. Ebert*

**BALLARD SPAHR LLP**
Leita Walker
Matthew S. Ebert
Isabella Salomão Nascimento
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 371-3211
walkerl@ballardspahr.com
ebertm@ballardspahr.com
salomaonascimentoi@ballardspahr.com

Seth D. Berlin (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 508-1122
berlins@ballardspahr.com

**THE LAW FIRM OF KEVIN C. RIACH, PLLC**
Kevin C. Riach
125 Main St. SE, Suite 339
Minneapolis, MN 55412
Tel: (612) 203-8555
kevin@riachdefense.com
*Counsel for Georgia Ellyse Fort*