UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

NEKIMA LEVY ARMSTRONG, et al. ,

Defendants.

Case No. 0:26-cr-00025-LMP-DLM

**JOINT MOTION TO DISMISS COUNTS ONE AND TWO FOR FAILURE TO STATE AN OFFENSE**

## I.    INTRODUCTION

The defendants joining this motion participated in a nonviolent political demonstration at a church service in protest of federal law enforcement practices that had led to the shooting death of a young mother in Minneapolis. The defendants are charged with two federal felonies that together carry a maximum prison sentence of 20 years.  The 19-page superseding indictment against them—a "speaking indictment"—alleges detailed facts describing the protest from its inception, through its planning, and through its execution at Cities Church in St. Paul on January 18, 2026.  Yet nowhere in those 19 pages does the indictment allege a single fact that any defendant used physical force against another person, issued a threat of violence to anyone, or fully blocked ingress to or egress from the church, as is required by the charged statutes.  To the contrary, the indictment alleges facts that, even if true, are not conduct actually prohibited by the charged statutes. Nor does the indictment allege any fact showing that any two defendants—let alone all 38 who have been charged—entered an agreement to injure, oppress, threaten, or intimidate another person through the use of force, threat of force, or

1

physical obstruction that blocks ingress to or egress from the church. But those are the elements of the offenses with which the defendants have been charged. Because the exhaustive facts alleged by the government in the indictment, even if presumed true, fail to state either charged offense, the defendants respectfully move this Court to dismiss both counts.[1] Additionally, Count One, which purports to charge a conspiracy to violate a right secured by federal law, fails to allege crucial elements of the underlying right the defendants are accused of conspiring to violate, and Count One must be dismissed for that reason as well.

## II. LEGAL ANALYSIS

### A. Notice Pleading

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). It must also provide two key constitutional safeguards for the defendant: first, it must contain every element of the offense and sufficiently apprise the defendant of what he or she must be prepared to meet; and second, it must allow the defendant to plead double jeopardy in a future case. *See Russell v. United States*, 369 U.S. 749, 763-64 (1962); *see also, Hamling v. United States*, 418 U.S. 87, 117 (1974) (an indictment must fairly inform a defendant of the charge against which he or she must defend, and allow him to plead double jeopardy in a future prosecution); *United States v. Steffen*, 687 F.3d 1104, 1109 (8th Cir. 2012)

---

[1] Throughout this motion, the defendants presume the truth of the government's allegations, as the law requires at this stage of the proceedings. However, the defendants intend, at the appropriate time, to prove that many of the allegations are false.

(*citing United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993)) (same).

Inherent in the two safeguards provided by an indictment is that a defendant must have notice of what conduct and *mens rea* he or she is being accused of.  A defendant is entitled to an indictment that states every element of every offense.  *See Jones v. United States,* 526 U.S. 227, 232 (1999).  Additionally, "[t]he indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime."  *United States v. Pirro,* 212 F.3d 86, 93 (2d Cir. 2000).

An indictment that tracks the language of the statute being charged may—but does not always—serve both of those purposes.  Sometimes, tracking the language of the statute is not enough to apprise the defendant of the crime with which he or she is being charged.  *See Russell*, 369 U.S. at 764 (noting that language charging a violation of 2 U.S.C. § 192, making it an offense to refuse to answer any question of Congress that is "pertinent to the question under inquiry," was fatally deficient where it failed to identify the pertinent area of inquiry).  Tracking the statutory language is particularly insufficient where the law at issue, like the civil rights conspiracy statute, fails to identify the conduct it prohibits and instead incorporates by reference rights defined elsewhere (namely, in the Constitution and in federal laws).  *See United States v. Lanier*, 520 U.S. 259, 265 (1997) ("[I]n lieu of describing the specific conduct it forbids, each statute's general terms incorporate constitutional law by reference").  The Supreme Court held that a civil rights conspiracy indictment was defective when it failed to identify with particularity the right that was the object of the civil rights conspiracy. *United States v. Cruikshank*, 92 U.S. 542, 569 (1876) (explaining that a charge that the conspirators acted intentionally to

3

hinder and prevent victims in the "free exercise and enjoyment of every, each, all and singular the several rights and privileges granted and secured to them by the constitution and laws of the United States" was insufficient because it failed to define any right at issue with the "certainty and precision' required by the rules of criminal pleading.). Thus, a § 241 indictment must track the language not only of § 241, but also of the statute allegedly creating the right (here, § 248(a)(2), as incorporated into § 248(c)).

Even where the government tracks all relevant statutory language, the indictment is sufficient only if it "set[s] forth the offence … fully, directly, and expressly, without any uncertainty or ambiguity." *Russell*, 369 U.S. at 765 (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)); *see also United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988) (quoting *Hamling,* 418 U.S. at 117) (same).

An indictment also must "'inform the court of the facts alleged, so that [the court] may decide whether [the facts] are sufficient in law to support a conviction, if one should be had.'" *Russell*, 369 U.S. at 768 (citing *Cruikshank,* 92 U.S. at 558).  Although an indictment certainly need not include every fact that the government intends to use at trial to support its case, *see, e.g., United States v. Morales*, 813 F.3d 1058, 1067 (8th Cir. 2016), it must include a sufficient factual basis to support the charge. *See Russell*, 369 U.S. at 768.  And where, as here, the government chooses to charge defendants through a 19-page speaking indictment with 41 overt acts, at least some of the facts contained therein must support the crimes charged.  Here, none do.

A defendant may challenge the sufficiency of an indictment pursuant to Federal Rule of Criminal Procedure 12(b), which permits a defendant to move to dismiss an

indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). Under this provision, a defendant can challenge the indictment for failing to include an element of the offense, or for alleging facts that, even if true, "fall beyond the scope of the [charged] statute, as a matter of statutory interpretation." *See United States v. Stock,* 728 F.3d 287, 292-93 (3d Cir. 2013) (internal citation omitted) (defendant's motion to dismiss was appropriate where defendant who was charged with making a threat claimed that his alleged communication was, as a matter of law, not a threat); *see also United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012) ("[A] federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute."); *see also United States v. Aleynikov*, 737 F. Supp. 2d 173 (S.D.N.Y. 2010) (citing *Pirro*, 212 F.3d at 93) ("Dismissal is required where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute."). An indictment "must be dismissed" where the actions alleged in the indictment "could not possibly form the basis of liability of the offenses charged." *United States v. Morales,* 24-cr-453 (BMC), 2026 U.S. Dist. LEXIS 2601, at *3 (E.D.N.Y. Jan. 7, 2026).

When considering a motion to dismiss, the Court must accept the government's factual allegations as true. *United States v. Hansmeier*, 988 F.3d 428, 436 (8th Cir. 2021) ("In [reviewing a motion to dismiss an indictment], we accept the allegations stated in the indictment as true, and ask whether they can form the basis of the charged offense.") (internal citation omitted); *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000) (noting that a pretrial motion to dismiss may not be predicated on a sufficiency-of-the-evidence claim, which is inappropriate before trial).

Often, a motion to dismiss arises when an indictment includes so few facts that the defendant is not on notice of the crime charged. But even a detailed indictment can give rise to such a motion, when the indictment (1) fails to include every element of the offense; (2) depends entirely upon factual allegations that, even if true, do not establish the elements of the offense; or (3) rests upon an incorrect or inaccurate theory of liability. As recounted more fully below, the superseding indictment in this case flagrantly violates each of these principles. For this reason, both counts must be dismissed for failure to state an offense.

First, Count One is entirely devoid of a critical element of the offense because it omits a crucial part of the underlying right that the defendants are accused of conspiring to violate.

Second, both counts allege elements that cannot be established, as a matter of law, by the facts alleged in the superseding indictment. Count One (as charged[2]) requires proof of an agreement to oppress, threaten, or intimidate; however, the detailed factual narrative purporting to describe the alleged agreement demonstrates nothing more than an agreement to hold a political protest at a church and thereby disrupt a service. Similarly, although the indictment alleges that the intent of the agreement was to violate the FACE Act, the facts show no agreement to use force, threat of force, or physical obstruction sufficient to block ingress or egress or render such ingress or egress unreasonably difficult or hazardous. The facts also do not suggest that any alleged conspirator

---

[2] The defendants intend to file a separate motion explaining that because Count One alleges a non-existent right, Count One must be dismissed for that reason as well.

considered engaging in any of the prohibited conduct, much less that any two or more conspirators *agreed* to do so.  Finally, the indictment is devoid of any fact showing that the conspirators' actions were aimed at interfering with the right they are charged with agreeing to violate.

Count Two likewise is supported by an extensive factual narrative that, even if proved true, fails as a matter of law to meet the elements of the charged offense. Although the indictment alleges that the defendants used force, threats, and physical obstruction, it contains not a single fact suggesting that any defendant engaged in any of that conduct. There is no factual allegation describing conduct that qualifies legally as a use of force.  There is no factual allegation describing conduct that qualifies legally as a true threat.  And there is no factual allegation describing conduct that qualifies legally as a "physical obstruction" as that term is defined in the statute.  Thus the facts, even taken as true, demonstrate that the defendants did *not* use force or a threat of force, and did *not* engage in physical obstruction as defined in the FACE Act.

Both Counts also rest on legally insufficient theories of liability.  Specifically, the indictment ignores both the First Amendment and the FACE Act's own rules of construction to charge the defendants for exercising their right to free speech and the right to petition government actors for redress of grievance.  Count One appears to be based on the incorrect legal theory that an agreement to engage in conduct that disrupts a church service constitutes a federal civil rights conspiracy, and that incorrect legal theory is based on the equally legally incorrect belief that there exists in federal law a general right to be free from private people disrupting such a service.  Additionally, Count Two,

the FACE Act count, appears to be based entirely on the incorrect legal theory that it is a federal crime to intentionally engage in conduct that disrupts a church service.  Those theories are incorrect, as a matter of law, as explained below.

**B.  The Charged Offenses – Legal Standards**

Any analysis of the sufficiency of an indictment to state an offense necessarily includes reference to the elements of the charged offenses; if the alleged facts cannot possibly make out an offense based on those elements, the indictment must be dismissed. *See Russell,* 369 U.S. at 768; *United States v. Welke*r, 75 F.4th 820, 822 (8th Cir. 2023) ("Whether an indictment sufficiently states an offense, then, depends on the elements of the charged offense.").

Count One alleges that the defendants conspired to oppress, threaten, and intimidate members and employees of the Cities Church in the exercise of a federally protected right, described in the superseding indictment as "the First Amendment right of religious freedom at a place of religious worship, as secured by Title 18, United States Code, Section 248(c)."  Count Two alleges that the defendants violated 18 U.S.C. § 248(a)(2), with [unspecified] resulting bodily injury to a congregant.  Because the conspiracy charge involves conduct described in § 248, we discuss the elements and legal requirements of § 248 (Count Two) before describing the elements and legal requirements of § 241 (Count One).

1.  <u>Count Two, 18 U.S.C. § 248 (The FACE Act)</u>

The defendants are charged in Count Two with aiding and abetting one another in the commission of a violation of 18 U.S.C. § 248(a)(2), the worship provision of the

Freedom of Access to Clinic Entrances Act (the FACE Act).

### a. The Accusation

Count Two charges that the defendants, "by use of force, threat of force, and physical obstruction, intentionally injured, intimidated, and interfered with, and attempted to injure, intimidate, and interfere with multiple persons, including the Church's congregants, clergy, and staff, who were then lawfully exercising and seeking to exercise the First Amendment right of religious freedom at a place of religious worship, which conduct resulted in bodily injury to one of the congregants."  Doc. 144, at 18.

### b. The Statute

The statute, 18 U.S.C. § 248(a)(2), reads:

> Whoever … by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship [shall be punished].

18 U.S.C. § 248(a)(2).

### c. The Elements of the Offense

The elements of the charged violation of § 248(a)(2) are:  (1) that the defendant used force, the threat of force, or physical obstruction (as that term is narrowly defined in the statute), (2) that the defendant acted with intent to injure, intimidate, or interfere with another person; (3) that the other person was lawfully exercising religious freedom at a place of worship; and (4) that the offense resulted in bodily injury to another person.  18 U.S.C. § 248(a)(2); s*ee also United States v. Dinwiddie*, 76 F.3d 913, 917-18 (8th Cir. 1996) (generally discussing statutory language of § 248(a)(1)); *United States v. Harlow*,

9

No. 22-096-4 (CKK), 2023 WL 7880183, at *5 (D.D.C. Nov. 16, 2023) (unpublished) (reciting elements of § 248(a)) and citing (*Terry v. Reno*, 101 F.3d 1412, 1414 (D.C. Cir. 1996)).

Subsection (e) of § 248 contains statutory definitions.  It defines "[to] intimidate" as "to place a person in reasonable apprehension of bodily harm to him."  It defines "physical obstruction" as "rendering impassable ingress to or egress from … a place of religious worship, or rendering passage to or from such … place of religious worship unreasonably difficult or hazardous."  And it defines "to interfere with" as "to restrict a person's freedom of movement."

### d.  Legal Principles Underlying § 248(a)(2)

Although the term "threat" is not defined in the statute, the Supreme Court has recognized that to form the basis of a criminal charge, an expression must be a "true threat," meaning that it must be a statement "where the speaker *means* to communicate a serious expression of an *intent to commit an act of unlawful violence* to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003) (emphasis added). Moreover, the Eighth Circuit, upholding the constitutionality of a parallel provision of the FACE Act, held that the threats outlawed by the statute were those threats that met the statutory definition of "intimidation" (meaning those threats that place a person "in reasonable apprehension of bodily harm"). *Dinwiddie*, 76 F.3d at 922.

Thus, § 248 requires that a defendant *both* (1) engage in one of three prohibited actions (the use of physical force, issuance of a threat intended to put someone in fear of

10

bodily harm, or physical obstruction that rendered impassable ingress to or egress from a building), *and* (2) did so with an intent to injure, or place in apprehension of bodily harm, or restrict the freedom of movement of a person who was lawfully exercising their religious freedom.

Additionally, § 248 contains a subsection with "rules of construction" that provide binding guidance to any court interpreting the reach of the statute's criminal provisions. Subsection § 248(d)(1) states that nothing in the statute shall be construed "to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution."  18 U.S.C. § 248(d)(1).  Where, as here, Due Process concerns (such as those raised by an indictment that fails to state an offense) and First Amendment concerns (such as those raised by an indictment for a nonviolent political protest) are both implicated, the Court is to apply the Due Process Clause with particular vigilance.  *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982) (noting that the heightened vigilance applies when a prosecution is brought "in a way that might interfere with the right of free speech or of association").

2.  Count One, 18 U.S.C. § 241

a.  *The Accusation*

The defendants are charged in Count One with conspiring, in violation of 18 U.S.C. § 241, to "oppress, threaten, or intimidate [members of Cities Church] in the free exercise and enjoyment of the rights and privileges secured to them by the laws of the United States, and because of such persons having exercised such rights, namely, exercise

11

of the First Amendment right of religious freedom at a place of religious worship, as secured by [18 U.S.C. 248(c)]."

### b. The Statute

The statute, 18 U.S.C. § 241, states:

> If two or more persons conspire to injure,[3] oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same, [he shall be punished].
> 18 U.S.C. § 241.

### c. The Elements of the Offense

The elements of a § 241 offense are (1) that an agreement (a meeting of the minds) existed; (2) that the purpose of the agreement was to injure, oppress, threaten, or intimidate another person in the exercise of a federally protected right; and (3) that each defendant willingly joined the conspiracy, intending its purpose. 18 U.S.C. § 241. *See also* EIGHTH CIR. PATTERN CRIM. JURY INSTRUCTION, § 6.18.241 (Conspiracy to Deprive a Person of Civil Rights (18 U.S.C. § 241) (setting forth elements)).

### d. Legal Principles Underlying § 241

The terms "injure, oppress, threaten, and intimidate" require more than conduct that is interruptive or unpleasant. *United States v. Magleby*, 420 F.3d 1136, 1143 (10th Cir. 2005) (holding that § 241 instructions to petit jury were flawed because the jury was allowed to consider the ordinary meaning of "oppress, threaten, and intimidate" rather

---

[3] The government omitted the word "injure" from the indictment, in an apparent concession that the defendants did not agree to "injure" anyone at the church.

than using a definition focused on true threats, and noting that "[m]any acts short of unlawful violence may constitute oppression or intimidation in the everyday sense of these words" ) (relying on *United States v. Lee*, 935 F.2d 952, 960 (8th Cir.1991) (R. Arnold, J., dissenting), *rev'd en banc*, 6 F.3d 1297 (8th Cir.1993)).

### C. Application of Legal Standard to the Indictment

#### 1. Count Two, 18 U.S.C. § 248 (The FACE Act)

Although the government in Count Two tracked the language of § 248(a)(2)—alleging that the defendants "intentionally injured, intimidated, and interfered with" church members "by use of force, threat of force, and physical obstruction"—the facts it alleged, even if proven true, could not establish those elements. The detailed assertions in the superseding indictment contain no allegation of any act of force by any defendant (let alone all defendants); no allegation of any true threat by any defendant (let alone all defendants); and no allegation that any defendant (let alone all defendants) physically obstructed the church as "physical obstruction" is defined in the statute. It also contains no factual allegation suggesting that any defendant engaged in any conduct with intent to harm (or put in fear of bodily harm) any other person.

The government's allegations appear to be based on a misreading of § 248(a)(2). Specifically, the government treats the statute as if it makes it a federal crime simply for a person to intentionally disrupt a church service (to "interfere," in the colloquial sense, with another person exercising religious freedom at a church). To the extent that the government considers the requirement of force, threat of force, or physical obstruction, it appears to rely on informal, common-usage definitions of those terms, rather than the

13

definitions provided by the statute and case law.  The superseding indictment treats "threat of force" as if it means "an action that has the effect of making someone else feel fear"; treats "physical obstruction" as if it means "making a person's passage somewhat more difficult"; and treats "[to] intimidate" as if it means "to make someone feel nervous, upset, or angry."

And the government completely ignores the requirement that the defendant's actions must be taken *with the intent to harm another person, place another person in apprehension of bodily harm, or restrict another person's freedom of movement.*

Here, taking as true the government's factual allegations, it is clear that these defendants simply held a nonviolent political demonstration that disrupted a church service. Even taking all factual allegations as true, it is clear that the *intent* behind the defendants' actions was to protest ICE policies—not to harm church members or intimidate them in their exercise of religion.  There is no fact alleged in the 19-page superseding indictment that indicates otherwise.

If the government proves every factual allegation in the indictment, the government may show that the defendants' actions made it slightly more difficult for a congregant to move around inside the church or to get to the exit—for example, by making it necessary for a congregant to move to one side of a partially blocked aisle.  But there is no alleged fact or combination of alleged facts that establishes complete obstruction of ingress or egress, or conduct that rendered ingress or egress unreasonably hazardous.

Similarly, the alleged facts might, if proven, establish that the defendants' actions

14

had the effect of putting some members of the church in fear. It is quite possible—particularly in light of the frayed nerves of many Minnesotans due to ICE activity—that the actions described in the indictment could result in congregants being concerned or disquieted when a group of protesters criticized them and their pastor in a church. But a true threat requires more under the law. And the facts set forth in the indictment, even if proved at trial, cannot demonstrate that any defendant threatened any clergy, staff, or congregant.[4]

Moreover, even if all the factual allegations are true, the conduct at issue (a nonviolent political protest) falls squarely within the ambit of the rule of construction, 248(d); accordingly, the statute prohibits this prosecution and the charge in Count Two fails to state an offense. Given that the protest falls under the protection of both the First Amendment and the rule of construction, the government's theory of liability is legally insufficient, providing yet another ground to dismiss Count Two of the Indictment.

2. <u>Count One, 18 U.S.C. § 241 (Civil Rights Conspiracy)</u>

In Count One, the government tracked the language of 18 U.S.C. § 241, charging that the defendants conspired "to oppress, threaten, and intimidate" church members and staff "in the free exercise and enjoyment of [a federally protected right], and because of such persons having exercised such rights." The government then defined the relevant

---

[4] A hypothetical helps illustrate this point: if an indictment charged that a defendant used a facility of interstate commerce to communicate a threat of bodily harm to another person, in violation of 18 U.S.C. § 375, and the charging language described the offense conduct as, "to wit: the defendant passed the [victim] on a Minneapolis sidewalk and said 'hello,'" that indictment would be dismissed for failure to state an offense because the charged conduct fails, as a matter of law, to establish criminal liability.

right as "the First Amendment right of religious freedom at a place of religious worship," and specified that this right is secured by the civil provision of the FACE Act, 18 U.S.C. § 248(c). [The civil provision incorporates the criminal provisions, so the alleged right is actually *described* in 248(a)(2) (the worship provision), even if it is *secured by* § 248(c).]

This charge is legally insufficient in multiple ways. First, the "right" that it alleges is secured by § 248(c) (incorporating the conduct prohibited by § 248(a)(2)) does not, in fact, exist. If § 248(c) (incorporating language from § 248(a)(2)) creates a right at all, the scope of that right is defined by the language of § 248(a)(2), the worship provision. But rather than tracking the language of the worship provision, the government tracked *half* of the language of that provision. Specifically, instead of defining the right as "the right to exercise religious freedom at a place of religious worship, *free from force, threats, and physical obstruction intended to injure, intimidate, or interfere with the person,"* the government defined the right without any reference to force, threats, or obstruction. *See United States v. Oropesa*, 159 F.4th 912, 916 (11th Cir. 2025) (finding that a parallel provision of the FACE Act created "a statutory right to *be free from threatened and actual force* while seeking to obtain or provide reproductive health services." *Id.* (internal quotations omitted) (emphasis added). Because the indictment does not incorporate the language of the right (assuming that right even exists) and instead cherry-picks partial language from the statute that allegedly creates the right, the result is that Count One incorporates a non-existent "right' and is thus missing a critical element. Thus, Count One does not state an offense and must be dismissed.

Next, although the superseding indictment accuses defendants of "conspiring to

16

oppress, threaten, and intimidate" church members and staff in the exercise of that right, it does not allege a single fact that, if proven true, would establish that any two people (let alone 38 people) *agreed* with each other that they would oppress, threaten, or intimidate anyone.  It also nowhere alleges facts showing that any of the defendants agreed to oppress, threaten, or intimidate anyone *through the use of force, threats, or physical obstruction*, let alone that they also did those things *with intent* to interfere with religious freedoms. Because the government's allegations fall beyond the scope of § 241 and as a matter of law cannot establish grounds for liability, Count Two must be dismissed.

The government's insufficient theory of liability on the conspiracy charge appears to be that it is a federal crime to agree with others to engage in conduct in a church that has the effect of disrupting a church service.  The indictment alleges, for example, that a defendant "admitted" that the whole point of the operation was "to disrupt" (and separately alleges that a defendant spoke of a plan to "disrupt business as usual").  Because "disrupting business as usual" is not a crime of any sort, and because disrupting a church service by any means other than force, threat, or physical obstruction is not a federal crime, these allegations suggest that the government's indictment is based on a legally insufficient theory of liability.  Indeed, if disrupting business as usual were a crime, then the government could routinely charge abortion protesters with violating 248(a)(1) if they protested at a clinic with the intent of using signs and chants to persuade patrons not to enter the clinic for abortions – thereby disrupting the business of the clinic. Even if the facts alleged in the current indictment are true, proof that certain defendants

17

acted with intent to disrupt (whether "business as usual" or a church service) does not

established guilt on either charge.

In the **Appendix**, filed with this pleading, the defendants summarize and analyze

the insufficiency of each of the 41 alleged overt acts the government has used in its

attempt to establish wrongdoing on the part of the defendants.

### III.    CONCLUSION

Allowing a case to proceed to trial on an indictment where elements are missing;

where the alleged facts, even if true, do not violate the charged statute; and where the

government's theory of liability is deficient as a matter of law, would subject defendants

to the extraordinary expense and emotional strain of standing trial for conduct that is, as a

matter of law, not a crime.  It would also constitute a terrible waste of resources,

requiring the Court to impanel multiple juries and hold multiple trials, at taxpayers'

expense, for 38 defendants, all the while understanding that the indictment would be

subject to dismissal, pursuant to Rule 29, as soon as the prosecution rested. Indeed,

where, as here, the indictment rests on the government's misunderstanding of (or

disregard for) the law—and where the alleged facts simply do not amount to the charged

crime—justice demands that the case be dismissed at the motions stage.[5] Accordingly, the

---

[5] Assuming that this prosecution was instituted upon the government's genuine misunderstanding of the elements it would be required to prove at trial, the defendants request that the government voluntarily dismiss the superseding indictment, as required by Minnesota's Rules of Professional Conduct and by the Department's Principles of Federal Prosecution. *See*  Minnesota's Rules of Professional Conduct Rule 3.8 (stating that prosecutors should refrain from pursuing charges not supported by probable cause) and Justice Manual,  § 9- 9-27.220 ("no prosecution should be initiated against any person unless the attorney for the government believes that the admissible evidence is sufficient to obtain and sustain a guilty verdict by an unbiased trier of fact.").

defendants respectfully ask this Court to dismiss the indictment against them for failure to state an offense.

Dated: June 24, 2026

**DORSEY & WHITNEY LLP**

By s/ John Marti_____
    John Marti (#0388393)
    marti.john@dorsey.com
    Ashley Repp (#0399661)
    repp.ashley@dorsey.com
    Meredith LaVine (#0506725)
    lavine.meredith@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868
Attorneys for Defendant Thomas Matthew
Tier (36)

**LAW OFFICE OF JORDAN S. KUSHNER**

s/ Jordan S. Kushner
Jordan S. Kushner, Reg. No. 219307
431 South 7th Street, Suite 2446
Minneapolis, MN 55415
(612) 288-0545
jskushner@gmail.com

Attorneys for Defendant Nekima Levy Armstrong (1)

**THE JAB FIRM**

s/ Jill A. Brisbois
Jill A. Brisbois, Reg. No. 0345477 150
South 5th Street, Suite 1850
Minneapolis, MN 55402
(651) 209-7797
jill@thejabfirm.com

Attorneys for Defendant Chauntyll Louisa Allen (2)

**OFFICE OF THE FEDERAL DEFENDER**

s/ James S. Becker
James S. Becker, Reg. No. 388222
107 U.S. Courthouse 300
South Fourth Street
Minneapolis, MN 55415
(612) 664-5858
James_becker@fd.org

Attorneys for Defendant William Scott Kelly (3)

**BIRRELL LAW FIRM, PLLC**

s/ Ian S. Birrell

Ian S. Birrell, Reg. No. 0396379
Andrew S. Birrell, Reg. No. 133760
333 South 7th Street, Suite 2350
Minneapolis, MN 55402
(952) 356-2393
ian@birrell.law andy@birrell.law

Attorneys for Defendant Jerome Deangelo Richardson (5)

**CAPITOL CITY LAW GROUP, LLC**

s/ A.L. Brown
A. L. Brown (# 331909)
287 East Sixth Street, Suite 20
Saint Paul, Minnesota 55101
(651) 705-8580
a.l.brown@cclawg.com

Attorneys for Defendant Jamael Lydell Lundy (6)

**LAW OFFICES OF ROBERT D. RICHMAN, LLC**

s/ Robert D. Richman
Robert D. Richman, Reg. No. 226142
P.O. Box 16643
St. Louis Park, MN 55416
(651)278-4987
robert@rdrichmanlaw.com

20

Attorneys for Defendant Trahern Jeen Crews (7)

**GAD & GAD LAW OFFICES LLP**

s/ Sarah R. Gad
Sarah R. Gad, Reg. No. 0403328
8 E 25th Street
Minneapolis, MN 55402
(612) 512-1870
sarah@gadlawoffice.com

Attorneys for Defendant Ian Davis Austin (9)

**KENNETH UBONG UDOIBOK, PA**

s/ Kenneth U. Udoibok
Kenneth U. Udoibok, Reg. No. 0262523
Flour Exchange Building, Suite 5010
310 Fourth Ave S.
Minneapolis, MN 55415
(612) 808-6031
k@kenulaw.com

Attorneys for Defendant Aziza M. Aboud (10)

**GLENN P. BRUDER**

s/ Glenn P. Bruder
Glenn P. Bruder, Reg. No. 148878
9531 West 78th Street
Suite 210
Eden Prairie, MN 55344
(952) 831-3174

Attorneys for Defendant Max Richard Adamson (11)

**DEVORE LAW OFFICE, P.A.**

s/ Kevin DeVore
Kevin W. DeVore, Reg. No. 0267302
724 Bielenberg Drive, Ste 110
Woodbury, MN 55125
(651) 435-6500
kevin@devorelawoffice.com

Attorneys for Defendant Ezra Chaim Pye Blumenfeld (13)

21

**LEACH LAW OFFICE**

s/ Patrick G. Leach
Patrick G. Leach, Reg. No. 0286825
8961 Aztec Drive
Eden Prairie, MN 55347
(763) 220-6164
pgl@leachlawoffice.com

Attorneys for Defendant Kelly Ann Carey (15)

**DE LEÓN & NESTOR, LLC**

s/ Bruce D. Nestor
Bruce D. Nestor, Reg. No. 0318024
3547 Cedar Avenue South
Minneapolis, MN 55407
(612) 659-9019
nestor@denestlaw.com

Attorneys for Defendant Monique Cullars-Doty (16)

**MELVIN R. WELCH**

s/ Melvin R. Welch
Melvin R. Welch, Reg. No. 0387750
Commerce at the Crossings Bldg
250 South Second Street, Suite 205
Minneapolis, MN 55401
(612) 741-3272
mel@melvinwelchlaw.com

Attorneys for Defendant Tiffany Lynn Dunlap (17)

**LAW OFFICE OF STEVEN J. WRIGHT, LLC**

s/ Steven J. Wright
Steven J. Wright, Reg. No. 387336
331 Second Ave S, Suite 705
Minneapolis, MN 55401
(612) 669-8280
stevejameswright@gmail.com

Attorneys for Defendant Andrew Edwards (18)

**CHARLES F. CLIPPERT**

s/ Charles F. Clippert
Charles F. Clippert, Reg. No. 248848
101 East Fifth Street, Suite 1500
St. Paul, MN 55101
(651) 300-4109
charlie@clippertlaw.com

Attorneys for Defendant Rachel Goligoski (19)

**FORSGREN FISHER MCCALMONT DEMAREA TYSVER LLP**

s/ Caitlinrose H. Fisher
Caitlinrose H. Fisher, Reg. No. 0398358
1500 Capella Tower
225 South 6th Street
Minneapolis, MN 55402
(612) 474-3300
cfisher@forsgrenfisher.com

Attorneys for Defendant Ariel Hauptman (21)

**LOTUS LEGAL PLLC**

s/ Caroline H. Brunkow
Caroline H. Brunkow, Reg. No. 0398936
331 Second Ave South, Ste 420
Minneapolis, MN 55401
(612) 293-6963
cari@lotuslegalpllc.com

Attorneys for Defendant Krista Erin Hogan (22)

**KOCH AND GARVIS, LLC**

s/ Andrew S. Garvis
Andrew S. Garvis, Reg. No. 257989
3109 Hennepin Avenue South
Minneapolis, MN 55408
(612) 827-8101

andrew@uptownlawyer.com

Attorneys for Defendant Danielle Andrea Matthias (24)

**F. CLAYTON TYLER, P.A.**

s/ Karen Mohrlant
Karen E. Mohrlant, Reg. No. 388093
331 Second Avenue South, Suite 230
Minneapolis, MN 55401
(612) 333-7309
kmohrlant@fctyler.com

Attorneys for Defendant Catie Anne Michaelson (25)

**JOHNSON & GREENBERG PLLP**

s/ Lee R. Johnson
Lee R. Johnson, Reg. No. 0189935
5775 Wayzata Boulevard, Suite 700
St. Louis Park, MN 55416
(952) 545-1621
lrjohnsonslp@gmail.com

Attorneys for Defendant Eric Ryan Michaelson (26)

**LAW OFFICE OF ROBERT A. LENGELING, PLLC**

s/ Robert A. Lengeling
Robert A. Lengeling, Reg. No. 304165
310 Fourth Avenue South, Suite 1050
Minneapolis, MN 55415
(612) 963-1555
robert@lengelinglaw.com

Attorneys for Defendant David Okar (27)

**LAW OFFICES OF THOMAS H. SHIAH, LTD.**

s/ Thomas H. Shiah
Thomas H. Shiah, Reg. No. 100365
331 Second Avenue South, Ste 705
Minneapolis, MN 55401

(612) 338-0066
ths@tomshiah.com

Attorneys for Defendant Jarmel Perry (28)

**BEST & FLANAGAN LLP**

s/ Amy S. Conners
Amy S. Conners, Reg. No. 0387375
60 South 6th Street, Suite 2700
Minneapolis, MN 55402
(612) 349-5665
aconners@bestlaw.com

Attorneys for Defendant Cheryl Ann Persigehl (29)

**GOETZ & ECKLAND P.A.**

s/ Frederick J. Goetz
FREDERICK J. GOETZ
Attorney Registration No. 185425
615 1st Avenue NE, Suite 425
Minneapolis, MN 55413
(612) 874-1552
FGoetz@goetzeckland.com

Attorneys for Defendant Emmar Monike Pineda-Moreno (30)

**RINGSTROM DEKREY PLLP**

s/ Dane DeKrey
Dane DeKrey, Reg. No. 0397334
814 Center Avenue, Suite 5
Moorhead, MN 56560
(218) 284-0484
dane@ringstromdekrey.com

Attorneys for Defendant Spencer Michael Rodriguez-Bocanegra (31)

**ARNESON LAW OFFICE PLLC**

s/ Wyatt Arneson
Wyatt Arneson, Reg. No. 0392071

25

1025 Grain Exchange Building
400 South 4th Street
Minneapolis, MN 55415
(612) 746-1188
wyatt@arnesonlawllc.com

Attorneys for Defendant Katherine Shaw (32)

**GERDTS LAW, PLLC**

s/ Daniel L. Gerdts
Daniel L. Gerdts, Reg. No. 207329
331 Second Avenue South, Suite 705
Minneapolis, MN 55401
(612) 800-5086
daniel@danielgerdtslaw.com

Attorneys for Defendant Satara Diann Strong-Allen (33)

**SIEBEN & COTTER, PLLC**

s/ Patrick L. Cotter
Patrick L. Cotter, Reg. No. 0319120
105 Hardman Court, Suite 110
South St. Paul, MN 55075
(651) 455-1555
patrick@siebencotterlaw.com

Attorneys for Defendant Charles Swenson (34)

**SAPIENTIA LAW GROUP, PLLC**

s/ Robin M. Wolpert
Robin M. Wolpert, Reg. No. 0310219
120 South Sixth Street, Suite 100
Minneapolis, MN 55402
(612) 756-7100
robinw@sapientialaw.com

Attorneys for Defendant Robyn Elise Swenson (35)

**JAMES M. VENTURA**

26

s/ James M. Ventura
James M. Ventura, Reg. No. 147217
1000 Twelve Oaks Center Drive, Suite 100
Wayzata, MN 55391
(952) 473-8064
jventura@jamesventuralaw.com

Attorneys for Defendant Lee Elizabeth Wiedeman Tuggle (37)

**LANGERT LAW, LLC**

s/ Maggie G. Langert
Maggie G. Langert, Reg. No. 0308316
724 Bielenberg Drive #54
Woodbury, MN 55125
(612) 470-4810
maggie@langertlaw.com

Attorneys for Defendant John Vergin (38)

**WOLD LAW**

s/ Peter B. Wold
Peter B. Wold, Reg. No. 0118382
331 2nd Avenue South, Suite 705
Minneapolis, MN 55401
(612) 341-2525
pwold@wold-law.com

Attorneys for Defendant Mark D. Weinfurter (39)

## **APPENDIX**

A paragraph-by-paragraph analysis of the allegations in the superseding indictment reveals that the indictment fails to state an offense.

- ¶¶ 1-7: These paragraphs contain preliminary allegations that track the language of the statute charged in Count One.  They are not relevant to our discussion here.

- ¶ 7: This paragraph accuses four defendants of organizing and promoting a protest "targeting" the Church for a "takeover-style attack."  There is no allegation of "targeting" the Church for anything other than a protest that might disrupt a prayer service, and no indication that a "takeover-style attack" is anything other than a political protest that interferes with a service.  Because interfering with a church service is not a federal crime, this allegation does not prove any charged offense.

- ¶ 8: This paragraph sets forth Overt Acts (OAs) 1-41.  An overt act is an act taken by a co-conspirator, during the pendency of a conspiracy, that furthers the objective of the conspiracy.  *See* EIGHTH CIR. PATTERN CRIM. JURY INSTRUCTIONS, § 5.06A-2 (Conspiracy: Elements (18 U.S.C. § 371) Explained) ("Element Four requires that one of the persons who joined the agreement took some act for the purpose of carrying out or carrying forward the agreement.").  An act that precedes the formation of any conspiracy cannot be an "overt act."  *United States v. Easom*, 569 F.2d 457, 459 (8th Cir. 1978) ("No evidence was introduced which showed any conspiracy existed prior to February 14, 1977.

28

The allegation that Easom had brought four pieces of hacksaw blades [to the jail before that date] should not have been included in the instruction as an overt act in furtherance of the conspiracy."); *see also United States v. Stamper*, 589 F. App'x 396, 397 (9th Cir. 2015) ("The jury instructions properly required that the jury find that the overt act was committed for 'the purpose of carrying out the conspiracy.' Such language naturally requires that the conspiratorial agreement exist before the overt act occurred."). An action taken by someone other than a co-conspirator who has already joined the conspiracy is not an overt act. An action that does not further an illegal objective of the conspiracy is not an overt act. *United States v. Medeiros*, No. 23-2019, 2023 WL 8752921, at *16 (10th Cir. Dec. 19, 2023) (internal quotations and alterations omitted) (citing *Fiswick v. United States*, 329 U.S. 211, 216-17 (1946)) ("The purpose of the overt act must be to further the conspiracy. The act itself need not be unlawful, but it must be in furtherance of the specific conspiracy charged.").

- ¶ OA1: One defendant receives a text advising her that an ICE official is a pastor at Cities Church. This is not an overt act, both because "receiving" a text is not an "action," and because (even if the allegations in the indictment are true) no agreement had been entered into. This action also did not further any illegal objective.

- ¶ OA2: One defendant uses her cell phone to conduct searches. This is not an overt act because, even according to the indictment, there was as yet no agreement. This action also did not further any illegal objective.

- ¶ OA3: Two defendants conduct "reconnaissance" around the church and think about "be[ing] able to clog up this whole alleyway" by the church. Although this "overt act" implies (without actually alleging) an agreement between these two defendants, it does not even imply that others are involved, and does not allege that any agreement that might have been formed was aimed at oppressing, threatening, or intimidating another person by using force, threat, or physical obstruction to interfere with a federally protected right. This action did not further any illegal objective.

- ¶ OA4: One defendant sends a text to another defendant for use in preparing the "takeover operation against the Church." Despite the government's loaded reference to a "takeover operation," the plan described is simply a plan to hold a political demonstration at a church. Because (contrary to the government's apparent misunderstanding of, or disregard for, the law) disrupting a church service by means other than force, threat, or physical obstruction intended to injure, intimidate and interfere with others is not a federal crime, this action did not further any illegal objective.

- ¶ OA5: Three defendants text each other about the next day's protest. There is no allegation of any discussion of (let alone agreement about) using force,

threats, or physical obstruction to interfere with a protected right.  This action did not further any illegal objective.

- ¶ OA6: One defendant prepares a flyer advertising "an anti-ICE" protest and posts the flyer on social media. Because the worship provision of the FACE Act does not prohibit the mere disruption of a church service, this allegation suggests nothing unlawful about the plan for the "anti-ICE" protest.  This action did not further any illegal objective.

- ¶¶ OAs 7-11: Various defendants share the flyer with others.  Again, there is nothing nefarious alleged, since a plan for an anti-ICE protest at a church is not a plan to violate any federally protected right, unless the plan includes an agreement to use force, threats, or physical obstruction to injure, intimidate, or interfere with others in their religious freedoms.  This action did not further any illegal objective.

- ¶ OA 12: One defendant is advised of journalist Don Lemon's plan to attend the protest.   This is not an overt act, as it is not an act by any alleged member of the alleged conspiracy. This action does not further any illegal objective.

- ¶ OA 13: More than 30 defendants gather in a Cub Foods parking lot for a pre-demonstration briefing.  Again, there is no allegation of any agreement having been formed among the defendants--let alone an agreement to use force, threats, or physical obstruction—and there is no allegation of any other nefarious activity.  This action does not further any illegal objective.

- ¶ OA 14: At the briefing, two defendants notify others that the "target of their operation" is the Church, and they provide instructions "on how the operation would be conducted."  Again, there is no allegation of any agreement, and no allegation of any illegal activity.  This action does not further any illegal objective.

- ¶ OA 15:  On the day of the protest, Journalist Don Lemon begins a livestream of the demonstration for his "internet-based show, 'TheDonLemonShow'."  Specifically, Lemon is accused of "gearing up for a 'resistance' operation against [ICE]" and of taking "steps to maintain operational secrecy by reminding certain co-conspirators to not disclose the target of the operation."  Despite the insinuation that there is something nefarious about a "secret" "resistance," there is nothing unlawful about planning a political protest to oppose ICE policy, and there is nothing unlawful about trying to keep secret the location of the protest so as to maximize its impact.  This action does not further any illegal objective.

- ¶ OA 16: (a) Journalist Don Lemon thanks another defendant for what she is doing and assures her that he will keep the location of the operation secret; (b) the other defendant explains that the operation is "clandestine" and that "she and other agitators w[ill] 'show up somewhere that is a key location, [where the targets] don't expect us … and we disrupt business as usual.  That's what we're about to go do right now.'"; (c) Lemon says he'll see her there.  Again, there is nothing improper about planning a political protest and keeping the

location secret.  And a plan to "disrupt business as usual" does not constitute a plan to use force, threats, or physical obstruction to injure, oppress, threaten, and intimidate other people in the enjoyment of their right to practice religious freedom free of force, threat, or physical obstruction intended to injure, intimidate, and interfere.  This action does not further any illegal objective.

- ¶ OA 17: Journalist Don Lemon tells his audience that he's heading to the operation, and he again mentions that he will not give any information away. This claim does not allege (or even imply) the existence of an illegal agreement, as there is nothing illegal about heading to a political protest without revealing its location.  This action does not further any illegal objective.

- ¶ OA 18: At the pre-protest briefing, one defendant leads "other co-conspirators" in chants, such as "This is what community looks like" and "ICE out of Minnesota"; urges others that they have a "duty to fight for our freedom" and "a duty to win"; and directs her "co-conspirators" to stay bumper-to-bumper on their way to the church.  Despite the use of the term "co-conspirators," there is no allegation of any agreement to injure, oppress, threaten, or intimidate anyone in a federally protected right.  Any "agreement" alleged at this point is simply an agreement to execute a political protest at a church, and to try to arrive at the church together to start the protest. This action does not further any illegal objective.

- ¶ OA 19: At the pre-protest briefing, one defendant provides instruction "and operational guidance" to her "co-conspirators," including telling the "first wave" of "agitators" to enter the church without broadcasting their involvement in the protest ("essentially in an undercover capacity"), and telling those with "anything activism identifying" to wait and come in with the second wave. Despite the use of loaded terms, like "agitators" and "co-conspirators", there is nothing nefarious or illegal about planning a protest that involves an element of surprise. The government's allegations reflect the prosecution's legally inaccurate belief that an agreement to interrupt or disrupt a church service violates federal law. In fact, this alleged action does not further any illegal objective.

- ¶ OA 20: Defendants travel to the church for their "planned takeover-style operation." Stripped of its hyperbolic language, this simply alleges that the defendants traveled to the church for their planned anti-ICE protest. As noted, this action does not further any illegal objective.

- ¶ OA 21: On the way to the church, one defendant tells another that they need to "catch up" to the others; journalist Don Lemon, livestreaming, instructs others not to "give anything away." Again, keeping a protest-location secret before the start of the demonstration (perhaps to use the element of surprise to increase the political impact of the demonstration) is not a federal offense. This action does not further any illegal objective.

- ¶ OA 22: Journalist Don Lemon asks others, "I don't think we can go ahead.  I don't think we can go inside, right?" and then answers his own question, saying "No, no, no."  But he and the others "nonetheless enter[] the Church shortly thereafter."  This allegation reflects the government's apparent belief that simply entering the church and disrupting a service constituted the charged crime.  Because entering a church to stage a protest—while possibly offensive to some church members and staff—does not violate any federal law, this action does not further any illegal objective.

- ¶ OA 23: All defendants enter the church, "with the first wave positioning themselves among the congregants, and the second wave led by defendants Armstrong and Allen, commencing the disruptive takeover operation, in which the first wave of agitators then actively joined."  This allegation simply describes a political protest beginning in the church.  Because there is no federal law prohibiting a political protest that disrupts a church service, there is nothing legally significant about this allegation. This action does not further any illegal objective.

- ¶ OA 24: One defendant "interrupt[s] the service with loud declarations about the Church harboring a 'Director of ICE' and indicating that the time for Judgment ha[s] come, and other defendants immediately join[] in by yelling and blowing whistles in a takeover attack on the Church, all of which quickly cause[s] the situation in the Church to become chaotic, menacing, and traumatizing to Church members."  This allegation reflects multiple

35

misunderstandings of (or a disregard for) the law. "Interrupting" a church service with loud declarations opposing ICE might be rude and offensive, but it is not a violation of federal law. The same is true for "yelling and blowing whistles." Based solely on the allegations in the indictment, it is clear that the motive for this alleged interruption was to express political dissent and opposition to an ICE director serving as pastor; there is no fact alleged suggesting that the purpose of any interruption was to threaten or injure anyone else, let alone to do so through force, threats, or physical obstruction. Allegations that others subjectively found the "situation" to "become chaotic, menacing, and traumatizing" are legally irrelevant, as what matters is the *intent of the defendants* to communicate a threat to others; of course, no such intent is alleged. There is also no fact alleged that explains what is "menacing" (rather than, say, offensive to some) about what is obviously an anti-ICE political protest. This action does not further any illegal objective.

- ¶ OA 25: The defendants "le[a]d and/or join[]" chants, including "ICE Out!," "Hands Up, Don't Shoot!," and "Stand Up, Fight Back!" and are "accompanied by hostile and aggressive gestures, which Church congregants and staff perceived as threats of violence and a potential prelude to a mass shooting." The actions alleged here simply describe a political, [First-Amendment protected,] anti-ICE protest taking place at a church. Because federal law prohibits disruption of a church service only when the disruption is achieved through force, threat, or physical obstruction that is intended to

injure, oppress, threaten or intimidate another person, an allegation describing a protest that does not include those factors is legally irrelevant. The government's reference to the chants being "accompanied by hostile and aggressive gestures" does nothing to change that fact, since this allegation does not state that any individual intentionally threatened anyone else. (Nor could it, as the conduct described is a simple, nonviolent political protest.) Lastly, an allegation that others "perceived" the protestors' actions "as threats of violence and a potential prelude to a mass shooting" are (in addition to being hyperbolic on their face, given the absence of any weapon or any threat of violence) irrelevant absent an allegation that the defendants intended their actions to threaten physical harm to others. This action does not further any illegal objective.

- ¶ OA 26: The "defendants collectively oppressed, threatened, and intimidated [church members and staff] by physically occupying most of the main aisle and rows of chairs near the front of the Church, engaging in menacing and threatening behavior, (for some) chanting and yelling loudly at the pastor and congregants and/or physically obstructing them as they attempted to exit and/or move about within the Church." This allegation is, legally speaking, a convoluted mess. It is unclear whom it is accusing of acting, and what it is accusing them of doing. (It accuses the defendants of acting "collectively" and a moment later specifies that the conduct is attributable to "some" of the defendants.) This "overt act" accuses some defendants of chanting and yelling

"and/or" physically obstructing. (Of course, it matters who did what here, since, as noted above, chanting and yelling are not crimes, whereas "physically obstructing" is one of the means by which a defendant can violate§ 248(a)(2)). But the conduct that this allegation describes as "physically obstructing" ("occupying most of the main aisle and rows of chairs near the front of the Church … physically obstructing [others] as they attempted to exit and/or move about within the Church") clearly falls well *outside* the statute's definition of physical obstruction.  In fact, the  government's allegation of "physical obstruction" in this context (which describes a "partial" obstruction, as people "exit"—meaning as they use the church's egress) fully undermines a claim that the defendants engaged in "physical obstruction" of the kind defined in the statute. This action does not further any illegal objective.

- ¶ OA 27: One defendant "st[ands] with other defendants in and around the main aisles in the Church to intimidate the Church members and obstruct and interfere with their freedom of movement, approach[] the pastor and congregants in a menacing manner, and, near the end of the operation, loudly berate[] the pastor with questions about Christian nationalism and Christians wanting to have their faith be the law of the land."  Despite the government's liberal peppering of this allegation with words plucked from the statutes, the allegation quickly unravels upon the slightest inspection.  Breaking down the allegation, it accuses the defendant (or perhaps multiple defendants?) of "standing in the aisles … to intimidate," and "standing in the aisles ... to

obstruct and interfere with [others'] freedom of movement." This allegation, aside from not making sense (how does one "stand to intimidate"?), conflates "obstructing" and "interfering with movement," as if they are interchangeable, despite both having statutory definitions.  Next, it accuses the defendant (or multiple defendants?) of "approaching the pastor …in a menacing manner," without describing anything menacing about the approach.  [This is unsurprising, as the video of the protest—admittedly outside the four corners of the indictment and therefore irrelevant to this motion—blatantly contradicts this allegation by showing a defendant calmly approaching the pastor to talk with him.]  Lastly, this allegation accuses a defendant (or multiple defendants?) of "loudly berat[ing] the pastor with questions about Christian nationalism and Christians wanting to have their faith be the law of the land."  There is nothing illegal about "berat[ing]" a pastor "with questions."  Even if the pastor and others find the conduct offensive or disturbing, it does not violate federal law. This allegation is, like so many others, simply a description of a political protest that occurred in a church and does not further any illegal objective.

- ¶ OA 28, 29: Each of these allegations charges that a defendant "personally participated in the disruptive takeover operation with other defendants by standing in and around the main aisle with the others and contributing to the physical obstruction and intimidation of the congregants, participating loudly in some of the chants (e.g., one saying that the targeted ICE agent must be 'Out! Out!') and punching his fist in the air."  As with so many allegations, this

one is unclear about who is being accused of what.  But what *is* clear here is that there is no criminal conduct described.  This allegation accuses a defendant (or multiple defendants?) of "contributing to … physical obstruction," but it is clear from the description of the conduct that the government is not using the statutory definition of "physical obstruction."   It also references "intimidation" but does not allege any conduct that is intimidating and (more importantly) does not allege any *intent* to intimidate. The actual conduct described here—"standing" in and around an aisle, and chanting loudly while punching a fist in the air—is not "intimidating" or "obstructive" as those terms are used in the statute. This action does not further any illegal objective.

- ¶ OA 30: A defendant "(a) disrupt[s] the service by chanting, "This ain't God's house.  This is the house of the devil."; (b) approach[es] one female congregant, who [i]s with two young children, and demand[s] to know in a hostile manner why she [i]s not involved in and supportive of the takeover operation; and (c) scream[s] "Nazi" in congregants' faces and ask[s] child congregants, "Do you know your parents are Nazis?  They're going to burn in hell."  Although this allegation describes conduct that many might consider mean, or even deeply offensive, neither "disrupting" a church service nor calling someone a Nazi is a federal crime. Neither is it a crime to tell children that their parents will burn in hell.  This action does not further any illegal objective. The Supreme Court has stressed that nonviolent, non-threatening

speech is protected by the First Amendment even when—and perhaps *particularly* when—it is deeply offensive to others. *Snyder v. Phelps*, 562 U.S. 443, 458, 131 S. Ct. 1207, 1219, 179 L. Ed. 2d 172 (2011) ("[S]peech cannot be restricted simply because it is upsetting or arouses contempt. If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.") (internal quotations and citations omitted).

- ¶ OA 31: A defendant "personally participated in the disruptive takeover operation with other defendants by holding up an anti-ICE sign and chanting "ICE Out!" and "We have nothing to lose but our chains!" This allegation describes pure political expression during a demonstration against the federal government. This action does not further any illegal objective.

- ¶ OA 32: Journalist Don Lemon tells his livestream audience about a young man who appears frightened and is crying. Lemon opines that the child's reaction is "understandable" because the "experience [i]s 'traumatic and uncomfortable,' which he sa[ys] is the purpose." Again, there is nothing illegal about participating in a political protest that offends other people. In fact, it is often the "purpose" of a protest to express unpopular views that are offensive to others (since, if the views were in the majority, the protest would not be necessary), knowing that those views might make others uncomfortable. There is no allegation that Lemon or anyone else intentionally threatened this child or

41

anyone else with physical harm.  This action does not further any illegal objective.

- ¶ OA 33: Journalist Don Lemon "tacitly acknowledge[s] the illegal nature of [the operation] by expressing surprise that the police ha[ve] not yet arrived at the Church and admit[s] his knowledge that 'the whole point of [the operation] is to disrupt." This allegation, which refers to Lemon "admitting" that the point of the protest was "to disrupt," reveals (like so many other allegations) the government's legally incorrect view that intentionally disrupting a church service constitutes a violation of federal law.   In fact, as a matter of law, there is no "admission" involved in an acknowledgment that the goal of the protest was to "disrupt."  Similarly, Lemon's alleged expression of surprise that the police had not yet shown up is irrelevant to the federal charges.  Even if (as this allegation implies), Lemon assumed that the police would interrupt the protest, that does not make any element of the charged offense more likely.  This allegation does not charge or imply that Lemon or any other defendant used force, threats, or physical obstruction, or that they did so with intent to injure, intimidate or interfere with others.  Even assuming *arguendo* that, under Minnesota law, some protestors could have been arrested on a local trespass charge, that fact would be irrelevant to the analysis of whether the superseding indictment here states an offense.  Agreeing to hold a political demonstration at a church—even if it were to include an agreement to commit a local trespass— does not violate federal law.

42

- ¶ OA 34: Journalist Lemon asks another defendant if they should talk to the pastor and the other defendant points to the front of the church and notes that the pastor "might have run away."  This allegation appears intended to imply that the pastor was afraid, but it does not include any allegation that anyone intentionally threatened the pastor or anyone else. This action does not further any illegal objective.

- ¶ OA 35: Several defendants approach the pastor "and largely surround[] him (to his front and both sides), st[and] in close proximity to the pastor in an attempt to oppress and intimidate him, and physically obstruct[] his freedom of movement while Lemon pepper[s] him with questions to promote the operation's message." Despite the use of loaded language ("in an attempt to oppress and intimidate"), the actual conduct alleged here (approaching; standing in close proximity; and peppering with questions) are not "oppressive" or "intimidating."  These alleged actions are entirely consistent with a nonviolent political demonstration that happens to interrupt a church service.  And as with so many other allegations, the use here of the term "physically obstructed" is clearly inconsistent with the definition of that term in the statute, as "standing in close proximity" to someone, with people to the front and both sides, does not block that person's ingress to or egress from the church, or render the ingress or egress unreasonably hazardous. This action does not further any illegal objective.

43

- ¶ OA 36: "While talking with the pastor, defendant Lemon stood so close to the pastor that Lemon caused the pastor's right hand to graze Lemon, who then admonished the pastor, 'Please don't push me.'" This is not an overt act, as the "action" allegedly taken here is the pastor's, not Lemon's. This allegation simply describes the pastor brushing against Lemon and Lemon admonishing him. This allegation makes no element of any charged offense more likely, and does not further any illegal objective.

- ¶ OA 37: "Although the pastor t[ells] defendant Lemon and other defendants to leave the Church, the defendants ignore[] the pastor's request and d[o] not immediately leave the Church." Even assuming that this allegation could be relevant to a state charge of trespassing (which applies when a person is told to leave private property and refuses to do so) but is not at all relevant to the federal charges. Agreeing to hold a protest—even if it were to violate state trespass laws—is not a federal crime. This action does not further any illegal objective.

- ¶ OA 38: Some of the defendants chant, "Who shut this down? We shut this down!" This allegation, like several others, suggests again that the government believes that shutting down a church service is a crime. As noted, though, it is not a crime unless the shut-down is done through force, threat, or physical obstruction intended to injure, intimidate, and interfere with a person's exercise of a federally protected right. This action does not further any illegal objective.

44

- ¶ OA 39:  A congregant reports to responding officers that "some of the agitators blocked the stairs leading to the Church's childcare area and made it difficult and hazardous for parents to retrieve their children, causing some to take alternative routes in or around the Church." Despite using terms ("difficult" and "hazardous") lifted from the statutory definition of "physical obstruction," this allegation uses a common-usage definition and does not allege legally relevant obstruction. First, a "congregant" "report[ing]" something is not an overt act.  Second, if parents could simply "take alternative routes," their movement was not "obstructed" in the legal sense. Third, the alleged obstruction did not relate to ingress to or egress from the church. Fourth, even if the obstruction had been a complete blockade on the stairs to the childcare area, the federal statute would not be implicated, since the statute prohibits only that subset of obstruction that is intended to interfere with someone lawfully exercising religions freedom (not with someone lawfully retrieving their children). This action does not further any illegal objective.

- ¶ OA 40: Lemon "post[s] himself at the main door of the Church, where he confront[s] some congregants and physically obstruct[s] them as they tr[y] to exit the Church building to challenge them with 'facts' about U.S. immigration policy."  Despite using the term "physically obstruct[s]," this allegation describes conduct that does not amount to physical obstruction under the statute.  Additionally, the conduct described here—standing in a doorway and "challenging" people with facts—is neither illegal nor nefarious.  [Incidentally

(since a challenge to the sufficiency of the evidence is premature at this point), this allegation is verifiably false, as the video of the incident shows that Lemon is actually holding the door open and conversing with people as they *do in fact leave* the church, not as they "*tr[y]* to exit the church building.")].

- ¶ OA 41:  Lastly, as a minivan full of congregants prepares to leave the area, a defendant "walk[s] in front of the minivan and angrily yell[s] at the congregants," as two other defendants stand in front of the minivan conducting an interview.  This allegation does not describe any illegal activity. Moreover, anything that happened in the driveway, after the service had ended, is irrelevant to the §§ 241/248 charges since conduct outside the church, after the service was over, could not involve interruption of that service by force, threat, or physical obstruction.

Superseding Indictment, Doc. 144, at 1-18.