UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

NEKIMA LEVY ARMSTRONG, et al.,,

Defendants.

Case No. No. 0:26-cr-00025-LMP-DLM

**JOINT OBJECTION TO MAGISTRATE JUDGE'S ORDER DENYING ACCESS TO GRAND JURY MATERIAL**

## I.    INTRODUCTION

The defendants respectfully object to the Magistrate Judge's Order, dated June 10, 2026, denying their request for disclosure of limited grand jury materials (the Order). The Court provides three reasons for its ruling, none of which addresses the defendants' core argument: the indictment itself establishes a grave, nonspeculative likelihood that prosecutors affirmatively and erroneously misled the grand jury regarding the law. *See* Doc. 491 (Joint Petition to Disclose Grand Jury), at 9-29. Additionally, the Order fails to address the defendants' argument, *id.,* at 23-31, that the record strongly suggests that prosecutors improperly pressured the grand jury, including an inappropriate claim of a "national emergency," a prejudicial factor not relevant to the grand jury's decision.[1]

Because the defendants have demonstrated a high likelihood that the government

---

[1] The Magistrate Judge found: first, that the defendants had pointed to public misstatements by DOJ officials, but not to statements made inside the grand jury room; second, that prosecutors generally need not provide the grand jury with any legal instruction, and therefore it is irrelevant if the government mis-instructed the grand jury; and third, that prosecutors generally need not present exculpatory evidence or affirmative defenses to the grand jury. Order, at 7-8.

improperly misled the grand jury on the law and injected improper factors into its deliberations, this Court should reverse the Order and direct disclosure of the limited grand jury materials requested. At very least, the Court should conduct an *in camera* review of the grand jury minutes—as a multitude of courts have done before it—to determine whether the improprieties that appear manifest from the face of the superseding indictment did in fact occur.

## II.   LEGAL STANDARD

This Court must "modify or set aside any part of the [Magistrate Judge's] order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a). *United States v. Wilson*, No. 26-CR-0027 (LMP/JFD), 2026 WL 926355, at *1 n.1 (D. Minn. Apr. 6, 2026). A legal conclusion "is contrary to law when it fails to apply, or misapplies" the governing legal standards. *Kasso v. City of Minneapolis*, No. 23-CV-2782 (KMM/DLM), 2026 WL 1171309, at *2 (D. Minn. Apr. 30, 2026).

The Order misapplies the law by relying on one legal premise (that a prosecutor need not instruct a grand jury on the law) while ignoring an equally important corollary (that a prosecutor may not affirmatively misrepresent the law or mislead the grand jury). The Eighth Circuit, in *United States v. Warren,* 16 F.3d 247, 253 (8th Cir. 1994), cited *United States v. Larrazolo*, 869 F.2d 1354, 1359 (9th Cir. 1989), for the proposition that a "prosecutor has no duty to outline the elements of the crime *as long as the elements are at least implied and the instructions are not flagrantly misleading*." *Id.* at 253 (emphasis added); *United States v. Glenn*, No. 5:14-CR-50115-JLV, 2015 WL 5496120, at *5 (D.S.D. Sept. 17, 2015) (same).

2

The Order also fails to address defendants' nonspeculative concern that prosecutors improperly injected a factor not relevant to the grand jury's decision by inappropriately claiming a "national emergency."

### III.   ANALYSIS

A.  The Order's Three Rationales Miss the Mark

**First**, the Order concludes that misstatements of law by DOJ officials are insufficient to suggest that prosecutors improperly instructed the grand jury.  Order, at 7.  But this misunderstands the defendants' argument.  The defendants do not suggest that the statements alone reveal misconduct in the grand jury.  Rather, the misconduct is implied by the superseding indictment itself, which raises nonspeculative concerns that prosecutors misrepresented the law *to the grand jury*, including that intentional disruption of a worship service, without more, is a federal crime; that mere participation in a demonstration at a church constitutes a criminal conspiracy; that a parishioner's *feeling* of intimidation is legally sufficient to establish a threat; and that demonstrators' presence in the path of parishioners amounts to physical obstruction prohibited by federal law.  *See* Doc. 547 (Motion To Dismiss For Failure To State An Offense, incorporated herein); Doc. 491, at 21-27.

Statements by DOJ leadership are relevant because they corroborate these concerns. The DOJ officials' incorrect and strident misstatements of the law are mirrored in the superseding indictment, making it even more likely that prosecutors who presented this case—subordinates of those DOJ officials—misled the grand jury by presenting their

3

bosses' erroneous legal theories.[2]

**Second**, the Magistrate Judge reasons that even if the prosecutors mis-instructed the grand jury, disclosure is unwarranted because there is no "obligation to provide the Grand Jury any legal instructions." Doc. 540, at 7.  But this reasoning focuses on one rule (that the government generally need not provide any legal instruction beyond reading the statute—and therefore that minor misstatements of the law are not grounds for dismissal) while ignoring an equally important corollary: that if the government *does* explain the law, describe the elements, answer questions, or summarize theories of liability, it may not do so in a way that seriously misstates the law.  *See Warren,* 16 F.3d at 253 (citing *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir.1988), for the proposition that a "prosecutor is under no obligation to give the grand jury legal instructions" and *Larrazolo*, 869 F.2d at 1359, for the proposition that a "prosecutor has no duty to outline the elements of the crime *as long as the elements are at least implied and the instructions are not flagrantly misleading*") (emphasis added).  *See also United States v. Bravo-Fernandez*, 239 F. Supp. 3d 411, 415 (D. P.R. 2017) (ordering production of instructions where a change in law raised concern that the grand jury had been misleadingly instructed); *United States v. Stevens*, 771 F. Supp. 2d 556, 567 (D. Md. 2011) (dismissing

---

[2] The Magistrate Judge appears to want *proof* of misconduct in the grand jury before allowing review of transcripts. But it is impossible to *prove* misconduct without access to the transcripts. Requiring a higher level of certainty than the defendants have demonstrated would render moot Rule 6(e)(3)(E)(ii) and violates the requirement that courts give meaning to every portion of a statute. *Williams v. Taylor*, 529 U.S. 362, 407 (2000) (holding that courts "must . . .  if possible, give meaning to every clause of [a] statute."); *Missouri v. Trump,* 128 F.4th 979, 991 (8th Cir. 2025) (same).

indictment and noting that where grand jury instruction "seriously misstates the applicable law, the indictment is subject to dismissal" when there is "grave doubt" that the indictment was free from "the substantial influence of the erroneous instruction"); *United States v. Peralta*, 763 F. Supp. 14, 19-21 (S.D.N.Y. 1991) (dismissing indictment where the instructions did not "merely fail to instruct the grand jury on a question of applicable law," but rather "seriously misstated the applicable law" on constructive possession of a weapon); *United States v. Cerullo*, No. 05cr1190 BEN, 2007 WL 2462111, at *3 (S.D. Cal. Aug. 28, 2007) (dismissing indictment and holding that, although there is no "duty to accurately instruct the grand jury on every relevant legal issue," it was "plainly apparent," in light of grand jurors' questions, that the prosecutor here had a "duty to instruct correctly"); *United States v. Twersky*, No. S2 91 Cr. 1082 (SWK), 1994 WL 319367, at *4 (S.D.N.Y. June 29, 1994) ("As a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information concerning the relevant law to enable it intelligently to decide whether a crime has been committed.") (citation modified); *United States v. Vetere*, 663 F. Supp. 381, 386 (S.D. N.Y. 1987) (dismissing indictment where misstatements of fact and law amounted to "impermissible prosecutorial impairment of the grand jury's independent role") (citation modified).

Courts regularly restate this corollary principle, even when finding no error in the grand jury or no prejudice to the defendant. *See e.g., Larrazolo*, 869 F.2d at 1359 ("[T]he prosecutor has no duty to outline all the elements of a conspiracy so long as the instructions given are not flagrantly misleading or so long as all the elements are at least implied[.]"); *United States v. Ciambrone*, 601 F.2d 616, 623 (2d Cir. 1979) ("[T]he

5

prosecutor's right to exercise some discretion and selectivity in the presentation of evidence to a grand jury does not entitle him to mislead it or to engage in fundamentally unfair tactics before it"); *United States v. Phillips*, No. 22-CR-138, 2023 WL 6812286, at *1 (S.D.N.Y. Oct. 16, 2023) ( "[W]hile the Government need not instruct the Grand Jury on the pertinent law, error may arise if the Government endeavors to instruct but does so incompletely or erroneously") (citation omitted); *United States v. Monzon-Luna*, 11-CR-722 (S-4) (RRM), 2014 WL 223100, at *1 (E.D.N.Y. Jan 21, 2014) ("Although the government is under no obligation to provide the grand jury with legal instructions, courts have found error where the government endeavors to provide the grand jury legal instructions but does so incompletely or erroneously.") (citation modified); *United States v. Mix*, No. CR-12-171, 2013 WL 4786027, at *7 (E.D. La. Sept. 6, 2013) ("[W]here a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts grave doubt that the decision to indict was free from the substantial influence of the erroneous instruction").

A simple analogy illustrates the Magistrate Judge's error in insisting that it does not matter if or how the government instructed the grand jury: if the government obtained a detailed indictment alleging that a defendant violated federal law by burning a flag to protest U.S. policies, there would be reason to believe, based solely on that indictment, that the grand jury had been misled on the law.  Surely no court would say, in light of *Texas v. Johnson*, 491 U.S. 397 (1989) (holding that flag-burning as political protest is expressive conduct protected by the First Amendment), that there is no need to examine the grand jury's instructions.  Nor would the principle that grand jury instruction is

6

normally unnecessary justify affirmatively mis-instructing the grand jury that it is a crime to burn a flag in political protest.  Similarly, if the relevant statute required proof of intent, no court would countenance a prosecutor mis-instructing the grand jury that an "intentional" act includes an accidental one.  In either of those cases, the indictment itself would provide sufficient nonspeculative evidence of misconduct such that a reviewing court would, at very least, conduct an *in camera* review of the prosecution's colloquy with the grand jury.  Moreover, inaccurate public statements by DOJ officials (including one listed on the indictment) that flag-burning is illegal would heavily support the claim that the grand jury was misled.

Concerns that the government affirmatively misled the grand jury are particularly pronounced here because the statutory language for the lead count, 18 U.S.C. § 241, by itself provides no guidance about what conduct it prohibits.  Section 241 criminalizes conspiracies "to injure, oppress, threaten, or intimidate any person … in the free exercise … of any right or privilege secured to him by the Constitution or laws of the United States."  Because these words would have no meaning to a lay grand juror absent instruction, it is almost certain that the grand jury received legal guidance.  And given that the grand jury indicted on facts that fail as a matter of law to establish a violation of the charged offenses, *see* Doc. 547, it is exceedingly likely that the guidance provided here was inaccurate and misleading.

**Third,** the Magistrate Judge misconstrues the defendants' motion as complaining that the government failed to present exculpatory evidence or an affirmative defense.  Order, at 8.  In reality, defendants argued that the government failed to instruct the grand

jury on the statutory Rule of Construction protecting expressive conduct under § 248(d). While the government claims that § 248(d) is merely an affirmative defense that it was not required to present (Doc. 509 at 15), that characterization is legally incorrect. Section 248(d) is a structural limitation on the statute's scope, reaffirming that expressive conduct is not a crime. *See e.g., United States v. Shafi*, 252 F. Supp. 3d 787, 795 (N.D. Cal. 2017) (holding that a similar rule of construction in 18 U.S.C. § 2339B is not an affirmative defense). Ultimately, the government's erroneous briefing confirms that its legal instructions to the grand jury were similarly flawed. The court should not require the defendants to bear the time, expense, and stress of a trial when the very words of the statute establish their innocence.

The Order thus relies on a principle—that the government need not present exculpatory evidence or anticipate affirmative defenses—that is inapposite to the defendant's argument, which is that the government may not suggest to the grand jury that conduct expressly excluded from the statute satisfies its elements. Returning to the flag-burning analogy: although a prosecutor need not present every First Amendment defense to a grand jury, he or she may not obtain an indictment by suggesting to the grand jury that constitutionally protected flag-burning is a crime.

If a statute expressly exempts certain conduct, instructions urging the grand jury to indict based upon that conduct would be fundamentally flawed.  And if, as here, the facts in the indictment detail conduct at the core of what the statute defines as non-criminal, the defendants are entitled to examine grand jury materials to determine whether the government in fact provided grossly misleading instructions.

B.  The Order Fails to Address a Key Argument

The Order fails to address the defendants' concern that the government may have engaged in misconduct by pressuring the grand jury to indict quickly. As detailed in Doc. 491, at 507, the government took the unusual step of immediately appealing an initial denial of probable cause to the district court and then filing a petition for mandamus with the Eighth Circuit.  During that process, the government expressed a desire to "promptly arrest" the protesters, based on what the government characterized as "serious credible threats" of future criminal activity and a need "to protect the public safety." *See In re United States of America*, No. 26-01135, 2026 U.S.  App. LEXIS 1893, Emergency Pet. for Writ of Mandamus, at 3 (8th Cir. Jan. 23, 2026). In its appeal to the district court, the government urged quick action due to a "national security emergency."  *See* Letter from Chief Judge Schiltz to Chief Judge Colloton of the Eighth Circuit, No. 26-01135 (Jan. 23, 2026) at 3. [3]

These facts render one thing inescapable: the prosecutors were fixated on arresting the protesters as quickly as possible.  This focus on swiftly securing arrests permeated the entire process, as prosecutors expressed impatience to the Magistrate Judge, the District Court, and the Eighth Circuit.  The prosecution's insistence on quick action almost certainly continued after the Eighth Circuit denied its mandamus petition; in fact, the government sought its first indictment less than a week later.  The comments prosecutors

---

[3] Chief Judge Patrick Schiltz recently found "overwhelming" evidence that the government is "using criminal investigations to retaliate against and pressure" political opponents, and "using the grand jury process for other (unlawful) purposes." *In re Grand Jury Subpoena*, 26-mc-43 PJS (June 22, 2026), Order at 15-19, 27 (**Attachment A).**

made to pressure courts to precipitously find probable cause suggest that these same prosecutors improperly shared that sense of urgency with the grand jury. *See* Doc. 491, at 30. And rushing a grand jury interferes with its independence. *Id.* (citing *United States v. Breslin*, 916 F. Supp. 438, 442 (E.D. Pa. 1996)).

Additionally, the record strongly suggests that, in hurrying the grand jury, prosecutors may well have made inflammatory comments, like those (detailed above) that they made to the courts, implying that the defendants were terrorists planning additional crimes and that only their immediate apprehension would avert a national emergency.

Recently, three judges in the district court in Wyoming confronted a similar issue (among others) and dismissed indictments in nine separate cases based in part on the government's rushing deliberations. *See United States v. Hopper*, 1:26-cr-00028-ABJ (May 15, 2026), Order Dismissing Indictment Without Prejudice, at 10-11 (unpublished; **Attachment B**) (the judges issued orders in multiple cases, stressing that prosecutors may not engage in "statements or conduct that rushes consideration or chills questions."). Prosecutorial misconduct in *Hopper* included telling grand jurors that their deliberations "won't take long" and that a prior grand jury had returned an indictment in "three minutes"—thereby suggesting that that is how long deliberations should take. *Id.* at *11. Relying on *Breslin* (as defendants did in this case), the judges dismissed the indictments, sharply criticizing the prosecutors for conveying their "subjective evaluation" of the strength of the evidence and suggesting little deliberation was necessary. The judges found this conduct "more pernicious" even than the misconduct in *Breslin. Id.* at *10-11.

Of course, *any* pressure (or even suggestion) that a grand jury consider a factor not

relevant to their decision, or to rush through deliberations raises an alarm, because hurrying deliberations may prevent grand jurors from asking questions, requesting additional evidence, reviewing documents, or watching videos, and it may chill grand jurors from expressing concerns during deliberations.  Yet, as *Hopper* recognizes, some methods of hurrying deliberations are more pernicious than others; particular concern is warranted when the government justifies its urgency with improper or prejudicial appeals.

Here, the record suggests that prosecutors seeking a swift indictment likely referred in the grand jury to the defendants' dangerousness, as they had done to the courts just a week earlier. Any statements branding the defendants as terrorists would be especially pernicious, as such statements would constitute misconduct on their own. *Cf.* Doc. 491, at 29 -31 (citing authorities involving inflammatory comments).[4]

If prosecutors represented to the grand jury (as they did to the Eighth Circuit) that they had undisclosed evidence that the then-targets were planning to participate in future criminal activity, this too would aggravate the concerns identified in *Breslin* and *Hopper*. Such comments would improperly direct the grand jury to indict based on the defendants' character or a desire to deter future crime, rather than on probable cause.  And if the government told grand jurors what it told Judge Schiltz—that failure to indict quickly

---

[4] In *United States v. Hogan*, 712 F.2d 757, 762 (2d Cir. 1983), cited in Doc. 491, the court dismissed an indictment in part because a prosecutor called a defendant a "hoodlum." *See id.* at 30. The *Hopper* opinion expounds upon the prejudice caused by a prosecutor referring to targets as "bad guys," "murderers," "bad people." *Hopper* , at 5-7.  Here, there is reason to believe, based on representations prosecutors made when seeking a probable cause finding from the courts, that those same prosecutors may have inappropriately referred to the protestors as "terrorists" or "agitators" in the grand jury.

would potentially result in a national emergency—that statement could cause the grand jury to set aside its evaluation of probable cause and indict due to a desire to prevent future calamity. These concerns are further compounded here, where any suggestion that these nonviolent protesters were dangerous, domestic terrorists, is entirely unsupported by the record.

### IV.    CONCLUSION

Defendants have demonstrated that grounds may exist to dismiss the indictment based on misconduct before the grand jury and that they are thus entitled to review grand jury material to determine whether such misconduct occurred (and, if so, to enable them to use specific instances of misconduct in their motions to dismiss).

Based on these showings, this Court should, at a minimum, conduct an *in camera* review of the portions of the grand-jury record reflecting legal instructions, any legal colloquy between prosecutors and grand jurors, introductory remarks, and any presentation of the proposed indictment or legal theories.  This type of *in camera* review would be in keeping with the process followed in almost every case cited in this motion. *See generally, Warren*, 16 F.3d at 253 (involving judicial review of grand jury material); *Larrazolo*, 869 F.2d at 1359 (same); *Ciambrone*, 601 F.2d at 623 (same); *Bravo-Fernandez*, 239 F.Supp.3d at 415 (same); *Monzon-Luna*, 11-CR-722 (S-4) (same); *Mix*, CR-12-171, at 11 (same); *Stevens*, 771 F.Supp.2d at 568 (same); *Peralta*, 763 F. Supp. 14, 19-20, 21 (same); *Cerullo*, WL 2462111, at *1-4 (same); *Twersky*, 1994 WL 319367, at *4 (same); *Vetere*, 663 F. Supp. at 386 (same); *see also United States v. Erickson*,  0:24-cr-0007-JMB-DLM (May 12, 2025), Order directing in camera review of grand jury

transcript, at 4 (unpublished; **Attachment C**)  This is the easiest and least disruptive way for the Court to determine if the grave legal errors that appear manifest from the face of the superseding indictment did in fact occur.

For the reasons stated herein, the defendants respectfully ask this Court to vacate the Magistrate Judge's Order and either direct the disclosure of the requested grand jury material or conduct an *in camera* review of the grand jury material.

Dated:  June 24, 2026                                    **DORSEY & WHITNEY LLP**


By  s/ John Marti
      John Marti (#0388393)
      marti.john@dorsey.com
      Ashley Repp (#0399661)
      repp.ashley@dorsey.com
      Meredith LaVine (#0506725)
      lavine.meredith@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868
Attorneys for Defendant Thomas Matthew Tier (36)


**LAW OFFICE OF JORDAN S. KUSHNER**

s/ Jordan S. Kushner
Jordan S. Kushner, Reg. No. 219307
431 South 7th Street, Suite 2446
Minneapolis, MN 55415
(612) 288-0545
jskushner@gmail.com

Attorneys for Defendant Nekima Levy Armstrong (1)

**THE JAB FIRM**

s/ Jill A. Brisbois
Jill A. Brisbois, Reg. No. 0345477 150
South 5th Street, Suite 1850
Minneapolis, MN 55402
(651) 209-7797
jill@thejabfirm.com

Attorneys for Defendant Chauntyll Louisa Allen (2)

**OFFICE OF THE FEDERAL DEFENDER**

s/ James S. Becker
James S. Becker, Reg. No. 388222
107 U.S. Courthouse 300
South Fourth Street
Minneapolis, MN 55415
(612) 664-5858
James_becker@fd.org

Attorneys for Defendant William Scott Kelly (3)

**BIRRELL LAW FIRM, PLLC**

s/ Ian S. Birrell

Ian S. Birrell, Reg. No. 0396379
Andrew S. Birrell, Reg. No. 133760
333 South 7th Street, Suite 2350
Minneapolis, MN 55402
(952) 356-2393
ian@birrell.law andy@birrell.law

Attorneys for Defendant Jerome Deangelo Richardson (5)

**CAPITOL CITY LAW GROUP, LLC**

s/ A.L. Brown
A. L. Brown (# 331909)
287 East Sixth Street, Suite 20
Saint Paul, Minnesota 55101
(651) 705-8580
a.l.brown@cclawg.com

14

Attorneys for Defendant Jamael Lydell Lundy (6)

**LAW OFFICES OF ROBERT D. RICHMAN, LLC**

s/ Robert D. Richman
Robert D. Richman, Reg. No. 226142
P.O. Box 16643
St. Louis Park, MN 55416
(651)278-4987
robert@rdrichmanlaw.com

Attorneys for Defendant Trahern Jeen Crews (7)

**GAD & GAD LAW OFFICES LLP**

s/ Sarah R. Gad
Sarah R. Gad, Reg. No. 0403328
8 E 25th Street
Minneapolis, MN 55402
(612) 512-1870
sarah@gadlawoffice.com

Attorneys for Defendant Ian Davis Austin (9)

**KENNETH UBONG UDOIBOK, PA**

s/ Kenneth U. Udoibok
Kenneth U. Udoibok, Reg. No. 0262523
Flour Exchange Building, Suite 5010
310 Fourth Ave S.
Minneapolis, MN 55415
(612) 808-6031
k@kenulaw.com

Attorneys for Defendant Aziza M. Aboud (10)

**GLENN P. BRUDER**

s/ Glenn P. Bruder
Glenn P. Bruder, Reg. No. 148878
9531 West 78th Street
Suite 210
Eden Prairie, MN 55344
(952) 831-3174

Attorneys for Defendant Max Richard Adamson (11)

15

**DEVORE LAW OFFICE, P.A.**

s/ Kevin DeVore
Kevin W. DeVore, Reg. No. 0267302
724 Bielenberg Drive, Ste 110
Woodbury, MN 55125
(651) 435-6500
kevin@devorelawoffice.com

Attorneys for Defendant Ezra Chaim Pye Blumenfeld (13)

**LEACH LAW OFFICE**

s/ Patrick G. Leach
Patrick G. Leach, Reg. No. 0286825
8961 Aztec Drive
Eden Prairie, MN 55347
(763) 220-6164
pgl@leachlawoffice.com

Attorneys for Defendant Kelly Ann Carey (15)

**DE LEÓN & NESTOR, LLC**

s/ Bruce D. Nestor
Bruce D. Nestor, Reg. No. 0318024
3547 Cedar Avenue South
Minneapolis, MN 55407
(612) 659-9019
nestor@denestlaw.com

Attorneys for Defendant Monique Cullars-Doty (16)

**MELVIN R. WELCH**

s/ Melvin R. Welch
Melvin R. Welch, Reg. No. 0387750
Commerce at the Crossings Bldg
250 South Second Street, Suite 205
Minneapolis, MN 55401
(612) 741-3272
mel@melvinwelchlaw.com

Attorneys for Defendant Tiffany Lynn Dunlap (17)

**LAW OFFICE OF STEVEN J. WRIGHT, LLC**

s/ Steven J. Wright
Steven J. Wright, Reg. No. 387336
331 Second Ave S, Suite 705
Minneapolis, MN 55401
(612) 669-8280
stevejameswright@gmail.com

Attorneys for Defendant Andrew Edwards (18)

**CHARLES F. CLIPPERT**

s/ Charles F. Clippert
Charles F. Clippert, Reg. No. 248848
101 East Fifth Street, Suite 1500
St. Paul, MN 55101
(651) 300-4109
charlie@clippertlaw.com

Attorneys for Defendant Rachel Goligoski (19)

**FORSGREN FISHER MCCALMONT DEMAREA TYSVER LLP**

s/ Caitlinrose H. Fisher
Caitlinrose H. Fisher, Reg. No. 0398358
1500 Capella Tower
225 South 6th Street
Minneapolis, MN 55402
(612) 474-3300
cfisher@forsgrenfisher.com

Attorneys for Defendant Ariel Hauptman (21)

**LOTUS LEGAL PLLC**

s/ Caroline H. Brunkow
Caroline H. Brunkow, Reg. No. 0398936
331 Second Ave South, Ste 420
Minneapolis, MN 55401
(612) 293-6963
cari@lotuslegalpllc.com

Attorneys for Defendant Krista Erin Hogan (22)

**KOCH AND GARVIS, LLC**

s/ Andrew S. Garvis
Andrew S. Garvis, Reg. No. 257989
3109 Hennepin Avenue South
Minneapolis, MN 55408
(612) 827-8101
andrew@uptownlawyer.com

Attorneys for Defendant Danielle Andrea Matthias (24)

**F. CLAYTON TYLER, P.A.**

s/ Karen Mohrlant
Karen E. Mohrlant, Reg. No. 388093
331 Second Avenue South, Suite 230
Minneapolis, MN 55401
(612) 333-7309
kmohrlant@fctyler.com

Attorneys for Defendant Catie Anne Michaelson (25)

**JOHNSON & GREENBERG PLLP**

s/ Lee R. Johnson
Lee R. Johnson, Reg. No. 0189935
5775 Wayzata Boulevard, Suite 700
St. Louis Park, MN 55416
(952) 545-1621
lrjohnsonslp@gmail.com

Attorneys for Defendant Eric Ryan Michaelson (26)

**LAW OFFICE OF ROBERT A. LENGELING, PLLC**

s/ Robert A. Lengeling
Robert A. Lengeling, Reg. No. 304165
310 Fourth Avenue South, Suite 1050
Minneapolis, MN 55415
(612) 963-1555

18

robert@lengelinglaw.com

Attorneys for Defendant David Okar (27)

**LAW OFFICES OF THOMAS H. SHIAH, LTD.**

s/ Thomas H. Shiah
Thomas H. Shiah, Reg. No. 100365
331 Second Avenue South, Ste 705
Minneapolis, MN 55401
(612) 338-0066
ths@tomshiah.com

Attorneys for Defendant Jarmel Perry (28)

**BEST & FLANAGAN LLP**

s/ Amy S. Conners
Amy S. Conners, Reg. No. 0387375
60 South 6th Street, Suite 2700
Minneapolis, MN 55402
(612) 349-5665
aconners@bestlaw.com

Attorneys for Defendant Cheryl Ann Persigehl (29)

**GOETZ & ECKLAND P.A.**

s/ Frederick J. Goetz
FREDERICK J. GOETZ
Attorney Registration No. 185425
615 1st Avenue NE, Suite 425
Minneapolis, MN 55413
(612) 874-1552
FGoetz@goetzeckland.com

Attorneys for Defendant Emmar Monike Pineda-Moreno (30)

**RINGSTROM DEKREY PLLP**

s/ Dane DeKrey
Dane DeKrey, Reg. No. 0397334
814 Center Avenue, Suite 5

Moorhead, MN 56560
(218) 284-0484
dane@ringstromdekrey.com

Attorneys for Defendant Spencer Michael Rodriguez-Bocanegra (31)

**ARNESON LAW OFFICE PLLC**

s/ Wyatt Arneson
Wyatt Arneson, Reg. No. 0392071
1025 Grain Exchange Building
400 South 4th Street
Minneapolis, MN 55415
(612) 746-1188
wyatt@arnesonlawllc.com

Attorneys for Defendant Katherine Shaw (32)

**GERDTS LAW, PLLC**

s/ Daniel L. Gerdts
Daniel L. Gerdts, Reg. No. 207329
331 Second Avenue South, Suite 705
Minneapolis, MN 55401
(612) 800-5086
daniel@danielgerdtslaw.com

Attorneys for Defendant Satara Diann Strong-Allen (33)

**SIEBEN & COTTER, PLLC**

s/ Patrick L. Cotter
Patrick L. Cotter, Reg. No. 0319120
105 Hardman Court, Suite 110
South St. Paul, MN 55075
(651) 455-1555
patrick@siebencotterlaw.com

Attorneys for Defendant Charles Swenson (34)

**SAPIENTIA LAW GROUP, PLLC**

s/ Robin M. Wolpert

Robin M. Wolpert, Reg. No. 0310219
120 South Sixth Street, Suite 100
Minneapolis, MN 55402
(612) 756-7100
robinw@sapientialaw.com


Attorneys for Defendant Robyn Elise Swenson (35)

**JAMES M. VENTURA**

s/ James M. Ventura
James M. Ventura, Reg. No. 147217
1000 Twelve Oaks Center Drive, Suite 100
Wayzata, MN 55391
(952) 473-8064
jventura@jamesventuralaw.com

Attorneys for Defendant Lee Elizabeth Wiedeman Tuggle (37)

**LANGERT LAW, LLC**

s/ Maggie G. Langert
Maggie G. Langert, Reg. No. 0308316
724 Bielenberg Drive #54
Woodbury, MN 55125
(612) 470-4810
maggie@langertlaw.com

Attorneys for Defendant John Vergin (38)

**WOLD LAW**

s/ Peter B. Wold
Peter B. Wold, Reg. No. 0118382
331 2nd Avenue South, Suite 705
Minneapolis, MN 55401
(612) 341-2525
pwold@wold-law.com

Attorneys for Defendant Mark D. Weinfurter (39)

21