# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        *Plaintiff,*

v.

IAN DAVIS AUSTIN*,*

        *Defendant*.

Case No. 0:26-cr-00025-LMP-DLM

**DEFENDANT'S RESPONSE OPPOSING GOVERNMENT'S MOTION TO MODIFY CONDITIONS OF RELEASE**

## INTRODUCTION

Defendant Ian Davis Austin respectfully submits this Opposition to the Government's Motion to Amend Conditions of Release. The government's motion is procedurally and substantively defective at the threshold. Rather than accepting the statutory burdens of the framework it explicitly invokes—the revocation-and-sanctions provision of 18 U.S.C. § 3148(b)—the government attempts to manufacture an intrusive, highly restrictive pretrial supervision regime under the guise of a routine modification.

Section 3148(b) is not an elastic mechanism for revisiting a release order whenever the government becomes retroactively dissatisfied with a defendant's liberty. It requires a rigorous, dual-step judicial determination: first, a finding that there is probable cause to believe the defendant committed a federal, state, or local crime while on release, or clear-and-convincing evidence that he violated another condition of release; and second, a finding that no condition or combination of conditions will assure appearance and community safety, or that the defendant is unlikely to abide by any condition or combination of conditions. 18 U.S.C. § 3148(b).

1

Seeking to evade these strict constraints, the government requests neither an arrest warrant nor an order of revocation. Instead, it attempts to secure the punitive and administrative benefits of a violation proceeding while bypassing the demanding statutory proof Congress attached to it.

If the government seeks to alter pretrial conditions short of revocation, its motion is governed by 18 U.S.C. § 3142(c). That framework imposes a continuing statutory obligation to employ only the least restrictive further condition necessary to reasonably assure appearance and safety. 18 U.S.C. § 3142(c)(1)(B). The government's motion entirely abdicates this condition-by-condition analysis. It identifies no failure to appear, points to no breakdown in the existing release order, and offers zero explanation as to why an array of sweeping boilerplate restrictions is suddenly required for this specific defendant, on this specific record.

Instead, the government bases its sweeping demands on unresolved, out-of-state allegations arising from political protests in New Jersey, unmasking its true intent: the pathologizing and policing of lawful dissent. The motion explicitly asserts that Mr. Austin possesses an "apparent proclivity" for confrontational behavior toward federal immigration authorities. This highly troubling formulation underscores the legal incoherence of the government's request. "Apparent proclivity" is a standard completely foreign to the Bail Reform Act. A generalized, political disagreement with a defendant's demeanor or advocacy in a separate jurisdiction cannot substitute for individualized, record-supported findings of flight risk or community danger.

2

The Bail Reform Act does not permit the government to convert unadjudicated citations into a blank check for nationwide geographic and personal surveillance. A narrowly tailored, target-specific no-contact condition regarding known Cities Church congregants and staff has a clear nexus to the charged offense; the remaining proposed conditions do not. Because the government has failed to carry its statutory burden to demonstrate that its proposed restrictions are the least restrictive means necessary to address a cognizable risk, its motion must be denied, and Mr. Austin's unsupervised release status must be maintained. Pursuant to this Court's June 24, 2026 Order, Mr. Austin respectfully requests an in-person hearing on the government's motion.

## PROCEDURAL HISTORY

On January 29, 2026, a federal grand jury returned the original indictment in this matter, charging Defendant Ian Davis Austin and eight co-defendants with two counts arising from a January 18, 2026 protest at Cities Church in St. Paul, Minnesota: Conspiracy Against Rights, in violation of 18 U.S.C. § 241, and Freedom of Access to Clinic Entrances (FACE) Act violations, under 18 U.S.C. § 248(a)(2). (ECF No. 39.)

Mr. Austin made his initial appearance on February 2, 2026. (ECF No. 77.) The government formally moved for pretrial detention. (*Id*.) Following a hearing, the Court denied the government's detention motion, ordered Mr. Austin immediately released on an unsecured personal-recognizance bond, and imposed only the standard threshold conditions of release. (ECF No. 80.) Crucially, the Court declined to impose any special restrictions—such as a no-contact order, association restrictions, geographic or location

3

limits, travel boundaries, curfews, electronic monitoring, or any condition limiting Mr. Austin's protected First Amendment expressive activity. (*Id*.)

On February 26, 2026, the government obtained a superseding indictment. (ECF No. 144.) While expanding the scope of the conspiracy count from nine to thirty-nine co-defendants, the superseding indictment maintained the exact same two statutory charges against Mr. Austin. (*Id*.) The factual allegations against Mr. Austin specifically assert that he entered the church sanctuary during a worship service, stood in the main aisle, and questioned the lead pastor regarding Christian nationalism and its relation to civil law. (*Id*.)

On or about May 29, 2026, Mr. Austin was arrested by local law enforcement officers during a political demonstration outside Delaney Hall—a private immigration detention facility—in Newark, New Jersey. (ECF No. 546-1.) He was issued a localized, state-level citation for disorderly conduct, which remains a mere unproven, pending allegation. (*Id*.) Mr. Austin has not been convicted of any offense arising from this encounter. (*Id*.) The New Jersey charging documents do not allege that Mr. Austin contacted any Cities Church congregant, staff member, or witness; do not allege that he returned to Minnesota; and do not allege any conduct directed at this prosecution, this jurisdiction, or any individual involved in this case.

On June 23, 2026, the government filed the instant Motion to Modify Conditions of Release. (ECF No. 546.) Although the government's moving papers explicitly invoke 18 U.S.C. § 3148(b)—the Bail Reform Act's strict revocation and sanctions framework—the government does not seek revocation of release, does not request an arrest warrant, and does not ask this Court to make the restrictive statutory findings mandated by § 3148(b)(2).

(*Id.* at 2–4.) Instead, the government relies entirely on the bare fact of the New Jersey citation to request a sweeping, retroactive overhaul of Mr. Austin's release status. (*Id.* at 3–4.)

Mr. Austin opposes the government's requested modification in its entirety, with the sole exception of a narrow, target-specific condition prohibiting intentional contact with known Cities Church congregants and staff.

### LAW AND ARGUMENT

**I.    The Government's Reliance on 18 U.S.C. § 3148(b) is Procedurally Deficient and Cannot Support a Modification of Release Conditions.**

The government expressly invokes 18 U.S.C. § 3148(b), but it does not seek revocation, detention, or the statutory findings required by that provision. To the extent the government seeks only prospective modification of release conditions, its request is governed by § 3142(c)(3), subject to § 3142(c)(1)(B)'s least-restrictive-condition requirement. The government cannot invoke alleged violations under § 3148(b) while avoiding that statute's procedural and evidentiary requirements.

Section 3148(a) provides that a person released under § 3142 who violates a condition of release is subject to specific statutory sanctions: revocation of release, an order of detention, and prosecution for contempt. 18 U.S.C. § 3148(a). Section 3148(b) authorizes the government to initiate "a proceeding for revocation of an order of release." 18 U.S.C. § 3148(b). The statute permits revocation and detention only after the Court conducts a hearing and makes the dual findings Congress required:

1. There is probable cause to believe the defendant committed a federal, state, or local crime while on release, or clear-and-convincing evidence that the defendant violated any other condition of release; <u>and</u>

2. There is no condition or combination of conditions that will assure the defendant will not flee or pose a danger to the safety of any other person or the community, or the defendant is unlikely to abide by any condition or combination of conditions of release. 18 U.S.C. § 3148(b)(1)–(2).

The government's moving papers demonstrate a fatal procedural conflict. The government does not seek revocation, does not request an arrest warrant, and does not ask the Court to make the restrictive findings required by § 3148(b). To the contrary, while asserting that Mr. Austin's out-of-state citations "arguably are violations of his current conditions of release," the government expressly states that it "is not seeking revocation of release pursuant to 18 U.S.C. § 3148(b)" and "does not wish the court to issue a warrant for arrest." It instead asks the Court to use a statute governing revocation and detention as a shortcut to convert Mr. Austin's existing, unsupervised status into an active supervisory regime.

This request is procedurally unsupportable. The government cannot invoke § 3148(b)'s violation framework, disclaim the remedy Congress authorized under that section, avoid the evidentiary findings Congress required, and nevertheless obtain the practical benefit of a violation proceeding through the back-door imposition of significantly more restrictive conditions. 18 U.S.C. § 3148(b). If the government seeks a modification short of revocation, its motion is governed by 18 U.S.C. § 3142(c)(3). That

6

framework is limited by § 3142(c)(1)(B)'s statutory mandate that any added release conditions constitute the least restrictive further condition, or combination of conditions, necessary to reasonably assure appearance and safety. 18 U.S.C. § 3142(c)(1)(B).

The government's motion fails under the proper framework as well. It does not proceed condition by condition, identifies no demonstrated flight or safety risk that the existing release order has failed to address, and offers no legal or factual analysis explaining why each proposed restriction is necessary for this specific defendant, in this case, on this record. Because its improper reliance on § 3148(b) cannot legally support the requested modification, the motion must be denied in its entirety, with the sole exception of a narrow, target-specific no-contact condition regarding known Cities Church congregants and staff.

## II.    The Government Has Not Met Its Burden for Modifying Release Conditions.

Even if the Court construes the government's request as a motion to amend Mr. Austin's release order under 18 U.S.C. § 3142(c)(3), the government still must satisfy § 3142(c)(1)(B). That provision permits only the least restrictive further condition, or combination of conditions, necessary to reasonably assure the defendant's appearance and the safety of another person and the community. 18 U.S.C. § 3142(c)(1)(B). The authority to amend a release order is not authority to impose broader restrictions because the government now prefers them. Any additional restraint must be justified by an affirmative record showing that the condition addresses a concrete risk of nonappearance or danger and is no more restrictive than necessary to address that risk.

7

The record here does not support that showing. Mr. Austin has appeared as required and fully complied with every condition this Court actually imposed. The government identifies no missed court date, no failure to respond to an explicit directive from the Court, no contact with any witness or alleged victim, no return to Cities Church, and no interference with this prosecution. Those facts matter because § 3142(c) authorizes conditions to address risks of nonappearance and danger, not to construct added supervision or administrative control for its own sake. 18 U.S.C. § 3142(c).

The government's request rests largely on unresolved allegations from New Jersey and its assertion that Mr. Austin has an "apparent proclivity" for confrontational behavior toward law enforcement and federal immigration authorities. That is not a statutory showing. An arrest is not an adjudication, and protest-related allegations from another jurisdiction do not, without reliable supporting evidence and particularized findings, justify broad new federal release restrictions. If the government seeks consequences for an alleged violation of the obey-the-law condition, § 3148 supplies the procedure, burden, and required findings for revocation or sanctions. 18 U.S.C. § 3148. Having declined to seek revocation under that procedure, the government cannot treat the New Jersey arrest as a substitute finding of violation, dangerousness, and inadequacy of the existing release order. 18 U.S.C. § 3148(b).

The Court must also reject any suggestion that the absence of previously unrequested conditions reflects a failure by Mr. Austin. He was not placed on pretrial supervision. He was not subject to a travel restriction. He was not required to obtain approval of his residence. He was not subject to employment, treatment, testing, alcohol,

8

or law-enforcement-reporting conditions. The fact that the Court did not impose those restrictions at the outset does not supply a reason to impose them now, and Mr. Austin cannot be faulted for failing to comply with conditions that did not exist.

At bottom, the government asks the Court to convert concern about Mr. Austin's protest activity and interactions with law enforcement into broad controls over his movement, residence, employment, treatment, and daily life. The Bail Reform Act requires more. Protest activity, political association, travel, and even contentious interactions with law enforcement do not themselves justify expanded release conditions. The government must identify a concrete risk to appearance or safety and show that any added restraint is tailored to that risk, not to the government's disapproval of where, how, or against whom Mr. Austin protests.

Probation's agreement with the government's recommendation does not alter the analysis. The Court may consider Probation's views in assessing whether proposed conditions are workable or administrable. But Probation's agreement does not transform an arrest into an adjudication, convert protest activity into a statutory risk, or relieve the government of its burden under § 3142(c)(1)(B).

Because the government has not identified a failure of the existing release order or a concrete risk that warrants the requested restrictions, the motion must be denied, with the sole exception of a narrow, target-specific no-contact condition regarding Cities Church congregants and staff.

**III.     The Contested Conditions Are Not Tailored to Any Risk Cognizable Under the Bail Reform Act**.

The government's proposed modifications must be rejected except to the limited extent they impose a narrow, target-specific no-contact condition regarding known Cities Church congregants and staff. The remaining proposed conditions fail to satisfy the threshold requirements of the Bail Reform Act. They are not tied to any individualized showing of nonappearance or danger, but instead seek to construct an intrusive pretrial supervision regime where none currently exists, using an unresolved, out-of-state citation as the pretext.

The government explicitly relies on 18 U.S.C. § 3148(b) while declining to seek the specific judicial findings that statute requires. It also fails to provide the individualized showing required under 18 U.S.C. § 3142(c)(1)(B) to connect Mr. Austin's New Jersey protest citation to substance abuse, mental health concerns, unstable housing, unlawful weapons possession, or any risk of nonappearance in Minnesota. Because Mr. Austin remains on an unsupervised personal-recognizance bond, the government cannot impose boilerplate restrictions merely to create an administrative infrastructure for Pretrial Services where no supervision has been justified.

Ultimately, the contested conditions do not protect the integrity of this prosecution. They operate as an overbroad supervisory regime untethered to any demonstrated release-related need. Conditions that burden travel, association, protest activity, medical autonomy, employment, residence, or daily life must be justified by a concrete statutory risk and must be no more restrictive than necessary to address that risk. The government has made no

such showing. Because the proposed conditions are not the least restrictive further conditions necessary to reasonably assure appearance or safety, and because the existing unsupervised release order has reasonably assured Mr. Austin's appearance and the safety of the community, the motion must be denied and the status quo maintained. 18 U.S.C. § 3142(c)(1)(B).

### A. *No Contact with Cities Church Congregants or Staff; Stay-Away from Cities Church*

Mr. Austin does not object to a properly tailored no-contact and stay-away condition related to Cities Church, its known congregants, and its staff. Unlike the government's contested requests, this condition is tied to the charged offense, connected to the alleged location, and addresses a case-specific concern.

Crucially, this targeted restriction does not require full-fledged pretrial supervision to administer. The condition must be precise: it must prohibit only intentional direct or indirect contact with Cities Church congregants or staff known to Mr. Austin, and prohibit Mr. Austin from entering the Cities Church building or clearly identified property controlled by Cities Church. It must not be written so broadly that accidental, incidental, or unknown contact becomes a technical release violation, nor can it be used as a hook to transition Mr. Austin onto an active supervision or reporting regime.

### B. *Supervision by Probation or Pretrial Services*

Mr. Austin has appeared as required. He has remained on release without pretrial supervision. He is not subject to administrative reporting, check-ins, travel approval, residence approval, employment verification, treatment monitoring, testing, or law-

11

enforcement-contact reporting. The government identifies no missed hearing, no failure to communicate with the Court, no contact with a witness, no return to Cities Church, and no misconduct in this case that supervision would address. The government's point is not that supervision failed. Its point is that supervision was not originally imposed. That is not a statutory reason to impose it now.

The supervision request appears to serve mainly as the infrastructure for the rest of the government's proposed restraints. Once supervision exists, the government can route travel, residence, employment, testing, treatment, and reporting through a supervising officer. But supervision is not justified because it would make other unsupported conditions easier to administer. The Court must first find that supervision itself is necessary to address a risk of nonappearance or danger. The government has not made that showing.

Because the government has identified no concrete risk of flight or danger in this case, the Court must reject any attempt to implement new notice, check-in, approval, or administrative reporting requirements. Introducing those obligations would create an active reporting infrastructure where none currently exists, effectively granting the government the very supervision regime it has failed to justify under the Bail Reform Act. The request must be denied in its entirety.

### C. *Pennsylvania-Only Travel Restriction*

The Pennsylvania-only travel restriction is the clearest example of the government's overreach. The government asks the Court to confine Mr. Austin's travel strictly to Pennsylvania unless a supervising officer approves otherwise. But Mr. Austin is not on pretrial supervision, has not been subject to travel approval, and has never violated a travel

12

restriction because no travel restriction exists. There is no evidence that he is a flight risk, that he missed a court date, that he attempted to evade the Court, or that he concealed his presence.

The government's real concern is not flight; it is travel for the purpose of political protest. The motion is based on Mr. Austin's presence at immigration-related demonstrations in New Jersey. The requested remedy would prevent him from traveling outside his home state for future lawful protest activity unless he first obtains government permission through a supervisory structure the government has not justified. That is not an incidental byproduct of the restriction; it is the point of the restriction.

The Bail Reform Act does not permit broad geographic restraints based on the government's dislike of a defendant's political "proclivity" or expressive activity. A travel restriction may be appropriate where a defendant has failed to appear, violated travel limits, attempted to flee, or otherwise demonstrated that travel restrictions are necessary to reasonably assure appearance or safety. None of those factors are present here. If the government's concern is Cities Church, a target-specific stay-away condition addresses it. What the government cannot do is convert unresolved protest-related allegations in New Jersey into a punitive, statewide travel regime. This condition is unsupported, overbroad, and must be denied in its entirety.

## D. *Residence Approval*

The proposed residence-approval condition suffers from the same structural flaw. The government does not allege unstable housing, evasion, or that Mr. Austin cannot be

reached. It does not identify any residence-related safety concern. It simply asks the Court to place Mr. Austin's living arrangements under supervisory control.

Mr. Austin is currently on an unsecured personal-recognizance bond without active pretrial supervision. He is not currently subject to any administrative reporting, address-notification, or residence-approval requirements, nor does the record justify creating them now. The government fails to explain why an unprecedented reporting structure is necessary, or why affirmative government approval over his living arrangements is warranted. A residence-approval requirement would add control, not protection. It is unsupported by the record and must be denied.

### E.  *Active Employment Requirement*

The employment condition is even further afield. This case has nothing to do with employment. The New Jersey allegations have nothing to do with employment. The government does not claim that Mr. Austin is unemployed, that unemployment makes him a flight risk, or that employment would reduce any identified danger. It also ignores that Mr. Austin is a disabled combat veteran, making an active-employment mandate especially inappropriate absent a case-specific showing. The government identifies no fact connecting employment status to appearance, safety, or this prosecution.

The condition therefore serves no Bail Reform Act purpose. It is a lifestyle command dressed up as a release condition, and it would create a new avenue for alleged noncompliance where none is needed. The Court must reject employment restrictions used as a substitute for what the government apparently dislikes: advocacy, organizing, travel, and protest.

14

The Bail Reform Act does not authorize the Court to order a defendant to spend his time in ways the government finds more productive or less disruptive. It authorizes only conditions necessary to reasonably assure appearance and safety. This condition does not serve that purpose. It should be denied.

### F. *No Unlawful Firearms, Destructive Devices, or Other Weapons*

Mr. Austin does not object to a condition prohibiting the *unlawful* possession of a firearm, destructive device, or other weapon. However, the government has shown no basis for a broader, total prohibition. The government alleges no weapon in this case, no weapon in New Jersey, and no weapons-related risk whatsoever.

The Court has made no finding that Mr. Austin poses a credible threat to the physical safety of another person that would justify temporary disarmament under the Second Amendment. *See United States v. Rahimi*, 602 U.S. 680 (2024). Any weapons-related condition must therefore be strictly limited to a prohibition on unlawful possession. Mr. Austin's non-objection to that narrow, lawful condition does not constitute a concession that the government's broader requested conditions are necessary or constitutionally permissible.

### G. *No Excessive Alcohol Use*

The requested alcohol condition must be denied. The government does not allege that alcohol played any role in this case. It does not allege that alcohol played any role in New Jersey. It does not allege alcohol abuse, alcohol-related misconduct, alcohol-related danger, or alcohol-related noncompliance. Nothing in the motion connects alcohol to appearance, safety, or any condition of release.

15

The defect is not merely that the government's showing is thin; there is no showing at all. A condition prohibiting "excessive" alcohol use would also invite needless uncertainty. Without any alcohol-related risk in the record, the restriction is completely untethered from preventing flight, danger, or noncompliance. It would instead provide the government and Pretrial Services a discretionary hook to scrutinize lawful personal conduct that has nothing to do with this prosecution.

Pretrial release conditions cannot be imposed by generic template. The fact that an alcohol restriction is available on a standard form does not make it necessary. Where the government identifies no alcohol-related issue, the least restrictive further condition under the Bail Reform Act is no alcohol condition. This request must be denied.

### H. *No Unlawful Use or Possession of Controlled Substances*

The requested controlled-substance condition must be denied as a separate release condition. The government does not allege drug use in this case. It does not allege drug use in New Jersey. It does not allege a drug offense, a substance-abuse history, a positive test, drug-related noncompliance, or any connection whatsoever between controlled substances and appearance or safety. There is simply no drug issue in this record.

Because the record is entirely devoid of any substance-abuse allegations, the government lacks any statutory basis to insert this condition into the release order. Mr. Austin is already bound by the standard, threshold condition to obey all federal, state, and local laws. Adding a redundant, textually separate controlled-substance condition serves no legitimate Bail Reform Act purpose.

16

Instead, the request appears designed solely to create a backdoor mechanism for future intrusive monitoring. A separate controlled-substance condition on a form order is frequently used as a bridge to implement suspicionless drug testing, mandatory treatment, and active pretrial supervision. Because the government has failed to provide an individualized factual basis to justify any drug-related restrictions, the Court must decline to add this condition.

### I.  *Drug Testing*

The government's request for mandatory drug testing is entirely unsupported. The government identifies no drug use, no drug charge, no positive test, no substance-abuse history, no drug-related noncompliance, and no allegation that drugs played any role in this case or in New Jersey.

That absence of evidence must end the inquiry. Drug testing is not a minor administrative condition; it is an intrusive monitoring tool that requires Mr. Austin to submit his body to government searches based on a risk the government has not identified. Imposing it requires a specific factual basis tied to appearance or safety. The government may not use a textually separate unlawful-use condition as a bridge to suspicionless testing. Testing requires its own justification, and because nothing in this record provides it, the request must be denied.

### J.  *Medical or Psychiatric Treatment*

The requested medical or psychiatric treatment condition must be denied because the government has offered no evidence that Mr. Austin has any medical or psychiatric condition bearing on release. It has provided no medical record, diagnosis, evaluation,

expert opinion, treatment history, or any other competent basis for concluding that treatment is necessary to assure his appearance or protect any person or the community. It identifies no treatment failure, untreated condition, or clinical risk that would justify placing his medical care under court supervision.

Instead, the request rests entirely on the government's characterization of Mr. Austin's protest activity as confrontational, disruptive, and objectionable. That is not a basis for compelled treatment. Political dissent is not pathology, and protest activity is not a diagnosis. The government may disagree with Mr. Austin's advocacy, may disapprove of his presence at protests, and may characterize his conduct in the harshest possible terms. But none of that supplies the medical or psychiatric showing required before the Court imposes a condition that heavily intrudes on his bodily autonomy, privacy, and treatment decisions.

A treatment condition is not a routine add-on to pretrial release. It grants the government, through Pretrial Services, an invasive role in a defendant's private medical care. That authority may be appropriate where the record shows an actual, clinically supported risk connected to appearance or safety. It is entirely inappropriate where, as here, the government identifies no clinical need and simply asks the Court to convert its political objection into a mental-health condition.

Defense counsel's voluntary representation that Mr. Austin is already in therapy does not justify compelled treatment, treatment directives, disclosure of treatment substance, or open-ended medical supervision. This private choice cannot be used as a

backdoor mechanism to turn voluntary therapy into an active supervision condition. The request must be denied.

### K. *Reporting Law-Enforcement Contacts Within 72 Hours*

The law-enforcement-contact reporting condition must be denied in its entirety. Mr. Austin is currently on an unsecured personal-recognizance bond without active pretrial supervision. He is not subject to any administrative reporting, notice, or law-enforcement-contact disclosure mandates, and he was under no obligation to report the New Jersey citation. The government identifies no concealment, no evasion, and no failure to comply with existing conditions because no reporting infrastructure exists in this case.

The proposed condition would be exceptionally difficult to administer in a case involving political protest. The government asks the Court to require Mr. Austin to report "every contact with law enforcement personnel, including arrests, questioning, or traffic stops." That language is broad enough to sweep in incidental encounters, crowd-control interactions, passive protest monitoring, brief questioning, and other ambient interactions that are fluid and ambiguous in the moment. A condition that turns ordinary or fleeting encounters with law enforcement into potential federal release violations is not narrow simply because it attaches a 72-hour deadline.

The government has failed to explain why a brand-new reporting obligation is necessary to assure appearance or safety. Mr. Austin remains completely available to the Court, and the government has identified no operational gap that justifies stripping him of his unsupervised status. The Bail Reform Act does not authorize the Court to implement a restrictive reporting requirement merely because the government desires prospective

19

intelligence regarding Mr. Austin's future protest activity or interactions with law enforcement. On this record, the requested condition is unnecessary, overbroad, and must be denied.

Because the government's proposed conditions are not the least restrictive further conditions necessary to address any cognizable risk under the Bail Reform Act, and because the current unsupervised release order has reasonably assured Mr. Austin's appearance and the safety of the community, the motion must be denied and the status quo maintained, with the sole exception of a narrow, target-specific no-contact condition regarding known Cities Church congregants and staff.

IV.    **The Government's Requested Restrictions Infringe Upon Protected First Amendment Activity Without Justification.**

The government's failure to tailor its requested conditions is especially serious because the proposed restrictions would burden expressive and associational activity. The government does not tie its request to any failure to appear, witness contact, return to Cities Church, conduct in Minnesota, or violation of a condition actually imposed by this Court. It ties the request to Mr. Austin's alleged "confrontational behavior" toward law enforcement and federal immigration authorities arising from protest activity outside Delaney Hall in New Jersey.

The government's motion is legally unsustainable. A release condition that burdens movement, association, advocacy, or protest cannot be justified by generalized concern or by disagreement with the way a defendant engages in political activity. It must be supported by an individualized finding that the condition is necessary to reasonably assure appearance

20

or safety, and it must be no broader than necessary to address the identified risk. *See United States v. Spilotro*, 786 F.2d 808, 813–16 (8th Cir. 1986) (addressing pretrial association restrictions and requiring case-specific justification for conditions that burden constitutional rights).

The government has not made that showing. A narrowly tailored no-contact or stay-away condition relating to Cities Church is tied to the charged conduct. The remaining proposed conditions are not. A Pennsylvania-only travel restriction would substantially burden Mr. Austin's ability to attend protests, associate with others, and engage in advocacy outside Pennsylvania. Supervision and residence approval would place his movement and living arrangements under supervisory control without a demonstrated release-related need. Treatment, testing, alcohol, employment, and reporting conditions likewise have no factual or logical nexus to the charged offense or to any identified risk in this case.

The government must address separate, allegedly unlawful conduct through the ordinary criminal process. If New Jersey authorities believe Mr. Austin violated New Jersey law, those allegations must be litigated in that jurisdiction. If federal prosecutors believed the New Jersey arrest warranted a federal charge, they could have brought one. They did not. The government cannot use pretrial release conditions in this case as an administrative substitute for charges it does not have, convictions it has not obtained, or statutory findings it has not sought.

The Bail Reform Act does not permit unresolved protest-related allegations from another jurisdiction to become prospective restrictions on Mr. Austin's movement,

association, advocacy, medical autonomy, and daily life absent the showing required by § 3142(c)(1)(B). Because that showing is missing, the contested conditions must be denied.

## V.     The Deficient Record Supports Only a Limited, Case-Specific Amendment.

The Court must deny the government's motion except to the narrow extent it imposes conditions explicitly tied to the facts of this case.

A targeted amended order should be strictly limited to prohibiting Mr. Austin from intentionally contacting, directly or indirectly, known congregants or staff of Cities Church, and from entering the Cities Church building or clearly identified property controlled by Cities Church. Any such condition should be limited to persons known to Mr. Austin and should not treat accidental, incidental, or unknown contact as a release violation. Mr. Austin's baseline requirement to obey all federal, state, and local laws already addresses the unlawful possession of firearms, destructive devices, or other weapons, and the unlawful use or possession of controlled substances.

That is as far as this record supports. The government has failed to justify full pretrial supervision, a Pennsylvania-only travel restriction, residence approval, an employment mandate, alcohol restrictions, drug testing, medical or psychiatric treatment, or law-enforcement-contact reporting. Because these proposed conditions are not the least restrictive further conditions necessary to address any cognizable risk under the Bail Reform Act, and because the current unsupervised release order has reasonably assured Mr. Austin's appearance and the safety of the community, the motion must be denied, with the sole exception of a narrow, target-specific Cities Church no-contact condition.

22

## CONCLUSION

For the foregoing reasons, Defendant Ian Davis Austin respectfully requests that the Court deny the government's Motion to Modify Conditions of Release in its entirety, with the sole exception of a narrow, target-specific no-contact and stay-away condition regarding known Cities Church congregants, staff, and clearly identified property controlled by Cities Church. Pursuant to this Court's June 24, 2026 Order, Mr. Austin further requests an in-person hearing to present oral argument on the government's motion.

Dated: June 24, 2026                    Respectfully submitted,

                                        **GAD CRIMINAL DEFENSE, PLLC**

                                        /s/ *Sarah Gad*
                                        _____
                                        **Sarah R. Gad**
                                        Attorney Reg. No. 0403328
                                        8 E 25th Street
                                        Minneapolis, MN 55404
                                        Telephone: (612) 412-1710
                                        sarah@gadlawoffice.com