UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

    v.

4.  Don Renaldo Lemon,

        Defendant.

**MOTION TO SUPPRESS THE SEARCH OF DON LEMON'S APPLE iPHONE EXECUTED PURSUANT TO AN INVALID SEARCH WARRANT ISSUED WITHOUT JURISDICTION AND REQUEST FOR A *FRANKS* HEARING**

Case No. 26-cr-025 (LMP/DLM)

**LOWELL & ASSOCIATES, PLLC**
Abbe David Lowell (*pro hac vice*)
David A. Kolansky (*pro hac vice*)
Isabella M. Oishi (*pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Tel: 202-964-6110
Fax: 202-964-6116
ALowellpublicoutreach@lowellandassociates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com

**THOMPSON JACOBS PLLC**
Joseph H. Thompson
THOMPSON JACOBS PLLC
222 N. Second Street, Suite 220
Minneapolis, MN 55401
Tel: (612) 416-3322
joe@thompsonjacobs.com

*Counsel for Don Renaldo Lemon*

1

I.      SUMMARY ........................................................................................................ 4

II.     BACKGROUND ................................................................................................ 5

      A.     Mr. Lemon lawfully reported on the protest at Cities Church as a journalist ......... 5

      B.     The Trump Administration put extraordinary pressure on DOJ to charge Mr. Lemon ........................................................................................................ 6

      C.     Magistrate Judge Micko and Chief Judge Schiltz found there was no probable cause to charge Mr. Lemon and others ................................................................. 7

      D.     Agents improperly obtained a search warrant in the District of Minnesota for Mr. Lemon's iPhone while his iPhone was located in the Central District of California ...................................................................................................... 12

      E.     The Affidavit submitted in support of the search warrant application falsely alleged that Mr. Lemon joined the protestors in chanting against ICE ................. 13

      F.     The search warrant allowed the government to seize not just evidence related to the protest at Cities Church but also evidence related to Mr. Lemon's coverage of "other organized protest activity" ........................................................................ 14

III.    ARGUMENT ................................................................................................... 16

      A.     Evidence seized pursuant to the warrant to search Mr. Lemon's iPhone must be suppressed because the Minnesota magistrate judge lacked authority to issue a warrant to search the cell phone that was located in California ........................... 16

            i.      The iPhone warrant was invalid and resulted in an unconstitutional warrantless search ...................................................................................... 18

             ii.     The search warrant prejudiced Mr. Lemon and the government showed reckless disregard of proper procedure ....................................................... 19

             iii.    The Exclusionary Rule should preclude the use of any evidence obtained from the search of the iPhone ................................................................... 20

             iv.    Request for an Evidentiary Hearing ........................................................... 23

      B.     The Court should suppress evidence because the affidavit submitted in support of the iPhone warrant knowingly or recklessly contained a false statement that Mr. Lemon joined the protestors in Anti-ICE chanting ............................................... 24

            i.      Legal Standard ........................................................................................ 24

             ii.     The affidavit submitted in support of the iPhone warrant knowingly or recklessly contained a false statement that Mr. Lemon joined the protestors in Anti-ICE chanting ............................................................... 25

        iii.     The affidavit fails to establish probable cause when stripped of the false statement .................................................................................. 29

        iv.     Mr. Lemon is entitled to a *Franks* hearing and targeted discovery concerning the false statements in the search warrant .............................. 31

    C.     The Court should suppress the search warrant because the affidavit lacked probable cause to establish a proper nexus to the iPhone and the items to be seized were overbroad.................................................................................. 32

        i.     The Court should suppress the search warrant because the affidavit failed to establish a proper nexus to the iPhone.................................................. 33

        ii.     The search warrant was overbroad and allowed seizure of items related to "other organized protests"........................................................................ 35

    D.     The government also violated the Privacy Protection Act.................................... 37

IV.    CONCLUSION............................................................................................................ 42

## I.     SUMMARY

Defendant Don Renaldo Lemon, through counsel, respectfully submits this Motion to Suppress the Search of his Apple iPhone seized incident to arrest on January 29, 2026 (hereinafter "iPhone" or "cell phone") and for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

The government has rushed at every stage of this case. It is no secret why. The highest authorities in the Administration publicly demanded that Mr. Lemon be charged, whether there was a proper basis to do so or not. DOJ's hurried, politically motivated investigation and prosecution have left a trail of inexcusable mistakes. This motion presents the latest example.

The government obtained a warrant in the District of Minnesota to search Mr. Lemon's cell phone even though, by the agent's own admission, the phone was located in the Central District of California. That clear violation of Rule 41 rendered the warrant void and transformed the subsequent search into a warrantless search in violation of Mr. Lemon's Fourth Amendment rights. Compounding this error, the affidavit submitted in support of that search warrant application falsely claimed that Mr. Lemon joined the other protestors in anti-ICE chanting inside Cities Church. The videos of the day make clear that he did not. Mr. Lemon reported on the protestors; he did not join them. The warrant also authorized the seizure of materials from Mr. Lemon's phone related to "other organized protest activity"—an unbounded and undefined category that reached First Amendment-protected activity far beyond the alleged offense. That overbreadth not only renders the warrant unconstitutional; it adds to an already substantial record of government conduct that should give this Court serious concern about the nature and purpose of this prosecution.

For these reasons, the Court must suppress the fruits of the search of Mr. Lemon's cell phone.

4

## II.  BACKGROUND

In December 2025, the Trump Administration launched "Operation Metro Surge," a sweeping immigration-enforcement operation in Minnesota. The Administration billed the surge as the largest civil immigration enforcement operation in Department of Homeland Security history. At its height, DHS deployed more than 3,000 DHS agents across the state.

The surge triggered widespread protests. DHS agents, in turn, cracked down on the protestors. On January 12, 2026, a DHS agent shot and killed Renee Good while she was protesting the immigration crackdown.

### A.  Mr. Lemon lawfully reported on the protest at Cities Church as a journalist

Journalists from around the world descended on the Twin Cities to cover the immigration crackdown and ongoing protests. One of them was Don Lemon, a nationally prominent journalist and former CNN host who runs an independent media company that streams on its YouTube channel, @TheDonLemonShow, and other social media platforms. Mr. Lemon has more than 1.25 million subscribers on his YouTube channel and more than 10 million followers across social media.

Mr. Lemon came to the Twin Cities in January 2026 to cover the ongoing immigration crackdown and resulting protests. On January 18, Mr. Lemon learned of the planned protest at Cities Church in St. Paul. Accompanied by his driver, Jerome Richardson, and cameraman, Michael Beute, Mr. Lemon traveled to the location where the protestors had gathered in advance of the protests. Mr. Lemon reported on the planned protest and recorded interviews with protestors.

Mr. Lemon then traveled to Cities Church to cover the protest. While on scene and streaming live, Mr. Lemon told his viewers that he was there "chronicling and reporting. We're not part of the activists. We're just here reporting on them." *See* Exhibit B (1/20/2026 Affidavit of DHS-ICE Special Agent Timothy M. Gerber in Support of Criminal Complaint) at 10, ¶28. While

inside Cities Church, Mr. Lemon interviewed the pastor. After about 13 minutes, Mr. Lemon left.

Outside the Church, Mr. Lemon conducted additional interviews with congregants after they exited

the Church. In all, Mr. Lemon was only in Minnesota for a handful of hours.

**B.      The Trump Administration put extraordinary pressure on DOJ to charge Mr. Lemon**

Shortly after the protest at Cities Church, President Trump and high-level officials in his

Administration criticized Mr. Lemon, announced a federal investigation, and called for him to be

charged with a federal crime. During a January 20 press conference at the White House, President

Trump stated:

> And they have to be abused by guys like Don Lemon, who's a, you know, loser, lightweight. I saw him, the way he walked in that church. It was terrible. I have such respect for that pastor. He was so calm. He was so nice. He was just accosted. What they did in that church was horrible yesterday.[1]

During an interview that same day, President Trump again railed against Mr. Lemon:

> And then you have the agitators, anarchists, you know, I watch sort of everything, I see it all. And I see people, uh, screaming, "Shame, shame," you know. This is not people that are like living in Minnesota, these are professional paid people, they're like actors. I mean, I watched the guy last night in the church, he was, and not just Don Lemon, Don Lemon's a loser, but I watched a guy last night in the church. This guy's a professional guy and he, he actually admits to it, he gets paid a lot of money to go and cause trouble.[2]

At the same time, then-Attorney General Pamela J. Bondi publicly pressed for charges

against Mr. Lemon, stating, "We are coming after you if you participated in that. I don't care if

you're a failed CNN journalist, you have no right to do that in this country. We don't live in a third

---

[1]      Press Conference: Donald Trump Leads the Press Briefing at the White House (Jan. 20, 2026), available at https://rollcall.com/factbase/trump/transcript/donald-trump-press-conference-briefing-room-january-20-2026/ (last accessed June 24, 2026).

[2]      Katie Pavlich of NewsNation Interviews Donald Trump at the White House (Jan. 20, 2026), available at https://rollcall.com/factbase/trump/transcript/donald-trump-interview-katie-pavlich-newsnation-january-20-2026/ (last accessed June 24, 2026).

world country." Attorney General Bondi also rejected the premise that Mr. Lemon was an independent journalist, instead labeling him "an online agitator."

Perhaps most notably, President Trump's nominee to lead the Department of Justice's Civil Rights Division, Assistant Attorney General (AAG) Harmeet Dhillon denounced Mr. Lemon's reporting as "pseudo journalist" and promised that "we're going to pursue this to the ends of the Earth."[3]

### C. Magistrate Judge Micko and Chief Judge Schiltz found there was no probable cause to charge Mr. Lemon and others

Amid this public pressure, DOJ presented a criminal complaint to a federal magistrate judge in Minnesota. *See* Exhibit B. The complaint alleged that Mr. Lemon and others "conspired to injure, oppress, threaten, and intimidate" others in the exercise of rights secured by federal law— namely, the free exercise of religion at a place of religious worship secured by the FACE Act, 18 U.S.C. § 248(a)(2).

The affidavit did not allege Mr. Lemon joined the protestors in their anti-ICE chanting. Instead, it acknowledged that Mr. Lemon told viewers during his broadcast that he was there "chronicling and reporting. We're not part of the activists, but we're just reporting on them." Ex. B at 10, ¶28.

Magistrate Judge Micko concluded that there was no probable cause to charge Mr. Lemon under the FACE Act and refused to sign the complaint or issue the requested arrest warrant. *Id.* at 28.

---

[3]     The DOJ WILL Continue Pushing For Criminal Charges Against Don Lemon, Reveals Harmeet Dhillon, *The Megyn Kelly Show* (Jan. 23, 2026), https://www.youtube.com/watch?v=4i5xhWd2o2w (last accessed June 25, 2026).

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
District of Minnesota

| | |
|---|---|
| UNITED STATES OF AMERICA | **FILED UNDER SEAL PURSUANT TO ORDER** |
| v. | |
| DON RENALDO LEMON | Case No.  26-mj-40 DLM |

### ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
DON RENALDO LEMON

who is accused of an offense or violation based on the following document filed with the court:

____ Indictment    ____ Superseding Indictment    ___ Information ___ Superseding Information   _X_ Complaint

____ Probation Violation Petition    ____ Supervised Release Violation Petition ____ Violation Notice ____ Order of the Court

~~Conspiracy Against Rights to Free Exercise of Religion Secured by FACE Act, in violation of 18 U.S.C. § 241, 248(a)(2)~~
NO PROBABLE CAUSE

Date:  1/20/26

City and State: St. Paul, MN

Douglas L. Micko
United States Magistrate Judge
Printed Name and Title

Issuing officer's signature

Within "minutes" of Magistrate Judge Micko's no-probable-cause determination, the U.S. Attorney informed the Chief Judge that he wanted a district court judge to review the decision.[4] When Chief Judge Schiltz was unable to review immediately the decision, DOJ filed a petition for writ of mandamus to the Eighth Circuit Court of Appeals. In a subsequent letter to the Eighth Circuit, Chief Judge Schiltz described the request as "unheard of" in both the District of Minnesota and the Eighth Circuit. *Id.* Chief Judge Schiltz explained that such requests do not happen because "if the government does not like the magistrate judge's decision, it can either improve the affidavit and present it again to the same magistrate judge or it can present its case to a grand jury and seek an indictment." *Id.*

---

[4]    First Letter from Chief Judge Schiltz to Chief Judge Colloton (Jan. 23, 2026), available at https://storage.courtlistener.com/recap/gov.uscourts.ca8.113669/gov.uscourts.ca8.113669.008054 39054.0.pdf (last accessed June 25, 2026).

8

In a second message to the Eighth Circuit, Chief Judge Schiltz explained that he agreed with the magistrate judge's finding of no probable cause because "[t]wo of the five protestors were not protestors at all; instead, they were a journalist and his producer. There is no evidence that those two engaged in any criminal behavior or conspired to do so."[5]

On January 29, 2026, the government obtained an indictment charging Mr. Lemon and eight others with violating the FACE Act. Dkt. #39. The government has not produced the transcript of Agent Gerber's grand jury testimony—or the testimony of any other case agent—so it remains unknown what the government told the grand jury about Mr. Lemon. What is known is that the indictment omitted any reference to Mr. Lemon's role as a journalist and to his contemporaneous statement that he was not one of the "activists," but was "just reporting on them."

The government then obtained an arrest warrant for Mr. Lemon and the other defendants. Mr. Lemon offered, through counsel, to self-surrender. The government refused. Instead, shortly before midnight (PST) on January 29, after tracking Mr. Lemon to Los Angeles, California, ten federal agents arrested Mr. Lemon in the lobby of The Beverly Hilton Hotel. At the time, Mr. Lemon was there to cover the Grammy Awards as a member of the media. Agents handcuffed Mr. Lemon and transported him to the Los Angeles Federal Building, where he was detained overnight. He appeared before a federal magistrate judge in Los Angeles the following afternoon. The government released Mr. Lemon on his own personal recognizance over the government's objection.

---

[5]   Second Letter from Chief Judge Schiltz to Chief Judge Colloton at 1 (Jan. 23, 2026), available at https://storage.courtlistener.com/recap/gov.uscourts.ca8.113669/gov.uscourts.ca8.113669.008054 39055.0.pdf (last accessed June 25, 2026).

Agents seized an iPhone from Mr. Lemon at the time of his arrest in California. Agents held the cell phone at HSI's Los Angeles Field Office. After his court appearance on January 30, when defense counsel asked the government to return the iPhone, an HSI agent stated that the government was retaining the iPhone "for evidence" and would "send it" to Minnesota where HSI agents were supposedly seeking a warrant to open and access its contents. No warrant was presented to counsel at that time or immediately thereafter. Neither Mr. Lemon nor counsel consented to the cell phone's seizure or transfer to Minnesota.  In addition, counsel reminded the HSI agent that the phone contained, among other things, protected attorney-client and reporter's privilege communications.[6]

Following Mr. Lemon's arrest, the Administration and senior DOJ officials escalated their rhetoric and continued to exert extraordinary pressure on the prosecution. On January 30, the official White House X account posted a photo of Mr. Lemon with the commentary, "When life gives you lemons . . ." followed by chain emojis.[7] The X post received more than seven million views.

---

[6]      Defense counsel raised these concerns and other issues related to Mr. Lemon's iPhone seized incident to his arrest in correspondence to prosecutors dated February 16 and February 27, 2026. Part of those letters addressed the government's effort to obtain a search warrant to open and collect its contents, and to conduct any subsequent review.

[7]      https://x.com/WhiteHouse/status/2017248964878143741?lang=en (last accessed June 25, 2026).



That same day, then-Attorney General Bondi also issued a statement on social media, emphasizing her personal involvement in the case and stating that federal agents arrested Mr. Lemon "at my direction."[8] Attorney General Bondi's post was viewed more than 11 million times.



---

[8]    https://x.com/AGPamBondi/status/2017238803639845115 (last accessed June 25, 2026).

11

**D.      Agents improperly obtained a search warrant in the District of Minnesota for Mr. Lemon's iPhone while his iPhone was located in the Central District of California**

Amid this unprecedented pressure from the Trump Administration, on February 2, 2026, agents in the District of Minnesota applied for a warrant to search the cell phone seized from Mr. Lemon upon his arrest in California. *See* Exhibit A. At the time agents applied for and received the warrant, the cell phone was being held by HSI at its Los Angeles Field Office.

Agents submitted the search warrant application to a magistrate judge in the District of Minnesota rather than to a judge in the Central District of California. But at the time Agent Gerber submitted his affidavit, the iPhone was still in Los Angeles—as Agent Gerber noted in both the affidavit and Attachment A. Ex. A at 2, 38. Attachment A stated: "The SUBJECT DEVICE is currently in the custody of Homeland Security Investigations and located in the Central District of California." *Id.* at 38. Despite this acknowledgment, the sworn application for a search warrant falsely stated that the property to be searched was "located in the State and District of Minnesota." *Id.* at 1.

---

AO 106 (Rev. 04/10) Application for a Search Warrant

## UNITED STATES DISTRICT COURT
for the
District of Minnesota

| IN THE MATTER OF THE SEARCH OF THE GOLD IPHONE DESCRIBED IN ATTACHMENT A | SEALED BY ORDER OF THE COURT |
|---|---|
| | Case No. 26-mj-106 DJF |

### APPLICATION FOR A SEARCH WARRANT

I, Timothy Gerber, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**See Attachment A, incorporated here**

located in the State and District of Minnesota, there is now concealed:

**See Attachment B, incorporated here**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    x    evidence of a crime;

    x    contraband, fruits of crime, or other items illegally possessed;

    x    property designed for use, intended for use, or used in committing a crime;

         a person to be arrested or a person who is unlawfully restrained.

According to the report documenting Mr. Lemon's arrest, HSI-Los Angeles agents only "transferred" Mr. Lemon's iPhone to HSI-Minnesota "following the issuance of a federal search warrant for that device in the District of Minnesota."

> LEMON's phone, which was retained by HSI Los Angeles as evidence following LEMON's arrest at the request of HSI Minnesota personnel, was transferred to HSI Minnesota following the issuance of a federal search warrant for that device in the District of Minnesota, Docket No. 26-MJ-106-DJF, on Monday, February 2, 2026.

### E.    The Affidavit submitted in support of the search warrant application falsely alleged that Mr. Lemon joined the protestors in chanting against ICE

As noted above, a week earlier both Magistrate Judge Micko and Chief Judge Schiltz had concluded that the government had not established probable cause to believe Mr. Lemon had committed a crime. Chief Judge Schiltz explained that Mr. Lemon and his producer "were not protestors at all; instead, they were a journalist and his producer" and found that "[t]here is no evidence that those two engaged in any criminal behavior or conspired to do so."

In apparent response to this finding, the affidavit submitted in support of the search warrant application for Mr. Lemon's cell phone added allegations that the government had not included in the complaint affidavit. Specifically, the search warrant affidavit alleged that "[b]roadcast video obtained from Cities [C]hurch shows" Mr. Lemon and seven others "chanting with agitators and obstructing parishioners' path of travel." Ex. A. at 23, ¶ 54. Indeed, the government swore that Mr. Lemon's chanting was "on video"—an allegation designed to assure the Court that a claim is reliable, and one that makes any suggestion of innocent mistake difficult to credit.

> **Review of Cities Church Broadcast Footage & Related Videos**
>
> 54.    Broadcast video obtained from Cities church shows ARMSTRONG, ALLEN, LEMON, RICHARDSON, KELLY, FORT, LUNDY, CREWS chanting with agitators and obstructing parishioners' path of travel.

But this allegation was false. The irrefutable evidence shows that Mr. Lemon did not join in the "chanting" or participate in the protest, and no such video exists to the contrary. He was present as a journalist, covering the protest as part of his broader coverage of Operation Metro Surge.[9]

Based on this false statement, a magistrate judge in Minnesota issued a warrant to search Mr. Lemon's cell phone on February 2, 2026.

### F.    The search warrant allowed the government to seize not just evidence related to the protest at Cities Church but also evidence related to Mr. Lemon's coverage of "other organized protest activity"

The search warrant contained an attachment—"Attachment B"—that specified the items that could be seized from Mr. Lemon's cell phone pursuant to the warrant. Ex. A at 39-41. The scope of Attachment B expanded far beyond the charged protest at Cities Church on January 18, 2026, to include evidence related to any other "organized protest activity." *Id.* at 39-40. For example, Attachment B listed among the items to be seized any "internet activity" relating to "planning, organizing, scheduling, and commission of" the protest at Cities Church "and other organized protest activity." *Id.* at 40.

---

[9]    Notably, the government used the same tactic against defendant Georgia Fort. As detailed in Ms. Fort's Motion for Immediate Disclosure and for Hearing/Status Conference, the government falsely alleged that Ms. Fort joined in "chanting" in an apparent effort to turn another journalist into a protestor. Dkt. #528 at 4-7. These were not stray inaccuracies. They were false allegations directed at the heart of the case—whether the government had evidence that the journalists crossed the line from reporting on a protest to joining one. That should alarm the Court in the strongest possible terms.

> 3)  Internet activity (including browser history, web page logs, downloads, postings on websites, search terms entered by the user, firewall logs, caches, cookies, and "bookmarked" or "favorite" web pages) evidencing or relating to (a) planning, organizing, scheduling, and commission of the SUBJECT OFFENSES and other organized protest activity; (b)

Attachment B's list of items to be seized further included "photographs or videos" of not just the protest at Cities Church but also photographs or videos of any "other organized protest activity." *Id.*

> 4)  Photographs or videos evidencing or relating to planning, organizing, scheduling, and commission of the SUBJECT OFFENSES and other organized protest activity; and

And illustrating the warrant's extreme overbreadth and clear incursion into reporters' protected source-gathering information, Attachment B sought "[c]ontact lists, including names, telephone numbers, e-mail addresses, and other contact information of LEMON's associates"—as if that had any relevant bearing on the alleged conduct here. *Id.*

Notwithstanding, the affidavit did not contain any evidence that Mr. Lemon was involved in any other "organized protest activity." The affidavit did not contain evidence that "other organized protest activity" would violate federal law. And the affidavit did not explain how or why such "other organized protest activity" would not be protected by the First Amendment's protection of "the freedom of speech . . . of the press . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

III.    ARGUMENT

A.    **Evidence seized pursuant to the warrant to search Mr. Lemon's iPhone must be suppressed because the Minnesota magistrate judge lacked authority to issue a warrant to search the cell phone that was located in California**

The evidence obtained from the search of Mr. Lemon's iPhone must be suppressed because the Minnesota magistrate judge lacked authority to issue a warrant to search the phone while it was located in California.

Federal magistrates derive their authority from statute. *See* 28 U.S.C. § 636(a). Rule 41(b) governs a magistrate judge's authority to issue search warrants. Rule 41(b)(1) provides that "a magistrate judge with authority in the district" may issue a warrant to search for and seize a person or property "located within the district." Fed. R. Crim. P. 41(b)(1).

The warrant to search Mr. Lemon's iPhone violated Rule 41 because the government obtained the warrant from a magistrate judge in the District of Minnesota while the iPhone was located in the Central District of California. The warrant therefore exceeded the magistrate judge's jurisdiction. *See United States v. Horton*, 863 F.3d 1041, 1048 (8th Cir. 2017) (holding that Rule 41 search warrant for property located outside of the magistrate judge's district "exceeded the magistrate judge's jurisdiction"). The government should have sought a warrant to search his phone from a magistrate judge in the Central District of California.

The Rule 41 defect is apparent on the face of the warrant materials. The government did not merely fail to establish that the iPhone was in the District of Minnesota when it applied for the warrant. The government acknowledged in Attachment A that the iPhone was located in the Central District of California. Because the cell phone was not "located within the district" under Rule 41(b)(1), and because no Rule 41 exception authorized the government to obtain a warrant to search the property from a judge in Minnesota, the warrant was invalid.

The government's disregard of Rule 41's clear territorial limits was compounded by the internal inconsistencies in the search warrant materials it presented to the magistrate judge. The Application for a Search Warrant—the front page of the packet submitted to the magistrate judge—stated that the property was "located in the State and District of Minnesota." Ex. A at 1. That statement was demonstrably false. The affidavit and Attachment A contradicted it, explaining that the iPhone was still held in California. The magistrate judge was therefore presented with inconsistent information about a material fact: where the property to be searched was located.

That inconsistency matters. Rule 41(b)(1) authorized the magistrate judge to issue a warrant only for property "located within the district," unless one of Rule 41's enumerated exceptions applied. No exception applied here.[10] The iPhone was a physical device that had already been seized, secured, and placed in federal custody in another district. The government had a straightforward way to comply with Rule 41: seek a warrant from a magistrate judge in the Central District of California, where the cell phone was located.[11] For some reason, the government chose to disregard that rule.[12] Instead, it sought and obtained a warrant in Minnesota despite knowing full well and acknowledging elsewhere in the same warrant materials that the cell phone was located in California.

---

[10] Rule 41 contains limited exceptions, but none applies here. Most notably, Rule 41(b)(2) permits a magistrate judge to issue a warrant for property outside the district only if the property is located within the district when the warrant is issued but might move or be moved outside the district before execution. That is not this case. The phone was not in Minnesota when the warrant was issued. It was in California.

[11] Ironically, one of the lead prosecutors assigned to this case was until recently an Assistant U.S. Attorney in the Central District of California.

[12] The government understood the need to obtain a search warrant from a judge in the district in which the property to be searched was located. On January 31, 2026—just two days before obtaining the warrant for Mr. Lemon's iPhone—the government applied for and obtained a search warrant from a magistrate judge in the Eastern District of Pennsylvania authorizing the installation and use of a cell site simulator for a cell phone number used by Mr. Lemon's driver.

The resulting warrant therefore violated Rule 41 and was invalid.

### i.    The iPhone warrant was invalid and resulted in an unconstitutional warrantless search

The search warrant was void from the outset because the Rule 41 violation was not merely technical; it deprived the magistrate judge of authority to issue the warrant and rendered the search functionally warrantless under the Fourth Amendment.

When a search warrant violates Rule 41, the Court must determine "whether the violation was merely technical or instead rises to the level of a violation of the Fourth Amendment." *United States v. Horton*, 863 F.3d 1041, 1048 (8th Cir. 2017). Although a Rule 41 violation does not automatically establish an unreasonable search under the Fourth Amendment, the Eighth Circuit has held that a warrant issued without jurisdictional authority is void *ab initio* and results in a constitutional violation. *Id.* at 1049. As another court put it, "[t]he Fourth Amendment does not impose a venue requirement . . . [b]ut inherent in the notion of a 'neutral, detached magistrate' is that the magistrate have authority to issue the warrant." *United States v. Taylor*, 250 F. Supp. 3d 1215, 1235 (N.D. Ala. 2017), *aff'd*, 935 F.3d 1279 (11th Cir. 2019).

*Horton* illustrates the point. There, the Eighth Circuit analyzed a Rule 41 challenge to a Network Investigative Technique, or "NIT," warrant. In simple terms, an NIT warrant authorizes the government to deploy a remote-access tool to obtain identifying information from a target computer. Although the government obtained the warrant in the district where it deployed the NIT, the computer code was installed on computers located outside that district and caused those computers to transmit information back to the government. *Horton*, 863 F.3d at 1045. The Eighth Circuit held that the warrant exceeded the magistrate judge's jurisdiction and was void *ab initio*. *Id.* at 1049. Because the warrant was void, there was no valid judicial approval of the search as

18

required by the Fourth Amendment. *Id.* The search was therefore the constitutional equivalent of a warrantless search. *Id.*

The same reasoning applies here. The warrant for Mr. Lemon's iPhone was invalid at its inception because the magistrate judge lacked authority under Rule 41 to issue a warrant for property located in another federal district. The iPhone was not in Minnesota; it was in the Central District of California. Because the issuing magistrate judge lacked authority to authorize the search, the warrant was void *ab initio*. The resulting search of Mr. Lemon's iPhone was therefore unsupported by a valid warrant and violated the Fourth Amendment.

### ii.    The search warrant prejudiced Mr. Lemon and the government showed reckless disregard of proper procedure

Although the Eighth Circuit has held that a jurisdictional violation of Rule 41 can rise to the level of a constitutional violation, the result is the same even if the Court treats the Rule 41 violation as nonconstitutional. "Absent a constitutional infirmity, the exclusionary rule is applied only to violations of Federal Rule 41 that prejudice a defendant or show reckless disregard of proper procedure." *United States v. Hyten*, 5 F.3d 1154, 1157 (8th Cir. 1993). Both requirements are satisfied here.

*First*, Mr. Lemon was prejudiced because he was subjected to a search that could not lawfully have occurred pursuant to this invalid warrant. *See United States v. Krueger*, 809 F.3d 1109, 1116–17 (10th Cir. 2015) (finding prejudice where the search might not have occurred without the invalid warrant, even though the government might have been able to obtain a warrant from a different court). Here, the search occurred pursuant to a warrant issued by a magistrate judge who lacked authority to issue it. Had the government followed Rule 41, it would have had to present the application to a magistrate judge in the Central District of California, where the

19

phone was located. Instead, the government bypassed the magistrate judge in the district with authority over the property to be searched (California).

That choice of venue deprived Mr. Lemon of the protection afforded by Rule 41's territorial limitation. That limitation is not a technical formality; it defines who may authorize a search and for what items. The government's decision to bypass the proper court affected the warrant process itself. A magistrate judge in the Central District of California may have asked different questions, imposed different limitations, required additional information, or even rejected the application altogether.[13]

*Second*, suppression is warranted regardless of prejudice because the government acted with reckless disregard of proper Rule 41 procedure. This is not a case in which an agent overlooked a hidden jurisdictional fact. The affiant knew the cell phone was in California because he said so in the affidavit and Attachment A. Yet the government submitted an application to a magistrate judge in the District of Minnesota stating that the property was located in Minnesota. The plain language of Rule 41—the rule authorizing federal search warrants for physical property—made clear that the warrant had to be sought in the district where the property was located. The government therefore either deliberately ignored Rule 41's territorial limitation or recklessly disregarded the procedure that Rule 41 required.

### iii. The Exclusionary Rule should preclude the use of any evidence obtained from the search of the iPhone

The fruits of the invalid and unconstitutional search of Mr. Lemon's iPhone should be suppressed because exclusion is necessary to deter the government's reckless disregard of Rule 41's territorial limits.

---

[13] An application for a search warrant from a magistrate judge in the Central District of California would also have been subject to Ninth Circuit law and search warrant protocols.

Not every Fourth Amendment violation requires suppression. *Herring v. United States*, 555 U.S. 135, 140 (2009). Even when a search is unreasonable, suppression is warranted only when it will provide "appreciable deterrence" of government misconduct. *Horton*, 863 F.3d at 1049. Thus, exclusion is appropriate where the government's conduct is deliberate, reckless, grossly negligent, or reflects recurring or systemic negligence. *Id.*; *see also Herring*, 555 U.S. at 144.

In *United States v. Leon*, the Supreme Court held that evidence generally need not be suppressed when officers act in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate, even if the warrant is later found invalid. 468 U.S. 897, 922 (1984). But *Leon* does not protect all searches conducted pursuant to defective warrants. The good-faith inquiry is objective. It asks whether a reasonably well-trained officer would have known that the search was illegal in light of all the circumstances. *Herring*, 555 U.S. at 145. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144.

Although courts have held that *Leon* may apply to warrants later found void *ab initio*, good faith does not automatically follow. In *Horton*, the Eighth Circuit concluded that a warrant exceeded the magistrate judge's Rule 41 jurisdiction and was void *ab initio* but applied the *Leon* good-faith exception because the record did not show reckless disregard or bad faith. *Horton*, 863 F.3d at 1051. *Horton* did not create a blanket good-faith rule for all Rule 41 violations. It simply applied *Leon* to the particular facts before it.

Those facts are materially different from the facts here. *Horton* involved a novel and complex cyber warrant. This case does not. The search here involved a physical cell phone that had already been seized, secured, and placed in federal custody in a known federal district. The affiant identified that district in the affidavit and Attachment A. Yet the government sought a

warrant from a magistrate judge in a different district and submitted a sworn application stating that the property was located in Minnesota. This is precisely the type of conduct *Leon* does not protect: reliance on a warrant whose jurisdictional defect was apparent from the government's own warrant materials.

The good-faith exception protects only objectively reasonable reliance. It does not apply when a reasonable agent would have recognized the warrant's facial defect. Here, the defect was obvious. Rule 41(b)(1) authorizes a magistrate judge to issue a warrant for property "located within the district," unless an enumerated exception applies. No such exception applied. The government knew the iPhone was in the Central District of California. Any reasonably trained federal agent should have known that a Minnesota magistrate judge lacked authority to issue a warrant to search a physical device located in California.

Suppression would have substantial deterrent effect. Rule 41(b)'s territorial limits are straightforward and easy to follow when, as here, the government knows where the seized property is located. Agents had a simple lawful option: apply for a warrant in the Central District of California—where the cell phone was seized incident to arrest and held despite the request of defense counsel for its return. If the government can ignore that requirement despite knowing the cell phone's location, Rule 41(b)'s territorial limitation becomes meaningless.

The problem is especially stark because the same warrant materials both acknowledged the fact that defeated the Minnesota magistrate judge's authority—the phone's location in California—and represented on the application page that the property was in Minnesota. Suppression under these circumstances would deter precisely the conduct at issue here: presenting a warrant application to a magistrate judge without territorial authority despite knowing where the property

22

is located. Exclusion of any seized material is therefore warranted to deter agents from bypassing the magistrate judge with lawful territorial authority.

### iv.        Request for an Evidentiary Hearing

The record regarding the jurisdictional defect in the search warrant justifies immediate suppression of the search warrant. If the government argues that it relied on the jurisdictionally defective warrant in good faith, we respectfully request an evidentiary hearing in light of the fact-dependent nature of the issues surrounding the government's decision to obtain the search warrant in the District of Minnesota—including the internally inconsistent jurisdictional facts in the application and affidavit. If the government argues good faith, a hearing is necessary to determine what Agent Gerber (the affiant) and others knew, where the iPhone was located at relevant times, who decided to apply for the warrant in the District of Minnesota, why the application stated that the property was located in Minnesota, and whether the government intentionally routed the warrant application to Minnesota despite knowing that the iPhone was located in California.

Testimony from the following witnesses, if necessary,  would further develop the factual record: (1) Agent Gerber, the affiant who swore out the search warrant, represented in the application that the property was located in Minnesota, and later received the iPhone in Minnesota after the warrant was issued; (2) Orlando Sonza, the prosecutor who appears to have facilitated the warrant application in Minnesota and filed the sealing motion stating that the search warrant was issued on January 30, 2026; and (3) any other member of the investigative or prosecution team—including any prosecutors or agents in the Central District of California or Main Justice—who participated in the decision to apply for the search warrant in the District of Minnesota.

Should any additional proceedings be ordered, Mr. Lemon also requests that the Court order the government to produce targeted discovery concerning the decision to seek the warrant in Minnesota. That discovery should include documents and communications reflecting who decided

to apply for the warrant in the District of Minnesota; whether any agent or prosecutor considered applying, or did apply, for a warrant in the Central District of California; communications among agents and prosecutors about where to apply for the warrant; any draft warrant applications, whether or not submitted to the magistrate judge; notes, emails, or memoranda discussing Rule 41; and communications relating to the approval process for the warrant, particularly in the case of a journalist-defendant.

**B.      The Court should suppress evidence because the affidavit submitted in support of the iPhone warrant knowingly or recklessly contained a false statement that Mr. Lemon joined the protestors in Anti-ICE chanting**

Setting aside the jurisdictional failure, any evidence obtained from the search of Mr. Lemon's iPhone must be suppressed because the government's search warrant application contained a false statement. Specifically, the search warrant affidavit falsely claimed that Mr. Lemon had joined the protestors in their anti-ICE chanting inside of Cities Church. This was not true and the government knew it.

**i.      Legal Standard**

"A search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with reckless disregard for the truth." *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001), citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978). A defendant is entitled to a *Franks* hearing when he "make[s] a substantial preliminary showing that the affiant at least recklessly disregarded the truth through a false statement or omission and that the false statement or omission is necessary to the finding of probable cause." *United States v. Reed*, No. 18-CR-143 (SRN/DTS), 2018 WL 6427897, at *2 (D. Minn. Dec. 7, 2018) (quoting *Franks v. Delaware*, 438 U.S. at 155-56) (internal quotation omitted).

24

If after excising the allegedly false statements from the affidavit, the Court finds the remaining averments of the affidavit would fail to set forth probable cause justifying a search, the Court should grant the defendant a *Franks* hearing. *See Franks*, 438 U.S. at 171-72.

> ### ii. The affidavit submitted in support of the iPhone warrant knowingly or recklessly contained a false statement that Mr. Lemon joined the protestors in Anti-ICE chanting

The affidavit submitted in support of the warrant to search Mr. Lemon's iPhone contained a demonstrably false allegation that video showed Mr. Lemon joining the protestors in their anti-ICE chants. This was not true. No such video exists and Mr. Lemon did not chant alongside the protestors.

This false statement was added to the search warrant affidavit only after two federal judges found that an earlier complaint affidavit in which the false statement did not appear did not establish probable cause to believe Mr. Lemon had committed a crime. The facts are as follows:

On January 20, 2026, the government submitted an affidavit in support of an application for a complaint and arrest warrant charging Mr. Lemon with violating the FACE Act. In support of the application, the government submitted an affidavit from Special Agent Timothy Gerber. The complaint affidavit summarized the protest at Cities Church. The complaint affidavit alleged that Mr. Lemon covered the pre-operational meeting in which the protestors planned the protest. Complaint Affidavit ¶¶7-15. The complaint affidavit further alleged that Mr. Lemon "cornered" the pastor and attempted to interview him. *Id.* ¶¶31-33. The complaint alleged that Mr. Lemon "intimidate[ed] and obstruct[ed] the pastor's freedom of movement." *Id.* ¶31. The complaint affidavit did not allege that Mr. Lemon joined the protestors in their anti-ICE chanting. Instead, it acknowledged that Mr. Lemon told viewers during his broadcast that he was there "chronicling and reporting. We're not part of the activists, but we're just reporting on them." *Id.* ¶28.

On January 20, Magistrate Judge Micko found that there was no probable cause to charge Mr. Lemon under the FACE Act and refused to sign the complaint or issue the requested arrest warrant.

After the government asked the district court to review this finding, Chief Judge Schiltz explained that he agreed with the magistrate judge's finding of no probable cause. With respect to Mr. Lemon, Chief Judge Schiltz explained that "[t]wo of the five protestors were not protestors at all; instead, they were a journalist and his producer. There is no evidence that those two engaged in any criminal behavior or conspired to do so."

A week later, the government applied for the search warrant for Mr. Lemon's iPhone. The bulk of the search warrant affidavit was identical to the complaint affidavit. But the government added something responsive to Chief Judge Schiltz's comments (and both Chief Judge Schiltz's and Magistrate Judge Micko's conclusion that the complaint affidavit failed to establish probable cause to believe Mr. Lemon committed a crime). Specifically, the government changed the section titled "Review of Cities Church Broadcast Footage & Related Videos." In the complaint affidavit, this section began by alleging that "[b]roadcast video obtained from Cities Church shows LUNDY chanting with the agitators and punching his fist in the air." Ex. B. at 14-15, ¶36.

> **D.    Review of Cities Church Broadcast Footage & Related Videos**
>
> 36.    Broadcast video obtained from Cities Church shows LUNDY chanting with the agitators and punching his fist in the air.  He is standing next to ALLEN
>
> 13
>
> at that point in the video.  Based on the video footage, it appears that the conduct of LUNDY, ALLEN, and other agitators is intimidating and physically obstructing some of the parishioners' freedom of movement.  I also observed LUNDY give ARMSTRONG what appears to be a hug, then engaging in a brief conversation with her while they were both inside to the church.

The complaint affidavit further alleged that defendant Trahern Jeen Crews was "chanting with the agitators." *Id.* at 15, ¶38.

The affidavit did not allege that Mr. Lemon joined the protestors in their chanting—because he had not done so.

Just two weeks later, amid unprecedented pressure to prosecute Mr. Lemon, the government applied for a warrant to search Mr. Lemon's cell phone. Ex. A. Perhaps in response to the earlier judicial finding that the complaint affidavit did not state probable cause, the government added new allegations that Mr. Lemon was involved in the protest. Specifically, the affidavit alleged that Mr. Lemon had participated with the protestors in their anti-ICE chants. The government changed the allegations in the section titled "Review of Cities Church Broadcast Footage & Related Videos." Rather than alleging only that Lundy and Crews chanted, the search

warrant affidavit alleged that Mr. Lemon joined the protestors—described as "agitators" in the affidavit—in their anti-ICE chants. *Id.* at 23, ¶54.

> **Review of Cities Church Broadcast Footage & Related Videos**
>
> 54.    Broadcast video obtained from Cities church shows ARMSTRONG, ALLEN, LEMON, RICHARDSON, KELLY, FORT, LUNDY, CREWS chanting with agitators and obstructing parishioners' path of travel.

This new allegation did not appear in the complaint affidavit submitted less than two weeks earlier and appears to be a direct response to Chief Judge Schiltz's criticism that Mr. Lemon was "not a protestor at all" but rather a "journalist" and his conclusion that there was "no evidence" that he engaged or conspired in any criminal behavior.

Under normal circumstances there is nothing wrong with making additional allegations to support a complaint or search warrant affidavit found to be lacking probable cause. But here, rather than conduct further investigation to build their case, the government simply made up an allegation and falsely alleged that video showed Mr. Lemon "chanting with agitators and obstructing parishioners' path of travel." There is no such video. This allegation is false.

Curiously, the petition to seal the search warrant, submitted by prosecutor Orlando Sonza, stated that the warrant authorizing the search of the iPhone was issued on January 30, 2026. Ex. A at 46. The petition itself was also dated January 30, 2026. *Id.* at 49. This suggests that the government initially submitted the search warrant application for the magistrate judge's consideration on January 30. It is unclear from the discovery whether the magistrate judge rejected the search warrant application on January 30 and/or whether the government submitted one or more revised search warrant affidavits between January 30 and February 2, when the magistrate

28

judge signed the warrant. It is also unclear whether the government added the false allegation about Mr. Lemon chanting during this time.

### iii.    The affidavit fails to establish probable cause when stripped of the false statement

When stripped of the false allegations, the affidavit fails to establish probable cause to believe Mr. Lemon committed a crime. Indeed, just days earlier, both Magistrate Judge Micko and Chief Judge Schiltz found that the complaint affidavit—which did not include the false allegation that Mr. Lemon was chanting—failed to establish probable cause to believe Mr. Lemon violated the FACE Act. As Chief Judge Schiltz explained, "[t]wo of the five protestors were not protestors at all; instead, they were a journalist and his producer. There is no evidence that those two engaged in any criminal behavior or conspired to do so."

That analysis was correct. Without the misrepresentation that Mr. Lemon joined the protestors in chanting, the affidavit does nothing more than describe Mr. Lemon reporting on the protest at Cities Church. Stripped of the misrepresentation as to Mr. Lemon's role, the affidavit establishes only that Mr. Lemon covered the protest in his capacity as a journalist and engaged in conduct protected by the First Amendment. That is not enough to establish probable cause under the FACE Act—as a magistrate judge had already so ruled. The statute itself expressly provides that nothing in the statute "shall be construed" to "prohibit any expressive conduct . . . protected from legal prohibition by the First Amendment to the Constitution." 18 U.S.C. § 248(d)(1).

The search warrant affidavit focused almost entirely on Mr. Lemon's coverage of the protest. It alleged that Mr. Lemon—a nationally prominent journalist—"livestreamed" the planning meeting before the protest and "the conduct of the agitators inside the church." Ex. A at 6, ¶14. The affidavit then walked through Mr. Lemon's livestream footage, beginning with his explanation to his audience that he was in Minnesota "to speak with an organization that was

gearing up for resistance and protest." *Id.* at 6, ¶17. It next summarized Mr. Lemon's coverage of the protestors' planning meeting. *Id.* at 7-10, ¶¶18-29. None of this was criminal. It was journalism.

The same is true of the affidavit's description of Mr. Lemon traveling to Cities Church to cover the protest. *Id.* at 12-13, ¶¶30-34. The affidavit even recounted a conversation between Mr. Lemon and his cameraman in which Mr. Lemon discussed trying to "figure out if it's . . . [okay] for me to go inside so I can tell what happened." *Id.* at 13, ¶33. Again, these allegations describe Mr. Lemon acting in his role as a journalist covering a newsworthy event.

The affidavit then summarized Mr. Lemon's livestream from inside Cities Church, which showed protestors chanting, blowing whistles, and impeding parishioners. *Id.* at 14-17, ¶¶36-42. The affidavit described how Mr. Lemon informed his viewers that he was present at the scene "chronicling and reporting" and was "not part of the activists but . . . just reporting on them." *Id.* at 17, ¶43. The affidavit further described Mr. Lemon conducting interviews of protest leader Nekima Levy-Armstrong and the pastor of Cities Church. *Id.* at 18-21, ¶¶44-45, 47-49. These allegations, too, describe protected newsgathering and reporting.

Those allegations were all included in the Complaint affidavit that both Magistrate Judge Micko and Chief Judge Schiltz found insufficient to establish probable cause as to Mr. Lemon. It was only later, in the final section titled "Review of Cities Church Broadcast Footage & Related Video," that the government added the new—and false—accusation that Mr. Lemon joined in "chanting with agitators and obstructing parishioners' path of travel." That allegation was not incidental. It was the government's attempted "solution" to the problem identified by two judges: the facts showed that Mr. Lemon was a journalist, not a protestor. The government solved that problem by adding a false allegation that Mr. Lemon was "chanting with agitators and obstructing parishioners' path of travel"—an allegation designed to erase the distinction between reporting on

a protest and participating in one. That should profoundly alarm the Court. The Fourth Amendment does not permit the government to obtain a search warrant against a journalist by falsely recasting newsgathering as criminal obstruction. Without that false allegation, the affidavit is indistinguishable in substance from the complaint affidavit already found insufficient. Accordingly, once the misrepresentation is removed, the affidavit does not establish probable cause for the search warrant, and the fruits of that warrant must be suppressed.

        **iv.**        **Mr. Lemon is entitled to a *Franks* hearing and targeted discovery concerning the false statements in the search warrant**

At minimum, Mr. Lemon is entitled to a *Franks* hearing. He has made the required substantial preliminary showing that the affidavit and warrant materials contained false statements made knowingly or with reckless disregard for the truth. First, the government swore that video showed Mr. Lemon "chanting with agitators and obstructing parishioners' path of travel," when no such video exists and Mr. Lemon did not chant with the protestors. Second, the government submitted a sworn search-warrant application representing that the property to be searched was "located in the State and District of Minnesota," even though the government's own affidavit and Attachment A acknowledged that the iPhone was in the Central District of California.

Both false statements were material. The chanting allegation supplied the missing factual premise that two judges had already found absent: some basis to believe that Mr. Lemon crossed the line from protected reporting into engaging in criminal conduct. And the false statement about the cell phone's location supplied the jurisdictional premise necessary for a Minnesota magistrate judge to issue the warrant at all. Without those misrepresentations, the affidavit did not establish probable cause and the warrant application did not establish the issuing court's authority under Rule 41.

Nor can the government invoke *Leon* to save the search if the Court finds a *Franks* violation. There can be no objective good faith where the warrant was obtained through knowing or reckless misrepresentations. *See United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993). The Court should therefore order a *Franks* hearing and, in advance of that hearing, require targeted discovery into the circumstances surrounding both false statements.

That discovery should include drafts of the complaint and search-warrant affidavits; communications among agents, line prosecutors, supervisory prosecutors, Main Justice officials, and any other DOJ officials involved in the warrant application or review process concerning Mr. Lemon's alleged chanting or participation in the protest; communications concerning the prior no-probable-cause determinations; communications about where the iPhone was located and where the warrant should be sought; any draft warrant applications identifying the phone as located in Minnesota or California; notes, emails, reports, or video-review materials reflecting who added the chanting allegation, when it was added, and what factual basis—if any—the government claimed to have for it; and communications or memoranda among agents, prosecutors, Main Justice officials, and other DOJ officials concerning Rule 41, the decision to seek the warrant in the District of Minnesota rather than the Central District of California, and the decision to include the false statement that the property to be searched was located in Minnesota.

C.      **The Court should suppress the search warrant because the affidavit lacked probable cause to establish a proper nexus to the iPhone and the items to be seized were overbroad**

Law enforcement may only obtain a search warrant with a showing of probable cause that particularly describes the place to be searched and the property to be seized. *See* U.S. Const., amend. IV. "Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances." *United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016). While a judge issuing a search warrant may draw reasonable inferences from the

totality of the circumstances, a warrant issued based only on a supporting affidavit that merely asserts conclusions rather than facts may be invalid. *See Aguilar v. Texas*, 378 U.S. 108, 113 (1964). When a cell phone is seized incident to an arrest, officers must secure a search warrant that is supported by probable cause to search it. *Riley v. California*, 573 U.S. 373, 403 (2014).

### i.      The Court should suppress the search warrant because the affidavit failed to establish a proper nexus to the iPhone

The search warrant affidavit is missing any evidentiary nexus that might suggest the iPhone would contain any evidence of the alleged crime. To be valid, a search warrant must set forth "sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Notman*, 831 F.3d at 1088.  There must be "a nexus between the [alleged illegal activity] and the place to be searched before a warrant may properly issue[.]" *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).

The affidavit is devoid of any facts explaining why the affiant believed evidence of a purported crime would be located on the iPhone that was taken from Mr. Lemon nearly two weeks after the protest and 2,000 miles away. It is not enough for the affidavit to claim that Mr. Lemon committed a crime and he happened to possess a phone weeks later when he was arrested. The affidavit must show—and it does not—a fair probability that the iPhone itself contains evidence of the purported offense.

As to Mr. Lemon's actions at Cities Church, the affidavit alleges that he livestreamed the protest at Cities Church on January 18, 2026. The affidavit does not say anything about how Mr. Lemon livestreamed or what type of camera or device he used, apart from a reference to Mr. Lemon using a "camera" (not an iPhone) (*see* Ex. A at 9, ¶24), and Mr. Lemon filming from inside Cities Church using Meta smart glasses (again, not an iPhone) (*id*. at 14, ¶36). None of the screen captures

of the livestream included in the affidavit show Mr. Lemon holding a phone, let alone a rose gold iPhone.

Agent Gerber's only statements about the iPhone are (1) at the time of his arrest Mr. Lemon "had possession of a rose gold apple iPhone"; and (2) an iPhone has the capability to serve as "a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA" and that based on his training and experience, "examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device." Ex. A at 34, ¶75. In other words, Mr. Lemon had an iPhone when he was arrested nearly two weeks later and 2,000 miles away from the protest and an iPhone can make phone calls and take pictures. Those statements have nothing to do with whether the iPhone may contain evidence of the purported crime.

Agent Gerber could have included statements about his training and experience pertaining to the use of cell phones. Or he could have included additional facts, to the extent any existed, about the iPhone, its presence at the Cities Church protest, and Mr. Lemon's use of the iPhone. But the affidavit does not allege that Mr. Lemon used the iPhone to livestream the January 18 protest, record the protest, communicate with any alleged co-defendants before or during the protest, navigate to Cities Church, coordinate travel to Minnesota, send or receive messages about "Operation Pullup," or even that Mr. Lemon possessed or owned this same phone on January 18.

The fact that Mr. Lemon had the iPhone with him at the time he was arrested is not sufficient to establish a nexus between the iPhone and the evidence sought in the search warrant. *See United States v. Armstrong*, No. CR 21-228 (DWF/ECW), 2022 WL 16960633, at *2 (D. Minn. Nov. 16, 2022) ("The mere fact that [the defendant] possessed the iPhones when he was arrested and was previously convicted of a firearm-related offense is not enough to establish a nexus

between the iPhones and the [alleged crime].") Therefore, the affidavit lacked probable cause to believe the iPhone would contain evidence of a crime and the search warrant should be suppressed.

### ii. The search warrant was overbroad and allowed seizure of items related to "other organized protests"

The search warrant was overbroad in the items subject to seizure and failed the Fourth Amendment's particularity requirement. A search warrant must be supported by probable cause, and the items to be searched for and seized must be limited to evidence of the crime under investigation. *See United States v. Jackson*, No. 18-cr-211, 2019 WL 13127190, at *10 n.5 (D. Minn. Jan. 4, 2019) (finding that a cell phone warrant lacked particularity because it did not limit the search to evidence of a particular crime but merely stated that the "property or things above-described constitutes evidence which tends to show a crime has been committed").

Attachment B's list of items to be seized pursuant to the search warrant includes categories of information that are not meaningfully restricted or tailored to the investigation of the protest at Cities Church. It is overbroad as to time. Although the alleged crime took place over the course of a matter of minutes (or at most hours) on the day of January 18, the search warrant sought to obtain records and information for nearly the entire month of January 2026 (January 4 through January 30). Ex. A at 39. For that 27-day period, Attachment B seeks the entirety of the "[c]all log and related call data showing all incoming and outgoing calls to and from" Mr. Lemon's iPhone— despite setting forth no evidence that Mr. Lemon had any knowledge of the protest at Cities Church prior to January 18, let alone evidence that he was involved in planning or discussing the protest prior to that date. *Id.* at 39, ¶a(1) (emphasis added). Attachment B similarly seeks "[a]ny information regarding the schedule or travel of" Mr. Lemon during that entire 27-day period— again without setting forth any evidence or reason to believe that such information had any relevance to the government's investigation of the protest at Cities Church. *Id.* at 40, ¶5.

This chronological overbreadth is made worse by the sweeping scope of the items to be seized under the warrant. The search warrant was not limited to seeking evidence of the alleged crime. Attachment B's list of items to be seized goes beyond the protest at Cities Church to include "other organized protest activity." That phrase is deeply problematic.

It is not a crime to engage in "organized protest activity." A lawyer does not expect to have to write such a sentence in a legal brief but here we are. To be clear, the First Amendment to the Constitution of the United States protects the rights of individuals to participate in "organized protest activity." *See* U.S. Const., Amend. I ("Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

During the 27-day period covered by the warrant, Mr. Lemon, a nationally recognized journalist, routinely covered newsworthy protest activity across the country. By authorizing the seizure of evidence relating to "other organized protest activity" without any evidence or suggestion that such protests were unlawful, the warrant authorizes the seizure of items unrelated to the alleged crime under investigation. Indeed, the warrant permitted the government to search Mr. Lemon's personal cell phone for information about protest activity—and his news coverage of that activity—that was not criminal, not charged, not related to Cities Church, and not supported by probable cause. This included "internet activity" as well as "photographs and videos" of "other organized protest activity." Ex. A at 38-39.

The inclusion of that phrase transformed a search warrant for evidence of a specific alleged offense into a roving search for political and associational information from a journalist exercising his First Amendment right to freedom of the press.

36

The purpose of the particularity requirement is to ensure "that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *United States v. Pennington*, 287 F.3d 739, 744 (8th Cir. 2002). It is hard to imagine a search more closely resembling what the Framers intended to prohibit than the government searching a journalist's phone for information relating to "other organized protest activity."

### D.    The government also violated the Privacy Protection Act

The expansiveness of the search warrant also ran afoul of the Privacy Protection Act. 42 U.S.C. § 2000aa. Congress enacted the Privacy Protection Act of 1980 in direct response to *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978), where the Supreme Court upheld the execution of a search warrant on a student newspaper's newsroom for photographs taken during coverage of a demonstration. Congress concluded that ordinary Fourth Amendment protections were insufficient when the government seeks to search for journalistic materials gathered or created for public dissemination. The Act therefore imposes an independent statutory limitation on government searches for journalist work product and documentary materials.

The Privacy Protection Act prohibits government officials, in connection with a criminal investigation, from searching for or seizing "work product materials" or "documentary materials" possessed by a person "reasonably believed to have a purpose to disseminate to the public" a newspaper, broadcast, or other similar form of public communication. 42 U.S.C. § 2000aa(a)–(b). Its protections extend to people engaged in First Amendment-protected newsgathering and public communication. That includes Mr. Lemon, a nationally recognized journalist who went to Cities Church to report on and broadcast coverage of a newsworthy protest through his public platform.

The government knew this. The affidavit itself described Mr. Lemon as livestreaming to a public audience. The government therefore knew, when it sought the warrant, that Mr. Lemon's

iPhone was likely to contain protected work product and documentary materials, including recordings, photographs, unpublished media, communications, social-media content, notes, source information, and other newsgathering materials. Yet the government presented the warrant application without addressing the Privacy Protection Act at all.

That omission matters. The government had a duty of candor to alert the issuing court to the Privacy Protection Act so that the court could determine whether the Act applied, whether any statutory exception was satisfied, and whether the warrant required additional limitations. *See In re Search Warrants*, 26-mj-205 (JFD), 2026 WL 1487454, *2 (March 6, 2026) ("[A]dherence to government counsel's duty of candor towards the tribunal should have led them to inform the Court of that statute. Government counsel can argue against the statute's applicability, but they cannot ignore it."). In *In re Search Warrants*, Magistrate Judge John Docherty criticized this prosecution team in this case for failing to direct the Court's attention to the Privacy Protection Act in seeking additional search warrants. *Id.* ("When the government presented these warrants, both originally and for re-presentment, it did not direct the Court's attention to the Privacy Protection Act, 42 U.S.C. § 2000aa. It should have.") (citing *In the Matter of the Search of the Real Property and Premises of Hannah Natanson*, No. 1:26-sw-0054 (WBP), 2026 WL 510727, at *5 (E.D. Va. Feb. 24, 2026) (expressing "significant concern" at the government's failure to address the Privacy Protection Act in a search warrant application within that Act's scope and pointing out that this omission "undermined the Court's confidence in the government's disclosures in this proceeding.")).

Magistrate Judge Docherty cited the January 2026 case wherein the Justice Department applied for an expedited search warrant to search the home of award-winning *Washington Post* journalist Hannah Natanson. *See In the Matter of Search of the Real Property and Premises of*

*Hannah Natanson*, 2026 WL 510727, at \*5 (magistrate judge order rejecting search warrant), *aff'd sub nom. Matter of Search of Natanson*, No. 1:26-SW-00054 (WBP-AJT), 2026 WL 1458902 (E.D. Va. May 4, 2026) (criticizing the government for failing to inform a magistrate judge of the Privacy Protection Act and explaining that "had the government disclosed the PPA, the Court may well have rejected the search warrant application and directed the government to proceed by subpoena instead. At the very least, it would have asked more questions."). Notably, that case was both high profile in nature and involved communications from the court to "the highest levels of the DOJ." *Id.* at \*5. DOJ and the high-ranking officials involved in both cases were on explicit notice, at least from that point forward, that they had a duty to "identify the PPA as controlling authority and to include an analysis of it in [a] warrant application." *Id.* As the *Natanson* court explained:

> Among other responsibilities, magistrate judges serve as probable cause gatekeepers for search warrants. We communicate with government attorneys multiple times a day during our criminal duty weeks, assessing probable cause for search warrant applications. These requests come in a fast-paced environment. The search warrant the Court approved in this case was one of 46 the government requested that week. In its day-to-day workings, this Court affords government attorneys a presumption of regularity, including by assuming that federal prosecutors have satisfied their obligation to disclose controlling and relevant authority. The Court extends this latitude to prosecutors because: "[T]hey are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" As a result, the presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties. The government's conduct has disturbed that baseline posture of deference.

*Id.* at \*5-6 (citations omitted).

Despite this explicit warning, the government *in this case* failed to inform the magistrate judge who approved this search warrant. By ignoring the statute, the government deprived the

39

court of the opportunity to decide whether the warrant should issue at all or, at minimum, whether it should be narrowed to avoid the seizure and review of protected journalistic materials.

The Privacy Protection Act contains a limited exception where "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." 42 U.S.C. § 2000aa(a)(1), (b)(1). But that exception does not give the government license to conduct a wholesale search of a journalist's phone simply by alleging that the journalist committed some offense. The materials searched for must relate to the offense for which probable cause exists. And the exception must be applied with care, particularly where the device belongs to a journalist and contains materials from unrelated reporting.

Here, even assuming there was probable cause to believe Mr. Lemon committed an offense while covering the January 18 protest—and there was not—the Privacy Protection Act did not permit the government to search the full contents of his iPhone for broad categories of journalistic materials unrelated to that alleged offense. At most, the Act's exception could have permitted a carefully limited search for materials relating to the specific alleged FACE Act offense at Cities Church on January 18. The warrant went far beyond that. It authorized the government to search for photographs, videos, communications, social-media posts, and other materials relating not only to the January 18 protest, but also to "other organized protest activity." It further authorized the seizure of "any and all" text messages, emails, photographs, videos, and social-media materials relating to that sweeping category.

That language is especially problematic because Mr. Lemon is a journalist known to cover organized protests and other matters of public concern. A warrant authorizing the government to search a journalist's phone for materials relating to "other organized protest activity" is directed at the very category of material the Privacy Protection Act seeks to protect. It sweeps in unpublished

recordings, communications, notes, source material, social-media content, and unrelated reporting materials having nothing to do with the alleged January 18 offense.

Nor did the government include any meaningful protections to account for the journalistic nature of the materials. It did not show compliance with the Department of Justice's own restrictions on compulsory process directed at the news media. Those regulations recognize that search warrants targeting the press are "extraordinary measures, not standard investigatory practices." 28 C.F.R. § 50.10(a)(3). The Justice Manual likewise instructs that investigative techniques directed at newsgathering are "an extraordinary measure to be deployed *as a last resort* when essential to a successful investigation or prosecution." U.S. Dep't of Just., Just. Manual § 9-13.400 (emphasis added). Those principles underscore what the Privacy Protection Act itself makes clear: this was not an ordinary cell phone warrant.

The government knew it was seeking to search a device used by a journalist, broadcaster, and commentator. That knowledge required careful limitations to avoid sweeping up protected work product, documentary materials, source information, and unrelated protest coverage. Instead, the government sought and obtained a warrant that authorized a broad search of protected journalistic materials without alerting the issuing court to the governing statute, without explaining why any exception applied, and without limiting the search to materials relating to the protest at Cities Church.

For these reasons, the Court should suppress the evidence obtained from Mr. Lemon's iPhone and order the government to return the cell phone. At minimum, the Privacy Protection Act violation confirms that the warrant was unreasonable, insufficiently particularized, and not saved by good faith. The government's failure to disclose or address the Act deprived the issuing court of the information necessary to perform its constitutional and statutory gatekeeping function.

41

## IV.    CONCLUSION

Mr. Lemon respectfully requests that the Court issue an order suppressing all evidence obtained from the search of Mr. Lemon's iPhone and suppressing all derivative evidence as fruit of the unlawful search. In the alternative, Mr. Lemon requests that the Court order the government to disclose discovery pertaining to obtaining and executing the search warrant and hold an evidentiary hearing on the Rule 41 violation, the application of the exclusionary rule, and pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

Dated: July 2, 2026                              Respectfully Submitted,

/s/ *Abbe David Lowell*
Abbe David Lowell (*admitted pro hac vice*)
David A. Kolansky (*admitted pro hac vice*)
Isabella M. Oishi (*admitted pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Tel: 202-964-6110
Fax: 202-964-6116
ALowellpublicoutreach@lowellandassociates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com

/s/ *Joseph H. Thompson*
Joseph H. Thompson (#0343031)
THOMPSON JACOBS PLLC
222 N. Second Street, Suite 220
Minneapolis, MN 55401
Tel: (612) 416-3322
joe@thompsonjacobs.com

*Counsel for Don Renaldo Lemon*