**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 0:26-cr-025-LMP-DLM |
| Plaintiff, | GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANTS' OBJECTIONS TO THE JUNE 10, 2026 ORDER DENYING MOTIONS FOR DISCLOSURE OF GRAND JURY PROCEEDINGS AND *BRADY* MATERIALS |
| v. | |
| NEKIMA VALDEZ LEVY ARMSTRONG, *et al.*, | |
| Defendants. | |

**INTRODUCTION**

Defendants' objections fail because they do not demonstrate that Judge Micko's Order was clearly erroneous or contrary to law. In addition, the objections filed by defendants Don Lemon and Georgia Fort largely raise new issues that were not presented in their initial motions for disclosure and rely on material that is still pending before Judge Micko.

As Judge Micko's Order expressly states, Defendants' Motions for Disclosure (Docs. 528, 532, and 534) remain pending, and the Court will issue a separate decision on those motions in the coming days. (*See* Order, Doc. 540, at 2, n.5.) Accordingly, all allegations concerning misstatements in the search warrant affidavits or the matter addressed in the Government's *in camera* submission to Judge Micko are premature and should await Judge Micko's future ruling.

1

For purposes of this opposition, the Government simply focuses on four basic issues regarding Defendants' objections to the subject order: (1) Defendants have ignored the standard of review; (2) Defendants include new facts currently pending before Judge Micko; (3) Judge Micko correctly held that the Government need not provide any legal instructions to a grand jury or present and negate an affirmative defense; and (4) Defendants' misguided invocation of the First Amendment does not justify their trampling of the victims' First Amendment right to the free exercise of religion.

## ARGUMENT

I.  **Defendants Fail to Show Any Error in Judge Micko's Rule 6(e) Determination and Erroneously Expand the Scope of Appeal**

In this appeal, Defendants bear a heavy burden. Under Local Rule 72.2(a), a district judge may modify or set aside a magistrate judge's non-dispositive order only if it is clearly erroneous or contrary to law. The question before this Court is not whether it might have reached a different conclusion in the first instance, but whether Judge Micko misapplied governing law or clearly erred in evaluating the record presented to him. Defendants' objections largely fail to engage that standard. Rather than identifying specific errors in Judge Micko's Rule 6(e) analysis, they devote substantial portions of their briefs to inapplicable First Amendment defenses, alleged *Brady* violations, investigative decisions, disputed factual assertions, and legal theories that either were not presented to Judge Micko or arise under separate motions that are still pending before Judge Micko.

2

Judge Micko was asked to resolve a single procedural question: whether Defendants demonstrated the particularized need necessary to overcome the longstanding presumption of grand jury secrecy under Rule 6(e).  In this case, Judge Micko correctly identified the governing legal standard, considered each basis advanced by Defendants, and concluded that none justified disclosure of grand jury materials.  (*See* Order, Doc. 540, at 5-6.)  The objections identify no controlling authority requiring a different result.

Many of the additional factual developments and legal arguments Defendants now emphasize concern matter noticed after the underlying motions were briefed or relate to separate constitutional and evidentiary disputes that remain subject to litigation that is still pending before Judge Micko.  This includes other defense motions for disclosure of grand jury proceedings relating to, for example, statements of fact about Ms. Fort's conduct (Doc. 528) and Defendants' Motion to Dismiss both counts of the indictment based on the First Amendment and the FACE Act's rules of construction (Doc. 547).

These issues are not properly before the Court in the pending objections and do not retroactively render Judge Micko's Rule 6(e) analysis erroneous.  Moreover, defendant Fort's second motion for disclosure of grand jury proceedings still remains pending before Judge Micko, with a hearing on July 24, 2026.  The Government has filed a response to that motion, along with an *in camera* submission for Judge Micko to consider in connection with that motion.  It would be premature for this Court to rule on these matters, accordingly.

**II.    The Challenged Order Correctly States that the Government Has No Duty to Present and Negate a First Amendment Defense to the Grand Jury**

Judge Micko correctly ruled that even accepting Defendants' theory that the Government provided erroneous legal instructions to the Grand Jury, the Government is under no obligation to provide the Grand Jury any legal instructions. (*See* Order, Doc. 540, at 5-6.) As noted in Judge Micko's order:

> "Under the prevailing law of this Circuit, the prosecutor is not under an obligation to provide the Grand Jury with any legal instructions." [*United States v.*] *Finn*, 919 F. Supp. [1305,] at 1327 [(D. Minn. 1995)] (citing *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988) (Indictment should not have been dismissed because of prosecutor's failure to instruct the Grand Jury on the applicable law of obscenity).) Moreover, "[t]he prosecutor is normally not under a duty to disclose facts [to the Grand Jury] which would be the basis of a defense at the trial." *United States v. Civella*, 666 F.2d 1122, 1127 (8th Cir. 1981).

(*See* Order at 6.)

The Grand Jury's role is accusatory. It determines probable cause to charge and is not a forum for litigating defenses or the scope of constitutional carve-outs. Consistent with that framework, courts within this District have recognized there is no obligation to provide legal instructions to a grand jury and no basis to invade grand jury secrecy to second-guess purported instructional disputes absent record evidence of misconduct before the grand jury. *United States v. Finn*, 919 F. Supp. 1305, 1326-27 (D. Minn. 1995), *adopted*, 911 F. Supp. 372 (D. Minn. 1995), *and aff'd sub nom. United States v.*

4

*Pemberton*, 121 F.3d 1157 (8th Cir. 1997), *and aff'd sub nom. United States v.*

*Pemberton*, 121 F.3d 1157 (8th Cir. 1997).  As the *Finn* Court stated:

> [E]ven if we assumed that the information, which related to
> a witness's lack of candor had not been presented to the
> Grand Jury, and if we further assumed that the Grand Jury
> was improperly instructed as to the definition of an ITO,
> for purposes of Section 1163 … we would have no
> permissible basis to invade the secrecy of the Grand Jury
> proceedings.

*See Finn*, 919 F. Supp. at 1327.

The Defendants suggest that *Finn* is inapposite because the Eighth Circuit did not

review "miseducation" of the grand jury on appeal.  However, that ignores what *Finn*

held and how it relates to the pending motions.  In *Finn*, this Court squarely recognized

that the Government is under no obligation to provide legal instructions to the grand jury

and that courts lack a permissible basis to invade grand-jury secrecy to second-guess

purported statutory definitions.  *Finn*, 919 F. Supp. at 1326-27.  The court explicitly

declined to pierce the veil of grand jury secrecy to scrutinize what the grand jury had

been told relating to a statutory definition at issue in the case.  *Id.*

The FACE Act prohibits the use of force, threats of force, or physical obstruction

to injure, intimidate, or interfere with persons obtaining reproductive-health services or

lawfully exercising the right of religious worship at a place of worship.  18 U.S.C.

§ 248(a).  Congress also added a rule of construction clarifying that nothing in § 248

prohibits expressive conduct protected by the First Amendment, including peaceful

picketing.  18 U.S.C. § 248(d)(1).  Courts uniformly treat FACE Act violations as a

content-neutral regulation of conduct and have upheld its constitutionality on that basis. *See, e.g., United States v. Dinwiddie*, 76 F.3d 913, 922-26 (8th Cir. 1996).

The First Amendment carve-out is of no moment.  As the Supreme Court has held, federal crimes are "solely the creature of statute," and matters that do not controvert elements are treated as affirmative defenses.  *Dixon v. United States*, 548 U.S. 1, 5-8 (2006).  Accordingly, the Government was not obligated to present the grand jury with instructions on how to apply the First Amendment or the statute's "rules of construction." It is not a proper matter for the grand jury's consideration.  As Judge Micko correctly observed, "an indictment need not anticipate a defendant's affirmative defenses."  (*See* Order, Doc. 540, at 8 (citing *United States v. Clark*, No. 11-cr-032 (JRT/LIB), 2011 WL 2015224, at *3 (D. Minn. 2011), *adopted by* 2011 WL 1990443 (D. Minn. 2011) (Tunheim, J.).)  *See also United States v. Sisson*, 399 U.S. 267, 288 (1970) ("It has never been thought that an indictment, in order to be sufficient, need anticipate affirmative defenses[.]").

Even if the Court were to consider a dispute about legal instructions to a grand jury, Defendants would need to demonstrate prejudice from the instructional error to obtain relief.  A defendant must show any error "substantially influenced the grand jury's decision to indict" or created "grave doubt" that the decision was free of such influence. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254-57 (1988).  Generalized claims that the Government failed to instruct on a First Amendment carve-out do not meet that standard.  *United States v. Levine*, 700 F.2d 1176, 1180-81 (8th Cir. 1983) (misstatements or mistakes do not warrant dismissal of an otherwise valid indictment).  This is

particularly true when, as explained below, it is firmly established that there is no First Amendment right to interfere with a church service in the manner that the Defendants did in this case.

### III.    There Is No First Amendment Right to Engage in Disruptive Activities Inside a House of Worship

As Defendants have raised a First Amendment argument in a number of prior filings and statements, it bears noting here that the argument is utterly without merit.  The law is settled.  Although people have a robust right under the First Amendment to protest on *public* property, people "do not have a right to enter [a] cathedral and disrupt the church services of [other people]."  *See Action v. Gannon*, 450 F.2d 1227, 1233 (8th Cir. 1971) (*en banc*) (affirming injunction that barred activist organizations and their members from entering a church and disrupting religious services inside the church).  "Such disruption is an intolerable violation of the rights of those engaged in worship."  *Id*. at 1233 (citing *Gregory v. Chicago*, 394 U.S. 111, 124-25 (1969) (Black, J., concurring) ("The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy.")).

In the absence of laws protecting the free exercise of religion, the kind of offense conduct alleged in this case might become more common, to the detriment of all.  As Justice Black explained, "[c]hurches would be compelled to welcome into their buildings invaders who came but to scoff and jeer."  *See Gregory*, 394 U.S. at 124-25 (Black, J., concurring); *see also Phelps-Roper v. City of Manchester*, 697 F.3d 678, 695 (8th Cir.

2012) (en banc) (rejecting First Amendment challenge to city ordinance that restricted protests within 300 feet of a funeral or burial service while it is occurring and one hour before and after the service).

Several defendants may also seek to raise an affirmative defense that their conduct was protected by the First Amendment's Free Press Clause. This defense lacks merit, too.

"[G]enerally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news," and "enforcement of such general laws against the press is not subject to stricter scrutiny than would be applied to enforcement against other persons or organizations." *Cohen v. Cowels Media Co.*, 501 U.S. 663, 669 (1991). Indeed, as the Supreme Court has held, "[i]t would be frivolous to assert that the First Amendment, in the interest of securing news or otherwise, confers a license on either the reporter or his news sources to violate valid criminal laws." *Branzburg v. Hayes*, 408 U.S. 665, 691 (1972) (quotation marks omitted).

Thus, the status of any defendant as a "journalist" does not authorize them to violate the FACE Act. "[T]he purpose of the Constitution was not to erect the press into a privileged institution but to protect all persons in their right to print what they will as well as to utter it … [T]he liberty of the press … is no greater than the liberty of every citizen of the Republic." *Pennekamp v. Florida*, 328 U.S. 331, 364 (1946) (Frankfurter, J., concurring). Thus, "[t]he publisher of a newspaper has no special immunity from the application of general laws. He has no special privilege to invade the rights and liberties

8

of others." *Associated Press v. NLRB*, 301 U.S. 103, 132-133 (1937). The same is true of individual reporters. "[T]he First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg*, 408 U.S. at 684 ("the right to speak and publish does not carry with it the unrestrained right to gather information," and "[n]ewsmen have no constitutional right of access to the scenes of crime . . . ."); *Zemel v. Rusk*, 381 U.S. 1, 17 (1965) ("The right to speak and publish does not carry with it the unrestrained right to gather information.") *see also Citizens United v. FEC*, 558 U.S. 310, 352 (2010) ("We have consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers.").

Likewise, there is no special right for journalists or others (*e.g.*, animal rights activists) to record things of interest happening on private property. For example, the Eighth Circuit upheld an Iowa "trespass-surveillance law penalizing anyone who, while trespassing … uses a camera or electronic surveillance device that transmits or records images." *Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1080 (8th Cir. 2024) ("assum[ing] the Act regulates a constitutional right" but still upholding it as narrowly tailored to the significant state interests in "protecting the privacy interests of individuals on their property … and deterring trespassers from wrongfully alighting onto a property to make a recording"). Indeed, there are well recognized limits on the right to record public proceedings on public property. *See Rice v. Kempler*, 374 F.3d 675, 678 (8th Cir. 2004) (holding that there is no "First Amendment right to videotape, photographs, or

9

make audio recordings of government proceedings that are by law open to the public")

(citing cases).

## CONCLUSION

For all of the foregoing reasons, Defendants' objections to Judge Micko's June 10, 2026 Order should be overruled. The order was entered without prejudice, and other motions for disclosure of grand jury proceedings remain pending before Judge Micko. Finally, Defendants ignore the law regarding legal instructions to a grand jury and are improperly invoking the First Amendment as a defense.

DATED: July 13, 2026

DANIEL N. ROSEN
United States Attorney

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE S. HEDLEY
Senior Trial Attorney

    /s/ Robert J. Keenan
ROBERT J. KEENAN
    Civil Rights Division
    U.S. Department of Justice
    950 Pennsylvania Ave. NW
    Washington, DC 20530
    Telephone: (202) 230-2216
    E-Mail: Robert.Keenan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA