# Exhibit I

**U.S. Department of Justice**

***Civil Rights Division, Criminal Section***

May 7, 2026

***Via E-Mail***

John Marti
Dorsey & Whitney LLP
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402-1498
E-Mail: marti.john@dorsey.com

Re: *United States v. Armstrong, et al.*,
Case No. 26-cr-00025-LMP-DLM

Mr. Marti:

In its April 24, 2026 letter to all counsel regarding its production of discovery materials, the Government noted that it cannot reasonably respond to every defense attorney's separate requests for discovery. Nonetheless, this letter is in response to your letter dated April 29, 2026, in which you request identification of all Immigration and Customs Enforcement agents who participated in any way with the investigation, arrest, or prosecution or your client of the defendants in this case, and who were hired following a $75 billion Congressional appropriation for the hiring of additional ICE agents. In support of that request, your letter cites an article from the *Guardian* concerning the qualifications of recent ICE hires.

The Government is aware of, and will comply with, its discovery obligations under *Brady* and *Giglio* in accordance with applicable law. As you know, however, your request for the identification of every ICE agent who participated in the investigation is overbroad and exceeds the scope of required discovery. The nature of this case — involving, as you know, an effort to threaten, intimidate, and otherwise "doxx" an ICE agent and anyone who might dare to associate with him — also provides a separate basis to deny your request. We made that point in a filing about the protective order. Even outside of a church, such conduct violates federal law. *See, e.g.*, 18 U.S.C. § 372 (prohibiting intimidation of federal officers) and § 1512 (prohibiting witness intimidation). The Government's safety concerns are thus well-founded, factually and legally.

The Government has not yet identified which persons it might elect to call at any trial or motion hearing, but we expect most of the witnesses in this case to be the victims who were present at the church on January 18, 2026, along with a smattering of law enforcement witnesses. In accordance with Department policy, the Government will seek out and disclose any *Giglio* information for all such witnesses, including federal agents and local law enforcement officers.

That will include *Henthorn* checks (as they are known in the Ninth Circuit) for any impeachment material that may be in the personnel records of federal agents. If any *Giglio* material is found, we will produce such information in discovery as required by law and subject to any further protective orders that we may request from the Court to protect against public dissemination of such information.

The physical production of entire personnel records is, of course, another matter. The Eighth Circuit has held that "[m]ere speculation that a government file may contain *Brady* material is not sufficient" for an *in camera* review, much less production in discovery. *United States v. Pau*, 953 F.2d 363, 366-67 (8th Cir. 1992) (citations omitted). Thus, the courts routinely decline to require the disclosure of law enforcement personnel files "when the defendant's assertion that such files contain material evidence is merely speculative." *See, e.g., United States v. Red Bird*, 2020 WL 6129634 at *4 (D.S.D. Oct. 19, 2020).

If you have any questions about these or other issues, please do not hesitate to contact us.

Sincerely,

NEVILLE S. HEDLEY
Senior Trial Attorney
Civil Rights Division