# Exhibit 27

*Secretary*

**U.S. Department of Homeland Security**
Washington, DC 20528



October 27, 2021

MEMORANDUM TO:      Tae D. Johnson
                    Acting Director
                    U.S. Immigration and Customs Enforcement

                    Troy A. Miller
                    Acting Commissioner
                    U.S. Customs and Border Protection

                    Ur M. Jaddou
                    Director
                    U.S. Citizenship and Immigration Services

                    Robert Silvers
                    Under Secretary
                    Office of Strategy, Policy, and Plans

                    Katherine Culliton-González
                    Officer for Civil Rights and Civil Liberties
                    Office of Civil Rights and Civil Liberties

                    Lynn Parker Dupree
                    Chief Privacy Officer
                    Privacy Office

FROM:               Alejandro N. Mayorkas
                    Secretary

SUBJECT:            **Guidelines for Enforcement Actions in or Near Protected Areas**

This memorandum provides guidance for ICE and CBP enforcement actions in or near areas that require special protection. It is effective immediately.

This memorandum supersedes and rescinds John Morton's memorandum entitled, "Enforcement Actions at or Focused on Sensitive Locations" (number 10029.2, dated October 24, 2011), and David Aguilar's memorandum entitled, "U.S. Customs and Border Protection Enforcement Actions at or Near Certain Community Locations" (dated January 18, 2013).

1

## I.    Foundational Principle

In our pursuit of justice, including in the execution of our enforcement responsibilities, we impact people's lives and advance our country's well-being in the most fundamental ways.  It is because of the profound impact of our work that we must consider so many different factors before we decide to act.  This can make our work very difficult.  It is also one of the reasons why our work is noble.

When we conduct an enforcement action – whether it is an arrest, search, service of a subpoena, or other action – we need to consider many factors, including the location in which we are conducting the action and its impact on other people and broader societal interests. For example, if we take an action at an emergency shelter, it is possible that noncitizens, including children, will be hesitant to visit the shelter and receive needed food and water, urgent medical attention, or other humanitarian care.

To the fullest extent possible, we should not take an enforcement action in or near a location that would restrain people's access to essential services or engagement in essential activities. Such a location is referred to as a "protected area."

This principle is fundamental.  We can accomplish our enforcement mission without denying or limiting individuals' access to needed medical care, children access to their schools, the displaced access to food and shelter, people of faith access to their places of worship, and more.  Adherence to this principle is one bedrock of our stature as public servants.

## II.    Protected Areas

Whether an area is a "protected area" requires us to understand the activities that take place there, the importance of those activities to the well-being of people and the communities of which they are a part, and the impact an enforcement action would have on people's willingness to be in the protected area and receive or engage in the essential services or activities that occur there.  It is a determination that requires the exercise of judgment.

The following are some examples of a protected area.  The list is not complete.  It includes only examples:

- A school, such as a pre-school, primary or secondary school, vocational or trade school, or college or university.

- A medical or mental healthcare facility, such as a hospital, doctor's office, health clinic, vaccination or testing site, urgent care center, site that serves pregnant individuals, or community health center.

- A place of worship or religious study, whether in a structure dedicated to activities of faith (such as a church or religious school) or a temporary facility or location where such activities are taking place.

- A place where children gather, such as a playground, recreation center, childcare center, before- or after-school care center, foster care facility, group home for children, or school bus stop.

- A social services establishment, such as a crisis center, domestic violence shelter, victims services center, child advocacy center, supervised visitation center, family justice center, community-based organization, facility that serves disabled persons, homeless shelter, drug or alcohol counseling and treatment facility, or food bank or pantry or other establishment distributing food or other essentials of life to people in need.

- A place where disaster or emergency response and relief is being provided, such as along evacuation routes, where shelter or emergency supplies, food, or water are being distributed, or registration for disaster-related assistance or family reunification is underway.

- A place where a funeral, graveside ceremony, rosary, wedding, or other religious or civil ceremonies or observances occur.

- A place where there is an ongoing parade, demonstration, or rally.

We need to consider the fact that an enforcement action taken near – and not necessarily in – the protected area can have the same restraining impact on an individual's access to the protected area itself. If indeed that would be the case, then, to the fullest extent possible, we should not take the enforcement action near the protected area. There is no bright-line definition of what constitutes "near." A variety of factors can be informative, such as proximity to the protected area, visibility from the protected area, and people's behavioral patterns in and around the protected area. The determination requires an analysis of the facts and the exercise of judgment.

The fundamental question is whether our enforcement action would restrain people from accessing the protected area to receive essential services or engage in essential activities. Our obligation to refrain, to the fullest extent possible, from conducting a law enforcement action in or near a protected area thus applies at all times and is not limited by hours or days of operation.

Whether an enforcement action can be taken in or near a courthouse is addressed separately in the April 27, 2021 Memorandum from Tae Johnson, ICE Acting Director, and Troy Miller, CBP Acting Commissioner, entitled "Civil Immigration Enforcement Actions in or Near Courthouses," which remains in effect.

### III.    Exceptions and Limitation on Scope

The foundational principle of this guidance is that, to the fullest extent possible, we should not take an enforcement action in or near a protected area. The phrase "to the fullest extent possible" recognizes that there might be limited circumstances under which an enforcement action needs to be taken in or near a protected area. The following are some examples of such limited circumstances:

3

- The enforcement action involves a national security threat.

- There is an imminent risk of death, violence, or physical harm to a person.

- The enforcement action involves the hot pursuit of an individual who poses a public safety threat.

- The enforcement action involves the hot pursuit of a personally observed border-crosser.

- There is an imminent risk that evidence material to a criminal case will be destroyed.

- A safe alternative location does not exist.

This list is not complete. It includes only examples. Here again, the exercise of judgment is required.

Absent exigent circumstances, an Agent or Officer must seek prior approval from their Agency's headquarters, or as you otherwise delegate, before taking an enforcement action in or near a protected area. If the enforcement action is taken due to exigent circumstances and prior approval was therefore not obtained, Agency headquarters (or your delegate) should be consulted post-action. To the fullest extent possible, any enforcement action in or near a protected area should be taken in a non-public area, outside of public view, and be otherwise conducted to eliminate or at least minimize the chance that the enforcement action will restrain people from accessing the protected area.

Enforcement actions that are within the scope of this guidance include, but are not limited to, such actions as arrests, civil apprehensions, searches, inspections, seizures, service of charging documents or subpoenas, interviews, and immigration enforcement surveillance. This guidance does not apply to matters in which enforcement activity is not contemplated. As just one example, it does not apply to an Agent's or Officer's participation in an official function or community meeting.

This guidance does not limit an agency's or employee's statutory authority, and we do not tolerate violations of law in or near a protected area.

## IV.    Training and Reporting

Please ensure that all employees for whom this guidance is relevant receive the needed training. Each of your respective agencies and offices should participate in the preparation of the training materials.

Any enforcement action taken in or near a protected area must be fully documented in your Agency's Privacy Act-compliant electronic system of record in a manner that can be searched and validated. The documentation should include, for example, identification of the protected area; the reason(s) why the enforcement action was taken there; whether or not prior approval was obtained and, if not, why not; the notification to headquarters (or headquarters' delegate) that occurred after an action was taken without prior approval; a situational report of what

4

occurred during and immediately after the enforcement action; and, any additional information that would assist in evaluating the effectiveness of this guidance in achieving our law enforcement and humanitarian objectives.

## V.       Statement of No Private Right Conferred

This guidance is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

5