UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIM. NO. 26-25 (LMP/DLM)

---

United States of America,

Plaintiff,

v.

Jerome Deangelo Richardson (5),

Defendant.

**MOTION TO SUPPRESS EVIDENCE OBTAINED BY SEARCH AND SEIZURE (META/FACEBOOK WARRANT)**

---

## INTRODUCTION

On February 10, 2026, Homeland Security Investigations Special Agent Timothy Gerber applied for, and received, a search warrant to search Mr. Richardson's Facebook account. Suppression of all evidence obtained under that warrant, together with any and all derivative evidence, is required for at least the following four reasons.

First, the application did not establish probable cause to search Mr. Richardson's Facebook account. Second, the warrant was unconstitutionally overbroad and lacked particularity. Third, the warrant's operative seizure clause was facially deficient because it authorized the seizure of nonexistent "violations" of 18 U.S.C. § 2703. Fourth, the government improperly used Mr. Richardson's effort to fund his legal defense as the basis for a broad search of his Facebook account. These require suppression under the Fourth Amendment to the United States Constitution. The defense moves for an evidentiary hearing.

## BACKGROUND

On February 10, 2026, Agent Gerber applied for a warrant to search Meta (a/k/a Facebook) to require it to disclose information about Mr. Richardson's Facebook account and usage.

The application's probable cause section was sparse. It includes just three paragraphs, copied below in their entirety:

> **PROBABLE CAUSE**
>
> 1. Incorporated by reference to support the probable cause in this application are the factual statements detailed in that Indictment filed on January 29, 2026, for Case No. 26-cr-25.
>
> 2. On January 29, 2026, RICHARDSON was indicted along with eight other people for violations of 18 U.S.C. § 241 (Conspiracy against Rights) and 18 U.S.C. § 248 (a)(2) (Interference with Religious Freedom at Place of Worship).
>
> 3. On or about January 31, 2026, Richardson posted a video on Facebook and spoke of his involvement in the incident at Cities Church, his expectation to be arrested, and his need for money to pay for his legal expenses. Richardson uses the username jerome.treadwell.5. Subsequently, a preservation request was sent to Meta preserving the account data.

Other sections of the affidavit are much lengthier—for example, the "Background Concerning Facebook" section spans about seven pages—but no further probable cause explanation is provided, nor is there any explanation about a nexus between all of the areas to be searched and the evidence to be sought. Nor is there any explanation of how the January 31, 2026 video was relevant to probable cause.

Section I of Attachment B, describing "Information to be disclosed by Meta" was extraordinarily broad. It spanned four pages—subsections (a) through (r)—and included

broad information about Mr. Richardson's associations, activities, "groups and networks of which [he] is a member", comments, and use of his Facebook applications.

The warrant application then described, in Section II of Attachment B, that the government was to seize "All information described above in Section I that constitutes fruits, evidence and instrumentalities of ***violations of 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A)*** involving Jerome RICHARDSON January 1, 2026 to January 31, 2026, …." (emphasis added). These statutes, however, are parts of the Stored Communications Act, not criminal statutes. There is no allegation that Mr. Richardson violated any of these statutes. Section II then proceeded to describe categories of information the government was to seize, including broad boilerplate references to "Evidence indicating how and when the Facebook account was accessed or used" and "Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation."

Attachment B was specifically incorporated in the signed warrant.

## ARGUMENT

### 1. The Warrant Application Did Not Establish Probable Cause to Search Mr. Richardson's Facebook Account.

The Fourth Amendment permits a search only when the facts presented to the issuing judge establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Ivey*, 91 F.4th 915, 917 (8th Cir. 2024). Probable cause therefore requires a nexus between suspected criminal activity, the evidence sought, and the place or account to be

searched. *United States v. Norey*, 31 F.4th 631, 637 (8th Cir. 2022); *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).

For digital searches, the critical question is whether there is reasonable cause to believe evidence of that activity will be found in the particular digital repository to be searched. The issuing judge must have a substantial factual basis for answering that question; the judge may not simply ratify a conclusory assertion that probable cause exists. *Gates*, 462 U.S. at 239.

The application here is sorely lacking. The probable cause section consisted of only three brief paragraphs. First, it incorporated an indictment. Second, it reported that Mr. Richardson and others had been indicted, referencing the incorporated indictment. Third, it stated that, on January 31, 2026, Mr. Richardson posted a Facebook video in which he "spoke of his involvement" in the protest, that he anticipated being arrested, and that he requested donations for associated legal expenses.

Those assertions did not establish probable cause to search the account, let alone probable cause for so broad a search. The Eighth Circuit permits an adequately identified affidavit or attachment to supplement a warrant, but the incorporated material must *actually* supply the constitutionally required information. *See United States v. Riesselman*, 646 F.3d 1072, 1076-77 (8th Cir. 2011); *United States v. Hamilton*, 591 F.3d 1017, 1024-25 (8th Cir. 2010). Thus, even assuming the indictment was properly incorporated and actually available to the issuing judge, its allegations still had to establish a fair probability that evidence of the charged offenses would be located in Mr. Richardson's Facebook account. They did not. The indictment did not allege that Mr.

Richardson or anyone else used Facebook to commit, plan, coordinate, document, conceal, or discuss the charged conduct, nor did it allege that fundraising was part of either alleged offense. Indeed, in the incorporated January 29, 2026 indictment, the words "Facebook" and "Meta" never appear. Merely informing the issuing judge that Mr. Richardson had been indicted established only that a grand jury had found probable cause to charge him; it did not speak to the *separate* probable cause inquiry of whether evidence would likely be found in this particular digital repository.

The January 31 video referenced did not supply the missing nexus. The video showed that Mr. Richardson used the Facebook account, but account ownership or use was not sufficient to establish the likelihood of evidence. Indeed, if the video itself were the evidence sought, the warrant would not be necessary because the agent already had the video—the government was on a fishing expedition for something else. But this application did not identify that agents had reason to believe further evidence would exist in the Facebook material.

The application is thus unlike the Facebook warrant upheld in *United States v. Adams*, No. 24-cr-9(1) (ECT/JFD), Doc. 49, at 5-6, 2024 U.S. Dist. LEXIS 217791 at *7-*8 (D. Minn. Dec. 2, 2024). There, the:

> "warrant application trace[d] a logical path from Adams's public-facing Facebook posts to the determination that there was a "fair probability that . . . evidence of a crime" would be found in Adams's Facebook data. […L]aw enforcement was investigating several crimes, and the warrant described public-facing evidence indicating that Adams was involved in a check counterfeiting operation and a business selling fake identification documents, one of which was used in Adams's brother's purchase of the Chrysler 300 used to commit the robberies. R&R at 10.

*Id*. (Order adopting R&R). The application in *Adams* thus fulfilled the nexus requirement by tracing a path, but this application did not do so. It moved directly from the existence of an indictment and a single post-indictment post to the compelled disclosure of expansive and disparate categories of information.

While the application restricted many categories to January 1 through January 31, 2026, this temporal limitation did not cure the deficiency because it still did not articulate a substantive connection. The application still failed to identify why evidence would likely appear within the particular Facebook records.

Because the issuing judge lacked a substantial basis to find the required nexus, the warrant was unsupported by probable cause, and the evidence obtained from its execution must be suppressed.

**2. The Warrant Was Unconstitutionally Overbroad and Lacked Particularity.**

Even if the Court were to conclude that the affidavit established probable cause, the warrant remains unconstitutional because it failed to satisfy the Fourth Amendment's particularity requirement and authorized an overbroad digital search.

Particularity and overbreadth are two distinct concepts; but they are related and Courts analyze them in tandem. *United States v. Moulder*, Crim. No. 20-232 (JRT/BRT), 2022 WL 3644893, at *10 n.2 (D. Minn. Aug. 24, 2022). "Particularity is the requirement that a warrant must state what is sought clearly and breadth deals with the requirement that the scope of the warrant must be supported by probable cause… the Fourth Amendment guards against the use of 'general warrants,' or warrants so broad they allow for a 'general rummaging in a person's belongings.'" *Id.* (citing *Coolidge v. New*

*Hampshire*, 403 U.S. 443, 467 (1971)). A warrant must therefore meaningfully limit the information the government may examine and seize to the areas and things for which probable cause exists.

The warrant here failed to do so. The portion of Attachment B in the Application (later incorporated by the warrant) entitled "Information to be Disclosed by Meta," extended for four pages and contained separate subsections (a) through (r). Subsection after subsection demanded broad and disparate categories of information concerning nearly every aspect of Mr. Richardson's Facebook account. Many, but not all, of those demands were limited to January 1 through January 31, 2026.

Nothing in the application established probable cause to search across this collection of information. As explained above, the application identified only a single public-facing video in which Mr. Richardson anticipated his arrest and requested donations for legal expenses. It did not allege that evidence of the charged offenses would be found in Mr. Richardson's private messages, photographs, friend lists, group memberships, Facebook Marketplace activity, privacy settings, or the other categories demanded. Nor did it explain how any particular category of information related to the alleged violations of 18 U.S.C. §§ 241 or 248(a)(2) or whatever else the government was investigating. The government simply drafted a boilerplate list apparently designed to be as broad as possible.

The January 1 through January 31 temporal limitation does not save the warrant. First, that restriction did not apply to every category of information demanded. Second, a

temporal boundary is only one form of limitation; it does not substitute for a subject-matter restriction connecting the information searched to the suspected offenses.

Because the warrant authorized the disclosure and examination of broad categories of Facebook information unsupported by probable cause and failed to impose a meaningful limitation on the government's selection of information to be seized, it was unconstitutionally overbroad, insufficiently particular, and evidence obtained through its execution must be suppressed.

**3. The Warrant's Operative Seizure Clause Was Facially Deficient Because It Authorized the Seizure of Evidence of Nonexistent "Violations" of 18 U.S.C. § 2703.**

Attachment B was expressly incorporated into the warrant and contained the operative description of the information the government was permitted to seize. Section II, entitled "Information to be Seized by the Government," authorized the seizure of:

> "All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) involving Jerome RICHARDSON January 1, 2026 to January 31, 2026, including, for each user ID identified on Attachment A, information pertaining to the following matters:…"

That clause did not identify the charged offenses but instead purported to authorize seizure of evidence of "violations" of three subsections of the Stored Communications Act. But those provisions do not define criminal offenses at all, let alone the offenses related to this investigation. Those provisions authorize and regulate the government's acquisition of electronic information.

A warrant must particularly describe the things the government is authorized to seize with enough clarity to enable the executing officers to identify the property

authorized for seizure and to distinguish that property from information not authorized. *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007). This limitation must be contained in the warrant itself or in a document properly incorporated into it, it cannot come from the executing officers' understanding of what the government intended to request.

The error occurred at the point where particularity mattered most. Section I described the enormous universe of information Meta was directed to disclose. Section II was supposed to identify the subset the government could examine and seize as evidence of the suspected crimes. Instead, Section II tied that determination to purported violations of the statutory provisions authorizing the government to obtain the information in the first place. The warrant thus confused the legal mechanism used to compel disclosure with the criminal offenses for which evidence was supposedly sought.

As a result, the operative seizure clause imposed no meaningful subject-matter limitation. Information cannot constitute the fruits, evidence, or instrumentalities of aby supposed "violations" of §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), because those provisions do not prohibit the conduct under investigation. The clause therefore gave reviewing agents no legally coherent standard for distinguishing seizable evidence within the broad collection of information Meta was ordered to produce. Agents were to either (1) seize everything, which would be a violation, or (2) determine for themselves what information might relate to some other offense, which would be a violation.

References elsewhere in the application to 18 U.S.C. §§ 241 and 248(a)(2) do not cure the defect. The Fourth Amendment requires particularity in the warrant, not merely

an indication somewhere in the supporting papers of the government's general investigative purpose. Upholding the warrant would require a Court redrafting the warrant by replacing the statutes identified with others, without a basis.

The list of generalized "matters" that followed also did not cure the defect. First, they were introduced by the word "including," indicating that they were nonexclusive examples within authorization to seize "[a]ll information" constituting evidence of the violations of the Stored Communications Act. Second, they were so broad and generic as to give no meaningful guidance.

The government drafted an operative clause that identified no substantive offense and provided no coherent legal boundary for its selection of information from the digital records. The resulting warrant expressly adopted this language, and the resulting search and seizure violated the Fourth Amendment. This requires suppression.

**4. The Government Improperly Used Mr. Richardson's Effort to Fund His Legal Defense as the Basis for a Broad Search of His Facebook Account.**

The Sixth Amendment guarantees an accused the Assistance of Counsel. That right had certainly attached by the date Mr. Richardson was indicted, on January 29, 2026. Indeed, by the time the government applied for this warrant, it knew that Mr. Richardson had been indicted and knew he had counsel representing him.

The application nevertheless relied upon Mr. Richardson's public request for donations to pay his legal expenses as the only account-specific basis for compelling disclosure of expansive categories of his private Facebook information. The indictment did not allege that fundraising formed any part of the charged conduct. The indictment

alleged crimes based on conduct that had already occurred and a series of events that had already concluded by the time the Facebook posts were made. The application did not allege that the donations were proceeds of criminal activity, that the crowdfunding page was used to advance or conceal either charged offense, or that any communication concerning legal expenses constituted evidence of a violation of 18 U.S.C. §§ 241 or 248(a)(2) (or of the Stored Communications Act identified in the application and warrant). No taint team was used.

It was impermissible for the government to use Mr. Richardson's fundraising statement as the basis to search elsewhere for unidentified evidence of some other kind. The breadth of the resulting search created an obvious risk of exposing information concerning Mr. Richardson's efforts to fund and organize his defense. The broad categories of information the government demanded would have swept in supporter and donor information. Nothing in the alleged offenses gave that evidentiary value.

This was not an inadvertent acquisition of potentially protected material. The application affirmatively identified Mr. Richardson's need to pay legal expenses and deliberately used that activity to justify obtaining his information held by Meta. The government knew that the criminal case had commenced, knew that Mr. Richardson was represented, and knew that the activity upon which it relied concerned financing that representation. This was—and is—an intrusion into Mr. Richardson's Sixth Amendment rights. The government may not convert a person exercising their right to counsel into an investigative opportunity, then use the resulting evidence against the accused. This would

permit the government to bolster its prosecution in a way made possible only because Mr. Richardson publicly sought financial assistance to defend himself.

The appropriate remedy is suppression. *See United States v. Morrison*, 449 U.S. 361, 364–66 (1981). The Eighth Circuit has recognized that remedies for governmental intrusion into the attorney-client relationship should be limited, where appropriate, to "denying the government use of the results of its intrusion." *United States v. Sawatzky*, 994 F.3d 919, 923 (8th Cir. 2021) (quoting *United States v. Solomon*, 679 F.2d 1246, 1250 (8th Cir. 1982)). Thus, in the alternative to complete suppression, the Court must alternatively order the government to identify what evidence it received through this process and exclude all evidence related to, or that would infringe upon, Mr. Richardson's Sixth Amendment Rights under the United States Constitution.

## CONCLUSION

For the foregoing reasons, Mr. Richardson maintains all evidence obtain ned pursuant to the Meta/Facebook warrant issued on February 10, 2026, together with any and all derivative evidence, must be suppressed.

Respectfully submitted,

Dated: August 31, 2026

By: *s/ Ian S. Birrell*

Ian S. Birrell, ID 396379
Andrew S. Birrell, ID 0133760
Attorneys for Defendant
Birrell Law Firm, PLLC
333 South 7th Street, Suite 2350
Minneapolis, MN 55402
(612) 238-1939
ian@birrell.law | andy@birrell.law