UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIM. NO. 26-25 (LMP/DLM)

---

United States of America,

Plaintiff,

v.

Jerome Deangelo Richardson (5),

Defendant.

**MOTION TO DISMISS SUPERSEDING INDICTMENT ON FIRST AMENDMENT AND COMMERCE CLAUSE GROUNDS**

---

## INTRODUCTION

This administration is responding to speech critical of it by misreading a statute designed to protect civil rights and co-opting that statute to prosecute those who express political opposition. The Court must dismiss the superseding indictment to protect the core principles this country was founded upon—Freedom of Speech, Freedom of Expression, and Freedom of Association.

Count Two of the superseding indictment charges a violation of 18 U.S.C. § 248(a)(2), which prohibits intentional interference with religious exercise only when accomplished "by force or threat of force or by physical obstruction." Count One charges a conspiracy under 18 U.S.C. § 241 based on the same asserted statutory right and the same alleged conduct. The two counts of the superseding indictment are inseparable (and inseparably flawed). Mr. Richardson moves to dismiss both counts on two independent constitutional grounds. First, the superseding indictment applies § 248 to protected political expression and association in violation of the First Amendment of the United

States Constitution. Second, § 248(a)(2), as applied to the entirely local and noneconomic conduct alleged in the superseding indictment, exceeds Congress's authority under the Commerce Clause of the United States Constitution.

Section 248(a)(2) is unconstitutional both facially and as-applied to Mr. Richardson here due to its First Amendment infringement. The statute is being read to criminalize not only force, true threats, and physical obstruction as narrowly defined; but also to criminalize nonviolent political expression that is disruptive. This step is taken in contravention of settled First Amendment law. If the government's interpretation of that statute is correct then the statute is facially unconstitutional. Regardless, the statute runs afoul of the First Amendment as it is applied to Mr. Richardson. The First Amendment does not authorize the use of force, true threats of violence, or physically barring someone from accessing a place of worship. But the superseding indictment not only fails to allege that Mr. Richardson engaged in any such conduct; its detailed allegations make clear that he did not.

Independently, § 248(a)(2) exceeds Congress's Commerce Clause authority as applied here. The Eighth Circuit has previously upheld the similar § 248(a)(1) section where a reproductive clinic, its employees, and its patients were engaged in commercial activity that was truly interstate. *United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996). The superseding indictment alleges nothing comparable here. It alleges only a local worship service and a local political demonstration. The Commerce Clause does not permit Congress to regulate these activities.

Mr. Richardson incorporates by reference the legal standards, statutory analysis, and paragraph-by-paragraph examination of the superseding indictment contained in the Joint Motion to Dismiss Counts One and Two for Failure to State an Offense (Dkt. 547) as though fully set forth here. He relies specifically on that motion's discussion of § 248(d)(1), true threats, statutory physical obstruction, the absence of an agreement to use prohibited means, and the superseding indictment's description of a wholly local event. Mr. Richardson also incorporates other filings in the record that document public statements by senior Executive Branch officials and the resulting danger that § 248 is being employed to target specific viewpoints, and incorporates whatever other and further documents in the record that are necessary for a full evaluation of this issue.

Both Counts must be dismissed.

## ARGUMENT

### 1. Governing First Amendment Principles

The Eighth Circuit's decision in *United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996), supplies the starting point in analyzing the Freedom of Access to Clinic Entrances (FACE) Act, 18 U.S.C. § 248. Importantly, the FACE Act contains two distinct groups of prohibitions—(a)(1) and (a)(3) relates to reproductive health services and (a)(2) relates to religious worship. While the reproductive health section and the religious worship section are parallel in many ways, they are not identical.

Section (a)(2) specifically criminalizes a person using "force or threat of force or [] physical obstruction" to "injure[], intimidate[] or interfere[] with or attempt[] to [do the

same]" against a person who is "lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship[.]" *Id*.

Some of these terms are specifically defined in the statue in ways that narrow the statute's reach. Specifically:

> The term "interfere with" means to restrict a person's freedom of movement.[…]
>
> The term "intimidate" means to place a person in reasonable apprehension of bodily harm to him-or herself or to another.[…]
>
> [And] The term "physical obstruction" means rendering impassable ingress to or egress from […] a place of religious worship, or rendering passage to or from […a] place of religious worship unreasonably difficult or hazardous.

Sec. 248(e)(2)-(e)(4). Thus, the statute does not purport to criminalize generally obstructive or disruptive conduct, but only those that use "force or threat of force" or the narrowly-defined physical obstruction—and only those who do so in the limited intentional way above.

*Dinwiddie* upheld § 248(a)(1), the parallel reproductive-health provision, as Constitutional. 76 F.3d at 917. The facts of that case were telling. The defendant, Mrs. Dinwiddie, repeatedly directed specific violent threats towards physicians and staff members who worked at a reproductive health clinic. *Id*. She made approximately 50 comments to one of the doctors, Dr. Crist, warning him of "Dr. Gunn [a physician who was killed in 1993 by an opponent of abortion] .... This could happen to you .... He is not in the world anymore .... Whoever sheds man's blood, by man his blood shall be shed ...." *Id*.. She told another staff member "Patty, you have not seen violence yet until you see what we do to you." *Id*. She physically assaulted a maintenance supervisor with a

bullhorn and physically obstructed patients from the clinic. *Id*. at 918. The District Court noted these were not isolated incidents, finding "that Mrs. Dinwiddie is a well-known advocate of the viewpoint that it is appropriate to use lethal force to prevent a doctor from performing abortions." *Id*.

*Dinwiddie* upheld § 248(a)(1), the reproductive-health provision, against both First Amendment and Commerce Clause challenges. It did not address § 248(a)(2), the religious-worship provision. Its First Amendment reasoning informs the analysis in this section. Its Commerce Clause analysis—which depended on the commercial reality of medical service provisions—is addressed separately below.

On the First Amendment question, *Dinwiddie* reasoned that the statute regulated force, true threats, and physical obstruction, not political advocacy. *Id*. at 922–25. The court found this prong was content-neutral rather than content-based and survived intermediate scrutiny. *Id*. And the court specifically held that "threat of force" prosecutions must be limited to true threats because the First Amendment does not allow speech to be prohibited because it is forceful or aggressive. *Id*. at 925. The Circuit found Mrs. Dinwiddie's statements were certainly true threats—they were made "not once or twice, but about 50 times", they came with the context that Mrs. Dinwiddie was a "well-known advocate of the view that it is justifiable to use lethal force against doctors", and they combined with the history that Mrs. Dinwiddie had physically attacked employees and threatened death on others. *Id*. at 925-26.

Subsequent cases have reiterated the First Amendment does not protect "true threats" but does protect speech that is merely forceful, aggressive, disturbing, or

intimidating. *See, e.g.*, *United States v. Hart*, 212 F.3d 1067, 1071-72 (8th Cir. 2000). That constitutional boundary now includes a subjective *mens rea* requirement. In *Counterman v. Colorado*, the Supreme Court held that the First Amendment requires proof that the speaker had at least a reckless understanding of the threatening character of the communication. 600 U.S. 66, 69, 73-82 (2023). A listener's fear is not relevant to whether political speech is a criminal threat.

The statutory text imposes two additional limits independent of caselaw.

The first limitation is that § 248(e) defines some of these terms in ways that diverges from their common usage. *See Dinwiddie*, 76 F.3d at 924 ("The meanings of 'interfere with' and 'physical obstruction' are even clearer in FACE because[…] FACE provides narrow definitions of these terms[.]"). Disrupting, loudness, offensiveness, discomfort, proximity, political opposition, and the subjective perception that a demonstration was "menacing" cannot be used to substitute the specific definitions.

The second limitation is that § 248(d)(1) contains an express rule governing the statute's construction: nothing here "shall be construed" to prohibit protected First Amendment conduct. This is not merely a trial defense but a rule of construction: Congress required Courts to identify expressive acts that are disruptive or unpleasant but remain within the First Amendment's purview and required Courts to filter prosecutions to ensure the statute is appropriately limited. Failure to consider this issue at the pre-trial stage would render this statutory language irrelevant surplusage, which would run afoul of established canons of statutory interpretation. *United States ex rel. Polansky v. Exec.*

*Health Res., Inc.*, 599 U.S. 419, 421 (2023) (affirming the rule of construction that every clause and word of a statute should have meaning).

The First Amendment does not allow the government to impose individual criminal liability from collective political activity. In *NAACP v. Claiborne Hardware Co.*, the Supreme Court rejected imposing individual liability from a protest movement where some engaged in unlawful conduct. 458 U.S. 886, 918–20, 927–29 (1982). Bridging this gap requires, when lawful expression and allegedly unlawful conduct are intermixed in the same collective activity, that the government establish both that the group pursued an unlawful objective and that the individual specifically intended to further that objective. *Id*. at 920. *Healy v. James*, 408 U.S. 169, 185-86 (1972) describes this background as well:

> [T]he Court has consistently disapproved governmental action imposing criminal sanctions … solely because of a citizen's association with an unpopular organization…. In these cases it has been established that 'guilt by association alone, without [establishing] that an individual's association poses the threat feared by the Government,' is an impermissible basis upon which to deny First Amendment rights. … The government has the burden of establishing a knowing affiliation with an organization possessing unlawful aims and goals, and a specific intent to further those illegal aims.

*Id*. (cleaned up).

Protected expression may sometimes provide evidence of motive or intent to commit an independently unlawful act. So it was in *Dinwiddie*, where the Circuit found the following statements made by Mrs. Dinwiddie's were protected under the First Amendment but still relevant to the specific-threat analysis: "I think that abortion is a violent, violent business and that violence begets violence. The Scriptures say that if you

live by the sword, you die by the sword." 76 F.3d at 918 n.2. But here there are two key differences: first, the speech identified in the superseding indictment here is explicitly *non-violent* whereas the speech in *Dinwiddie* was explicitly *violent*. Second, the superseding indictment here identifies the speech as the *conduct constituting the crime itself*. ("*See, e.g.*, Overt Act #25 "While inside the church, defendants… led and/or joined together in various chants, some of which included 'ICE Out!,' 'Hands Up, Don't Shoot!,' and 'Stand Up, Fight Back!'"…).

Thus, while the government may enforce neutral laws against actual violence or true threats, the superseding indictment exceeds the lawful bounds of that enforcement, especially in the context of a group's participation in political speech.

**2. The Statute Is Facially Overbroad In Violation Of the First Amendment**

A statute is facially overbroad invalid when it prohibits a substantial amount of protected expression relative to its legitimate sweep. *United States v. Hansen*, 599 U.S. 762, 770 (2023). Courts should adopt a readily available narrowing construction before invalidating a statute, but they may not rewrite it or accept an enforcement theory that eliminates constitutional boundaries.

Section 248(a)(2) purports to have a legitimate sweep. One can imagine intended prosecutions against those who, say, repeatedly threaten to kill religious leaders; or who chain the doors to a place of worship shut during a service. But the government's construction extends much further and sweeps in (and prohibits) a substantial amount of protected expression. This can be seen just by looking in the superseding indictment:

- political slogans may become "threats of force" if perceived as aggressive;

- standing with a group in an aisle may become "physical obstruction" even when passage remains possible;
- approaching another person to ask political questions may become force or intimidation; and
- participation in a group's organized expression of political ideas may become evidence of a conspiracy.

That construction would cover a substantial and actual range of political expression. The risk is especially pronounced because whether expression is "menacing," "aggressive," or movement is "difficult" would depend largely on the political nature of the protest itself, and the charging official's view of the protest.

That is precisely the reach that *Dinwiddie*, *Hart*, *Counterman*, and § 248(d)(1) foreclose. Section 248(a)(2) prohibits a substantial range of protected expression and is facially overbroad under the government's construction. If, instead, the Court gives the provision its constitutionally required narrow construction, the statute may survive facial review, but the charges against Mr. Richardson cannot.

**3. The Statute Violates the First Amendment As-Applied to Mr. Richardson In The Superseding Indictment**

The superseding indictment lays out exactly the factual allegations against Mr. Richardson (and others) that the government seeks to punish. The Court therefore need not speculate about the government's theory nor its connection to expression and association—it is pled. As to Mr. Richardson, it is extraordinarily limited. Overt Act 21 alleges that, while traveling with Mr. Lemon and Mr. Beute, Mr. Richardson said they needed to "catch up" to others. Overt Act 22 alleges that he thereafter entered the Church. Those allegations establish movement and association.

Overt Act 25 alleges that Mr. Richardson "led and/or joined" political chants, including "ICE Out," "Hands Up, Don't Shoot," and "Stand Up, Fight Back." These are plainly political chants that express *no threat* let alone a *true threat* (a serious expression of intent to commit violence). It alleges that unspecified "hostile and aggressive gestures" caused congregants to perceive the demonstration as threatening. This is insufficient, and, under *Counterman*, irrelevant.

Overt Act 35 alleges that Mr. Richardson, Mr. Lemon, Ms. Fort, and Mr. Beute approached the pastor, stood near him, and "largely surrounded" him while Mr. Lemon asked political questions. Overt Act 37 alleges, without identifying Mr. Richardson, that the pastor asked Mr. Lemon and "other defendants" to leave and "the defendants" did not immediately do so. Even assuming this includes Mr. Richardson, it has nothing to do with § 248(a)(2) (which is, of course, not a trespassing statute). It instead implicates speech.

The superseding indictment's collective allegation in Overt Act 26 is no substitute. It states that the defendants "collectively" occupied "most" of an aisle and rows of chairs and that "some" chanted, yelled, "and/or" obstructed persons attempting to exit or move within the Church. This pleading both fails to identify Mr. Richardson's conduct and affirmatively demonstrates that "obstruction"—as Congress defined—was not present. The superseding indictment affirms ingress and egress was taking place, as it states many of the congregants "fled" and some took "alternative routes in or around the Church."

Thus, applying § 248(a)(2) and § 2 to Mr. Richardson on this theory would not only fail to meet the statutory terms but would punish expression and association that the First Amendment and § 248(d)(1) remove from the statute's reach.

The public record provides further relevant context for the government's construction and reaffirms a clear target: to suppress disfavored political actions.

As documented in Dkt. 554, senior Executive Branch officials publicly condemned the anti-ICE action and demanded prosecution. The President described participants as "agitators" and "anarchists." The Attorney General publicly stated, "We are coming after you if you participated in that," and the Assistant Attorney General leading the Civil Rights Division promised to pursue one alleged participant "to the ends of the Earth." (Dkt. 554 at 5-7). The superseding indictment then placed a clear emphasis on the protest's message: anti-ICE flyers, "resistance," political chants, and questions about Christian nationalism.

Those circumstances do not themselves establish the elements of a constitutional claim, but they underscore why the limitation in § 248(d)(1) against First Amendment protected speech cannot be treated as an afterthought. Government officials may not employ coercive state power to suppress a disfavored viewpoint. See *National Rifle Ass'n of America v. Vullo*, 602 U.S. 175, 188–91 (2024) ("A government official can share her views freely and criticize particular beliefs, and she can do so forcefully in the hopes of persuading others to follow her lead.… What she cannot do, however, is use the power of the State to punish or suppress disfavored expression.").

**4. The Statute Exceeds Congress' Legitimate Commerce Clause Authority**

*Dinwiddie* does not resolve the Commerce Clause issue presented here. It upheld § 248(a)(1) because reproductive-health services were commercial activity and because the particular clinic, its staff, and its patients were involved in interstate commerce. *United*

*States v. Dinwiddie*, 76 F.3d 913, 919-21 (8th Cir. 1996). Planned Parenthood served out-of-state patients, employed out-of-state staff, and operated in a metropolitan area spanning two states; Congress also had compiled evidence that clinic blockades and violence diminished interstate commerce in reproductive-health services. *Id.* None of that reasoning applies to § 248(a)(2) or the allegations here.

The religious-worship provision regulates force, threats, and obstruction directed at persons engaged in worship—noneconomic activity traditionally regulated by the States. The superseding indictment alleges a local church service and local political demonstration. The connection to interstate commerce, if any, is extraordinarily attenuated. Nor does § 248(a)(2) contain a jurisdictional element requiring the government to prove such a connection in an individual case.

*United States v. Morrison*, decided after *Dinwiddie*, reinforces the commerce clause limitations here: Congress may not aggregate the downstream economic consequences of noneconomic criminal conduct to create federal authority over activity that is "truly local." 529 U.S. 598, 617–18 (2000) ("We accordingly reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce. The Constitution requires a distinction between what is truly national and what is truly local"). *Id*. This is, unlike the identified precedent, truly local activity.

**5. The Defects Require Dismissal Of Both Counts**

Count One cannot be separated from Count Two. It alleges that the object of the § 241 conspiracy was to interfere with the exercise of religious freedom "as secured by" §

248. Section 248 therefore defines both the asserted federal right and the conduct from which that right provides protection.

Section 241 cannot be used to evade § 248(d)(1). If Congress expressly preserved protected expressive conduct from FACE, the government cannot repackage the same expression as the object or evidence of a § 241 conspiracy without pleading an agreement to engage in independently unlawful conduct. Otherwise, the conspiracy charge would render irrelevant both the statutory rule of construction and the individualized protections of the First Amendment. Likewise, because Count Two exceeds Congress's Commerce Clause power as applied here, and because Count One as charged depends on the same asserted statutory right, both counts must be dismissed on that basis.

## CONCLUSION

Under the construction and facts that allowed FACE to survive constitutional review in *Dinwiddie*, the superseding indictment cannot stand. The government has unconstitutionally broadened the statute and made Section 248(a)(2) facially overbroad. Count One and Two depend on the same asserted right, the same conduct, and the same constitutionally impermissible attribution of group activity. Both fail for these reasons and the Commerce Clause reasons articulated above. The Court should therefore dismiss Counts One and Two against Mr. Richardson on two independent constitutional grounds

Alternatively, the Court should adopt a narrowing construction limiting § 248(a)(2) to physical force, true threats satisfying *Counterman*, and physical obstruction meeting the definition in § 248(e), and dismiss both counts because the superseding indictment does not allege those means as to Mr. Richardson.

Mr. Richardson requests leave to submit supplemental briefing following the motions hearing and any disclosure or factual development ordered by the Court.

Respectfully submitted,

Dated: August 31, 2026

By: *s/ Ian S. Birrell*

Ian S. Birrell, ID 396379
Andrew S. Birrell, ID 0133760
Attorneys for Defendant
Birrell Law Firm, PLLC
333 South 7th Street, Suite 2350
Minneapolis, MN 55402
(612) 238-1939
ian@birrell.law | andy@birrell.law