UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-cr-25(LMP-DLM)

---

United States of America,

Plaintiff,

**MOTIONS TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF SEARCH AND SEIZURE**

v.

Danielle Andrea Matthias,

Defendant.

---

The Defendant, Ms. Danielle Andrea Matthais by and through her attorneys, Andrew S. Garvis and Amber Johnson, respectfully moves the Court pursuant to Rule 12, Federal Rules of Criminal Procedure, to suppress any physical evidence obtained as a result of any illegal search or seizure, or any such evidence that was derived from said illegal searches or seizures.

Ms. Matthias along with thirty-seven other individuals, has been charged in a Superseding Indictment that alleges a conspiracy against Right of Religious Freedom at Place of Worship in violation of 18 U.S.C. §241 and Injure, Intimidate, and Interfere with Exercise of Right of Religious Freedom at Place of Worship in violation of 18 U.S.C. §248(a)(2), (b), §2(a). [ECF 144, Superseding *Indictment*].

On January 18, 2026, Ms. Matthias and others appeared at Cities Church in St. Paul, entered the church and engaged in lawful protest against one of the pastors, David Easterwood, who also was the head of ICE's regional St. Paul office. The protesters were

protesting that fact that Mr. Easterwood, a pastor at Cities Church and an 'alleged' man of faith, was allowing the systematic brutalization of individuals by employees under his control and that he was directly involved in the Government's, wrongful arrest, seizure, assault, and detention of individuals in the State of Minnesota. The protesters at Cities Church wanted to raise awareness and inform parishioners that a pastor at their church oversaw the ICE attacks on Minnesota residents.[1]

On January 29, 2026, an Indictment was returned against eight individuals. [Dkt. 29, Indictment]. Ms. Matthias was not charged in the original Indictment. On February 26, 2026, a Superseding Indictment was returned adding 31 other defendants.[2] On February 26, 2026, an arrest warrant was issued for Ms. Matthias who was subsequently arrested the following day as she was exiting her car at her residence. At the time of her arrest, she had two phones in her possession; a silver iPhone and a bronze iPhone.

On March 5, 2026, agents applied for a search warrant for both the silver and bronze iPhone. No evidence was presented in either search warrant that Ms. Matthias had a phone in her possession on January 18th, that she used a phone in any manner on January 18th, nor how a phone was an instrumentality of any crime allegedly committed by Ms. Matthais.

Further, the Search Warrants provided no phone numbers that were allegedly associated with either of the phones, the phones were only identified as "silver" and

---

[1] What was unknown at the time but appears to be known now is that Cities Church clergy were actively supporting ICE actions

[2] One defendant wrongly identified as being at the protest was dismissed out.

"bronze" iPhone. Because Agents were not able to extract data from either phone, they applied for a third warrant for iCloud accounts associated with two telephone numbers in an attempt to get any information that may have been backed up on an iCloud account. (Exhibit C, iCloud warrant).

On April 18, 2026, Magistrate Bullard issued a warrant for number 612-227-4343 and 612-432-8831. The application and search warrant indicated that these numbers were associated with Ms. Matthias but no explanation was given as to how agents were able to obtain these numbers and how they relate to either phone.

Ms. Matthias moves to suppress any physical evidence obtained as a result of any illegal search or seizure, or any such evidence that was derived from said illegal searches or seizures. Specifically, Ms. Matthias challenges the three (3) search warrants, the search warrants for the silver iPhone and the bronze iPhone and the iCloud warrant related to 612-227-4343 and 612-432-8831.

**<u>Search Warrants Challenged</u>**

1. Warrant for cell phone examination of Ms. Matthias' silver apple iPhone, signed March 5, 2026, by Magistrate Elsa Bullard (Ex. A);

2. Warrant for cell phone examination of Ms. Matthias' bronze apple iPhone, signed March 5, 2026, by Magistrate Elsa Bullard (Ex. B); and

3. Warrant for iCloud account for phone numbers 612-227-4343; 612- 432-8931signed April 18, 2026 by Magistrate Elsa Bullard (Ex. C)

## I. All Evidence Discovered as a Result of the Search Warrants Should be Suppressed

A search warrant must be based upon a finding that there is probable cause to believe that evidence of a crime will be found in the place searched. *See United States v. Proell,* 485 F.3d 427, 430 (8th Cir. 2007). Probable cause exists when there are "sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008) (citation omitted). "When a magistrate relies solely on an affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014) (citation and internal punctuation omitted). The search and seizure cannot be "broader than can be justified by the probable cause upon which the warrant was based." *United States v. Burkhow*, 2020 WL 589536, at *8 (N.D. Iowa Feb. 6, 2020) (quoting *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013)).

*Nexus is Required*

"In order to support an application for a search warrant, '[t]here must be evidence of a nexus between the contraband and the place to be searched.'" *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2018) (quoting *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016)); *see also United States v. Tellez*, 218 F.3d 547, 550 (8th Cir. 2000)). As further noted in *Johnson*, "[f]actors to consider in determining if a nexus exists include 'the nature of the crime and the reasonable, logical likelihood of finding useful evidence.'") *Id.*

(quoting *Colbert*, 828 F.3d at 726); *see also United States v. Etheridge*, 165 F.3d 655, 657 (8th Cir. 1999)).

*Particularity*

General warrants are forbidden by the Fourth Amendment because the problem posed by general warrants is "of a general, exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). In addition to probable cause, the Fourth Amendment also requires that a search warrant must describe with particularity the place to be searched and the things to be seized. U.S. CONST. amend. IV; FED. R. CRIM. P. 41; *United States v. Davis*, 723 F. Supp. 3d 677, 686 (E.D. Mo. 2022), *aff'd*, 126 F.4th 610 (8th Cir. 2025). The particularity requirement protects against "wide-ranging exploratory searches" unsupported by probable cause. *Davis*, 723 F. Supp. 3d at 686 (citing *United States v. Rosa*, 626 F.3d 56, 61 (2d Cir. 2010)); *see also Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). "Particularity prohibits the government from conducting general, exploratory rummaging of a person's belongings." *United States v. Sigillito*, 759 F.3d 913, 923 (8th Cir. 2014) (quoting *United States v. Saunders*, 957 F.2d 1488, 1491 (8th Cir. 1992)) (internal quotation marks omitted). "To satisfy the particularity requirement of the [F]ourth [A]mendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United States v. Sherman*, 372 F. App'x 668, 675 (8th Cir. 2010) (quoting *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007)).

*Leon Does Not Save the Warrants*

The rationale for the good-faith exception was that "no justification exists to exclude evidence 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.'" *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 920 (1984)).

But an officer's reliance is not absolute. *Leon* identified four situations in which an officer's reliance on a warrant would be unreasonable: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid. *Leon*, 468 U.S. at 923; *Puckett*, 466 F.3d at 630.

*Fruit of the Poisonous Tree*

A violation of the Fourth Amendment triggers exclusion of evidence obtained by way of the violation. *United States v. Davis*, 760 F.3d 901, 903 (8th Cir. 2014). "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree." *United States v. Hastings*, 685 F.3d 724, 728 (8th Cir.2012) (quoting *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011)); *see also Murray v. United States*, 487 U.S. 533, 536–37, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). Under the exclusionary rule, evidence derivative of an illegal search must be

suppressed unless the inevitable discovery or independent source doctrine applies. *United States v. Madrid*, 152 F.3d 1034, 1037–38 (8th Cir. 1998) (discussing inevitable discovery doctrine); *Murray v. United States,* 487 U.S. 533, 537–38 (1988) (discussing independent source doctrine).

**a. <u>The Warrants Relating to Silver and Bronze IPhone were not supported by probable cause and no nexus was shown for phones taken over a month after the incident</u>**

In January 2026 Ms. Levy Armstrong put forth a flyer related to a 'pull up' on January 18, 2026. [Dkt 592, Georgia Fort's Motion to Dismiss]. A pull up is a spontaneous gathering where protesters would come and drive to a particular location or event with the purpose of disruption. Ms. Armstrong had done several 'pull ups' in the past related to the Operation Metro Surge. Community leaders had become increasingly concerned after the murder of Renee Good by ICE agents and the shooting of Mr. Celis-Sosa and the subsequent cover up by ICE. *Id*. Ms. Armstrong's 'pull up' flyer only directed people to gather at the Cub Foods on Midway at January 18th at 10 a.m. *Id*. Nothing more was provided as to where the protest would be or what they would be doing. *Id*. The meeting in the parking lot was video taped by many. *Id*. Ms. Armstrong told the individuals that they were going to do a pull up at a particular location. *Id*. Nothing was stated to those who gathered that this was a church or that they were protesting an ICE captain, David Easterwood, who also was moonlighting as clergy for Cities Church. *Id*. In fact, until people gathered at the church no one knew they were going inside. Once inside Ms. Armstrong raised a question to the Pastor, Jonathan Parnell, as he was beginning his gospel reading. *Id*.

Some parishioners left, others stayed, and protesters engaged in various chants. *Id*. Multiple people and journalists were video and audio recording the event. *Id*. The Church was also live streaming the event. *Id*. Despite the abundance of video documenting the event, at no time was it alleged that Ms. Matthias used a phone in connection with the alleged crime nor that she even had a phone in her possession at the Cub Foods parking lot or at the church.

Ms. Matthias was arrested February 27, 2026, pursuant to an arrest warrant. No search warrant had been issued at that time. During her arrest, as she exited her car, she had two cell phones in her possession: a silver and a bronze iPhone. No other identifying information was noted. See Ex. C, iCloud warrant.

Agents applied for a search warrant for the silver and bronze iPhones. On March 5, 2026, Magistrate Elsa Bullard issued search warrants for the silver and bronze iPhones. Ex. A and B. They applied to search the phones from the time frame of January 1, 2026, to the *present*. *Id*.

*Lack of probable cause*

The Affidavits in support of the search warrants were duplicative and contained the same misinformation. The Affidavits erroneously lumped all the protesters into the same "box":

> As detailed below, the disruptors, including MATTHIAS, obstructed the religious service and intimidated, harassed, oppressed, and terrorized the parishioners, including young children, causing the service to end prematurely and forcing parishioners to flee the church, which resulted in one victim falling and sustaining an injury.

(Compare Affidavits in support of Search Warrants for silver and bronze iPhones).

Ms. Matthias was present at the church and did engage in chanting but there was no evidence that she obstructed, intimidated, harassed, oppressed, or terrorized any parishioners. Ms. Matthias is not noted in any overt act in the indictment related to anything but being present at the pull up meet site and chanting See, [Dkt. 144, Superseding *Indictment* overt Acts, 13 and 25]. The Search warrants generalize Ms. Matthias' conduct. They both note the same thing that she was present and seen chanting along with others in the video. Compare, Affidavits in support of search warrants for silver and bronze iPhones.

What is not alleged in either search warrant is that she engaged in any other conduct associated with blocking exits or stopping individuals from leaving. Moreover, and most importantly, no information is put forth in either search warrant that Ms. Matthias had in her possession, at any point in time, a cell phone.

The application is completely absent of any facts that state that Ms. Matthais had a cell phone in her possession at the parking lot or the church nor that she used a cell phone in any manner before, after, or during the protest on January 18, 2026. Ex. A and B. Despite the fact that law enforcement had been investigating for over a month and obtained hours of video, the only allegations pertaining to Ms. Matthias is that she was present and chanted. Compare Affidavits to Ex. A and B.

*Particularity*

Problematically, the warrants allows for a search for evidence that spanned a time frame that was both before and after January 18, 2026, and did not state with 'particularity' what they were searching for.

This is general warrant with no particularity that impermissibly allows for an exploratory search. The warrant is not sufficiently definite to enable the searching officers to identify the property authorized to be seized. This is a general warrant and fishing expedition that is forbidden by the Fourth Amendment.

Law enforcement provided no information as to why they wanted to search her phones taken over a month later, why they believed there may be evidence of a crime on the particular phones and why the time frame alleged January 1, 2026, to the *present* was relevant to the investigation.

**b. There was no probable cause for the iCloud warrant for number 612-227-4343 and 612-432-8931 and no nexus as to how these were related to a silver and bronze phone taken from Ms. Matthias.**

There was no probable cause or nexus shown related to the numbers allegedly associated with the silver or bronze iPhones. Agents could not get into either phone so they applied for another search warrant related to iCloud accounts related to specific phone numbers. Affidavit in Support of iCloud Search warrant to Exhibit C. Agents applied for a warrant for iCloud account related to two numbers 612-227-4343 and 612-432-8931. *Id*. The caption notes that these numbers relate to Ms. Danielle Matthias. *Id*. However, nothing is set out on in the Affidavit that demonstrates these numbers are tied to Ms. Matthias and more succinctly that these numbers are tied to either phone taken from her on February 27, 2026.

*Nexus*

There is no nexus shown. The Affidavit in support of the Search Warrant is completely silent as to how Agents got the numbers and how they relate to either phone or Ms. Matthias at all.[3] Additionally, nothing was noted in the original search warrants relating to any number associated with either phone taken from Ms. Matthias.

In failing to establish how law enforcement believes the numbers were associated with Ms. Matthias, the affidavit fails to show how there is a nexus between the place to be searched, the phone, and the object of the investigation.

*Good faith does not it*

Because the supporting affidavit here is so lacking in indicia of probable cause and nexus that these numbers are related to Ms. Matthias or the seized iPhones any belief in its existence is entirely unreasonable. A reasonably well-trained officer would have known that the application for the search warrant required specific facts that provided a reasonable belief that Ms. Mathias had phones on her on January 18th, and that the phone numbers listed somehow related to these phones or Ms. Matthias, yet the application in this case fails to provide such information. As such, the good faith exception should not be invoked to save this illegal search.

## CONCLUSION

For the foregoing reasons, Ms. Matthias respectfully asks the Court to grant her motions to suppress evidence derived from the various warrants, and suppress any evidence taken.

[3] As it turns out, one of those numbers is not related to either of the phones taken.

Dated: August 31, 2026

Respectfully submitted,

KOCH & GARVIS, LLC

/s/ *Andrew S. Garvis*
Andrew S. Garvis, Att'y #257989
3109 Hennepin Avenue South
Minneapolis, MN 55408
612-827-8101
andrew@uptownlawyer.com

JOHNSON CRIMINAL DEFENSE

/s/ *Amber Johnson*
Amber Johnson, Att'y #390203
3109 Hennepin Avenue South
Minneapolis, MN 55408
612-889-8808
amber@defendingyoumn.com

*Attorneys for Defendant Matthias*