UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-25 (LMP/DLM)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NEKIMA LEVY ARMSTRONG, et al.,<br><br>Defendants. | JOINT MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT |

Eleven days after an Immigration and Customs Enforcement ("ICE") agent shot Renee Good in the face and killed her during an immigration enforcement action known as Operation Metro Surge, a group of protesters staged a protest at Cities Church in St. Paul, Minnesota where one of the pastors was also the director of the ICE field office in St. Paul. Doc. No. 23-1 at ¶¶ 28-29.

From that peaceful protest, 38 defendants have now been charged in Count One of a Superseding Indictment ("SI") with conspiring, in violation of 18 U.S.C. § 241, to interfere with a right secured and protected by federal law. Specifically, Count One alleges that the defendants conspired "to oppress, threaten, and intimidate multiple persons. . . .in the free exercise and enjoyment of" a right that the SI defines as "the First Amendment right of religious freedom at a place of religious worship, as secured by Title 18, United States Code, Section 248(c)." SI ¶ 6 (Doc. 144).

The SI, however, belies the government's fundamental misunderstanding of the applicable law, and Count One fails to state an offense. Accordingly, the

undersigned defendants move to dismiss[1] Count One pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v).

## FACTS

The relevant facts have previously been described in Doc. No. 491 at 3-5 and fully depicted in Ex. A to that pleading , and those facts are adopted and incorporated herein by reference. In brief, this case stems from a nonviolent protest that took place at Cities Church in St. Paul on January 18, 2026. The protest, held during MLK weekend in honor of the Rev. Dr. Martin Luther King, Jr., who was himself a minister as well as a civil rights leader, was not a protest against Christianity or church doctrine but was, instead, directed against the abusive tactics employed by ICE during Metro Surge. The protest was particularly directed against David Easterbrook, a church pastor who was also the acting director of the ICE field office in St. Paul. Mr. Easterbrook was the principal author of affidavits seeking to justify abuses by ICE which were filed by the government in *Tincher v.* Noem, 25-CV-4669 (KMM/DTS). His statements received prominent media and public attention as a result of the granting of a preliminary injunction in *Tincher* issued on January 16, 2026, only two days prior to the demonstration at Cities Church. To express their frustration and anger following closely on the heels of the

[1] In an email dated August 19, 2026, the Court authorized the defendants to jointly file separate motions asserting different grounds for dismissal. This motion relates only to Count One and is filed on behalf of 33 defendants.

murder of Renee Good at the hands of ICE agents, protesters staged a peaceful demonstration at the church, allegedly disrupting a church service by standing in the aisles and chanting anti-ICE slogans.

The Superseding Indictment charges each of the 38 defendants with two federal felonies. Count One, which is the subject of this motion, charges each defendant with violating 18 U.S.C. § 241, the federal criminal civil rights conspiracy statute.

## DISCUSSION

Dismissal of Count One is warranted on four separate grounds, canvassed here and then discussed more fully below. Although the SI alleges that the right at issue is secured by the FACE Act, the SI also references the First Amendment.

First, as a threshold matter, Count One cannot be read to allege a conspiracy premised on the First Amendment itself because that amendment serves only as a limitation on the power of the government, and thus cannot be violated by private, non-governmental actors such as the defendants.

Second, to the extent Count One charges that the right to religious freedom in a place of worship is secured by the FACE Act, it must be dismissed because the FACE Act secures no such right. The worship provision of the FACE Act (§248(a)(2)) is, itself, unconstitutional, (this issue is raised separately in a Motion to Dismiss Count Two) and, therefore, cannot create or secure any right. Additionally, even if this Court were to determine that the worship provision is constitutional when viewed as a criminal prohibition, it does not necessarily follow that the FACE

Act creates or secures a right. Instead, the FACE Act merely provides a civil remedy for a violation of criminal law (which cannot create a right), and it merely incorporates a pre-existing First Amendment right (which as noted above, is protected only against governmental interference). Moreover, even if the Court were to determine that § 248 creates a new right that can be violated by private actors, it is not a right that Congress intended to be enforceable through § 241.

Third, even if the worship provision of the FACE Act survives constitutional scrutiny and creates a right enforceable under § 241, that right is far more limited than the right charged in the SI.

Finally, the FACE Act right charged in the SI was not clearly established as of January 18, 2026, and, therefore, the defendants lacked fair warning that their conduct constituted a conspiracy to violate civil rights, in violation of § 241.

Dismissal of Count one is warranted on all four of these grounds.

## I. Legal Framework of 18 U.S.C. § 241

The federal statute entitled Conspiracy Against Rights, codified at 18 U.S.C. § 241, is a Reconstruction Era statute originally enacted as part of the Enforcement Act of 1870. Its original aim was to combat Klan violence.[2] The relevant section of § 241 reads, as follows:

---

[2] The Enforcement Act of 1870 was recodified several times before 1948, when it was incorporated into § 241 of the modern code, where it has remained with only minor changes. *See* Appendix to Justice Frankfurter's opinion in *United States*

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same [they shall be punished].

18 U.S.C. § 241.

To establish a violation of § 241, the government has to prove, beyond a reasonable doubt, (1) that a conspiracy or agreement between two or more people existed; (2) that the purpose of the conspiracy was to injure, oppress, threaten, or intimidate one or more persons in the free exercise or enjoyment of a right secured or protected by the Constitution or laws of the United States; and (3) that each defendant willfully joined the conspiracy, intending to make it succeed. *See* EIGHTH CIRCUIT PATTERN JURY INSTRUCTIONS, § 6.18.241, Conspiracy to Deprive a Person of Civil Rights (18 U.S.C. § 241); *United States v. Hewitt*, 999 F.3d 1141, 1146–47 (8th Cir. 2021) (generally discussing elements of § 241 conspiracy).

Most federal conspiracy statutes prohibit defendants from conspiring to violate other criminal laws. For example, 18 U.S.C. § 371, the general conspiracy statute, provides a penalty for conspiring, among other things, "to commit any *offense* against the United States." 18 U.S.C. § 371 (emphasis added). Section § 241

---

*v. Williams* ("*Williams I*"), 341 U.S. 70, 82 (1951) (tracking the history and codification of the statute from 1870 through 1948).

is different. It does not prohibit conspiracies to commit *crimes* but, instead, it criminalizes conspiracies to *violate rights*.

The rights enforceable through § 241 are not itemized in the text of the statute. Section 241 (like its substantive counterpart, 18 U.S.C. § 242[3]) is unusual in that it does not state – at least not with particularity -- the conduct it outlaws. Instead, it incorporates by reference rights defined elsewhere, namely in the Constitution and federal laws. *United States v. Lanier*, 520 U.S. 259, 265 (1997) ("[I]n lieu of describing the specific conduct it forbids, each statute's general terms incorporate constitutional law by reference.").

The Supreme Court has recognized the tension inherent in the fact that § 241 incorporates such a large body of rights. On the one hand, the Court has recognized that Congress intended § 241 to be flexible in order to incorporate "a large body of potentially evolving federal law." *United States v. Kozminski*, 487 U.S. 931, 941 (1988). On the other hand, to ensure fairness to those who are prosecuted, it has recognized that the statute must be interpreted in a manner that "provides a definite standard of guilt." *Id.* The Court has resolved this tension by "construing § 241 to prohibit only intentional interference with rights [that have been] made

[3] Section 242 of Title 18 criminalizes acting under color of law to willfully deprive a person of a right secured or protected by the Constitution or laws of the United States. *See* 18 U.S.C. § 242.

specific either by the express terms of the Federal Constitution or laws or by decisions interpreting them." *Id.*

**A. The First Amendment Creates No Right Enforceable Against Private Actors**

The Superseding Indictment alleges that the defendants conspired to oppress, threaten, or intimidate "multiple persons" exercising (and seeking to exercise) a right secured by section 248(c) of FACE Act. *See* SI ¶ 6 (object of conspiracy). However, the SI, also specifically refers to a "First Amendment right of religious freedom," *see id.* ¶ 2 (stating that the right is "also protected by [18 USC §248]…", thus apparently asserting the right which is the object of the §241 conspiracy is first secured by the Constitution and then *also* by the statute). The First Amendment protection of the right to free exercise of religion, however, does not apply because, by its very terms, the First Amendment only protects that right against encroachment by the government.

Indeed, the text of the First Amendment expressly forbids only the *federal* government from abridging this right. U.S. CONST. amend. I ("*Congress* shall make no law ... prohibiting the free exercise [of religion].") (emphasis added). The Supreme Court subsequently recognized that, through incorporation principles, the due process clause of the Fourteenth Amendment binds state and local governments by the prohibitions of the First Amendment as well. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) ("The fundamental concept of liberty embodied in [the Fourteenth] Amendment embraces the liberties guaranteed by the First Amendment.")

It might seem, at first blush, that once a right is secured by the Constitution, the civil rights conspiracy statute should prohibit anyone (whether or not a state actor) from conspiring to injure, oppress, threaten, or intimidate someone who is exercising that right. The Supreme Court has long held to the contrary. Where a right is guaranteed only against government interference, rather than "against private impairment," a conspiracy to deprive someone of that right can stand only if the conspiracy was undertaken under color of law. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 274 (1993) (interpreting civil analogue of criminal conspiracy statute).

This principle was first established in 1875, in the seminal case of *United States v. Cruikshank*, which arose from the infamous Colfax massacre[4] and marked the first time the Supreme Court construed the scope of the criminal civil rights conspiracy statute. 92 U.S. 542, 543 (1875). *Cruikshank* explains that most constitutional amendments serve only to limit governmental authority and therefore "add[] nothing to the rights of one citizen as against another." *Id.* at 554

[4] The Colfax Massacre occurred "in Louisiana on Easter Sunday 1873. Dozens of black[ men], many unarmed, were slaughtered by a rival band of armed white men." See *McDonald v. City of Chicago*, 561 U.S. 742, 757 (2010). Some put the death toll as high as 150 or more. *See* This Date in History: The Colfax Massacre Occurs, America's Black Holocaust Museum (Apr. 13, 2025), https://www.abhmuseum.org/this-date-in-history-the-colfax-massacre-occurs/.

(discussing Fourteenth Amendment). The Supreme Court has reiterated this more recently, explaining that "a conspiracy to violate First Amendment rights is not made out without proof of state involvement." *United Brotherhood of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 832 (1983); *see also Federer v. Gephardt*, 363 F.3d 754, 758–59 (8th Cir. 2004) (examining § 1985(3), which provides civil remedies for certain civil rights conspiracies, and explaining that a conspiracy to violate rights secured by the First Amendment must involve state or federal action).

In sum, when a right is phrased as a limitation on the power of the government, only those acting under color of law can violate that right or conspire to do so. For example, if police officers or federal agents agreed to injure, oppress, threaten, or intimidate congregants or religious leaders in a place of worship, then prosecution would be possible under a First Amendment theory. But the prosecution here has not alleged—and on the facts could not allege—that the defendants were government actors, so the First Amendment simply does not apply to their conduct. Thus, to the extent that Count One rests upon the First Amendment, it must be dismissed because it is beyond Congress's authority to punish private individuals for violating the First Amendment.

### B. Section 248(c) Creates No Right that Could Form the Basis of a Prosecution Under 18 U.S.§ 241

The Superseding Indictment alleges the FACE Act as a second source of the right described in Count One. *See* SI ¶ 6 (stating that the "right of religious freedom

at a place of religious worship" is "secured by Title 18, United States Code, Section 248(c))").

The FACE Act contains language prohibiting the use of force, threat of force, or physical obstruction (as defined in the statute) to intentionally injure, intimidate, or interfere with "any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." *See* 18 U.S.C. § 248(a)(2). This language is found in a criminal provision of the FACE Act. It is axiomatic, however, that criminal laws do not create or secure rights. *See Kozminski*, 487 U.S. at 940 (explaining that the source of the right to be free from involuntary servitude as charged in § 241 must flow from the Thirteenth Amendment, not from criminal human trafficking laws, because criminal provisions cannot create rights). Criminal laws provide a mechanism for the sovereign to hold individuals accountable for crimes; they do not purport to grant rights to individual victims.

Thus, if the FACE Act creates a right, it is not through its criminal prohibitions but through its civil provisions. Civil statutes *can* create federal rights. *See United States v. Johnson*, 390 U.S. 563, 565–66 (1968) (holding that right to receive service in a restaurant as protected under Civil Rights Act of 1964 creates a right enforceable under 18 U.S.C. § 241).

Subsection (c)(1) of the FACE Act provides a civil cause of action to victims who are "aggrieved by reason of the conduct" criminalized in subsection (a) of the statute—including, as is relevant here, the worship provision of subsection (a)(2).

Essentially, the law provides that a victim of a criminal FACE Act offense may seek damages through a civil suit in federal court.

Thus, the question before this Court is whether the FACE Act, like the Civil Rights Act of 1964, creates a right that can form the basis of a civil rights conspiracy charge. As explained more fully below, § 248(c) does not create a right to religious freedom in a place of worship, let alone one that can be enforced through § 241. First and foremost, the FACE Act cannot supply the § 241 right because the worship provision of the FACE Act is, itself, unconstitutional. Moreover, the worship provision does not define or secure a new right but, by incorporation of a criminal statute, provides a remedy for a right already defined in the First Amendment—which, as explained above—can be enforced only against government actors. Finally, even if the civil provisions of the FACE Act are construed to create a right protected against private interference, that right cannot be used as the basis of a civil rights conspiracy charge because Congress did not intend for people who violate the act to be subject to punishment under § 241, as evidenced by the penalty structure of the FACE Act.

1. The FACE Act does not secure a right because the worship provisions of the Act (§ 248(a)(2)) are unconstitutional.

As explained in the defendants' separate motion to dismiss Count Two, which is fully incorporated herein, the religious freedom provision of the FACE Act, codified at § 248(a)(2), is facially unconstitutional. *See Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 63 (2d Cir. 2021) (noting that "the conduct

[described in § 248(a)(2)] is beyond Congress' Commerce Clause authority to regulate") (Walker, Jr., J., concurring ).

Congress lacked authority to enact the religious worship provisions under either the First or Fourteenth Amendment,[5] which restrict only the power of the government. Congress also lacked authority under the Commerce Clause to enact § 248(a)(2), since the conduct that this provision regulates (interference with the exercise of religion in a place of worship) is purely non-economic activity. Congress made no findings explaining how the activity connected to commerce, and—perhaps most importantly—the statute contains no jurisdictional hook to confine prosecution only to that subset of offenses that do affect commerce. *See United States v. Hari*, 67 F.4th 903, 909 (8th Cir. 2023) (relying heavily on the presence of a jurisdictional provision in upholding the constitutionality of 18 U.S.C. § 247, which prohibits defacing and damaging religious real property and obstruction of free exercise of religious beliefs).

[5] Acting before *Roe v. Wade* was overturned, Congress relied in part on its Fourteenth Amendment authority in enacting the FACE Act. *See, e.g.,* H.R. Conf. Rep. No. 488, 103rd Cong., 2d Sess. 1994, 1994 WL 168882, 1994 U.S.C.C.A.N. 724 (Leg. Hist.) (explaining basis of Congressional authority relied upon to enact the FACE Act). At that time, the Fourteenth Amendment was construed by the Court to protect some abortion rights. Since FACE was enacted, *Roe* has been overturned. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 215 (2022).

Because the worship provision of the FACE Act (§ 248(a)(2)) is unconstitutional, it necessarily follows that a civil provision premised on its violation is likewise unconstitutional. An unconstitutional statute can confer no rights. Because § 248(c) is unconstitutional when used to seek relief for a violation of the worship provision (§ 248(a)(2)), the FACE Act secures no right. Count One must be dismissed along with Count Two.

2. 248(c) does not create or "secure" any right but merely provides a remedy for a criminal offense which, itself, incorporates a preexisting First Amendment right

Even if this Court were to find that the FACE Act's worship provision survives constitutional scrutiny, there is another reason that it creates no right. Section 248(c) nowhere purports to secure a *new* statutory right. Instead, it provides a remedy for the criminal offense defined at (a)(2), which—as a criminal provision—secures no rights. Moreover, the criminal prohibition itself does not purport to create a new right; instead, it incorporates the First Amendment by reference. In other words, the civil provision at §248(c) provides a civil cause of action for the crime of using force, threats of force, or physical obstruction to violate the First Amendment. Of course, as discussed above, a First Amendment right – the only right incorporated into § 248(a)(2)—is secured only against infringement by government actors. If a private person interferes with religious freedom, the First Amendment has not been violated. Because the civil provision of the FACE Act simply provides a remedy for certain violations of a right defined in the criminal law

and the Constitution, it simply does not secure any right at all. It thus cannot form the basis of a § 241 offense.

3. Congress did not intend for any right created by the FACE Act to be enforceable through 18 U.S.C. § 241.

Even if § 248(c) creates a right enforceable against private actors (as opposed to creating a remedy for a violation of existing criminal and/or constitutional law), it does not automatically follow that the right is enforceable through a § 241 prosecution. In some cases, even when a statute creates a right, enforcement of that right may be limited. For example, the Supreme Court has explained that some rights may not be used as the basis for a civil rights action under 42 U.S.C. § 1983. *Medina v. Planned Parenthood S. Atl.,* 606 U.S. 357, 368 (2025) (holding that even when a statute creates a right, "a § 1983 action still may not be available if Congress has displaced § 1983's general cause of action with a more specific remedy"); *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 186 (2023) (holding that "[e]ven if a statutory provision unambiguously secures rights," a defendant can overcome a presumption that it is incorporated into 42 U.S.C. § 1983 (a civil rights statute providing civil remedies that incorporates rights by reference) by showing that Congress expressly stated that such relief was not available or by showing that Congress "created a comprehensive enforcement scheme" incompatible with allowing those statutes to be enforced elsewhere) (internal marks omitted).

There is a strong presumption that any statutory right is incorporated into § 241, since the express language of § 241 prohibits interference with "any right,"

which the Supreme Court has interpreted to mean "all rights." *United States v. Price*, 383 U.S. 787, 800 (1966). Nonetheless, the Supreme Court has found that a right created by Congress is not always enforceable through § 241.

In *United States v. Johnson*, the Supreme Court considered whether individuals could be charged under § 241 for violent interference with the then-newly-created right to be free from discrimination in public accommodations, secured by Title II of the Civil Rights Act of 1964. 390 U.S. at 563. The Supreme Court parsed the language of the Act and concluded that Title II created such a right and that "outside hoodlums" could be charged with a § 241 conspiracy to violate the right, but it also stressed that owners of establishments could *not* be. *Id.* at 566–67.

In distinguishing between the "hoodlums" and the owners, the Court relied on the intent of Congress, explaining that Congress had expressly intended to exempt the latter from criminal punishment. *Id.* at 565 (explaining that "legislative history makes clear that the 'proprietor' or 'owner' is not to be subjected to criminal liability, where he had not had a chance to litigate whether his facilities are subject to the Act"); *see also Fisher v. Shamburg*, 624 F.2d 156, 160–61 (10th Cir. 1980) (explaining *Johnson*). Instead, the Court determined that Congress intended for the injunctive relief outlined in Title II to be the exclusive remedy for violations of the act committed by proprietors and owners. *Id.*

In other words, the intent of Congress controlled whether the Civil Rights Act of 1964 could serve as the basis for a § 241 prosecution. Here too, the question of

whether the FACE Act creates a right that can be enforced through the civil rights conspiracy statute is dependent upon what Congress intended when it enacted the FACE Act. Congress provided a comprehensive penalty structure covering civil and criminal penalties for violations of the FACE Act. In that comprehensive structure, Congress chose not to provide penalties for conspiracy, even though it knew that, in the reproductive health context (the context in which the legislation arose), members of Operation Rescue and similar groups regularly participated in highly coordinated efforts to blockade clinics. Given that the actions of Operation Rescue and similar groups provided the incentive for the statute, it is reasonable to assume that the lack of a conspiracy penalty in the FACE Act was no oversight, and instead reflects a conscious decision by Congress that a conspiracy should not be dealt with differently, for purposes of punishment, than a substantive violation.

Specifically, Congress determined that the penalty for a first offense for non-violent physical obstruction should be only a Class B misdemeanor, with a cap set at six months' imprisonment. Given this extremely minor penalty, it is inconceivable that Congress intended for the same defendants whose conduct Congress considered a Class B misdemeanor to face up to ten years' imprisonment if they happened to agree with others to engage in the conduct. To hold otherwise (as the Eleventh Circuit did, in the context of anti-abortion violence) would reap (does reap, in the Eleventh Circuit) the absurd result that a person who clearly agreed to peacefully blockade a clinic (or church) but who never attended the event and therefore never participated in any blockade could be punished by up to ten years in

prison while a person who actually blockaded the facility—for example, by wedging himself into a doorway for hours, preventing anyone from entering or exiting the building—but who did not participate in the conspiracy, could receive only 6 months' imprisonment.

In addition to avoiding this absurd result, finding that the FACE Act cannot form the basis of a civil rights conspiracy charge is also consistent with the rule of lenity, which dictates that courts proceed with caution in reading rights into its provisions when the statute is ambiguous about whether such rights exist. *United States v. Wendt*, 168 F.4th 1068, 1077 (8th Cir. 2026) (holding that "the rule of lenity is a junior version of the vagueness doctrine that ensures fair warning by resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered" (internal marks omitted)).[6]

Notwithstanding these arguments, the Eleventh Circuit recently determined that the right created by §§ 248(c) and 248(a)(1) of the FACE Act (a reproductive-

[6] The FACE Act's rules of construction state that the Act should not be read to provide "exclusive criminal penalties or civil remedies with respect to the conduct prohibited by this section, or to preempt State or local laws that may provide such penalties or remedies." *See* 18 U.S.C. § 248(d)(3). The defendants do not claim that the FACE Act creates an exclusive remedy. When warranted by the facts, a conspiracy to violate the FACE Act could be charged using the general conspiracy statute, 18 U.S.C. § 371 (which limits penalties for conspiracies to commit misdemeanors to the penalty for the relevant misdemeanor), and, where warranted by the facts, state officials could bring charges for trespass or disturbing the peace. Those other remedies are not preempted. Nevertheless, Congress, by providing a detailed sentencing schedule for violations of the FACE Act, made clear its intent that the statute not be enforceable through § 241.

rights section of the Act) were incorporated into § 241. *United States v. Oropesa*, 159 F.4th 912, 918 (11th Cir. 2025). This one, out-of-circuit decision is unpersuasive on this issue and inconsistent with Supreme Court's decision in *Johnson*, discussed above.

The Eleventh Circuit based its analysis on distinctions it found between the *criminal* law, § 241, and its *civil* counterpart, 42 U.S.C § 1983, reasoning that once a court determines that a statute creates a right, that right is automatically incorporated into criminal law through § 241, even though prudential limitations might counsel against such incorporation in the *civil* [§ 1983] context. *Id.* The Eleventh Circuit stressed that the Supreme Court had limited the reach of § 1983 "based [o]n the presumption against implied private causes of action," and held that such a consideration was not apposite to evaluating § 241. *Id.* (explaining that "th[is] principle has little bearing in the criminal context, and even less here, as the Supreme Court has told us in no uncertain terms that Section 241, from original enactment through subsequent codifications, was intended to deal with conspiracies to interfere with Federal rights, and with all Federal rights.") (internal marks omitted).

But this reasoning is flawed. Of course, Congress cannot limit the scope of the Constitution itself, so if the Constitution creates a right, it must be enforceable under § 241. But statutory rights are different. If Congress has the power to create a right in the first instance, it also has the power to limit that right in any way it sees fit (so long as the resulting statute does not, itself, violate the Constitution).

That includes deciding, when creating the right, that it should not serve as the basis for a criminal civil rights offense. A contrary holding would chill Congress from expanding civil rights any time it concluded that it did not want individuals who violated the new right to be subject to criminal liability.

### C. If § 248(c) Creates a Right Enforceable Under § 241, that Right Is Narrower Than the One Charged in Count One

Even if the worship provision of the FACE Act is constitutional *and* if the civil provisions of the statute (by providing a private right of action for a violation of the worship provision) secures a right enforceable against private persons, that right is far narrower than the right set forth in the Superseding Indictment. Contrary to the charges in the Superseding Indictment, the FACE Act does not create a right to the free exercise of "the First Amendment right of religious freedom at a place of religious worship." SI ¶ 6. To the contrary, if § 248(c) creates any right at all, it is the far narrower right to be free from force, threat, or physical obstruction intended to interfere with the First Amendment right of religious freedom at a place of religious worship. This more limited right is not incorporated into the charging language of Count One.

If the FACE Act's worship provision establishes a right that can be incorporated into § 241, then the *entirety* of the worship provision's language must be imported, not just select aspects of it. The government cannot define the right by cherry picking some of the rights-creating language while failing to include other language. The worship provision of the FACE Act does not, as the Superseding Indictment suggests, prohibit general interference with "the right of free exercise of

the First Amendment right of religious freedom at a place of religious worship." And the Superseding Indictment fails to allege the right actually specified by § 248(c).

This is not a technical pleading issue but, instead, one that renders the Superseding Indictment fatally defective. To be sufficient, an indictment must "contain[] all of the essential elements of the offense charged." *United States v. Palmer*, 917 F.3d 1035, 1039 (8th Cir. 2019). Here, because the Superseding Indictment specifies an incorrect, non-existent right, it is missing an element.

Although the Superseding Indictment tracks the statutory language of § 241, that is not enough here. Courts have recognized that merely tracking the language of the charged statute is insufficient when those words do not "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

When a statute, like § 241, incorporates or adopts legal requirements from other statutes, the adopted phrases or concepts must be described in the indictment with particularity. For example, when a federal criminal statute requires proof that a person has acted "contrary to law," the indictment must specify what law the defendant acted contrary to. *See United States v. Teh*, 535 F.3d 511, 516 (6th Cir. 2008) (citing *Keck v. United States*, 172 U.S. 434, 437–38 (1899)); *Jarl v. United States*, 19 F.2d 891, 893 (8th Cir. 1927) (noting that "the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of

the exact offense intended to be charged"); *see also United States v. Thompson*, 141 F. Supp. 3d 188, 195 (E.D.N.Y. 2015) (citing cases).

Similarly, the Supreme Court has long held that a civil rights conspiracy indictment is defective when it fails to particularly identify the right that the object of the civil rights conspiracy. *Cruikshank*, 92 U.S. at 557, 559 (explaining that a charge that the conspirators acted intentionally to hinder victims in the "free exercise and enjoyment of . . . all . . . rights and privileges granted and secured to them by the constitution and laws of the United States" was insufficient as it did not define the rights at issue with the "certainty and precision" required by the rules of criminal pleading.).

The upshot of this case law is that, whenever a defendant is charged with violating § 241, the indictment must not only track the language of § 241 but must also track the language of the constitutional or statutory provision creating the right at issue. Here, the Superseding Indictment has referenced a supposed right far broader than any right supported by the FACE Act. Thus, the Superseding Indictment is missing an element, namely, the identification of a right secured by the Constitution or federal law. The "right" set forth is neither a First Amendment right nor one arguably secured by the FACE Act. It is one entirely invented by the government. Because Count One fails to enumerate every element of a § 241 offense, it must be dismissed.

**D. If 248(c) Creates a Right, It Was Not Clearly Established in January 2026 that the Alleged Conduct Violated the Right**

Even if this Court finds that the FACE Act creates a right that can be used as the basis of a civil rights conspiracy charge, and further finds that the right is accurately identified in the Superseding Indictment, this Court should nonetheless dismiss Count One because that right was not clearly established at the time of the defendants' alleged conduct.

The Supreme Court has emphasized, in analyzing the criminal civil rights statutes, that criminal liability attaches only if case law provides the defendant with "fair warning" that his actions violated a right protected by the Constitution or federal law. *Lanier*, 520 U.S. at 267. This requirement emanates from the due process clause. *Id.* The standard for determining the adequacy of that warning is identical to the standard for determining whether a constitutional right was clearly established in civil litigation under the qualified immunity standards of § 1983. *See Hope v. Pelzer*, 536 U.S. 730, 739-740 (2002) (citing *Lanier*, 520 U.S. at 263, 269). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267.

Qualified immunity shields public officials from liability for civil damages if their conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Intervarsity Christian Fellowship/USA v. Univ. of Iowa*, 5 F.4th 855, 863 (8th Cir. 2021). It protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

Although the defendants are not public officials, in the criminal context (and specifically in the context of § 241) the courts have recognized that the same protection is warranted by the fair warning doctrine and thus is applicable to both private persons and officials. *Lanier*, 520 U.S. at 265 (explaining that the principle of fair warning is that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed" (emphasis added) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964))).

The fair warning doctrine serves to protect defendants from being subject to a vague law, resolve ambiguity in a criminal defendant's favor, and prevent courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope. *Lanier*, 520 U.S. at 259, 266–67. This protection is particularly important in evaluating a statute like § 241, which does not, by its text, set forth the conduct it violates, but instead incorporates rights defined elsewhere. There is thus a greater danger with respect to § 241 that a prosecutor may include a charge premised on a novel construction of a constitutional or statutory provision.

When evaluating whether a defendant had fair warning that his or her conduct violated a right, courts have cautioned that the right may not be defined at a "high level of generality." *Ashcroft*, 563 U.S. at 742 ("We have repeatedly told courts. . . not to define clearly established law at a high level of generality."). The Supreme Court has explained, for example, that while it is clear that the Fourth Amendment prohibits unreasonable searches or seizures, this broad principle "is of

little help in determining whether the violative nature of particular conduct is clearly established." *Id.* (internal quotations and citations omitted); *Dantzler v. Baldwin*, 133 F.4th 833, 850 (8th Cir. 2025) (explaining that "[w]e must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced").

Thus, even if this Court determines—in the first judicial decision addressing this issue—that § 248(a)(2), the worship provision, secures *some* right, the question it must then answer is whether a reasonable person would have been on notice, prior to the Court's ruling, that that right existed *and* that the precise conduct that the defendants are alleged to have engaged in (i.e., chanting, shouting, and whistle-blowing, or newsgathering and reporting about these events, during a church service while standing in church aisles and outside the church) violated that right. The answer to that question is a resounding "No."

There are at least three reasons that the defendants lacked fair warning. First, as noted elsewhere, there is a serious question whether § 248(a)(2) is itself constitutional. Neither the Supreme Court nor the Eighth Circuit (nor any other circuit) has examined the constitutionality of this provision. Although two out-of-circuit district courts have held it to be constitutional, both acknowledged that the issue of whether the statute is supported by the commerce clause is a close one. *See New Beginnings Ministries v. George*, No. 2:15-CV-2781, 2018 WL 11378829, at *8 (S.D. Ohio Sept. 28, 2018) (upholding statute under Commerce Clause, but noting,

"although it is not the strongest of connections, it survives the constitutional challenge."); *Zhang Jingrong v. Chinese Anti-Cult World All.*, 314 F. Supp. 3d 420, 442–443 (E.D.N.Y. 2018) (holding that § 248(a)(2) is constitutional under the Commerce Clause, but certifying interlocutory appeal on the ground that "[t]here is a substantial question" as to its constitutionality). And the second of these cases, *Jingrong*, was reversed, with one appellate judge concurring to opine that § 248(a)(2) is not constitutional under the Commerce Clause. *Jingrong*, 16 F.4th at 63 (Walker, Jr., J., concurring). Given this state of the law, no reasonable person could have known with any level of confidence that § 248(a)(2) of the FACE Act was constitutional, much less that the FACE Act created a relevant right that they could be charged with violating.

Second, for the reasons discussed above, no reasonable person could have understood that § 248(c) created any sort of "right of religious freedom at a place of religious worship" that could serve as the basis for a § 241 prosecution against private actors. Neither the Supreme Court nor the Eighth Circuit has found that § 248(c) creates a right, and no court anywhere has specifically addressed whether the worship provision (incorporated through the civil provision) does so, let alone determined the exact scope of any such right. Despite the Eleventh Circuit decision in *Oropesa* that a health-care provision of the FACE Act did create a right enforceable through § 241, that one out-of-circuit case cannot render this right "clearly established" in the Eighth Circuit. This is particularly true because *Oropesa* addressed a different provision of the FACE Act—one that does not have

the constitutional and statutory ambiguities discussed at length herein with respect to the worship provision at issue in this case.

Finally, even assuming that the FACE Act creates a right to be free from private interference (through force, threat of force, or physical obstruction) with the right of religious freedom in a place of religious worship, it is not clearly established that the precise actions of the defendants (standing, yelling, and using chants and whistles to disrupt a service, or newsgathering and reporting about such conduct) violate that right. This is especially true because the defendants' conduct on January 18 was inexorably wrapped up in their own First Amendment rights to free speech, free press, and to petition the government for redress of grievance by verbally confronting a government official. Courts have recognized that they must apply due process protections with particular vigilance whenever a prosecution is brought "in a way that might interfere with the right of free speech or of association." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) (discussing vagueness doctrine).

Here, the defendants were engaged in political speech, objecting to policies and practices of the federal government and verbally confronting a public official. In other words, they were petitioning their government for redress of grievance, or they were engaged in journalistic activities covering the event as members of the press. Such conduct is entitled to the highest degree of First Amendment protection. *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) ("Speech on matters of public concern is at the heart of the First Amendment's protection. . . . Accordingly, speech

on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection.") (internal marks omitted); *Connick v. Myers*, 461 U.S. 138, 145 (1983) (holding that the First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people"); *Noon v. City of Platte Woods*, 94 F.4th 759, 766 (8th Cir. 2024) ("no right is more clearly established than freedom of speech [and] ... speech alleging illegal misconduct by public officials occupies the 'highest rung of First Amendment hierarchy'" (quoting *Hall v. Mo. Hwy. & Transp. Comm'n*, 235 F.3d 1065, 1068 (8th Cir. 2000)). That is because "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964).

Section 248(d)(1) is a rule of construction that expressly forbids prosecution of those engaged in First Amendment protected speech. When the defendants' alleged conduct is examined in light of First Amendment principles and the rule of construction, it is clear that that conduct falls within the rule of construction and that, *a fortiori,* they have not violated the FACE Act at all. But, at a minimum, it is even more clear that, given the First Amendment protections they enjoy, they had no fair warning that their conduct could lead to a prosecution for violating the civil rights conspiracy statute.

If this Court agrees that even one of the various challenges asserted by the defendants to this prosecution—e.g., whether the worship provision is constitutional; whether § 248 creates a new right; whether that right is enforceable

against private actors through a criminal conspiracy prosecution; whether the SI has correctly defined the scope of any § 248 right; and whether the rule of construction prohibits prosecution entirely for the conduct at issue here—raises a genuine issue, then the Court must also find that the "right" asserted in Count One was not sufficiently "clearly established" to provide fair warning to the defendant. Accordingly, Count One must be dismissed.

## CONCLUSION

Count One purports to charge a conspiracy to violate a right created by operation of the civil provisions of the FACE Act. But these civil provisions cannot create a right because the worship provision of the FACE Act is itself unconstitutional. Moreover, contrary to the assertion in the SI, the civil provision does not secure any right, as it merely provides a remedy for violation of a criminal law (that itself cannot be the source of a right) and outlaws violent interference with a right already secured by the First Amendment (which does not limit the power of non-government actors like the defendants). Additionally, by creating a lenient penalty structure, Congress made clear that it did not intend for violations of § 248 to be charged through the civil rights conspiracy statute. The government cannot allege that Count One is supported directly by the First Amendment itself as that amendment provides no right enforceable against private actors.

Moreover, any right created by § 241 is far narrower than the right charged in Count One. As a result, Count One is defective because it fails to include all the elements of the offense. Finally, Count One must be dismissed because the

defendants did not have fair warning that their core First Amendment activities infringed on any federally protected right or violated any criminal statute.

For all these reasons, the defendants respectfully request that this Court dismiss Count One.

Dated: August 31 2026

Respectfully submitted,

**LAW OFFICES OF ROBERT D. RICHMAN, LLC**
s/ Robert D. Richman
Robert D. Richman, Reg. No. 226142
P.O. Box 16643
St. Louis Park, MN 55416
(651) 278-4987
robert@rdrichmanlaw.com

Attorneys for Defendant Trahern Jeen Crews (7)

---

**LAW OFFICE OF JORDAN S. KUSHNER**
s/ Jordan S. Kushner
Jordan S. Kushner, Reg. No. 219307
431 South 7th Street, Suite 2446
Minneapolis, MN 55415
(612) 288-0545
jskushner@gmail.com

Attorneys for Defendant Nekima Levy Armstrong (1)

---

**THE JAB FIRM**
s/ Jill A. Brisbois
Jill A. Brisbois, Reg. No. 0345477
150 South 5th Street, Suite 1850
Minneapolis, MN 55402
(651) 209-7797
jill@thejabfirm.com

Attorneys for Defendant Chauntyll Louisa Allen (2)

---

**OFFICE OF THE FEDERAL DEFENDER**
s/ Aaron J. Morrison
Aaron J. Morrison, Reg. No. 341241
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5858
aaron_morrison@fd.org

Attorneys for Defendant William Scott Kelly (3)

**BIRRELL LAW FIRM, PLLC**
s/ Ian S. Birrell
Ian S. Birrell, Reg. No. 0396379
Andrew S. Birrell, Reg. No. 133760
333 South 7th Street, Suite 2350
Minneapolis, MN 55402
(952) 356-2393
ian@birrell.law
andy@birrell.law

Attorneys for Defendant Jerome Deangelo Richardson (5)

---

**CAPITOL CITY LAW GROUP, LLC**
s/ A.L. Brown
A. L. Brown (# 331909)
287 East Sixth Street, Suite 20
Saint Paul, Minnesota 55101
(651) 705-8580
a.l.brown@cclawg.com

Attorneys for Defendant Jamael Lydell Lundy (6)

---

**GAD & GAD LAW OFFICES LLP**
s/ Sarah R. Gad
Sarah R. Gad, Reg. No. 0403328
8 E 25th Street
Minneapolis, MN 55402
(612) 512-1870
sarah@gadlawoffice.com

Attorneys for Defendant Ian Davis Austin (9)

---

**KENNETH UBONG UDOIBOK, PA**
s/ Kenneth U. Udoibok
Kenneth U. Udoibok, Reg. No. 0262523
Flour Exchange Building, Suite 5010
310 Fourth Ave S.
Minneapolis, MN 55415
(612) 808-6031
k@kenulaw.com

Attorneys for Defendant Aziza M. Aboud (10)

---

**GLENN P. BRUDER**
s/ Glenn P. Bruder
Glenn P. Bruder, Reg. No. 148878
9531 West 78th Street
Suite 210
Eden Prairie, MN 55344
(952) 831-3174

Attorneys for Defendant Max Richard Adamson (11)

---

**DEVORE LAW OFFICE, P.A.**
s/ Kevin DeVore
Kevin W. DeVore, Reg. No. 0267302
724 Bielenberg Drive, Ste 110
Woodbury, MN 55125
(651) 435-6500
kevin@devorelawoffice.com

Attorneys for Defendant Ezra Chaim Pye Blumenfeld (13)

---

**LEACH LAW OFFICE**
s/ Patrick G. Leach
Patrick G. Leach, Reg. No. 0286825
8961 Aztec Drive
Eden Prairie, MN 55347
(763) 220-6164
pgl@leachlawoffice.com

Attorneys for Defendant Kelly Ann Carey (15)

**DE LEÓN & NESTOR, LLC**

s/ Bruce D. Nestor
Bruce D. Nestor, Reg. No. 0318024
3547 Cedar Avenue South
Minneapolis, MN 55407
(612) 659-9019
nestor@denestlaw.com

Attorneys for Defendant Monique Cullars-Doty (16)

---

**MELVIN R. WELCH**
s/ Melvin R. Welch
Melvin R. Welch, Reg. No. 0387750
Commerce at the Crossings Bldg
250 South Second Street, Suite 205
Minneapolis, MN 55401
(612) 741-3272
mel@melvinwelchlaw.com

Attorneys for Defendant Tiffany Lynn Dunlap (17)

---

**LAW OFFICE OF STEVEN J. WRIGHT, LLC**
s/ Steven J. Wright
Steven J. Wright, Reg. No. 387336
331 Second Ave S, Suite 705
Minneapolis, MN 55401
(612) 669-8280
stevejameswright@gmail.com

Attorneys for Defendant Andrew Edwards (18)

---

**CHARLES F. CLIPPERT**
s/ Charles F. Clippert
Charles F. Clippert, Reg. No. 248848
101 East Fifth Street, Suite 1500
St. Paul, MN 55101
(651) 300-4109
charlie@clippertlaw.com

Attorneys for Defendant Rachel Goligoski (19)

**FORSGREN FISHER MCCALMONT DEMAREA TYSVER LLP**
s/ Caitlinrose H. Fisher
Caitlinrose H. Fisher, Reg. No. 0398358

1500 Capella Tower
225 South 6th Street
Minneapolis, MN 55402
(612) 474-3300
cfisher@forsgrenfisher.com

Attorneys for Defendant Ariel Hauptman (21)

---

**LOTUS LEGAL PLLC**
s/ Caroline H. Brunkow
Caroline H. Brunkow, Reg. No. 0398936
331 Second Ave South, Ste 420
Minneapolis, MN 55401
(612) 293-6963
cari@lotuslegalpllc.com

Attorneys for Defendant Krista Erin Hogan (22)

---

**KOCH AND GARVIS, LLC**
s/ Andrew S. Garvis
Andrew S. Garvis, Reg. No. 257989
3109 Hennepin Avenue South
Minneapolis, MN 55408
(612) 827-8101
andrew@uptownlawyer.com

Attorneys for Defendant Danielle Andrea Matthias (24)

---

**F. CLAYTON TYLER, P.A.**
s/ Karen Mohrlant
Karen E. Mohrlant, Reg. No. 388093
331 Second Avenue South, Suite 230
Minneapolis, MN 55401
(612) 333-7309
kmohrlant@fctyler.com

Attorneys for Defendant Catie Anne Michaelson (25)

**JOHNSON & GREENBERG PLLP**
s/ Lee R. Johnson
Lee R. Johnson, Reg. No. 0189935
5775 Wayzata Boulevard, Suite 700
St. Louis Park, MN 55416

(952) 545-1621
lrjohnsonslp@gmail.com

Attorneys for Defendant Eric Ryan Michaelson (26)

---

**LAW OFFICE OF ROBERT A. LENGELING, PLLC**
s/ Robert A. Lengeling
Robert A. Lengeling, Reg. No. 304165
310 Fourth Avenue South, Suite 1050
Minneapolis, MN 55415
(612) 963-1555
robert@lengelinglaw.com

Attorneys for Defendant David Okar (27)

---

**LAW OFFICES OF THOMAS H. SHIAH, LTD.**
s/ Thomas H. Shiah
Thomas H. Shiah, Reg. No. 100365
331 Second Avenue South, Ste 705
Minneapolis, MN 55401
(612) 338-0066
ths@tomshiah.com

Attorneys for Defendant Jarmel Perry (28)

---

**BEST & FLANAGAN LLP**
s/ Amy S. Conners
Amy S. Conners, Reg. No. 0387375
60 South 6th Street, Suite 2700
Minneapolis, MN 55402
(612) 349-5665
aconners@bestlaw.com

Attorneys for Defendant Cheryl Ann Persigehl (29)

**GOETZ & ECKLAND P.A.**
s/ Frederick J. Goetz
FREDERICK J. GOETZ
Attorney Registration No. 185425
615 1st Avenue NE, Suite 425
Minneapolis, MN 55413
(612) 874-1552
FGoetz@goetzeckland.com

Attorneys for Defendant Emmar Monike Pineda-Moreno (30)

---

**RINGSTROM DEKREY PLLP**
s/ Dane DeKrey
Dane DeKrey, Reg. No. 0397334
814 Center Avenue, Suite 5
Moorhead, MN 56560
(218) 284-0484
dane@ringstromdekrey.com

Attorneys for Defendant Spencer Michael Rodriguez-Bocanegra (31)

---

**ARNESON LAW OFFICE PLLC**
s/ Wyatt Arneson
Wyatt Arneson, Reg. No. 0392071
1025 Grain Exchange Building
400 South 4th Street
Minneapolis, MN 55415
(612) 746-1188
wyatt@arnesonlawllc.com

Attorneys for Defendant Katherine Shaw (32)

---

**GERDTS LAW, PLLC**
s/ Daniel L. Gerdts
Daniel L. Gerdts, Reg. No. 207329
331 Second Avenue South, Suite 705
Minneapolis, MN 55401
(612) 800-5086
daniel@danielgerdtslaw.com

Attorneys for Defendant Satara Diann Strong-Allen (33)

**SIEBEN & COTTER, PLLC**
s/ Patrick L. Cotter
Patrick L. Cotter, Reg. No. 0319120
105 Hardman Court, Suite 110
South St. Paul, MN 55075
(651) 455-1555
patrick@siebencotterlaw.com

Attorneys for Defendant Charles Swenson (34)

**SAPIENTIA LAW GROUP, PLLC**
s/ Robin M. Wolpert
Robin M. Wolpert, Reg. No. 0310219
120 South Sixth Street, Suite 100
Minneapolis, MN 55402
(612) 756-7100
robinw@sapientialaw.com

Attorneys for Defendant Robyn Elise Swenson (35)

**DORSEY & WHITNEY LLP**
s/ Meredith LaVine
John Marti, Reg. No. 0388393
Meredith LaVine, Reg. No. 0506725
Ashley Repp, Reg. No. 0399661
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600
marti.john@dorsey.com
lavine.meredith@dorsey.com
repp.ashley@dorsey.com

Attorneys for Defendant Thomas Matthew Tier (36)

**JAMES M. VENTURA**
s/ James M. Ventura
James M. Ventura, Reg. No. 147217
1000 Twelve Oaks Center Drive, Suite 100
Wayzata, MN 55391
(952) 473-8064
jventura@jamesventuralaw.com

Attorneys for Defendant Lee Elizabeth Wiedeman Tuggle (37)

**LANGERT LAW, LLC**
s/ Maggie G. Langert
Maggie G. Langert, Reg. No. 0308316
724 Bielenberg Drive #54
Woodbury, MN 55125
(612) 470-4810
maggie@langertlaw.com

Attorneys for Defendant John Vergin (38)

---

**WOLD LAW**
s/ Peter B. Wold
Peter B. Wold, Reg. No. 0118382
331 2nd Avenue South, Suite 705
Minneapolis, MN 55401
(612) 341-2525
pwold@wold-law.com

Attorneys for Defendant Mark D. Weinfurter (39)

---

## CERTIFICATE OF COMPLIANCE

This motion was prepared using Microsoft 365 Word. According to the word count done using that program, this brief contains 7,488 words, excluding the case caption and signature block. In addition, through email correspondence, the Court granted permission to file separate motions to dismiss on behalf of these 33 defendants.

Accordingly, this motion complies with the Court's Case Management Order dated August 12, 2026 and Loc. R. 7.1(f).

Dated: August 31, 2026

*s/ Robert D. Richman*