**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**Criminal No. 26-25 (28) (LMP/DLM)**

United States of America,

Plaintiff,

vs.

Jarmel James Perry,

Defendant.

**DEFENDANT'S PRETRIAL MOTION TO SUPPRESS EVIDENCE OF UNLAWFUL SEARCH**

Jarmel James Perry, through counsel, respectfully moves the Court, pursuant to Rule 12 of the Federal Rules of Criminal Procedure, to suppress any evidence of searches and seizures that occurred on or about February 27, 2026, and thereafter. Specifically, Mr. Perry moves to suppress all evidence obtained from the seizure of his Apple iPhone at the time of his arrest, and from the subsequent forensic search of that device.

## FACTUAL BACKGROUND

Mr. Perry, along with thirty-eight other individuals, is charged in a Superseding Indictment alleging a conspiracy against the right of religious freedom at a place of worship in violation of 18 U.S.C. § 241 and injuring, intimidating, and interfering with the exercise of the right of religious freedom at a place of worship in violation of 18 U.S.C. § 248(a)(2). [Doc. 144, Superseding Indictment.] The charges arose out of a protest at Cities Church, 1524 Summit Avenue, St. Paul, Minnesota, on January 18, 2026. According to the government's affidavit, the group believed that one of the church's pastors was a federal immigration officer and gathered to protest that association. (Ex. A, Aff. ¶ 15.)

On February 26, 2026, a Superseding Indictment was returned and a federal arrest warrant issued for Mr. Perry. On February 27, 2026, at approximately 7:21 a.m., agents of Homeland Security Investigations ("HSI") arrested Mr. Perry pursuant to that warrant while he was in his vehicle in the parking lot at 1510 Laurel Avenue West, Minneapolis. At the time of his arrest, Mr. Perry had in his possession one light blue/silver Apple iPhone in a clear case with black edges (the "SUBJECT DEVICE"). Agents seized the device without a warrant, and HSI has maintained possession of it since. (Ex. A, Aff. ¶¶ 10-14.)

No warrant to search the contents of the SUBJECT DEVICE had been issued at the time of seizure. Not until March 10, 2026, eleven days after the seizure and nearly two months after the January 18 incident, did Special Agent Timothy Gerber apply for a warrant to search the device. That same day, the Honorable Shannon G. Elkins, United States Magistrate Judge, issued Search and Seizure Warrant No. 26-mj-252 (SGE), commanding execution on or before March 24, 2026. (Ex. A.)

The warrant authorized the search and seizure of records on the SUBJECT DEVICE for the period "January 1, 2026, through PRESENT," in connection with the charged offenses. Attachment B repeatedly authorized seizure of records relating not only to the charged offenses but also to "other organized protest activity." (Ex. A, Attach. B ¶¶ 1(b)-(d).) The warrant's own Addendum provided that the government "shall make reasonable efforts to utilize search methodology that avoids searching files, documents, or other electronically stored information that is not identified in the warrant." (Ex. A, Search Warrant Addendum ¶ 1.) The government, thereafter, conducted a forensic extraction of the contents of the SUBJECT DEVICE on March 11, 2026 and May 1, 2026.

## **WARRANT CHALLENGED**

Warrant for the examination of Mr. Perry's Apple iPhone, No. 26-mj-252 (SGE), signed March 10, 2026, by United States Magistrate Judge Shannon G. Elkins (Ex. A).

## **ARGUMENT**

A search warrant must be based upon a finding that there is probable cause to believe that evidence of a crime will be found in the place searched. *See United States v. Proell,* 485 F.3d 427, 430 (8th Cir. 2007). Probable cause exists when there are "sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place. "United *States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008) (citation omitted). "When a magistrate relies solely on an affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause. "United *States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014). The search and seizure cannot be "broader than can be justified by the probable cause upon which the warrant was based." *United States v. Burkhow*, 2020 WL 589536, at *8 (N.D. Iowa Feb. 6, 2020) (quoting *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013)).

*Nexus is Required*

"In order to support an application for a search warrant, '[t]here must be evidence of a nexus between the contraband and the place to be searched.'" *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2018) (quoting *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016)); *see also United States v. Tellez*, 218 F.3d 547, 550 (8th Cir. 2000). Factors to consider in determining if a nexus exists includes "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *Id.* (quoting *Colbert*, 828 F.3d at 726).

_Particularity_

General warrants are forbidden by the Fourth Amendment because the problem posed by general warrants is "of a general, exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). In addition to probable cause, the Fourth Amendment requires that a search warrant describe with particularity the place to be searched and the things to be seized. U.S. Const. amend. IV; Fed. R. Crim. P. 41. "Particularity prohibits the government from conducting general, exploratory rummaging of a person's belongings." United *States v. Sigillito*, 759 F.3d 913, 923 (8th Cir. 2014) (quoting *United States v. Saunders*, 957 F.2d 1488, 1491 (8th Cir. 1992)). "To satisfy the particularity requirement of the [F]ourth [A]mendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United States v. Sherman*, 372 F. App'x 668, 675 (8th Cir. 2010) (quoting *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007)).

_Fruit of the Poisonous Tree_

A violation of the Fourth Amendment triggers exclusion of evidence obtained by way of the violation. *United States v. Davis*, 760 F.3d 901, 903 (8th Cir. 2014). "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree. " *United States v. Hastings*, 685 F.3d 724, 728 (8th Cir. 2012) (quoting *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011)); *see also Murray v. United States*, 487 U.S. 533, 536-37 (1988). Evidence derived from an illegal search must be suppressed unless the inevitable discovery or independent source doctrine applies. *United States v. Madrid*, 152 F.3d 1034, 1037-38 (8th Cir. 1998).

**<u>I. The Warrant is an Unconstitutional General Warrant that Lacks Particularity and is Overbroad.</u>**

The warrant here is a general warrant. Attachment B does not confine the search to evidence of the charged offenses. In three separate categories, it authorizes the seizure of records relating to "the SUBJECT OFFENSES *and other organized protest activity*." (Ex. A, Attach. B ¶¶ 1(b)-(d) (emphasis added).) "Organized protest activity" is not a crime. It is protected First Amendment expression and association. By authorizing seizure of everything on Mr. Perry's device that touches protest activity of any kind, the warrant permits precisely the "general, exploratory rummaging" the Fourth Amendment forbids. *Andresen*, 427 U.S. at 480.

The defect is aggravated because the warrant reaches expressive and associational material. Where a warrant authorizes the seizure of materials protected by the First Amendment, the particularity requirement must be applied with "scrupulous exactitude." *Stanford v. Texas*, 379 U.S. 476, 485 (1965). This is a prosecution under 18 U.S.C. §§ 241 and 248(a)(2) arising out of a protest at a place of worship. A warrant in such a case that sweeps in all "organized protest activity," without limiting the search to the charged conduct, is the opposite of scrupulous exactitude. It invites the government to catalog Mr. Perry's political associations, the events he attended, and the causes he supported, none of which is evidence of the crimes charged.

The temporal scope compounds the problem. The warrant authorizes a search of records from "January 1, 2026, through PRESENT." The charged conduct occurred on a single day, January 18, 2026. The warrant reaches seventeen days before that date and, through the open-ended term "present," an indefinite period after it, including the period during which the phone sat in HSI custody after Mr. Perry's arrest contained nothing relevant. The affidavit offers no explanation for why records generated weeks before and after the charged event bear on the

offense. A time frame untethered to the alleged criminal conduct is not particular; it is a fishing expedition.

## **II. The Affidavit Fails to Establish a Nexus Between the Subject Device and the Charged Offenses.**

The affidavit does not establish the required nexus between this particular device and evidence of the charged offenses. The affidavit's link between cellular telephones and the crime rests principally on boilerplate. Paragraph 5 recites the affiant's general belief, "[b]ased upon my training, experience, investigations, and conversations with other law enforcement personnel," that "it is common practice for disruptors and co-conspirators to communicate, organize, and work together" by using cellular telephones. (Ex. A, Aff. ¶ 5.) That is a generalized assertion about people in the abstract, not a particularized fact about Mr. Perry's device. Generalized training-and-experience language cannot substitute for a factual showing that *this* phone contains evidence of the offense. *See Johnson*, 848 F.3d at 878.

The single particularized electronic fact in the affidavit does not close the gap. The affidavit alleges that on January 17, 2026, Mr. Perry posted a flyer on his personal Facebook account. (Ex. A, Aff. ¶ 19.) That allegation concerns a social media account, not the SUBJECT DEVICE. A person may access a Facebook account from any number of devices or from none in particular. The affidavit does not allege that Mr. Perry used this iPhone to make that post, that he possessed this iPhone on January 17 or 18, 2026, or that he used this iPhone in any way in connection with the events at Cities Church. The device was seized forty days after the charged conduct. Nothing in the affidavit ties the device seized on February 27 to the offense conduct of January 18. Absent that connection, the affidavit fails to establish a nexus between the place searched and the object of the investigation.

**III. Reservation Regarding the "Taint Team" and Potentially Privileged Material.**

The warrant's Addendum provided that a government "taint team" would set up an ethical wall to prevent attorney-client privileged communications from reaching the prosecution team. (Ex. A, Search Warrant Addendum ¶ 4.) Because the search extended to the entire contents of Mr. Perry's phone, it is likely that privileged communications were captured. Mr. Perry requests disclosure of whether a taint team was in fact used, the search methodology it employed, and whether the unredacted extraction report was made available to the prosecution team. Mr. Perry reserves the right to seek suppression or other relief on this basis upon disclosure.

**IV. The Good-Faith Exception Does Not Save the Warrant.**

The government will invoke the good-faith exception of *United States v. Leon*, 468 U.S. 897 (1984). It does not apply. *Leon* identified situations in which an officer's reliance on a warrant is unreasonable, including where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" and where the warrant is "so facially deficient" that no officer could reasonably presume it valid. *Leon*, 468 U.S. at 923.

A warrant that authorizes the seizure of all "organized protest activity," untethered to any charged crime and reaching constitutionally protected expression, is facially deficient in exactly this sense. No reasonably well-trained officer could believe that a warrant permitting a search of a person's entire record of political protest, over an open-ended time frame, was a valid, particularized warrant. At a minimum, the overbroad provisions of Attachment B must be severed and all evidence seized under them suppressed. *See Galpin*, 720 F.3d at 448-49. The good-faith exception should not be invoked to save this search.

## CONCLUSION

Mr. Perry, therefore, respectfully asks the Court to order the suppression of all evidence recovered in reliance on the illegal search and to grant such further relief as the Court deems just.

Dated: August 31, 2026

Respectfully Submitted

S/ Thomas H. Shiah
Thomas H. Shiah #100365
331 Second Ave South, Ste 705
Minneapolis, Minnesota 55401
(612) 338-0066

Attorney for Defendant