UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

Plaintiff,

v.

Nekima Levy-Armstrong, et al.,

Defendant(s).

**MOTION TO DISMISS SUPERSEDING INDICTMENT DUE TO HSI'S OUTRAGEOUS USE OF 19 U.S.C. § 1509 SUMMONS**

Case No.: 26-cr-25 (LMP/DLM)

## INTRODUCTION

Defendants move the Court for an Order dismissing the charges against them based on the Government's investigative tactics that were not authorized by statute or rule and violated their right to Due Process. The Government exercised powers Congress never gave it. Defendants contend that the Department of Homeland Security (DHS) through Homeland Security Investigations ((HSI), housed within DHS) undertook and materially directed an investigation of alleged domestic civil-rights offenses under 18 U.S.C. §§ 241 and 248(a)(2), and then invoked a customs administrative summons **92** times to investigate and prosecute those offenses. The threshold question is whether Congress authorized the Government to exercise those powers here. It did not, for at least two reasons.

First, DHS does not possess general jurisdiction to investigate every federal crime; its investigative authority is limited to the functions Congress expressly assigned, transferred, or otherwise vested in the Department and its components. The statutes the Government invokes concerning immigration, customs enforcement, and the powers of

customs officers do not themselves establish authority to undertake an otherwise domestic criminal investigation.

Second, even if HSI possessed authority to participate in the investigation, that does not establish authority to exercise subpoena power under 19 U.S.C. § 1509. Congress did not give HSI general administrative subpoena power through this statute. Instead,Section 1509 limits the HSI's subpoena power to investigations and inquiries conducted for specified purposes, including "insuring compliance with the laws of the United States administered by the United States Customs Service." 19 U.S.C. § 1509(a). Although Congress transferred customs functions to DHS, it did not erase the statutory limits Congress placed upon its exercise of those functions.

The scale and duration of HSI's use of subpoena power matter. Investigators issued **92** summonses under Section 1509 to telecommunications, airlines, social-media and internet platforms, a rental-car company, a retailer, a state employment agency, and other third parties. The summonses continued after the original indictment and after the superseding indictment expanded the prosecution to 39 defendants. HSI thus employed Section 1509 not incidentally, but as a continuing source of compulsory process throughout an active federal prosecution.

Defendants challenge more than an error in the exercise of lawful investigative authority. They contend that the Government acted beyond the authority Congress conferred on it, repeatedly invoked a purpose-limited customs summons to obtain evidence in an unrelated domestic criminal investigation, and continued doing so throughout an active prosecution. The scale, duration, and deliberate use of that compulsory power are

central to whether the Government's conduct crossed the constitutional boundary into outrageous Government conduct.

Without Court intervention, federal agencies will continue to use administrative subpoena power to flout the statutory and constitutional protections governing warrants and the criminal compulsory process—protections that are essential to due process and our democracy.

## FACTUAL BACKGROUND

The incident underlying this prosecution occurred on January 18, 2026. HSI began using administrative summonses pursuant to 19 U.S.C. Section 1509the following day.[1] On January 19 and 20, 2026, investigators issued summonses to telecommunications providers, including Verizon, AT&T, T-Mobile, and Inteliquent/Sinch, seeking records associated with numerous telephone numbers. Declaration of Jill A. Brisbois, para. 1 and 2, Exhibits 1 and 2.[2] Many of those initial summonses required production in early February. The Government charged three defendants by complaint with violations of 18 U.S.C. § 241 issued on January 20, 2026, and those defendants were arrested on January 22, 2026. Doc. 23; 9, 11, 26.

The Section 1509 summons forms identified the asserted basis for requiring production. They advised recipients:

> "Your testimony and/or production of the indicated records is required in connection with an investigation or inquiry to ascertain the correctness of entries, to determine the liability for duties, taxes, fines, penalties, or

---

[1] An investigation was not conducted by the FBI into this matter.
[2] Exhibits 1 and 2 represent two example summons issued in the course of this investigation.

> forfeitures, and/or to ensure compliance with the laws or regulations administered by HSI."

*Id.*

The forms did not identify which of these stated purposes applied to the investigation or identify the particular law or regulation "administered by HSI" for which compliance was being investigated. *Id.*

The summonses were not framed as requests for voluntary production. They further advised recipients:

> "Failure to comply with this summons will render you liable to proceedings in a U.S. District Court to enforce compliance with this summons as well as other sanctions."

*Id.*

For telecommunications records, the Government also invoked the SCA. The summons attachments stated that, "[p]ursuant to an investigation being conducted by the Department of Homeland Security, as authorized by Title 18, United States Code, Section 2703(c)(2)," the provider was to disclose the specified information. The telecommunications summonses sought information including subscriber identities, call and text usage information, device identifiers, IP information, and payment sources. Brisbois Decl., para. 2, Exhibit 2.

The Government continued issuing Section 1509 summonses as the criminal proceedings progressed. Between January 25 and January 28, 2026, investigators issued additional summonses for telecommunications records. *See* Brisbois Decl., para. 3, Exhibit

3, Lines 7-12.[3] On January 26, 2026, investigators expanded their use of Section 1509 beyond telecommunications providers. A summons to Hertz sought rental information concerning a defendant, including payment, insurance, third-party driver, and vehicle information. Brisbois Decl., para. 3, Exhibit 3, Line 9. A summons to Delta sought domestic and international travel and flight information concerning two defendants, including passenger, booking, and payment information. Brisbois Decl., para. 3, Exhibit 3 Line 10.

On January 29, 2026, a federal grand jury returned an indictment charging nine defendants with violating 18 U.S.C § 241 and 248, including the original three charged by Complaint. Doc. 39. At that time, several Section 1509 summonses already issued by investigators remained outstanding, with production dates extending beyond the date of indictment.

Throughout February 2026, investigators issued additional Section 1509 summonses to telecommunications providers for subscriber and telephone records and to airlines for travel records, including booking, payment, identifying, and companion-traveler information. Brisbois Decl., para. 3, Exhibit 3, Lines 13–50.

On February 26, 2026, the grand jury returned a superseding indictment expanding the prosecution from nine defendants to 39 defendants. Doc. 144. Additional Section 1509 summonses were issued that same day to T-Mobile and Verizon for telephone numbers associated with named individuals, with production deadlines extending into March.

[3] Exhibit 3 is summary chart of the 92 Section 1509 summons produced by the Government.

Brisbois Decl., para. 3, Exhibit 3, Lines 51 and 52. The Government continued issuing Section 1509summonses after the superseding indictment.

The summonses issued after the superseding indictment were not confined to obtaining historical telecommunications information. Between March 2 and March 4, investigators issued a Section 1509 summons to Instagram seeking subscriber information and IP/PORT logs associated with a particular account. Brisbois Decl., para. 3, Exhibit 3, Line 53. During the same period, investigators issued airline summonses seeking passenger, booking, payment, contact, and identifying information, as well as "lookout notification" for future travel through June 4, 2026. Brisbois Decl., para. 1 and 3, Exhibit 1 and Exhibit 3, Lines 53, 54, 57, and 60-64.

On March 5, investigators issued a Section 1509 summons to REI seeking transaction information for all persons who had purchased a particular beanie, identified by item number, in the greater Minneapolis–St. Paul area from January 1, 2024, forward. Brisbois Decl., para. 3, Exhibit 3, Line 65. The summons requested the dates and locations of purchases, buyer identities and contact information, payment type, and complete credit- or debit-card numbers.

March summonses sought additional telecommunications and airline records, including notification of future travel. Brisbois Decl., para. 3, Exhibit 3, Lines 53-87. In April, investigators issued summonses to YouTube/Google for videos and channels related to the January events and additional telecommunications records. Brisbois Decl., para. 3, Exhibit 3, Lines 53-87; *see also* Doc. 641. On May 4, more than three months after the first

indictment, the Government issued a Section 1509 summons to Minnesota DEED seeking employment information for 27 individuals. Brisbois Decl., para. 3, Exhibit 3, Lines 92.

In total, investigators issued **92** administrative summonses pursuant to Section 1509. Of those, eleven were issued before the January 29 indictment; thirty-eight were issued after the January 29, 2026 indictment but before the February 26, 2026 superseding indictment; and forty-three were issued on or after February 26, when all 39 defendants had been indicted.

On July 22, 2026, Defendants Thomas Matthew Tiers (36), Trahern Crews (7), and Ariel Hauptman (21) sought an Order from the Court to Compel DHS policies, procedures, training materials, and guidance governing the use of 19 U.S.C. Section 1509 summonses. Doc. 569; Doc. 575-10. The Government filed a response seeking denial of the motion to compel discovery related to this request because they argued DHS's actions were lawful. Doc. 589.

## ARGUMENT

### I. Federal Law Limited Both Homeland Security Investigation's Investigative Authority and Its Use of 19 U.S.C. § 1509 Summons.

Federal agencies possess only the authority Congress confers. *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 117 (2022) (per curiam); *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). When an official acts outside that authority, the action is ultra vires. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689–90 (1949); *Key Med. Supply, Inc. v. Burwell*, 764 F.3d 955, 962 (8th Cir. 2014).

There is a critical distinction is between an error in exercising authority the Government possesses and "a Government actor's exercise of power that the actor did not lawfully possess." *Collins v. Yellen*, 594 U.S. 220, 258 (2021) (citing *Lucia v. SEC*, 585 U.S. 237, 251–52 (2018)); *see Larson*, 337 U.S. at 689–90. The former concerns how the Government exercised a lawful investigative power. The latter concerns whether the Government had that power at all. This case involves the latter. HSI did not merely misuse an investigative tool otherwise available to it; it repeatedly invoked a compulsory authority that Congress did not authorize for this investigation.

### A. HSI Has Not Identified Statutory Authority to Undertake and Direct This Domestic Civil-Rights Investigation.

The Indictment charges violations of 18 U.S.C. §§ 241 and 248(a)(2) arising from conduct at a church on January 18, 2026.[4] Neither statute assigns investigative responsibility to DHS or HSI.

Federal law places a general federal criminal investigative function within the Department of Justice: the FBI Director may "[i]nvestigate violations of the laws of the United States" except where responsibility is otherwise assigned. 28 C.F.R. § 0.85(a). Congress likewise authorized the Attorney General and FBI to investigate federal crimes involving Government officers and employees unless responsibility is "specifically assigned otherwise by another provision of law." 28 U.S.C. § 535(a). These provisions do

[4] Defendants are charged under 18 U.S.C. §§ 241 and 248(a)(2), civil-rights statutes prohibiting, respectively, conspiracies to interfere with the exercise of federally protected rights and the use of force, threats of force, or physical obstruction to interfere with the exercise of religious freedom at a place of worship.

not make FBI authority exclusive; they illustrate that another agency's authority depends upon an identifiable statutory assignment, transfer, or delegation.

DHS's authority is defined differently. Its statutory mission includes preventing terrorism and carrying out the functions of agencies transferred into the Department. 6 U.S.C. § 111(b). Section 202 identifies responsibilities involving border, maritime, transportation, immigration, customs, and related security functions. 6 U.S.C. § 202. Congress also transferred to DHS the "functions, personnel, assets, and liabilities" of predecessor agencies, including the former Customs Service. 6 U.S.C. § 203(1).

Congress has also expressly assigned particular investigative functions to DHS components. These include U.S. Customs and Border Protection's (CBP) customs, trade, immigration, and border functions, 6 U.S.C. § 211(c); investigations involving CBP personnel by CBP's Office of Professional Responsibility, *id.* § 211(j)(3); HSI transnational criminal investigative units, 6 U.S.C. § 475; and protection of federal property and persons on such property, 40 U.S.C. § 1315. These specific grants confirm that DHS investigative authority does not exist in the abstract. It derives from authority Congress has actually assigned to the Department or its components.

### 1. HSI's Authority to Execute Process and Make Arrests Does Not Confer General Investigative Jurisdiction.

In response to Defendant Tier's Motion to Compel discovery related to the use of Section 1509 summons (Doc. 569), the Government principally relied on the transfer of Customs functions and 19 U.S.C. § 1589a. Doc. 589 at 12–13. But Section 203 transferred existing Customs functions; it did not create new substantive jurisdiction. And Section

1589a grants customs officers specified law-enforcement powers, including authority to execute federal process and make warrantless arrests in defined circumstances, without expanding the offenses Customs was authorized to pursue.

The Department of Justice's Office of Legal Counsel concluded from the legislative history of §§ 1589 and 1589a that Congress intended to clarify officers' authority to execute warrants and make arrests, not enlarge Customs' jurisdiction. *Authority of the Customs Service to Seize or Forfeit Property Pursuant to 21 U.S.C. § 881*, 12 Op. O.L.C. 267, 276 (1988) ("Customs Service Authority"). Thus, although the provisions authorize Customs officers to execute warrants and make arrests for a broad range of federal crimes, they "do not grant Customs additional authority to pursue and prosecute such offenses." *Id.*

Furthermore, the Government's reliance on *United States v. Jackson*, No. 2:21-cr-113, 2023 WL 73206114 (D. Vt. Nov. 7, 2023), does not fill that gap. *Jackson* asked whether designated HSI agents could execute a judicially authorized search warrant in a domestic drug investigation. *Id.* at *11–12.* The court relied on §§ 1401(i) and 1589a, including § 1589a(2)'s express authorization to execute federal process. *Id*. at 11. It did not hold that § 1589a gives HSI subject-matter jurisdiction over every federal offense. That distinction is consistent with the OLC's conclusion that execution and arrest powers do not themselves confer additional investigative jurisdiction. *Customs Service Authority*, 12 Op. O.L.C. at 276.

The Government alternatively invokes potential, but uncharged, violations of 18 U.S.C. §§ 111 and 372 because the protest was allegedly directed at an ICE official. Doc. 589 at 13–14. But identifying another federal offense does not establish HSI's authority to

investigate it. Section 535(a) expressly contemplates that investigative responsibility for crimes involving federal officers may be assigned elsewhere by law; the Government identifies no provision specifically assigning these alleged offenses to HSI. Its reliance on § 9-65.600 of the Justice Manual fares no better. The Manual is internal DOJ guidance and cannot confer statutory authority. *See* Justice Manual § 1-1.200. Nor can uncharged offenses retrospectively supply authority missing when HSI undertook the investigation. The question is whether HSI possessed lawful authority to conduct the investigation it actually conducted.

The Government therefore identifies substantial law-enforcement powers possessed by HSI, but not a statute assigning HSI general responsibility for Sections 241 and 248(a)(2), or specific responsibility for the uncharged Sections 111 and 372 offenses on which it now relies. The transfer of Customs functions transferred existing functions; Section 1589a authorizes execution of process and arrests but does not enlarge substantive jurisdiction; and internal DOJ guidance cannot supply authority Congress did not confer.

### B. Even Assuming HSI Could Participate in the Investigation, Section 1509 Did Not Authorize the Administrative Summonses Used Here.

Section 1509 presents a separate question. It authorizes administrative examination and summons authority only "[i]n any investigation or inquiry conducted" for specified purposes: ascertaining the correctness of an entry; determining liability for duties, fees, or taxes; determining liability for fines and penalties; or "insuring compliance with the laws of the United States administered by the United States Customs Service." 19 U.S.C. § 1509(a).

Within a qualifying investigation, an appropriately delegated official may examine relevant records and summon persons to produce records or testify, and summoned records must be described with reasonable specificity. *Id.* § 1509(a)(1)–(2), (c). A Section 1509 summons is administrative, not judicial; if a recipient refuses compliance, the Government may seek enforcement in district court under Section 1510. Section 1509(d) separately provides additional notice and challenge procedures for certain summonses to defined third-party recordkeepers.

The statute therefore distinguishes the purpose of the investigation from the identity of the official exercising the power. The investigation itself must fall within one of Section 1509(a)'s enumerated purposes. *See United States v. Tan*, 16 F.4th 1346, 1353–54 (9th Cir. 2021) (applying the requirements of *United States v. Powell*, 379 U.S. 48, 57–58 (1964), to a Section 1509 summons and requiring a legitimate investigative purpose and relevance to that purpose); *United States v. Rubin*, 2 F.3d 974, 978–79 (9th Cir. 1993). *Rubin* is particularly instructive: relevance to a lawful investigation did not displace the independent statutory limitations governing the records Customs could compel. *Id.* at 978–79.

The first three statutory purposes are not implicated here. The Government relies on the fourth: laws "administered by the United States Customs Service." 19 U.S.C. § 1509(a); Doc. 589 at 12. That language cannot mean every federal law HSI happens to investigate. Congress did not say "laws of the United States"; it added "administered by the United States Customs Service," language that must be given effect. *See Corley v. United States*, 556 U.S. 303, 314 (2009). The surrounding terms, entries, duties and taxes, and fines and penalties, reinforce that limitation. *See Yates v. United States*, 574 U.S. 528, 543–44 (2015)

(plurality opinion). Section 1509 must therefore be read as a whole, giving effect to the purposes Congress expressly identified in § 1509(a), rather than construing isolated language to create a general administrative summons power Congress did not provide.

The Homeland Security Act did not eliminate those limits. Sections 552(d) and 557 provide for the transfer of existing functions to DHS and explain how statutory references to predecessor agencies should be treated after the reorganization. 6 U.S.C. §§ 552(d), 557. They do not expand the authority that was transferred. DHS therefore inherited Customs' Section 1509 authority subject to the same limits Congress imposed, including § 1509(a)'s restriction on the investigations and inquiries for which summons authority may be used. The reorganization changed who could exercise that authority, not its scope. And DHS cannot expand that authority beyond the limits Congress imposed. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014); *La. Pub. Serv. Comm'n*, 476 U.S. at 374.

### 1. DHS's Own Guidance Confirms That Investigative Authority Alone Does Not Authorize a Section 1509 Summons.

DHS's own historical treatment of Section 1509 confirms that investigative authority and Section 1509 summons authority are distinct. CBP's April 2016 Special Agent Internal Operating Procedures stated that, "[a]bsent a nexus to a Title 8 or Title 19 violation," a § 1509 summons "may not be used," and that if an investigation did not meet the limited criteria, use of the summons was "not authorized." Dep't of Homeland Sec., Office of Inspector Gen., *CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509*, OIG-18-18, at 4 (Nov. 16, 2017) ("OIG-18-18").

In 2017, after CBP used Section 1509 to seek identifying information for the @ALT_USCIS Twitter account, DHS OIG found the purpose unrelated to importation or customs duties and concluded CBP "may have exceeded the scope of its authority under Section 1509." *Id.* at 2–4; *see also Reporters Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 103 (D.D.C. 2021).

The agency responded by clarifying "the limited contexts in which Section 1509 Summonses may properly be used." *OIG-18-18*, at 4. For employee-misconduct investigations, the guidance limited use to misconduct connected to importation, certain exportations, or transportation or storage under bond. *Id.* at 3. For records from third parties outside § 1508's customs-recordkeeping regime, including "telecommunications providers, social media outlets, and banks", the guidance required probable cause to believe the records related to prohibited importation and consultation with agency counsel. *Id.* at 4–5. OIG concluded that the guidance brought policy "in line with the purpose and language of Title 19." *Id.* at 3. CBP then revised procedures and provided training. *Id.* at 6–7. This history shows that DHS itself has treated investigative authority and § 1509 authority as distinct questions.

That history bears directly on the summonses here. HSI used Section 1509 to compel records from telecommunications and electronic-service providers, social-media companies, airlines, and other third parties outside traditional customs recordkeeping. Yet the Government identifies no prohibited-importation or comparable customs nexus. Instead, it argues that HSI's authority to investigate the underlying conduct made the

summonses "entirely proper." Doc. 589 at 12. DHS's own prior guidance rejected that premise, treating authority to investigate and authority to use § 1509 as separate questions.

That history also makes the requested policies, training, approvals, and legal guidance directly relevant to whether agents were aware of recognized limits on § 1509 and nevertheless used the summons authority beyond those limits. *See* Doc. 569.

**2. The Government's Child-Exploitation Cases Do Not Establish General HSI Summons Authority.**

The cases the Government relies upon in its response opposing discovery do not establish that the transfer of Customs functions expanded the scope of § 1509 authority.

In *United States v. Smajlovic*, involved an HSI child-exploitation investigation. No. 4:25-cr- 00288-SEP, 2026 WL 785026, at 3–4 (E.D. Mo. Mar. 20, 2026). The court relied not only on the transfer of Customs functions but also on Congress's separate direction that DHS maintain within HSI a Cyber Crimes Center containing a Child Exploitation Investigations Unit. 6 U.S.C. § 47. *Id*. No comparable statute assigns HSI responsibility for Sections 241 or 248(a)(2), or the uncharged Sections 111 and 372 offenses.

The Government also relies on other cases arising from child-exploitation investigations that principally addressed privacy and suppression issues. Neither case held that Section 203 converted Section 1509 into general HSI summons authority. *United States v. Merrell*, 88 F. Supp. 3d 1017, 1032–33 (D. Minn. 2015); *United States v. Cray*, 673 F. Supp. 2d 1368, 1376–79 (S.D. Ga. 2009).

**3. Neither the Absence of a Suppression Remedy Nor the Third-Party Doctrine Establishes § 1509 Authority.**

The absence of a suppression remedy does not establish that the summonses were lawful. In *United States v. Wellbeloved-Stone*, 777 F. App'x 605, 607 (4th Cir. 2019), the court expressly declined to decide whether the § 1509 summonses were valid; it assumed a statutory violation and held suppression unavailable because § 1509 contains no exclusionary remedy and the subscriber information was not protected by the Fourth Amendment. *Smajlovic* likewise separately addressed authority and remedy, holding that even if § 1509 had been violated, suppression would not follow. 2026 WL 785026, at *4. Remedy and statutory authority are different questions. A lack of suppression does not enlarge Section 1509 or make an unauthorized summons lawful.

The third-party doctrine is likewise beside the statutory point. A defendant's reasonable expectation of privacy concerns whether obtaining records constitutes a Fourth Amendment search; it does not determine whether Congress authorized HSI to compel the records through Section 1509. And recent Supreme Court decisions caution against treating all digital information conveyed in ordinary cellphone use as freely available to the Government. *See Chatrie v. United States*, 146 S. Ct. 2193, 2214–15 (2026); *Carpenter v. United States*, 585 U.S. 296, 315 (2018).

### C. HSI's Misuse of Section 1509 as Post-Indictment Criminal Process Also Implicated the Stored Communications Act and the Limits of Established Criminal Process.

#### 1. Federal Rule Of Criminal Procedure 17(c) and Grand-Jury Subpoenas Provided Established Means of Compelling Third-Party Records After Indictment.

HSI continued using Section 1509 after the January 29, 2026, Indictment and the February 26, 2026, Superseding Indictment. Although an indictment does not end

legitimate investigation, established compulsory processes remain subject to limits appropriate to their purposes.

After indictment, the Government had two established forms of compulsory process available to obtain third-party records: FRCP 17(c) subpoenas and grand-jury subpoenas. Each carries limits appropriate to its purpose.

Rule 17(c) is not a general discovery device and requires relevance, admissibility, and specificity. *United States v. Nixon*, 418 U.S. 683, 698–700 (1974); *United States v. Hardy*, 224 F.3d 752, 755 (8th Cir. 2000); *United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996).

Alternatively, a grand jury may continue a bona fide investigation after indictment, but its subpoena power may not be used "for the sole or dominant purpose of preparing a pending indictment for trial." *In re Green Grand Jury Proceedings*, 492 F.3d 976, 986 (8th Cir. 2007); *United States v. Wadlington*, 233 F.3d 1067, 1074 (8th Cir. 2000); *United States v. Puckett*, 147 F.3d 765, 770 (8th Cir. 1998).

**2. Congress Separately Prescribed the Process for Obtaining Electronic Communications Records.**

Congress separately prescribed Governmental access to records held by electronic communication and remote computing services through the Stored Communications Act ("SCA"). *See* 18 U.S.C. § 2703. The SCA permits compelled disclosure of the subscriber information identified in § 2703(c)(2) through an administrative subpoena only when that subpoena is "authorized by a Federal or State statute." 18 U.S.C. § 2703(c)(2); *see United States v. Taylor*, 54 F.4th 795, 804–05 (4th Cir. 2022). Section 2703 does not itself create

administrative subpoena authority; it presupposes an independently authorized subpoena. Other covered records may require different process, including Section 2703(d) orders or warrants. General discovery or summons authority cannot be used to circumvent the SCA's specific protections. *See FTC v. Netscape Commc'ns Corp.*, 196 F.R.D. 559, 561 (N.D. Cal. 2000).

HSI relied on Section 1509 as the independent authority for its telecommunications demands. If Section 1509 was unavailable for this investigation, those demands were not administrative subpoenas "authorized by a Federal . . . statute" within Section 2703(c)(2). The same records were obtainable, where the governing standards were met, through warrants, Section 2703(d) orders, grand-jury process, or trial subpoenas. *See* 18 U.S.C. § 2703(c)–(d). The point is not that post-indictment investigation was forbidden; it is that Section 1509 could not become a parallel, agency-issued source of criminal compulsory process untethered to the purposes Congress specified.

### 3. Continued Investigation After Indictment Did Not Authorize the Government to Bypass Established Limits on Compulsory Process.

If HSI may invoke Section 1509 whenever it participates in a federal investigation, Section 1509(a)'s purpose limitation does not work. The agency would possess what amounts to general administrative subpoena power over telecommunications, travel, employment, retail, internet, and other third-party records, including during a pending prosecution. Courts should not read a purpose-limited statute to render its limiting words meaningless or give a successor agency greater power than Congress conferred on its predecessor. *See Corley*, 556 U.S. at 314; *Util. Air Regul. Grp.*, 573 U.S. at 325.

## II. The Repeated Exercise of Powers Congress Did Not Confer Supports the Outrageous-Government-Conduct Claim.

The Due Process Clause bars a prosecution where Governmental conduct is "so outrageous and shocking that it exceed[s] the bounds of fundamental fairness." *United States v. Hunt*, 171 F.3d 1192, 1195 (8th Cir. 1999) (quoting *United States v. Johnson*, 767 F.2d 1259, 1275 (8th Cir. 1985)); *see also United States v. Russell*, 411 U.S. 423, 431–32 (1973). The standard is demanding and reserved for the "narrow band of the most intolerable Government conduct." *United States v. Bugh*, 701 F.3d 888, 894 (8th Cir. 2012) (quoting *United States v. Morse*, 613 F.3d 787, 792–93 (8th Cir. 2010)). The inquiry focuses on the Government's conduct. *Hunt*, 171 F.3d at 1195.

Defendants recognize that officers may "go a long way" while lawfully investigating criminal activity. *United States v. Musslyn*, 865 F.2d 945, 947 (8th Cir. 1989). But the cases applying that principle generally concern how investigators used authority they possessed; undercover operations, informants, inducements, and similar techniques. *See Bugh*, 701 F.3d at 894–95; *Hunt*, 171 F.3d at 1195–96; *Musslyn*, 865 F.2d at 946–47. This case presents the antecedent question: whether the Government possessed the powers it repeatedly exercised at all. *See Collins*, 594 U.S. at 258.

The conduct must be evaluated cumulatively. The Eighth Circuit applies a totality-of-the-circumstances approach to whether Governmental conduct exceeds fundamental fairness. *United States v. Mazzella*, 768 F.2d 235, 238 (8th Cir. 1985); *see also United States v. Jones*, 66 F.4th 1114, 1116–17 (8th Cir. 2023). Here, DHS undertook and materially directed a domestic civil-rights investigation without identifying the statutory

assignment authorizing it; HSI repeatedly invoked a customs summons limited to specified statutory purposes; those summonses reached telecommunications and electronic-service providers, airlines, social-media companies, a retailer, a rental-car company, a state employment agency, and other third parties; and the use continued after arrests, indictment, and the 39-defendant Superseding Indictment, when established criminal processes remained available.

The significance of the misuse of § 1509 summonses is not limited the number of summons issued or to the records they produced. The summonses were used throughout the investigation to obtain information capable of identifying individuals, establishing associations among them, locating witnesses, tracing communications and travel, and generating additional investigative leads. In that way, § 1509 was not used merely to obtain discrete evidence at the margins of an otherwise independently developed prosecution. It became part of the infrastructure through which the Government developed and expanded its investigation. That distinction matters when assessing the Government's conduct as a whole: the alleged statutory violation was not isolated to a particular piece of evidence, but was embedded in the investigative process itself.

The scale and history distinguish this from a single defective summons or an aggressive investigative choice. DHS OIG had already concluded that use of Section 1509 for a purpose unrelated to importation or customs duties may exceed the statute, and the agency responded with guidance, training, and restrictions directed specifically to third-party records such as telecommunications and social-media information. *OIG-18-18*, at 3–7. Yet HSI used Section 1509 throughout this investigation without the customs nexus the

Government's own historical materials recognized. That history bears on whether the conduct was knowing or deliberate and makes discovery concerning governing policies, training, legal advice, approvals, and review directly relevant.

Due process does not convert every statutory violation into outrageous Government conduct. Defendants do not contend otherwise. What makes this case extraordinary is the alleged repeated exercise of compulsory Governmental power that Congress did not authorize for this investigation, across numerous third parties and categories of private information, before and after indictment, despite established lawful mechanisms for obtaining evidence. This was not merely an improper exercise of lawful authority; Defendants contend it was the exercise of authority the Government did not possess. Considered cumulatively, that conduct falls within the narrow category of Governmental action that exceeds the bounds of fundamental fairness and warrants dismissal.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court find that the Government exceeded its lawful investigative and compulsory authority and that its cumulative conduct violated due process. Defendants therefore request that the Court dismiss the charges or grant such other relief as the Court deems appropriate. In the alternative, Defendants request that the Court grant their motion for discovery to permit further development of the record concerning the scope, purpose, authorization, and use of the challenged investigative and compulsory processes.

**LAW OFFICE OF JORDAN S. KUSHNER**

s/ Jordan S. Kushner
Jordan S. Kushner, Reg. No. 219307
431 South 7th Street, Suite 2446
Minneapolis, MN 55415
(612) 288-0545
jskushner@gmail.com

Attorneys for Defendant Nekima Levy Armstrong (1)

**THE JAB FIRM**

s/ Jill A. Brisbois
Jill A. Brisbois, Reg. No. 0345477
150 South 5th Street, Suite 1850
Minneapolis, MN 55402
(651) 209-7797
jill@thejabfirm.com

Attorneys for Defendant Chauntyll Louisa Allen (2)

**OFFICE OF THE FEDERAL DEFENDER**

s/ Aaron J. Morrison
Aaron J. Morrison, Reg. No. 341241
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5858
aaron_morrison@fd.org

Attorneys for Defendant William Scott Kelly (3)

**BIRRELL LAW FIRM, PLLC**

s/ Ian S. Birrell
Ian S. Birrell, Reg. No. 0396379
Andrew S. Birrell, Reg. No. 133760
333 South 7th Street, Suite 2350
Minneapolis, MN 55402
(952) 356-2393
ian@birrell.law
andy@birrell.law

Attorneys for Defendant Jerome Deangelo Richardson (5)

**CAPITOL CITY LAW GROUP, LLC**

s/ A.L. Brown
A. L. Brown (# 331909)
287 East Sixth Street, Suite 20
Saint Paul, Minnesota 55101
(651) 705-8580
a.l.brown@cclawg.com

Attorneys for Defendant Jamael Lydell Lundy (6)

**LAW OFFICES OF ROBERT D. RICHMAN, LLC**

s/ Robert D. Richman
Robert D. Richman, Reg. No. 226142
P.O. Box 16643
St. Louis Park, MN 55416
(651) 278-4987
robert@rdrichmanlaw.com

Attorneys for Defendant Trahern Jeen Crews (7)

**GAD & GAD LAW OFFICES LLP**

s/ Sarah R. Gad
Sarah R. Gad, Reg. No. 0403328
8 E 25th Street
Minneapolis, MN 55402
(612) 512-1870
sarah@gadlawoffice.com

Attorneys for Defendant Ian Davis Austin (9)

**KENNETH UBONG UDOIBOK, PA**

s/ Kenneth U. Udoibok
Kenneth U. Udoibok, Reg. No. 0262523
Flour Exchange Building, Suite 5010
310 Fourth Ave S.
Minneapolis, MN 55415
(612) 808-6031
k@kenulaw.com

Attorneys for Defendant Aziza M. Aboud (10)

**GLENN P. BRUDER**

s/ Glenn P. Bruder
Glenn P. Bruder, Reg. No. 148878
9531 West 78th Street
Suite 210
Eden Prairie, MN 55344
(952) 831-3174

Attorneys for Defendant Max Richard Adamson (11)

**DEVORE LAW OFFICE, P.A.**

s/ Kevin DeVore
Kevin W. DeVore, Reg. No. 0267302
724 Bielenberg Drive, Ste 110
Woodbury, MN 55125
(651) 435-6500
kevin@devorelawoffice.com

Attorneys for Defendant Ezra Chaim Pye Blumenfeld (13)

**LEACH LAW OFFICE**

s/ Patrick G. Leach
Patrick G. Leach, Reg. No. 0286825
8961 Aztec Drive
Eden Prairie, MN 55347
(763) 220-6164
pgl@leachlawoffice.com

Attorneys for Defendant Kelly Ann Carey (15)

**DE LEÓN & NESTOR, LLC**

s/ Bruce D. Nestor
Bruce D. Nestor, Reg. No. 0318024
3547 Cedar Avenue South
Minneapolis, MN 55407
(612) 659-9019
nestor@denestlaw.com

Attorneys for Defendant Monique Cullars-Doty (16)

**MELVIN R. WELCH**

s/ Melvin R. Welch
Melvin R. Welch, Reg. No. 0387750
250 South Second Street, Suite 205
Minneapolis, MN 55401
(612) 741-3272
mel@melvinwelchlaw.com

Attorneys for Defendant Tiffany Lynn Dunlap (17)

**LAW OFFICE OF STEVEN J. WRIGHT, LLC**

s/ Steven J. Wright
Steven J. Wright, Reg. No. 387336
331 Second Ave S, Suite 705
Minneapolis, MN 55401
(612) 669-8280
stevejameswright@gmail.com

Attorneys for Defendant Andrew Edwards (18)

**CHARLES F. CLIPPERT**

s/ Charles F. Clippert
Charles F. Clippert, Reg. No. 248848
101 East Fifth Street, Suite 1500
St. Paul, MN 55101
(651) 300-4109
charlie@clippertlaw.com

Attorneys for Defendant Rachel Goligoski (19)

**FORSGREN FISHER MCCALMONT DEMAREA TYSVER LLP**

s/ Caitlinrose H. Fisher
Caitlinrose H. Fisher, Reg. No. 0398358
1500 Capella Tower
225 South 6th Street
Minneapolis, MN 55402
(612) 474-3300
cfisher@forsgrenfisher.com

Attorneys for Defendant Ariel Hauptman (21)

**LOTUS LEGAL PLLC**

s/ Caroline H. Brunkow
Caroline H. Brunkow, Reg. No. 0398936
331 Second Ave South, Ste 420
Minneapolis, MN 55401
(612) 293-6963
cari@lotuslegalpllc.com

Attorneys for Defendant Krista Erin Hogan (22)

**KOCH AND GARVIS, LLC**

s/ Andrew S. Garvis
Andrew S. Garvis, Reg. No. 257989
3109 Hennepin Avenue South
Minneapolis, MN 55408
(612) 827-8101
andrew@uptownlawyer.com

Attorneys for Defendant Danielle Andrea Matthias (24)

**F. CLAYTON TYLER, P.A.**

s/ Karen Mohrlant
Karen E. Mohrlant, Reg. No. 388093
331 Second Avenue South, Suite 230
Minneapolis, MN 55401
(612) 333-7309
kmohrlant@fctyler.com

Attorneys for Defendant Catie Anne Michaelson (25)

**JOHNSON & GREENBERG PLLP**

s/ Lee R. Johnson
Lee R. Johnson, Reg. No. 0189935
5775 Wayzata Boulevard, Suite 700
St. Louis Park, MN 55416
(952) 545-1621
lrjohnsonslp@gmail.com

Attorneys for Defendant Eric Ryan Michaelson (26)

**LAW OFFICE OF ROBERT A. LENGELING, PLLC**

s/ Robert A. Lengeling
Robert A. Lengeling, Reg. No. 304165
310 Fourth Avenue South, Suite 1050
Minneapolis, MN 55415
(612) 963-1555
robert@lengelinglaw.com

Attorneys for Defendant David Okar (27)

**LAW OFFICES OF THOMAS H. SHIAH, LTD.**

s/ Thomas H. Shiah
Thomas H. Shiah, Reg. No. 100365
331 Second Avenue South, Ste 705
Minneapolis, MN 55401
(612) 338-0066
ths@tomshiah.com

Attorneys for Defendant Jarmel Perry (28)

**BEST & FLANAGAN LLP**

s/ Amy S. Conners
Amy S. Conners, Reg. No. 0387375
60 South 6th Street, Suite 2700
Minneapolis, MN 55402
(612) 349-5665
aconners@bestlaw.com

Attorneys for Defendant Cheryl Ann Persigehl (29)

**GOETZ & ECKLAND P.A.**

s/ Frederick J. Goetz
FREDERICK J. GOETZ
Attorney Registration No. 185425
Banks Building
615 1st Avenue NE, Suite 425
Minneapolis, MN 55413
(612) 874-1552
FGoetz@goetzeckland.com

Attorneys for Defendant Emmar Monike Pineda-Moreno (30)

**RINGSTROM DEKREY PLLP**

s/ Dane DeKrey
Dane DeKrey, Reg. No. 0397334
814 Center Avenue, Suite 5
Moorhead, MN 56560
(218) 284-0484
dane@ringstromdekrey.com

Attorneys for Defendant Spencer Michael Rodriguez-Bocanegra (31)

**ARNESON LAW OFFICE PLLC**

s/ Wyatt Arneson
Wyatt Arneson, Reg. No. 0392071
1025 Grain Exchange Building
400 South 4th Street
Minneapolis, MN 55415
(612) 746-1188
wyatt@arnesonlawllc.com

Attorneys for Defendant Katherine Shaw (32)

**GERDTS LAW, PLLC**

s/ Daniel L. Gerdts
Daniel L. Gerdts, Reg. No. 207329
331 Second Avenue South, Suite 705
Minneapolis, MN 55401
(612) 800-5086
daniel@danielgerdtslaw.com

Attorneys for Defendant Satara Diann Strong-Allen (33)

**SIEBEN & COTTER, PLLC**

s/ Patrick L. Cotter
Patrick L. Cotter, Reg. No. 0319120
105 Hardman Court, Suite 110
South St. Paul, MN 55075
(651) 455-1555
patrick@siebencotterlaw.com

Attorneys for Defendant Charles Swenson (34)

**SAPIENTIA LAW GROUP, PLLC**

s/ Robin M. Wolpert
Robin M. Wolpert, Reg. No. 0310219
120 South Sixth Street, Suite 100
Minneapolis, MN 55402
(612) 756-7100
robinw@sapientialaw.com

Attorneys for Defendant Robyn Elise Swenson (35)

**DORSEY & WHITNEY LLP**

s/ Meredith LaVine
John Marti, Reg. No. 0388393
Meredith LaVine, Reg. No. 0506725
Ashley Repp, Reg. No. 0399661
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600
marti.john@dorsey.com
lavine.meredith@dorsey.com
repp.ashley@dorsey.com

Attorneys for Defendant Thomas Matthew Tier (36)

**LANGERT LAW, LLC**

s/ Maggie G. Langert
Maggie G. Langert, Reg. No. 0308316
724 Bielenberg Drive #54
Woodbury, MN 55125
(612) 470-4810
maggie@langertlaw.com

Attorneys for Defendant John Vergin (38)

**WOLD LAW**

s/ Peter B. Wold
Peter B. Wold, Reg. No. 0118382
331 2nd Avenue South, Suite 705
Minneapolis, MN 55401
(612) 341-2525
pwold@wold-law.com

Attorneys for Defendant Mark D. Weinfurter (39)