# UNITED STATES DISTRICT COURT

for the
District of Minnesota

IN THE MATTER OF THE SEARCH OF THE DARK PURPLE/BLACK APPLE IPHONE WITH A CLEAR CASE DESCRIBED IN ATTACHMENT A

**SEALED BY ORDER OF THE COURT**

Case No. 26-mj-277 (SGE)

**APPLICATION FOR A SEARCH WARRANT**

I, Timothy Gerber, a federal law enforcement officer for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**See Attachment A, incorporated here**

located in the State and District of Minnesota, there is now concealed:

**See Attachment B, incorporated here**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

x evidence of a crime;

x contraband, fruits of crime, or other items illegally possessed;

x property designed for use, intended for use, or used in committing a crime;

___ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 241 | Conspiracy Against Rights |
| Title 18, United States Code, Section 241, 248(a)(2) | Interference with Religious Freedom at Place of Worship |

The application is based on these facts:

**See Affidavit, incorporated here**

X Continued on the attached sheet.

[signature]

*Applicant's Signature*

Timothy Gerber, Special Agent, HSI

*Printed Name and Title*

SUBSCRIBED and SWORN before me by reliable electronic means (FaceTime, Zoom and/or email) pursuant to Fed. R. Crim. P. 41(d)(3)

Date: March 13, 2026

[signature]

*Judge's Signature*

City and State: Minneapolis, MN

The Honorable Shannon G. Elkins
United States Magistrate Judge

*Printed Name and Title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE **DARK PURPLE/BLACK APPLE IPHONE WITH A CLEAR CASE** DESCRIBED IN ATTACHMENT A | Case No. 26-mj-277 (SGE)<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, TIMOTHY GERBER, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property---one electronic device-which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent (SA) with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI), and have been employed since March of 2025. In my capacity as a Special Agent, I am responsible for conducting investigations into the federal laws enforced by HSI. Since March of 2025, I

have investigated various criminal violations relating to child exploitation, assaults on federal officers, human rights violations, and immigration violations. Additionally, I have repeatedly reviewed and analyzed electronic devices.

3. I am a graduate of the Federal Law Enforcement Training Center (FLETC), HSI Special Agent Training Program, having completed training in surveillance, search and arrest warrants, federal laws enforced by HSI, and federal criminal procedures. Prior to my tenure as a HSI Special Agent, I was employed as a Special Agent with the Internal Revenue Service, Criminal Investigation (IRS-CI), where I investigated various criminal violations relating to the Internal Revenue Code, money laundering, digital currency, and elder exploitation.

4. The facts in this affidavit come from my personal observations, my review of documents and other evidence, my conversations with other law enforcement personnel and other individuals, and my training and experience. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all my knowledge about this matter. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Additionally, the substance of conversations included herein may have been translated.

5. Based upon my training, experience, investigations, and conversations with other law enforcement personnel, I know it is common practice for disruptors and co-conspirators to communicate, organize, and work together with other individuals by utilizing cellular telephones. These subjects maintain communications and use their cellular telephones to further their criminal activities by using phone calls, messaging applications, photos, emails, and other forms of communication.

6. For the reasons detailed below, there is probable cause to believe that the above-captioned SUBJECT DEVICE, which is described herein and in Attachment A, contains evidence, fruits, and instrumentalities of violations of Title 18 U.S.C. §§ 241 (Conspiracy Against Rights Secured by Federal Law, namely, the free exercise of religion at a place of religious worship secured by the FACE Act, 18 U.S.C. § 248(a)(2)), and 248(a)(2) (FACE Act) (the "SUBJECT OFFENSES").

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

7. The property to be searched is a dark purple/black Apple iPhone with a clear case, hereinafter, the "SUBJECT DEVICE."

8. The SUBJECT DEVICE is currently located in the District of Minnesota at the HSI Field Office.

9. The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

10. On February 26, 2026, in the U.S. District Court of Minnesota, a federal arrest warrant was issued for Monique Cassandra CULLARS-DOTY pursuant to a Superseding Indictment charging CULLARS-DOTY and thirty-eight co-defendants for violation of 18 U.S.C. §§ 241 and 248(a)(2).

11. On February 27, 2026, Homeland Security Investigations (HSI) executed an arrest warrant in Woodbury, MN and arrested CULLARS-DOTY. CULLARS-DOTY was taken into custody without incident.

12. At the time of the arrest, CULLARS-DOTY was on the phone with a dark purple/black Apple iPhone with a clear case (SUBJECT DEVICE).

13. Agents placed CULLARS-DOTY under arrest and seized the SUBJECT DEVICE. HSI has maintained possession of SUBJECT DEVICE.

14. On the morning of Sunday, January 18, 2026, at approximately 10:30 a.m., a group of approximately 40 disruptors, to include CULLARS-DOTY, entered the Cities Church, located at 1524 Summit Avenue, St. Paul, MN 55105, in a coordinated clandestine manner during a religious service. As detailed below, the disruptors, including CULLARS-DOTY, obstructed the

religious service and intimidated, harassed, oppressed, and terrorized the congregants, including young children, causing the service to end prematurely and forcing congregants to flee the church, which resulted in one victim falling and sustaining an injury. Statements made by disruptors indicated that they targeted the church based on their belief that one of the church's pastors is a federal immigration officer.

15. Prior to the disruption of the religious service, the co-defendants, circulated a flyer on the Internet via Instagram and Facebook accounts promoting the clandestine operation, dubbed "Operation Pullup." Similar flyers have been found on the cell phones of other co-defendants, namely Nekima Valdez Levy ARMSTRONG and Chauntyll Louisa ALLEN, pursuant to search warrants.

16. During the disruption at Cities Church, disruptors, including CULLARS-DOTY, physically obstructed congregants as they attempted to leave the church. Several disruptors recorded on electronic devices the pre-brief meeting at the shopping center, the disruption inside the church, and after the disruptors left the church.

17. Special Agents with HSI and the Federal Bureau of Investigation ("FBI") commenced an investigation. The following facts set forth information learned during the investigation.

**Promotion of the Operation**

18. On Saturday, January 17, 2026, several co-defendants organized the operation targeting Cities Church, which they dubbed "Operation Pullup," and electronically promoted the operation on the Internet via a flyer posted on Instagram and Facebook accounts.

19. On Sunday, January 18, 2026, at approximately 10:00 a.m., livestreaming commenced by co-defendant, Don LEMON, on his Internet-based YouTube livestream show, "@TheDonLemonShow," in the parking lot of a shopping center located at 1440 University Avenue W, St Paul, MN 55104. I have reviewed pertinent portions of the livestream video. I used the YouTube closed-captioning option to assist with transcriptions.

**Pre-Operation Meeting**

20. LEMON explained that the disruptors were planning an operation. LEMON, speaking with co-defendant and organizer, ARMSTRONG, identified the operation as "Operation Pullup" and stated it was a "clandestine" operation.

21. ARMSTRONG explained that she and other disruptors "show up somewhere that is a key location, [where the targets] don't expect us to come there, and we disrupt business as usual. That's what we're about to go do right now. We've had a lot of success with the times we've done "Operation Pullup."

22. LEMON livestreamed disruptors practicing chants they would use once they reached the Church.

**Conduct at Cities Church**

23. During LEMON's livestream, the camera focused on the outside of Cities Church, and LEMON entered only with audio equipment. The audio captured what appeared to be the church's pastor in the middle of a liturgical reading during a religious service.

24. At one point, an unknown female, later identified as ARMSTRONG, interrupted the religious service exclaiming that she was present to bring "judgment" to the house of God. Disruptors can then be heard yelling various chants, to include, "Hands up! Don't shoot!" Around this time LEMON's cameraman, later identified as co-defendant, Michael Walker BEUTE, entered the Church and recorded the disruption taking place within the Church. CULLARS-DOTY was among those in the church chanting.

25. Based on my review of video footage taken of the incident, it appears that the congregants are confused, scared and shocked by the disruptors' conduct. Based on the video, disruptors can be heard yelling various statements, such as, "This ain't God's house. This is the house of the devil," and other aggressive verbiage, such as "Out now!" Some disruptors are also seen blowing whistles.

26. Disruptors, including CULLARS-DOTY, can be observed on video blocking congregants' freedom of movement throughout the church.

27. While in the Church, LEMON stated, "I'm looking at a young man who's in the corner. He's frightened, he's scared, he's crying. People are leaving church. LEMON followed with, "But this is the beginning of what's going to happen here."

**<u>Facts Obtained from Other Video Footage</u>**

28. I observed other video footage of the incident to include the church's livestream of the religious service and other footage taken by co-defendants on their social media accounts. In those videos, I heard the various chants of the disruptors, to include, "Hands up! Don't shoot!" and I observed a disruptor standing in front of the pastor as the pastor is pointing towards the exit of the church directing the disruptors to leave.

29. In the videos, I observed a female congregant in the corner of the church holding two toddlers in a protective manner with a look of fear.

30. According to St. Paul Police Department (SPPD) and video footage obtained from the incident, a victim (Victim 1) injured her arm exiting through the Cities Church side door while trying to assist another congregant evacuate the church during the mass disruption.[1] Per the SPPD report, Victim 1 stated that "they were terrorized, our children were weeping, college students and young women were sobbing, it was impactful and it will take time to work through." (It should be noted that the report for this incident states it occurred January 19, 2026, I know the incident occurred on January 18, 2026.)

## TECHNICAL TERMS

31. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling

[1] On January 25, 2026, I contacted Victim 1 telephonically to follow-up on the status of her injury. During that call, Victim 1 provided the following information: On January 20, 2026, she saw a doctor about her arm, as she suspected it was broken. After an examination, which included an x-ray, the doctor said the x-ray came back negative for a fracture but diagnosed her with deep bone bruising and recommended that she return for magnetic resonance imaging (MRI) if her arm has not healed in three weeks, as ligament damage is a possibility.

communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communication, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images.

This storage media can contain any digital data, including data unelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, available media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time,

combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer com1ected to that antenna can mathematically calculate the ante1ma's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 “wi-fi” networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit access to the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply “IP address”) is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet

service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, coru1ections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

32. Based on my training, experience, and research, I know that the SUBJECT DEVICE has capabilities that allow them to serve as "a wireless telephone, digital camera, portable media player, OPS navigation device, and PDA." In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

33. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

34. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICE because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate

conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

g. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

h. Manner of Execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

i. Return of Property. If law enforcement agents determine that the SUBJECT DEVICE is no longer necessary to retrieve and preserve the data, and the SUBJECT DEVICE is not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(c), the SUBJECT DEVICE will be returned, upon request.

35. Based on all of the foregoing facts, I submit that there is probable cause to believe that CULLARS-DOTY has committed the SUBJECT OFFENSES and that the items to be seized set forth in Attachment B, are

evidence, fruits, and instrumentalities of the following SUBJECT OFFENSES and will be found in the SUBJECT DEVICE described in Attachment A.

Timothy M. Gerber
Special Agent, HSI

Subscribed and sworn to before me telephonically on
March 13, 2026:

UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## PROPERTY SUBJECT TO SEARCH

The following property is subject to search pursuant to this Search Warrant:

1. A dark purple/black Apple iPhone with a clear case that was seized from Monique Cassandra CULLARS-DOTY's person on or about February 27, 2026, by HSI SA's (the "SUBJECT DEVICE").

2. The SUBJECT DEVICE is currently in custody of Homeland Security Investigations and located in the District of Minnesota at the HSI Field Office.

## ATTACHMENT B

### ITEMS SUBJECT TO SEIZURE

All of the following records and information on the SUBJECT DEVICE described in Attachment A, are subject to seizure pursuant to this Search Warrant as evidence, fruits, and instrumentalities of the following SUBJECT OFFENSES, namely, (a) Conspiracy Against Rights Secured by Federal Law, namely, the Free Exercise of Religion at a Place of Religious Worship Secured by the FACE Act); and (b) Intimidation and Interference with Exercise of Religion at a Place of Religious Worship, in violation of 18 U.S.C. §§ 241 and 248(a)(2):

1. For the period of January 1, 2026, through PRESENT, inclusive, all of the following records and information:

a. Call log and related call data showing all incoming and outgoing calls to and from the SUBJECT DEVICE;

b. Any and all text messages, messages sent via telephone messenger applications, emails (including those sent, received, deleted and drafted), instant messages, photographs, videos, Facebook posts, Instagram posts, FaceTime logs, Google Voice calls, and other electronic media evidencing or relating to (a) planning, organizing, scheduling, and commission of the SUBJECT OFFENSES and other organized protest activity; (b) subsequent communications regarding the SUBJECT

OFFENSES and other organized protest activity; and (c) other communications, activities, and associations that CULLARS-DOTY had with any of the indicted co-defendants and/or other as yet unidentified persons who participated in the planning or commission of the SUBJECT OFFENSES.

c. Internet activity (including browser history, web page logs, downloads, postings on websites, search terms entered by the user, firewall logs, caches, cookies, and "bookmarked" or "favorite" web pages) evidencing or relating to (a) planning, organizing, scheduling, and commission of the SUBJECT OFFENSES and other organized protest activity; (b) subsequent communications regarding the SUBJECT OFFENSES and other organized protest activity; and (c) other communications, activities, and associations that CULLARS-DOTY had with any of the indicted co-defendants and/or other as yet unidentified persons who participated in the planning or commission of the SUBJECT OFFENSES.

d. Photographs or videos evidencing or relating to planning, organizing, scheduling, and commission of the SUBJECT OFFENSES and other organized protest activity; and

e. Any information regarding the schedule or travel of CULLARS-DOTY or the indicted co-defendants, including geolocation information, emails, and text messages.

2. Financial records (e.g., bank or credit card records) evidencing interstate travel to/from St. Paul, Minnesota on or about January 18, 2026;

a. Contact lists, including names, telephone numbers, e-mail addresses, and other contact information of CULLAR-DOTY's associates;

b. Passwords, encryption keys and other access devices that may be necessary to access the SUBJECT DEVICE;

c. Records of Internet Protocol addresses used; and

d. Contextual information necessary to understand the other items to be seized described in this attachment.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant

to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigative agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# SEARCH WARRANT ADDENDUM

1. In conducting the search authorized by this warrant, the government shall make reasonable efforts to utilize search methodology that avoids searching files, documents or other electronically stored information which is not identified in the warrant.

2. If electronically stored data, information, documents or other records have been identified and seized by the government pursuant to this warrant, the government may retain the electronic storage device (e.g., computer, hard drive, mobile device, smartphone, cell phone). The person from whom the electronic storage device was seized may request that the government provide him or her with electronic copies of the data, information, documents or other records by making a written request to the United States Attorney's Office, identifying with specificity the data, information, documents or other records sought to be copied. The government must respond to all such requests within a reasonable amount of time and must provide a copy of the electronically stored data, information, documents or other records requested unless the copies requested constitute contraband, instrumentalities, or property subject to forfeiture.

3. Nothing in this warrant shall limit or prevent the government from seizing the electronic storage device as contraband or

an instrumentality of a crime or commencing forfeiture proceedings against the electronic storage device and the data contained in the device. Nothing in this warrant shall limit or prevent the owner of the electronic storage device, files, software, hardware, data, information, documents or other records from (a) filing a motion with the Court pursuant to Rule 41 (g) of the Federal Rules of Criminal Procedure for the Return of Property, or (b) making a request of the government to return certain specified electronic storage devices, files, software, hardware, data, information, documents or other records.

4. The government shall establish a search methodology governing the review of seized data to ensure that no attorney-client privileged communications will be inadvertently reviewed by the prosecution team. In the event that data seized pursuant to this warrant are identified by the government as possibly containing attorney-client privileged communications, an attorney for the government, who is not a member of the prosecution team and who is not participating in the search, shall act as a "taint team" to set up an ethical wall between the evidence and the prosecution team that will prevent any privileged material from getting through to the prosecution team.

# UNITED STATES DISTRICT COURT

for the
District of Minnesota

IN THE MATTER OF THE SEARCH OF THE DARK PURPLE/BLACK IPHONE WITH A CLEAR CASE DESCRIBED IN ATTACHMENT A

**SEALED BY ORDER OF THE COURT**

Case No. 26-mj-277 (SGE)

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer for the government requests the search of the following person or property located in the State and District of Minnesota:

**See Attachment A, incorporated here.**

The person or property to be searched, described above, is believed to conceal:

**See Attachment B, incorporated here.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before 03/27/2026
*(not to exceed 14 days)*

X in the daytime 6:00 a.m. to 10 p.m. _ at any time in the day or night as I find reasonable cause has been established.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the Magistrate Judge by email to usamn.cpss@usdoj.gov.

Date and Time issued: March 13, 2026, 3:49 p.m.

*Judge's Signature*

City and State: Minneapolis, MN

The Honorable Shannon G. Elkins
United States Magistrate Judge
*Printed Name and Title*

*AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)* *USAO#2026R00046*

**Return**

| *Case No.:* | *Date and time warrant executed:* | *Copy of warrant and inventory left with:* |
|---|---|---|

*Inventory made in the presence of :*

*Inventory of the property taken and name of any person(s) seized:*

**Certification**

*I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated clerk of courts.*

Date:

*Executing officer's signature*

*Print name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 26-mj-277 (SGE)

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE DARP PURPLE/BLACK IPHONE WITH A CLEAR CASE DESCRIBED IN ATTACHMENT A | **SEALED BY ORDER OF THE COURT**<br>PETITION OF THE UNITED STATES FOR AN ORDER SEALING SEARCH WARRANT, AFFIDAVIT, RETURN, PETITION AND ORDER FOR SEALING |

COMES NOW the United States of America by its undersigned attorneys and in support of its Petition for an Order Sealing Search Warrant, Affidavit, Return, and Petition in the above-captioned matter, states as follows:

1. On March 13th, 2026, The Honorable Shannon G. Elkins issued a warrant authorizing the search of dark purple/black Apple iPhone with a clear case.

2. The Affidavit of Special Agent Timothy Gerber submitted in support of the search warrant, sets forth facts regarding an ongoing investigation into violations of Title 18, United States Code, Section 241, Conspiracy Against Rights and Title 18, 248(a)(2), Interference with Religious Freedom at Place of Worship.

3. The search warrant documents presented to this Court for *in camera* review include detailed and highly sensitive investigative information. Disclosure of the information would jeopardize an ongoing investigation into alleged criminal offenses and the privacy of individuals unlikely to be, and/or who may ultimately not be indicted.

4. Nondisclosure of the search warrant documents is necessary to prevent the ongoing investigation from being compromised. Immediate public filing of the

search warrant documents would, *inter alia*, compromise details about the nature, extent, and scope of the investigation.

5. The Court's power to prevent disclosure of its files, especially for a limited period of time, is well established. This general power has been recognized by the United States Supreme Court.

> It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over some records and files and access has been denied where court files might have become a vehicle for improper purposes.
>
> *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).

6. The Eighth Circuit has recognized the Court's specific power to restrict access to search warrant documents like those at issue here:

> We hold that the qualified first amendment right of public access extends to the documents filed in support of search warrants and that the documents may be sealed if the district court specifically finds that sealing is necessary to protect a compelling government interest and that less restrictive alternatives are impracticable.

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988).

7. The Eighth Circuit and district courts within the Circuit have recognized that the circumstances surrounding ongoing investigations constitute compelling government interests warranting the sealing of search warrant documents. For example, the Eighth Circuit has approved sealing search warrant documents that "describe[d] in detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved," resulting in "substantial probability that the government's on-going investigation

would be severely compromised if the sealed documents were released." *Gunn* at 574. Other compelling interests have similarly been recognized as justifying sealing. *Certain Interested Individuals, John Does I-V, Who Are Employees of McDonnell Douglas Corporation v. Pulitzer Publishing Co.*, 895 F.2d 460, 466 (8th Cir. 1990) ("[w]here no indictments have issued against persons allegedly involved in criminal activity, there is a clear suggestion that whatever their truth, the Government cannot prove these allegations. . . .All citizens, whatever their real or imagined past history, are entitled to the protection of a grand jury proceeding.").

8. Moreover, the Eighth Circuit has recognized that search warrant affidavits permeated with references to individuals other than the subjects of the search warrant and/or with information revealing the nature, scope and direction of the government's ongoing investigation may be sealed not only because they present compelling government interests justifying sealing, but also because less restrictive alternatives to sealing are in such circumstances impracticable. *Gunn*, 855 F.2d at 574.

9. Based upon the foregoing and all the files and proceedings to date, the United States respectfully requests that this Court issue an Order Sealing the Warrant, Application, Affidavit of Special Agent Timothy Gerber, Return, this Petition, and the Sealing Order until the close of business on March 13, 2027, unless a compelling interest is shown by the United States for a continuation of the sealing.

Dated: March 13, 2026

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ORLANDO SONZA
Counsel
Civil Rights Division

/s/ ***Megan Frederick***
MEGAN FREDERICK
Trial Attorney, Criminal Section
Civil Rights Division

FLAVIO De ABREU
Special Assistant United States Attorney
District of Minnesota

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 26-mj-277 (SGE)

IN THE MATTER OF THE SEARCH OF THE DARK PURPLE/BLACK IPHONE WITH A CLEAR CASE DESCRIBED IN ATTACHMENT A

**SEALED BY ORDER OF THE COURT**

ORDER FOR SEALING

This Court, having reviewed the Petition of the United States herein, finds that the United States has shown a compelling interest in the sealing of documents in the above-captioned matter because:

a. Nondisclosure of the search warrant documents is necessary to prevent the ongoing investigation from being compromised.

b. Nondisclosure of the search warrant documents is necessary to protect the privacy of individuals unlikely to be, and/or who may ultimately not be indicted.

This Court also finds that less restrictive alternatives to sealing are impracticable or not appropriate.

It is therefore:

ORDERED that all documents filed in the above-captioned matter are hereby sealed until the close of business on March 13, 2027.

IT IS FURTHER ORDERED that these documents will be unsealed at the above time unless further compelling interest is shown by the United States for continuing this Order for an additional period of time.

March 13, 2026
Date

The Honorable SHANNON G. ELKINS
United States Magistrate Judge