UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHANE RYAN BOLLMAN (14),<br><br>Defendant. | Criminal No.: 26-25 (14) (LMP/DLM)<br><br>**MOTION TO DISMISS SUPERSEDING INDICTMENT**<br><br>***Oral Argument Requested** |

MOTION

COMES NOW Shane Bollman, through counsel, and hereby moves the Court pursuant Fed.R.Crim.P. 12, to dismiss the superseding indictment as it relates to Mr. Bollman. Dismissal is warranted under two distinct provisions of Rule 12. First, Rule 12(b)(3)(B)(v) provides that an indictment may be dismissed for "failure to state an offense." An indictment fails to state an offense if the allegations therein, even if true, would not meet the elements of the crime. Whether the allegations fail to state an offense is a legal question. Second, under Rule 12(b)(1), a court must dismiss an indictment if it can "can determine without a trial on the merits" and "*as a matter of law*," that "the government is incapable of proving its case beyond a reasonable doubt." *United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010) (Gorsuch, J.).

The allegations in the indictment against Bollman, if true, do not allege a crime. The Government cannot prove the material allegations against Bollman in the indictment. And, the statute under which Mr. Bollman is charged is unconstitutional because it lacks

a jurisdictional hook, e.g. no impact on state commerce is required by the subdivision of the FACE Act under which Mr. Bollman is charged. For these and other reasons discussed further below, the indictment must be dismissed as against Shane Ryan Bollman (14).

FACTS[1]

**1. Background.**

Defendant Shane Bollman is from Texas. He resides in Los Angeles, California. Mr. Bollman works as a photojournalist and in the clothing industry, credentials below.




[1] Defendant incorporates by reference the record developed in this case thus far, and specifically Doc. 595 and its attached exhibits. Mr. Bollman also submits his own additional exhibits.

*See* Dec. of Counsel, Ex. A at 2. Because Mr. Bollman is a journalist, he covers current events. For example, he photographed unrest at the Texas State Capitol over redistricting:







Ex. C. Mr. Bollman also photographed protests in Los Angeles, example below:



Ex. D. Bollman also photographed the 2025 fires in Los Angeles, and his coverage of that event was incorporated into various newscasts, such as the still shots from NBC below:







Ex. E at 2-3. As the NBC news broadcast notes, Mr. Bollman's photojournalism focuses

on the ‘human toll’ of the events he covers with his camera. *Id.* Mr. Bollman’s photography is striking, artistically composed:




Ex. F.

At the risk of stating the obvious, when Mr. Bollman covered the unrest at the Texas State Capitol, he did not thereby become part of the protest, nor part of the legislature, nor a sheriff’s deputy. He also did not become part of the protest he covered in Los Angeles, just like he did not become a firefighter when he covered their heroic work combating the devastating Los Angeles fires. Mr. Bollman is a photojournalist, engaged in newsgathering. He is not a firefighter, protester, politician, sheriff deputy, nor any of his other photography subjects. A journalist does not become their subject by covering it, as a matter of law. *See Goyette v. City of Minneapolis*, 2021 WL 5003065, at *5 (D. Minn. 2021)

Since the seizure of his photography equipment, Mr. Bollman’s ability to continue

covering current events as a photojournalist has been greatly curtailed. The government also seized the only copies of much of his work, thereby cutting off his access to his own photojournalistic works. The prosecution of Mr. Bollman has largely curtailed his continuing to gather news and report on current events as a photojournalist, thus greatly chilling his protected First Amendment activity as a member of the free press.

**2. Events of January 17th and 18th, 2026.**

Shane Bollman, a photojournalist, arrived in Minnesota by plane on January 17, 2026 for the purpose of covering newsworthy events surrounding Operation Metro Surge as a member of the free press. He left four days later, flight itinerary below.

Name: SHANE BOLLMAN

| FLIGHT | SEAT |
|---|---|
| DELTA 792 | 31B |
| DELTA 2110 | Seat assign at gate |

Visit **delta.com** or download the **Fly Delta app** to view, select or change your seat. If you purchased an upgrade or a Trip Extra, please visit **My Trips** to access a receipt of your purchase.

| Sat, 17JAN | DEPART | ARRIVE |
|---|---|---|
| DELTA 792<br>Delta Main Basic (E) | LOS ANGELES<br>06:00AM | MPLS-ST PAUL<br>11:36AM |

| Wed, 21JAN | DEPART | ARRIVE |
|---|---|---|
| DELTA 2110<br>Delta Main Basic (E) | MPLS-ST PAUL<br>07:10AM | LOS ANGELES<br>09:32AM |

Ex. B. On January 18, 2026, Mr. Bollman saw the digital flyer and twenty minutes later he was on a city bus with his SLR camera, press credentials, and warm winter clothing, including a bright red parka. Bollman wore under his coat his credentials and his camera.




Ex. A at 3.

Mr. Bollman had no communication, whether by phone, message, email, social media, or in person, with any of his co-defendants prior to January 18, 2026, and had never met any of them before that day. Mr. Bollman was present at the parking lot meeting. See Doc. 595 Ex. 1. For brief portions of the call-and-response chant in the Cub Foods parking lot, Bollman did appear to participate in order to be allowed to be present. Mr. Bollman never chanted inside the church, and engaged only in newsgathering activities therein. See Doc. 595 Ex. 1. At the Cub Foods parking lot meeting, no information was disclosed to Bollman about what the location, plan, or reason for the protest were.

Mr. Bollman did not have any communications with any of his co-defendants prior to the protest. He did not accede to any agreement or joint undertaking to do anything. He

came to the event alone, as a photojournalist who knew no one, and afterwards he left and took notes at a coffee shop to document what he had photographed. That was his entire involvement with the event and his news coverage thereof.

Throughout the roughly twenty-five-minute protest, Bollman can be seen engaged solely in newsgathering, often being apart from all other persons so he could get the right angle for photographing the event.

Below are stills taken from videos of the protest, that show Mr. Bollman engaged only in photojournalism. It is apparent he is not obstructing, yelling, chanting, protesting, threatening, harassing, or otherwise disturbing anyone.



Ex. G. Because Mr. Bollman moved about the room seeking photo angles, he was always getting out of everyone's way, and never blocking anyone from doing anything at all:



Ex. H. Even when he was close to protesters and parishioners, he can be seen in every video carefully avoiding influencing anyone's direction or behavior. The below photo shows him working while two parishioners casually point and plan their unimpeded exit.



Ex. I.

There is no evidence of Bollman engaging in any illegal behavior inside the church. He did not threaten anyone. He did not yell, chant, or sing in the church. He did not block anyone's path. He did not raise a fist, shout, or march. The only words he spoke inside the church were asking one person for an interview, which they declined. Mr. Bollman then moved away from the person without incident, never blocking or crowding them.

**3. Charges Against Mr. Bollman.**

Shane Bollman is charged by Superseding Indictment in Count One with "Conspiracy Against Right of Religious Freedom at Place of Worship." Doc. 144 at 3. The indictment alleges Bollman conspired to "oppress, threaten and intimidate" another "in the free exercise and enjoyment of rights and privileges secured to them … namely, exercise of the First Amendment right of religious freedom at a place of religious worship, as secured by Title 18, United States Code, Section 248(c)," all in violation of "Title 18, United States Code, Section 241 (Conspiracy Against Rights). Doc. 144 at 4-5.

The indictment then lists 41 overt acts, only one of which contains Bollman's name: Overt Act #13, which alleges that he was present for a "pre-operation briefing led by" co-defendants. Doc. 144 at 8-9. There are **no other overt acts** attributed to Bollman in the superseding indictment. *See* Doc. 144.

Mr. Bollman is charged in Count Two with the substantive offense under 18 U.S.C. § 248(a)(2). Count Two alleges that all defendants "each aiding and abetting one another, by use of force, threat of force, and physical obstruction, intentionally injured, intimidated, and interfered with, and attempted to injure, intimidate, and interfere with multiple persons,

including the Church's congregants, clergy, and staff, who were then lawfully exercising and seeking to exercise the First Amendment right of religious freedom at a place of religious worship." Doc. 144 at 17-18. Count Two also alleges that one congregant was injured. *Id.* at 18.

Although the superseding indictment alleges that co-defendants advised those present at the Cub Foods parking lot about a church, it is conspicuously obvious from the video evidence that co-defendants did not disclose at the meeting that the location was a church, nor why others allegedly wanted to hold a protest there. (Doc. 595 Ex. 1).

Mr. Bollman was a photojournalist present at a protest at Cities Church on January 18, 2026. Mr. Bollman was wearing his press credentials on a lanyard around his neck. When he was arrested, he carried his press credential card in his wallet. The government, it appears, did not document this fact in any photograph disclosed to date. Mr. Bollman had no communication with, and did not know any of his co-defendants prior to arriving at the Cub Foods parking lot of January 18, 2026.

DISCUSSION

The Court should dismiss the Indictment against Mr. Bollman for a number of reasons. First, the charging statute is unconstitutional because it lacks a jurisdictional hook.

Second, the statute and the Indictment fail because they seek to enforce the "rights secured" by the "First Amendment" against private civilians, when the First Amendment only restricts government action.

Third, all of the conduct described in the indictment as to Mr. Bollman, if true and if proven at trial, would not establish a violation of the charged statutes, assuming *arguendo*

their constitutionality. The Government also cannot prove the conduct in the Indictment as against Bollman, because he in fact, objectively, only engaged in newsgathering inside the Church, and did not engage in any protesting, threats, intimidation, or physical obstruction of ingress, egress, or other movement. The operative indictment therefore does not state an offense as to Mr. Bollman.

Fourth, Mr. Bollman's conduct is protected by the First Amendment in two distinct ways: both directly, and as a matter of statutory construction. Fifth, the charging statute is vague and overbroad, and does not give a reasonable person fair notice of what conduct is criminalized. Sixth, Bollman is caught up in a selective and vindictive prosecution based on a viewpoint the government believes he holds as a photojournalist who silently and objectively photographs current events.

For all of these reasons,[2] the Court must dismiss the Indictment as against Mr. Bollman with prejudice.

**1. What is Required in an Indictment.**

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to identify the "provision of law" a defendant allegedly violated and provide a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Those are "separate requirements and not a restatement of one another." *United States v. Camp*, 541 F.2d 737, 740 (8th Cir. 1976). If an indictment's statement of

[2] Many of these legal issues are discussed at greater length and depth in the motions of co-defendants, including Docs. 547, 592, 609, 610, 677, and 687. While that extensive briefing is hereby incorporated by reference, Mr. Bollman files his own separate motion to dismiss because of the number of unique factual circumstances of his case.

essential facts omits an "essential element of the charge," "the omission is not cured by the bare citation of the charging statute," and the charge must be dismissed as "insufficient." *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988); *see also United States v. Olson*, 262 F.3d 795, 799–800 (8th Cir. 2001) (dismissing bank robbery count for failure to plead facts showing "force and violence" or "intimidation").

It must also provide two key constitutional safeguards for the defendant: first, it must contain every element of the offense and sufficiently apprise the defendant of what he or she must be prepared to meet; and second, it must allow the defendant to plead double jeopardy in a future case. *See Russell v. United States*, 369 U.S. 749, 763-64 (1962); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974) (an indictment must fairly inform a defendant of the charge against which he or she must defend, and allow him to plead double jeopardy in a future prosecution); *United States v. Steffen*, 687 F.3d 1104, 1109 (8th Cir. 2012)(accord).

Inherent in the two safeguards provided by an indictment is that a defendant must have notice of what conduct and *mens rea* he or she is being accused of. A defendant is entitled to an indictment that states every element of every offense. *See Jones v. United States,* 526 U.S. 227, 232 (1999). Additionally, "[t]he indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime." *United States v. Pirro,* 212 F.3d 86, 93 (2d Cir. 2000). Tracking the statutory language is particularly insufficient where the law at issue, like the civil rights conspiracy statute, fails to identify the conduct it prohibits and instead incorporates by reference rights defined elsewhere (namely, in the Constitution and in federal laws). *See United States v. Lanier*,

520 U.S. 259, 265 (1997) ("[I]n lieu of describing the specific conduct it forbids, each statute's general terms incorporate constitutional law by reference").

As to Mr. Bollman, and his one and only alleged overt act, the indictment on its face does not state an offense, and fails to state even the basic statutory elements of the offenses, much less the specifics required for pleading under civil rights statutes like the FACE Act. *Lanier*, 520 U.S. at 265.

**2. The §248(a)(2) as Unconstitutional Exercise of Congressional Power.**

In order to act, Congress needs authority. *United States v. Morrison*, 529 U.S. 598, 607 (2000). That authority is often derived from the Commerce Clause; not all robberies are illegal, just those that impact interstate commerce. *See* Hobbs Act, 18 U.S.C. § 1951. Or those that target federally insured banks. 18 U.S.C. § 2113. This basic tenet of constitutional law was ignored by Congress when it added subdivision (a)(2) to §248 during the legislative process. This has been described as happening both to show the supposed folly of subdivision (a)(1), or to appease certain legislators to gain enough votes for passage. The reason for the ignorance matters naught; the result is the same.

What matters is that Congress passed a statute that on its face criminalizes purely intrastate, local conduct, with no impact on interstate commerce, no jurisdictional hook element, and no congressional findings about any impact on interstate commerce, or otherwise. Because of that, Section 248(a)(2) is unconstitutional. And because it is so obviously, facially unconstitutional, the United States Department of Justice has – upon information and belief – never before charged anyone with a violation of that subdivision before this case.

Other sections of the FACE act contain a jurisdictional hook element, like the Hobbs Act does. *See* 18 U.S.C. § 247.[3] Such is not the case with Section 248(a)(2). *Torres v. Lynch*, 578 U.S. 452, 457 (2016) (explaining that a jurisdictional hook element expressly ties the statute to the power to act, and limits the conduct the statute will reach thereby.) Congress did not include a jurisdictional hook element in Section 248(a)(2), but cited two sources of legislative power in enacting the FACE Act in its entirety: its power to regulate interstate commerce under Article I, Section 8, and its general remedial power under Section 5 of the Fourteenth Amendment. *See* Pub. L. No. 103-259, 108 Stat. 694 (1994). But the Commerce Clause does not permit Congress to regulate the intrastate, non-economic conduct criminalized in Section 248(a)(2). *See United States v. Lopez*, 514 U.S. 549, 567 (1995). And Section 5 of the Fourteenth Amendment cannot support Section 248(a)(2) unless the provision is read to contain a state action requirement which would not apply to Mr. Bollman, who is a private citizen and photojournalist. *See Morrison*, 529 U.S. at 619.

Commerce Clause authority extends to three broad, but not boundless categories: (1) the "use of the channels of interstate commerce"; (2) the "instrumentalities of interstate commerce, or persons or things in interstate commerce"; and (3) "those activities that substantially affect interstate commerce." *Lopez*, 514 U.S. at 558–59. Section 248(a)(2) plainly does not fit in to any of the three broad, but not boundless categories, because a church is not a channel, nor instrumentality of commerce: "violence against worshippers

[3] After the Supreme Court decided *Lopez*, Congress amended Section 247 through the Church Arson Prevention Act ("CAPA") to add a jurisdictional element, requiring that "the offense is in or affects interstate or foreign commerce." H.R. Rep. No. 104-621, at 7 (1996). That never happened for Section 248(a)(2) of the FACE Act.

at places of religious worship," cannot "reasonably pertain" to either of the first two *Lopez* categories. *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 63 (2d Cir. 2021) (Walker, J., concurring). And worship is not a commercial activity. *United States v. Anderson*, 771 F.3d 1064, 1067–68 (8th Cir. 2014)(explaining four factor test for substantial impact on interstate commerce.). Worship is not economic in nature; the statute does not contain a jurisdictional hook element; Congress made no express findings regarding Section 248(a)(2) and interstate commerce; and there is no link, much less a close, or unattenuated one, between worship, and interstate commerce. *Id.; accord Jingrong* 16 F.4th at 67. (Stating that "[t]he act of worship—separate from whatever commercial endeavors religious organizations may also engage in—is in no sense a commercial or economic activity."

Therefore, not a single factor supports finding the charged statute a constitutional exercise of Commerce Clause authority. Congress's attempt to use Section 5 of the Fourteenth Amendment to justify Section 248(a)(2) fails even more swiftly, because it can only be invoked to limit state action. *City of Boerne v. Flores*, 521 U.S. 507, 517 (1997); *Civil Rights Cases*, 109 U.S. 3, 17–18 (1883). The substantive charge in this case, thus, was not a lawful exercise of congressional power when enacted, and is unconstitutional. The *Dinwiddie* case does not change this outcome, because it did not analyze Section 248(a)(2) at all, only other subdivisions. *See United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996)

The charging statute is unconstitutional and Count Two must therefore be dismissed. Without the underlying substantive charge, the conspiracy charge must also necessarily fail, because Count One charges a conspiracy to violate Section 248(a)(2). This

glaring problem alone should result in dismissal with prejudice of the superseding indictment, but Mr. Bollman will discuss the other grounds for dismissal as well.

**3. The First Amendment Does Not Apply Against Private Citizens.**

Section 241 prohibits conspiracies that aim to cause "interference with rights established by the Federal Constitution or laws and by decisions interpreting them." *United States v. Kozminski*, 487 U.S. 931, 941 (1988). A fundamental precept of the First Amendment is that it "prohibit[s] only state action," *Hoekman v. Educ. Minnesota*, 41 F.4th 969, 977 (8th Cir. 2022). The superseding indictment names "the exercise of the First Amendment right of religious freedom at a place of religious worship, as secured by Title 18, United States Code, Section 248(c)" as the right Section 241 protects in this case. Section 248(c) is just a civil remedy provision, however, and does not create a right enforceable by criminal law. And of course, the First Amendment right to be free of government interference with freedom of worship cannot be the right protected or secured because it is "undisputed" that "a private entity acting on its own cannot deprive a citizen of First Amendment rights." *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012); *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 830 (1983)(The First Amendment "restrains only official conduct" and cannot be the right protected for violations of civil rights statutes by private actors.); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 283 (1993); *United States v. Price*, 383 U.S. 787, 799 (1966); *United States v. Guest*, 383 U.S. 745, 755 (1966).

The charged statute therefore cannot lawfully or plausibly be read to apply to proscribe the journalistic conduct of Mr. Bollman in covering the protest. Any contrary

interpretation of the statute would be absurd, and would also render the statute void for vagueness, because no ordinary person could reasonably discern such an interpretation, and therefore the statute does not provide fair notice of what is criminalized. *United States v. Williams*, 553 U.S. 285, 306 (2008). This defect in the indictment and charges must also result in dismissal of the superseding indictment as against Mr. Bollman.

**4. The Indictment Fails to State an Offense as Against Mr. Bollman.**

Rule 12 also allows a court to dismiss an indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). When considering a motion to dismiss for failure to state an offense, the Court must generally accept the government's factual allegations as true. *United States v. Hansmeier*, 988 F.3d 428, 436 (8th Cir. 2021) ("In [reviewing a motion to dismiss an indictment], we accept the allegations stated in the indictment as true, and ask whether they can form the basis of the charged offense.") However, where the objective facts make apparent that the government cannot prove its case, the Court need not take the allegations as true, especially where, as here, the allegations are vague, non-specific, and fail to state and offense. *See Pope*, 613 F.3d at 1260 (Gorsuch, J.).

An analysis of the sufficiency of an indictment to state an offense necessarily includes reference to the elements of the charged offenses; if the alleged facts cannot possibly make out an offense based on those elements, the indictment must be dismissed. *See Russell,* 369 U.S. at 768; *United States v. Welke*r, 75 F.4th 820, 822 (8th Cir. 2023). The elements of the charged violation of § 248(a)(2) are: (1) that the defendant used force, the threat of force, or physical obstruction (as that term is narrowly defined in the statute), (2) that the defendant acted with intent to injure, intimidate, or interfere with another

person; (3) that the other person was lawfully exercising religious freedom at a place of worship; and (4) that the offense resulted in bodily injury to another person. 18 U.S.C. § 248(a)(2); *see also United States v. Dinwiddie*, 76 F.3d 913, 917-18 (8th Cir. 1996) (generally discussing statutory language of § 248(a)(1).

Incorporated in the statute are "definitions" that are distinct from the ordinary meanings of many of the words used in the statute. Subsection (e) of § 248 contains statutory definitions. It defines "[to] intimidate" as "to place a person in reasonable apprehension of bodily harm to him." It defines "physical obstruction" as "rendering impassable ingress to or egress from … a place of religious worship, or rendering passage to or from such … place of religious worship unreasonably difficult or hazardous." And it defines "to interfere with" as "to restrict a person's freedom of movement."

§ 248 requires that a defendant *both* (1) engage in one of three prohibited actions (the use of physical force, issuance of a threat intended to put someone in fear of bodily harm, or physical obstruction that rendered impassable ingress to or egress from a building), *and* (2) did so with an intent to injure, or place in apprehension of bodily harm, or restrict the freedom of movement of a person who was lawfully exercising their religious freedom. The statute thus contains its own specific-intent provision. However, the First Amendment also imposes a specific intent requirement on any criminal statute when applied to protected First Amendment conduct. *Counterman v. Colorado*, 600 U.S. 66, 75 (2023).

As defined in the statute, the terms "injure, oppress, threaten, and intimidate" require more than conduct that is interruptive or unpleasant. *United States v. Magleby*, 420 F.3d

1136, 1143 (10th Cir. 2005) (holding that § 241 instructions to petit jury were flawed because the jury was allowed to consider the ordinary meaning of "oppress, threaten, and intimidate" rather than using a definition focused on true threats, and noting that "[m]any acts short of unlawful violence may constitute oppression or intimidation in the everyday sense of these words" ) (relying on *United States v. Lee*, 935 F.2d 952, 960 (8th Cir.1991) (R. Arnold, J., dissenting), *rev'd en banc*, 6 F.3d 1297 (8th Cir.1993)).

Additionally, § 248 contains a subsection with "rules of construction" that provide binding guidance to any court interpreting the reach of the statute's criminal provisions. Subsection § 248(d)(1) states that nothing in the statute shall be construed "to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution." 18 U.S.C. § 248(d)(1).

Mr. Bollman is accused on the face of the indictment with attending the parking lot meeting, where he did not learn of the object of the alleged plan. Doc. 144 at 8. His name does not appear anywhere else in the list of over overt acts alleged in the Superseding Indictment. As to Mr. Bollman, nothing more is alleged than that he was at the parking lot meeting. Charitably, the indictment can also be read to allege he was at the protest itself. The video evidence shows that he was, just as it shows he did not participate in a protest, but instead photographed it. The operative indictment does not and cannot allege that Mr. Bollman did any criminal act inside the church, because all he did was take photographs. He did not even conduct an interview. And of course, he did not chant, march, sing, shout, raise a fist, or otherwise engage in protest behavior. And he certainly did not threaten,

oppress, intimidate, or obstruct and render impassable or unreasonably hazardous any ingress or egress.

Without needing to perform any more complex legal analysis, the Court may find that the operative indictment simply fails to state an offense as to Mr. Bollman. It does not allege he did anything besides be present at a protest that others engaged in. His only conduct was newsgathering, which is protected by the First Amendment. The rule of construction in the statute itself removes Bollman's conduct from the reach of the statute. There is no plausible argument that Bollman intimidated, harassed, or threatened anyone, and statutes with such a specific intent require additional specificity in the indictment as to the charged conduct. *See e.g.*, *U.S. v. Neda Joudeh*, 2026 WL 2234671, No. 25-CR-290, M.D. Florida, Orlando Div., Mendoza, J., (Aug. 1, 2026)("The Supreme Court has recognized that 'there are crimes that must be charged with greater specificity' ... and the Sixth and Third Circuits have both determined that [threat crime] is the type of crime that may require additional context and specificity.") Specificity is required in pleading civil rights violations, and the operative indictment flatly fails to apprise Mr. Bollman of what actions and *mens rea* he is accused of, and must defend against.

The face of the operative indictment does not allege any overt acts by Bollman other than attending the meeting where the object of any plan was expressly not shared with him. Mr. Bollman objectively engaged in no conduct that would constitute a violation of Section 248(a)(2) if proven, because all he did was take photographs inside a church while avoiding getting in anyone's way. Because the indictment fails to state and offense against Mr. Bollman, it must be dismissed on this basis as well.

And if that conduct can somehow be interpreted to violate the statute, then the statute is unconstitutionally vague because a plain reading fails to put a defendant on notice of what conduct would violate the statute. *United States v. Williams*, 553 U.S. 285, 306 (2008).

**5. As Applied to Bollman, the First Amendment Requires Dismissal.**

**a. Constitutional Analysis.**

The First Amendment prohibits state action from "abridging the freedom of speech, or of the press." U.S. Const. Amend. I. That prohibition embodies a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times v. Sullivan*, 376 U.S. 254, 270 (1964). The press has a "'right to gather information.'" *See Branzburg v. Hayes*, 408 U.S. 665, 707 (1972); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980). Fed.R.Crim.P.12(b)(3) provides that a defendant alleging a defect in institution of the prosecution or a defect in the indictment must bring that challenge by a pretrial motion. Because the prosecution of a journalist for newsgathering is state action that abridges the freedom of the press, the federal criminal statutes at issue, as applied herein, violate the First Amendment, and thus present a defect in the prosecution and indictment of Mr. Bollman, which he challenges under Rule 12(b)(3)(A) and (B).

The Eighth Circuit has articulated a clear three-step framework for evaluating as-applied First Amendment challenges to statutes, including criminal statutes. As the court explained in *People for Ethical Treatment of Animals, Inc. v. Reynolds*, 173 F.4th 959 (8th

Cir. 2026), the analysis proceeds as follows: first, the court decides whether the activity at issue is speech protected by the First Amendment; second, the court determines what level of scrutiny applies by deciding whether the statute is content-based or content-neutral; and third, the court applies the appropriate level of scrutiny. *Id.*

An as-applied challenge is distinct from a facial challenge in an important respect. As the Eighth Circuit explained in *Phelps-Roper v. Ricketts*, 867 F.3d 883 (8th Cir. 2017), an as-applied challenge contests only the statute's application to the party before the court. If successful, the statute may not be applied to the challenger, but it remains otherwise enforceable. *Id.* This means that even a facially valid, content-neutral criminal statute can be rendered unenforceable against a particular defendant if the government's application of it is shown to burden First Amendment activity, or to be content-based or viewpoint-discriminatory. *Id.* Both circumstances apply here.

When analyzing whether application of a law comports with the First Amendment freedom of the press the Court must look to the circumstances, not just the indictment. *See Schenck v. United States*, 249 U.S. 47, 52 (1919); *Miller v. California*, 413 U.S. 15, 24-25, 34 (1973); *Cohen v. California*, 403 U.S. 15, 18-22 (1971). The Court must look to all the facts and circumstances to make any necessary factual findings. *United States v. Baxter*, 127 F.4th 1087, 1091 (8th Cir. 2025) (considering as-applied constitutional challenge to criminal statute prohibiting marijuana user from possessing firearm).

When a valid First Amendment challenge is raised, it is the Government's burden to establish the prosecution does not run afoul of the Constitution. *United States v. Stevens*, 559 U.S. 460, 480 (2010). It is well established in the law and in this District that the press

does not become part of a protest by covering the protest. *See Goyette v. City of Minneapolis*, 2021 WL 5003065, at *5 (D. Minn. 2021) (This Court exempted journalists from otherwise lawful dispersal orders, because a journalist reporting on an unlawful assembly does not equate to participating in an unlawful assembly.).

Mr. Bollman has raised a valid challenge that his prosecution for purely newsgathering activity violates the First Amendment freedom of the press, and thus the law as applied burdens protected First Amendment activity of the press. Here it is without question that Bollman's activity is protected First Amendment activity because he was engaged exclusively in newsgathering and journalistic conduct through the incident on January 18, 2026. Furthermore, even the Government alleges he engaged in a different kind of First Amendment expressive conduct; although it is incorrect in asserting that Bollman engaged in protest activity, the Government still as much as admits that Bollman did some First Amendment activity. But it was newsgathering, not protesting, that Bollman in fact did.

The question then turns to the appropriate level of scrutiny to apply to the law at issue here. When a facially neutral law "burdens expressive conduct," courts subject it to "intermediate scrutiny," asking "'if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'" *Dinwiddie*, 76 F.3d at 924. The selective application of the FACE Act to target certain messages seen by the government as criticizing ICE, while the government invites journalists to provide favorable coverage of agents doing immigration raids at churches, mosques, and schools, likely renders the statute "content-based" as applied

to this case, which would trigger "strict scrutiny." *Chiles v. Salazar*, 147 S. Ct. 1010, 1021 (2026). To satisfy strict scrutiny, the government must "prove its restriction on speech is 'narrowly tailored to serve compelling state interests.'" *Id.,* quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The government must abstain from regulating speech when the specific motivating ideology, opinion, or perspective of the speaker is the rationale for the restriction *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995); *accord Intervarsity Christian Fellowship/USA v. Univ. of Iowa*, 5 F.4th 855 (8th Cir. 2021) (court held that a nondiscrimination policy that is viewpoint-neutral on its face may still be unconstitutional if not applied uniformly.) Importantly, the Eighth Circuit has also held that content-neutrality does not automatically preclude strict scrutiny. In *Miller v. Ziegler*, 109 F.4th 1045 (8th Cir. 2024); *Telescope Media Grp. v. Lucero*, 936 F.3d 740 (8th Cir. 2019).

In this case the government cannot satisfy either standard for either charge against Mr. Bollman. The government has at least some interest in prohibiting disruption of worship in churches, but that interest is not unrelated to suppression of free expression; instead, the two interests are inextricably intertwined here. The government has a markedly lower interest in prohibiting journalism or newsgathering near or in houses of worship, and the only conduct Mr. Bollman engaged in was newsgathering, not protesting. Whether these constitute a substantial or important government interest is a question for the Court. However, regardless of the import of the interest, far from being "unrelated," it is directly related to the suppression of free expression and newsgathering/journalism, a First Amendment activity of the highest order. *Dinwiddie*, 76 F.3d at 924. Similarly, the restriction on the First Amendment activity is

also of the highest order, where a federal indictment, arrest, prosecution, and possible felony convictions and prison are the manner and means of the "restriction" on the free press used to pursue the government interest at stake. Therefore, the government fails even intermediate scrutiny. Strict scrutiny would be an insurmountable hurdle, and viewpoint discriminatory application of the law is presumptively invalid. *Chiles*, 147 S. Ct. at 1021. In this fatally flawed prosecution, by either side of the coin, the government loses the coin toss.

Incorporated by reference is the record established throughout this case by Mr. Bollman and others, which establishes that the government seeks to prosecute here based on a perceived viewpoint. Of course, Bollman has orally expressed a viewpoint herein. He is a photojournalist. Instead, his viewpoint is presumed by the government to be that of an anti-ICE protester or liberal journalist because of his presence at the protest in this case and his proximity to others, but Mr. Bollman has only objectively photographed current events. Nonetheless, he has been wrapped up with others against whom the government expressly seeks to silence, which is the *sine qua non* of viewpoint discrimination.

Mr. Bollman as much as stumbled upon the protest on January 18, 2026, shortly after arriving in town, and viewing a digital flyer that circulated widely online. But the government's application of the law to Mr. Bollman is intended to be viewpoint discriminatory, even though the government has now learned it may not in fact know Bollman's viewpoint, or has learned his viewpoint is perhaps neutral and objective. Nonetheless, Bollman engaged only in newsgathering. His journalistic conduct does not make him a member of a conspiracy *as a matter of law. See NAACP v. Claiborne Hardware*, 458 U.S. 886, 916-20 (1983); *Dowd v. Calabrese*, 589 F. Supp. 1206, 1214 (D.D.C. 1984). The

First Amendment itself requires dismissal of the indictment against Mr. Bollman.

The First Amendment does not prevent journalists from being prosecuted for criminal conduct, but it does mean that newsgathering is not criminal conduct in a free and civilized society. *Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975); *accord Quraishi v. St. Charles County*, 986 F.3d 831, 838 (8th Cir. 2021).

The First Amendment requires dismissal of the operative indictment as against Mr. Bollman because the government cannot satisfy either level of scrutiny in this case.

**b. Statutory Analysis.**

Subsection (d)(1) of 18 U.S.C. § 248—the "Rules of Construction" of the FACE Act—provides that nothing in the statute "shall be construed" to "prohibit any expressive conduct . . . protected from legal prohibition by the First Amendment to the Constitution." As has been well established, Mr. Bollman was engaged exclusively in protected expressive First Amendment conduct of a free press, and thus the statute by its own terms cannot be applied to his conduct. The conspiracy count must thereby necessarily fail for this reason as well.

This also highlights the failure of the pleading specificity in the indictment as to Mr. Bollman. Because the indictment does not tell Mr. Bollman what specific acts he did that were supposedly criminal, and does not plead the specific intent required by the statute, Mr. Bollman is left to guess at what he must defendant against. Nonetheless, the undisputed and objective facts of this case as to Mr. Bollman are that he engaged only in photojournalism and newsgathering conduct while present at the protest, and therefore did not commit any acts that the First Amendment, or the FACE Act on its own face, would

allow to be prosecuted in a criminal court in the United States.

**6. Civil Rights Laws Require a Specific Intent to Deprive, and Due Process Requires Fair Notice of What is Illegal, and Clearly Established Contours.**

The indictment fails for another reason: the civil rights statutes, like all laws, must provide "fair warning" of what conduct is thereby criminalized. *Screws v. United States*, 325 U.S. 91 (1945). Laws that do not are void for vagueness. *United States v. Williams*, 553 U.S. 285, 306 (2008). In the context of civil rights laws, *Screws*, *supra*, requires that the defendant have the specific intent to deprive a person of a federally protected right, and *Lanier* holds that the contours of the right allegedly violated must be be clearly defined, often by a prior case with similar facts. *United States v. Lanier*, 520 U.S. 259 (1997). *Lanier* requires fair notice to the defendant, and explicitly equated that requirement with the civil qualified immunity standard, often requiring a prior near-identical case on point to establish the contours of the right. *Id.* In *United States v. Mackey*, 652 F. Supp. 3d 309 (E.D.N.Y. 2023), the court held that due process fair warning of possible prosecution under § 241 is provided to defendants if, but only if, in light of preexisting law, the unlawfulness under the Constitution is apparent. Can 248(c), a civil remedy provision, be the right protected? Or is the right protected the First Amendment right to freedom of religion, which would only apply to constrain state action? As the Court works to resolve these questions, it is apparent that a reasonable person would not understand what the statute proscribes, and thus the law is void for vagueness here. Nothing about the instant case was clearly established previously, and the contours of the right – far from being clearly defined – are in fact the subject of much debate in this novel and first-of-its-kind case. Because the law

was not clearly established, Mr. Bollman cannot be prosecuted under it because he did not fair notice. *Lanier*, 520 U.S. 259.

Similarly, the specific intent required by the law is objectively not present as to Mr. Bollman, and is similarly not pled in the operative indictment, as to Mr. Bollman. *Screws,* 325 U.S. 91. There is no argument that he had the specific intent to deprive anyone of any federally secured right, and the indictment states nothing with specificity to the contrary. Thus, the indictment must be dismissed against Mr. Bollman on these grounds as well.

**7. Bollman is Swept Up In the Vindictive and Selective Prosecution of Others.**

As is well-established elsewhere, some of Mr. Bollman's co-defendants are famous persons who have drawn the ire of elected officials. *See* Docs. 594 and 611. Mr. Bollman is not famous, but he is a journalist charged for purely newsgathering conduct after an elected official specifically called for "everyone" present with the protesters in the church to be prosecuted.

In the criminal context, the Eighth Circuit has applied a parallel doctrine through the selective prosecution framework. In *United States v. Catlett*, 584 F.2d 864 (8th Cir. 1978), the court established a two-pronged test for selective prosecution claims grounded in First Amendment rights: the defendant must first demonstrate that they were singled out for prosecution while others similarly situated were not prosecuted for similar conduct, and second, that the government's discriminatory selection was based upon an impermissible ground, including the exercise of First Amendment rights. The court further held that criminal prosecution is presumed to have been undertaken in good faith and in a nondiscriminatory manner absent a sufficient showing to the contrary, and that a

mere allegation of selective prosecution does not entitle the defendant to discovery of the government's files.

The Eighth Circuit in *Osborne v. Grussing*, 477 F.3d 1002 (8th Cir. 2007) confirmed the broader principle that the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, on the basis of constitutionally protected speech. Mr. Bollman is being vindictively and selectively prosecuted because of official ire towards certain co-defendants, and "everyone" else who was present with them. This also requires dismissal of the indictment as against Mr. Bollman.

## CONCLUSION

The Court should dismiss the Indictment as against Mr. Bollman with prejudice.

## WORD COUNT COMPLIANCE

This motion and memorandum contain less than 7,100 words.

Respectfully submitted.

**ANDREW IRLBECK LAWYER CHTD.**

Dated: August 31, 2026

/s/ Andrew M. Irlbeck
Andrew M. Irlbeck, #392626
First National Bank Bldg.
332 Minnesota St., Ste. W1610
St. Paul, MN 55101
Phone: 612-986-3895
Fax: 651-223-5179
andrew@irlbecklaw.com
ATTORNEY FOR DEFENDANT BOLLMAN