UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHANE RYAN BOLLMAN (14),<br><br>Defendant. | Criminal No.: 26-25 (14) (LMP/DLM)<br><br>**MOTION TO SUPPRESS SEARCH WARRANTS, FOR RETURN OF PROPERTY, AND FOR *FRANKS* HEARING** |

MOTION

Shane Bollman is a photojournalist. The Government obtained warrants for his phone, iCloud, and SLR camera, and SSD memory cards, all without telling the Court that Mr. Bollman was a journalist, and without complying with the Privacy Protection Act. The Government's probable cause was based entirely on Mr. Bollman's newsgathering activities on January 18, 2026 at Cities Church in Saint Paul, but the various warrant applications all described his conduct misleadingly as protesting, obstructing, threatening, and sometimes chanting, when in fact his only conduct inside the church was newsgathering. The warrants do not contain probable cause on their face.

More troubling, however, is that the applications misled the reviewing magistrates into thinking they were authorizing the search of a protester, when in fact they were authorizing the search of a journalist. The Government now has all of Mr. Bollman's communications contained within his iCloud, and all of his photography contained in hundreds of gigabytes of storage devices, which of course reveal to the government a vast

array of newsgathering sources utilized by Bollman, and protected by law. Some of the search warrants were submitted after Mr. Bollman filed a motion for disclosure that included his press credentials, and conclusive proof of his status as a journalist engaged only in newsgathering at the church. That filing contained this image:



Irlbeck Dec. Ex. A; also included in Doc. No. 441 filed March 24, 2026.

After that, the Government submitted another search warrant application to a magistrate, still failing to identify Bollman as a member of the press. It is obvious from the video footage of the protest that Bollman is engaged solely in newsgathering conduct, so the Government always knew or had reason to know that he was a journalist. But after Mr. Bollman had publicly filed his press credentials and stills from the video identifying himself, the Government continued to misrepresent to the Court that Bollman was a protester, and not a journalist. That defeats the *Leon* exception.

The Government states it never executed the warrant for Bollman's phone. It states it tried, but could not obtain data from the phone. The phone has not been returned and remains seized. At the time of writing, Mr. Bollman's understanding of the status of the iCloud warrant is that it may be with a 'filter team,' that ostensibly will only review an approximate one-month range of information. The Government has already executed the warrant for the SLR camera and storage devices. The law contains an insurmountable burden for obtaining a TRO stopping the Government from searching Bollman's iCloud, but that search violates the Fourth Amendment, the First Amendment, and the Privacy Protection Act, and the harm that is done to Bollman and newsgathering by that search is irreparable harm by its very nature. The Government will never un-learn what it learns from reviewing all of his communications for newsgathering, in addition to all his communications with his wife, friends, employer(s), and possibly lawyers, press organizations, and other journalists.

But the Court can suppress that evidence, and must. The Court should also order all property returned to Mr. Bollman. Lastly, the Court should consider ordering the Government to destroy any copies of the information obtained from the warrants to limit the irreparable harm to Mr. Bollman, and to stop the ongoing derogation of the First Amendment protection of a free press that exists in our system of ordered liberty.

Mr. Bollman moves the Court pursuant to Rule 12 and Rule 41(h) to suppress the evidence from the unlawful searches. Mr. Bollman moves the Court pursuant to Rule 41(g) for return of all property as well.

To the extent necessary, Mr. Bollman also requests a "*Franks* Hearing," or at a minimum, that the Court receive the evidence provided by Bollman establishing the falsehoods and omissions in the warrant applications, and apply a *Franks* analysis to the warrant applications. *Franks v. Delaware*, 438 U.S. 154 (1978). In the end, the Court should suppress all evidence seized from Bollman by warrant, and order all of it returned.

## FACTS[1]

The government seized from Mr. Bollman an iPhone, an Apple computer, a camera and lens, multiple storage devices for the camera, and several paper notebooks. Ex. P at 2. The government also seized his iCloud. The government obtained at least three search warrants for Bollman's property and information, including a warrant for his iPhone (Exhibit J), camera and storage devices (Exhibit K), and for his iCloud (and perhaps, read

[1] Bollman incorporates by reference all facts included in his declaration of counsel, as well as the other facts of record in this case, including Doc. 595.

broadly, for his connected Apple computer) (Exhibit L). The government also sought at least one other warrant that was not signed. *See* Ex. M.

**1. Lack of Probable Cause.**

Each of the warrant applications claims Bollman protested inside the church and thereby engaged in threatening, obstructing, and interference with worship. Ex. J at 4-5; Ex. K at 6; Ex. L at 5. Each application states that "Bollman, obstructed the religious service and intimidated, harassed, oppressed, and terrorized the congregants, including young children,… ." *Id.* These allegations are demonstrably false.

Bollman never touched anyone inside the church. He never chanted. He did not raise a fist, sing, or march. He never got in anyone's way. He never obstructed or blocked anyone's ingress or egress. He did not engage in any protest activity whatsoever. In fact, all Bollman did inside the church was take photographs for the purpose of newsgathering and publication, examples below.



Ex. H. The applications each claim that Bollman was a protester, but the facts are otherwise:



Ex. G. Ignoring the First Amendment, the objective facts show Bollman physically apart from the others throughout, and visibly distinct in his bright red parka, never protesting.

The warrant applications continue with other incorrect information that is false as to Bollman, such as the allegation that "disruptors, including BOLLMAN, physically obstructed congregants as they attempted to leave the church." Ex. J at 5; Ex. K at 7. The iCloud warrant slightly amended that language, and said "Bollman, obstructed the religious service and intimidated, harassed, oppressed and terrorized congregants…" but then stated "some of the disruptors physically obstructed congregants as they attempted to leave the church." Ex. L at 5, 6. Other false and misleading statements are also included, such as "the co-defendants, circulated a flyer online… ," which of course, Bollman was not a part of, as the government was aware. Ex. L at 8. Each warrant application for Bollman's property and data leads the reader to believe Bollman was a protester who engaged in protest activity at the church. Each warrant application for Bollman's property leads the reader to believe that Bollman intended to disrupt a church service with his actions. Each

warrant application omits the material fact that Bollman was a journalist engaged only in newsgathering. Those errors were reckless or worse, and certainly material.

The earliest in time application also includes the false allegation that Bollman chanted while inside the church. Ex. J at 8 ("BOLLMAN was among those in the church chanting."). The earlier in time warrant also included another false allegation that "BOLLMAN, can be observed on video blocking congregants' freedom of movement throughout the church." Ex. J at 8. All of the warrant applications for Bollman's property and data also have a glaring, material omission: that he is a journalist, that the Privacy Protection Act applies. *See* Exhibits J, K, and L. The applications are replete with references to a thorough and exhaustive review of the various videos of the protest in the church. But every video shows Bollman engaged only in newsgathering conduct, so the government was on notice from the very beginning of this investigation that Bollman had not engaged in protest behavior.

On March 24, 2026, Defendant Bollman filed a motion for disclosure in this case which contained his press credentials, and highlighted the newsgathering nature of his conduct inside the church. Doc. No. 441. Thus, the government was explicitly notified by Mr. Bollman himself that he was a journalist no later than March 24, 2026. Nonetheless, on April 17, 2026 an agent swore out another warrant application to a magistrate in this District, again failing to notify the Court that the iCloud to be searched belonged to a journalist. Ex. L. Thus, that warrant was granted, due to the aforesaid material omissions and falsehoods in the application.

Bollman only took photographs and engaged in obvious newsgathering conduct, separate and apart from the protest group itself. The government reviewed those photographs on or about April 7, 2026, pursuant to Ex. K. The report on that examination includes the agent's interpretation of Bollman's photojournalism, stating "it shows his clear intent to document the anguish of innocent parishioners, while highlighting the acts of the agitators disrupting a place of worship." Ex. Q at 6. Bollman's photojournalism did indeed capture striking images of parishioners, such as this person praying during the protest:



Ex. T. Here is another parishioner reading from a bible to protest the protesters:



Ex. W. And here is a photo of another parishioner, hardly presented in a negative light:



Ex. V. Mr. Bollman also captured the pastor having a discussion with a protester:



Ex. U. Examples here are redacted in this public filing at the government's request.

**2. Lack of Nexus, Lack of Disclosure.**

The application for Bollman's phone stated that Bollman had the phone when he was arrested. Ex. J at 4. Nothing else in the application connects the phone to the alleged crimes at the protest. The application for Bollman's iCloud is similarly unpersuasive as to nexus, stating only that Bollman had a phone the government couldn't access with Ex. J., so now they sought his entire iCloud instead. Ex. L at 4. The application says evidence on the iCloud "may establish the 'who, what, why, when, where, and how" of the criminal conduct… ." *Id.* at 5. However, the application fails to explain at all why that would be, instead simply stating boilerplate jargon in a conclusory fashion. The application also fails

to state why the protected information of a journalist is needed, and why similar evidence could not be obtained through other means. The application also fails to identify Bollman as a journalist, or the information sought as likely to contain protected journalism sources.

The nexus provided for the phone, camera, and SD cards in the warrant application are that Bollman had the items with him upon arrest. Ex. K at 4-6. Magistrate Docherty already found this to be an insufficient nexus for at least one other search warrant. *See* 26-MJ-208. The nexus for the iCloud application is even weaker and more attenuated, referring back to the nexus for the phone, and making no distinction regarding the unbounded categories of information that would be searched and seized from the cloud storage network of Apple.

As to the camera and SD cards, the application also stated that Mr. Bollman had used the camera to document the protest at the church, including photos of him acting in an obvious journalistic, newsgathering manner. For whatever reason, the government did not also advise the Court that Mr. Bollman was behaving as a journalist. Mr. Bollman, perhaps due to less attention and notoriety, was apparently not independently identified by the Court as a journalist, as others were.

Nonetheless, the government included the below photos in its warrant applications for Mr. Bollman's undisclosed journalistic information:

(SUBJECT DEVICE-1) that was detained after BOLLMAN's arrest. (See images below)







Ex. K at 10. To be clear, these photos are from a warrant application, but that application failed to state that Bollman was a journalist, despite the obvious newsgathering conduct he is engaged in. Another example is below.







> 33. Below is an image of the seized Black Nikon Digital Camera D850 with SD Card inside (SUBJECT DEVICE-1) bearing the same white stripe near lens of camera as seen on camera used by BOLLMAN at Church.

Ex. K at 11. Nowhere does the application disclose to the Court that Mr. Bollman was in fact acting as a journalist. Instead, the application goes on immediately after those images

of Bollman alone and apart from others, to allege that "Disruptors, including Bollman, can be observed on video blocking congregants' freedom of movement throughout the church." *Id.* at 12.

This demonstrably false allegation as to Bollman sits in the application precisely where instead there should be a disclosure to the reviewing magistrate that this is a journalist's camera the court is being asked to authorize the search of. *Id.* The gravity of this error is difficult to overstate.

**3. Overbreadth, and Lack of Particularity.**

The warrants also sought overbroad categories of information and did not describe narrowly and with particularity the things to be searched. The warrant for Bollman's phone sought all information from January 1, 2026 "through present." Ex. J at 22. The iCloud application sought nearly unbounded access to all of Bollman's communications for a one-month period surrounding the protest. Ex. L at 25. Attachment B to the iCloud warrant seeks the "contents of all emails," "the content of all messages," from January 1 to January 31, 2026. It also sought all deleted information from that timeframe, all media stored on January 18, and all location and connection data from January 11 to January 18, 2026. *Id.*

The warrant for Bollman's camera and SD cards again sought all information from January 1, 2026 "through PRESENT," including photos, videos, all other files, GPS location, deleted files, passwords, encryption keys, and every other manner of information imaginable. Ex. K at 31-32.

Far from describing with particularity the things to be searched and seized, and tailoring them narrowly to avoid seizing protected journalistic information, the applications

sought overbroad, unbounded categories of information. In short, the entire digital footprint of a journalist was obtained by misleading the Court.

**4. Other Warrant Applications Denied Where Magistrate Aware Subject Was a Journalist, Though Not Disclosed by Government.**

On May 26, 2026, the Court filed an Order to Unseal five search warrant applications. Doc. 524. The Order states "The Court declined to sign the proffered search warrants and issued a written order under seal explaining that declination decision." *Id.* at 1. The warrants were resubmitted, and the Court again declined to issue them. *Id.*

> The Court found that three of the re-submitted warrants were subject to the Privacy Protection Act, 42 U.S.C. § 2000aa, that regulations promulgated by the U.S. Department of Justice appeared to not have been complied with, and that the fourth search warrant application simply failed to establish probable cause. On March 26, 2026, the United States notified the Court by email that it was withdrawing the search warrant applications.

*Id* at 1-2. At least three of those warrant applications sought information from members of the press, and the Court found the government had not - but must first - comply with the Privacy Protection Act. *In Re: Seach Warrants*, Doc. 4 Order at 2-3, 26-MJ-205. The Court found that a fourth application, for a protester's iCloud, did not contain probable cause. *Id.*

26-MJ-205 was an application for electronic records about "The Don Lemon Show." 26-MJ-206 was a similar application related to Georgia Fort's YouTube channel. 26-MJ-207 sought another defendant's YouTube channel's electronic information. 26-MJ-208 sought that Defendant's iCloud. 26-MJ-209 sought another defendant's electronic records associated with their phone number. All of those applications were submitted to Magistrate Docherty. *See In Re: Search Warrant Applications*, Order Denying

Applications, 26-MJ-205, Doc. 2 at 1-2. The Court denied all five applications on February 25, 2026, for various reasons, including lack of probable cause, lack of nexus, failure to disclose and comply with PPA, and other reasons. *Id.*

After that kerfuffle, the government submitted search warrant applications for Mr. Bollman's property and information: on March 13, 2026 (Ex. J – iPhone); on March 23, 2026 (Ex. K – Nikon camera and SD cards); and on April 17, 2026 (Ex. L – Amended iCloud Warrant). None of those applications disclosed to the Court that Mr. Bollman was a photojournalist and member of the press. None of those applications explained to the Court that Mr. Bollman's conduct in the church consisted almost entirely of taking photographs. Unlike with prior search warrant applications for co-Defendants, Mr. Bollman was, for whatever reason, not independently identified by the reviewing magistrates as a member of the press. Each of those search warrants was issued.

The application for the camera and SD cards did not explain to the Court that the reason the government wanted to search those items was precisely because Mr. Bollman had used them as a journalist to capture the events at the Church in the course of newsgathering. While this may have helped establish an otherwise absent nexus, it would have alerted the Court to the fact that it was being asked to authorize search warrants for a journalist's phone, camera, iCloud, storage devices, and perhaps computer. Perhaps because Mr. Bollman is not famous, the Court apparently did not identify him *sua sponte* as a journalist, the way Magistrate Docherty had for others. Having successfully concealed from these reviewing magistrates that they were each authorizing search warrants for a journalist's information covered by the Privacy Protection Act, the government obtained

and executed, or attempted to execute, each of those signed search warrants as to Mr. Bollman.

All of those applications occurred after Magistrate Docherty's Order denying search warrants, and at least one of those applications occurred after Mr. Bollman had filed a motion with the Court including his press credentials and still photos of him in the Church, identifying himself as a journalist.

DISCUSSION

**1. No Probable Cause.**

The Fourth Amendment says that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST., AM. IV. The Fourth Amendment's Warrant Clause protects individual privacy and liberty by "requir[ing] the interposition of a neutral and detached magistrate between the police and the 'persons, houses, papers, and effects' of citizens." *Thompson v. Louisiana*, 469 U.S. 17, 20 (1984) (citation omitted). Prior to issuing a warrant for search and seizure, a judge must find—typically based upon an affidavit—that there is probable cause to justify the intrusion. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004). The issuing magistrate must examine "all the circumstances set forth in the affidavit" to determine whether "there is a fair probability that [contraband] or evidence of a crime will be found in a particular place." *Illinois v.Gates*, 462 U.S. 213, 238 (1983).

"Whether probable cause to issue a search warrant has been established is

determined by considering the totality of the circumstances." *United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016). A warrant issued based only on a supporting affidavit that merely asserts conclusions rather than facts may be invalid. *See Aguilar v. Texas*, 378 U.S. 108, 113 (1964). In order to be valid, a search warrant must set forth "sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Notman*, 831 F.3d at 1088. There must be "a nexus between the [alleged illegal activity] and the place to be searched before a warrant may properly issue[.]" *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).

The Fourth Amendment plays a central role in protecting all citizens' rights, especially when law enforcement officers zealously carry out their duties.

> The point of the Fourth Amendment . . . is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

*Johnson v. United States,* 333 U.S. 10, 13-14 (1948); *see also Steagald v. U.S.*, 451 U.S. 204, 212 (1981) (warrant necessary because law enforcement "may lack sufficient objectivity to weigh correctly the strength of the evidence supporting the contemplated action against the individual's interests in protecting his own liberty"). Rather, it is designed to be meaningful, not merely a "rubber stamp for the police." *United States v. Ventresca*, 380 U.S. 102, 109 (1965).

Because the Bollman warrants all, taken at face value, only describe a person taking

photographs of a peaceful protest at a church, the warrants on their face do not contain probable cause. Additionally, the FACE Act does not criminalize peaceful protests. Setting aside the fact that Bollman did not protest, the false allegations that he did still would not describe a crime. The warrants fail on their face to describe probable cause, as Magistrate Docherty found previously with regards to a similar warrant.

Typically, analysis of a warrant is done within the 'four corners' of the document, and these warrants fail even that analysis. However, where a defendant makes a showing that a warrant was plausibly issued based material falsehoods and/or material omissions, he is entitled to have the reviewing court look beyond the face of the application.

**2. The *Franks* Analysis.**

Mr. Bollman is entitled to a *Franks* hearing/analysis upon his "substantial preliminary showing" contained herein. *Franks v. Delaware*, 438 U.S. 154, 155 (1978). The warrant process depends on the "'informed and deliberate determinations' by neutral and detached magistrates about the reasonableness, and therefore the lawfulness, of searches." *United States v. Glass*, 160 F.4th 563, 568 (4th Cir. 2025). When an affiant interferes with the magistrate's deliberations by deliberately or recklessly falsifying the affidavit in support of the warrant, the affiant short-circuits the Warrant Clause's required process, reducing it to "a nullity." *Franks*, 438 U.S. at 168. Material omissions are as important as material falsehoods included. Here, both exist.

"A search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with reckless disregard for the truth." a search warrant may

be invalid "if the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with reckless disregard for the truth." *United States v. Johnson*, 75 F.4th 833, 841 (8th Cir. 2023) citing *United States v. Conant*, 799 F.3d 1195, 1199 (8th Cir. 2015) quoting *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001).

A defendant is entitled to a *Franks* hearing when he "make[s] a substantial preliminary showing that the affiant at least recklessly disregarded the truth through a false statement or omission and that the false statement or omission is necessary to the finding of probable cause." *United States v. Reed*, No. 18-CR-143 (SRN/DTS), 2018 WL 6427897, at *2 (D. Minn. Dec. 7, 2018) (quoting *Franks v. Delaware*, 438 U.S. at 155-56) (internal quotation omitted).

The affidavit for each warrant for Mr. Bollman falsely and misleadingly states that Mr. Bollman threatened, obstructed and protested in a church, when in fact he only photographed an event that occurred, and in which he did not participate. The affidavit for the warrant for Bollman's phone also falsely claims he chanted in the church.

Each warrant application also contains a glaring and material omission: that Bollman is a journalist, and was acting as a journalist during the event in question. That this omission was material is beyond dispute: Magistrate Docherty repeatedly denied warrant applications in this case for failing to make that statutorily and constitutionally required disclosure about another journalist.

When the false information is removed, and the missing information is included, each of the warrant applications in related to Bollman lacks probable cause because what

is really sought is unbounded access to a journalist's entire phone, cloud, camera, and digital storage, based solely on his having engaged in journalism, a protected First Amendment activity of the highest order. The government misled the Court into issuing invalid and unlawful search warrants for a photojournalist's protected journalistic information, and the Court must suppress that information pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

**3. No Nexus for Phone, iCloud.**

Requiring a showing of "nexus," like staleness, is deeply rooted in the case law interpreting the Fourth Amendment. A finding of probable cause requires a search warrant affidavit to establish a nexus between evidence of a crime and the place to be searched. *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) (citing *United States v. Koelling*, 992 F.2d 817, 823 (8th Cir. 1993)). However, a court may not "arrive at probable cause simply by piling hunch upon hunch." *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004). In *United States v. Frangenberg*, 15 F.3d 100 (8th Cir. 1994), police sought a warrant after the suspect asked a pharmacist to refill a prescription under suspicious circumstances. The Eighth Circuit concluded that, because the warrant did "not indicate how [the suspect] was connected to the place to be searched[,]" it was doubtful that "the information in the warrant application, standing alone, provide[d] an adequate basis to conclude that there was 'a fair probability that pornography or evidence of a crime' would be found at" the home to be searched. 15 F.3d at 102 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

'The critical element in a reasonable search is not that the owner of property is

suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.' *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). Failure to provide such nexus information is as fatal to a probable-cause presentation as the failure to describe a crime. *United States v. Frangenberg*, 15 F.3d 100, 102 (8th Cir. 1994) (because the warrant did not indicate how suspect was connected to the place to be searched, it was doubtful that the application provided adequate basis for search).

While the camera and SD cards could at least be shown to have been at the protest being used to photograph the protest, nothing connects the iCloud or cell phone to the protest. This lack of nexus is facially fatal to the warrant as well.

**4. Overbreadth/Lack of Particularity.**

The warrants do not seek just the photos of the protest, or just Bollman's (nonexistent) communications with co-Defendants prior to the protest. Instead, they seek his entire digital footprint during the time period, and well beyond that in the case of the phone, camera and SD cards, which contained no temporal bounds.

The 'chief evil' which the Fourth Amendment was intended to address was the hated "general warrant" of the British crown. *Payton v. New York*, 445 U.S. 573, 583–84 (1980). General warrants gave British officials "blanket authority to search where they pleased" for evidence of law violations. *Id.* at 583 n. 21; *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("The Fourth Amendment was a response to the English Crown's use of general warrants, which often allowed royal officials to search and seize whatever and whomever they pleased while investigating crimes or affronts to the Crown"). The problem posed by

general warrants is “of a general, exploratory rummaging in a person’s belongings.” *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). Such is precisely the case here. Bollman photographed a protest, so the government obtained authority to rummage through all of his digital, electronic information and property, including emails, texts, calls, photos, videos, social media, banking apps, map apps, and every other imaginable category.

Warrants must state with particularity the place to be searched and the persons or things to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557, 124 S. Ct. 1284, 1289 (2004). This requirement ensures that searches are not overly broad and that law enforcement has clear guidelines to follow during the search. "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5, 104 S. Ct. 3424, 82 L. Ed. 2d 737 (1984); *United States v. Jackson*, No. 18-cr-211, 2019 WL 13127190, at *10 n.5 (D. Minn. Jan. 4, 2019) (finding that a cell phone warrant lacked particularity because it did not limit the search to evidence of a particular crime but merely stated that the “property or things above-described constitutes evidence which tends to show a crime has been committed”). The purpose of the particularity requirement is to ensure “that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.” *United States v. Pennington*, 287 F.3d 739, 744 (8th Cir. 2002).

The warrants at issue fail in this regard as well. They were general warrants that failed to describe with particularity what evidence of a crime they would seize. The inescapable fact that Bollman was a journalist doing journalism and that the government

specifically sought his information for that reason only makes the violation worse. It also makes the violation not just constitutional, but also statutory. Because these warrants were all overbroad, and failed to adhere to the constitutional principle of particularity, as well as the statutory requirements of the Privacy Protection Act, they must be suppressed on this separate basis as well.

### *5.* ***Leon*** **Does Not Save These Warrants.**

*Leon* only applies where good faith applies. *United States v. Leon,* 468 U.S. 897, 922 (1984). There can be no objective good faith where the warrant was obtained through knowing or reckless misrepresentations. *See United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993). These warrants are also facially invalid, however, and the lack of candor with the tribunal shown in obtaining the warrants similarly defeats any application of the *Leon* good faith exception to a facial analysis of the warrants.

It is beyond debate that the omission was material, as another magistrate in this district declined to issue requested warrants against another journalist in this case for that very reason. The government had a duty of candor to alert the issuing court to the Privacy Protection Act so that the court could determine whether the Act applied, whether any statutory exception was satisfied, and whether the warrant required additional limitations. *See In re Search Warrants*, 26-mj-205 (JFD), 2026 WL 1487454, *2 (March 6, 2026) ("[A]dherence to government counsel's duty of candor towards the tribunal should have led them to inform the Court of that statute. Government counsel can argue against the statute's applicability, but they cannot ignore it.").

*Leon* aims to balance the exclusionary rule with the interest of promoting warrant

applications over warrantless searches. 468 U.S. at 919–21. Because the exclusionary rule is aimed at punishing police misconduct rather than magistrate error, exclusion is justified:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*United States v. Houston*, 665 F.3d 991, 995 (8th Cir. 2012) citing *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). All but the second apply here. The warrant was based on material falsehoods and omissions, which were made in bad faith. The warrants do not describe a crime as to Bollman, and it is obviously so. Their lack of nexus and particularity are as glaring as their lack of probable cause on their face. The warrants were unlawful, however you slice it, and *Leon* cannot save them.

The exclusionary rule is designed to deter police conduct that violates the constitutional rights of citizens. *Leon*, 468 U.S. at 919. "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right." *United States v. Peltier*, 422 U.S. 531, 539 (1975) (quoting *Michigan v. Tucker*, 417 U.S. 433, 447 (1974)).

The Court must deter such conduct here by applying the exclusionary rule.

**4. Suppression and Other Remedies.**

The Court must suppress all of these warrants, including the one the Government attempted to execute but failed. The Court should also order the return of all Bollman's property in question, including camera, lens, laptop, phone, storage devices, notebooks, and cloud data. Rule 41(g). Lastly, the Court should order the Government to destroy all copies and retain none of the information seized pursuant to these warrants because of the irreparable harm retention would cause to newsgathering, news sources, the First Amendment, and our of system ordered liberty.

The Court should not only suppress the evidence, but also order all property returned to Bollman, and all copies held by the Government and co-Defendants destroyed. Allowing the government "to search a reporter's work product—most of which consists of unrelated information from confidential sources—is the equivalent of leaving the government's fox in charge of the [] henhouse." *In re Search of Real Prop. and Premises of Natanson*, 2026 WL 510727, at *10 (E.D. Va. Feb. 24, 2026). In *Natanson*, "the Court reject[ed] the government's request to conduct an unsupervised, wholesale search of all Movants' seized data" and instead ruled that it would "conduct the review itself." *Id*. at *11; *see also In re Search of Real Prop. and Premises of Natanson*, 2026 WL 1458902, at *9 (E.D. Va. May 4, 2026) ("[T]his case requires an independent judicial officer to conduct a review of the Seized Material in order to adequately protect Movants' constitutional and statutory interests").

This case requires an independent judicial officer to suppress the evidence, order the property returned, and any copies destroyed. To the extent necessary, the Court should

hold a *Franks* hearing to receive evidence and determine any necessary facts outside the four corners of the search warrant applications.

## CONCLUSION

The Court should suppress the evidence. The Court should also order all property returned to Mr. Bollman. Lastly, the Court should consider ordering the Government to destroy any copies of the information obtained from the warrants to limit the irreparable harm to Mr. Bollman, newsgathering, and the derogation of the First Amendment.

## WORD COUNT COMPLIANCE

This motion and memorandum contain less than 6,000 words.

Respectfully submitted.

**ANDREW IRLBECK LAWYER CHTD.**

Dated: August 31, 2026

/s/ Andrew M. Irlbeck
Andrew M. Irlbeck, #392626
First National Bank Bldg.
332 Minnesota St., Ste. W1610
St. Paul, MN 55101
Phone: 612-986-3895
Fax: 651-223-5179
andrew@irlbecklaw.com
ATTORNEY FOR DEFENDANT BOLLMAN