UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

WILLIAM SCOTT KELLY,

Defendant.

NO.: 26-CR-25(3) (LMP/DLM)

**WILLIAM KELLY'S MOTION FOR AN ORDER TO SHOW CAUSE AND MOTION FOR DISCOVERY, A PROTECTIVE ORDER, AND AN EVIDENTIARY HEARING**

William Kelly respectfully moves the Court for an Order to Show Cause why the Government should not be held in contempt and why the Court should not sanction the Government under the Court's inherent authority for violating the Court's sealing order by publishing an inflammatory "press release" about Mr. Kelly while the case was under seal.[1] Mr. Kelly also moves for discovery, a protective order, and an evidentiary hearing under Federal Rule of Criminal Procedure 16, for the reasons stated below.

On January 18, 2026, videos from a protest at Cities Church in St. Paul quickly circulated social media and news headlines. On the same day, former U.S. Attorney General Pam Bondi posted on X that "the intimidation of Christians are being met with the full force of federal law."[2] Assistant Attorney General for Civil Rights Harmeet Dhillon

[1]As the Court is aware the issues raised by Mr. Kelly in this motion have been recently addressed by this Court in *United States v. Rank*, 26-mj-56 (JNE/DLM)-ECF 57; *United States v. Wilson-Soler*, 26-mj-84 (JWB/DLM)-ECF 39; and by Magistrate Judge Wright in *United States v. Adbebe*, 26-mj-77 (SRN/ECW)-ECF 60 &64.

[2]https://x.com/AGPamBondi/status/2013093526867689835

also posted on X that same day that the Civil Rights Division "is investigating the potential violations of the federal FACE Act by these people desecrating a house of worship and interfering with Christian worshippers."[3] AAG Dhillon followed this X post the next day on January 19, 2026, with press interviews and another X post stating, "This heinous act that occurred in Minnesota yesterday is receiving the highest level of attention from @TheJusticeDept."[4]

The next day, on January 20, 2026, William Kelly, was charged by Complaint with a felony offense under 18 U.S.C. §§ 241 and 248(a)(2) in relation to the Cities Church protest. The Government also sought a court order sealing the Complaint and all its supporting documents, including the affidavit in support of the Complaint. This Court granted the Government's motion and sealed the case. On the day the charges were filed against Mr. Kelly, the President of United States posted to Truth Social.[5]

---

[3] https://x.com/AAGDhillon/status/2013003168179724426

[4] https://x.com/AAGDhillon/status/2013263800783303161

[5] https://truthsocial.com/@realDonaldTrump/posts/115926042315145030




Mr. Kelly was arrested on January 22, 2026. On that same day, in a departure from Department of Justice policies and procedures, before Mr. Kelly made his initial appearance and the case was unsealed, the Government violated the Court's sealing order by orchestrating a staged photograph of a handcuffed Mr. Kelly and posted it on the official X accounts of then United States Attorney General Pamela Bondi, then Secretary of Homeland Security Kristi Noem, and the White House.[6] The posts stated that Mr. Kelly was arrested for "his involvement in the St. Paul Church riots" and that the Government will "not tolerate attacks on places of worship".

Immediately following the posting of Mr. Kelly's photo and accompanying statements—which given the wide reach of the post and the speakers, may impede Mr.

[6]Attorney General Pamela Bondi - https://x.com/AGPamBondi/status/2014399597335269553; Secretary of Homeland Security Kristi Noem – https://x.com/EnvoyNoem/status/2014410433281622347?lang=en; The White House – https://x.com/WhiteHouse/status/2014408947692716332?lang=en and https://x.com/WhiteHouse/status/2014358141933121912

Kelly's opportunity to receive a fair trial—the Government, including former AG Bondi and AAG Dhillon continued to make statements via social media and the press. On January 23, 2026, on the Megan Kelly Show, AAG Dhillon labeled Mr. Kelly, "a serial free-range, you know, domestic terrorist".[7] AAG Dhillon has also specifically criticized this Court, for not signing the initial complaint against Don Lemon stating, "he (Magistrate Judge Micko) absolutely has fallen short of the standards here. And there's more that I can say about the magistrate. I don't even want to say judge 'cause magistrate is a [sic] inferior officer, not an Article III judge."[8] AAG Dhillon went on to state, "this magistrate clearly exhibited bias, I think, in his rulings and they're very disappointing." The current Attorney General has also taken the position that Mr. Kelly and his co-defendant are guilty of an anti-Christian, anti-law enforcement action by rioters.[9] The rhetoric from the Government in this case is simply unprecedented.

The Government is not exempt from the consequences of inflaming public sentiment during an active investigation and case. And the Government is certainly not exempt from following this Court's order sealing a criminal case. When the Government violates an order of this Court, the Court has the authority to impose civil contempt for the Government's disobedience. In Mr. Kelly's case, the Department of Justice has abused these judicial proceedings for a purely political act without sufficient consideration of Constitutional or ethical restraints on the Department of Justice. The Court has both the

---

[7] https://www.youtube.com/watch?v=4i5xhWd2o2w
[8] https://www.youtube.com/watch?v=4i5xhWd2o2w

[9] https://www.youtube.com/watch?v=pcztJ4EirAw

authority and the obligation to protect the fairness and dignity of the proceedings before it. When the Government uses publicity tactics that violate a court order, intimidate the accused and potential witnesses, and undermine confidence in the judicial process, the Court may act to stop the harm, require accountability, and impose remedial measures. The Court should order the Government to show cause why sanctions and other curative relief are not warranted for the Government's flagrant violation of its order sealing Mr. Kelly's case. In conjunction with this, the Court should order expedited discovery on this issue, impose a protective order, and order an evidentiary hearing.

**I. Motion to show cause.**

"Federal law authorizes the Court to impose civil contempt for disobedience of a court order." *Data Axle, Inc. v. CFM Data Network*, LLC, No. 23-CV-3255 (LMP/DLM), 2025 WL 1261228, at *3 (D. Minn. May 1, 2025) (citing 18 U.S.C. § 401(3)). "A court may also impose sanctions pursuant to its inherent authority to punish 'conduct which abuses the judicial process.'" *VanDanacker v. Main Motor Sales Co.*, 109 F. Supp. 2d 1045, 1046 (D. Minn. 2000) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, (1991)).

**A. The Government's social media perp-walk violated the seal Order.**

The Government violated the Court's seal order by publicizing Mr. Kelly's name and staged perp-walk photo while the charging document was sealed. "In a proceeding before a magistrate judge, disobedience of a lawful order shall constitute a contempt of the district court for the district wherein the magistrate is sitting." *Chicago Truck Drivers v.*

*Bhd. Lab. Leasing*, 207 F.3d 500, 504 (8th Cir. 2000) (quotations omitted). The moving party must show contempt by clear and convincing evidence, and that the party allegedly in contempt had knowledge of the order at issue—then the burden shifts to the nonmoving party to show an inability to comply. *Data Axle, Inc. v. CFM Data Network, LLC*, No. 23 CV-3255 (LMP/DLM), 2025 WL 1261228, at *3 (D. Minn. May 1, 2025). Here, the Government used multiple officials' public platforms to stage and publish a manufactured arrest photograph and pair it with Mr. Kelly's name—functionally defeating the Court's seal order by disseminating that information to millions of people. This, despite the Government seeking a motion to seal information related to Mr. Kelly's charges. It is undisputable that the Government took affirmative steps to create and post this information, and undisputable that its public posting violated this Court's sealing order.

The Government has argued and will likely argue that the seal order only sealed the documents filed in this matter, and that it did not expressly prohibit the posting of Mr. Kelly's name or his photo. But contempt is not limited to situations where an order includes an itemized list of prohibited tactics. The relevant question is whether the Government's conduct—viewed in context—constituted noncompliance with the Court's order. *See City of Campbell, Mo. v. Arkansas-Missouri Power Co.*, 65 F.2d 425, 427 (8th Cir. 1933) (party is guilty of civil contempt if it violates "the letter or spirit" of a court order (emphasis added)); *see also Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1180 (9th Cir. 2025) (party "does not have an immunity from civil contempt because the plan or scheme which it adopted was not specifically enjoined" (citation modified)).

But, the context matters here. The Government asked that this information be sealed. The Government cannot legitimately claim that it had no knowledge of its own petition. Moreover, having persuaded the Court to seal, the Government cannot now treat the absence of a specific restriction on name/photo publication as permission to do the very thing the Court sealing would prevent. This Court is also very aware that recently the Government has shown a stunning pattern of ignoring or blatantly disobeying court orders. *See Juan T.R. v. Noem*, No. 26-CV-0107 (PJS/DLM), 2026 WL 555601, at *2 (D. Minn. Feb. 26, 2026) (Judge Schiltz detailing the 210 orders the Government had violated in 143 cases in connection with Operation Metro Surge).

"Civil contempt may be employed either to coerce the [noncompliant party] into compliance with a court order or to compensate the complainant for losses sustained, or both." *Chicago Truck Drivers*, 207 F.3d at 505. On this record, the Government's publication of a manufactured arrest photograph and the defendant's name in a post that labels Mr. Kelly as a rioter who attacks places of worship accomplished much of the identification harm that the seal order was presumably meant to prevent. The Government had clear knowledge of the order, and it cannot reasonably show that it is unable to refrain from disseminating propaganda through social media. Accordingly, the Court should order the Government to show cause for why it should not be held in contempt for violation of the seal order. Should the Government be held in contempt, the Court should enforce its seal order in a manner that preserves its practical effect and compensate Mr. Kelly accordingly—at a minimum, by forcing the Government to take down its social media

posts relating to Mr. Kelly and fining the Government for failure to remove them immediately.

**B. Even apart from the seal Order, the Court should sanction the Government under its inherent authority for misconduct that abuses the judicial process.**

The Government's tweets were not neutral docket notices or unavoidable disclosures, but rather, a deliberate and government-created publicity event: a staged custody photo, paired with Mr. Kelly's name, and distributed through the United States Attorney General's, the Secretary of Homeland Security's, and the White House's official social media accounts. Because these tactics inappropriately announced Mr. Kelly's guilt and potentially intimidated witnesses, sanctions are appropriate. *See Fredin v. Middlecamp*, No. 17-CV-03058 (SRN/HB), 2020 WL 6867424, at *11 (D. Minn. Nov. 23, 2020), aff'd, 855 F. App'x 314 (8th Cir. 2021) (imposing sanctions against party for creating websites intimidating and disparaging other litigants and their counsel); *United States v. Bowen*, 799 F.3d 336, 350 (5th Cir. 2015) (imposing sanctions when prosecutors posted online comments that spoke to the guilt of defendants).

Sanctions under the Court's inherent power are appropriate when a party's conduct "abuses the judicial process" and is "tantamount to bad faith." *Snowden v. Time Safe, Inc.*, No. CIV. 10-4516 JNE/JJG, 2012 WL 2569052, at *3 (D. Minn. May 30, 2012), report and recommendation adopted, No. CIV. 10-4516 JNE/JJG, 2012 WL 2571206 (D. Minn. July 3, 2012). Here, the facts support that threshold because the Government's conduct was deliberate as evidenced by the staged photos, was amplified on a high-ranking officials'

social media accounts, and was foreseeably harmful to the fairness and dignity of the proceedings.

The Government's bad faith is evident from the significant departure from the Department of Justice's own practices for the ethical distribution of information regarding criminal charges. The Department of Justice's usual practice when posting information or issuing press releases about charges against defendants has previously been to remind the audience that "[a] complaint is merely an allegation and the defendant is presumed innocent until proven guilty beyond a reasonable doubt in a court of law." This is consistent with the DOJ's Justice Manual, which states that "[a] news release issued before a finding of guilt should state that the charge is merely an accusation, and the defendant is presumed innocent until proven guilty." Department of Justice, Justice Manual, § 1-7.500. Here, however, the head of the Department of Justice took to social media to post—to her 1.1 million followers and beyond—the name and image of Mr. Kelly in connection with this case. Not only that, but she labeled Mr. Kelly an attacker of place of worship. (Ex. B). This statement is breathtakingly inappropriate, by not only classifying Mr. Kelly as an attacker, but by stating as fact that he interfered with church worship—which is an element of the crime that he has been charged with.

Now, Mr. Kelly is on notice that the Government will not hesitate to publicize information about him and his case—true or not. Conduct that has continued long after this Court granted the Government's motion to unseal. In the days following Mr. Kelly's arrest and initial appearance, former AG Bondi and AAG Dhillon, and The President of the United States all made additional comments on Mr. Kelly's charges. This could certainly

have an impact on whether witnesses are willing to come forward or testify in this case. *See Garcia v. Bertsch*, 470 F.3d 748, 750 (8th Cir. 2006) (acknowledging witnesses' reluctance to testify when presented with "spectacle" and "repercussions"). The Government should be ordered to show cause why the Court should not find misconduct warranting inherent-authority sanctions. If the Court does sanction the Government, the offending posts should be removed from social media. *See Fredin*, 2020 WL 6867424, at *12 (ordering party to remove all offending videos and websites from the internet and enjoining reposting).

## II. FED. R. CRIM. P. 16 Motion for discovery, protective order, and evidentiary hearing.

Federal Rule of Criminal Procedure 16 provides that "the government must permit the defendant to inspect and to copy or photograph" documents and objects "within the government's possession, custody, or control" and that are "material to preparing the defense." Rule 16 further permits the Court to grant "appropriate relief" regarding discovery, including issuing a protective order, "for good cause." *Id.* The Government's taking, use, and dissemination of the staged photo of Mr. Kelly had no legitimate law enforcement purpose. Instead, the timing of the photo's dissemination and its use on Government social media is evidence that the Government charged Mr. Kelly to deter and intimidate other protestors and demonstrates a level of vindictiveness and selectiveness that has no precedent. Information related to the photo's staging, taking, and dissemination is therefore material to Mr. Kelly's defense and his ability to raise vindictive and selective prosecution challenges.

The Government's unethical disclosure of the staged photo of Mr. Kelly is directly contrary to federal policies, which provide that "[d]epartmental representatives should not make available photographs of a defendant unless a law enforcement function is served thereby." 28 C.F.R. § 50.2; *see Detroit Free Press Inc. v. United States Dep't of Justice*, 829 F.3d 478, 484 (6th Cir. 2016) (holding that "[i]ndividuals enjoy a non-trivial privacy interest in their booking photos, and citing "the *federal* regulations and policies drafted by the U.S. Department of Justice and the [United States Marshal Service] . . . prevent[ing] mug-shot disclosure absent a law-enforcement purpose" (emphasis original)). In accordance with this policy, the USMS releases "photographs of fugitives or other prisoners *only for law enforcement purposes*." *Booking Photographs Disclosure Policy*, U.S. Marshals Serv. Off. Gen. Counsel, 1, https://www.usmarshals.gov/sites/default/files/media/document/booking-photography disclosure-policy.pdf (last accessed Feb. 25, 2026) (emphasis added).

The USMS also prohibits its employees from "pos[ing] prisoners for pictures," "subject[ing] prisoners to embarrassment," or "disclos[ing] . . . photographs of prisoners." *Prisoner Photographs*, U.S. Marshals Serv. https://www.usmarshals.gov/what-we do/prisoners/operation/prisoner-guideline/prisoner-photographs (last accessed Feb. 25, 2026). To this end, USMS, itself, "has consistently taken the position that booking photographs implicate personal privacy and should not be released under the [Freedom of Information Act] unless a countervailing public interest is involved." Booking Photographs Disclosure Policy at 2 (noting a privacy interest in booking photos "has recently been

affirmed by two U.S. Courts of Appeals in decisions upholding USMS's refusal to release booking photographs in response to FOIA requests").

There was no legitimate law enforcement purpose for publicizing the photo of Mr. Kelly to millions of X users which has been re-posted and displayed to additional millions via news broadcasts. Instead, the public dissemination of that photo—as the Government's agencies have recognized in their own internal policies and memorandum—invades Mr. Kelly's privacy interests and puts his personal safety at risk from those who might feel emboldened by the Government's propaganda against protestors, and who now know his name and appearance. *Cf.* 5 U.S.C. § 552(b)(7) (exempting "records or information compiled for law enforcement purposes" from FOIA disclosure requirements to the extent that such disclosure "would deprive a person of a person of a right to a fair trial," "could reasonably be expected to constitute an unwarranted invasion of personal privacy," or "*could reasonably be expected to endanger the life and physical safety of any individual*" (emphasis added)). Unfortunately, given the permanency of information shared on social media, such harm cannot truly be undone, but the Court should take appropriate action to prevent any further harm, as set forth below.

**A. Motion for Discovery.**

Mr. Kelly moves for the following expedited relief pursuant to Federal Rule of Criminal Procedure 16.

(1) Disclosure of the identity of any DHS agents, U.S. Marshal personnel, or other government personnel who participated, took, or appeared in the staged photo of Mr. Kelly after his self-surrender;

(2) Disclosure of any communications by any officials at the Department of Justice, DHS, or the White House regarding the publication of Mr. Kelly's photo by Attorney General Bondi's X account or Secretary of Homeland Security Kristi Noems's X account, or the White House's X account, or the timing of Mr. Kelly's charging and self-surrender.

**B. Motion for a protective order.**

Mr. Kelly further moves this Court for a Protective Order pursuant to Fed. R. Crim. P. 16(d) ordering that any photographs of Mr. Kelly, including the staged photograph, not be disseminated or shared, either privately or publicly, by the United States or its officers and agents. Mr. Kelly respectfully requests that the Court order that to the extent that any officer or agent of the United States has posted photographs of Mr. Kelly on social media, including but not limited to publication on those officials' X accounts, that said photographs be removed from the respective social media accounts within three days of any Court order and no further publication occur.

## III. Motion for evidentiary hearing.

Finally, Mr. Kelly moves for an evidentiary hearing regarding his motions to determine both the extent of the privacy violations identified herein as well as the impetus behind such violations. Such information and evidence are relevant to the above motions and motions based on vindictive and selective prosecution. Such information also falls within the Court's *Brady* order issued in this case. Mr. Kelly requests that this evidentiary hearing be scheduled for the same date and time as his motions hearing. Mr. Kelly further requests that the Court order the appearance at the hearing of any individuals identified

pursuant to the above-described discovery request, as well as any personnel tasked with responding or gathering information related to the above-listed discovery requests.

Mr. Kelly respectfully requests that the Court order the Government to show cause for why it should not be held in contempt for violation of the sealing order in this case and why it should not be sanctioned under the Court's inherent authority. In conjunction, Mr. Kelly respectfully requests the Court order expedited discovery, a protective order, and an evidentiary hearing relating to the Government's social media posts in question.

Dated: August 31, 2026.

Respectfully submitted,

*s / Aaron J. Morrison*
AARON J. MORRISON
Attorney ID No. 0341241
Attorney for Mr. Kelly
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

aaron_morrison@fd.org