UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

WILLIAM SCOTT KELLY,

Defendant.

NO.: 26-CR-25(3) (LMP/DLM)

**MOTION TO SUPPRESS**

William Scott Kelly, through his attorney, and pursuant to Rule 12(b)(3)(C), Federal Rules of Criminal Procedure, moves this Court to suppress evidence obtained from the improper use of summonses pursuant to 19 U.S.C. § 1509.

On January 19, 2026, Mark Zito, HSI Special Agent in Charge, authorized HSI Special Agent Timothy Gerber to issue a summons pursuant to § 1509 to Verizon Wireless for Subscriber Information and Call Information for nine cellphone numbers including a cellphone number used by Mr. Kelly. (Kelly Ex. 1). On January 20, 2026, Mark Zito, HSI Special Agent in Charge, again authorized HSI Special Agent Timothy Gerber to issue a Summons pursuant to § 1509 to Verizon Wireless for Subscriber Information and Call Information for six cellphone numbers including the same cellphone number used by Mr. Kelly as previously requested in the January 19, 2026, summons.[1] (Kelly Ex. 2). Verizon complied with the summons and returned to HSI cellphone records related to Mr. Kelly.

[1] On May 4, 2026, Steven Schrank, HSI Special Agent in Charge, authorized HSI Special Agent Timothy Gerber to issue a Summons pursuant to § 1509 to the Minnesota Department of Employment and Economic Development for employment records for

## I. The Court Should Suppress Records Obtained by Homeland Security Investigations Pursuant to § 1509 Summons.

HSI obtained Mr. Kelly's subscriber and call information from Verizon by using Customs' statute 19 U.S.C. § 1509. Section 1509(a) authorizes agents to obtain documents for customs investigations. HSI's use of Customs' summons in this case was an abuse of Customs' authority. Mr. Kelly has a cognizable privacy interest in this information and suppression is required under the Fourth Amendment. In addition, suppression is required because HSI acted in bad faith by violating § 1509, subjecting Mr. Kelly to abusive process in violation of the Fifth Amendment.

### A. Section 1509 is designed to further customs investigations, not criminal investigations.

Section 1509 was first enacted as part of the Tariff Act of 1930. *See* Pub. L. 71-361, 46 Stat. 590. Following an amendment in 1978, the language of the statute has remained largely unchanged, the current portion of the statute authorizing the use of Summons reads:

> (a)Authority
>
> In any investigation or inquiry conducted for the purpose of ascertaining the correctness of any entry, for determining the liability of any person for duty, fees and taxes due or duties, fees and taxes which may be due the United States, for determining liability for fines and penalties, or for insuring compliance with the laws of the United States administered by the United States Customs Service, the Secretary (but no delegate of the Secretary below the rank of district director or special agent in charge) may—

---

numerous individuals including Mr. Kelly. No records appear to have been returned regarding Mr. Kelly.

Pub. L. No. 95-410, 92 Stat. 889. As the current language of the statute provides, the statute has traditionally been used to assist Customs in investigations related to tax due on imported goods. Before 1978, § 1509 was used to question importers about "any matter relating to the classification or value of imported goods." Sen. Rep. 95-778 at 13. It allowed Customs to "require the production of any letters, accounts, contracts, invoices, or other documents related to the goods." 19 U.S.C. § 1509 (1976). At the time importers were not required to keep records of their business dealings, a fact which "frequently thwarted Customs' investigations seeking to uncover possible fraud[.]" *United States v. Frowein*, 727 F.2d 227, 234 (2d Cir. 1984). To enhance the investigatory powers of the Customs Service two changes were made to the Customs Act. First, the Act added a recordkeeping requirement for importers, which was separately codified in 19 U.S.C. § 1508. *Id.* Second, the Act removed a one-year limitation placed on the issuance of § 1509 summons. *Id.* The amendments did not dramatically expand the jurisdiction of Customs and it did not broaden the kinds of investigations that Customs could lawfully conduct. Though the statute's aim was to "give the Customs Service greater access to records," the plain language of the statute required those records to still be relevant to customs investigations—not to general criminal inquiries. *Id.*

This narrow focus on customs enforcement is reflected in the current text of subsection (a). Today, agents can seek records related to investigations in four enumerated areas. Three of those areas are narrowly tied to the importation of merchandise. *See* 19 U.S.C. § 1509(a) (authorizing the issuance of a summons in "any investigation . . . conducted for the purpose of [1] ascertaining the correctness of any entry, [2] for

determining the liability of any person for duty, fees, and taxes due . . . [or 3] for determining liability for fines and penalties"). There is also a narrow catchall that allows agents to seek records "for insuring compliance with the laws of the United States administered by the United States Customs Service." *Id.* It is this trailing clause that HSI relies on to justify HSI's broad use of § 1509 summons.

**B. The Department of Homeland Security has repeatedly abused its authority under 19 U.S.C. § 1509.**

On its face, 19 U.S.C. § 1509 does not grant any power to HSI, to Immigration and Customs Enforcement (ICE), or to the Department of Homeland Security (DHS). The statute empowers the Secretary of the United States Customs Service (and the Secretary's delegates) to issue statutory summons for particular statutorily defined records. *See* 19 U.S.C. § 1509(a). Subsection (d) of the statute authorizes agents to summon documents related to the importation of goods; not documents related to an individual's use of wireless services unrelated to the importation of goods. Customs agents may only summon records if those records are "required to be kept under section 1508" or if there is "probable cause to believe that [the records] pertain to merchandise the importation of which into the United States is prohibited." 19 U.S.C. § 1509(d); *see also* 19 U.S.C. § 1401(c) ("The word 'merchandise' means goods, wares, and chattels of every description," as well as certain "monetary instruments"). Within DHS, the Bureau of Customs and Border Protection (CBP), ICE, and HSI claim the authority to summon records under 19 U.S.C. § 1509. DHS justifies this authority because the agencies are now all joined under one umbrella. And, in recent years, all of the agencies under DHS have abused the statute.

In 2017, Twitter, now X, filed a complaint against CBP in federal court, claiming the agency "abus[ed] a limited-purpose investigatory tool," 19 U.S.C. § 1509, to identify "one or more persons who ha[d] been using Twitter's social media platform . . . to express public criticism of the Department[.]" Complaint, *Twitter v. Dept. of Homeland Security*, No. 3:17-cv-01916, ECF No. 1 (N.D. Cal. Apr. 6, 2017). Shortly after the complaint was filed, CBP withdrew its summons. *See* Office of the Inspector General, *Management Alert – CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509*, 2 (Nov. 16, 2017) ("OIG Report").[2] As a result of Twitter's lawsuit, the Office of the Inspector General initiated an investigation into CBP's uses of § 1509 summons. The OIG's investigation concluded that because CBP's actions were "unrelated to the importation of merchandise or the assessment and collection of customs duties," the agency "may have exceeded the scope of its [statutory] authority[.]" *Id.* at 3. The OIG's investigation further concluded this abuse of customs law was not an isolated event and that over the years, a "lack of clear guidance" had resulted in "inconsistent" and "improper" reliance on § 1509. *Id.* at 2. The OIG investigation recommended that CBP agents receive remedial training. *Id*. at 5. Other components of DHS—including ICE and HSI—did not have to attend.

Following the OIG investigation ICE and HSI continued the broad use of § 1509 summons. Between January of 2016 and August of 2022, ICE issued 172,679 summonses under § 1509, averaging more than 70 per day. *See* Dhruv Mehrotra, *ICE is Grabbing Data*

[2]Available at https://www.oig.dhs.gov/reports/2018/management-alert-cbps-use examination-and-summons-authority-under-19-usc-ss-1509/oig-18-18-nov17.

*from Schools and Abortion Clinics*, Wired (Apr. 3, 2023).[3] In a 2022, letter to the Inspector General, U.S. Senator Ron Wyden accused HSI, of "abus[ing] its customs authority to engage in bulk surveillance" during this time. Sen. Ron Wyden, Letter to Inspector General Cuffari, 1 (Mar. 8, 2022).[4] To date, neither the OIG report nor Congressional oversight, has changed HSI's use of § 1509 summons.

While there is no Eighth Circuit case addressing the scope of a § 1509 summons, in the Eastern District of Missouri, the Government recently argued in a multi-national child exploitation case that § 1509 summons cover a wide range of conduct as a result of the statute's trailing clause, "or for insuring compliance with the laws of the United States administered by the United States Customs Service". *See United States v. Smajlovic*, 23-CR-490 (SRC) (E.D. MO 2026) 2026 WL 785026. One very important limiting factor in *Smajlovic*, is that the district court did not "determine the full scope of the laws falling within subsection (a)'s reference to 'the laws of the United States'", instead the district court limited its finding to child-exploitation laws. *Id.* at 3. The district court reasoned that because HSI includes a cybercrimes center with a child exploitation investigations unit, the language of subsection (a) must include investigation of child exploitation crimes. *Id.* at 3; *See also United States v. Merrell*, 88 F.Supp.3d 1017, 1033 (D. Minn. 2015)

---

[3] Available at https://www.wired.com/story/ice-1509-custom-summons/.

[4] Available at https://www.wyden.senate.gov/download/dhs-ice-data-complaint (describing how HSI collected data from over six million financial transactions by summoning business records from Western Union and the Maxitransfers Corporation).

(finding nothing improper with the use of a summons pursuant to § 1509 seeking records related to a child exploitation investigation as that is a task of HSI).

Of course, this case has nothing to do with customs duties or child exploitation. And while the Government certainly may try, it is hard to see how any credible argument could be made that Customs or any of the umbrella agencies of DHS have traditionally administered the laws related 18 U.S.C. §§ 241 and 248. While HSI has taken the position that when subsection (a) of 19 U.S.C. § 1509 refers to "the laws of the United States," this means all the law of the United States, there is nothing in the statute, the legislative history, or precedent that suggests this phrase refers to every statute in the United States Code. Indeed, basic tenets of statutory construction run counter to this broad power grab by HSI. Statutory interpretation requires this Court to read the language of subsection (a) as "cabin[ed]" by the preceding phrases to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Yates v. United States*, 574 U.S. 528, 543 (2015) (interpreting the Sarbanes-Oxley Act); *see also Third Nat. Bank in Nashville v. Impac Ltd.*, 432 U.S. 312, 322 (1977) ("It is a familiar principle of statutory construction that words grouped in a list should be given related meaning.").

Sections 241 and 248 do not involve the importation of merchandise. It is not the kind of activity regulated by Title 19, there is simply no "nexus" to a customs violation or a child exploitation case. By claiming investigative authority under § 1509(a), HSI has claimed an overly broad power, that is not supported by the statute.

### C. Homeland Security Investigations unlawfully obtained records from Verizon because the use of § 1509 summons in this case was not related to an authorized investigative issue.

This case is a part of HSI's pattern of abuse in relation to § 1509 summons. HSI agents requested and obtained Mr. Kelly's detailed cellphone records which should not have been subject to a summons under § 1509. Again, the statutory language authorizes agents to summon documents related to the importation of goods—not documents related to the individual use of cellphone services in an investigation for the potential violation of 18 U.S.C. §§ 241 and 248. *See* 19 U.S.C. §1509(a)(2)(D), (d)(1)(A) (establishing that records may only be summoned if they are "required to be kept under section 1508" or if there is "probable cause to believe that [the records] pertain to merchandise the importation of which into the United States is prohibited."). The summons in this case specifically states,

> Your testimony and/or production of the indicated records is required in connection with an investigation or inquiry to ascertain the correctness of entries, to determine the liability for duties, taxes, fines, penalties, or forfeitures, and/or to ensure compliance with the laws or regulations administered by HIS.

(Kelly Exs. 1 and 2). The summons then directed Verizon to provide Subscriber Information and Call Information for numerous cellphone numbers including Mr. Kelly. The summons did not inform Verizon that the records were not being sought for an investigation to determine whether Mr. Kelly was liable for duties, taxes, fines, or forfeitures, but for an investigation into whether Mr. Kelly violated §§ 241 and 248; statutes wholly unrelated to any enforcement action of HSI. For that reason, HSI agents

overstepped their authority by requesting records which they were not entitled to access with a § 1509 summons.

**D. Homeland Security's abuse of § 1509 summons calls for suppression.**

Applying the exclusionary rule, this Court should suppress all information HSI obtained from Verizon. The exclusionary rule's "prime purpose is to deter future unlawful police conduct." *United States v. Calandra*, 414 U.S. 338, 347 (1974). "The extent to which the exclusionary rule is justified . . . varies with the culpability of the law enforcement conduct." *Herring v. United States*, 555 U.S. 135, 143 (2009). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144. "Recurring" and "systemic" abuse stands out as "worth the price of exclusion." *Id.* Homeland Security's actions—in this case and others—demonstrates that it is engaging in deliberate, systemic abuse which must be deterred through the exclusionary rule. DHS is aware that its agents regularly exceed the scope of their authority under 19 U.S.C. § 1509. *See* OIG Report at 3-4 (discussed supra). The failure of internal restraints makes clear that DHS is either unable or unwilling to restrain its agents. Because DHS has not acted in good faith, suppression is necessary even if the Court finds that Mr. Kelly has no Fourth Amendment interest in his Subscriber Information. While the exclusionary rule is primarily used to "deter constitutional violations," the Supreme Court has used the rule to exclude evidence collected through "statutory violations that implicated important Fourth and Fifth Amendment interests." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 348 (2006) (citing *Miller v. United States*, 357 U.S. 301

(1958); *McNabb v. United States*, 318 U.S. 332 (1943)). As discussed below, the violation of § 1509 implicates Mr. Kelly's Fourth Amendment interests and implicates his Fifth Amendment right to due process. *Cf. United States v. Jones*, 70 F.4th 1109, 1112 (8th Cir. 2023) (noting, in a delayed presentment case, that a Due Process violation occurs if the government's conduct "shock[s] the conscience of the court"); *see also Rochin v. California*, 342 U.S. 165, 169 (1952) (reasoning that due process of law is a "constitutional guarantee of respect for those personal immunities which . . . are implicit in the concept of ordered liberty") (cleaned up).

Bad faith co-optation of a primarily civil process is antithetical to the concept of ordered liberty. *Cf. Abel v. United States*, 362 U.S. 217, 226 (1960) (warning that "[t]he deliberate use by the Government of an administrative warrant for the purpose of gathering evidence in a criminal case must meet stern resistance by the courts"). At least one Circuit has granted a motion to suppress based on such an abuse of process. *See United States v. Genser*, 582 F.2d 292, 308 (3d Cir. 1978). *Genser* built upon a Supreme Court decision, *United States v. LaSalle Nat. Bank*, 437 U.S. 298 (1978). In *LaSalle*, the Supreme Court considered 26 U.S.C. § 7602, a statute which allowed the Internal Revenue Service (IRS) to issue administrative summons to third parties in search of taxpayer information. Prior cases established that a § 7602 summons could only be used in good faith and prior to a recommendation for criminal prosecution. *See Donaldson v. United States*, 400 U.S. 517, 536 (1971); *Reisman v. Caplin*, 375 U.S. 440, 446 (1964). In *LaSalle*, the Supreme Court determined the IRS acted in bad faith when it abandoned—"in an institutional sense"—the "pursuit of civil tax determination or collection." 437 U.S. at 316-17, 318. And shortly

thereafter, the Third Circuit held that (1) a taxpayer could challenge the good faith of the IRS at his criminal trial, and that (2) the proper remedy for a § 7602 summons issued in bad faith was the suppression of evidence. *See Genser*, 582 F.2d at 308.

This Court should follow *Genser* and hold that HSI, as an institution, acted in bad faith by using § 1509 summonses to obtain Mr. Kelly's cellphone records. The Court should additionally hold that HSI violated the Due Process Clause by engaging in behavior which shocks the conscience.

**E. The Fourth Amendment protects Mr. Kelly's records.**

Mr. Kelly also has a cognizable privacy interest in the information obtained by HSI. Cellphone records consist of information that is "detailed, encyclopedic, and effortlessly compiled"— that creates a window into the "privacies of life" and is thus protected by the Fourth Amendment. *Carpenter v. United States*, 585 U.S. 296, 309-11 (2018); *see also Chatrie v. United States*, 609 U.S. ___, slip op. at 2, 29 (2026). As the Supreme Court recognized in *Carpenter* and again in *Chatrie*, it was the "central aim of the Framers . . . to place obstacles in the way of a too permeating police surveillance" and to protect citizens from "reviled 'general warrants' and 'writs of assistance[.]'" *Id.* at 303-05. Section 1509 summons, when used by HSI in a case like this, are de facto warrants without judicial oversight. When HSI agents use a § 1509 to request information from a wireless provider like Verizon, the agents do not have to disclose the details of their investigation. They do not have to ask for records limited to a particular time. And they do not have to inform the target of the investigation. There are no significant checks on HSI agents, such as a grand

jury or a neutral magistrate and so, in this case and others, § 1509 has allowed for unrestrained searches by DHS.

*Carpenter* explained that "when an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' . . . official intrusion into that private sphere . . . requires a warrant supported by probable cause." *Id.* at 304; *see also Katz v. United States*, 389 U.S. 347, 351 (1967). Holding that Carpenter had a reasonable expectation of privacy in "the record of his physical movements as captured through CSLI," the Supreme Court rejected the Government's invitation to apply the third-party doctrine, which traditionally held that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Carpenter*, 585 U.S. at 308-10. *Carpenter* cautioned that the third-party doctrine should not be mechanically applied. *Id.* at 314. When digital technology is involved, courts must look to the "nature" of the information obtained by law enforcement. *Id.* Information which provides "little in the way of identifying information" is entitled to less Constitutional protection than information which is generated from "more pervasive tracking," and which provides a "detailed chronicle" of a person's habits. *Id.* at 314. In addition, courts must examine whether the information was "truly shared" or whether it was automatically generated. *Id.* at 315.

In this case, HSI's collection of detailed records fall outside the scope of the third-party doctrine. As a result of the summons, the Government received precise dates and times of when Mr. Kelly's cellphone number connected with network switches. These network switches in turn provided the Government with the location of Mr. Kelly.

"Although such records are generated for commercial purposes, that distinction does not negate Carpenter's anticipation of privacy in his physical location." *Carpenter*, 585 U.S. at 311. HSI use of § 1509 summons violated the Fourth Amendment and Mr. Kelly's rights.

The use of § 1509 summons by HSI violated Mr. Kelly's rights under the Fourth and Fifth Amendment. Suppression is the appropriate remedy. Mr. Kelly asks this Court to suppress the Governments use of his Verizon records.

Dated: August 31, 2026.

Respectfully submitted,

*s / Aaron J. Morrison*
AARON J. MORRISON
Attorney ID No. 0341241
Attorney for Mr. Kelly
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

aaron_morrison@fd.org