UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>CHARLES LEE SWENSON,<br>Defendant. | Case No. 0:26-CR-00025(34) (LMP/DLM)<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE OBTAINED FROM THE FORENSIC SEARCH OF THE SILVER IPHONE WITH WHITE BACK IN CLEAR CASE** |

Defendant Charles Lee Swenson, by and through his attorney, Patrick L. Cotter, submits this memorandum of law in support of his motion to suppress all evidence discovered pursuant to the warrant authorizing the forensic search of his cell phone, attached as Exhibit 1. This motion will be heard before the Honorable Magistrate Douglas Micko, United States Magistrate Judge, at a date and time to be set by the Court, or will be decided on the parties' written submissions pursuant to the Court's procedures.

## FACTS

On January 18, 2026, Mr. Swenson and his co-defendants participated in the protest event at Cities Church. He was indicted in this matter on February 26. On February 27, HSI agents arrested him at his home pursuant to an arrest warrant and seized a cell phone. HSI maintained possession of the cell phone and on March 16, 2026, Special Agent Timothy Gerber applied for and obtained a warrant to perform a forensic search of the cell phone. SA Gerber stated that he had been employed with DHS, ICE, and HSI since March of 2025, and that he knew that "disruptors and co-conspirators" generally use cell phones.

SA Gerber went on to describe the Cities Church event, alleging that there was a "pre-operation meeting," that the defendants entered the church during service, that some of them recorded various stages of the event on electronic devices, and that some defendants yelled various chants. [Ex. 1 at 5-10.] As to Mr. Swenson specifically, the affidavit alleges that he was present at the meeting, present at the church, and "physically obstructed congregants as they attempted to leave the church." [*Id.* at 6, ¶ 16; 8, ¶¶ 23, 24; 9, ¶¶ 26, 28.]

The warrant authorized an exceptionally wide-ranging search of the cell phone, with categories of data spanning nearly three pages and a temporal scope of two-and-a-half months, beginning on January 1, 2026 (17 days before the suspected offenses) and ending on March 16, 2026 (58 days after the suspected offenses—and 41 days after HSI seized the phone). [Ex. 1 at 21-23.]

The types of data include, but are not limited to:

- all incoming and outgoing calls, with no limitation;
- every conceivable type of electronic communication and information related to internet usage regarding the suspected offenses, "other organized protest activity," and "communications, activities, and associations" with codefendants and as-yet unidentified persons who participated in the suspected offenses;
- photographs and videos related to the suspected offenses and "other organized protest activity";

- information about schedule and travel for Mr. Swenson and his codefendants, including geolocation information, emails, and text messages;
- contact information for Mr. Swenson's "associates," without a definition or limitation.

**ARGUMENT**

All evidence discovered as a result of the warrant must be suppressed because the warrant was not supported by probable cause and is overbroad and insufficiently particular. To be valid under the Fourth Amendment, a search warrant must be supported by a showing of probable cause. U.S. Const. amend. IV. Probable cause exists if, "under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017) (quotation omitted). Accordingly, "there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). To prevent broad, general searches, a warrant must also be limited to the probable cause upon which it is based, *In re Grand Jury Subpoenas*, 926 F.2d 847, 857 (9th Cir. 1991), and must be sufficiently particular as to the items to be searched, *United States v. Frederickson*, 846 F.2d 517, 519 (8th Cir. 1988). Where First Amendment materials are implicated, the requirements of the Fourth Amendment must be applied with 'scrupulous exactitude.'" *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978) (quoting *Stanford v. Texas*, 379 U.S. at 485).

"When the issuing judge relied solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999) (quotation omitted). In doing so, the duty of a reviewing court is to ensure that the issuing judge had a "substantial basis" for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). "Conclusory statements made by affiants fail to give the issuing [judge] a substantial basis for determining that probable cause exists." *United States v. Summage*, 481 F.3d 1075, 1077-78 (8th Cir. 2007).

## I. THE SEARCH WARRANT AFFIDAVIT FAILED TO ESTABLISH PROBABLE CAUSE.

"Probable cause exists if the warrant application and affidavit describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular place[.]" *United States v. Montes-Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009). To satisfy this requirement, "there must be evidence of a nexus between the contraband and the place to be searched[.]" *Tellez*, 217 F.3d at 549-50. "Factors to consider in determining if a nexus exists include the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *Johnson*, 848 F.3d at 878 (internal quotations and citations omitted). "[W]holly conclusory statement[s]" fail to satisfy this standard, *Gates*, 462 U.S. at 239, and no warrant may issue based on an affidavit that evidences only "a mere suspicion or hunch," *United States v. Ralston*, 88 F.4th 776, 780 (8th Cir. 2023). Even if an affidavit appears "at first blush" to be "ample and constitutionally sound," courts must examine the affidavit closely to determine if it "bears a fatal flaw." *United States v. Taylor*,

599 F.2d 832, 836 (8th Cir. 1979) (finding no probable cause despite "many minute and rather obscure facts developed in the investigation"); *Ralston*, 88 F.4th at 781 (finding no nexus although "the affidavit was detailed, focused, and probative as to [the suspect's] criminal activity").

Here, the affidavit lacks any allegation establishing a likelihood that the cell phone would contain evidence of a crime. As to the alleged offenses, SA Gerber described the Cities Church event, stating throughout that the so-called "disruptors, including SWENSON" engaged in this-or-that act before and during the protest, including meeting up before the event, "physically obstructing congregants" during it. These vague, conclusory allegations may establish that Mr. Swenson participated in a protest at a church. But they do not establish a likelihood that Mr. Swenson specifically intended to injure, intimidate, or interfere with the congregants' religious exercise, because of that religious exercise, by force, threat of force, or physical obstruction. *See* 18 U.S.C. § 248(a)(2); *United States v. Dinwiddie*, 76 F.3d 913, 924-26 (8th Cir. 1996); *United States v. Hart*, 212 F.3d 1067, 1070-72 (8th Cir. 2000). Likewise, the allegations do not establish a likelihood that Mr. Swenson entered into an agreement, the object of which was to injure, oppress, threaten, or intimidate the congregants in their religious exercise, and voluntarily joined that agreement with the specific intent to achieve that unlawful objective. *See* 18 U.S.C. § 241; *Anderson v. United States*, 417 U.S. 211, 223-27 (1974); *United States v. Guest*, 383 U.S. 745, 753 (1966). Nothing in the affidavit indicates that Mr. Swenson possessed the requisite intent or motivation for either offense; rather, it specifically states that he and his co-defendants were motivated by a pastor's status as a federal immigration

officer. The use of statutory phrases and their synonyms, such as "physically obstructing," "intimidated," "harassed," "oppressed," and "terrorized," are wholly conclusory. Viewed as a whole, the affidavit does not describe any specific facts establishing a fair probability that the crimes identified in the warrant had been committed.

As to the cell phone, SA Gerber alleged that it was "retrieved by HSI" at the time of Mr. Swenson's arrest. But this was not until six weeks after the Cities Church event and there is no more information in the affidavit about how HSI determined that the cell phone belonged to Mr. Swenson. The affidavit mentions that some of the protesters recorded the event but does not identify Mr. Swenson as one of them. There is no reference to any observed phone use by Mr. Swenson; evidence of electronic communications Mr. Swenson may have had about the event—despite that HSI already had certain codefendants' phones; evidence that Mr. Swenson possessed a phone before, during, or after the event; or any other facts otherwise tying the phone to the suspected offenses. Therefore, there is no evidentiary nexus between any criminal activity, Mr. Swenson, and the cell phone. Without probable cause that a crime was committed and no nexus between the cell phone and a crime, the warrant is invalid and evidence obtained from the cell phone must be suppressed.

## II. THE SEARCH WARRANT WAS OVERBROAD AND INSUFFICIENTLY PARTICULAR.

Next, even if some small portion of the warrant is supported by probable cause, the warrant is invalid because it is overbroad and lacks particularity. A warrant is overbroad when it authorizes a search that is not limited to the probable cause upon which it is based. *In re Grand Jury Subpoenas*, 926 F.2d at 857. The particularity requirement mandates "that

a search warrant's description of the evidence to be seized be 'sufficiently definite so as to enable the officer with the warrant to reasonably ascertain and identify the place to be searched and the objects to be seized.'" *Frederickson*, 846 F.2d at 519 (quoting *United States v. Muckenthaler*, 584 F.2d 240, 245 (8th Cir. 1978)). The Fourth Amendment does not permit open-ended warrants which leave it to the discretion of the searching officers to determine which items fall within its scope. *Lo-Ji Sales v. New York*, 442 U.S. 319, 325 (1979). "[R]eference to a broad federal statute is not a sufficient limitation on a search warrant." *United States v. Leary*, 846 F.2d 592, 601 (10th Cir. 1988); *Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir. 1987).

The prohibition of general warrants is intricately tied to the First Amendment, as one of the frequent purposes of those warrants was to suppress dissent against the government. *See Stanford*, 379 U.S. at 481-86 (holding that a warrant authorizing a search for "books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas, and the operations of the Communist Party in Texas" was "constitutionally intolerable"). The right to dissent is the "fixed star in our constitutional constellation." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). Therefore, "[w]here the materials sought to be seized may be protected by the First Amendment, the requirements of the Fourth Amendment must be applied with 'scrupulous exactitude.'" *Zurcher*, 436 U.S. at 564 (quoting *Stanford*, 379 U.S. at 485).

The warrant on its face reveals that these concerns are not abstract: for a period of over two-and-a-half months—despite that the subject event occurred on one certain date

only 18 days into that timeframe—the warrant explicitly authorized the government to collect information on "*other* organized protest activity," contact information for Mr. Swenson's "associates" without any definition for that term, and all incoming and outgoing calls without limitation. The warrant also authorized geolocation information that would reveal Mr. Swenson's location from January 1, 2026, until the day he was arrested on February 27, 2026—a period of 58 days. The Supreme Court has expressed serious concerns about geolocation information, including a recent, poignant observation that it "allows officers to target one-off events of potential interest" such as "a political rally." *Chatrie v. United States*, 146 S. Ct. 2193, 2210 (2026). Taken as a whole, this warrant authorized DHS, ICE, and HSI to compile swaths of data about political dissent that had nothing to do with criminal activity and everything to do with Mr. Swenson and others' exercise of their First Amendment rights to free speech, assembly, and petition. "Organized protest activity," on its own, is explicitly *not* a crime. Therefore, this warrant authorized an overbroad search of the exact nature the Framers intended to prevent, and any evidence discovered as a result of the warrant must be suppressed.

## **CONCLUSION**

For the foregoing reasons, Defendant Charles Lee Swenson respectfully requests that the Court grant his motions in their entirety.

Respectfully submitted,

Dated: August 31, 2026

Patrick L. Cotter
Attorney No. 0319120
105 Hardman Court, Suite 110
South St. Paul, MN 55075
Phone: (651)-455-1555
Fax: (651) 455-9055
patrick@siebencotterlaw.com

**ATTORNEY FOR DEFENDANT CHARLES LEE SWENSON**