# Exhibit L

AO 106 (Rev. 04/10) Application for a Search Warrant 2026R00046

# UNITED STATES DISTRICT COURT

for the
District of Minnesota

IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH "SHANE RYAN BOLLMAN, [redacted]" THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC.

**SEALED BY ORDER OF THE COURT**

Case No. 26-mj-365 (EMB)

## APPLICATION FOR A SEARCH WARRANT

I, David Hudgens, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**See Attachment A, incorporated here**

located in the Northern District of California, there is now concealed:

**See Attachment B, incorporated here**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

X evidence of a crime;
X contraband, fruits of crime, or other items illegally possessed;
X property designed for use, intended for use, or used in committing a crime;
___ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 241 | Conspiracy Against Rights |
| Title 18, United States Code, Section 248(a)(2) | Interference with Religious Freedom at Place of Worship |

The application is based on these facts:

**See Affidavit, incorporated here**

X Continued on the attached sheet.

David Hudgens
*Applicant's Signature*

SUBSCRIBED and SWORN before me by reliable electronic means (FaceTime and USAfx) pursuant to Fed. R. Crim. P. 41(d)(3)

David Hudgens, Special Agent
HSI
*Printed Name and Title*

Date: April 17, 2026

EMBullard
*Judge's Signature*

City and State: Minneapolis, MN

The Honorable Elsa M. Bullard
United States Magistrate Judge
*Printed Name and Title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH **"SHANE RYAN BOLLMAN, [redacted]"** THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC. | Case No. 26-mj-365 (EMB)<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, David Hudgens, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.

Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent (SA) with the U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI), assigned to the Saint Paul, Minnesota field office. I have been so employed since 2007. HSI is responsible for enforcing the Customs and Immigration laws and federal criminal statutes of the United States to include Title 8, Title 18, Title 19, and Title 21 of the United States Code. In my capacity as a Special Agent, I have investigated criminal violations relating to smuggling of goods into and out of the United States including counterproliferation of controlled technology, Customs fraud and the introduction of prohibited merchandise into the U.S., theft of intellectual property, as well as violations relating to currency structuring, bank fraud, wire fraud, mail fraud, distribution of narcotics, human trafficking, human smuggling, aggravated identity theft, bulk cash smuggling, money laundering, theft of government funds, and other offenses, as those crimes relate to Customs, Immigration, and federal statutes. I am a graduate of the Criminal Investigator Training Program (CITP) and the ICE Special Agent Training (ICE-SAT) Program from the Federal Law Enforcement Training Center (FLETC). Prior to my employment with ICE, I was employed as a Customs &

Border Protection (CBP) Officer for more than four years and as a Customs Inspector for more than 11 years.

EWB 3. This affidavit is based on my personal knowledge, ~~interviews of witnesses, physical surveillance,~~ information received from other law enforcement agents, my experience and training, and the experience of other agents. Because this affidavit is being submitted for the limited purpose of establishing probable cause to secure a search warrant, I have not included each and every fact in this investigation known to me and to others.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S. Code § 241 (Conspiracy against rights) and 18 U.S. Code § 248(a)(2) (Interference with Religious Freedom at Place of Worship) have been committed by SHANE RYAN BOLLMAN ("BOLLMAN"). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## **<u>JURISDICTION</u>**

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district

court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. On February 26, 2026, in the U.S. District Court of Minnesota, an arrest warrant was issued for BOLLMAN pursuant to an Indictment for violations of 18 USC §§ 241 and 248(a)(2).

7. On February 26, 2026, HSI Agents forwarded an arrest warrant for BOLLMAN to HSI in Los Angeles, California.

8. On February 27, 2026, HSI Agents located BOLLMAN and informed him that there was a warrant for his arrest, and he was taken into custody without incident.

9. At the time of the arrest, BOLLMAN had in her possession a Black Apple iPhone with Black and White Sticker which was retrieved by HSI.

10. On March 13, 2026, a signed search warrant was granted for BOLLMAN's Black Apple iPhone with Black and White Sticker.

11. On or about March 13, 2026, pursuant to the signed search warrant for BOLLMAN's Apple iPhone, HSI Computer Forensic Analysts attempted to extract the data from the locked Apple iPhone, however the Apple iPhone was encrypted and the data was unable to be extracted. Access to BOLLMAN's iCloud is needed to obtain evidence relevant to the investigation.

12. Based on my training, experience, and use of common knowledge, I can affirm that iCloud stores and backs up user data from the user's iPhone.

13. As further explained below, in my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found on iCloud. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

14. On the morning of Sunday, January 18, 2026, at approximately 10:30 a.m., a group of approximately 40 disruptors, to include BOLLMAN, entered the Cities Church, located at 1524 Summit Avenue, St. Paul, MN 55105, in a coordinated clandestine manner during a religious service. As detailed below, the disruptors, including BOLLMAN, obstructed the religious service and intimidated, harassed, oppressed, and terrorized the congregants, including young children, causing the service to end prematurely and forcing congregants to flee the church, which resulted in one victim falling and sustaining an injury. Statements made by disruptors indicated that they

targeted the church based on their belief that one of the church's pastors is a federal immigration officer.

15. Prior to the disruption of the religious service, the co-defendants, circulated a flyer on the Internet via Instagram and Facebook accounts promoting the clandestine operation, dubbed "Operation Pullup." Similar flyers have been found on the cell phones of other co-defendants, namely Nekima Valdez Levy ARMSTRONG and Chauntyll Louisa ALLEN, pursuant to search warrants.

16. Before driving to the church together in various personal vehicles, the co-defendants, including BOLLMAN, met together in the parking lot of a nearby shopping center and made plans for their actions inside the church. During the disruption at Cities Church, some of the disruptors physically obstructed congregants as they attempted to leave the church. Several disruptors recorded on electronic devices the pre-brief meeting at the shopping center, the disruption inside the church, and after the disruptors left the church.

17. Special Agents with HSI and the Federal Bureau of Investigation ("FBI") commenced an investigation. The following facts set forth information learned during the investigation.

**Promotion of the Operation**

18. On Saturday, January 17, 2026, several co-defendants organized the operation targeting Cities Church, which they dubbed "Operation Pullup," and electronically promoted the operation on the Internet via a flyer posted on Instagram and Facebook accounts.

19. On Sunday, January 18, 2026, at approximately 10:00 a.m., livestreaming commenced by co-defendant, Don LEMON, on his Internet-based YouTube livestream show, "@TheDonLemonShow," in the parking lot of a shopping center located at 1440 University Avenue W, St Paul, MN 55104. I have reviewed pertinent portions of the livestream video. I used the YouTube closed-captioning option to assist with transcriptions.

**Pre-Operation Meeting**

20. LEMON explained that the disruptors were planning an operation. LEMON, speaking with co-defendant and organizer, ARMSTRONG, identified the operation as "Operation Pullup" and stated it was a "clandestine" operation.

21. ARMSTRONG explained that she and other disruptors "show up somewhere that is a key location, [where the targets] don't expect us to come there, and we disrupt business as usual. That's what we're about to go do right now. We've had a lot of success with the times we've done "Operation Pullup."

22. LEMON livestreamed disruptors practicing chants they would use once they reached the Church.

23. Based on my review of videos made in the parking lot and later at the Cities Church, BOLLMAN was present in the crowd of disruptors at the pre-operation briefing led by ARMSTRONG and others and was at the Cities Church attack.

24. After the pre-operation briefing, BOLLMAN and other disruptors traveled to Cities Church.

**Conduct at Cities Church**

25. During LEMON's livestream, the camera focused on the outside of Cities Church, and LEMON entered only with audio equipment. The audio captured what appeared to be the church's pastor in the middle of a liturgical reading during a religious service.

26. At one point, an unknown female, later identified as ARMSTRONG, interrupted the religious service exclaiming that she was present to bring "judgment" to the house of God. Disruptors can then be heard yelling various chants, to include, "Hands up! Don't Shoot!" Around this time LEMON's cameraman, later identified as co-defendant, Michael Walker BEUTE, entered the Church and recorded the disruption taking place within the Church.

27. Based on my review of video footage taken of the incident, it appears that the congregants are confused, scared and shocked by the disruptors' conduct. Based on the video, disruptors can be seen yelling various statements in an aggressive manner, many with their fists in the air. Some disruptors are also seen blowing whistles.

28. Disruptors can also be observed on video blocking congregants' freedom of movement throughout the church.

**Facts Obtained from Other Video Footage**

29. Agents observed other video footage of the incident to include the church's livestream of the religious service and other footage taken by co-defendants on their social media accounts. In those videos, various chants of the disruptors can be heard, to include, "Hands up! Don't shoot!" and a disruptor can be observed standing in front of the pastor as the pastor is pointing towards the exit of the church directing the disruptors to leave.

30. In the videos, a female congregant is seen in the corner of the church holding two toddlers in a protective manner with a look of fear.

31. According to St. Paul Police Department (SPPD) and video footage obtained from the incident, a victim (Victim 1) injured her arm exiting through the Cities Church side door while trying to assist another

congregant evacuate the church during the mass disruption.[1] Per the SPPD report, Victim 1 stated that "they were terrorized, our children were weeping, college students and young women were sobbing, it was impactful and it will take time to work through." (It should be noted that the report for this incident states it occurred January 19, 2026, I know the incident occurred on January 18, 2026.)

## BACKGROUND CONCERNING APPLE[2]

32. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

[1] On January 25, 2026, HSI contacted Victim 1 telephonically to follow-up on the status of her injury. During that call, Victim 1 provided the following information: On January 20, 2026, she saw a doctor about her arm, as she suspected it was broken. After an examination, which included an x-ray, the doctor said the x-ray came back negative for a fracture but diagnosed her with deep bone bruising and recommended that she return for magnetic resonance imaging (MRI) if her arm has not healed in three weeks, as ligament damage is a possibility.

[2] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Manage and use your Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "Introduction to iCloud," available at https://support.apple.com/kb/PH26502; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; and "Apple Platform Security," available at https://help.apple.com/pdf/security/en_US/apple-platform-security-guide.pdf.

33. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and

bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e. Find My allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of iOS devices, as well as share their location with other iOS users. It also allows owners of Apple devices to manage, interact with, and locate AirTags, which are tracking devices sold by Apple.

f. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and

laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

34. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

35. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for

products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

36. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "capability query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the "Find My" service, including connection logs and requests to remotely find, lock, or erase a device, are also maintained by Apple.

37. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

38. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files

(iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Some of this data is stored on Apple's servers in an encrypted form but may nonetheless be decrypted by Apple. Records and data associated with third-party apps, including the instant messaging service WhatsApp, may also be stored on iCloud.

39. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

40. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of

criminal activity, including to communicate and facilitate the offenses under investigation.

41. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

42. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a

crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

43. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

44. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

45. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information

(including the content of communications and stored data) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

46. Based on the forgoing, I request that the Court issue the proposed search warrant.

47. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Apple. Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

/ /

/ /

/ /

/ /

/ /

/ /

Respectfully submitted,

David Hudgens

David Hudgens
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on April 17, 2026

THE HONORABLE ELSA M. BULLARD
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

**Property to Be Searched**

1. This warrant applies to information associated with **"SHANE RYAN BOLLMAN, [redacted]"** that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

# ATTACHMENT B

**Particular Things to be Seized:**

## I. Information to be disclosed by Apple Inc. ("Apple")

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address);

b. The contents of all emails associated with the account, for the period of January 1, 2026 to January 31, 2026, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the

actual IP addresses of the sender and the recipient of the emails, and all attachments;

c. The contents of all instant messages associated with the account, for the period of January 1, 2026 to January 31, 2026, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

d. All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), for the period of January 11, 2026 to January 18, 2026, including FaceTime call invitation logs, messaging and capability query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My and AirTag logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

e. All records and information regarding locations where the account or devices associated with the account were accessed, for the period of January 11, 2026 to January 18, 2026, including all data stored in connection with AirTags, Location Services, Find My, and Apple Maps;

f. All geolocation and Precision Finding data for the period of January 11, 2026 to January 18, 2026;

g. All deleted account information for the period of January 1, 2026 to January 31, 2026;

h. Digital media stored in the account on January 18th, 2026 including EXIF and metadata, and photos and videos in their original file format - including all EXIF information;

i. All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S. Code § 241 (Conspiracy against rights) and 18 U.S. Code § 248(a)(2) (Interference with Religious Freedom at Place of Worship), those violations involving **"SHANE RYAN BOLLMAN, [redacted]"** including, for each account or identifier listed on Attachment A, information pertaining to the following matters for the time period specified in Section I:

a. Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

b. Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

c. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

d. The identity of the person(s) who communicated with the user ID about matters relating to 18 U.S. Code § 241 (Conspiracy against rights) and 18 U.S. Code § 248(a)(2) (Interference with Religious Freedom at Place of Worship), including records that help reveal their whereabouts.

**CERTIFICATE OF AUTHENTICITY**
**OF DOMESTIC RECORDS**
**PURSUANT TO FEDERAL RULES OF EVIDENCE**
**902(11) AND 902(13)**

I, ________________________________, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Apple Inc. ("Apple"), and my title is ____________________________. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Apple. The attached records consist of _____________ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

1. All records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Apple, and they were made by Apple as a regular practice; and

2. Such records were generated by Apple's electronic process or system that produces an accurate result, to wit:

a. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Apple in a manner to ensure that they are true duplicates of the original records; and

b. the process or system is regularly verified by Apple, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

____________________ ______________________________________

Date Signature

*AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)* *2026R00046*

| **Return** | | |
|---|---|---|
| *Case No.:* | *Date and time warrant executed:* | *Copy of warrant and inventory left with:* |
| *Inventory made in the presence of :* | | |
| *Inventory of the property taken and name of any person(s) seized:* | | |

**Certification**

*I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated clerk of courts.*

Date:

*Executing officer's signature*

*Print name and title*

# UNITED STATES DISTRICT COURT

for the
District of Minnesota

IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH "SHANE RYAN BOLLMAN, [redacted]" THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC.

**SEALED BY ORDER OF THE COURT**

Case No. 26-mj-365 (EMB)

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of California:

**See Attachment A, incorporated here.**

The person or property to be searched, described above, is believed to conceal:

**See Attachment B, incorporated here.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before May 1, 2026
*(not to exceed 14 days)*

_ in the daytime 6:00 a.m. to 10 p.m.     X at any time in the day or night as I find reasonable cause has been established.

You must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the Magistrate Judge by emailing to usamn.cpss@usdoj.gov.

Date and Time issued: April 17, 2026 at 4:36 p.m.

*Judge's Signature*

City and State: Minneapolis, MN

The Honorable Elsa M. Bullard
United States Magistrate Judge
*Printed Name and Title*

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 26-mj-365 (EMB)

IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH "SHANE RYAN BOLLMAN, [redacted]" THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC.

**SEALED BY ORDER OF THE COURT**
PETITION OF THE UNITED STATES FOR AN ORDER SEALING SEARCH WARRANT, AFFIDAVIT, RETURN, PETITION AND ORDER FOR SEALING

COMES NOW the United States of America by its undersigned attorneys and in support of its Petition for an Order Sealing Search Warrant, Affidavit, Return, and Petition in the above-captioned matter, states as follows:

1. On April 17, 2026, The Honorable Elsa M. Bullard authorized the search of information stored in the servers that are associated with the account described in Attachment A that is stored at premises controlled by Apple Inc.

2. The Affidavit of Special Agent David Hudgens, submitted in support of the search warrant, sets forth facts regarding an ongoing investigation into violations of Title 18, United States Code, Section 241, Conspiracy Against Rights and Title 18, 248(a)(2), Interference with Religious Freedom at Place of Worship.

3. The search warrant documents presented to this Court for *in camera* review include detailed and highly sensitive investigative information. Disclosure of the information would jeopardize an ongoing investigation into alleged criminal offenses and the privacy of individuals unlikely to be, and/or who may ultimately not be indicted.

4. Nondisclosure of the search warrant documents is necessary to prevent the ongoing investigation from being compromised. Immediate public filing of the

search warrant documents would, *inter alia*, compromise details about the nature, extent, and scope of the investigation.

5. The Court's power to prevent disclosure of its files, especially for a limited period of time, is well established. This general power has been recognized by the United States Supreme Court.

> It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over some records and files and access has been denied where court files might have become a vehicle for improper purposes.

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).

6. The Eighth Circuit has recognized the Court's specific power to restrict access to search warrant documents like those at issue here:

> We hold that the qualified first amendment right of public access extends to the documents filed in support of search warrants and that the documents may be sealed if the district court specifically finds that sealing is necessary to protect a compelling government interest and that less restrictive alternatives are impracticable.

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988).

7. The Eighth Circuit and district courts within the Circuit have recognized that the circumstances surrounding ongoing investigations constitute compelling government interests warranting the sealing of search warrant documents. For example, the Eighth Circuit has approved sealing search warrant documents that "describe[d] in detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved," resulting in "substantial probability that the government's on-going investigation

would be severely compromised if the sealed documents were released." *Gunn*, 855 F.2d at 574.

8. Moreover, the Eighth Circuit has recognized that search warrant affidavits permeated with references to individuals other than the subjects of the search warrant and/or with information revealing the nature, scope and direction of the government's ongoing investigation may be sealed not only because they present compelling government interests justifying sealing, but also because less restrictive alternatives to sealing are in such circumstances impracticable. *Id.*

9. Based upon the foregoing and all the files and proceedings to date, the United States respectfully requests that this Court issue an Order Sealing the Warrant, Application, Affidavit of HSI Special Agent David Hudgens, Return, this Petition, and the Sealing Order until the close of business on April 17, 2027, unless a compelling interest is shown by the United States for a continuation of the sealing.

Dated: April 17, 2026

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney
District of Minnesota

FLAVIO De ABREU
Special Assistant
United States Attorney
District of Minnesota

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ORLANDO B. SONZA
Counsel
Civil Rights Division

*/s/Megan Frederick*
MEGAN FREDERICK
Trial Attorney, Criminal Section
Civil Rights Division

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 26-mj-365 (EMB)

IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH “SHANE RYAN BOLLMAN, [redacted]” THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC.

**SEALED BY ORDER OF THE COURT**

ORDER FOR SEALING

This Court, having reviewed the Petition of the United States herein, finds that the United States has shown a compelling interest in the sealing of documents in the above-captioned matter because:

a. Nondisclosure of the search warrant documents is necessary to prevent the ongoing investigation from being compromised.

b. Nondisclosure of the search warrant documents is necessary to protect the privacy of individuals unlikely to be, and/or who may ultimately not be indicted.

This Court also finds that less restrictive alternatives to sealing are impracticable or not appropriate.

It is therefore:

ORDERED that all documents filed in the above-captioned matter are hereby sealed until the close of business on April 17, 2027.

IT IS FURTHER ORDERED that these documents will be unsealed at the above time unless further compelling interest is shown by the United States for continuing this Order for an additional period of time.

April 17, 2026
Date

The Honorable Elsa M. Bullard
United States Magistrate Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 26-mj-365 (EMB)

IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH "SHANE RYAN BOLLMAN, [redacted]" THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC.

**SEALED BY ORDER OF THE COURT**

**APPLICATION FOR ORDER COMMANDING APPLE INC. NOT TO NOTIFY ANY PERSON OF THE EXISTENCE OF WARRANT**

The United States requests that the Court order Apple Inc. ("Apple") not to notify any person (including the subscribers and customers of the account(s) listed in the warrant) of the existence of the attached warrant until the earlier of 90 days from the date of the order or 7 days from the Government submitting the seized items to defendant per the Government's Rule 16 discovery obligation.

1. Apple is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Pursuant to 18 U.S.C. § 2703, the United States obtained the attached warrant, which requires Apple to disclose certain records and information to the United States. This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." Id.

2. In this case, such an order would be appropriate because the attached warrant relates to an ongoing criminal investigation that is neither entirely public

nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the attached warrant will seriously jeopardize the investigation or unduly delay a trial, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify co-conspirators. *See* 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored electronically. If alerted to the existence of the warrant, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

WHEREFORE, the United States respectfully requests that the Court grant the attached Order directing Apple Inc. not to disclose the existence or content of the attached warrant until the earlier of, 90 days from the date of the order or 7 days from the Government submitting the seized items to defendant per the Government's Rule 16 discovery obligation, except that Apple Inc. may disclose the attached warrant to an attorney for Apple Inc. for the purpose of receiving legal advice.

3. The United States further requests that the Court order that this application and any resulting order be sealed until one year from the date of that Order. As explained above, these documents discuss an ongoing criminal investigation that is neither entirely public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Dated: April 17, 2026

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney
District of Minnesota

FLAVIO De ABREU
Special Assistant
United States Attorney
District of Minnesota

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ORLANDO B. SONZA
Counsel
Civil Rights Division

*/s/Megan Frederick*
MEGAN FREDERICK
Trial Attorney, Criminal Section
Civil Rights Division

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 26-mj-365 (EMB)

IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH "SHANE RYAN BOLLMAN, [redacted]" THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC.

**SEALED BY ORDER OF THE COURT**

**ORDER**

The United States has submitted an application pursuant to 18 U.S.C. § 2705(b), requesting that the Court issue an Order commanding Apple Inc. ("Apple"), an electronic communication service provider and/or a remote computing service, not to notify any person (including the subscribers and customers of the account(s) listed in the warrant) of the existence of the attached warrant until the earlier of 90 days from the date of the order or 7 days from the Government submitting the seized items to defendant per the Government's Rule 16 discovery obligation.

The Court determines that there is reason to believe that notification of the existence of the attached warrant will seriously jeopardize the investigation or unduly delay a trial, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify co-conspirators. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

IT IS THEREFORE ORDERED under 18 U.S.C. § 2705(b) that Apple shall not disclose the existence of the attached warrant, or this Order of the Court, to the listed subscriber or to any other person, until the earlier of, 90 days from the date of the order or 7 days from the Government submitting the seized items to defendant per

the Government's Rule 16 discovery obligation, except that Apple may disclose the attached warrant to an attorney for Apple for the purpose of receiving legal advice.

IT IS FURTHER ORDERED that the application and this Order are sealed until one year from the date of this Order.

April 17, 2026
Date

The Honorable Elsa M. Bullard
United States Magistrate Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 26-mj-365 (EMB)

IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH "SHANE RYAN BOLLMAN, [redacted]" THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC.

**SEALED BY ORDER OF THE COURT**

APPLICATION OF THE UNITED STATES FOR AN EXTENSION OF TIME TO EXECUTE SEARCH WARRANT

COMES NOW the United States of America, by its undersigned attorneys and in support of an application for an Order extending the time by which Apple Inc. must execute the search warrant:

1. On April 17, 2026, The Honorable Elsa M. Bullard issued the attached search warrant authorizing the search of information maintained by Apple Inc. The search warrant commanded law enforcement to execute the search warrant within 14 days of the issuance of the warrant pursuant to Federal Rule of Criminal Procedure 41—*i.e.*, by May 1, 2026. The Affidavit of HSI Special Agent David Hudgens submitted in support of the search warrant sets forth facts regarding an ongoing criminal investigation. The factual allegations in this application are also based on information provided from HSI Special Agent David Hudgens.

2. Production by service providers such as Apple Inc. pursuant to search warrant routinely occurs outside Rule 41's 14-day period for execution. Indeed, production often occurs more than 30 days after service of a warrant on the service provider. Reasons for delay in production are outside the government's control, and may include the complexity or volume of data requested in the warrant itself, as well

as the volume of other requests for information received by Apple Inc.

3. On June 26, 2019, a panel of the Eighth Circuit Court of Appeals issued an opinion in *United States v. Nyah*, 928 F.3d 694 (8th Cir. 2019). The Eighth Circuit addressed the question of when a warrant issued to Facebook was executed for purposes of Federal Rule of Criminal Procedure 41: "The district court thought the warrant was executed when the officers delivered it to Facebook," while "Nyah counters that the warrant was not executed until the officers seized the evidence from Facebook." *Id*. at 699. In dicta, the *Nyah* court observed that "the text of Rule 41 suggests that a warrant is not fully executed until officers have seized the property that they are authorized to take" and "the authorized seizure of property under the warrant constitutes part of the execution of the warrant." *Id*. The court, however, concluded that it did not need to "definitively" determine whether the warrant was "executed" within fourteen days after the warrant was issued because even if there were a violation of Rule 41, there was no basis for suppression. *Nyah*, however, recommends a remedy to any Rule 41 problem, which is to "simply obtain a fresh warrant with a renewed period of fourteen days within which to execute the warrant." *Id*. at 700.

4. Although *Nyah* does not contain a *holding* that a Rule 41 violation occurs when providers like Facebook produce records in response to a search warrant more than 14 days after the warrant is issued, Judge Colloton's opinion strongly suggests such an interpretation. The United States disagrees with this interpretation, and contends that, as the Sixth Circuit held in *United States v.*

*Farrad*, 895 F.3d 859, 890 & n.23 (6th Cir. 2018), a warrant directed to a service provider is executed when an officer serves it on the provider. *Nyah* also conflicts with the Eighth Circuit's earlier decision in *United States v. Welch*, 811 F.3d 275, 280-81 (8th Cir. 2016). In considering when the time limit for providing notice of a search warrant under Fed. R. Crim. P. 41(f) began to run, the *Welch* court pinned the timing of a warrant's execution to the date when officers served the warrant on the provider (via installation of software on a server). Nevertheless, *Nyah* is the only Eighth Circuit opinion to speak directly to when execution is complete under Rule 41, and therefore the United States seeks to comply with it in an abundance of caution.

5. Recognizing both the *Nyah* court's suggestion that "execution" of a warrant occurs only after the provider produces the records sought to the law enforcement agent, and that prior experience has shown that production often occurs after the 14-day requirement provided by Rule 41 has lapsed, the government hereby moves for an Order pursuant to Rule 45(b)(1)(A) to extend the period of time for execution "before the originally prescribed or previously extended time expires." Accordingly, the government seeks an Order extending the period by which the warrant must be executed from 14 days from the issuance of the warrant—May 1, 2026—until the government obtains the records produced by Apple Inc. in response to the warrant.

Dated: April 17, 2026

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney
District of Minnesota

FLAVIO De ABREU
Special Assistant
United States Attorney
District of Minnesota

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ORLANDO B. SONZA
Counsel
Civil Rights Division

*/s/Megan Frederick*
MEGAN FREDERICK
Trial Attorney, Criminal Section
Civil Rights Division

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 26-mj-365 (EMB)

IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH "SHANE RYAN BOLLMAN, [redacted]" THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC.

**SEALED BY ORDER OF THE COURT**

ORDER EXTENDING TIME TO EXECUTE SEARCH WARRANT

The Court has reviewed the Application of the United States for an extension of time to execute the accompanying search warrant. Although the Court does not believe an extension is needed if the government executes the search warrant by serving it on the provider within 14 days of its issuance, *see United States v. Farrad*, 895 F.3d 859, 890 & n.23 (6th Cir. 2018) (stating that a warrant directed to a service provider is executed when an officer serves it on the provider), the Court understands the government's concerns about statements made in dicta in *United States v. Nyah*, 928 F.3d 694 (8th Cir. 2019).

Therefore, the Court finds that the United States has shown good cause for the requested order. The United States must serve the above-captioned Search Warrant on Apple Inc. within 14 days of issuance. To the extent that "execution" of the Search Warrant under Federal Rule of Criminal Procedure 41(e)(2)(A)(1) includes production of records by Apple Inc. in response to the Search Warrant, it is ORDERED pursuant to Federal Rule of Criminal Procedure 45(b)(1)(A), that the date by which law

enforcement must execute this warrant is extended from May 1, 2026, to the date the government obtains the records produced by Apple Inc. in response to the warrant.

April 17, 2026
Date

The Honorable Elsa M. Bullard
United States Magistrate Judge