**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

DAVID ANTHONY OKAR,

Defendant.

Court File No. 26-cr-025 (27)(LMP/DLM)

**SUPPLEMENTAL MOTION TO DISMISS FOR VIOLATION OF FIRST AMENDMENT RIGHTS AND FAILURE TO STATE A CLAIM**

The Defendant, David Okar, individually moves to dismiss the Superseding Indictment on First Amendment grounds as a supplemental argument to the joint motions to dismiss already on file.

## INTRODUCTION

David Okar is an independent journalist and videographer in Minnesota working under the name Brixton Hughes. He worked with Listen Media USA[1] and he has an online following. Okar posts videos and stories on social media sites such as Facebook and YouTube. He is a recognized personality because of his work. In 2014, Okar released a well-received documentary entitled "Crafted To Last: Minnesota Beer Blossoms."[2]

Okar is also described as a political activist based on his work documenting local protests, police accountability issues, and the social justice issues specifically relevant to the Twin Cities. Much of Okar's reporting consists of sharing video footage of these

[1] https://listenmedia.org/meet-the-team/

[2] https://www.startribune.com/crafted-to-last-premiere-on-saturday/267718211

events. He sometimes shares or reposts announcements regarding upcoming protests or community meetings and he comments about current events. The videos Okar posts are typically made without his own personal commentary so the viewer can hear the event being recorded. Some videos are narrated after the fact. Okar's work is motivated by community involvement and not for profit.

In late 2025 through the winter of 2026, the federal government surged an unprecedented number of HSI and ICE agents into Minnesota. Operation Metro Surge created chaos and inflicted violence on the people of Minnesota. Government agents, in many cases, wrongfully arrested people, seized property, and detained individuals without legal basis. Two Minnesotans were brutally murdered by ICE agents. The response to ICE tactics in Minnesota was widespread and inspiring. People from all walks of life came together in many different ways from helping neighbors with daily necessities to turning out in huge numbers to organized protests. News concerning protests in Minnesota gained nationwide significance.

On January 18, 2026 one of these protests focused on Cities Church in St. Paul because one of its pastors shamefully worked as the leader of ICE's regional office. David Okar was present for this protest to document the event in his role as an independent journalist. His conduct before, during, and after the protest at Cities Church was consistent with constitutionally protected media efforts to report on issues of nationwide importance. A copy of the video Okar recorded is marked as Exhibit 1.[3]

[3] The exhibit video is 23 minutes of raw footage recorded by Okar. A version of the video was posted online with commentary by others.

The Government initially charged eight individuals by Indictment on January 29, 2026 (DOC # 39). The Superseding Indictment was filed on February 26, 2026 adding another thirty-one defendants. Since then, the defendants in the instant matter have filed various motions, including at least six joint motions to dismiss. Okar joined and is part of the following joint motions to dismiss filed or being filed on August 31, 2026:

| | |
|---|---|
| Motion to Dismiss for Selective or Vindictive Prosecution | DOC# 674 |
| Motion to Dismiss Count One | DOC# 677 |
| Motion to Dismiss Count Two-Commerce Clause | DOC# 687 |
| Motion to Dismiss for Outrageous Government Use of 19 U.S.C. §1509 Summons | DOC# 695 |
| Motion to Dismiss for Violation for First Amendment | DOC# ___ |

Defendants Donald Lemon (4) and Georgia Fort (8) separately filed motions to dismiss for violations of the First Amendment (DOCS # 609, 592). These motions compliment and echo the arguments raised in the joint motion to dismiss for First Amendment violation. Okar asks the Court to consider these arguments together since there are overlapping arguments. The instant motion is intended to highlight specific argument relating to Okar without unnecessarily repeating information already before the Court.

**ARGUMENT**

The case against Okar, and his co-defendants, relies on a perverse application of 18 U.S.C. §248 (FACE Act) to punish political dissent to current administration policies and to enjoin the free press from its duty to report. In a larger sense, this prosecution seeks to deprive citizens of the right to free speech by pursuing protestors who simply showed up to voice opposition to the cruelty of ICE tactics in our community.

The Government cannot prove its case against Okar based on the information available in the discovery file. Count One of the Superseding Indictment charges conspiracy against the right of religious freedom in a place of worship. Count Two alleges the defendants injured, intimidated, or interfered with the exercise of congregants' right of religious freedom. In order to prevail, the Government must show Okar interfered with religious rights by force or threat of force or by physical obstruction. Nothing in the record shows Okar committing any of these acts. Rather, Okar was merely present at the scene of the protest documenting the event through video recording. He was not trespassing by entering the premises and his conduct was consistent with journalistic observation.

The overt acts alleged in Count One of the Superseding Indictment do not allege criminal activity. Overt act #10 alleges Okar shared an online flyer regarding the protest. Sharing information about a protest is not a crime and does not nullify Okar's position as an independent journalist, even if it can be viewed as exposing a political bias. Overt act #25 describes the conduct of the protestors inside the premises, but specifically does not name Okar. Other than mere presence, nothing in the Superseding Indictment suggests Okar obstructed or threatened any of the congregants in any way.

Okar claims the entire time he was present at the Cities Church protest, he was busy creating archival footage of the events. One congregant decided to speak with Okar by questioning him about why he was taking video, but the encounter was brief and Okar was non-confrontational. Ex. 1, at 4:16. Another congregant approached Okar and tried to cover the camera lens with his hand. Ex. 1, at 5:40. The congregant called Okar "a

satanic communist" while another person approached Okar in a menacing maner. Ex. 1, at 6:17. Okar remained non-confrontational.

The photo and video evidence shows Okar either walking around with his camera or off to the side in order to get a view of what was happening. He did not block aisles and he did not hinder anyone's movement. More to the point, Okar did not approach anyone nor did he attempt to interview any of the congregants. He argues he had a First Amendment right to be present not only for peaceful protest, but also to exercise his free speech rights to report on the events. Reliance by the Government on the FACE Act in the instant case is unconstitutional because it offends the First Amendment both facially and as-applied to Okar's presence at the protest.

The First Amendment to the U.S. Constitution states, in part, "Congress shall make no law…abridging the freedom of speech, or of the press…" U.S. Const., amend. I. The "hallmark of the protection of free speech is to allow 'free trade of ideas'- even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358 (2003). Peaceful protest, and reporting on protests, in response to the atrocities perpetrated by ICE falls squarely within protected speech under the First Amendment.

However, speech that qualifies as a true threat is not protected. *United States v. Bellrichard*, 994 F.2d 1318, 1322 (8th Cir. 1993). A true threat is a "statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another." *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002). Speech in this context is not limited to just words. The U.S. Supreme Court

has stated: "While we have rejected 'the view that an apparently limitless variety of conduct can be labeled `speech' whenever the person engaging in the conduct intends thereby to express an idea…we have acknowledged that conduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.'" *Texas v. Johnson*, 491 U.S. 397, 404 (1989). The Court went on to say "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether [a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Id*. In the instant matter, the Government claims chants of "Hands Up, Don't Shoot!" and "Ice Out!"or "Stand Up, Fight Back!"are threatening. The video in Exhibit 1 and the Government's own pleading show that the protestors did not express an intent to harm or cause injury to anyone, even if they were disruptive. Speech can be forceful or aggressive and remain protected. *See United States v. Dinwiddie*, 76 F.3d 913, 925 (8th Cir. 1996). Okar did not participate in any of these chants. When confronted by congregants, Okar spoke to them calmly and did not say or do anything that could be perceived as a threat. Further, Okar can be heard saying around 5:40 in his video saying he started recording after the protest began and he was there to document what is happening in his community.

The Government is plain wrong in its characterization of the protest conduct as threatening. There were no threats either direct or implied. Okar was non-confrontational and his point-of-view video in Exhibit 1 clearly depicts the non-threatening nature of his work and the event itself. He asks the Court to dismiss the Superseding Indictment

because the evidence before is uncontroverted. If there is no question that a defendant's speech is protected by the First Amendment, the court may dismiss the charge as a matter of law. *United States v. Bippert*, 2022 WL 625083; *citing United States v. Stevens*, 881 F.3d 1249, 1252 (10th Circuit. 2018). The defendants' motions are all capable of pretrial determination based on the clear record being created by the defense as a group with similar positions and defenses.

**CONCLUSION**

David Okar respectfully requests an order dismissing both counts of the Superseding Indictment because Okar had a First Amendment right to be present at the Cities Church protest and because the Government failed to allege conduct by Okar to support a conviction.

Law Office of Robert A. Lengeling, PLLC

Date: August 31, 2026

By *s/ Robert A. Lengeling*
MN ID# 304165
Lumber Exchange Building
10 S. 5th Street, Suite 800
Minneapolis, Minnesota 55402
(612) 963-1555
robert@lengelinglaw.com
ATTORNEY FOR DEFENDANT