**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NEKIMA VALDEZ LEVY ARMSTRONG, et al.,<br><br>Defendants. | Case No. 26-cr-00025-LMP-DLM<br><br>**DEFENDANT AZIZA MOHAMMED ABOUD'S MOTION TO SUPPRESS EVIDENCE DERIVED FROM CELL PHONE** |

Defendant Aziza Mohammed Aboud, through counsel, moves under the Fourth Amendment to the United States Constitution, Federal Rule of Criminal Procedure 12(b)(3)(C), and the Court's supervisory authority for an order suppressing all evidence obtained from, or derived from, the blue Apple iPhone seized from Ms. Aboud on February 27, 2026, together with all fruits of that search.

The Government retained Ms. Aboud's phone for more than two weeks before obtaining a search warrant on March 16, 2026. The warrant then authorized a sweeping forensic search extending from January 1, 2026, through the date of execution, including not only evidence of the January 18, 2026 Cities Church incident, but "other organized protest activity," post-event communications, associations with all indicted co-defendants and unidentified persons, contact lists, geolocation information, financial records, Internet history, IP addresses, photographs, videos, and other data. The resulting forensic review confirms the breadth of the intrusion: investigators reviewed an extraction containing 12,842 messages, 222 Facebook messages, 53,081 photographs, web history,

call logs, Apple Maps data, and other personal information. *See* HSI ROI MS05F226MS0003-418, Bates 00001484-00001488.

Ms. Aboud requests suppression because: (1) the prolonged warrantless retention of the phone must be justified under the Fourth Amendment by the totality of the circumstances and a showing of reasonable diligence; (2) the affidavit failed to establish an individualized nexus between this particular phone and the charged offenses, sufficient to justify the breadth of the search; (3) Attachment B functioned as a general warrant by authorizing searches for "other organized protest activity" and associational information beyond the charged event; (4) the warrant implicated core First Amendment speech and associational interests and therefore required the "scrupulous exactitude" demanded by Supreme Court and Eighth Circuit precedent; and (5) the defects were sufficiently apparent that the Leon good-faith exception does not excuse the search.

Ms. Aboud further requests an evidentiary hearing concerning the circumstances and duration of the seizure, the Government's diligence in seeking the March 16 warrant, the forensic-search methodology actually used, the scope of the extraction and review, and the dissemination and derivative use of information obtained from the phone.

**KENNETH UBONG UDOIBOK, P.A.**

Dated: August 31, 2026

*/s/ Kenneth U. Udoibok*
Kenneth U. Udoibok (0262523)
310 Fourth Avenue South, Suite 5010
Minneapolis, MN 55415
(612) 808-6031
*k@kenulaw.com*

**Attorney for Defendant**
**Aziza Mohammed Aboud (10)**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NEKIMA VALDEZ LEVY ARMSTRONG, et al.,<br><br>Defendants. | Case No. 26-cr-00025-LMP-DLM<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AZIZA MOHAMMED ABOUD'S MOTION TO SUPPRESS EVIDENCE DERIVED FROM CELL PHONE** |

## INTRODUCTION

This motion concerns the digital equivalent of an individual's entire personal library, private correspondence, intimate photo albums, historical physical movements, financial ledgers, and First Amendment political and religious associations—all housed within a single handheld device. The Supreme Court of the United States has established that modern cellular telephones are qualitatively different from ordinary physical containers because they hold the literal "privacies of life" in digital form. *Riley v. California*, 573 U.S. 373, 403 (2014). Because of this profound privacy interest, the Fourth Amendment strictly regulates both the seizure and the subsequent search of digital devices.

The Government's investigation in this matter violated these foundational Fourth Amendment safeguards at every stage. First, on February 27, 2026—forty days after the January 18, 2026 church incident—Homeland Security Investigations ("HIS") agents arrested Defendant Aziza Mohammed Aboud on an arrest warrant and seized her blue

Apple iPhone without a search warrant, despite the total absence of exigency, plain-view contraband, or imminent destruction of evidence. The Government then retained the device in its exclusive custody for seventeen days without seeking judicial authorization, during which time it possessed every operative fact later used in its warrant application.

Second, when the Government finally applied for a warrant on March 16, 2026, the supporting affidavit was utterly devoid of an individualized nexus connecting Ms. Aboud's specific phone to the charged offenses. Instead of offering facts showing that Ms. Aboud used her phone to plan, coordinate, or record the January 18 incident, the affiant relied entirely on generic law-enforcement boilerplate that "disruptors and co-conspirators" generally utilize phones, combined with references to recordings made by other unidentified third parties.

Third, Attachment B to the search warrant authorized an unconstitutional general search. It commanded a retrospective digital dragnet extending from January 1, 2026 through the undefined "PRESENT" (March 16, 2026), targeting not only the charged offenses, but sweeping up "other organized protest activity," post-event group chats, and political and religious associations with dozens of co-defendants and unnamed persons.

Because this prosecution directly targets political protest activity, the Fourth Amendment demanded "scrupulous exactitude." *Stanford v. Texas*, 379 U.S. 476, 485 (1965); *United States v. Apker*, 705 F.2d 293, 300–02 (8th Cir. 1983), *aff'd in part and rev'd in part en banc sub nom. United States v. Fitzgerald*, 724 F.2d 633 (8th Cir. 1983). Because Attachment B is permeated with unconstitutional overbreadth and general rummaging, partial severance is unavailable under *United States v. LeBron*, 729 F.2d

533, 537 n.2 (8th Cir. 1984), and the good-faith exception cannot rescue the search. *United States v. Leon*, 468 U.S. 897, 923 (1984); *United States v. Burgard*, 675 F.3d 1029, 1035 (7th Cir. 2012). All evidence obtained from the device, and all derivative fruits thereof, must be suppressed.

## FACTUAL BACKGROUND[1]

### A. The Government seized Ms. Aboud's iPhone on February 27, 2026, and did not obtain a search warrant until March 16, 2026.

The warrant affidavit states that a federal arrest warrant was issued for Ms. Aboud on February 26, 2026; HSI agents arrested her the next day; and "[a]t the time of the arrest, ABOUD had possession of a blue Apple iPhone" that HSI "retrieved." Aff. ¶¶ 10-12, Bates 00008755. The affidavit further states that HSI "subsequently maintained possession" of the device. *Id*. ¶ 13. No search warrant for the phone was issued until March 16, 2026. (Search Warrant, No. 26-mj-280 (SGE), Bates 00008777). The affidavit gives no case-specific explanation for why the Government waited more than two weeks before seeking authorization to search the phone.

### B. The affidavit relied primarily on Ms. Aboud's presence at the protest and a generalized assertion that participants commonly use phones.

The affidavit alleged that Ms. Aboud attended a pre-operation briefing and later attended Cities Church. (Aff. ¶¶ 24-29, Bates 00008758-00008759). It also asserted, in

[1] Pursuant to Fed. R. Crim. P. 2, Fed. R. Evid. 403, and LR 7.1(l), Ms. Aboud will not reproduce the search warrant and report at this juncture (Bates Stamp "00008751-00008784" and DHS's Report of Investigations "ROI" Bates Stamp "1484-1488) because most defendants have made them part of the record, and reproducing them again will needlessly present cumulative evidence.

general terms, that "disruptors and co-conspirators" commonly communicate, organize, and work together through cellular phones. (Aff. ¶ 5, Bates 00008754). But the affidavit did not identify any pre-warrant text, call, social-media post, photograph, video, or other communication Ms. Aboud sent or received on this phone that planned, coordinated, or facilitated the charged conduct. Although the affidavit stated that "[s]everal disruptors" recorded the briefing and the church incident, it did not state that Ms. Aboud made such a recording. (Aff. ¶ 17, Bates 00008756).

### C. Attachment B authorized a forensic search far beyond evidence of the January 18 incident.

Attachment B authorized seizure of data from January 1, 2026 "through PRESENT," including all call logs; messages; e-mails; photographs; videos; social-media posts; FaceTime and Google Voice information; Internet history; and other media relating not only to the charged offenses but also to "other organized protest activity," "subsequent communications," and Ms. Aboud's "communications, activities, and associations" with any indicted co-defendant or unidentified person who participated in planning or commission of the offenses. (Bates 00008771-00008772). It separately authorized geolocation data, financial records, contact lists, access credentials, IP-address records, and "contextual information." (Bates 00008773).

The warrant also authorized government personnel to review copied electronic data and permitted delivery of a "complete copy" of the extracted data to prosecutors and support staff. (Bates 00008774). Although an addendum directed the Government to

make reasonable efforts to avoid data outside the warrant, the substantive categories in Attachment B themselves were sweeping. (Bates 00008775-00008776).

### D. The forensic review confirms that investigators obtained an expansive cross-section of Ms. Aboud's digital life.

HSI's March 30, 2026 Report of Investigation states that agents received a filtered extraction of Ms. Aboud's phone on March 20 and reviewed it between March 26 and March 30. (ROI, Bates 00001485). The extraction contained 296 iOS call logs, 12,842 messages, 222 Facebook messages, Internet history, Apple Maps data, and 53,081 photographs. (Bates 00001485-00001488). The report cataloged political and associational material beyond the physical conduct charged at Cities Church, including ICE-related web browsing, a screenshot of an "#OPERATIONPULLUP" flyer, a screenshot of a post-event group chat, and a Facebook invitation to join the "Racial Justice Network." (Bates 00001487-00001488). Those results illustrate why constitutional limits must be enforced at the authorization stage, not after agents have already reviewed the data.

## ARGUMENT

### I. The Warrantless Seizure and Seventeen-Day Unexplained Detention of Ms. Aboud's iPhone Violated the Fourth Amendment and Cannot Be Saved by Good Faith.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A property seizure occurs whenever there is a meaningful interference with an individual's possessory interests. *Soldal v. Cook County*, 506 U.S. 56, 61 (1992).

Even where an initial warrantless seizure is justified at its inception, a seizure "reasonable at its inception because based on probable cause may become unreasonable as a result of its duration." *Segura v. United States*, 468 U.S. 796, 812 (1984); *see also United States v. Place*, 462 U.S. 696, 709 (1983).

In *Riley v. California*, 573 U.S. 373 (2014), the Supreme Court categorically refused to extend the search-incident-to-arrest doctrine to digital data on cell phones. *Id.* at 386. Although Riley recognized that officers executing an arrest may secure a device to prevent the immediate destruction of evidence while seeking a warrant, *id*. at 388, that holding does not authorize law enforcement to seize electronic devices indefinitely without demonstrating ongoing exigency, plain-view contraband, or diligent pursuit of a warrant.

Ms. Aboud was arrested pursuant to an arrest warrant forty days after the January 18 incident. The Government identified no exigent circumstances, no threat of immediate data destruction, and no reason for not seeking a search warrant before or at the time of her arrest. Under Eighth Circuit law, the constitutional reasonableness of post-seizure detention is assessed under a totality-of-the-circumstances balancing test that weighs the nature of the possessory intrusion against the Government's diligence in seeking a warrant. *United States v. Mays*, 993 F.3d 607, 616–17 (8th Cir. 2021); *United States v. Bragg*, 44 F.4th 1067, 1070–72 (8th Cir. 2022).

A prolonged warrantless delay is permissible only where the Government affirmatively proves reasonable diligence and complex investigative necessity. In *Mays*, a 15-day delay was sustained only upon a showing of a complex, year-long investigation

requiring an extensive 18-page affidavit detailing ongoing wiretaps and multi-agency coordination. 993 F.3d at 617. Similarly, in *Bragg*, a 24-day period was justified because the officer was simultaneously investigating multiple complex, ongoing violent felonies involving the suspect. 44 F.4th at 1071–72.

Here, the Government's seventeen-day delay represents an unconstitutional lack of diligence. As the Fourth Circuit held in *United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019), an unexcused delay in seeking a cell-phone warrant violates the Fourth Amendment where the Government fails to exercise diligence or establish overriding investigative obstacles. *Id.* at 271–73 (suppressing cell-phone evidence following an unexcused delay where the government possessed all operative facts and was not overwhelmed by external exigencies). Special Agent Gerber's affidavit was a standard four-page narrative of historical facts known to investigators long before February 27, 2026. The Government cannot point to any ongoing surveillance, technical obstacles, or sudden developments that prevented it from presenting this basic affidavit to a magistrate immediately upon seizing the device. Crucially, the subsequent issuance of the March 16 warrant does not cure this constitutional violation. As the Seventh Circuit held in *United States v. Burgard*, 675 F.3d 1029 (7th Cir. 2012), the good-faith exception of *United States v. Leon*, 468 U.S. 897 (1984) cannot salvage evidence obtained following an unconstitutionally prolonged seizure:

> "When an officer waits an unreasonably long time to obtain a search warrant, in violation of the Fourth Amendment, he cannot seek to have evidence admitted simply by pointing to that late-obtained warrant. If this were all that was needed, evidence would never be suppressed following

> these types of violations because, by definition, the police would always have a warrant before they searched."

675 F.3d at 1035. Because the Government unlawfully held Ms. Aboud's device for seventeen days without diligence or justification, all evidence extracted from the phone must be suppressed.

**II. The Search Warrant Affidavit Lacked Any Individualized Nexus Between Ms. Aboud's iPhone and the Charged Offenses.**

Probable cause under the Fourth Amendment requires a showing of a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). The Eighth Circuit has repeatedly held that probable cause requires a concrete, individualized nexus connecting the specific property searched to the suspected criminal activity. *United States v. Carpenter*, 341 F.3d 666, 669–71 (8th Cir. 2003); *United States v. Herron*, 215 F.3d 812, 814–15 (8th Cir. 2000).

General assertions of an officer's training and experience cannot substitute for specific facts establishing that the target device was used in furtherance of the crime. *Herron*, 215 F.3d at 814–15. The affidavit in this case fails this foundational standard. The sole paragraph purporting to connect cellular devices to the charged offenses was Paragraph 5—pure law-enforcement boilerplate stating that "disruptors and co-conspirators" generally communicate and organize using phones. (Aff. ¶ 5, Bates 00008754). Beyond this abstract generalization, the affidavit offered no facts demonstrating that Ms. Aboud utilized her phone in connection with the Cities Church event. The Government did not identify a single phone call, text message, social-media

message, or email Ms. Aboud sent or received. Nor did the Government allege that Ms. Aboud ever recorded the event, possessed a recording device, or posted images online. (Aff. ¶ 17, Bates 00008756).

Recent Eighth Circuit jurisprudence underscores that digital search warrants require specific, individualized facts linking the phone to criminal conduct. In United *States v. Ivey*, 91 F.4th 915 (8th Cir. 2024), probable cause to search a cell phone existed because officers observed the suspect in a car with a firearm directly under his seat and uncovered the suspect's personal, recent social-media videos depicting him in possession of firearms. *Id.* at 917–18. In *United States v. Shrum*, 59 F.4th 968 (8th Cir. 2023), officers had already viewed photographs of incriminating text messages sent between the defendant's device and the victim prior to obtaining the warrant. *Id.* at 972–73.

Here, by contrast, the Government established nothing more than Ms. Aboud's physical presence at an event and her contemporaneous possession of a phone forty days later. Mere presence at a scene or mere association with charged co-defendants does not establish probable cause to search the private contents of a person's phone. If Paragraph 5's generalized assertion that "disruptors use phones" were sufficient, the Fourth Amendment warrant requirement would be reduced to a nullity for any individual present at any public demonstration.

## III. Attachment B Constituted a General Warrant Targeting Protected First Amendment Speech and Association.

The Fourth Amendment prohibits general warrants to prevent "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S.

443, 467 (1971); *Marron v. United States*, 275 U.S. 192, 196 (1927). A warrant must describe the things to be seized with sufficient particularity to prevent executing officers from exercising unbridled discretion. *United States v. Saunders*, 957 F.2d 1488, 1491 (8th Cir. 1992). Attachment B violated this command by authorizing a limitless dragnet across every facet of Ms. Aboud's digital existence. Most egregiously, Attachment B authorized the search and seizure of communications and media relating to "other organized protest activity." (Bates 00008771–00008772). This catch-all clause was entirely untethered to the elements, date, location, or participants of the January 18, 2026 Cities Church incident. It explicitly authorized federal agents to rummage through Ms. Aboud's lawful political and civic associations across the Twin Cities.

Furthermore, Attachment B contained an open-ended temporal authorization spanning from January 1, 2026 "through PRESENT" (March 16, 2026). (Bates 00008771). The charged conduct was a discrete event that concluded on January 18, 2026. The warrant provided no factual basis to believe that communications occurring weeks or months after the event constituted evidence of the charged crimes. By authorizing seizure of data through the undefined "PRESENT," the warrant sanctioned the seizure of lawful post-incident speech, including community group chats and civic invitations. (ROI, Bates 00001487–00001488).

## IV. Because the Warrant Targeted Political and Religious Associational Data, the Fourth Amendment Demanded "Scrupulous Exactitude."

Where the materials subject to a search warrant implicate First Amendment rights of speech, press, or association, the Fourth Amendment's particularity requirement must

be applied with "scrupulous exactitude." *Stanford v. Texas*, 379 U.S. 476, 485 (1965); *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978). Forced disclosure of an individual's political associations, group memberships, and protest communications directly chills First Amendment freedoms. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958); Roberts v. United States Jaycees, 468 U.S. 609, 622 (1984).

The Eighth Circuit squarely applied this standard to associational records in *United States v. Apker*, 705 F.2d 293 (8th Cir. 1983). In *Apker*, the court held that search warrants authorizing the seizure of club membership directories and "papers relating to Club activities" violated the Fourth Amendment because warrants impinging on First Amendment associational interests must satisfy the "scrupulous exactitude" test. Id. at 301–03. The court further held that the Government could not search broad associational records merely because it suspected certain members of criminal activity. Id.

Here, the Government did precisely what *Stanford* and *Apker* forbid: it used a discrete, single-day incident at Cities Church as a broad license to rummage through Ms. Aboud's political and religious associations. The resulting HSI Report of Investigation catalogs the very First Amendment intrusions that the scrupulous exactitude rule was designed to prevent—logging Ms. Aboud's visits to public news articles regarding ICE watch observers, post-incident community neighborhood chats, and an invitation to join the "Racial Justice Network." (ROI, Bates 00001487–00001488). The warrant wholly failed to exhibit scrupulous exactitude.

## V. Unconstitutional Overbreadth Permeates Attachment B, Precluding Partial Severance Under Eighth Circuit Law.

The Government cannot avoid suppression by seeking to sever the invalid portions of Attachment B under *United States v. Fitzgerald*, 724 F.2d 633 (8th Cir. 1983). In *Fitzgerald*, the Eighth Circuit adopted the severance doctrine, holding that when a warrant contains both valid, particularized clauses and invalid clauses, the court may sever the invalid portions while preserving evidence seized under the valid clauses. *Id*. at 636–37. Crucially, however, the Eighth Circuit established an explicit exception to severance in *United States v. LeBron*, 729 F.2d 533 (8th Cir. 1984). Under *LeBron*, if the invalid portions of a warrant are so broad and pervasive that they "permeate" the entire search authorization, the warrant functions as an impermissible general warrant, and total suppression of all seized evidence is required:

> "[T]he severance doctrine does not apply where the warrant is 'permeated' with invalidity... In such a case, the entire search is invalid, and all evidence seized must be suppressed." 729 F.2d at 537 n.2.

Attachment B is permeated with unconstitutional overbreadth. The invalidity is not confined to an isolated, easily severed sub-clause. Rather, the defects infect every category authorized: (1) the temporal scope ("January 1, 2026 through PRESENT") extends across all categories without limitation; (2) the authorization to seize all communications concerning "other organized protest activity" infects every messaging application, email account, and call log; (3) the authorization to seize all associations with dozens of co-defendants and unnamed persons spans the entire device; and (4) the warrant authorized agents to extract and review 53,081 photographs, complete Apple Maps data, and all financial records without any showing that these massive data stores contained evidence of

a crime. Because Attachment B authorized a general exploratory search of Ms. Aboud's entire digital existence, *LeBron* mandates total suppression without severance.

## VI. The Good-Faith Exception of United States v. Leon Does Not Apply.

The Government cannot salvage this search under the good-faith exception of *United States v. Leon*, 468 U.S. 897 (1984). The Supreme Court made clear that *Leon* good faith does not apply: (1) where the supporting affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (2) where the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923; *see also United States v. Herron*, 215 F.3d 812, 814–15 (8th Cir. 2000) (holding *Leon* inapplicable where affidavit lacked individualized nexus connecting property to criminal activity).

Both disqualifying circumstances are present here. First, no reasonably well-trained officer could harbor an objectively reasonable belief that Paragraph 5's boilerplate assertions regarding "disruptors" established probable cause to seize and examine every message, photo, and map search on Ms. Aboud's phone. Second, the warrant was facially deficient because Attachment B explicitly commanded a general search for "other organized protest activity" through an open-ended "PRESENT" timeline. Where the executing officers themselves drafted and requested an

unconstitutionally broad warrant targeting political association, they cannot claim objective good-faith reliance on the resulting order.

## VII. All Direct and Derivative Evidence Must Be Suppressed.

Under the fruit-of-the-poisonous-tree doctrine, the exclusionary rule bars not only the illegally extracted data itself, but all derivative evidence, investigative leads, witness interviews, subpoenas, and secondary warrants obtained by exploiting the illegal search. *Wong Sun v. United States*, 371 U.S. 471, 484–88 (1963). The Government must be required to identify all derivative uses of the extracted data, and all such evidence must be suppressed.

## CONCLUSION

For the foregoing reasons, Defendant Aziza Mohammed Aboud respectfully requests that the Court grant her motion to suppress all evidence obtained from or derived from the search of her blue Apple iPhone, or, in the alternative, schedule an evidentiary hearing to address the Government's seventeen-day warrantless retention, lack of diligence, and derivative use of extracted data.

**KENNETH UBONG UDOIBOK, P.A.**

Dated: August 31, 2026

*/s/ Kenneth U. Udoibok*
Kenneth U. Udoibok, Reg. No. 0262523
Flour Exchange Building, Suite 5010
310 Fourth Avenue South
Minneapolis, MN 55415
(612) 808-6031
k@kenulaw.com

**Attorney for Defendant**
**Aziza Mohammed Aboud (10)**