UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. 26-cr-25 (LMP/DLM)

UNITED STATES OF AMERICA,
Plaintiff,
vs.
NEKIMA LEVY ARMSTRONG, et al.,
Defendants.

**DEFENDANTS' MOTION TO DISMISS BASED ON GOVERNMENT MISCONDUCT**

Defendants, through undersigned counsel, hereby move the Court for an order dismissing the Superseding Indictment with prejudice and imposing other appropriate sanctions due to government misconduct. The grounds for this Motion are that the government improperly posted defamatory comments and prejudicial photographs of certain Defendants on social media, and is believed to have improperly posted photos and comments on other Defendants. The government's actions violated numerous professional standards intended to protect Defendants' due process rights, and directly violated their rights to due process.[1] Defendants further urge the Court to grant their simultaneously filed Motion to Compel Discovery in order to enable them to obtain evidence relevant to this Motion. Defendants finally request an evidentiary hearing on this Motion.

[1] Defendants request dismissal and sanction based on the conduct described in this motion, and also in combination with other government misconduct described in motions to dismiss for misuse of Section 1509 summonses and selective/vindictive prosecution.

## FACTUAL BACKGROUND

On the morning of January 22, 2026, Homeland Security agents arrested Defendants Nekima Levy Armstrong and Chauntyll Allen at the Aloft Hotel in downtown Minneapolis. (Declaration of Jordan S. Kushner, para. 4). The arrests were made pursuant to the complaint and warrant filed in the instant case. Ms. Armstrong and Ms. Allen appeared in Court shortly after noon that same day. (Doc. 11).

Two Homeland Security agents took Ms. Armstrong into custody. (Kushner Decl., para. 5). One of the agents took out his cell phone and began recording. (*Id.*) When Ms. Armstrong questioned why the agent was recording, he responded that he was following instruction and that the video would not be posted on Twitter. (*Id.*) At 9:21 a.m. on January 22, 2026, a photograph of Ms. Armstrong being arrested was posted on the Twitter/X page of former Secretary of Homeland Security Kristi Noem. (*Id.*, para 2 and Declaration Exhibit 1). The photograph showed Ms. Armstrong in handcuffs and being escorted by an agent with a badge hanging in front of his chest (ironically with his own face blurred). (Kushner Decl., Ex. 1). The post by Noem alleged that Ms. Armstrong "played a key role in orchestrating the Church Riots in St. Paul, Minnesota." (*Id.*) This post was viewed by 2 million people as of March 4, 2026 when the screen shot was taken. (*Id.*)

Later on January 22, 2026, the White House posted an image of Ms. Armstrong on its Twitter/X page. (Kushner Decl., para. 3 and Exhibit 2). An explanation provided by X

indicated that the White House's image was posted about one half hour after ths post by Noem. (Kushner Decl., Ex. 2). The image of Ms. Armstong appeared to be derived from the photograph previously posted on Noem's page, but was digitally altered. (Kushner Decl., paras. 3-4 and Exhibit 2). The image posted by the White House falsely depicted Ms. Armstrong as crying hysterically, and with exaggerated and darkened facial features apparently based on racial stereotypes. (*Id.*) Inscribed on the altered image was the following text: "ARRESTED - FAR-LEFT AGITATOR NEKIMA LEVY ARMSTRONG FOR ORCHESTRATING CHURCH RIOTS IN MINNESOTA." (Kushner Decl., Ex. 2).

A continuation of the X post by the White House reposted commentary by former Attorney General Pamela Bondi which stated that federal agents had executed the arrest of Ms. Armstrong "at my direction." (Kushner Decl., Ex. 3). The post also contained text stating, "UPDATE: A second arrest has been made at my direction. Chautyll Louisa Allen has been taken into custody." (*Id.*) The White House also posted on its X page a photograph of Ms. Allen being arrested. (Kushner Decl., para. 7 and Exhibit 4). The photograph appears to show Ms. Allen in a a room where she is confined with two agents on each side. (Kushner Decl., Ex. 4). Inscribed on the photograph is the following text: "ARRESTED - CHAUNTYLL LOUISA ALLEN FOR HER ROLE IN THE ST. PAUL CHURCH RIOTS." (*Id.*)

The X post containing the image of Ms. Armstrong and photo of Ms. Allen

remains visible. (Kushner Decl., para. 8). It has been viewed 6.3 million times to date. (*Id.*)

It is believed that the government posted photographs of other Defendants with negative commentary because there were agents or photographers who photographed most Defendants when they were taken into custody. The photographs taken of Defendants in this case also cannot be viewed in isolation. At least the second group of Defendants arrested in this matter were posed and photographed together by federal agents following their arrests. Defendants understand that these photographs were disseminated at least within the federal government, if not publicly to allow for doxxing, and remain maintained in government systems or databases. The Government has not disclosed who directed that the photographs be taken, to whom they were transmitted, where they are presently maintained, or whether they were intended for, or actually used in, public-relations or social-media efforts.

Recent disclosures in another federal prosecution in this District provide substantial reason to believe that these photographs were not merely routine arrest documentation. In *United States v. Jama*, No. 26-mj-53 (MJD/LIB), court-ordered supplemental discovery revealed that DHS agents photographed a handcuffed defendant during his transportation to the Whipple Federal Building on January 23, 2026. The photograph showed two tactical-clad agents posing with the handcuffed defendant while displaying "victory" signs. More significantly, the discovery included contemporaneous

communications expressly requesting that agents obtain a "Trophy pic" with the defendant because doing so was "super important to JOC," referring to DHS's Joint Operations Center or leadership. *See* Defendant's Response in Supp. of U.S. Mtn. to Dismiss with Prejudice at 17-19, Doc. 66 (filed June 25, 2026), *United States v. Jama*, No. 26-mj-53 (MJD/LIB).

After agents transmitted an initial photograph, a coordinating agent requested that they retake it because JOC "really wants" a photograph with HSI agents positioned on either side of the defendant. Agents thereafter complied, photographing the handcuffed defendant facing the camera with two HSI agents positioned beside him. *See Id.* The resulting photograph was then circulated through what appeared to be a separate chat involving the individual who had requested the "trophy pic," where agents reacted to the photograph with heart emojis. *See Id.*

## ARGUMENT

The widely publicized negative and inflammatory comments about Defendants, perp walk photos, and the altered image of Ms. Armstrong gravely jeopardize the prospects of them receiving a fair trial. They are also subject to ridicule and potential danger and doxxing due to the inflammatory and improper posts.

The Government's tweets were not neutral docket notices or unavoidable disclosures, but rather deliberate and government-created publicity events. The government stated custody photos paired with Defendants' names and distributed through

the United States Attorney General’s and DHS’s official social media accounts. The social media posts accused Defendants of orchestrating or participating in riots, an offense that has not even bee charged and could not be supported by evidence. One post labeled Ms. Armstrong a "far-left agitator." There is no basis for the label and most significantly her political ideology is irrelevant to the criminal charges. And most egregiously, the government distorted Ms. Armstrong's image to depict her as crying hysterically while being arrested and changed her facial features The government thereby defamed and degraded Ms. Armstrong in apparent effort to humiliate and discredit her. While posting arrest photos showing Defendants in custody and in handcuffs, along with inflammatory accusations, violated the presumption of innocence, the government went far further in their violations of Ms. Armstrong's rights and dignity by falsely making her appear to be crying.

Because these tactics inappropriately announced Defendants' guilt and potentially intimidated witnesses, sanctions are appropriate. *See Fredin v. Middlecamp*, No. 17-CV-03058 (SRN/HB), 2020 WL 6867424, at *11 (D. Minn. Nov. 23, 2020), *aff'd,* 855 F. App’x 314 (8th Cir. 2021) (imposing sanctions against party for creating websites intimidating and disparaging other litigants and their counsel); *United States v. Bowen*, 799 F.3d 336, 350 (5th Cir. 2015) (imposing sanctions when prosecutors posted online comments that spoke to the guilt of defendants).

The Government’s bad faith is evident from the significant departure from the

Department of Justice's own policies and practices for the ethical distribution of information regarding criminal charges. *See* 28 C.F.R. §§ 50.2(a)(2) (providing that "the release of information for the purpose of influencing a trial is, of course, always improper"), (b)(2) (stating the DOJ officials shall not "furnish any statement or information for the purpose of influencing the outcome of a defendant's trial"), (b)(6)(i) and (vi) (prohibiting DOJ officials from releasing information that "generally tends to create dangers of prejudice without serving a significant law enforcement function," including "[o]bservations about a defendant's character" and "[a]ny opinion as to the accused's guilt"), (b)(7) (providing that DOJ officials "should take no action to encourage or assist news media in photographing or televising a defendant or accused person being held or transported in Federal custody" and "should not make available photographs of a defendant unless a law enforcement function is served thereby").

The Department of Justice's usual practice when posting information or issuing press releases about charges against defendants has previously been to remind the audience that "[a] complaint is merely an allegation and the defendant is presumed innocent until proven guilty beyond a reasonable doubt in a court of law." This is consistent with the DOJ's Justice Manual, which states that "[a] news release issued before a finding of guilt should state that the charge is merely an accusation, and the defendant is presumed innocent until proven guilty." Department of Justice, Justice Manual, § 1-7.500. Another DOJ manual provision states, "Because the release of

certain types of information could prejudice an adjudicative proceeding, DOJ personnel should refrain from disclosing the following, except as appropriate in the proceeding or in an announcement after a finding of guilt: A. Observations about a defendant's or party's character." Department of Justice, Justice Manual, § 1-7.610. The provision further provides, "DOJ personnel should not encourage or assist news media in photographing or televising a person held in custody. DOJ personnel should not voluntarily disclose a photograph of a defendant unless it serves a law enforcement function or unless the photograph is already part of the public record in the case."

Here, however, the heads of the Department of Justice and Homeland Security, and the White House took to social media to post to of many millions of viewers the names and images - and altered images - of Defendants in connection with this case.

The AG's conduct further violates recognized professional rules, the ABA Model Rules of Professional Conduct, Rule 3.6(a) provides, "A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."[2] A prosecutor is specifically required to

> refrain from making extrajudicial comments that have a substantial

[2] See also Minnesota Rules of Professional Conduct 3.6(a).

> likelihood of heightening public condemnation of the accused and exercise reasonable care to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6 or this Rule.

ABA Model Rule 3.8(f).

The Defendants are now on notice that the Government will not hesitate to publicize information about their cases—true or not. This could certainly have an impact on whether witnesses are willing to come forward or testify in this case. *See Garcia v. Bertsch*, 470 F.3d 748, 750 (8th Cir. 2006) (acknowledging witnesses' reluctance to testify when presented with "spectacle" and "repercussions").

The government's misconduct described above, either on its own or in combination with the conduct described in other motions describing misconduct, egregiously violates Defendants due process to a degree that dismissal is the appropriate remedy. The Eighth Circuit has instructed, "a district court may properly dismiss an indictment only if the prosecutorial misconduct (1) was flagrant, . . . and (2) caused substantial prejudice to the defendant." *United States v. Manthei*, 979 F.2d 124, 126 (8th Cir. 1992)(*quoting United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988) *(citing United States v. Rogers*, 751 F.2d 1074, 1076-77 (9th Cir. 1985), and *United States v. Carrasco*, 786 F.2d 1452, 1455. (9th Cir. 1986))).

The conduct at issue here must be considered prosecutorial misconduct because former Attorney General Pam Bondi posted on social media that the arrests were at her

direction. Further her own commentary was mixed in as part of the larger post that included Defendants' photos or altered photos. It must therefore be inferred that the misconduct at issue was under her direction. The misconduct was more than flagrant as it plainly violated regulations government DOJ, the DOJ policy manual, and the presumption of innocence that is at the bedrock of due process. The misconduct must be deemed prejudicial because the prejudicial, false and inflammatory posts were viewed by many millions of people, thereby jeopardizing Defendants' rights to a fair trial and fundamentally tainting the system. In addition, the government's actions were degrading and humiliating to Defendants personally and placed them in danger of harassment or doxxing without serving any discernable law enforcement purpose.

For the defendants who weren't specifically singled out by the government, they are still prejudiced by the outrageous conduct directed at Levy-Armstrong and others. The publicity painted a broad brush on the entire protest, and there's attributed negative inference by association. The government's outrageous conduct affects each defendant, singled out or not. Further, there is a reasonable likelihood that the government did take and misuse photos of the other Defendants based on their conduct towards Ms. Allen and Ms. Armstrong, and based on their practices in other cases where they arrested people for protesting against the government's immigration policies during the same time frame.

Although Mr. Jama is not a defendant in this case, and Defendants do not contend on the present record that the same individual agents participated in both matters, the

evidence disclosed in Jama is highly probative of the practices and routines employed by federal law enforcement during this period. It demonstrates that federal agents were directed by DHS leadership to create posed photographs of handcuffed arrestees; that agents internally referred to those photographs as "trophy" photographs; that leadership exercised preferences over their composition and requested retakes; and that the resulting images were transmitted and circulated through government communications channels. Indeed, the Jama discovery explains that similar "trophy" photographs involving individuals charged under 18 U.S.C. § 111 were subsequently publicized by the Attorney General. *United States v. Jama*, No. 26-mj-53 (MJD/LIB), Defendant's Response in Supp. of U.S. Mtn. to Dismiss with Prejudice at 17-19, Doc. 66 (filed June 25, 2026).

That evidence materially strengthens Defendants' basis for seeking discovery here. The existing record already establishes that photographs of Defendants Armstrong and Allen were publicly disseminated by senior federal officials and the White House, including an altered and inflammatory image of Ms. Armstrong, and that agents or photographers photographed other Defendants as they were taken into custody. The Jama disclosures demonstrate that, during the same period, such photographs were being affirmatively solicited by DHS leadership, transmitted through government communications systems, and used or contemplated for publicity purposes. Defendants are therefore entitled to discovery identifying all photographs and videos taken of any Defendant during or following arrest; all communications requesting, directing,

transmitting, discussing, reacting to, or approving those photographs; all persons and agencies to whom the photographs were disseminated; all databases, electronic repositories, messaging platforms, or other systems in which the photographs are or were maintained; and any communications concerning the actual or contemplated use of those photographs for public-relations, media, social-media, or other purposes. Defendants are therefore requesting discovery to determine what has been published about on the internet or social media.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Superseding Indictment against the be dismissed with prejudice. Further the Court should order that the government remove all posts and images of Defendants from the internet. At the minimum, the Court should order relevant discovery and hold an evidentiary to fully determine the government's misconduct and the appropriate remedies.

Dated: August 31, 2026

LAW OFFICE OF JORDAN S. KUSHNER

s/Jordan S. Kushner
Jordan S. Kushner, ID 219307
431 South 7th Street, Suite 2446
Minneapolis, Minnesota 55415
(612) 288-0545
jskushner@gmail.com

*Attorney for Nekima Levy Armstrong* (1)

BIRRELL LAW FIRM, PLLC

s/ *Ian S. Birrell*
Ian S. Birrell, Reg. No. 0396379
333 South 7th Street, Suite 2350
Minneapolis, MN 55402
(952) 356-2393
ian@birrell.law

*Attorney for Defendant Jerome Richardson (5)*

DE LEÓN & NESTOR, LLC

s/ *Bruce D. Nestor*
Bruce D. Nestor, Reg. No. 0318024
3547 Cedar Avenue South
Minneapolis, MN 55407
(612) 659-9019
nestor@denestlaw.com

*Attorneys for Defendant Monique Cullars-Doty (16)*

MELVIN R. WELCH

s/ *Melvin R. Welch*
Melvin R. Welch, Reg. No. 0387750
Commerce at the Crossings Bldg
250 South Second Street, Suite 205
Minneapolis, MN 55401
(612) 741-3272
mel@melvinwelchlaw.com

*Attorneys for Defendant Tiffany Lynn Dunlap (17)*

LAW OFFICE OF STEVEN J. WRIGHT, LLC

s/ Steven J. Wright
Steven J. Wright, Reg. No. 387336
331 Second Ave S, Suite 705
Minneapolis, MN 55401
(612) 669-8280
stevejameswright@gmail.com

*Attorneys for Defendant Andrew Edwards (18)*

CHARLES F. CLIPPERT

s/ *Charles F. Clippert*
Charles F. Clippert, Reg. No. 248848
101 East Fifth Street, Suite 1500
St. Paul, MN 55101
(651) 300-4109
charlie@clippertlaw.com

*Attorneys for Defendant Rachel Goligoski (19)*

FORSGREN FISHER MCCALMONT
DEMAREA TYSVER LLP

s/ *Caitlinrose H. Fisher*
Caitlinrose H. Fisher, Reg. No. 0398358
1500 Capella Tower
225 South 6th Street
Minneapolis, MN 55402
(612) 474-3300
cfisher@forsgrenfisher.com

*Attorneys for Defendant Ariel Hauptman (21)*

LOTUS LEGAL PLLC

s/ *Caroline H. Brunkow*
Caroline H. Brunkow, Reg. No. 0398936
331 Second Ave South, Ste 420
Minneapolis, MN 55401
(612) 293-6963
cari@lotuslegalpllc.com

*Attorneys for Defendant Krista Erin Hogan (22)*

KOCH AND GARVIS, LLC

s/ *Andrew S. Garvis*
Andrew S. Garvis, Reg. No. 257989
3109 Hennepin Avenue South
Minneapolis, MN 55408
(612) 827-8101
andrew@uptownlawyer.com

*Attorneys for Defendant Danielle Andrea Matthias (24)*

F. CLAYTON TYLER, P.A.

s/ *Karen Mohrlant*
Karen E. Mohrlant, Reg. No. 388093
331 Second Avenue South, Suite 230
Minneapolis, MN 55401
(612) 333-7309
kmohrlant@fctyler.com

*Attorneys for Defendant Catie Anne Michaelson (25)*

JOHNSON & GREENBERG PLLP

s/ *Lee R. Johnson*
Lee R. Johnson, Reg. No. 0189935
5775 Wayzata Boulevard, Suite 700
St. Louis Park, MN 55416
(952) 545-1621
lrjohnsonslp@gmail.com

*Attorneys for Defendant Eric Ryan Michaelson (26)*

LAW OFFICES OF THOMAS H. SHIAH, LTD.

s/ *Thomas H. Shiah*
Thomas H. Shiah, Reg. No. 100365
331 Second Avenue South, Ste 705
Minneapolis, MN 55401
(612) 338-0066
ths@tomshiah.com

*Attorneys for Defendant Jarmel Perry (28)*

BEST & FLANAGAN LLP

s/ *Amy S. Conners*
Amy S. Conners, Reg. No. 0387375
60 South 6th Street, Suite 2700
Minneapolis, MN 55402
(612) 349-5665
aconners@bestlaw.com

*Attorneys for Defendant Cheryl Ann Persigehl (29)*

GOETZ & ECKLAND P.A.

s/ *Frederick J. Goetz*
Frederick J. Goetz, Reg. No. 0185425
615 1st Avenue NE, Suite 425
Minneapolis, MN 55413
(612) 874-1552
fgoetz@goetzeckland.com

*Attorneys for Emmar Monike Pineada-Moreno (30)*

SAPIENTIA LAW GROUP, PLLC

s/ *Robin M. Wolpert*
Robin M. Wolpert, Reg. No. 0310219
120 South Sixth Street, Suite 100
Minneapolis, MN 55402
(612) 756-7100
robinw@sapientialaw.com

*Attorneys for Defendant Robyn Elise Swenson (35)*

DORSEY & WHITNEY LLP

s/ *Meredith LaVine*
John Marti, Reg. No. 0388393
Meredith LaVine, Reg. No. 0506725
Ashley Repp, Reg. No. 0399661
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600
marti.john@dorsey.com
lavine.meredith@dorsey.com
repp.ashley@dorsey.com

*Attorneys for Defendant Thomas Matthew Tier (36)*

LANGERT LAW, LLC

s/Maggie G. Langert
Maggie G. Langert, Reg. No. 0308316
724 Bielenberg Drive #54
Woodbury, MN 55125
(612) 470-4810
maggie@langertlaw.com

*Attorneys for Defendant John Vergin (38)*

WOLD LAW

s/ *Peter B. Wold*
Peter B. Wold, Reg. No. 0118382
331 2nd Avenue South, Suite 705
Minneapolis, MN 55401
(612) 341-2525
pwold@wold-law.com

*Attorneys for Defendant Mark D. Weinfurter (39)*