UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Court File No. 26-CR-25 (LMP/DLM)

---

United States of America,
Plaintiff,

v.

Catie Anne Michaelson,
Defendant.

**Motion to Suppress Evidence Obtained from Cell Phone of Catie Michaelson**

---

Pursuant to Fed. R. Evid. 12(b)(3)(C), Catie Michaelson hereby moves the Court for an order suppressing any evidence seized from her dark blue Apple iPhone with a broken screen protector. The grounds for the motion are that the seizure and subsequent search of this phone violated the Fourth Amendment's guarantee that "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

In summary, agents seized Ms. Michaelson's phone without a warrant. She disagrees with the Government's assertion that the plain view exception to the warrant requirement applied. Agents then extracted data from her phone pursuant to a warrant to search her husband's phone – a warrant which lacked probable cause to believe the identified offenses had been committed, lacked a nexus between the phone to be searched and the items sought, and was overbroad. The subsequent warrants to search Ms. Michaelson's phone (one issued before the extraction error was discovered, and an

amended warrant issued thereafter) also exceeded the bounds of the Fourth Amendment for the same reasons – lack of probable cause, lack of nexus, and overbreadth. Although the warrants required the use of a search methodology to ensure that no attorney-client privileged communication was inadvertently reviewed by the prosecution team, presumptively privileged communications are contained in a report, as are communications presumptively subject to the marital communications privilege.

## **Factual Background**

Shortly after 6:00 on the morning of February 27, 2026, approximately ten federal agents showed up at the home of Eric and Catie Michaelson to execute warrants for their arrests. Agents knocked on the door and announced their presence. They surrounded the home, and when nobody immediately answered the door, they banged even more loudly and threatened to make forced entry. As agents were preparing to force the door open, Eric Michaelson[1] opened it. He was taken into custody, and a cell phone was seized from him. Catie Michaelson came out of a bedroom and was likewise taken into custody. Agents performed a "security sweep" to ensure that no other people were present in the home. During that sweep they located a cell phone in a

[1] To avoid confusion and typographical errors, Mr. and Ms. Michaelson will primarily be referred to herein using their first names.

closet in a bedroom.[2] Agents assumed the phone belonged to Catie Michaelson and asked if she wanted to bring it. She said she did not. They seized it anyway. [Bates 1164; 0286_MICHAELSON_Axon_Body_4_Video_2026-02-27_0704_D01AH190L - Statler, Clayton.mp4; 0286_MICHAELSON_Team_2306_Eric_Catie_Michaelson - Webster, Jacob.mp4.][3]

Eric and Catie Michaelson were transported in separate vehicles to the Bishop Henry Whipple Federal Building for processing. [Bates 1164.] A Custody Receipt for Seized Property and Evidence (form 6051S) was created for the phone seized from Eric Michaelson. It is described simply as “cell phone,” with a “Seal or Other ID No.” of A12023357 and an “FPF No.” of 2026350100020901.[4] SA C. Statler signed as seizing officer, and CFA D. Warneck accepted custody of the phone the same day. [Bates 5299.]

A separate Detention Notice and Custody Receipt for Detained Property (form 6051D) was created for the phone attributed to Catie Michaelson. It also is described simply as “cell phone,” with a “Seal or Other ID No.” of IS00057018, and what appears to be an FPF number of 20253501000214010001. SA Lawrence Williams signed as

[2] It appears this is the same bedroom which Catie Michaelson was seen coming out of.

[3] References to discovery are provided as a courtesy to the Government to assist in preparing its response and preparing for an evidentiary hearing.

[4] This form initially indicated a quantity of “2,” but that number is crossed out, initialed, and replaced with a quantity of “1,” demonstrating that agents at one point intended to inventory the phones together.

seizing officer and SA Gerber accepted custody of the phone the same day. On March 4, 2026, custody of the phone was transferred to CFA S. Demarais. [Bates 5297.]

On March 6, 2026, HSI Special Agent Timothy Gerber applied for and obtained a warrant to search Eric Michaelson's phone.[5] (hereinafter the 3/6/26 warrant). The affidavit submitted in support of that warrant states that on January 18, 2026, Eric Michaelson was one of the people who attended a pre-operating briefing and then entered Cities Church. It states that "the disruptors, including [Eric] MICHAELSON, obstructed the religious service and intimidated, harassed, oppressed, and terrorized the parishioners" and that he was "among those in the church chanting."[6] It states: "At the time of the arrest, [Eric] MICHAELSON had possession of one phone, which was an Apple iPhone, dark blue with a broken screen protector (SUBJECT DEVICE) which was retrieved by HSI." Catie Michaelson is not mentioned at all in the affidavit. [Bates 10338.]

It turned out the affidavit was wrong. Agents did seize an iPhone from Eric Michaelson at the time of his arrest, but it was a lighter blue and did not have a broken screen protector. In fact, the dark blue iPhone with the broken screen protector was the one seized from the bedroom and attributed to Catie Michaelson. SA Gerber would later

[5] This warrant was filed and remains under seal at 26-mj-244 (EMB).

[6] No other specific references are made to actions or statements specific to Eric Michaelson. Rather, there are broad statements regarding the actions of "disruptors" generally, "some of the protestors," "several disruptors," and "some disruptors."

explain: “Both Catie and Eric Michaelson have blue Apple iPhones of different shades of blue. These are the phones seized by Agents at the time of arrest but were not properly labeled when put into evidence containers.” [Bates 19440.] On March 7, 2026, the Computer Forensic Analyst team executed the warrant for Eric’s phone by extracting data from the phone attributed to Catie. [Bates 12337.]

On March 16, 2026, SA Gerber applied for and obtained a warrant to search the phone attributed to Catie Michaelson.[7] (hereinafter the 3/16/26 warrant) The affidavit submitted in support of that warrant states that on January 18, 2026, Catie Michaelson was one of the people who attended a pre-operating briefing and then entered Cities Church. It states that “the disruptors, including [Catie] MICHAELSON, obstructed the religious service and intimidated, harassed, oppressed, and terrorized the congregants.” It further states that “disruptors, including [Catie] MICHAELSON, physically obstructed congregants as they attempted to leave the church” and “block[ed] congregants’ freedom of movement throughout the church.” It also states that she was “among those in the church chanting.”[8] [Bates 10471.]

On or about March 16, 2026, SA Gerber received a filtered extraction from the dark blue iPhone. He reports that review of the extraction was assigned to SA Levin

---

[7] This warrant was filed and remains under seal at 26-mj-276 (SGE).

[8] No other specific references are made to actions or statements specific to Catie Michaelson, though there are broad statements regarding the actions of “disruptors” generally, “several disruptors,” and “some disruptors.”

Estevez but "it was immediately apparent this device's owner was Catie Michaelson, not Eric Michaelson. The Cities Church investigative team immediately terminated search of the device and sought to amend the previously-authorized search warrants." [9] [Bates 12337.] On April 8, 2026, SA Gerber applied for and received amended warrants to search both Eric's phone (26-mj-244) and the phone attributed to Catie (26-mj-276) [Bates 12337, 19435]. Between April 10 and April 13, 2026, HSI SA Benjamin Williams reviewed the forensic extraction. His findings are documented in a report dated April 13, 2026. [Bates 12339.]

## Argument

### I. The seizure of Catie Michaelson's phone was unconstitutional because it was not pursuant to a warrant and no exception to the warrant requirement applied.

When agents entered the Michaelsons' home they did have warrants to arrest both Eric and Catie Michaelson. They did not have a warrant to search the home or to seize any property. Searches and seizures conducted without a warrant are presumptively unreasonable and violate the Fourth Amendment, "subject to only a few specifically established and well-delineated exceptions." *Horton v. California*, 496 U.S. 128, 133 n. 4 (1990) (quotation omitted). "The government bears the burden of

---

[9] It is noteworthy that this happened "on or about" the same date that SA Gerber obtained the warrant to search Catie Michaelson's phone. One assumes that SA Gerber was informed about this immediately apparent ownership issue only after applying for and obtaining the second warrant. It would be not only outrageous, but illogical, to have applied for the second warrant knowing that the phones had been misidentified.

establishing that an exception to the warrant requirement applies." *United States v. Williams*, 616 F.3d 760, 765 (8th Cir. 2010).

It is anticipated that the Government will argue that the plain view exception to the warrant requirement applies. "An object may be seized by the police without a warrant under the plain view doctrine if (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself." *United States v. Vinson*, 805 F.3d 1150, 1152 (8th Cir. 2015) (quotation omitted).

It is likely that the Government will be able to establish that the agents did not violate the Fourth Amendment in arriving at the place from which they noticed the phone and that they had lawful access to it. *See Maryland v. Buie*, 494 U.S. 325, 332 (1990) (concluding that it did not violate the Fourth Amendment for officer, incident to arrest, to "look in closets and other spaces immediately adjoining the place of arrest"). But it will not meet its burden of showing that it was immediately apparent that evidence of a crime would be found on the seized phone.

There is evidence that Catie Michaelson participated in the incident which is the subject of this indictment. She attended the meeting in the parking lot, proceeded to the indicated address, and entered Cities Church. While inside she participated in group chants. She departed with the group. She then re-entered the church to retrieve a lost

mitten, and exited after recovering it. Catie Michaelson is now indicted on charges that her actions violated two federal statutes – 18 U.S.C. § 241 (criminalizing certain conspiracies) and 18 U.S.C. § 248 (the FACE Act). Probable cause for those allegations is very much in dispute and is the subject of other motions. In brief, there is simply no evidence that Catie Michaelson used force, threats of force or physical obstruction, nor is there any evidence that she joined a conspiracy which had the purpose of injuring, oppressing, threatening, or intimidating anyone. Because there is not probable cause to believe she committed a crime, there cannot be probable cause to believe that evidence would be found on her phone.

But even if the charges were supported by probable cause, that would not end the inquiry because at the time of her arrest, there was no reason to believe that evidence of the charged offenses would be found on her phone. In contrast to some of her co-defendants, the superseding indictment contains no allegation that Catie Michaelson used a cell phone in any manner during or in preparation for the incident which is the subject of this case, [10] nor is there any allegation that she made any posts to social media regarding it.[11] The written reports do not supply the missing link. On February 10, 2026, FBI Special Agent William Parker reviewed video from the church broadcast and two clips of video taken by one of the journalist co-defendants "with a

[10] *See* Overt Acts 1-5, 12
[11] *See* Overt Acts 6-11, 15

focus on the actions of Catie MICHAELSON." His report contains no mention of the use or possession of a cell phone. [Bates 523.] Nor do either of the affidavits submitted to obtain warrants to search her phone allege that Catie Michaelson used a phone in any way connected to this case. In the absence of a direct link between the phone and the alleged criminal activity, there is no probable cause to believe that evidence would be found in it. *See In Re: Search Warrants*, 26-mj-208 (JFD), Doc. 2 (Order Denying Search Warrant Applications) at 6 (Feb. 25, 2026) (denying warrant to search a phone of a co-defendant for lack of probable cause, in part because the indictment was silent as to that individual's using a phone). Certainly there was no immediately-apparent incriminating nature to the phone attributed to Catie Michaelson. Because there was no immediately-apparent incriminating nature to the phone, its seizure fell outside of the plain view exception. Because there was no warrant and no exception to the warrant requirement applied, the seizure of the phone violated the Fourth Amendment.

## II. The search of the phone attributed to Catie Michaelson was unconstitutional because the relevant warrants lacked probable cause, lacked a nexus between the items sought and the place to be searched, and were overbroad.

The Fourth Amendment requires that warrants be supported by probable cause "particularly describing the place to be searched, and the persons or things to be seized." Probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

When a warrant is issued based solely on a supporting affidavit, then only information contained within the four corners of the affidavit may be considered in evaluating probable cause. *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005). A magistrate's determination of probable cause is entitled to deference and must be upheld as long as the affidavit provided a substantial basis for concluding that probable cause existed. *United States v. Anderson*, 933 F.2d 612, 614 (8th Cir. 1991).

**a. The 3/6/26 warrant was unconstitutional because it was not supported by probable cause, failed to establish a nexus, and was overbroad.**

Data from the phone attributed to Catie Michaelson was extracted and initially examined pursuant to the warrant issued on March 6, 2026 in 26-mj-244 pertaining to "an Apple iPhone, dark blue, with a cracked screen protector that was found on [Eric] MICHAELSON's person on or about February 27, 2026, at the time of his arrest by Homeland Security Investigations (HSI)."

**i. The 3/6/26 warrant failed to establish probable cause that an offense had been committed.**

The affidavit submitted to obtain a warrant to search Eric's phone asserts that he was one of 39 people indicted on charges that they violated 18 U.S.C. § 241 and § 248(a)(2). This was factually true. However, the indictment itself was not incorporated by reference and its contents are clearly outside the scope of a four-corners review. The affidavit submitted to obtain this warrant failed to establish probable cause to believe that either of these offenses was committed.

Section 241 makes it a crime to conspire to injure, oppress, threaten or intimidate a person as a result of their exercise of certain rights. The warrant affidavit describes an organized effort to "disrupt business as usual" by showing up somewhere where they are not expected and chanting. (3/6/26 affidavit, par. 22-23.) This purpose – disruption – falls far short of the Section 241 requirement that the object of the conspiracy is to injure, oppress, threaten, or intimidate. Thus the affidavit fails to allege probable cause to believe that Section 241 was violated. Furthermore, the affidavit states that Cities Church was chosen as the location for this effort because "one of the church's pastors is a federal immigration officer." (*Id.* par. 15.) Again, this falls short of alleging a violation of Section 241 because does not assert a motivation based on the exercise of religious freedom, but rather a motivation based on the decision to employ a particular individual in a position of leadership. The affidavit fails to allege probable cause to believe that a Section 241 conspiracy existed, much less that Eric Michaelson joined it.

Broadly, Section 248(a)(2) prohibits the use of force, threat of force, or physical obstruction to engage in prohibited activities. The affidavit does not allege any instances of the use of force or threat of force. Rather, it relies on conclusory statements that "During the disruption at Cities Church, some of the protestors physically obstructed some parishioners as they attempted to leave the church." (*Id.* par 17.) Section 248(e)(4) defines the term "physical obstruction," limiting it to "rendering impassable ingress to

or egress from … a place of religious worship" or "rendering passage to or from such a … place of religious worship unreasonably difficult or hazardous." The affidavit does not allege that the protestors rendered ingress or egress impassable. Quite the opposite – it states that parishioners left the building. (*Id.*, par 15.) Instead, it appears to be based on the theory that the protestors rendered passage from the building unreasonably difficult or hazardous. But the affidavit does not allege facts sufficient to establish probable cause for this theory. It does allege that one individual while leaving fell and sustained an injury. (*Id.* par. 15, 24.) While the affidavit clearly alleges that the protestors were the reason this individual chose to leave, it does not even attempt to establish that the protestors' actions in any way caused her exit to be any more difficult or hazardous than it otherwise would have been, much less unreasonably so. The warrant affidavit asserts that video shows protestors "blocking parishioners' freedom of movement throughout the church." (*Id.* par 29.) But it falls far short of alleging that the protestors' actions made egress impassable or rendered parishioners' exit from the church unreasonably difficult or hazardous. Thus the affidavit fails to establish probable cause to believe that Section 248(a)(2) was violated, much less that Eric Michaelson violated it.

**ii. The 3/6/26 warrant failed to establish a nexus between the alleged crimes and Eric Michaelson's phone.**

The affidavit submitted to obtain this warrant contained no allegation of a direct connection between the crimes it alleged took place on January 18 and the phone

seized from Eric Michaelson on February 27. While it states that "Several disruptors recorded on electronic devices the pre-brief meeting at the shopping center, the disruption inside the church, and after the disruptors left the church" (3/6/26 affidavit, par. 17), it does not allege that Eric Michaelson was among them. It also asserts that "several co-defendants" posted a flyer on social media promoting the operation (*Id.*, par.19), but again, does not allege that Eric Michaelson was among them. (In fact, the wording implies that he was not.) The affidavit recites that the affiant had reviewed video footage "taken by co-defendants on their social media accounts" (*id.*, par. 9) but does not allege that Eric Michaelson took any video or posted anything to social media during or regarding this incident. In sum, while the affiant had watched a number of videos (*id.*, pars. 20, 24, 26, 28, 32), reviewed social media posts (*id.*, par 16, 19), and examined the phones of at least two co-defendants (*id.*, par. 16), there is no indication in the affidavit that he ever saw Eric Michaelson using a phone or electronic device, posting on social media, or communicating electronically with co-defendants. *See In Re Search Warrants*, 26-mj-208 (JFD) Doc. 4, Order Keeping Under Advisement Three Search Warrant Applications and Denying the Fourth at 8 (March 6, 2026) (declining to issue search warrant, explaining: "There is no indication that [co-defendant] was seen using his phone to take photographs or videos while at Cities Church, no allegation that any such photographs or videos have turned up on social media, and no indication that [co-defendant] used his phone to communicate, via voice, email, or text, with other

defendants. The application, in short, does not come close to establishing a nexus between the crime charged and the telephone records whose seizure is sought; therefore probable cause is lacking.”).

The only nexus between the alleged crimes and the phone possessed by Eric Michaelson is a broad, conclusory statement:

> 5. Based upon my training, experience, investigations, and conversations with other law enforcement personnel, I know it is common practice for disruptors and co-conspirators to communicate, organize, and work together with other individuals by utilizing cellular telephones. These subjects maintain communications and use their cellular telephones to further their criminal activities by using phone calls, messaging applications, photos, emails, and other forms of communication.

(3/6/26 affidavit, par. 5). This is problematic for two primary reasons. First, it paints with an extremely broad brush, covering “disruptors and co-conspirators.” It does nothing to attempt to distinguish different types of conspiracies, much less to distinguish criminal conspiracies from non-criminal agreements or disruptions. Second, as explained above, the affidavit fails to establish probable cause to believe that a criminal conspiracy even existed. Not all disruptions are criminal. In fact, many are not only non-criminal, but are protected by the First Amendment. An agreement to chant, to protest, or to make one’s voice heard, even in a way that is disruptive, is simply not the same thing as conspiring to injure, oppress, threaten, or intimidate. Nothing in the affidavit suggests that any of the defendants in this case had the requisite intent to fall within the charged conspiracy

statute. It certainly does not allege that Eric Michaelson had that intent or joined any such agreement. Because the affidavit fails to allege that Eric Michaelson was a criminal conspirator, this sweeping and conclusory statement about the general practice of criminal conspirators simply does not apply and is not sufficient to support a reasonable belief that evidence of the alleged crimes would be found in a forensic examination of his phone.

**iii. The 3/6/26 warrant is overbroad.**

The Fourth Amendment requires that warrants be specific. *In re Grand Jury Subpoenas*, 926 F.2d 947, 856 (9th Cir. 1991).

> Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based.

*Id.* at 856-57 (citations omitted). Particularity and breadth are related concepts which are often analyzed together. *See e.g. Kiesling v. Holladay*, 859 F.3d 529, 537 (8th Cir. 2017). The particularity requirement serves to prevent general searches, but it also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh v. Ramirez*, 540 U.S. 551, 561 (2004). It also "prevents the seizure of one thing under a warrant describing another." *Stanford v. Texas*, 379 U.S. 476, 485 (1965). Although the degree of specificity required depends on the circumstances of the case and the items involved, it must be sufficient to enable the searching officer to identify the property to

be seized. *United States v. Sigillito*, 759 F.3d 913, 923 (8th Cir. 2014). A search warrant must be sufficiently particular "to avoid a general, exploratory rummaging." *United States v. Saunders*, 957 F.2d 1488, 1491 (8th Cir. 1992).

Paragraph 1 of Attachment B authorizes the seizure of various records and information "For the period of January 1, 2026, through PRESENT." But the affidavit does not establish probable cause for records prior to January 17. Specifically, the warrant asserts that on January 17, "several co-defendants organized the operation" which is the subject of this prosecution. (3/6/26 affidavit, par. 19.) Eric Michaelson was not among the organizers. Thus there is no reason to believe that he would have any records or information pertaining to it prior to January 17. The warrant affidavit is similarly void of any reason to believe that Eric Michaelson made any post-incident social media posts or other relevant statements. Thus the time period from January 19 to "present"[12] is also unsupported by probable cause. Because the warrant authorizes the search and seizure of "call log and related call data … text messages, messages sent via telephone messenger applications, emails … instant messages, photographs, videos, [social media posts], and other electronic media" for a period of over two weeks before he had any knowledge of or involvement in this incident, and several weeks afterward, it is overbroad. This is particularly egregious because in addition to the overly broad

[12] It is not clear whether "present" was interpreted as the date the warrant was issued, the date it was executed, or some other time.

timeframe, various provisions of paragraph 1 authorize the search and seizure not just of records and information pertaining to the alleged offenses, but also related to the "planning, organizing, scheduling, and commission of … other organized protest activity." (3/6/26 Attachment B, paragraphs 1(b), 1(c), 1(d).) Not only does the warrant affidavit fail to allege that he has participated in any other protest activity, such activities would presumptively be protected under the First Amendment.

Paragraph 2[13] of Attachment B authorizes the search and seizure of financial records "evidencing interstate travel to/from St. Paul, Minnesota on or about January 18, 2026." Again, there is nothing in the warrant affidavit to support this. All of Eric Michaelson's alleged conduct took place in Minnesota on January 18. He was then arrested at his home in Minnesota on February 27. There is no reason to believe he engaged in any interstate travel at any time relevant to this case.

Because Attachment B authorizes the seizure of records and information far beyond what probable cause would support, the warrant is overbroad in violation of the Fourth Amendment.

[13] Paragraph 2 has sub-paragraphs, the purpose and function of which are unclear. They are also concerningly broad, authorizing the search and seizure of, for example, "Contact lists, including names, telephone numbers, e-mail addresses, and other contact information of MICHAELSON's associates." The attachment does not define the term "associate," and on its face appears to authorize the seizure of a broad swath of other individuals' personal identifying information.

**b. The warrant issued on 3/16/26 did not cure the problems or render discovery inevitable because it suffered from the same deficiencies.**

**i. The 3/16/26 warrant failed to establish probable cause that an offense had been committed.**

Much of the affidavit for the 3/16/26 warrant is substantively[14] identical to the affidavit for the 3/6/26 warrant. Like the 3/6/26 warrant, the affidavit for the 3/16/26 warrant describes an organized effort to "disrupt business as usual" by showing up somewhere where they are not expected and chanting. (3/16/26 affidavit, par 20.) Like the 3/6/26 warrant, it asserts that Cities Church was chosen as the location for this effort because "one of the church's pastors is a federal immigration officer." (*Id.*, par 15.) As with the 3/6/26 affidavit, this affidavit fails to allege probable cause to believe that a Section 241 conspiracy existed, much less that Catie Michaelson joined it.

Like the 3/6/26 affidavit, the 3/16/26 affidavit relies on conclusory statements, but fails to allege facts sufficient to support a reasonable belief that Section 248 was violated. It contains no allegations of the use of force or threats of force, nor does it allege that ingress to or egress from the church was rendered impassable. Although it contained conclusory statements that physical obstruction happened (e.g. *id.*, par. 15[15]),

[14] There are a few differences which appear stylistic. For example, the term "parishioners" from the 3/6/26 affidavit (pars. 15, 17, 29) is changed to "congregants" in the 3/16/26 warrant (pars. 12, 15, 27). Similarly, the term "resistance protesters" from paragraph 21 of the 3/6/26 affidavit is changed to "disruptors" in paragraph 19 of the 3/16/26 affidavit.

[15] Unlike the 3/6/26 affidavit, the 3/16/26 affidavit does specifically allege that Catie Michaelson was among those who "physically obstructed congregants" (par. 15). It also

the absence of factual allegations deprived the reviewing magistrate of a basis for concluding that the protestors' actions fell within the statutory definition - namely, that they rendered passage to or from the church "unreasonably difficult or hazardous."

**ii. The 3/16/26 warrant failed to establish a nexus between the alleged crimes and the phone attributed to Catie Michaelson.**

Like the 3/6/26 affidavit regarding Eric Michaelson, the 3/26/26 affidavit regarding Catie Michaelson contains no allegations that she was seen using a phone, that she made any social media posts about the incident, or that any communications with any co-defendants had been located. Like with the 3/6/26 affidavit, the conclusory allegation regarding the "common practice for disruptors and co-conspirators" is insufficient both because it is too broad and because the affidavit fails to establish a reasonable basis for concluding that a criminal conspiracy existed, much less that Catie Michaelson joined it.

**iii. The 3/16/26 warrant is overbroad.**

Attachment B to the 3/16/26 warrant appears to be identical to Attachment B to the 3/6/26 warrant. It is overbroad for exactly the same reasons explained above as to the 3/6/26 warrant.

---

names Catie Michaelson as among those "observed on video blocking congregants' freedom of movement throughout the church" (par. 27).

**c. The amended warrant issued on 4/8/26 also did not cure the problem or render discovery inevitable because it suffered from the same constitutional deficiencies.**

The affidavit submitted in support of the 4/8/26 amended warrant is almost entirely identical to the affidavit submitted in support of the 3/16/26 warrant. It does amend the description of the phone (pars. 7, 11), but as to substance adds only the following:

> 12. Both Catie and Eric Michaelson have blue Apple iPhones of different shades of blue. These are the phones seized by Agents at the time of arrest but were not properly labeled when put into evidence containers. When Agents began extraction of data from the darker blue iPhone with a broken screen protector pursuant to signed search warrant 26-mj-244 (E. Michaelson), Agents realized that the darker blue iPhone with a broken screen protector belonged to Catie Michaelson. Agents immediately stopped the search of Catie Michaelson's phone pending amendment of search warrants 26-mj-244 and 26-mj-276.

**i. As with the prior warrants, the 4/18/26 warrant failed to establish probable cause, failed to establish a nexus, and was overbroad.**

The affidavit submitted in support of the amended warrant did nothing to add to probable cause generally or to establish a direct connection between the place to be searched (Catie Michaelson's phone) and the items sought. Attachment B, describing the items subject to seizure, appears to be identical to Attachment B to both the 3/16/26 warrant and the 3/6/26 warrant. The 4/18/26 warrant, like the two before it,

exceeded the bounds of the Fourth Amendment because it was not based on probable cause, did not establish a nexus between the items sought and the place searched, and was overbroad.

#### ii. The search methodology was insufficient to prevent review of privileged communications by the prosecution team.

The addendum to this warrant required the government to "establish a search methodology governing the review of seized data to ensure that no attorney-client privileged communications will be inadvertently reviewed by the prosecution team." (4/8/26 Search Warrant Addendum, par. 4.) SA Williams reports that between April 10 and April 13, 2026, he reviewed the forensic extraction of Catie Michaelson's phone. His report includes, among other things, a transcript of a text conversation between Ms. Michaelson and a criminal defense attorney. That conversation starts with Ms. Michaelson texting the attorney on January 19 (the day after the incident) and asking if the attorney has "a couple minutes to chat." In fairness, it might not have been initially obvious that this individual was an attorney (although the name would be recognizable to many locally). However, the very next day, the attorney is quoted in SA Williams' report as telling Ms. Michaelson that "There's not a lot of case law on politely protesting in church." The reference to caselaw should have been a clear red flag that the conversation possibly constituted attorney-client privileged communications – especially in light of the attorney's later indication that Ms. Michaelson should reach out "if they try to question you." And yet the entire conversation was repeated verbatim in

a report which not only made it to the prosecution team but was disclosed to all of the defense teams.

The addendum made no mention of other types of potentially privileged communications. SA Williams' report also contains descriptions of and quotations from messages between Catie Michaelson and her spouse, Eric Michaelson. Those communications are at least arguably protected by spousal communications privilege. *See United States v. Evans*, 966 F.2d 398, 401 (8th Cir. 1992) (explaining that, subject to some exceptions, the marital confidential communications privilege extends to "words or acts that are intended as a communication to the other spouse" made in confidence at a time when the couple is legally married and not permanently separated).

Ms. Michaelson was indicted on February 26 and arrested on February 27. Counsel was appointed to represent her on March 11. (Doc. 344.) The extractions from her phone were reviewed in April. Counsel should have been given the opportunity to review the fruits of the warrant for potentially privileged material before it was disclosed to the prosecution team and Ms. Michaelson's co-defendants – especially given the acknowledged possibility of attorney-client privileged communications and the fact that agents knew she was married and living with her spouse at the time of her arrest. Review by counsel would have enabled any dispute about the application of these privileges to be reviewed by the court before potentially privileged communications were disseminated to the prosecution team and Ms. Michaelson's co-

defendants. The review and wide dissemination of presumptively privileged communications is one more way in which the search of Ms. Michaelson's phone was constitutionally unreasonable.

## III. Evidence seized from Catie Michaelson's phone should be suppressed.

Suppression is generally the remedy for Fourth Amendment violations, including for evidence seized pursuant to a defective warrant. *See United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). Here, the violations of Catie Michaelson's Fourth Amendment rights were numerous and significant. Her phone was seized without a warrant and no exception to the warrant requirement applied. One week later, data was extracted from it pursuant to a warrant to search Eric Michaelson's phone – a warrant which was not supported by probable cause, did not establish a nexus between the phone and the evidence sought, and was overbroad. Although a warrant (and later an amended warrant) was sought to search Catie Michaelson's phone, those warrants likewise lacked probable cause and nexus and were overbroad. And despite the addendum's caution about the possibility of attorney-client privileged communications, presumptively privileged communications (both attorney-client and spousal) were reviewed and disseminated. All evidence obtained from Catie Michaelson's phone should be suppressed.

## Conclusion

Catie Michaelson respectfully suggests that an evidentiary hearing is necessary regarding the warrantless seizure of her phone. She also requests to submit post-hearing briefing on this issue.

Her position is that the issues with the warrants require only a four-corners review. She does request oral argument, and an opportunity to reply to the Government's response.

Respectfully submitted,

Dated: August 31, 2026

/s/ Karen Mohrlant
Karen Mohrlant (388093), kmohrlant@fctyler.com
F. Clayton Tyler, P.A.
331 Second Avenue South, Suite 230
Minneapolis, MN 55401
Ph: 612-333-7309
Attorney for Ms. Michaelson