UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. 26-cr-25 (LMP/DLM)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NEKIMA LEVY-ARMSTRONG, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **DEFENDANTS' JOINT MOTION TO DISMISS BASED ON FIRST AMENDMENT** |

Defendants, through undersigned counsel, hereby move the Court for an order dismissing the Superseding Indictment against them on the grounds that the conduct underlying the alleged offenses protected by the First Amendment right to free speech. The charges against Defendants therefore violated the First Amendment as applied to the instant case, and/or must necessarily fail to state an offense because the charged statutes cannot be interpreted in a manner that violates the Constitution.

## FACTUAL BACKGROUND

The charges against Defendants arise out of a non-violent political protest inside of the Cities Church in St. Paul, Minnesota on January 18, 2026. (Doc. 144). The Superseding Indictment alleges that a group of approximately 40 people entered the church in a coordinated manner and acted in a manner that interrupted the service. (Doc. 144 at 3). Although the Superseding Indictment contains rhetoric describing the Defendants' actions as "a coordinated takeover-style attack" which included "oppression

intimidation, threats, interference, and physical obstruction," (*Id*.), the substantive factual allegations only describe speech.

The motivation for the protest was that a pastor at the church was a supervisory or managerial official at the local office of Immigration and Customs Enforcement. (Doc. 144 at 6). It is alleged that a few of the Defendants planned a protest at the church, and advertised an "anti-Ice action" on social media. (*Id*. at 6-8). The Superseding Indictment alleges that on the morning of January 18, many of the Defendants met in the parking lot of a nearby supermarket where Defendants Armstrong and Allen briefed other participants that the Cities Church was the target of the protest, and that there would be chants with political messages including but not limited to "ICE out of Minnesota." (*Id*. at 8-11). The group of protesters than entered the church in two "waves." " (*Id*. at 11).

The Superseding Indictment then alleges that Ms. Armstrong interrupted the pastor's sermon voicing objects to the church harboring a "Director of ICE" and that others supported the interruption by yelling and blowing whistles. " (*Id*. at 12). The participants changed political slogans." (*Id*.) The Superseding Indictment claims that the defendants occupied the main aisle and row of chairs near the front of the church, and chanted and yelled at the pastor and congregants. " (*Id*. at 12-13). Although the Superseding Indictment asserts that Defendants physically obstructed congregants from exiting or moving about within the Church, it fails to allege any specific actions that caused any obstruction or intimidation beyond standing the aisle, chanting or loudly

stating their political opinions, and holding up a sign with a political message." (*Id*. at 13-15).

The Superseding Indictment asserts that some congregants had difficulty moving about or leaving the Church due to Defendants' presence, but contains no allegations that any Defendants intentionally prevented anyone from moving about or that anyone was ultimately unable to move about. There is no allegation of any intentional use of physical force, much less assaultive conduct. The Superseding Indictment charges all Defendants with conspiracy against religious freedom at a place of worship in violation of 18 U.S.C. § 241 and interference with exercise of right of religious freedom at place of worship in violation of 18 U.S.C. § 248(a)(2), (b), § 2(a). (Doc. 144).

## ARGUMENT

The Superseding Indictment is insufficient to support the criminal charges against the Defendants because the factual allegations make clear that all of their conduct was protected by the First Amendment. There was no alleged conduct that crossed the line into violence, threats or anything that went beyond free speech. Ultimately, the government seeks to controvert the right to free speech and freedom of assembly where the protest occurred in a church. The Constitution does not contain any exception to free speech in churches.

Court 1 of the Superseding Indictment, 18 USCS § 241, provides, "If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State,

Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same." The Superseding Indictment alleges that the right interfered with was religious freedom at a place of worship. (Doc. 144 at 3). Count 2 applies to conduct that "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a)(2).

The 8th Circuit, in analyzing 18 U.S.C. § 241 in the context of a prosecution for a cross-burning, recognized that "Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment." *United States v. Lee*, 6 F.3d 1297, 1299 (8th Cir. 1993)(*quoting Regan v. Time, Inc.*, 468 U.S. 641, 648-49, 104 S. Ct. 3262 (1984)). It was explicitly accepted in *Lee* that the defendant could not be not be "convicted based on the protected expression of his racist views as symbolized by the burning cross, but because the jury found that he acted with the specific intent to threaten and intimidate black residents of the apartment building in the exercise of their federally-guaranteed housing rights." *Id*. at 1300. *Lee* further explained,

> Whether application of section 241 violated Lee's First Amendment rights depends on the likely communicative impact of Lee's conduct. The Supreme Court has rejected the argument that a law is content neutral when the

> "'emotive impact of speech on its audience is not a "secondary effect"' unrelated to the content of the expression itself."

*Id*. (*citing Texas v. Johnson*, 491 U.S. 397, 109 S. Ct. 2533, 2543 (1989)(*quoting Boos v. Barry*, 485 U.S. 312, 321, 108 S.Ct. 1157 (1988))). *Barry* and *Texas v. Johnson* both held that a statue criminalizing the burning of the American flag was content based in violation the First Amendment because "whether the burning of the flag violated the law depended on the 'likely communicative impact' of the expressive conduct." *Id*. (*citing Texas v. Johnson*, 109 S.Ct. at 2543).

*Lee* held that 18 U.S.C. § 241 was "content neutral on its face," but that the statue as applied violated the defendant's constitutional rights because the "targeted conduct which, though expressive of a discriminatory idea or philosophy, is nevertheless protected expressive conduct." *Id*. at 1302. In the instant case, it is clear based on the Superseding Indictment that the Defendants are being targeted specifically for their expressive conduct and not based on any agreement to engage in actions to "injure, oppress, threaten, or intimidate" under § 241, or engagement in any "force or threat of force or by physical obstruction" under § 248(a)(2). Further, there are no allegations supporting a conclusion that Defendants' actions were intended to interfere with freedom of worship, an element of both charges in the Superseding Indictment.

The Superseding Indictment speaks outrage because the Defendants decided to hold a non-violent protest in a church. The protest was limited to pure speech and assembly. The Defendants chanted political slogans, made statements of political

opinions, at most loudly and in a manner that was verbally confrontational. This pure political speech cannot constitute a crime, much less a federal felony based on violation of others' civil rights. The speech itself makes clear that Defendants' assembly or protest was not even directed at interfering with anyone's freedom of worship but was directed at the political issue of a church pastor's role in perpetrating government oppression. Defendants cannot be criminalized because their overtly political statements and political action happened to take place in a church.

When determining whether the charges in this case violate Defendants' constitutional rights, it is critical to take into account that “speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values ' and is entitled to special protection.” *Snyder v. Phelps*, 562 U.S. 443, 444, 131 S.Ct. 1207 (2011)(*citing Connick v. Myers*, 461 U.S. 138, 145, 103 S. Ct. 1684 (1983)). The Supreme Court has "said that speech is of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of general interest and of value and concern to the public.'” *Id*. (*citing Connick* at 146 and *San Diego v. Roe*, 543 U.S. 77, 83-84, 125 S. Ct. 521 (2004)).[1] Defendants' protest direct

---

[1] *Phelps* is also instructive on the facts. It upheld the First Amendment right of a group to protest at a funeral right outside of a church with inflammatory signs and slogans blaming a deceased soldier for his own death because of the government's acceptance of homosexuality. The Supreme Court made clear that even the most emotionally harmful speech was entitled to First Amendment protection. In the instant case, the speech at issue is not at any comparable level of emotional cruelty or logical absurdity but at least as protected.

at highly visible and controversial actions of ICE obviously involved a matter of political concern to the community as well as a subject of interest and concern to the community. Their speech directed at the federal government's actions through non-violent protest must be carefully protected rather than criminalized.

It is also critical to recognize the importance of interpreting the charged statutes in a manner that complies with the First Amendment. The statute underlying Count 2 specifically provides, "Nothing in this section shall be construed— (1)to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution." 18 U.S.C. § 248(d)(1). As explained above, the government has charged the Defendants with crimes based strictly on expressive conduct.

Statutes criminalizing threatening speech “must be interpreted with the commands of the First Amendment clearly in mind” in order to distinguish true threats from constitutionally protected speech. *Watts v. United States*, 394 U. S. 705, 707, 89 S. Ct. 1399 (1969). In *Terminiello v. Chicago*, 337 U.S. 1 (1949), the defendant had delivered a speech condemning and criticizing the conduct of a group of protestors, described as “angry and turbulent,” who had gathered to protest his speech. In reversing defendant’s disorderly conduct conviction under a Chicago ordinance that made the making of improper noise tending to breach of the peace a crime, the Supreme Court noted that even

speech that is provocative, invites dispute, stirs some to anger, or is annoying to some is protected by the First Amendment:

> The vitality of civil and political institutions in our society depends on free discussion. . . . [I]t is only through free debate and free exchange of ideas that government remains responsive to the will of the people and peaceful change is effected. . . . Accordingly a function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute . . . is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest. . . . There is no room under our Constitution for a more restrictive view.

337 U.S. at 4-5 (internal citations omitted).

Similarly, in upholding the reversal of a multimillion dollar tort verdict against the Westboro Baptist Church (WBC) for its demonstration and picketing at a gay soldier's funeral to disseminate its message that "God hates fags" and is punishing the United States for its tolerance of homosexuality, particularly in the military, the Supreme Court in *Snyder v. Phelps* noted that "speech cannot be restricted simply because it is upsetting or arouses contempt" or "simply because society finds the idea itself offensive or disagreeable." 562 U.S. at 458 (citation omitted). Notwithstanding the obvious offensiveness and hurtfulness of the WBC members' speech to the soldier's family, the *Snyder* Court noted that the point of the First Amendment is to protect the right to engage in speech the content of which in others' "eyes are misguided, or even hurtful." *Id.*

The government has charged Defendants with two ten year federal felonies not because they caused or attempted to cause any of the harm intended to be protected by the statutes, but because the government wishes to retaliate against them because of the content of their message criticizing the government's actions and the choice of a venue for their message at a church that is politically aligned with the government. The apparent fact that the church pastor and attendees were emotionally upset by Defendants' actions is not a basis for discarding the First Amendment - it is precisely the reason that the Defendants' First Amendment rights must be affirmed.

It is also critical to recognize that Defendants' First Amendment rights encompass not just their verbal speech but the entirety of their actions at issue. The decision to gather at a group to communicate the political message is protected by the freedom of assembly component of the First Amendment. Their decision to engage in chanting, to hold signs, state their opinions loudly and in a way that may have been verbally confrontational are all part of the expressive conduct that is part of the First Amendment right to free speech. *Lee* recognized cross-burning, an action for more threatening than anything the Defendants in this case are accused of doing, as protected expressive conduct. 6 F.3d at 1298 (*citing R. A. V. v. City of St. Paul, Minnesota*, 120 L. Ed. 2d 305, 112 S. Ct. 2538 (1992)). As previously stated, the Supreme Court has held that burning a flag is protected expressive conduct. *Boos*; *Texas v. Johnson*, *supra*. The Eighth Circuit has held that conduct that is inextricably linked to the political message that is being communicated is

part of First Amendment protected speech. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010).[2]

Although it is not common to dismiss a case at the pretrial stage on the grounds that the charge is unconstitutional as applied because it is a factual issue, the record before the Court in this case justified dismissal. Courts have recognized, "There may be cases where no reasonable jury could conclude the statements were threats." *United States v. Clemens*, 738 F.3d 1, 13 (1st Cir. 2013)(*citing United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013). *Stock* recognized, "It is not unprecedented for a court to conclude that a communication does not legally qualify as a threat or a true threat. Indeed, in *Watts*, the Supreme Court held as a matter of law that the defendant's statement was merely 'political hyperbole' that did not fit within the definition of the phrase 'true 'threat.'" 728 F.3d at 298 (*citing Watts v. United States*, 394 U.S. 705, 708 (1969)). Analogously in the instant case, the Court should recognize that the Defendants' non-violent protest was indisputably protected speech which cannot support the criminal charges brought against them.

The threat the a prosecution would violate fundamental constitutional liberties necessitates a full determination of the validity of the charges in order to avoid the

---

[2] *Baribeau* in holding that the arrest of a group who dressed as zombies in downtown Minneapolis to protest consumerist culture violated their First Amendment rights, was not affected by the allegation that a child was frightened by the conduct. *Id*. at 471. Similarly, the allegations in the superseding indictment that church congregants were frightened by Defendants' actions does not in any way negate objectively protected free speech.

injustice and burden of having to go to trial. In *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116 (1965), the Supreme Court stated:

> A criminal prosecution under a statute . . . usually involves imponderables and contingencies that themselves may inhibit the full exercise of [constitutional] freedoms. *See e.g. Smith v. People of State of California*, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). When the statutes also have an overbroad sweep, as is here alleged, the hazard of loss or substantial impairment of those precious rights may be critical. For in such cases, the statutes lend themselves too readily to denial of those rights. The assumption that defense of a criminal prosecution will generally assure ample vindication of constitutional rights is unfounded in such cases. See Baggett v. Bullitt, supra, 377 U.S. at 379, 84 S.Ct. at 1326 (1964). For "[t]he threat of sanctions may deter * * * almost as potently as the actual application of sanctions. * * *" NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). Because of the sensitive nature of constitutionally protected expression we have not required that all of those subject to overbroad regulations risk prosecution to test their rights. For free expression - of transcendent value to all society, and not merely to those exercising their rights - might be the loser.

*Dombrowski,* 380 U.S. at 486.

The thrust of *Dombrowski* is that the permissible contours of a statute regulating expression should not "have to be hammered out case by case - and tested only by those hardy enough to risk criminal prosecution to determine the proper scope of regulation." *Id*. at 487 "The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure. *Id*. (*citing NAACP v. Button*, 371 U.S., at 432-433, 83 S.Ct. at 337-338; cf. *Baggett v. Bullitt*, 377 U.S., at 378-379, 84 S.Ct., at 1326; *Bush v. Orleans School Board*, D.C., 194 F.Supp. 182, 185 (1961), *affirmed sub nom. Tugwell v. Bush,* 367 U.S. 907, 81 S.Ct. 1926 (1961);

*Gremillion v. United States*, 368 U.S. 11, 82 S.Ct. 119 (1961). To ensure that this does not happen, trial courts have the obligation to examine pre-trial the question of whether a statute, though not unconstitutional on its face, is unconstitutional as applied to the particular case.

In considering whether the statute is unconstitutional as applied in the context of the First Amendment, the rule of strictissimi juris applies. Strictissimi juris calls for a stricter evidentiary standard, stricter admissibility standard, and direct confirmation of circumstantial inferences sought to be drawn from speech. *Cf. United States v. Spock*, 416 F.2d 165, 172-3, 178 (1st Cir. 1969); Morrison, Strictissimi Juris, 67 Ala. L. Rev. 247 (2015).

The Defendants in this case have raised a federal constitutional issue which must be fully addressed and resolved before this case can be tried. The limitations generally applied by courts in reviewing the sufficiency of allegations of an indictment before trial need to be loosened when constitutional liberties are at stake.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Superseding

Indictment be dismissed with prejudice.

Dated: August 31, 2026

LAW OFFICE OF JORDAN S. KUSHNER

s/Jordan S. Kushner
Jordan S. Kushner, ID 219307
431 South 7th Street, Suite 2446
Minneapolis, Minnesota 55415
(612) 288-0545
jskushner@gmail.com

*Attorney for Nekima Levy Armstrong* (1)

THE JAB FIRM

s/ *Jill A. Brisbois*
Jill A. Brisbois, Reg. No. 0345477
150 South 5th Street, Suite 1850
Minneapolis, MN 55402
(651) 209-7797
jill@thejabfirm.com

*Attorneys for Defendant Chauntyll Louisa Allen (2)*

OFFICE OF THE FEDERAL DEFENDER

s/ *Aaron J. Morrison*
Aaron J. Morrison, Reg. No. 341241
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5858
James_becker@fd.org

*Attorneys for Defendant William Scott Kelly (3)*

BIRRELL LAW FIRM, PLLC

s/ *Ian S. Birrell*
Ian S. Birrell, Reg. No. 0396379
333 South 7th Street, Suite 2350
Minneapolis, MN 55402
(952) 356-2393
ian@birrell.law

*Attorney for Defendant Jerome Richardson (5)*

LAW OFFICES OF ROBERT D. RICHMAN, LLC

s/ *Robert D. Richman*
Robert D. Richman, Reg. No. 226142
P.O. Box 16643
St. Louis Park, MN 55416
(651) 278-4987
robert@rdrichmanlaw.com

*Attorneys for Defendant Trahern Jeen Crews (7)*

GAD & GAD LAW OFFICES LLP

s/ *Sarah R. Gad*
Sarah R. Gad, Reg. No. 0403328
8 E 25th Street
Minneapolis, MN 55402
(612) 512-1870
sarah@gadlawoffice.com

*Attorneys for Defendant Ian Davis Austin (9)*

KENNETH UBONG UDOIBOK, PA

s/ Kenneth U. Udoibok
Kenneth U. Udoibok, Reg. No. 0262523
Flour Exchange Building, Suite 5010
310 Fourth Ave S.
Minneapolis, MN 55415
(612) 808-6031
k@kenulaw.com

*Attorneys for Defendant Aziza M. Aboud (10)*

MITCHELL, BRUDER & JOHNSON

s/Glen P. Bruder
Glenn P. Bruder, , Reg. No. 0148878
9531 West 78th Street, Suite 210
Eden Prairie, MN 55344
(952) 831-3174

*Attorney for Max Richard Adamson (11)*

LEACH LAW OFFICE

*s/ Patrick G. Leach*
Patrick G. Leach, Reg. No. 286825
8961 Aztec Drive
Eden Prairie, MN 55347
(763) 220-6164
pgl@leachlawoffice.com

*Attorneys for Defendant Kelly Ann Carey (15)*

DE LEÓN & NESTOR, LLC

s/ *Bruce D. Nestor*
Bruce D. Nestor, Reg. No. 0318024
3547 Cedar Avenue South
Minneapolis, MN 55407
(612) 659-9019
nestor@denestlaw.com

*Attorneys for Defendant Monique Cullars-Doty (16)*

MELVIN R. WELCH

s/ *Melvin R. Welch*
Melvin R. Welch, Reg. No. 0387750
Commerce at the Crossings Bldg
250 South Second Street, Suite 205
Minneapolis, MN 55401
(612) 741-3272
mel@melvinwelchlaw.com

*Attorneys for Defendant Tiffany Lynn Dunlap (17)*

LAW OFFICE OF STEVEN J. WRIGHT, LLC

s/ Steven J. Wright
Steven J. Wright, Reg. No. 387336
331 Second Ave S, Suite 705
Minneapolis, MN 55401
(612) 669-8280
stevejameswright@gmail.com

*Attorneys for Defendant Andrew Edwards (18)*

CHARLES F. CLIPPERT

s/ *Charles F. Clippert*
Charles F. Clippert, Reg. No. 248848
101 East Fifth Street, Suite 1500
St. Paul, MN 55101
(651) 300-4109
charlie@clippertlaw.com

*Attorneys for Defendant Rachel Goligoski (19)*

FORSGREN FISHER McCALMONT
DeMAREA TYSVER LLP

s/ *Caitlinrose H. Fisher*
Caitlinrose H. Fisher, Reg. No. 0398358
1500 Capella Tower
225 South 6th Street
Minneapolis, MN 55402
(612) 474-3300
cfisher@forsgrenfisher.com

*Attorneys for Defendant Ariel Hauptman (21)*

LOTUS LEGAL PLLC

s/ *Caroline H. Brunkow*
Caroline H. Brunkow, Reg. No. 0398936
331 Second Ave South, Ste 420
Minneapolis, MN 55401
(612) 293-6963
cari@lotuslegalpllc.com

*Attorneys for Defendant Krista Erin Hogan (22)*

KOCH AND GARVIS, LLC

s/ *Andrew S. Garvis*
Andrew S. Garvis, Reg. No. 257989
3109 Hennepin Avenue South
Minneapolis, MN 55408
(612) 827-8101
andrew@uptownlawyer.com

*Attorneys for Defendant Danielle Andrea Matthias (24)*

F. CLAYTON TYLER, P.A.

s/ *Karen Mohrlant*
Karen E. Mohrlant, Reg. No. 388093
331 Second Avenue South, Suite 230
Minneapolis, MN 55401
(612) 333-7309
kmohrlant@fctyler.com

*Attorneys for Defendant Catie Anne Michaelson (25)*

JOHNSON & GREENBERG PLLP

s/ *Lee R. Johnson*
Lee R. Johnson, Reg. No. 0189935
5775 Wayzata Boulevard, Suite 700
St. Louis Park, MN 55416
(952) 545-1621
lrjohnsonslp@gmail.com

*Attorneys for Defendant Eric Ryan Michaelson (26)*

LAW OFFICE OF ROBERT A. LENGELING, PLLC

s/ *Robert A. Lengeling*
Robert A. Lengeling, Reg. No. 304165
310 Fourth Avenue South, Suite 1050
Minneapolis, MN 55415
(612) 963-1555
robert@lengelinglaw.com

*Attorneys for Defendant David Okar (27)*

LAW OFFICES OF THOMAS H. SHIAH, LTD.

s/ *Thomas H. Shiah*
Thomas H. Shiah, Reg. No. 100365
331 Second Avenue South, Ste 705
Minneapolis, MN 55401
(612) 338-0066
ths@tomshiah.com

*Attorneys for Defendant Jarmel Perry (28)*

BEST & FLANAGAN LLP

s/ *Amy S. Conners*
Amy S. Conners, Reg. No. 0387375
60 South 6th Street, Suite 2700
Minneapolis, MN 55402
(612) 349-5665
aconners@bestlaw.com

*Attorneys for Defendant Cheryl Ann Persigehl (29)*

GOETZ & ECKLAND P.A.

s/ *Frederick J. Goetz*
Frederick J. Goetz, Reg. No. 0185425
615 1st Avenue NE, Suite 425
Minneapolis, MN 55413
(612) 874-1552
fgoetz@goetzeckland.com

*Attorneys for Emmar Monike Pineada-Moreno (30)*

RINGSTROM DEKREY PLLP

s/ *Dane DeKrey*
Dane DeKrey, Reg. No. 0397334
814 Center Avenue, Suite 5
Moorhead, MN 56560-0853
(218) 284-0484
dane@ringstromdekrey.com

*Attorneys for Spencer Michael Rodriguez-Bocanegra (31)*

ARNESON LAW OFFICE PLLC

s/ *Wyatt Arneson*
Wyatt Arneson, Reg. No. 0392071
1025 Grain Exchange Building
400 South 4th Street
Minneapolis, MN 55415
(612) 746-1188
wyatt@arnesonlawllc.com

*Attorneys for Defendant Katherine Shaw (32)*

GERDTS LAW PLLC

s/ Daniel L. Gerdts
Daniel L. Gerdts, Reg. No. 0207329
331 Second Ave South, Suite 705
Minneapolis, MN 55401
(612) 800-5086
daniel@danielgerdtslaw.com

*Attorneys for Defendant Satara Diann Strong Allen (33)*

SIEBEN & COTTER, PLLC

s/ *Patrick L. Cotter*
Patrick L. Cotter, Reg. No. 0319120
105 Hardman Court, Suite 110
South St. Paul, MN 55075
(651) 455-1555
patrick@siebencotterlaw.com

*Attorneys for Defendant Charles Swenson (34)*

SAPIENTIA LAW GROUP, PLLC

s/ *Robin M. Wolpert*
Robin M. Wolpert, Reg. No. 0310219
120 South Sixth Street, Suite 100
Minneapolis, MN 55402
(612) 756-7100
robinw@sapientialaw.com

*Attorneys for Defendant Robyn Elise Swenson (35)*

DORSEY & WHITNEY LLP

s/ *Meredith LaVine*
John Marti, Reg. No. 0388393
Meredith LaVine, Reg. No. 0506725
Ashley Repp, Reg. No. 0399661
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600
marti.john@dorsey.com
lavine.meredith@dorsey.com
repp.ashley@dorsey.com

*Attorneys for Defendant Thomas Matthew Tier (36)*

JAMES M. VENTURA

s/ *James M. Ventura*
James M. Ventura, Reg. No. 0147217
1000 Twelve Oaks Center Dr. Ste 100
Wayzata, MN 55391
(952) 473-8064
jventura@jamesventuralaw.com

*Attorneys for Defendant Lee Elizabeth Wiedeman Tuggle (37)*

LANGERT LAW, LLC

s/ *Maggie G. Langert*
Maggie G. Langert, Reg. No. 0308316
724 Bielenberg Drive #54
Woodbury, MN 55125
(612) 470-4810
maggie@langertlaw.com

*Attorney for Defendant John Vergin (38)*

WOLD LAW

s/ *Peter B. Wold*
Peter B. Wold, Reg. No. 0118382
331 2nd Avenue South, Suite 705
Minneapolis, MN 55401
(612) 341-2525
pwold@wold-law.com

*Attorneys for Defendant Mark D. Weinfurter (39)*