UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-25 (38) (LMP/DLM)

United States of America,

Plaintiff,

v.

John Donald Vergin,

Defendant.

**MOTION TO SUPPRESS EVIDENCE FROM UNLAWFUL SEIZURE AND SEARCH AND MOTION FOR A FRANKS HEARING**

---

The defendant, John Vergin, by and through his attorney, Maggie Langert, respectfully moves this Court pursuant to the Federal Rules of Criminal Procedure, for an order suppressing all evidence obtained from the warrantless seizure and subsequent search of Mr. Vergin's cell phone, together with all fruits thereof, pursuant to the Fourth Amendment of the United States Constitution.

Defendant Vergin further requests an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), because the March 10, 2026, search-warrant application materially misrepresented the circumstances under which law enforcement obtained and seized Defendant's cell phone.

In the alternative, Defendant Vergin moves for an order suppressing the contents of his cell phone because the search warrant application lacked nexus and particularity.

## Factual Background

1. February 27, 2026, arrest of Defendant John Vergin for January 18, 2026, protest.

On the morning of February 27, 2026, HSI agents executed an arrest warrant for Mr. Vergin at his home in connection with the January 18, 2026, protest at Cities Church. Upon answering his apartment door, Mr. Vergin was taken into custody and handcuffed in the hallway of his building. *See* Ex. A, BWC video to be provided to the Court on thumb drive. An agent explained they had a federal arrest warrant. *Id*. Body-worn camera footage, time-stamped 10:23 depicts the arrest; 10:24 depicts the cuffing. *Id*. A discussion ensued about an agent obtaining a shirt and shoes from inside Mr. Vergin's apartment given the weather. *Id*. At 10:25, Mr. Vergin asks about his cell phone. *Id*. An agent asked if Mr. Vergin wanted his phone, and Mr. Vergin equivocated. *Id*. At 10:25:26, Mr. Vergin asked about his wallet and ID and gave consent for the agent to look for the items inside his home. *Id*. The agent did not find the wallet. *Id*.

At 10:26:43, the agent, after shining his flashlight on a cell phone lying on a bed, asked, "Do you want your cell phone?" *Id*. Mr. Vergin responded, "I do want it if I have to call a lawyer." *Id*. The agent asked, "Would you like me to grab your phone right now?" *Id*. Mr. Vergin responded affirmatively. *Id*. The agent picked up the cell phone at 10:27:05. *Id*. The cell phone was never given to Mr. Vergin. *Id*. Less than five minutes after seizing the phone, the agent, now inside a law enforcement vehicle, placed the cell phone in a Faraday bag. *Id*. at 10:31:26. Rather than providing the cell phone to Mr. Vergin for the purpose for which it had been retrieved, the agent retained it and almost immediately took action further indicative of a seizure.

A summary of the February 27, 2026, arrest is contained in the Report of Investigation authored by Agent S.F. *See* Ex. B, ROI Bates-stamped 1115-16. The report

describes, in chronological order, the exchange between the agent and Mr. Vergin. *Id*. The report fails to state that Mr. Vergin said he wanted his cell phone to call a lawyer in response to the agent's question about whether he wanted his cell phone. *Id*.

2. Search Warrant Application and Order signed March 10, 2026, for contents of Mr. Vergin's cellphone seized on February 27, 2026.

HSI Special Agent Timothy Gerber applied for a cell phone content search warrant on March 10, 2026, eleven days after the warrantless seizure of Mr. Vergin's cell phone. By the time the search warrant was sought, fifty-one days had elapsed since the January 18 incident.

Agent Gerber swore in the affidavit in support of an application for the search warrant:

> At the time of the arrest, VERGIN was in possession of a Black Samsung Cellular Phone – SN R5CT124X88T in a black case (SUBJECT DEVICE) which was seized by HSI. Agents placed VERGIN under arrest and detained the SUBJECT DEVICE. HSI has maintained possession of SUBJECT DEVICE.

Ex. C, Aff. ¶ 12.

Attachment A of the application listed the property to be searched as a "Black Samsung Cellular Phone – SN R5CT124X88T in a black case that was found on VERGIN's person on or about February 27, 2026, at the time of his arrest by Homeland Security Investigations (HSI) (the "SUBJECT DEVICE")." Ex. C, Attach. A ¶ 1. Thus, Attachment A reiterated that the cell phone was found on Mr. Vergin's person at the time of his arrest.

Paragraph 12 of the affidavit and its Attachment A are inconsistent with both the body-worn camera video and Report of Investigation discussed *supra*. Mr. Vergin was not in possession of the cell phone at the time of arrest and never subsequently possessed it. Mr. Vergin was in custody and handcuffed in the hallway outside his apartment when the HSI agent, still inside his home, asked if Mr. Vergin wanted his cell phone, which was located in Mr. Vergin's bedroom. Mr. Vergin responded that he did want the cell phone to call a lawyer. The agent located the cell phone in the apartment and seized it without a warrant. He never gave the phone to Mr. Vergin. In fact, within minutes, he placed the cell phone in a Faraday bag.

The search warrant application includes the following as probable cause specifically related to Mr. Vergin:

- Mr. Vergin met others in a parking lot of a nearby shopping center and "made plans for their actions inside the church," Ex. C, Aff. ¶ 15; see also *id*. ¶ 23.
- After the pre-operation briefing, Mr. Vergin and other disruptors traveled to Cities Church. *Id*. ¶ 24.
- Mr. Vergin entered Cities Church on January 18, 2026, at approximately 10:30 a.m. with a group of "approximately 40 disruptors." *Id*. Aff. ¶ 13. Paragraph 13, in conjunction with paragraph 16, alleges the elements of the charged crimes that occurred inside the church.
- Mr. Vergin "is among those in the church chanting." *Id*. ¶ 27.
- Disruptors, including Mr. Vergin, "can be observed on video blocking congregants' freedom of movement throughout the church." *Id*. ¶ 28.

Magistrate Judge Elkins issued a Search and Seizure Warrant, No. 26-mj-254, on March 10, 2026, commanding execution on or before March 24, 2026. *Id*. The warrant authorized the search and seizure of records on the SUBJECT DEVICE for the period of January 1, 2026, through present, in connection with the charged offenses: Conspiracy Against Rights Secured by Federal Law, namely the Free Exercise of Religion at a Place of Religious Worship Secured by the FACE Act); and Intimidation and Interference with Exercise of Religion at a Place of Religious Worship. *Id*.

The warrant authorizes several categories of items to be seized related not only to the commission of the subject offense but also to ***other organized protest activity***. *Id*., Attach. B ¶¶ 1(b)-(d).

## Argument

### I. The Warrantless Seizure of Mr. Vergin's Cell Phone Violated the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As a general rule, seizures of personal property must be authorized by a warrant. *Illinois v. McArthur*, 531 U.S. 326, 330 (2001); *United States v. Place*, 462 U.S. 696, 701 (1983).

Mr. Vergin's cell phone was seized from his home without a warrant. The Government bears the burden of establishing an exception to the warrant requirement when property is seized without a warrant.

Mr. Vergin's cell phone was not seized from his person incident to arrest. Indeed, the phone was not on his person or within his immediate control. Mr. Vergin had already been arrested and handcuffed outside his apartment while the cell phone remained inside his home.

An agent obtained access to Mr. Vergin's home based on Mr. Vergin's consent for the agent to obtain his wallet and ID. While in the home, the agent shone his flashlight on a cellphone lying on Mr. Vergin's bed. The agent asked if Mr. Vergin wanted his cell phone. Mr. Vergin responded that he did want it to contact a lawyer. Mr. Vergin gave limited permission to the agent to remove the device from the home so that Mr. Vergin could possess his cell phone to contact a lawyer. Instead of giving Mr. Vergin the cell phone, the agent retained it and, within minutes, placed it in a Faraday bag.

The plain-view doctrine did not authorize seizure of the cell phone. Although the agent observed the phone while lawfully inside the residence pursuant to Mr. Vergin's limited consent, the incriminating character of the device was not immediately apparent. See *United States v. Saddler*, 19 F.4th 1035, 1040–41 (8th Cir. 2021). The phone was an ordinary personal electronic device lying on a bed. Nothing visible about the device connected it to the January 18 incident, and agents had not observed Mr. Vergin using a cell phone during the alleged January 18 offense. Mr. Vergin's response to the agent's question established that the phone belonged to him; it did not establish probable cause to believe that this particular device contained evidence of the charged offenses.

Consent is an exception to the warrant requirement, but the Government's authority extends only as far as the consent reasonably given. *See Florida v. Jimeno*, 500 U.S. 248,

251 (1991) (measuring scope of consent by objective reasonableness relating to consent to search). Mr. Vergin's authorization to retrieve his cell phone from his home so that he could use it to contact a lawyer did not reasonably authorize agents to take the phone for themselves and retain it as evidence.

The Government bears the burden of identifying an independent constitutional justification for converting its limited possession of the phone into an evidentiary seizure. There was no warrant. Forty days had passed since the January 18 incident. There was no exigency justifying it.

## II. Even if the Initial Seizure Is Deemed Lawful, the Government's Continued Warrantless Retention of the Cell Phone for Eleven Days Was Unreasonable.

Even where officers possess lawful grounds to seize electronic evidence temporarily, the Fourth Amendment continues to govern the duration of the seizure. *See United States v. Mays*, 993 F.3d 607, 616-18 (8th Cir. 2021); *United States v. Bragg*, 44 F.4th 1067, 1070-73 (8th Cir. 2022); *United States v. Thomas*, 97 F.4th 1139, 1143-44 (8th Cir. 2024).

Even assuming arguendo that agents could temporarily seize Mr. Vergin's cell phone on February 27, the Fourth Amendment required them to act diligently in obtaining judicial authorization for its continued retention and search. *United States v. Mays*, 993 F.3d 607, 616–17 (8th Cir. 2021). Reasonableness turns on the totality of the circumstances, including the defendant's possessory interest, the duration of the seizure, whether he consented to the seizure, the nature of the property, the Government's

evidentiary interest, the complexity of the investigation and warrant application, and law enforcement's diligence. *Id.*

Here, Defendant did not consent to seizure of his phone; he authorized an agent to retrieve it from his residence so that Defendant could use it to contact counsel. Agents nevertheless retained the phone for eleven days before seeking a warrant. The Government therefore must establish both a legitimate basis for retaining the device and reasonable diligence in seeking judicial authorization.

### III. Defendant Is Entitled to a *Franks* Hearing Concerning the Materially Inaccurate Description of the Seizure of the Cell Phone Contained in the March 10 Search Warrant Application.

A search warrant may be invalid where the affidavit includes "a false statement knowingly and intentionally, or with reckless disregard for the truth." *Franks v. Delaware*, 438 U.S. 154, 156 (1978)

Mr. Vergin is entitled to a *Franks* hearing upon his "substantial preliminary showing" herein. While Mr. Vergin was arrested and handcuffed in the hallway outside his apartment, he gave limited consent when the agent inside his home asked if Mr. Vergin wanted his cell phone, which the agent had just shone his flashlight on in Mr. Vergin's bedroom. Mr. Vergin responded that he wanted the phone to call a lawyer. The agent did not give Mr. Vergin his cell phone. In fact, less than five minutes after seizing the cell phone without a warrant, the agent placed it in a Faraday bag.

The search warrant application for the contents of the cell phone included a repeated false statement that was either made knowingly and intentionally or with reckless disregard for the truth. Agent Gerber swore in his affidavit: "***At the time of the arrest, VERGIN was***

***in possession of a Black Samsung Cellular Phone*** – SN R5CT124X88T in a black case (SUBJECT DEVICE) which was seized by HSI. Agents placed VERGIN under arrest and detained the SUBJECT DEVICE. HSI has maintained possession of SUBJECT DEVICE."

The agent reiterated this false statement in Attachment A, which listed the property to be searched as a "Black Samsung Cellular Phone – SN R5CT124X88T in a black case that was ***found on VERGIN's person*** on or about February 27, 2026, at the time of his arrest by Homeland Security Investigations (HSI) (the "SUBJECT DEVICE")."

The agent omitted from his application that the cell phone was obtained without a warrant from inside Mr. Vergin's home while Mr. Vergin was arrested and cuffed outside his home. The application is missing the fact that the agent, who was inside the home, asked Mr. Vergin if he wanted his cell phone, and Mr. Vergin responded that he wanted it to call a lawyer. Upon the agent asking if Mr. Vergin wanted the agent to grab it for him, Mr. Vergin said yes.

The application did not merely omit an incidental detail. It affirmatively described the phone as being in Mr. Vergin's possession when he was arrested, thereby creating the impression that agents simply detained property encountered during his arrest. At the same time, the application omitted the constitutionally significant circumstances by which the agent acquired the device: permission to be in Mr. Vergin's home for the limited consent given so that Mr. Vergin could obtain his phone to contact a lawyer.

The false statement is material because it supplies an individualized connection between this particular device and Mr. Vergin that the remainder of the affidavit lacks. The application does not allege that Mr. Vergin used a cellphone during the January 18 incident

or that investigators identified any electronic communication involving him. Instead, Attachment A affirmatively represented that this particular Samsung was "found on VERGIN's person" when he was arrested. Once that false statement is corrected, the affidavit establishes only that agents acquired a cellphone belonging to Mr. Vergin from inside his residence forty days after the alleged offense. It contains no factual basis to conclude that this was the device Mr. Vergin possessed during the relevant period or that evidence of the January 18 offenses would probably be found on it.

Mr. Vergin's challenge is supported by objective evidence. Exhibits A and B, the body-worn camera video and report of incident, are the Government's own evidence disclosed in this case. Exhibit C is the search warrant application and orders filed in this case. These exhibits provide the substantial preliminary showing necessary to warrant an evidentiary hearing on whether the inaccurate representation and related omissions were knowing and intentional, or made with reckless disregard for the truth.

Mr. Vergin's challenge is supported by more than conclusory allegations. The Eighth Circuit requires that a *Franks* challenge be accompanied by "specific allegations along with supporting affidavits *or similarly reliable statements*." *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015) (emphasis added). Mr. Vergin relies on the Government's own contemporaneous records — the body-worn camera video (Ex. A) and Report of Investigation (Ex. B) — rather than a separate declaration, because those records independently and more reliably establish the sequence of events described above, down to the specific timestamps at which each relevant exchange occurred. Exhibit C, the search warrant application and order, supplies the challenged statements themselves. Together,

these exhibits — all generated or filed by the Government — satisfy *Franks*' requirement of an offer of proof, or, at minimum, satisfactorily explain the absence of a separate affidavit. *See Franks*, 438 U.S. at 171.

**IV. The Warrant Is Overbroad and Lacks Particularity.**

The Fourth Amendment requires a warrant to particularly describe the things to be seized and prohibits the Government from engaging in a "general, exploratory rummaging" through an individual's belongings. *United States v. Ivey*, 91 F.4th 915, 917 (8th Cir. 2024) (quoting *United States v. Saunders*, 957 F.2d 1488, 1491 (8th Cir. 1992)). Particularity is assessed in light of the purpose of the warrant, the nature of the items sought, and the circumstances of the case. *Id.*

The warrant here identifies the Subject Device and, in some respect, limits the information sought by reference to the charged offenses. But Attachment B repeatedly goes further. It authorizes agents to search communications, Internet activity, photographs, videos, and other data not only for evidence relating to the planning and commission of the charged offenses, but also for evidence concerning "other organized protest activity." Ex. C, Attach. B ¶¶ 1(b)-(d).

The affidavit establishes probable cause, at most, concerning the January 18, 2026, incident at Cities Church. It identifies no other protest activity involving Mr. Vergin for which there was probable cause to search his private communications, photographs, Internet history, social-media activity, associations, or other digital information.

The authorization to search for "other organized protest activity" is particularly significant because lawful protest activity is constitutionally protected conduct and because

the warrant provides no definition, identified event, suspected offense, participant, location, or other objective limitation defining what constitutes "other organized protest activity." That language therefore permitted investigators to examine broad categories of Mr. Vergin's digital life for evidence of lawful activity unrelated to the offenses for which probable cause was asserted.

Unlike the warrant in *Ivey*, which was limited to "evidence related to firearms, ammunition, and possession and ownership of the seized firearm," 91 F.4th at 916, the authorization here to search for "other organized protest activity" was untethered to any probable cause the affidavit actually established.

## V. The Affidavit Fails to Establish a Nexus Between the Subject Device and the Charged Offenses.

A warrant application must establish a sufficient nexus between the evidence sought and the particular place to be searched. The affidavit establishes Mr. Vergin's alleged participation in the January 18 incident. It does not establish that evidence of that participation would probably be found on the particular Samsung cell phone seized from his residence forty days later.

The affidavit contains no allegation that Mr. Vergin possessed the Subject Device on January 18, 2026. Nor does it allege that Mr. Vergin possessed or used any cell phone during the pre-protest meeting, while traveling to Cities Church, while inside the church, or after leaving the church. Although investigators reviewed extensive video footage of both the pre-protest meeting and events inside the church, the affidavit does not identify any footage depicting Mr. Vergin using or possessing a cell phone.

The affidavit likewise identifies no call, text message, social-media communication, subscriber information, phone number, geolocation information, photograph, video, or other electronic evidence connecting Mr. Vergin or the Subject Device to the planning or commission of the charged offenses.

Instead, the affidavit states generally that, based upon the affiant's training and experience, "disruptors and co-conspirators" commonly communicate and organize using cellular telephones. Ex. C, Aff. ¶ 5. It further states that unspecified co-defendants circulated an Operation Pullup flyer on Instagram and Facebook and that similar flyers were recovered from the cell phones of two other co-defendants. *Id.* ¶ 14. Those facts may establish that some participants used electronic communications. They do not establish a fair probability that evidence of the charged offenses would be found on this Defendant's particular device. The distinction is significant.

In *United States v. Shelton*, the Eighth Circuit considered a warrant affidavit that established that the defendant actually possessed and was actively looking at the particular cell phone during the encounter in which evidence of drug and firearm offenses was discovered. Even with that individualized connection, the court characterized the affidavit as "arguably ... conclusory with regard to the connection between Shelton's cellphone and criminal activity." 2023 WL 7677970, at *2 (8th Cir. Nov. 15, 2023) (unpublished). The court did not decide whether probable cause existed; instead, it upheld the search under the good-faith exception.

The individualized nexus is weaker in the instant case. The affidavit does not allege contemporaneous use of the Subject Device—or any electronic device—by Mr. Vergin in

connection with the charged offenses.

The Government may rely upon the affidavit's assertion that the Subject Device was "found on VERGIN's person" when he was arrested. Ex. C, Attach. A ¶ 1. But that factual assertion is demonstrably incorrect. The Subject Device was inside Mr. Vergin's residence when he was arrested and handcuffed outside the residence. It came into an agent's possession only after the agent asked Mr. Vergin whether he wanted the phone and Mr. Vergin authorized the agent to retrieve it so that he could contact an attorney.

Once that inaccurate assertion is corrected, the affidavit establishes only that agents obtained a phone belonging to Mr. Vergin forty days after the alleged offense. It provides no facts establishing that this was a device Mr. Vergin possessed during the relevant period, much less that he used it in connection with the alleged offenses.

Accordingly, the affidavit failed to establish a fair probability that evidence of the charged offenses would be found on the Subject Device.

## **Conclusion**

For the foregoing reasons, Defendant John Vergin respectfully requests that the Court:

a. suppress all evidence obtained from the seizure and search of the Subject Device, together with all fruits thereof, because the February 27, 2026, seizure of the device was unsupported by a warrant or any exception to the warrant requirement;

b. alternatively, suppress that evidence because the Government's eleven-day warrantless retention of the Subject Device before seeking judicial authorization was unreasonable;

c. hold an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and, following that hearing, suppress all evidence obtained through execution of the March 10, 2026, search warrant because the supporting affidavit contained a false statement and material omission made knowingly and intentionally, or with reckless disregard for the truth, without which the affidavit fails to establish probable cause;

d. alternatively, suppress all evidence obtained through execution of the March 10, 2026, search warrant because the affidavit failed to establish a sufficient nexus between the Subject Device and the charged offenses, and suppress evidence obtained pursuant to the search warrant that was overbroad or insufficiently particularized.

e. grant such other and further relief as the Court deems just and proper.

**Word Count Compliance**

This motion and memorandum contains less than 4000 words in compliance with the Court's Case Management Order (Doc 625) dated August 12, 2026, and LR 7.1(f).

Respectfully submitted,

Dated: August 31, 2026

By: */s/ Margaret G. Langert*
Margaret G. Langert #308316
CJA Attorney for Defendant
Langert Law, LLC
724 Bielenberg Drive #54
Woodbury, MN 55125
(612) 470-4810
maggie@langertlaw.com