UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Court File No. 26-CR-25 (LMP/DLM)

---

United States of America,
Plaintiff,

v.

Catie Anne Michaelson,
Defendant.

**Motion to Suppress Records and Data Seized from Apple**

---

Pursuant to Fed. R. Evid. 12(b)(3)(C), Defendant Catie Anne Michaelson hereby moves the Court for an order suppressing records and data seized from Apple. The grounds for the motion are that the seizure and subsequent search of these records violated the Fourth Amendment's guarantee that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

## Factual Background

On February 27, 2026, Ms. Michaelson was arrested at her home pursuant to an arrest warrant issued in this case. Her phone was seized from a bedroom near to the area where she was taken into custody. A forensic extraction of data from that phone

was successfully completed.[1] Data extracted from that phone was reviewed by HSI Special Agent Benjamin Williams between April 10 and April 13, 2026. A summary of "relevant findings" is contained in a report by HSI Special Agent Timothy Gerber dated April 13, 2026. That report includes descriptions of text messages, pictures, emails, and web searches found on the phone. [Bates 12339.] On April 16, SA Gerber applied for and obtained a warrant to search "information associated with Catie Michaelson, [phone number][2] that is stored at premises controlled by Apple, Inc." [Bates 10813.]

The affidavit submitted in support of this warrant asserts, correctly, that Ms. Michaelson has been charged by indictment with one count of violating 18 U.S.C. § 241 (criminalizing certain conspiracies) and one count of violating 18 U.S.C. § 248 (the FACE Act). (Affidavit, par. 7.) The affidavit asserts that Ms. Michaelson was among a group of individuals who met together in a parking lot and then proceeded to a second location. It asserts that she was among those who entered Cities Church where it alleges that "the disruptors, including C. MICHAELSON obstructed the religious service and intimidated, harassed, oppressed, and terrorized the congregants." (Affidavit, par. 17) It

---

[1] Details regarding this extraction and the warrants obtained in connection to it are set forth in Ms. Michaelson's separate motion to suppress evidence obtained directly from her phone and are contained here only to the extent necessary to understand this motion. (Doc. 759.)

[2] The affidavit contains no actual explanation as to how this particular phone number came to be associated with Ms. Michaelson. It is possible it was discovered in the forensic examination of her phone, though she suspects there was an earlier, undocumented source.

alleges that she engaged in chanting and that she was among those who "can be seen yelling various statements in an aggressive manner with her fist in the air." (Affidavit, par. 29-30.)

The affidavit recounts that Ms. Michaelson was arrested pursuant to a warrant and that a dark blue iPhone with broken screen protector, later determined to belong to her, was seized during a security sweep of the residence. (Affidavit, pars. 7-12.) It states, correctly, that on April 8 an amended search warrant was granted to search the phone. (*Id.*, par. 13.) It then asserts: "C. MICHELSON's dark blue Apple iPhone with broken screen protector is locked, and access to her iCloud[3] is needed to obtain evidence relevant to the investigation." (*Id.*, par. 14.)

Ms. Michaelson's position is that the warrant is unconstitutional on its face because it fails to provide a reasonable basis for finding probable cause and because it fails to establish a nexus between the items sought (evidence relating to the alleged offenses) and the place to be searched (records maintained by Apple) and that suppression is thus required. In the alternative, she requests a *Franks* hearing because

[3] Ms. Michaelson assumes that the reference to iCloud is an inartful and imprecise use of language. The warrant itself describes iCloud as one of many categories of data maintained by Apple. (*See* Affidavit, par. 36.) Neither Attachment A nor Attachment B to the warrant limit the property to be searched or things to be seized to iCloud. Instead, it explicitly lists iCloud as among the records sought. (*E.g.* Attachment B, par. I.(e) (explicitly naming in addition to iCloud, FaceTime, iMessage, SMS, MMS, My Apple ID, iForgot, "all Apple services," Game Center, Find My, AirTag, "web-based access of Apple services," and iOS device purchase, activation, and upgrades.) Consequently, it will be referred to herein as the Apple warrant.

the affidavit contains a false statement made knowingly or with reckless disregard for the truth which was material to the determination of probable cause.

## Argument

### I. Records and data seized from Apple pursuant to this warrant should be suppressed because warrant is invalid on its face.

The Fourth Amendment requires that warrants be supported by probable cause "particularly describing the place to be searched, and the persons or things to be seized." Probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). When a warrant is issued based solely on a supporting affidavit, then only information contained within the four corners of the affidavit may be considered in evaluating probable cause. *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005). A magistrate's determination of probable cause is entitled to deference and must be upheld as long as the affidavit provided a substantial basis for concluding that probable cause existed. *United States v. Anderson*, 933 F.2d 612, 614 (8th Cir. 1991).

#### a. The warrant fails to establish probable cause to believe that an offense was committed.

The affidavit submitted to obtain this warrant asserts that Ms. Michaelson was one of 39 people indicted on charges that they violated 18 U.S.C. § 241 and § 248(a)(2). This was factually true. However, the indictment itself was not incorporated by

reference and its contents are clearly outside the scope of a four-corners review. The affidavit submitted to obtain this warrant failed to establish probable cause to believe that either of these offenses was committed.

Section 241 makes it a crime to conspire to injure, oppress, threaten or intimidate a person as a result of their exercise of certain rights.[4] The warrant affidavit describes an organized effort to "disrupt business as usual" by showing up somewhere where they are not expected and chanting. (Affidavit, par. 24-26.) This purpose – disruption – falls far short of the Section 241 requirement that the object of the conspiracy is to injure, oppress, threaten, or intimidate. Thus the affidavit fails to allege probable cause to believe that Section 241 was violated. Furthermore, the affidavit states that Cities Church was chosen as the location for this effort because "one of the church's pastors is a federal immigration officer." (*Id.* par. 17.) Again, this falls short of alleging a violation of Section 241 because does not assert a motivation based on the exercise of religious freedom, but rather a motivation based on the decision to employ a particular individual in a position of leadership. The affidavit fails to allege probable cause to believe that a Section 241 conspiracy existed, much less that Ms. Michaelson joined it.

[4] This warrant contains the same probable cause deficiencies described in Ms. Michaelson's separate motion to suppress evidence obtained from her cell phone. (Compare 3/6/16 affidavit, pars. 15-25 to Apple affidavit, pars. 17-27) (adding only the assertion that during the pre-operation briefing, "C. MICHAELSON is seen practicing the "ICE out of Minnesota!" and holding her cellphone).

Broadly, Section 248(a)(2) prohibits the use of force, threat of force, or physical obstruction to engage in prohibited activities.[5] The affidavit does not allege any instances of the use of force or threat of force. Rather, it relies on conclusory statements that "During the disruption at Cities Church, some of the protestors physically obstructed some parishioners as they attempted to leave the church." (*Id.* par 19.) Section 248(e)(4) defines the term "physical obstruction," limiting it to "rendering impassable ingress to or egress from … a place of religious worship" or "rendering passage to or from such a … place of religious worship unreasonably difficult or hazardous." The affidavit does not allege that the protestors rendered ingress or egress impassable. Quite the opposite – it states that parishioners left the building. (*Id.*, par 17.) Instead, it appears to be based on the theory that the protestors rendered passage from the building unreasonably difficult or hazardous. But the affidavit does not allege facts sufficient to establish probable cause for this theory. It does allege that one individual while leaving fell and sustained an injury. (*Id.* par. 17, 34.) While the affidavit clearly alleges that the protestors were the reason this individual chose to leave, it does

[5] With respects to Section 248(a)(2), this affidavit is even weaker on probable cause than the affidavits submitted in connection with the warrants to search Ms. Michaelson's phone. Unlike the 3/16/26 affidavit, the Apple affidavit does not specifically include Ms. Michaelson as among the individuals alleged to have engaged in physical obstruction. (Compare 3/16/26 affidavit, par. 15 to Apple affidavit, par. 19.) Unlike the 3/16/26 affidavit, the Apple affidavit does not specifically include Ms. Michaelson as among the individuals alleged to have blocked congregants' freedom of movement. (Compare 3/16/26 affidavit, par. 27 to Apple affidavit, par. 31.)

not even attempt to establish that the protestors' actions in any way caused her exit to be any more difficult or hazardous than it otherwise would have been, much less unreasonably so. The warrant affidavit asserts that video shows protestors "blocking parishioners' freedom of movement throughout the church." (*Id.* par 31.) But it falls far short of alleging that the protestors' actions made egress impassable or rendered parishioners' exit from the church unreasonably difficult or hazardous. Thus the affidavit fails to establish probable cause to believe that Section 248(a)(2) was violated, much less that Catie Michaelson violated it.

**b. The warrant fails to establish probable cause to believe that evidence of the alleged offenses will be found among the records maintained by Apple.**

The affidavit submitted to obtain this warrant contained no allegation of a direct connection between the crimes it alleged took place on January 18 and the phone seized from Ms. Michaelson on February 27. While it states that "Several disruptors recorded on electronic devices the pre-brief meeting at the shopping center, the disruption inside the church, and after the disruptors left the church" (Affidavit, par. 19), it does not allege that Ms. Michaelson was among them. It also asserts that "several co-defendants" posted a flyer on social media promoting the operation (*Id.*, par. 21), but again, does not allege that Ms. Michaelson was among them. (In fact, the wording implies that she was not.) The affidavit recites that the affiant had reviewed video footage "taken by co-defendants on their social media accounts" (*id.*, par. 32) but does

not allege that Ms. Michaelson took any video or posted anything to social media during or regarding this incident. The only reference in the affidavit to Ms. Michaelson even having a phone with her on January 18 is the assertion that during the meeting in the parking lot, "C. MICHAELSON is seen practicing the "ICE out of Minnesota!" and holding her cellphone" (*Id.*, par. 26.) Of course, it is possible to have a cellphone and hold it without making any meaningful or relevant use of it. For example, one could pull it out to check the time, to view an unrelated notification, or to shut it off.

In sum, while the affiant had watched a number of videos (*id.*, pars. 19, 22-26, 28-34), reviewed social media posts (*id.*, pars. 18, 21), and examined the phones of at least two co-defendants (*id.*, par. 18), there is no indication in the affidavit that he ever saw Ms. Michaelson using a phone or electronic device, posting on social media, or communicating electronically with co-defendants. *See In Re Search Warrants*, 26-mj-208 (JFD) Doc. 4, Order Keeping Under Advisement Three Search Warrant Applications and Denying the Fourth at 8 (March 6, 2026) (declining to issue search warrant, explaining: "There is no indication that [co-defendant] was seen using his phone to take photographs or videos while at Cities Church, no allegation that any such photographs or videos have turned up on social media, and no indication that [co-defendant] used his phone to communicate, via voice, email, or text, with other defendants. The application,

in short, does not come close to establishing a nexus between the crime charged and the telephone records whose seizure is sought; therefore probable cause is lacking.").[6]

Nor does the Background Concerning Apple section of the affidavit supply the missing link. These paragraphs talk in sweeping terms about services which "can be accessed" and "enable" iPhone users to perform certain functions. (Affidavit, par. 36, 41.) It also describes information "captured" by Apple in connection with many of these functions. (*Id.*, par. 39, 41.) At no point does it assert any reason to believe that Ms. Michaelson has made any use of the described functions, much less any use relevant to this case.

Nowhere does the affidavit provide any concrete reason to believe that any record or data relevant to this case will actually be found among the information sought from Apple. Instead, the affidavit relies entirely on assumptions and possibilities. As the Supreme Court has noted: "It would be a particularly inexperienced or unimaginative law enforcement officer who could not come up with several reasons to suppose evidence of just about any crime could be found on a cell phone." *Riley v. California*, 573 U.S. 373, 399 (2014). But probable cause requires more than just supposing that evidence might be found on a phone – it requires and honest and strong suspicion

[6] Unlike the affidavits submitted seeking warrants to search Ms. Michaelson's phone, this affidavit lacks the language alleging a "common practice for disruptors and co-conspirators to communicate, organize and work together with other individuals by utilizing cellular telephones." (Compare 3/16/26 affidavit, par. 5 and 4/8/26 affidavit, par. 5 to Apple affidavit).

particularized as to the evidence sought and the place to be searched. The affidavit in this case is nothing more than supposition and conjecture that some unspecified evidence relevant to the charges in this case could be found by reviewing a wide swath of data maintained by Apple. As a result, it fails to establish a nexus between the place to be searched and the evidence sought. It substitutes particularity with sweeping generalities and in the process, seeks to perform a wide-ranging review of large swaths of data in hopes that in the process something relevant may be revealed. This fishing expedition fails the Fourth Amendment requirement that a warrant be based on probable cause.

**c. Evidence obtained from Apple should be suppressed.**

Suppression is generally the remedy for Fourth Amendment violations, including for evidence seized pursuant to a defective warrant. *See United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). When it applies, good faith reliance on a warrant is an exception to this rule. *United States v. Leon*, 468 U.S. 897 (1984). Because this exception requires that officers act in reasonable good faith, it does not apply in every circumstances, including when an affidavit is “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" or where the warrant is "so facially deficient" that no officer could reasonably presume it valid. *Id.* at 923. The affidavit used to obtain the Apple warrant is so lacking that it was unreasonable for any

officer to rely on it. Because good faith does not apply, the evidence obtained as a result of this warrant should be suppressed.

**II. In the alternative, the Court should grant a *Franks* hearing because the warrant affidavit contained a false statement made knowingly and intentionally, or at least with reckless disregard for the truth, which was material to the probable cause determination.**

A *Franks* hearing is warranted to go beyond the four corners of the warrant application when the affidavit used to obtain the warrant "contains factual misrepresentations or omissions relevant to the probable cause determination." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013). To be entitled to a hearing, a defendant must make a substantial preliminary showing that the affiant "knowingly and intentionally made false statements or made them in reckless disregard for the truth" and that a corrected affidavit would no longer establish probable cause. *Id.*

In his affidavit, Special Agent Gerber acknowledges that an amended search warrant was granted authorizing a search of Ms. Michaelson's dark blue iPhone. (Affidavit, par. 13.) The very next paragraph, however, asserts that the phone "is locked, and access to her iCloud is needed to obtain evidence relevant to the investigation." (*Id.*, par. 14.) The affidavit does not define the term "locked," but neither does it disclose that significant data – including text messages, pictures, emails, and web searches – was successfully extracted from her phone. To the extent that describing the phone as "locked" means that no data was obtained, the affidavit is clearly false. If instead the

term “locked” was intended to refer to something other than completely inaccessible, then the lack of context and explanation makes the affidavit materially misleading by implying that no data was retrieved. SA Gerber knew this statement was false or materially misleading because just three days prior he submitted a report containing a summary of that data which had been extracted and reviewed. Paragraph 14 of the affidavit appears to be a knowing and intentional false statement, but is at a minimum a false statement made in reckless disregard for the truth.

This misstatement is material to probable cause for two reasons. First, the affidavit asserts a causal relationship between the phone being locked and the warrant sought. Specifically, it states that the fact that the phone is locked is what makes access to data maintained by Apple “needed.” Second, the lack of information about the extraction lays bare the lack of probable cause to believe that anything relevant would be found among the records maintained by Apple. For example, the affidavit leans heavily into the notion that data retained by Apple would help identify who was using the phone. (Affidavit, pars. 16, 38, 40, 42, 44.) But agents reported that a month previously a review of the forensic extraction made it “immediately apparent” that the phone belonged to Ms. Michaelson. The warrant does nothing to explain what additional data could add to that conclusion. The speculation animating this warrant application become even more apparent in light of the undisclosed forensic examination. Speculation about what services may have been enabled or used, what

apps may have been downloaded or employed, or what the records may show are even more unreasonable considering that investigators had access to the phone itself but failed to allege any specific content or information which they are seeking.

In seeking this warrant, SA Gerber not only failed to disclose that a forensic extraction had been completed and that significant data had been retrieved and reviewed, but he went further and affirmatively misrepresented that fact to the Court. The brazenness of this misrepresentation and its impact on the probable cause determination are sufficient to warrant a *Franks* hearing.

## **Conclusion**

The affidavit submitted to obtain a warrant for data maintained by Apple regarding Ms. Michaelson was insufficient on its face and does not survive a four-corners review. A four-corners review does not require an evidentiary hearing, but Ms. Michaelson does request oral argument and an opportunity to reply to any response by the Government.

In the alternative, if the warrant survived a four-corners review, it is still constitutionally unreasonable because it contained a knowing affirmative misrepresentation of fact material to probable cause. If the Court denies Ms. Michaelson's motions on the four-corners, it should grant a *Franks* hearing.

Respectfully submitted,

Dated: August 31, 2026

/s/ Karen Mohrlant
Karen Mohrlant (388093), kmohrlant@fctyler.com
F. Clayton Tyler, P.A.
331 Second Avenue South, Suite 230
Minneapolis, MN 55401
Ph: 612-333-7309
Attorney for Ms. Michaelson