UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-CR-25 (LMP/DLM)

--------------------------------------------

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROBYN ELISE SWENSON,

Defendant.

--------------------------------------------

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED FROM THE SEARCH OF CELL PHONE**

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C), Defendant Robyn Elise Swenson, through counsel, moves the Court for an Order suppressing all evidence obtained from the search of Ms. Swenson's cell phone. More specifically, Defendant moves to suppress evidence obtained pursuant to the search warrant issued by the Honorable Elsa M. Bullard on March 6, 2026, on the grounds that the warrant lacks probable cause, is overly broad, and lacks particularity.

## FACTS

On January 18, 2026, Ms. Swenson gathered with others to peacefully protest at Cities Church in St. Paul, Minnesota. On February 26, 2026, a superseding indictment was returned, charging Ms. Swenson of violating 18 U.S.C. § 241, the federal civil rights conspiracy statute, and 18 U.S.C. § 248(a)(2), the Freedom of Access to Clinic Entrances (FACE) Act. (Dkt. No. 144). On February 27, 2026. Homeland Security Investigations (HSI) agents arrested Ms. Swenson and seized her cell phone. (Dkt. No. 171; Dkt. No. 744, Ex. A, Search Warrant, at 10375). The phone was seized without a warrant and remains in the

possession of HSI. (*See* Dkt. No. 744, Ex. A, at 10390). No warrant to search the contents of the cell phone was applied for or issued until March 6, 2026, one week after the cell phone's seizure and approximately seven weeks after the underlying incident. (*See id*. at 10371).

The warrant authorized the search and seizure of records and information on the cell phone for the time period of "January 1, 2026 through PRESENT." (*Id*. at 10391). Attachment B to the warrant authorized the seizure of the following records and information:

(1) "Call log and related call data showing all incoming and outgoing calls to and from the SUBJECT DEVICE;"

(2) "Any and all text messages, messages sent via telephone messenger applications, emails (including those sent, received, deleted and drafted), instant messages, photographs, videos, Facebook posts, Instagram posts, FaceTime logs, Google Voice calls, and other electronic media evidencing or relating to (a) planning, organizing, scheduling, and commission of the SUBJECT OFFENSES and other organized protest activity; (b) subsequent communications regarding the SUBJECT OFFENSES and other organized protest activity; and (c) other communications, activities, and associations that SWENSON had with any of the indicted co-defendants and/or other as yet unidentified persons who participated in the planning or commission of the SUBJECT OFFENSES;"

(3) "Internet activity (including browser history, web page logs, downloads, postings on websites, search terms entered by the user, firewall logs, caches, cookies, and 'bookmarked' or 'favorite' web pages) evidencing or relating to (a) planning, organizing, scheduling, and commission of the SUBJECT OFFENSES and other

organized protest activity; (b) subsequent communications regarding the SUBJECT OFFENSES and other organized protest activity; and (c) other communications, activities, and associations that SWENSON had with any of the indicted co-defendants and/or other as yet unidentified persons who participated in the planning or commission of the SUBJECT OFFENSES;"

(4) "Photographs or videos evidencing or relating to planning, organizing, scheduling, and commission of the SUBJECT OFFENSE and other organized protest activity;"

(5) "Any information regarding the schedule or travel of SWENSON or the indicted co-defendants, including geolocation information, emails, and text messages;"

(6) "Financial records (e.g., bank or credit card records) evidencing interstate travel to/from St. Paul, Minnesota on or about January 18, 2026;"

(7) "Contact lists, including names, telephone numbers, e-mail addresses, and other contact information of SWENSON's associates;" and

(8) "Passwords, encryption keys and other access devices that may be necessary to access the SUBJECT DEVICE" as well as "[r]ecords of Internet Protocol addresses used and "[c]ontextual information necessary to understand the other items to be seized described in this attachment."

## **ARGUMENT**

The chief evil that prompted the framing and adoption of the Fourth Amendment was the "indiscriminate searches and seizures" conducted by the British "under the authority of 'general warrants." *Payton v. New York,* 445 U.S. 573, 583 (1980). To prevent the "unbridled discretion to rummage at will among a person's private effects," *Arizona v.*

*Gant,* 556 U.S. 332, 345 (2009), the Fourth Amendment provides that "a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Kentucky v. King,* 563 U.S. 452, 459 (2011). Where First Amendment materials are implicated, the requirements of the Fourth Amendment must be applied with "scrupulous exactitude." *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978).

"Probable cause to issue a search warrant exists when an affidavit [or testimony] in support of the warrant sets forth sufficient facts to establish that there is a 'fair probability that contraband or evidence of' criminal activity will be found in the particular place to be searched." *United States v. Davis,* 471 F.3d 938, 946 (8th Cir. 2006) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). "To satisfy the particularity requirement of the fourth amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United States v. Sigillito*, 759 F.3d 913, 923 (8th Cir. 2014) (internal quotation and citation omitted). Further, to support an application for a search warrant, "[t]here must be evidence of a nexus between the contraband and the place to be searched." *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2018) (internal citation & quotation omitted). Factors to consider in determining if a nexus exists include "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *Id*. (internal quotation and citation omitted).

When the issuing judge relies solely upon the supporting affidavit to issue the warrant, "only that information which is found within the four corners of the affidavit may

be considered in determining the existence of probable cause." *United States v. Etheridge,* 165 F.3d 655, 656 (8th Cir. 1999) (quotation omitted).

**A. The Warrant Fails To Establish Probable Cause**

The affidavit supporting the warrant does not establish that Ms. Swenson's cell phone would contain evidence of a crime. Ms. Swenson was indicted under 18 U.S.C. § 248(a)(2), which requires the Government to demonstrate that Ms. Swenson intended to injure, intimidate, or interfere with the congregants' religious exercise, because of that religious exercise, by force, threat of force, or physical obstruction. Ms. Swenson was further indicted under 18 U.S.C. §241, which requires the Government to demonstrate that Ms. Swenson entered into an agreement, the object of which was to injure, oppress, threaten, or intimidate the congregants in their religious exercise, and voluntarily joined that agreement with the specific intent to achieve that unlawful objective. The facts set forth in the affidavit do not specifically identify what Ms. Swenson did that violated these statutes, other than attending a meeting in a parking lot and attending a protest in the Cities Church. The affidavit contains conclusory statements that Ms. Swenson was a "disruptor" and "obstructed the religious service and intimidated, harassed, oppressed, and terrorized the parishioners," but such statements do not establish a likelihood that Ms. Swenson violated these statutes or had the requisite intent.

**B. The Warrant Fails To Establish A Nexus Between The Phone and Criminal Activity**

Moreover, there is no information in the affidavit about the cell phone that HSI seized from Ms. Swenson linking it to the charged offenses. Glaringly absent from the

affidavit is any statement that the phone seized belonged to Ms. Swenson. Nor is there any assertion in the affidavit that Ms. Swenson brought her cell phone to the parking lot or the protest, let alone used that phone to record anything at the Church. In fact, the affidavit is wholly silent about the connection of the phone to any criminal activity. Accordingly, the warrant fails to meet the nexus requirement without a factual showing that this phone contains evidence of the charged offense.

### C. The Warrant Is Overbroad And Insufficiently Particular

The warrant is a general warrant because it does not limit the search to evidence of the charged offenses—it sweeps broadly to encompass protected First Amendment activity. For example, in Attachment B, the items to be seized include: "Any and all text messages, messages sent via telephone messenger applications, emails (including those sent, received, deleted and drafted), instant messages, photographs, videos, Facebook posts, Instagram posts, FaceTime logs, Google Voice calls, and other electronic media evidencing or relating to (a) planning, organizing, scheduling, and commission of the SUBJECT OFFENSES **and other organized protest activity**; (b) subsequent communications regarding the SUBJECT OFFENSES **and other organized protest activity**." (emphasis added). Attachment B goes on to list additional items to be seized: "Internet activity (including browser history, web page logs, downloads, postings on websites, search terms entered by the user, firewall logs, caches, cookies, and 'bookmarked' or 'favorite' web pages) evidencing or relating to (a) planning, organizing, scheduling, and commission of the SUBJECT OFFENSES and **other organized protest activity**; (b) subsequent communications regarding the SUBJECT OFFENSES **and other organized protest activity."** (emphasis added). Attachment B also

singles out: "Photographs or videos evidencing or relating to planning, organizing, scheduling, and commission of the SUBJECT OFFENSE and **other organized protest activity**" and authorizes the seizure of **"[c]ontextual information** necessary to understand the other items to be seized described in this attachment." (emphasis added). The warrant is so broad that it authorizes the seizure of information of all protest activity engaged in by Ms. Swenson—not just the charged offense.

Even more troubling is the time frame covered by the warrant—"January 1, 2026 to the present." The protest occurred on a single day, January 18, 2026, but the warrant seeks information related to Ms. Swenson's activities weeks before the protest and an indefinite period after the protest. There is no explanation in the warrant as to why evidence generated weeks before and after the protest by Ms. Swenson are relevant to the charged offense.

In sum, the warrant is a troubling general warrant whose scope is so broad that it authorizes the seizure of every email, text, call, search and much more, including location information, untethered to the charged offense and any time limitation. In doing so, the warrant exemplifies the chief evil that prompted the framing and adoption of the Fourth Amendment—the "unbridled discretion to rummage at will among a person's private effects." Because the search and seizure of the cell phone exceeds the bounds of the Fourth Amendment, the exclusionary rule requires suppression. *United Stats v. Madrid*, 152 F.3d 1034, 1037-38 (8th Cir. 1998).

For the reasons set forth above, the Court should grant this Motion and suppress all evidence resulting from this unconstitutional search and seizure.

Dated: August 31, 2026

**SAPIENTIA LAW GROUP, I.PLLC**

s/Robin M. Wolpert
Robin M. Wolpert (#0310219)
120 South Sixth Street, Suite 100
Minneapolis, MN 55402
Phone: 612-756-7100
Fax: 612-756-7101
robinw@sapientialaw.com

*Attorneys for Defendant*
*Robyn Elise Swenson*