UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIMINAL NO 26-25 (26) (LMP/DLM)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff | ) | ERIC MICHAELSON'S MEMORANDUM IN SUPPORT OF MOTIONS TO SUPPRESS EVIDENCE AND FOR RETURN OF UNLAWFULLY SEIZED PROPERTY |
| v. | ) | |
| ERIC RYAN MICHAELSON Defendant. | ) | |

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant Eric Ryan Michaelson submits this Memorandum in support of his motions to suppress evidence obtained from searches of his iPhone and Apple Cloud account and for the return of his unlawfully seized iPhone.

Mr. Michaelson seeks suppression of evidence discovered during the searches of his iPhone and Apple iCloud account because the affidavits submitted to obtain the warrants failed to establish both probable cause that the charged offenses had been committed, and the requisite nexus between the alleged offenses and the places to be searched. The iPhone warrants also fail because they were overbroad in that they authorized seizure of records far outside the limited timeframe and subject matter actually described in

the affidavit. They also permitted searches for categories of information, including activity or travel, that had no factual connection to the alleged conduct.

The good faith exception established in *United States v. Leon*, 468 U.S. 897 (1984) does not save the warrants because the affidavits were so lacking in indicia of probable cause that belief in its existence was objectively unreasonable.

Finally, the lack of probable cause that an offense was committed, coupled with the inapplicability of any exception to the warrant requirement, rendered the warrantless seizure of Mr. Michaelson's iPhone unconstitutional. Pursuant to Fed R. Crim P. 41(g), the Government must immediately return the phone to Mr. Michaelson.

## FACTUAL BACKGROUND

### Operation Pullup

In mid-January 2026 a flyer announcing "Operation Pullup" was posted on Instagram, Facebook and other social media. The flyer invited the public to join the Racial Justice Network and other organizations on January 18, 2026, for an "ICEOUT" action in honor of Martin Luther King, Jr. Memorial Weekend. The flyer referenced a meeting at the Cubs Food parking lot in St. Paul, Minnesota but did not mention Cities Church or any specifics about the action. (Id.) Eric Michaelson and his wife Catie

Michaelson went to the Cub Foods parking lot on January 18, 2026. There the Michaelsons and other attendees were given the address to the place where the operation was to take place.

**The Cities Church Protest**

After the meeting at the Cub Foods parking lot, the Michaelsons and other attendees traveled to the Cities Church in St. Paul where at approximately 10:30 a.m. they entered the church. The Michaelsons sat quietly with the congregation until co-defendant Nekima Levy Armstrong announced the protest of a pastor of the church also serving as the regional field director of ICE. The co-defendants including the Michaelsons, joined in various protest chants. The affidavits submitted to support warrant applications allege that that "some of the disruptors physically obstructed congregants as they attempted to leave the church." (4/8/26 iPhone warrant affidavit, ¶18; iCloud warrant affidavit ¶15). The affidavits do not, however, allege Mr. Michaelson physically obstructed anyone. Instead, all the affidavits aver about his actions was that video of the incident show he was "among those in the church chanting" and that he could be heard yelling 'This ain't God's house. This is the house of the devil," and "other aggressive

verbiage."[1] The absence of evidence that Mr. Michaelson used force or obstructed congregants is echoed in the Government's investigation reports. A report documenting surveillance of Mr. Michaelson states only that he entered the church, was observed "actively chanting and protesting," and that he left the church with the other protestors.[2]

**Indictment, Arrest and Seizures.**

On January 29, 2026, the Government charged nine people who participated in the Cities Church protest with violating 18 USC §§ 241, 248(a)(2) and 2(a). (Indictment, ECF No. 39.) On or about February 26, the Government filed a superseding indictment charging 30 additional people, including Mr. Michaelson and his wife. (Superseding Indictment, ECF No. 144.) Following the issuance of arrest warrants approximately 10 HSI agents went to the Michaelson's home at 6:03 a.m. on February 27, 2026, where the agents arrested them and seized their cell phones. Mr. Michaelson's cell phone, a light blue iPhone purchased two days after the Cities Church protest,[3] was on his person when he was arrested. Agents also seized his

---

[1] The claim that Mr. Michaelson could be heard yelling "this ain't God's house, this is the house of the devil," is false. There is no video evidence of his chanting these words or other words impugning Cities Church.

[2] ROI MSO5Ff226MS0003-168, bates 528-529.

[3] The receipt showing Mr. Michaelson purchased the iPhone on January 20, 2026, is submitted as Defendant's Exhibit 1.

wife's blue iPhone with a cracked screen, even though Ms. Michaelson did not have the phone on her person and agents did not have a warrant to search the premises.

**Initial iPhone Search Warrants and Extractions.**

On March 8, 2026, HSI applied for warrants to search the Michaelsons' iPhones. Special Agent ("SA") Timothy Gerber draft the supporting affidavits. SA Gerber identified himself as a special agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), and Homeland Security Investigations (HSI). SA Gerber further stated he had been employed in this capacity since March 2025, and his duties included "conducting investigations into the federal laws enforced by HSI, and investigation of "various criminal violations relating to child exploitation, assaults on federal officers, human rights violations, and immigration violations." Prior to working at HSI/ICE, SA Gerber worked as a special agent with Internal Revenue Service, Criminal Investigation for an unspecified time, where he investigated various criminal violations relating to the Internal Revenue Code, money laundering, digital currency, and elder exploitation.

HSI reports indicate that the phone seized from the Mr. Michaelson was first misidentified as belonging to another co-defendant.[4] Then, upon reviewing reports of extractions from the iPhones, SA Gerbert learned agents had mixed up the iPhones and that warrant allowing the search of Mr. Michaelson's iPhone specified his wife's phone and vice versa.[5]

**Amended iPhone Warrants**

On April 8, 2026, SA Gerber obtained an amended search warrant correcting the previous warrant allowing the search of the light blue iPhone that was seized from Mr. Michaelson incident to his arrest. The affidavit SA Gerber's submitted with the application for the amended warrant was identical to his initial affidavit except for a paragraph clarifying the iPhone that Mr. Michaelson had in his possession and a paragraph explaining that the phones had not been properly labeled when put into evidence containers when they had been seized.

**iCloud Search Warrants.**

On April 16, 2026, police applied for a warrant to search Mr. Michaelson's iCloud account information. Contrary to investigative reports that stated HSI had performed an extraction of Catie Michaelson's iPhone

---

[4] ROI MSO5F226MS0003-168, bates 1458.

[5] See ROI MSO5Ff226MS0003-483 at bates 12337.

and possibly Mr. Michaelson's,[6] the affidavit submitted in support of the iCloud warrant alleged police had not been able to access either iPhone:

> On April 10, 2026, pursuant to a signed search warrant for E. MICHAELSON's cell phone, HSI Computer Forensic Analysts attempted to extract the data from the cell phone, however the Apple iPhone was encrypted and the data was unable to be extracted.

(Eric Michaelson iCloud warrant affidavit, ¶10)

> C. MICHAELSON's dark blue Apple iPhone with broken screen protector s locked, and access to her iCloud is needed to obtain evidence relevant to  the investigation.

(Catie Michaelson iCloud warrant affidavit Paragraph 14).

The factual allegations in the iCloud warrant are similar to those of the iPhone warrants apart from information pertaining to Apple's iCloud product. For example, in his iCloud affidavit, SA Gerber avers that "[b]ased on my training, experience, and use of common knowledge, I can affirm that iCloud stores and backs up user data from the user's iPhone." (iCloud warrant affidavit, ¶11). He then proceeds, in Paragraphs 31 through 43, to provide a detailed summary of information that Apple provides law enforcement about its customers iCloud accounts. SA Gerber did not mention, however, that Apple's guides also state that iCloud accounts can be disabled and are entirely optional.

---

[6] See ROI MSO5Ff226MS0003-408 at bates 1458 and ROI MSO5Ff226MS0003-484 at bates 12339.

**Allegations Regarding Eric Michaelson's Actions.**

None of SA Gerber's affidavits or investigation reports produced to date allege or mention Mr. Michaelson using a cell phone inside the Cities Church or communicating with codefendants via cell phone (besides his wife). Nor does the Government allege, in the affidavits, investigation reports or the overt acts portion of the superseding indictment, that Mr. Michaelson used or threatened the use of force during the Cities Church Protest or that he physically obstructed any member of the Cities Church congregation during the protest.

## ARGUMENT

### I. ALL EVIDENCE DISCOVERED DURING SEARCHES OF MR. MICHAELSON'S IPHONE AND ICLOUD ACCOUNT SHOULD BE SUPPRESSED.

### A. Legal standard.

Probable cause exists when "there are sufficient facts to justify the belief by a prudent person that contraband or evidence of crime will be found in the place to be searched." *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995). The sufficiency of a warrant is analyzed using a totality-of-the-circumstances approach; "the duty of a reviewing court is simply to ensure that the [issuing] magistrate had a `substantial basis for . . . conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (*quoting Jones v. United States*, 362 U.S. 257, 271, (1960)). This

showing must be directed at the specific device or location to be searched; the affidavit must establish a concrete nexus between the alleged criminal conduct and the phone. *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000); *Gates, 462 U.S. at 238* (Probable cause not only requires that the evidence sought likely exists, but that there is also a fair probability the evidence will be found at the specific site to be searched.). Although courts pay a "great deference" to the issuing judge's initial determination of probable cause, a warrant application cannot rely merely on "conclusory statement[s]." Id. at 236, 239, (citing *Nathanson v. United States*, 290 U.S. 41 (1933)).

**B. The iPhone and iCloud warrants are invalid because the supporting affidavits did not provide probable cause that a crime had been committed.**

The iPhone and iCloud affidavits fail to establish probable cause that anyone committed the offenses charged under 18 U.S.C. §§ 241 or 248(a)(2). Instead, both affidavits describe a coordinated political protest that disrupted a church service and then simply assume, without factual support, that such conduct constitutes a federal crime.

As extensively briefed in Defendants' June 24, 2026, Joint Motion to Dismiss (ECF No. 547), liability under 18 USC §248(a)(2) requires more than disruption of a religious service. Instead, Section 248(a)(2) statute requires proof that a defendant used "force, a threat of force, or physical

obstruction," and did so with "the intent to injure, intimidate, or interfere with another person" exercising religious freedom. With respect to a threat of force, the Supreme Court requires that a criminal threat must constitute a "true threat," meaning a serious expression of an intent to commit unlawful violence. *Virginia v. Black*, 538 U.S. 343, 359 (2003). Likewise, the Eighth Circuit has recognized that the FACE Act's prohibition on threats is limited to conduct that places a person in reasonable apprehension of bodily harm. *United States v. Dinwiddie*, 76 F.3d 913, 922 (8th Cir. 1996).

Neither the iPhone nor iCloud affidavits allege facts that satisfy these statutory requirements. The affidavits contain no allegation that any participant threatened bodily harm. No statement identified in the affidavits expresses an intent to commit violence. No participant is alleged to have threatened any congregant with physical injury. The affidavits repeatedly characterize congregants as frightened, shocked, confused, or upset, but as the motion explains, fear or discomfort experienced by listeners is not itself the legal equivalent of a true threat

The affidavits also fail to allege facts showing the physical obstruction contemplated by Section 248(a)(2). At most, they allege that some protestors were inside the church, that some congregants attempted to leave, and that movement within the church became more difficult during the disruption. Significantly, neither affidavit identifies any instance in which church

entrances or exits were blocked, any congregant was prevented from leaving, or any route of ingress or egress was rendered impassable.

Nor do the affidavits establish the required intent element. Section 248(a)(2) requires that force, threats, or obstruction be undertaken with the intent to injure, place another person in apprehension of bodily harm, or restrict another person's freedom of movement. Yet the only articulated objective found in either affidavit is the participants' desire to conduct an "Operation Pullup" and "disrupt business as usual." Even accepting those allegations as true, an intent to disrupt a church service is not equivalent to an intent to injure, intimidate, or interfere as those terms are defined by the statute. The affidavits therefore fail to allege facts establishing the mens rea required for a FACE Act offense

The 18 U.S.C. § 241 conspiracy allegations are similarly deficient. Section § 241 requires an agreement whose purpose is to injure, oppress, threaten, or intimidate persons in the exercise of a federally protected right. These terms require more than conduct that is merely disruptive, unpleasant, or interruptive. *United States v. Magleby*, 420 F.3d 1136, 1143 (10th Cir. 2005). Yet neither affidavit identifies facts showing that any participant agreed to threaten anyone, agreed to use force against anyone, agreed to intimidate anyone through threatened violence, or agreed to obstruct ingress or egress from the church. Instead, the affidavits describe

participants planning a protest directed at a church because of their views concerning a pastor's alleged association with immigration enforcement. Such allegations may support an inference that participants intended to protest or disrupt, but they do not establish an agreement to commit the conduct proscribed by § 241.

Moreover, both affidavits rely extensively on conclusory characterizations rather than factual allegations. The protest is repeatedly described as an "attack," while participants are said to have "terrorized," "oppressed," "harassed," or "intimidated" congregants. But probable cause cannot be established through legal conclusions and emotionally charged labels standing alone. The task of the issuing magistrate is to evaluate the underlying facts, not merely accept an affiant's characterization of those facts. When the conclusory rhetoric is set aside, the affidavits describe a loud, coordinated, nonviolent protest inside a church. They do not describe conduct satisfying the statutory elements of either § 248(a)(2) or § 241.

As with the Superseding Indictment, the iPhone and iCloud affidavits treat intentional disruption of a church service as itself constituting a federal crime. But as the joint motion to dismiss establishes, neither Sections 248(a)(2) nor 241 criminalizes the mere disruption of religious worship. Because the affidavits allege facts establishing only disruption, protest activity, chanting, criticism of the church, and resulting emotional reactions

from congregants, they fail to establish the statutory elements of either charged offense. Consequently, none of the affidavits provided a substantial basis for concluding that any person committed violations of 18 U.S.C. §§ 241 or 248(a)(2), and the warrants were therefore unsupported by probable cause.

## C. The affidavits fail to establish any nexus between Mr. Michaelson's iPhone and the alleged violations of 18 U.S.C. §§241 and 248(a)(2).

Even if the affidavits had shown probable cause to believe a crime had been committed, the warrants would still be invalid because the supporting affidavits are bereft of facts showing a nexus between the alleged crime and Mr. Michaelson's iPhone.

### *1. Nexus requires case specific facts showing that Mr. Michaelson used this iPhone in this offense.*

A warrant to search a cell phone demands "reason to believe that a phone may contain evidence of the crime." *United States v. Griffith*, 867 F.3d 1265, 1274 (D.C. Cir. 2017). Because a phone is not inherently illegal, the government must supply case-specific facts showing that the defendant used the device as a tool of the alleged criminal activity. *Id.*, *see United States v. Ramirez*, 180 F. Supp. 3d 491, 495–96 (W.D. Ky. 2016). Boilerplate assertions about how criminals "often" use phones cannot substitute for such facts.

The iPhone affidavits here contain no such facts. They do not allege that Mr. Michaelson possessed a phone during the protest, used a phone before or after the protest, communicated electronically with any co-defendant, or engaged in any digital planning. This silence precludes any finding of a nexus between the charged offenses and Mr. Michaelson's iPhone. *See In re Search Warrants*, 26-mj-205 (JFD), at 6 (D. Minn.) (denying warrant where indictment "was silent as to [the defendant] using a phone").

**2. *SA Gerber's "training and experience" are offense irrelevant and cannot supply nexus.***

The Government's only attempt to connect the offense to Mr. Michaelson's iPhone is SA Gerber's conclusory assertion that "disruptors and co-conspirators" commonly use cell phones to communicate. (See 3/6/26 iPhone Aff. ¶5; 4/8/26 iPhone Aff., ¶5.) This conclusory statement fails to establish the requisite nexus. A supporting affidavit must rely on facts to show how the affiant knew a defendant used cell phones as a tool of his own illegal activity rather than empty assertions of illegal activity generally. The two paragraphs outlining SA Gerber's training and experience do not mention FACE Act investigations, religious facility obstruction cases, any prior investigations involving "disruptors," or any empirical basis for the claimed "common practice." His background, child exploitation, immigration and IRS financial crimes, has no logical

connection to protest planning or FACE Act conspiracies. *See Lane v. Dist. of Columbia*, 211 F.Supp.3d 150, 175 (D. D.C. 2016) (. . . "actual experience is properly considered as part of the "totality of circumstances" that inform the probable cause determination. That experience, moreover, must bear a logical connection to the circumstances facing the officers in any given case.")

In sum, the affidavits offer no case-specific facts showing that Mr. Michaelson used this iPhone in this offense, and SA Gerber's offense-irrelevant "training and experience" cannot cure that defect. Because the warrants rest on boilerplate generalities rather than a particularized nexus, they fail to establish probable cause to search Mr. Michaelson's iPhone.

**D. <u>The iCloud affidavit also failed to establish the requisite nexus</u>.**

The affidavit supporting the application to search Mr. Michaelson's iCloud account is similar but not identical to his iPhone affidavits. First, the iCloud affidavit states that analysts attempted to extract data from the iPhone but it "was encrypted and the data was unable to be extracted." (4/16/26 Warrant, ¶10.) The inability to access a device does not, however, create probable cause to search the iCloud account.

Second, unlike the iPhone affidavits, the iCloud warrant makes one mention of Mr. Michaelson possessing a phone.

> E. MICHAELSON is seen practicing the "ICE out of Minnesota!" chant and holding his cell phone.

(Id., ¶22.) Without facts alleging that Mr. Michaelson somehow used his phone so that evidence of a crime would have been placed in his iCloud account, this observation provides no nexus.

Third, SA Gerber categorically states that "[b]ased on my training, experience, and use of common knowledge, I can affirm that iCloud stores and backs up user data from the user's iPhone. (Id, ¶11.) This blanket statement is incorrect. As set out in the Apple documents SA Gerber sites in the warrant, maintaining an iCloud account is optional for iPhone owners. iPhone owners can easily opt out of backing up and/or syncing their iPhone with iCloud.

In short, the iCloud affidavit supplies no case-specific nexus between Mr. Michaelson's alleged conduct and his iCloud account. Its reliance on an inaccessible iPhone, a single irrelevant observation, and an inaccurate blanket claim about iCloud syncing cannot establish probable cause. Because the affidavit offers generalities rather than particularized facts, it fails to justify searching Mr. Michaelson's iCloud account.

**D. The iPhone Warrants Are Overbroad.**

The Fourth Amendment requires that a warrant's scope be limited by the probable cause on which it is based. *In re Grand Jury Subpoenas*, 926 F.2d 847, 856-

57 (9th Cir. 1991). A warrant may satisfy the particularity requirement by identifying the categories of records to be seized yet still be invalid if it authorizes a search broader than the facts set forth in the supporting affidavit justify. The prohibition against overbroad warrants exists to prevent precisely the kind of exploratory search authorized here.

Paragraph 1 of Attachment B to the iPhone warrants authorizes the seizure of a vast array of digital information, including call logs, text messages, emails, instant messages, photographs, videos, social media content, and other electronic media, covering the period from January 1, 2026, through "PRESENT." But the affidavit establishes no basis to search records from that entire period. According to the affidavit, the alleged operation underlying this prosecution was organized on January 17, 2026. The affidavit does not allege that Eric Michaelson participated in organizing that effort, was aware of it beforehand, or engaged in any conduct related to it before that date. Thus, the affidavit provides no reason to believe evidence of the charged offenses would be found in records created during the more than two weeks preceding January 17.

The warrant is likewise unsupported with respect to records created after the events of January 18. The affidavit contains no allegation that Michaelson made post-incident statements, social media posts, or other communications concerning the alleged offenses. Nor does it identify any continuing activity that would justify an open-ended search extending through "PRESENT," a term that itself is ambiguous because the warrant does not define whether it refers to the date of

issuance, execution, or some later date. Yet the warrant authorizes the seizure of virtually every form of electronic communication and media for weeks beyond the conduct for which probable cause allegedly existed.

The warrant's subject matter is also broader than the affidavit supports. Several provisions authorize the search for information relating not only to the charged conduct but also to the "planning, organizing, scheduling, and commission of ... other organized protest activity." The affidavit does not allege that Michaelson participated in any other protest activity, much less that such activity was unlawful. By authorizing a search for evidence of unrelated protest activity, the warrant extends well beyond the facts presented to the issuing judge and risks sweeping in activity protected by the First Amendment. The absence of any factual nexus between Michaelson and "other organized protest activity" renders this aspect of the warrant particularly problematic.

Paragraph 2 is similarly untethered to the affidavit. It authorizes the seizure of financial records purportedly evidencing interstate travel to or from St. Paul, Minnesota, on or about January 18, 2026. But the affidavit offers no factual basis to believe Michaelson engaged in interstate travel. To the contrary, his alleged conduct occurred in Minnesota, and he was later arrested at his home in Minnesota. Nothing in the affidavit suggests that evidence of interstate travel existed, much less that such evidence would be found on his phone.

Viewed as a whole, Attachment B authorized a search for information spanning unsupported time periods, concerning unsupported categories of

activity, and including unsupported subjects such as interstate travel. Because those portions of the warrant exceeded the probable cause set forth in the affidavit, the warrant authorized the seizure of records and information far beyond what the Fourth Amendment permits and was therefore overbroad.

## II. THE GOOD FAITH EXCEPTION DOES NOT SAVE THE WARRANTS.

The good faith exception established in *United States v. Leon*, 468 U.S. 897 (1984) does not save the defective warrants. "Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Proell*, 485 F.3d 427, 430-31 (8th Cir. 2007). "The good-faith exception does not, however, create a blanket exemption against suppression whenever police officers search pursuant to a warrant." *United States v. Scroggins*, 361 F.3d 1075, 1083 (8th Cir. 2004) (citing *United States v. Leon*, 468 at 922).

Courts will not apply *Leon*'s good-faith exception in four situations: (1) when the affidavit supporting the search warrant contains a knowing or reckless falsity; (2) when the magistrate who issued the search warrant wholly abandoned his or her judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively

unreasonable; or (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid. *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (citing *Leon* 468 U.S. at 914-923.)

The affidavits here fall squarely within category (3) because they were textbook "bare-bones" affidavits. None of the affidavits provided any case-specific nexus facts. There was no observed use of Mr. Michaelson's iPhone in the offense, there were no digital communications attributed to him, there was no evidence he used or had activated his iCloud account, no information or witnesses showing he used the iPhone to plan coordinate or record the protest and no link whatsoever between the device and the alleged offense. Instead, the affidavits rely entirely on boilerplate "training and experience" assertions, which are completely lacking in individualized nexus, were executed with device identification errors, and rely on guilt by association. As the Supreme Court ruled in *United States v. Gates*, suppression is warranted when a warrant is issued under circumstances "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." 462 U.S. 213, 260 (1982).

As a final point, the cost-benefit analysis supports suppression. Under *Davis v. United States*, courts must weigh the deterrent benefits of exclusion against its social costs. 564 U.S. 229, 237–38 (2011). Here, the balance is not close. The factually-barren and boiler plate nature of the warrant

applications, combined with the Government's conduct described in the Joint Motions to Dismiss, demonstrates a need for deterrence. The social cost of excluding data from a phone not used during the Cities Church protest is minimal. The deterrent value of enforcing constitutional limits on digital searches is substantial.

## III. MR. MICHAELSON IS ENTITLED TO THE IMMEDIATE RETURN OF HIS IPHONE BECAUSE THE WARRANTLESS SEIZURE WAS UNLAWFUL.

HSI had warrants to arrest the Michaelsons but not to search their home or seize property. Under Fed. R. Crim. P. 41(g), a person aggrieved by an unlawful seizure may seek return of the property. As set forth below, the warrantless seizure of Mr. Michaelson's iPhone was unlawful and he is entitled to its immediate return.

The Fourth Amendment prohibits unreasonable seizures; a warrantless seizure is per se unreasonable unless a recognized exception applies. *United States v. Mays*, 993 F.3d 607, 614 (8th Cir. 2021). The Government may attempt to rely on exigent circumstances or plain view, but neither exception fits.

### A. Exigent Circumstances.

The exigent-circumstances exception requires: (1) probable cause that the item contains contraband or evidence of a crime, and (2) exigent

circumstances requiring immediate seizure. Mays, 993 F.3d at 614 (citing United States v. Stephen, 984 F.3d 625, 630–31 (8th Cir. 2021)).

The Government cannot satisfy either prong. As established above, agents had no probable cause to believe Mr. Michaelson's iPhone contained evidence. Agents also knew he did not use his phone during the Cities Church protest. And when the phone was seized, both Mr. Michaelson and his wife were handcuffed and fully secured, eliminating any conceivable exigency. *See United States v. Hernandez-Cano*, 808 F.2d 779, 782 (11th Cir. 1987) ("any exigencies inherent in the situation could have been removed by arresting the defendant").

**B. Plain-view Exception.**

The "plain-view" doctrine permits police to seize an object without a warrant if: "(1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself." *United States v. Vinson*, 805 F.3d 1150, 1152 (8th Cir. 2015).

The Government cannot meet the second requirement. The arresting agents had no information that would make the incriminating nature of Mr. Michaelson's iPhone "immediately apparent." During their investigation

Agents had seen any phone-based recording, communication, or coordination by Mr. Michaelson and the agents conducting the early morning arrest would not have been advised or made aware of any incriminating information on his iPhone. Without specific knowledge the iPhone had been used during the Cities Church protest, the device was simply a personal phone in his possession and nothing else.

**CONCLUSION**

For the reasons stated above, Eric Michaelson respectfully requests that the Court grant his motions to suppress and order the Government to immediately return of his iPhone.

**JOHNSON & GREENBERG, PLLP**

Dated: September 2, 2026.

s/Lee R. Johnson______
Lee R. Johnson #189935
5775 Wayzata Boulevard
Suite 700
St. Louis Park, MN 55416
(952) 545-1621

Attorney for Defendant
Eric Ryan Michaelson