UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NEKIMA LEVY ARMSTRONG, et al.,<br><br>Defendants. | Case No. 0:26-cr-00025-LMP-DLM<br><br>**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY** |

Defendants Thomas Matthew Tier, Trahern Jeen Crews, and Ariel Hauptman ("Defendants") respectfully submit this Supplemental Memorandum in support of their Motion to Compel Discovery (ECF No. 569). This supplement addresses a Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") Office of Professional Responsibility memorandum released under FOIA on or about September 3, 2026. The memorandum identifies systemic failures in DHS and ICE "Personnel Vetting and National Security Eligibility Determinations" that "jeopardize the Department's integrity." *See* Marti Decl.¶ 2, Ex. A. These documented, systemic deficiencies demonstrate that discovery regarding DHS agent hiring and training materials is both highly relevant and non-speculative.[1]

[1] The memorandum appears to have been designated as "Unclassified" on September 3, 2026.

~~FOR OFFICIAL USE ONLY (FOUO)~~
2026-IGFO-00299 2026-I0000186892 00001860 UNCLASSIFIED UNCLASSIFIED 9/3/2026 8/7/2026

Under the Federal Rules of Criminal Procedure, the acquisition of material evidence after a court-ordered deadline satisfies the "good cause" standard

## I. INTRODUCTION

The Government opposed discovery concerning DHS hiring and training on the grounds that Defendants had offered only speculation about the qualifications and reliability of agents who participated in this investigation. (ECF No. 589). A recently released DHS internal memorandum removes that premise and directly answers the Government's opposition. Defendants are not asking to "ramble through" DHS hiring practices or place ICE "on trial," as the Government asserts. (ECF No. 589 at 10.) Rather, Defendants seek targeted information necessary to determine whether DHS agents who participated in this investigation were among the recent hires allegedly approved through deficient vetting procedures, and, if so, whether those deficiencies bear on their qualifications, credibility, investigative decisions, handling of evidence, or testimony.

The memorandum found serious deficiencies in personnel-vetting and security-clearance procedures.

> The purpose of this memorandum is to formally report serious misconduct and systemic violations of federal law, executive directives, and DHS policy in the administration of personnel vetting and national security eligibility determinations. These practices jeopardize the Department's integrity, create heightened risks of insider threats and infiltration, and demand immediate independent investigation.

---

required to excuse an untimely filing. When a party diligently pursues evidence that remains unavailable or unknown despite reasonable efforts prior to the cutoff date, the subsequent receipt of that information constitutes an unforeseen and unavoidable circumstance. Because a party cannot move to introduce, compel, or address evidence that it does not yet possess, the post-deadline discovery of crucial facts justifies a late submission under Rule 12(c)(3).

Ex. A at 1. The discovery sought by Defendants is material to prepare a defense under Federal Rule of Criminal Procedure 16(a)(1)(E). At minimum, the newly disclosed materials support Defendants' specific discovery requests that the Government identify participating DHS agents, determine whether they fall within the implicated hiring cohort, review responsive records, and produce material information. If the Government maintains that responsive records are confidential or not discoverable, the Government should submit the records to the Court for an *in camera* review.

## II. STATEMENT OF FACTS

Over a year ago, on August 29, 2025, the ICE Office of Professional Responsibility submitted a memorandum to the DHS Office of Inspector General reporting that evidence demonstrated DHS personnel had circumvented personnel-vetting and security-clearance procedures in violation of governing law and policy.

The memorandum recommended suspension of the challenged practices and a retroactive review of recent hires who DHS improperly vetted or cleared. Most significantly, the memorandum recommended that:

> 1. **Independent Investigation:** Initiate a comprehensive OIG-led or external investigation into personnel vetting failures within DHS and ICE.

Ex. A at 2. The Government has not disclosed whether it conducted an independent investigation or implemented corrective measures in response to the memorandum.

Eight months later, on April 29, 2026, Defendant Tier served Specific Request No. 2 seeking information concerning the hiring, vetting, qualifications, and training of

Government agents involved in this case, including whether participating ICE agents were hired during a period reportedly associated with accelerated hiring, shortened training, and reduced vetting. Defendants Crews and Hauptman subsequently joined that request.

In their Motion to Compel, Defendants explained that the requested records could reveal whether investigative irregularities resulted from inadequate training, provide impeachment evidence concerning testifying agents, and assist the defense in evaluating the reliability of the investigation. (ECF No. 569). The request was directed at agents involved in this matter rather than the DHS workforce as a whole. (*Id.*)

While aware that the ICE Office of Professional Responsibility had already found evidence material to DHS agent reliability and credibility, the Government opposed the request on July 31, 2026, characterizing the requested information as speculative. (ECF No. 589). The Government also argued that disclosure was premature because it had not selected its trial witnesses. (*Id.* at 7). The Government was aware that the memorandum reported almost a year earlier that:

• DHS Human Resources Operations issued final job offers before preliminary vetting by the Personnel Security Division;

• Applicants received favorable preliminary suitability determinations without fingerprints, identity verification, and credit checks;

• Political appointees received national-security eligibility determinations without required background investigations, and identified derogatory information was disregarded in some cases;

- The reported practices created risks to national security, operational integrity, and public trust; and

- A retroactive review of recent hires and appointees allegedly cleared through improper procedures was necessary to identify potential insider threats.

## III. ARGUMENT

### A. The DHS Memorandum Supplies the Concrete Factual Basis the Government Claimed Was Missing.

The Government's opposition repeatedly characterizes Defendants' request as speculative. It argues that Defendants merely wish to "second guess" the investigation and have no basis to believe that DHS hiring records contain material information. That position cannot be reconciled with the newly disclosed memorandum.

The memorandum does not raise an abstract policy concern. Rather, it identifies specific failures in DHS and ICE hiring, suitability, and security-clearance processes, including final job offers issued before preliminary vetting, favorable suitability determinations without basic identity and background checks, and clearance decisions made despite derogatory information. The memorandum also identifies the operational consequence relevant here: law-enforcement operations may be undermined when officers are hired without proper suitability determinations.

Defendants can now identify precisely what they expect the requested records to show:

• whether any DHS agent who participated in this investigation received a final offer, suitability determination, security clearance, law-enforcement authority, or assignment before completion of required vetting;

• whether material derogatory information was identified or disregarded;

• whether waivers or exceptions were granted; and

• whether the agent completed training relevant to the investigative duties performed in this case.

This is materially different from an unsupported request to search personnel files in the hope of uncovering useful information. Here, a specific ICE official identified the precise categories of deficiencies, the affected DHS components, and the implicated hiring process. Defendants' request is thus grounded in a disclosed source with institutional knowledge rather than speculation.

The Government intends to prove its case through evidence collected, reviewed, preserved, and interpreted by agents. Information showing that a participating agent had not completed required identity checks, suitability review, clearance procedures, or relevant training may assist Defendants in evaluating investigative decisions and preparing cross-examination or rebuttal.

Furthermore, that the Government claims "the Defendants are on trial, not ICE" does not foreclose the discovery issue. (ECF No. 589 at 10.) Defendants do not seek to litigate DHS policy in the abstract. They seek records concerning the qualifications and training of the particular agents whose work generated evidence in this prosecution. Those records may inform which investigative actions require further scrutiny, which

witnesses require examination, which evidence warrants independent testing, and which testimony may be subject to impeachment. Thus, even if Defendants lacked grounds to seek this discovery before (they didn't), the newly released memorandum eliminates any doubt: the discovery is material, and the Court should order the Government to produce it.

B. The Government's Witness-Selection Argument Does Not Answer the Rule 16 Request.

In addition to contending that Defendants' request puts ICE "on trial," the Government also argues that Defendants' request was premature because the Government has not yet identified trial witnesses. The Government is wrong and cannot avoid reviewing potentially material records by postponing witness designations.

The requested discovery concerns the integrity of the investigation itself, not merely the credibility of eventual trial witnesses. It seeks information related to agents who participated in the investigation, arrest, evidence collection, report preparation, or prosecution of Defendants. This request goes beyond those whom the Government ultimately designates as trial witnesses. An agent's work may affect the Government's evidence even if that agent never appears at trial. Rule 16 materiality therefore turns upon the relationship between the requested information and the preparation of the defense, including evaluation of the evidence underlying the Government's case. *See, e.g., Kyles v. Whitley*, 514 U.S. 419, 445 (1995) (discussing the materiality of discovery that goes to the "thoroughness and even the good faith of the investigation"). Deferring review until finalizing witness selection risks overlooking favorable information concerning agents

whose work forms part of the Government's proof, regardless of whether they ultimately testify. Thus, the Government's argument that Defendants' discovery request(s) are premature fares no better.

C. The Court Can Order Targeted Production Without Requiring Wholesale Disclosure of Personnel Files.

Defendants do not seek unrestricted access to personnel files. Considering the newly disclosed memorandum, the Court can direct a focused review limited to agents who participated in this case and to records concerning the specific vetting and training issues identified by DHS. The relief requested by Defendants is narrowly tailored, directly tied to the findings of the DHS memorandum, and designed to obtain only those records that may bear on the qualifications, training, suitability, credibility, authority, or investigative conduct of the agents whose actions are intertwined with the Government's case. Thus, the Court has the ability to order such a targeted production, and Defendants request that it does so now.

IV. CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request that the Court supplement the relief requested in ECF No. 569 and enter an Order requiring the Government, within 14 days, to:

1. identify each DHS or ICE agent who participated in the investigation, collection or review of evidence, execution or issuance of process, arrest, or preparation of reports in this case;

2. determine whether each identified agent was hired, credentialed, granted law-enforcement authority, cleared, trained, or assigned through any process identified in the memorandum as deficient;
3. review responsive records for:
    a. final job offers issued before preliminary personnel-security vetting;
    b. suitability determinations issued without fingerprints, identity verification, credit checks, or other required review;
    c. derogatory information bearing on suitability, integrity, truthfulness, security eligibility, or law-enforcement authority;
    d. waivers, exceptions, deviations, or incomplete requirements relating to vetting, clearance, credentialing, or training; and
    e. completion or noncompletion of training relevant to investigative authority, evidence handling, administrative summonses, subpoenas, arrests, report preparation, and testimony;
4. produce responsive information material to preparing the defense or otherwise favorable to any Defendant;
5. file a written certification describing the agencies, databases, and record systems searched and confirming completion of the review; and
6. submit any disputed responsive materials to the Court for in camera review.

Dated: September 9, 2026

DORSEY & WHITNEY LLP

By s/ John Marti

John Marti (#0388393)
marti.john@dorsey.com
Ashley Repp (#0399661)
repp.ashley@dorsey.com
Meredith LaVine (#0506725)
lavine.meredith@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Attorneys for Defendant Thomas Matthew Tier (36)

LAW OFFICES OF ROBERT D. RICHMAN, LLC

By s/ Robert D. Richman

Robert D. Richman, Reg. No. 226142
P.O. Box 16643
St. Louis Park, MN 55416
(651)278-4987
robert@rdrichmanlaw.com

Attorney for Defendant Trahern Jeen Crews (7)

FORSGREN FISHER MCCALMONT DEMAREA TYSVER LLP

By s/ Caitlinrose H. Fisher

Caitlinrose H. Fisher, Reg. No. 0398358
1500 Capella Tower
225 South 6th Street
Minneapolis, MN 55402
(612) 474-3300
cfisher@forsgrenfisher.com

Attorney for Defendant Ariel Hauptman (21)