UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>CHARLES LEE SWENSON<br>ROBYN SWENSON,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 0:26-CR-00025(34)<br>(LMP/DLM)<br><br>**DEFENDANT'S MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT** |

Defendants Charles Lee Swenson and Robyn Swenson, husband and wife, by and through their attorneys respectfully move this Court to strike surplusage from the Superseding Indictment pursuant to Fed. R. Crim. P. 7(d). An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Additional material may be stricken as surplusage "where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter." *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962). Either prong is independently sufficient; a defendant may succeed by demonstrating either irrelevance or inflammatory and prejudicial content. *See id.* Although motions to strike surplusage are not lightly granted, the decision to grant the motion is within the district court's discretion so long as the defendant has met their burden of proof. *United States v. Figueroa*, 900 F.2d 1211, 1218 (8th Cir. 1990).

The Swenson's challenge the following language as it appears in the Superseding Indictment:

1. "A potential prelude to a mass shooting" (p. 12, Overt Act #25);

2. "Young children were left to wonder . . . if their parents were going to die" (p. 3, ¶ 4);

3. "Traumatizing" (p. 12, Overt Act #24);

4. "Attack on Cities Church" (p. 7, Overt Act #2) "takeover-style attack" (p. 3, ¶ 3; p. 6, ¶ 7.b); "takeover attack" (p. 12, Overt Act #24); "takeover-style operation" and "takeover operation" (p. 7, Overt Act #3, Overt Act #4; p. 11, Overt Act #20, Overt Act #23; p. 13, Overt Act #28, Overt Act #29; p. 14, Overt Act #30, Overt Act #31; p. 15, Overt Act #34)

5. "Agitators" (p. 3, Overt Act # 3; p. 10, Overt Act #19; p. 11, Overt Act #23; p. 16, Overt Act #39) "Fellow agitators" (p. 7, Overt Act #6); "other agitators" (p. 9, Overt Act #16);

6. "Menacing" (p. 12, Overt Act #24; p. 13, Overt Act #26, Overt Act #27).

The above phrases and terms must be stricken because they are irrelevant to the offenses charged, prejudicial, and inflammatory. Count 1 requires the government to allege and prove that Swenson's conspired with one or more persons "to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment" of the right to religious freedom "or because of his having so exercised the same." 18 U.S.C. § 241. Count 2 requires the government to allege and prove that the Swensons, "by force or threat of force or by physical obstruction, intentionally injure[d], intimidate[d] or interfere[d] with or attempt[ed] to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious

worship." 18 U.S.C. § 248(a)(2). None of the inflammatory language is relevant to the existence of an agreement, specific intent, physical obstruction, or any consequential fact.

Courts have struck words and phrases from indictments that referred to terrorism and violence, invoked broader societal issues than the case called for, or were unnecessarily loaded. For example, in *United States v. Quinn*, the court struck references to terrorism in a prosecution for violations of a trade embargo, finding that the reasons for the embargo were irrelevant to the charges and the potential for prejudice was "substantial because of the seriousness with which the government and the public treat the present war on terrorism." 401 F. Supp. 2d 80, 98-99 (D.D.C. 2005). Despite that the government indicated it would not focus on that point at trial, the court found that a jury instruction would be insufficient to mitigate "prejudices that are promoted to the entire panel in a government-endorsed document." *Id.* at 99. Similarly, in *United States v. Groos*, the court struck phrases such as "national emergency" and "support for international terrorism." 616 F. Supp. 2d 777, 789 (N.D. Ill. 2008).

A court in this district struck references to "widespread Medicare abuse and fraud" that went beyond the facts and offenses charged. *United States v. Augustine Med., Inc.*, 2004 WL 502183, at *6 (D. Minn. Mar. 11, 2004). Yet another court struck the term "Ponzi scheme," citing its potential for prejudice and confusion due to its then-recent use in media. *United States v. Harder*, 2014 WL 12783296, at *2 (D. Or. Mar. 17, 2014).

Here, the references to a "potential mass shooting" and children's fear that their parents were "going to die" are particularly troubling, and squarely analogous to the stricken language in the above cases. It is beyond inappropriate for the government to

exploit national crises—especially in the wake of the Annunciation shooting just miles away—in a case that has absolutely nothing to do with senseless mass murder, especially of a type that often constitutes domestic terrorism. This language is highly inflammatory and must be removed.

Similarly, each of the challenged phrases and terms are "unnecessarily loaded." *See United States v. Hubbard*, 474 F. Supp. 64, 83 (D.D.C. 1979) (striking the words, "infiltrate," "burglary," "cover up," "covertly," "bogus," "illegally," and "operatives," finding that they were "prejudicial and unnecessarily loaded" and "less colorful and more accurate words would suffice"). "Attack," "menacing," "traumatizing," and "agitators" are editorializations that carry violent connotations and can easily be replaced with statutory language. *See United States v. Vastola*, 670 F. Supp. 1244, 1256 (D.N.J. 1987) (striking the term "loansharking" because it connoted violence and was redundant to the statutory term "racketeering"); *Harder*, 2014 WL 12783296, at *2 (ordering that the term "looted" "be replaced with taken, diverted, used, or some similarly neutral term"). The government has the terms "injure," "oppress," "threaten," "intimidate," "force," and more at its disposal; there is no reason to editorialize with inflammatory language.

Finally, it bears noting that "agitators" is pejorative and politically loaded. *See* Graham Lee Brewer, *What's the history of 'outside agitators'? Here's what to know about the label and campus protests*, AP News, https://apnews.com/article/israel-palestinians-student-protests-outside-agitators (describing the historical use of the word "agitators" as a weapon against political dissent and quoting Dr. Martin Luther King, Jr.'s lament of the term in his letter from Birmingham jail). The defendants are "defendants." They are also,

just as easily, "people" or "individuals," just like every person named or unnamed in the indictment. The government's opinion of the defendants is irrelevant to whether they committed the charged offenses, and inflammatory buzzwords should not be "promoted . . . in a government-endorsed document." *See Quinn*, 401 F. Supp. 2d at 99.

In sum, the challenged phrases and terms are irrelevant to the charged offenses and their potential for prejudice is substantial. In a criminal prosecution, the government's duty is to present the facts and the law so that the jury can determine whether an accused person has committed the alleged offense. It may present its theory of the case, and it may tell a persuasive story in doing so. But it may not use official charging documents to advance rhetoric and stigmatize the accused. As such, the irrelevant, inflammatory language must be stricken from the Superseding Indictment.

This motion is based upon the Indictment, the records and the files in the above-entitled action, the testimony under oath of witnesses, evidence offered and admitted, the attached legal memorandum stating with specificity the legal points of authority in support of this motion, and any and all other materials which may be presented prior to or at the time of the hearing on this motion.

Respectfully submitted,

Dated: August 31, 2026

*/s/Patrick Cotter*

Patrick L. Cotter
Attorney No. 0319120
SIEBEN & COTTER, PLLC
105 Hardman Court, Suite 110
South St. Paul, MN 55075
Phone: (651) 455-1555
Fax: (651) 455-9055
patrick@siebencotterlaw.com

**ATTORNEY FOR DEFENDANT CHARLES SWENSON**

/s/ *Robin Wolpert*

Attorney No. 0310219
SAPIENTIA LAW GROUP, PLLC
120 South Sixth Street, Suite 100
Minneapolis, MN 55402
(612) 756-7100
robinw@sapientialaw.com

**ATTORNEY FOR DEFENDANT ROBYN SWENSON**