UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 0:26-cr-025-LMP-DLM |
| v. | ) | |
| DON RENALDO LEMON [4], | ) | **UNITED STATES' RESPONSE TO DEFENDANT DON LEMON'S MOTION TO SURPRESS AND REQUEST FOR *FRANKS* HEARING** |
| Defendant. | ) | |

## INTRODUCTION

On January 29, 2026, the U.S. District Court for the District of Minnesota issued a federal arrest warrant for Defendant following him being charged in the original indictment in this case. Federal agents located Defendant in Los Angeles, California and arrested him at the Beverly Hills Hilton Hotel on January 30, 2026. Defendant was in possession of his iPhone at the time of his arrest and the arresting agents seized, but did not search, the iPhone as a valid seizure incident to arrest. *See United States v. Mendoza*, 421 F.3d 663, 667-68 (8th Cir. 2005) (search of arrestee's person "and seizure of his cellular phone were valid as a search incident to lawful arrest"); *see also United States v. Bragg*, 44 F.4th 1067, 1071 (8th Cir. 2022) (noting that "seizure is generally less intrusive than a search"). Thereafter, on February

2,2026, HSI agents in Minnesota obtained a search warrant for Defendant's phone. In doing so, the agents preparing the warrant affidavit disclosed that the location of the iPhone was in Los Angeles and had been seized pursuant to Defendant's arrest. The HSI report of investigation ("ROI") documenting Defendant's arrest specifically notes that HSI retained his phone following his arrest and that it was transferred to HSI agents in Minnesota after the issuance of the search warrant on February 2, 2026. The execution of the search warrant took place in Minnesota.

Prior to the search, however, counsel for the government emailed HSI agents to caution them about the limits of the search of Defendant's phone and to advise them of the filter-team procedures that were to be employed as part of any search. *See* Exhibit A. Thereafter, counsel for Defendant contacted and the prosecution team to express concerns about the scope of the search of Defendant's phone. This prompted a back-and-forth negotiating between the government and Lemon's counsel regarding the parameters for the search of Defendant's phone and the ability of Defendant's counsel to deal directly with the filter team reviewing the information extracted from Defendant's phone. The government agreed to further narrow the scope of the search and for Defendant's counsel direct access to the filter team, as well as a prior review and blessing by counsel before that material was shared with the prosecution team. *See* Exhibit B (email exchange over a several weeks negotiating search

parameters). In exchange for narrowing the scope of the search and using a filter team review, Defendant provided the password to his phone, thereby consenting to narrowed search, the results of which were to be reviewed by Defendant's counsel before disclosure to the prosecution team. The filter team completed its review and provided the search materials to Defendant's counsel on August 5, 2026. Defendant's counsel completed its review on August 31, 2026.

Now, Defendant Donald R. Lemon (Defendant or Lemon) asserts four theories in his motion to suppress the search warrant of his iPhone. First, Defendant argues that the evidence from the iPhone should be suppressed because of a territorial defect under Federal Rule of Criminal Procedure 41. Dkt. 554 at 16-23. Second, that a material defect in the affidavit sworn out in support of the search warrant requires a *Franks* hearing. Dkt. 554 at 24-31. Third, that the search should be suppressed because there is no nexus between the charged conduct and the device and the search is overbroad. Dkt. 554 at 32-26. Finally, Defendant argues that the search violates the Privacy Protection Act and the U.S. Department of Justice "Justice Manual." Dkt. 554 t 37-41. Defendant's arguments fail and this court should deny the motion to suppress and deny the request for a *Franks* hearing.

# ARGUMENT

## I. Defendant Consented to the Search of the Phone.

As an initial matter, Defendant's motion is moot because he consented to a narrowly tailored search and filter-team review negotiated by his counsel and thereafter provided to the government the password to his phone. The Supreme Court has held that the scope of consent is measured objectively based on what a typical, reasonable person would interpret as the exchange between the person giving consent and law enforcement. *United States v. Jimeno*, 500 U.S. 248, 251-52 (1991). There, the Court specifically noted that a person can limit the specific scope of the search such that consent can include explicit limitations.

The Eighth Circuit, relying on *Jimeno*, has held that consent to a search of a computer, without any further limitation by the defendant, can reasonably be interpreted as including the attached hard drive of a computer even though it was unplugged from the computer. *See United States v. Beckmann*, 786 F.3d 672, 678-79 (8th Cir. 2025). The Court emphasized that assessing the limits of consent is a totality of the circumstances test, and there, the defendant "knew how to limit his consent" because he had "done so during other situations." *Id.* at 679; *see also United States v. Thurman*, 889 F.3d 356, 366-69 (7th Cir. 2018) (providing limited consent, and then subsequently refusing further consent supported finding of voluntariness). More recently, the Court applied the

totality of the circumstances test and held that the defendant granted consent to search a phone when she: (1) verbally stated "she was 'comfortable' giving [the FBI] possession of [a] phone" and provided the password; and (2) several days later, before any search of the phone, she provided written consent in which she acknowledged she had the right to refuse consent. *United States v. Marr*, 176 F.4th 1065, 1070 (8th Cir. 2026).

To be sure, providing a passcode in and of itself does not constitute consent. But it is a strong indication that a defendant has conceded to some form of search. *See United States v. Guerrero*, 168 F4.th 454, 469-70 (6th Cir. 2026). Here the totality of the circumstances demonstrate that Lemon consented to a limited, tailored search negotiated by his counsel. In exchange for the government limiting the scope of the search, implementing a filter team review, and allowing Defendant's counsel to review and bless the material disclosed to the prosecution team, Lemon agreed to share his password. This amounts to a valid consent, limited only by the parameters negotiated by the parties. Consequently, Defendant's motion to suppress is moot. However, if the Court is not persuaded to dismiss Defendant's motion as moot, the search was nonetheless proper, should not be suppressed, and Defendant is not entitled to a *Franks* hearing for the reasons set forth in the remainder of this response.

## II. The Search Did Not Exceed the Magistrate's Territorial Jurisdiction Because the Search Occurred in Minnesota and even if Venue was Improper *Leon* Good Faith Exception Applies.

### A. Venue for the search was proper.

Defendant asserts that the search of his iPhone is invalid because the warrant exceeded the magistrate judge's territorial jurisdiction under Rule 41(b)(1) and 28 U.S.C. § 636(a). Defendant's argument would have far more traction if the warrant application sought to seize the phone in another district. But at the time the agents sought the warrant to search the iPhone, it had already been lawfully seized and was to be transferred to Minnesota to execute the search pursuant to a search warrant. Hence, Defendant's situation is more analogous to the facts in *United States v. Nkongho*. 107 F.4th 373 (4th Cir. 2024). There HSI agents seized defendant's mobile phones at the Miami International Airport after she returned from a trip to Cuba. HSI then transferred the phones to Maryland, where the investigation was being run, and agents obtained warrants to search the devices. The court held that the seizure of the phones was proper under the border search exception, and that the subsequent search of the devices after they had been transferred to Maryland was valid. *Id.* at 382-83.

Likewise, in this case, the agents had every intention of transferring the iPhone back to Minnesota, the locus of the crime and the investigation. The

agents were transparent in the warrant application that the search would be executed in Minnesota, while still fully disclosing that the iPhone was located in California. Indeed, HSI agents in Los Angeles placed the iPhone in a Faraday bag on February 2nd and overnighted the phone to Minnesota for the search to be executed. Moreover, the warrant allowed agents to execute the warrant up to February 13, 2026. Thus, the warrant was proper because the search—and any accompanying seizure of data from the iPhone search—was *executed* in the jurisdiction in which the magistrate had authority. *Cf. United States v. Strother*, 578 F.2d 397, 401 (D.C. Cir. 1978) (distinguishing cases in which judge issued search warrant in his own jurisdiction "but for execution in another location where he possessed no authority whatsoever").

Similarly, in *Dahdas v. United States*, the Supreme Court held that territorial defects in wiretap orders were not sufficient to trigger the statutory suppression provisions of the wiretap statute. 584 U.S. 440, 449-51 (2018) (interpreting 18 U.S.C. § 2518(10)(a)(ii) (which requires suppression if the order is "insufficient on its face")). Although not directly on point, the search warrant for Defendant's phone is sufficiently analogous, although less egregious than the facts in *Dahdas*. There the offending wiretap order incorrectly authorized interception "outside the territorial jurisdiction of the court." *Id.* at 450. Here, the warrant never authorized a seizure or a search

outside the District of Minnesota. It only authorized a search of Defendant's phone within Minnesota.

### B. Even if the Warrant Was Invalid, the Good-Faith Exception Applies.

Assuming the warrant violated Rule 41(b)(1), suppression still is not warranted. The Defendant correctly cites *United State v. Horton*, which held that a warrant in violation of the Rule 41(b)(1) venue requirement is void *ab initio*. 863 F.3d 1041, 1048 (8th Cir. 2017). Thus, failure to adhere to Rule 41(b)(1) amounts to a constitutional, rather than technical violation. But suppression does not necessarily follow from all unconstitutional searches. The Supreme Court has emphasized that the exclusionary rule rests on two key pillars: deterrence and culpability. *Davis v. United States*, 564 U.S. 229, 240 (2011). And suppression is not warranted when an agent did not act "deliberately, recklessly, or with gross negligence." *Herring v. United States*, 555 U.S. 135, 144 (2009); *see also id.* at 142 (noting that the "exclusionary rule was crafted to curb police rather than judicial misconduct"); *United States v. Leon*, 468 U.S. 897, 916 (1984) (establishing good-faith exception because suppression designed "to deter police misconduct rather than punish the errors of judges and magistrates").

The good-faith exception cannot apply to four situations in which an officer or agent's reliance on a warrant is unreasonable: (1) the affidavit contained knowingly and intentionally false information or was made with

reckless disregard of the truth to mislead the magistrate; (2) the magistrate wholly abandoned her judicial role; (3) the affidavit supporting the warrant is so lacking in probable cause such that reliance is entirely unreasonable; and (4) the warrant is so deficient on its face that no reasonable agent or officer could presume the warrant to be valid. *See United States v. Dickerman*, 954 F.3d 1060, 1065 (8th Cir. 2020). Here, all four situations are inapplicable. The agent's affidavit fully disclosed the current location of the iPhone, but sought authorization for a search in Minnesota, which is what transpired. Defendant makes no accusation that the magistrate abandoned her judicial role. And notwithstanding his assertions about the inaccurate allegations regarding "chanting" there was more than sufficient probable cause for a grand jury to indict Defendant and thus probable cause to search his phone for evidence supporting the conspiracy and substantive FACE Act charges.

Here the HSI agent was fully transparent with the magistrate, as Defendant acknowledges (Dkt. 554 at 17). The affidavit stated that the phone was in California. Informed of this fact, the magistrate still elected to approve the warrant. If there was a "jurisdictional error [it] was made by the magistrate judge, not the [investigating agents]." *United States v. Carlson*, 2017 WL 3382309 at *7 (D. Minn. Aug. 7, 2017) (holding the good-faith exception applied).

By contrast, in *In re Warrant to Search a Target Computer at Premises Unknown*, the magistrate denied the warrant application because the location of target computer was unknown, thus the warrant application could not "satisfy the territorial limits of Rule 41(b)(1)." 958 F. Supp.2d 753, 757 (S.D. Tex. 2013). Unlike that case, here, HSI knew the location of the device to be searched and fully disclosed that information in the warrant application, which the magistrate approved. There is no reason that any HSI agents involved in the search of the iPhone, which took place in Minnesota, would have surmised that the search was in any way illegal. After all, a Minnesota magistrate signed the search warrant fully informed that the iPhone was in California at the time the agents applied for the search warrant.

Defendant correctly noted that the warrant in *Horton* involved a unique search involving a Network Investigative Technique ("NIT"). And like the Eighth Circuit in *Horton*, multiple Circuits have consistently held that the *Leon* good-faith exception applied to the NIT warrants because any mistake was that of the magistrate judge and not the executing agents who had no reason to suppose the warrants were void *ab initio*. *See United States v. Taylor*, 935 F.3d 1279, 1290 (11th Cir. 2019) (noting every Circuit Court to consider the issue, including the Eighth Circuit, concluded that the good-faith exception applied).

Thus, none of Defendant's arguments provide justification for this Court to invalidate the warrant or conduct a *Franks* hearing. The warrant was not fatally deficient such that no reasonable agent would presume to rely upon it. Quite the opposite.

## III. Defendant has not met the burden of proving the statement was material to the affidavit such that it should be struck or that he is entitled to a *Franks* hearing.

Defendant next contends that the warrant is invalid and that he is entitled to a *Franks* hearing because the application erroneously stated that he was chanting with the other defendants who disrupted the church service and obstructed the parishioners. Dkt. 554 at 24-31.

An affidavit in support of a search warrant is presumptively valid. *Franks v. Delaware*, 438 U.S. 154 171 (1978). A defendant seeking a *Franks* hearing must make a substantial preliminary showing that: (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement; and (2) that the statement was necessary to the probable-cause finding. *Id.* at 155-156. The allegations must be specific and supported by affidavits or other reliable evidence; negligence and innocent mistake are insufficient. *United States v. Brackett*, 846 F.3d 987, 993 (8th Cir. 2017). Defendant has not met his burden in establishing any facts that the statement was made with intentional or reckless disregard for the truth, or that the

statement was necessary or material for finding probable cause. Thus, Lemon is not entitled to a *Franks* hearing.

***First,*** while Lemon fails independently that any facts entitle him to a *Franks* hearing, the materiality of any statements made provide an independent basis for denial, meaning that, if the court were to strike paragraph 54 completely, it would have no material impact on the correctness of the affidavit in describing Lemon's actions. Specifically, Lemon:

- attended and livestreamed a briefing for a "clandestine" operation intended to "disrupt business as usual"; Aff. ¶ 19[1]
- assured organizers and viewers that he would not reveal the target and moved the camera while operational information was discussed; Aff. ¶ 19
- traveled with Richardson to the undisclosed destination and entered the sanctuary shortly before the coordinated disruption began; Aff. ¶ 30
- activated recording equipment as the disruption began and stated that disruption was the point; Aff. ¶¶ 36, 38
- placed his body in front of a departing congregant on multiple occasions; Aff. ¶¶ 47, 48

[1] The affidavit is referenced in Defendant's motion (Dkt. 554) as Exhibit A. Defendant filed the affidavit under seal as Docket No. 555.

- remained after the pastor asked him to leave; (Aff. ¶ 49) and
- stood with others whom the affidavit described as restricting the pastor's movement. Aff. ¶¶ 49, 50.

Substantial probable cause exists in these paragraphs alone, without paragraph 54. Thus, Lemon cannot prove that this paragraph is material to his involvement and is therefore not entitled to a *Franks* hearing. Those allegations track the conduct prohibited by 18 U.S.C. § 248(a)(2), which reaches intentional interference through physical obstruction, and they support a fair probability that Defendant knowingly moved beyond observation and assisted the alleged agreement charged under 18 U.S.C. § 241. Probable cause does not require proof beyond a reasonable doubt or elimination of Defendant's innocent explanation. The full context of Defendant's cases confirms the result. *Reinholz* found a reckless misrepresentation but removed the affected paragraph and upheld the search because the remaining affidavit established probable cause. 245 F.3d at 774-77. *United States v. Reed* involved omitted facts that potentially destroyed the only link between the defendant and the evidence sought. 2018 WL 6427897, at *2-4 (D. Minn. Dec. 7, 2018). *United States v. Jacobs* involved an omitted fact that a trained dog had not alerted, after which the corrected affidavit lacked probable cause; officers also learned before execution that a second dog did not react. 986 F.2d 1231, 1233-35 (8th Cir. 1993). Here, by contrast, the challenged portion of the sentence referencing

"chanting" is unnecessary to the remaining allegations of physical obstruction and coordinated conduct.

The earlier refusal to approve a criminal complaint does not change that result. It was not a final adjudication binding later warrant proceedings, and the later affidavit included additional video descriptions, images, witness accounts, and individualized allegations of physical obstruction. *Franks* materiality is determined from the corrected warrant affidavit actually before the issuing judge, not from a different judge's assessment of an earlier record. Because Defendant has not shown a material *Franks* violation, he is not entitled to use discovery to search for one. Rule 16(a)(2) protects internal government reports, memoranda, and work product, and *Franks* requires the threshold showing before a hearing, not after discovery into prosecutorial deliberations.

***Second,*** a defendant seeking a *Franks* hearing must make a substantial preliminary showing that the affiant knowingly or recklessly included a false statement and that, after the statement is removed, the affidavit no longer establishes probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56, 171-72 (1978); *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001). Negligence, ambiguity, and innocent mistake do not suffice. *Franks*, 438 U.S. at 171. Paragraph 54 states that video showed Armstrong, Allen, Lemon, Richardson, Kelly, Fort, Lundy, and Crews "chanting with agitators and

obstructing parishioners' path of travel." Read alone, the sentence can attribute both verbs to every person. Read with the surrounding paragraphs, it is a compressed group summary. Paragraph 42 identifies Armstrong, Allen, and Kelly as yelling particular words. Paragraph 43 identifies Richardson as chanting and separately quotes Defendant saying he was "chronicling and reporting." Paragraph 55 identifies Lundy and Crews as chanting. The individualized allegations against Defendant concern alleged obstruction, not chanting. And excising the offending "chanting" reference from Paragraph 54 would not undermine the warrant because the remainder of the sentence is accurate and supports probable cause. *See United States v. Clapp*, 46 F.3d 795, 799 (8th Cir. 1995).

***Third,*** the affidavit also included facts supporting Defendant's journalistic explanation. It recounted his statement that he was reporting rather than participating, his uncertainty about entering the church, and his refusal to conceal a camera in a backpack. Those disclosures are inconsistent with an attempt to erase the distinction between reporting and participation. Defendant offers no affidavit, witness statement, draft, communication, or other evidence showing that Agent Gerber intended paragraph 54 to assert that Defendant personally chanted, knew that assertion was false, or seriously doubted it. The difference between the earlier complaint affidavit and the later warrant affidavit establishes chronology, not culpable intent. Nor do public

statements by political officials establish what the affiant knew when he signed the warrant. Materiality independently defeats the motion. The Court may assume that Defendant did not chant and delete paragraph 54 entirely.

## IV. The Affidavit established a sufficient nexus to Defendant's iPhone.

Defendant Lemon's arguments fail regarding the "scope" or "nexus" of the search warrant obtained for his phone. A warrant requires a fair probability that evidence will be found in the place searched, assessed through practical, commonsense inferences. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). This affidavit met that standard. The alleged criminal conspiracy operation was saturated with electronic activity. It was advertised on Instagram; organizers electronically distributed a secret address; Defendant livestreamed the staging meeting; he assured organizers that he would not reveal the target; Lemon absented himself and his camera while other defendants discussed operational information; Defendant traveled with Richardson to the undisclosed location while discussing "inside information"; and he activated electronic recording equipment as the disruption began. Aff. ¶¶ 16-24, 30-36, 68. Twelve days later, agents seized an active personal iPhone from Defendant, who attempted to use it during his arrest. *Id.* ¶¶ 10-13. From those facts, the issuing judge could reasonably infer that the phone contained communications, contacts, Internet

activity, travel or location information, photographs, videos, or attribution evidence concerning the alleged offenses.

Furthermore, Defendant's authorities do not support his conclusion. The cases cited do not impose an exact-device requirement. *United States v. Davis*, 126 F.4th 610, 616-17 (8th Cir. 2021), upheld a phone search where the defendant possessed the device one month after the offense, explaining that probable cause permits a commonsense continuity inference rather than proof that it was the identical handset used earlier. *United States v. James*, 3 F.4th 1102, 1105-06 (8th Cir. 2021), likewise approved reasonable inferences concerning phone evidence despite the absence of direct observation of the offender using a phone. *United States v. Armstrong* is materially different. There, possession of two phones and a prior firearm conviction did not connect the phones to a gun discarded during flight. The warrants also failed to limit the search to evidence of a particular offense, and the supporting affidavits were not incorporated. 2022 WL 16960633, at *2-5 (D. Minn. Nov. 16, 2022). Here, the alleged offenses themselves involved electronic promotion, secrecy, coordination, travel, livestreaming, and recording, and the warrant identified §§ 241 and 248(a)(2). At minimum, the detailed affidavit was not so lacking in nexus that reliance on the issuing judge's determination was objectively unreasonable. *Leon*, 468 U.S. at 922-23.

## V. The affidavit and search warrant are valid as any potential defect is severable.

Assuming that there is fault with the affidavit and search warrant, the defect is severable and the rest of the warrant is valid on its face.

The warrant identified one photographed iPhone, specified the subject offenses, listed categories of responsive data, and, as Defendant describes the operative attachment, imposed a limited time period: January 4-30, 2026. The date range was not unreasonable merely because the church disruption lasted minutes. The investigation concerned an alleged conspiracy. Relevant evidence could precede January 18 through planning, travel, research, and communications, and could follow it through preservation, deletion, discussion, or identification of participants. The phrase "other organized protest activity" requires a narrower analysis. Lawful protest and reporting are protected; the phrase cannot authorize a free-standing search of Defendant's unrelated journalism, sources, or political associations. Read as a whole, however, every category remained limited to evidence of the specified §§ 241 and 248(a)(2) offenses. See *Andresen v. Maryland*, 427 U.S. 463, 480-82 (1976) (reading broad language through the warrant's offense-specific limitation). Thus, the phrase properly reaches only related activity bearing on Operation Pullup's methods, participants, agreement, knowledge, or intent.

If the Court concludes that the phrase cannot support that limiting construction, it should sever it and exclude only material obtained solely under that language. The remaining authority to obtain offense-related communications, travel information, photographs, videos, contacts, and Internet activity is textually and functionally independent. The Eighth Circuit recognizes that when a warrant is overbroad only in part, evidence seized under its valid portions need not be suppressed. *United States v. Timley*, 443 F.3d 615, 622 (8th Cir. 2006). Defendant cites decisions that do not require destruction of that valid core. *United States v. Jackson* involved a phone warrant that identified no particular offense and was not cured by an incorporated affidavit. 2019 WL 13127190, at *10 n.5 (D. Minn. Jan. 4, 2019). *Pennington* states the purpose of particularity but does not establish that every broad electronic-data category is invalid when tied to specified offenses. See *United States v. Pennington*, 287 F.3d 739, 744-45 (8th Cir. 2002). The government should identify the evidence it intends to use and the valid warrant category authorizing each item. Unrelated protest coverage should remain segregated and should not be used. But wholesale suppression is unwarranted. At minimum, a warrant identifying a particular device, specified offenses, a defined period, and categories of responsive data was not so facially deficient that reliance on it was objectively unreasonable.

## VI. PPA and the Justice Manual and not grounds for suppression.

***The Privacy Protection Act***. Defendant's argument on the Privacy Protection Act (PPA) and the DOJ Justice Manual also fail and the court should not grant relief on these merits.

Defendant repeatedly cites *In re Search of Real Property and Premises of Hannah Natanson ("Natanson")*, 2026 WL 510727 (E.D. Va., Feb. 24, 2026) yet fails to note several things: (1) the subject of that search warrant was a journalist that engaged in only journalistic activities and; (2) unlike here, Natanson was not a suspect in a criminal act. The PPA does not immunize a journalist's entire device. This is particularly so when the government and Defendant's counsel have negotiated narrow parameters to the search along with a filter-team review.

Critically, the PPA includes a "suspect exception" which is applicable here. Even in the order cited by Judge Docherty, upon which Defendant's motion relies, acknowledges that this exception exists. *See* Dkt. 802-3 (Judge Docherty Order, March 6, 2026). There, the court acknowledged that the PPA's provisions do not apply when there is "probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." Dkt. 802-3 at 2, citing 42 U.S.C. 2000aa(a)(1), (b)(1). Here, Lemon was an indicted co-conspirator at the time that the agents

sought a search warrant for his phone. Therefore, the use of the *Natanson* case does not withstand scrutiny when applied to Defendant.

Defendant Fort proffered a similar argument that the PPA applied to her because she, like Lemon, asserts that she was at Cities Church in her capacity as a journalist. *See* Dkt. 641. The government disputes that characterization and explained why the suspect exception was applicable to Fort, thereby denying her any protection under the PPA. Dkt. 802 at 19-24. Likewise, the government's position is that Lemon was not acting as a journalist—he joined and participated in a conspiracy to violate the FACE Act. This includes his involvement with the pre-operation "pullup" briefing, (Aff. ¶¶ 17, 18), the protection of the operation, (Aff. ¶ 24), and the infiltration and subsequent hostile takeover of Cities Church. Defendant's actions during the takeover of Cities church included:

- Livestreaming agitators (Aff. ¶¶ 14, 16) and attempting to conceal his identity by wearing a hooded jacket, (Aff. ¶ 42),
- confirming on camera that the reason behind the takeover was because one of the pastors is a member of ICE, (Aff. ¶ 42),
- putting a camera in parishioners' faces to interview them, (Aff. ¶ 47), and repeatedly noting that they seemed frightened and confused, (Aff. ¶. 43),

- using his body to block parishioners from leaving multiple times, (Aff. ¶ 47), and,
- "interviewing" the pastor of the church at such close distance that Defendant asked the pastor to avoid touching him, (Aff. ¶¶ 48, 49).

Defendant's actions during the "pullup" meeting included not reporting on the whole of the event. He purposefully refrained from reporting on all aspects of the event. He fretted that his appearance at the church might undermine the operation and debated with his compatriots Beute and Richardson whether they should go into the church, before going inside. This is not the conduct of someone acting strictly as a journalist.[2] When inside the church, Defendant accosted parishioners and the pastor of the church by

[2] The Reporters Committee on Freedom of the Press has published a useful guide for journalists entitled "How to Protect Yourself When Covering a Protest." Dkt. 802-6. The guide is available on the Committee's website and was also linked to by the Minnesota Society of Professional Journalists, which published a "Resource Guide for Journalists Covering Metro Surge." The guidance cautions journalists covering protests to: (1) clearly identify as a journalist; (2) wear press credentials prominently; (3) avoid looking like one of the protestors; and (4) be aware of the situation to avoid breaking the law. *See* Reporters Committee tips for covering protests, Reporters Committee for Freedom of the Press (Updated May 7, 2024), available at www.rcfp.org/tips-for-covering-protests/; Resources for Minnesota Journalists covering Operation Metro Surge, Minnesota Society of Professional Journalists (Jan. 26, 2026), available at www.mnsjp.org/2026/01/26/resources-for-minnesota-journalists-covering-metro-surge/. Lemon failed to heed this guidance.

preventing paths of travel, despite seeing obvious fear and confusion on their faces.[3]

Lemon's conduct is analogous to the plaintiff in *Sennett v. United States*, 778 F.Supp.2d 655 (E.D. Va. 2011), *aff'd*, 667 F.3d 531 (4th Cir. 2012). There, the purported journalist, Sennett, received a tip that there would be a demonstration at a hotel hosting delegates to an International Monetary Fund meeting. The reporter arrived at the location early in the morning along with a crowd of activists who then proceeded to vandalize the hotel. 667 F.3d at 533. Security cameras recorded Sennett videoing the vandalism and mixing with other protestors, but she did not enter the lobby of the hotel where the vandalism took place. *Id.* Police eventually identified Sennett and obtained a search warrant for her residence. Police were aware that Sennett was a photojournalist when they executed the search warrant. Unlike Lemon, however, the government never charged Sennett with a crime. *Id.* at 534. Sennett sued the United States for violating the PPA, but the district court granted summary judgment because the United States asserted Sennett fell

[3] Defendant also asserts that the PPA is applicable, notwithstanding the suspect exception, because there is material on the iPhone concerning journalistic endeavors unrelated to the conduct charged in the Superseding Indictment. Dkt. 554 at 40. This is a moot argument. As noted above, Defendant's counsel and the government negotiated limited parameters for the search, implemented a filter-team review, and allowed Defendant's counsel to review and potentially object to the results of the review before disclosure to the prosecution team.

within the suspect exception and that there was sufficient probable cause to believe that Sennett was involved in criminal activity. *Id.* at 535 (citing 778 F.Supp.2d at 666). The Fourth Circuit affirmed on appeal, thus holding that the PPA did not apply to Sennett because her conduct fell within the suspect exception. *Id.*

Here, Lemon's conduct falls squarely within the suspect exception, not least because, unlike Sennett, a grand jury found probable cause to indict Lemon. *See also S.H.A.R.K. v. Metro Parks Serving Summit Cnty.* 499 F.3d 553, 567 (6th Cir. 2007) (PPA protections not available because there was probable cause a crime had been committed).

***The Justice Manual.*** Defendant also invokes the Department of Justice Manual as a theory of legal recourse for relief. It is not. First, the Justice Manual is an internal governing document that has no bearing on a court of law. Failure to follow procedure is not persuasive, let alone a winning, legal argument. This sort of argument is often found in, and rejected, in other circumstances, such as 42 U.S.C. 1983 actions, wherein the failure to follow an internal process or procedure of a law enforcement agency, while relevant, cannot be a stand in for the constitutional principle it theoretically mimics. *See generally Christiansen v. Eral*, 52 F.4th 377, 379 (8th Cir. 2022) ("the constitution doesn't rise and fall with the whims of each [] department's policies"); *see also United States v. Sayler*, 271 F.R.D. 148, 129 (E.D. Cal. 2010)

(emphasizing that "courts do not enforce internal executive branch guidelines" citing *United States v. Caceres*, 440 U.S. 741, 755 (1979)). Because the invocation of the Justice Manual and any alleged policy infraction—which the United States denies—cannot amount to a constitutional violation, this argument has no merit.

Defendant's reliance on 28 C.F.R. § 50.10 is also misplaced. The regulation expressly provides that it creates no substantive or procedural right enforceable at law or in equity. Any required Department approval should be confirmed before filing, but an alleged internal-policy violation does not independently authorize suppression. Return of the physical phone is separately governed by Rule 41(g) and turns on whether the government continues to possess a legitimate technical or evidentiary reason to retain it. Even if the physical device can now be returned, that would not require suppression or destruction of a properly preserved forensic copy containing responsive evidence.

## CONCLUSION

This Court should deny Lemon's motion to suppress and additionally deny his request for a *Franks* hearing.

DATED: September 18, 2026.

DANIEL N. ROSEN
United States Attorney

ABRAHAM KAPLAN
Assistant United States Attorney

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE HEDLEY
Acting Senior Litigation Counsel

FLAVIO ABREU
JOSHUA R. ZUCKERMAN
KELSEY E. MCGEE
Attorneys

JOHN ARBOLEDA
Acting Trial Attorney

*/s/ Neville Hedley*
NEVILLE S. HEDLEY
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 297-3424
E-Mail: Neville.Hedley@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA