**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NEKIMA VALDEZ LEVY ARMSTRONG, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 0:26-cr-025-LMP-DLM<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO SUPPRESS EVIDENCE OBTAINED BY SECTION 1509 SUMMONSES (Dkt. 648, 697, 711 & 719) AND MOTION TO COMPEL DISCLOSURE OF INFORMATION RELATED TO ISSUANCE OF SECTION 1509 SUMMONSES (Dkt. 653)** |

The United States of America submits this brief in response to defendants Richardson's, Persigehl's, Lemon's and Kelly's motions to suppress evidence acquired by administrative summonses issued pursuant to 19 U.S.C. § 1509. (Dkt. 648, 697, 711 and 719). Defendant Richardson filed an accompanying motion to disclose internal agency information regarding the use of § 1509 summonses (Dkt. 653), and this response addresses that motion as well.[1]

[1] Defendant Bollman joined Dkt. 648, 697, 711, and 719. *See* Dkt. 735. Defendant Hansa joined Dkt. 697 and 710, and Dkt. 653. *See* Dkt. 785. Defendant Armstrong filed an untimely motion to suppress evidence (Dkt. 775) seeking to join the joint motion to dismiss the indictment due to outrageous government conduct for unlawful use of § 1509 summonses (Dkt. 695). In the alternative, Armstrong sought to suppress any evidence obtained through use

## INTRODUCTION

Defendants move to suppress evidence obtained from third parties obtained via the use of administrative summonses under the authority of 19 U.S.C. § 1509, which grants authority to the legacy Customs Service—now part of the Department of Homeland Security—to issue administrative summonses "[i]n any investigation … for insuring compliance with the laws of the laws of the United States administered by the United States Customs Service." 19 U.S.C. § 1509(a). The Customs Service is now part of the Department of Homeland Security ("DHS"), which Congress created in the aftermath of the terrorist attacks on September 11, 2001. The Homeland Security Act, 6 U.S.C. § 203, transferred all "functions, personnel, assets and liabilities" of the United States Customs Service to DHS. This includes the authority to issue § 1509 summonses. The motivation for the defendants' "takeover" style attack on Cities Church was to target the acting Regional Director of Immigration and Customs Enforcement ("ICE"), an agency within DHS. The legacy Customs Service had traditional responsibility to investigate assaults or attempted assaults on federal officers working for the Customs Service. Homeland Security Investigations ("HSI") now fills the role of being the primary

---

of a § 1509 summons. The government response herein also applied to Armstrong's motion to suppress.

investigative arm of DHS. Consequently, the use of § 1509 summonses as part of an investigation into the attempted assault on an ICE officer and his family at a church where he serves as a volunteer minister is non-controversial. This is particularly so when the evidence obtained from issuance of the § 1509 summonses is from third parties and in which the defendants do not have a Fourth Amendment expectation of privacy or possession interest. Accordingly, defendants' motions should be denied.

## STATEMENT OF FACTS

### I. The Offense Conduct

On Sunday, January 18, 2026, a large mob of agitators descended on Cities Church in St. Paul, Minnesota. The agitators conspired to disrupt a liturgical worship service in "a coordinated takeover-style attack." (Dkt. 144 at 3.) Because of this attack, the pastor and congregants were forced to end their worship service. (*Id.*) Several congregants fled the Church, fearing a mass shooting. (*Id.* at 12.) In the rush to escape, one congregant suffered an injury to an elbow when she slipped on an icy, unused sidewalk. (Dkt. 23-1 at ¶ 43.)

### II. General Procedural History

On or about January 20, 2026, the Government obtained a complaint and arrest warrant against defendants Armstrong, Allen, and Kelly for a violation of 18 U.S.C. § 241 (Conspiracy Against Rights). (Dkt. 23-1.) On January 29,

2026, a federal grand jury issued an indictment against the first nine defendants.

On February 26, 2026, the grand jury issued a superseding indictment charging an additional 30 defendants. (Dkt. 144.) All of the defendants are charged with the same two charges: (1) Conspiracy Against Federally Secured Rights, in violation of 18 U.S.C. § 241; and (2) Interference with the Free Exercise of Religion at a Place of Religious Worship, in violation of 18 U.S.C. § 248(a)(2).

## III. The Government's issuance of § 1509 Summonses

On or about January 20, 2026, the Government (via DHS-ICE agents who were working with Government counsel) issued a § 1509 summonses to: Verizon seeking phone subscriber and call record information for phone numbers associated with Kelly, Lemon and Richardson; and to T-Mobile US, Inc. to obtain subscriber and call record information for a phone number associated with Armstrong. On January 25 and again on February 24, HSI agents issued § 1509 summonses to Verizon for phone numbers associated with Kelly, again seeking subscriber and call record information. HSI sent a similar § 1509 summons to Verizon on February 7 for a phone number associated with Hansa. On February 9, HSI issued a § 1509 summons to AT&T seeking phone subscriber and call log information for a phone number associated with Bollman. And on February 17, HSI issued a § 1509 summons to T-Mobile

seeking phone subscriber and call log information for a phone number associated with Persigehl.[2]

For purposes of this case, there was nothing unusual about the summonses. It is a tool in the HSI investigatory toolbox that is regularly used to obtain third-party information in which defendants do not have a Fourth Amendment privacy interest. Moreover, contrary to the defendants' assertions, the summonses were not used to obtain location data.

## ARGUMENT

### I. The Government's Use of § 1509 Summonses Was Valid

Courts have traditionally viewed subscriber data and call or toll logs as third-party data. *See, e.g., United States v. Brown*, 2025 WL 3057623, 2025 U.S. Dist. LEXIS 215710 (D. Minn. Nov. 3, 2025) (affirming use of administrative subpoena for phone subscriber and log data under the third-party disclosure doctrine). Moreover, the Supreme Court has held that a court's supervisory powers do not authorize suppression of "otherwise admissible

[2] HSI also issued a § 1509 summons to the Minnesota Department of Employment and Economic Development ("MDEED") related to Persigehl and 33 other defendants' employment data. HSI regularly issues summonses to MDEED to confirm addresses of individuals, in this instance, for preparation of potential arrest warrants. The data HSI requested from MDEED also falls within the scope of the third-party doctrine in which defendants do not have a Fourth Amendment privacy interest. *See, e.g., United States v. Merrell*, 88 F.Supp.3d 1017 (D. Minn. 2015).

evidence on the ground that it was seized unlawfully from a third party not before the court." *United States v. Payner*, 447 U.S. 727, 735 (1980); *accord United States v. Finch*, 2022 WL 1110994, 2022 U.S. Dist. LEXIS 52640 at *33 (D. Minn. Feb. 9, 2022). Consequently, the Defendants' motion to suppress has no merit proper because the data is third-party material in which none of the Defendants have a Fourth Amendment privacy interest. Regardless, the Government's use of § 1509 summonses was an entirely proper use of an investigatory tool that courts have regularly approved.

Courts have repeatedly held that the information typically sought via a § 1509 summons is subject to the third-party doctrine and that defendants do not have reasonable expectation of privacy for such data. *See United States v. Wellbeloved-Stone*, 777 Fed. Appx. 605, 607 (4th Cir. 2019) (internet and phone subscriber information); *Merrell*, 88 F.Supp.3d at 1032 (employment records from Minnesota Department of Economic and Employment Development); *United States v. Meyrand*, 2025 WL 1282638 at *1-2, 2025 U.S. Dist. LEXIS 84060 (E.D. Mo., May 2, 2025) (internet subscriber information) (citing *United States v. Wheelock*, 772 F.3d 825, 828 (8th Cir. 2014)). Even if the use of § 1509 summonses was improper—which it was not—there is generally no exclusionary rule applicable to statutory violations. *See Wellbeloved-Stone*, 777 Fed. Appx. at 607; *United States v. Smajlovic*, 2026 WL 785026 at *4, 2026 U.S. Dist. LEXIS 59147 (E.D. Mo. Mar. 20, 2026).

Congress has vested administrative summons or subpoena authority with a variety of federal agencies, including those with a law enforcement function. *See, e.g.,* 18 U.S.C. § 3486; 21 U.S.C. § 876. The use of § 1509 summonses is a similar tool used by DHS to investigate crimes within its expanded portfolio of responsibilities. Section 1509 summonses have been employed to obtain information from third parties, much like the use of other administrative subpoenas or summonses. And courts have regularly denied motions to suppress challenging the use of administrative subpoenas or summonses because criminal defendants generally do not have standing to challenge issuance of administrative subpoena directed to a third party. *See United States v. Plunk*, 153 F.3d 1011, 1020 (9th Cir. 1998), *amended and reh'g denied*, 161 F.3d 1195 (1998), *cert. denied* 526 U.S. 1060 (1999) (denying motion to suppress related to use of DEA summons issued under 21 U.S.C. 876); *United States v. Moffett*, 84 F.3d 1291, 1293 (10th Cir. 1886) (same); *United States v. Hassanshahi*, 145 F.Supp.3d 75, 86 (D.D.C. 2015) (same).

The *Hassanshahi* case is instructive. There the defendant sought to suppress evidence initially derived from HSI's use of data obtained using administrative subpoenas issued pursuant to 21 U.S.C. § 876, a statute designed to aid in the investigation of narcotics violations. Like the defendants in this case, the defendant argued that Section 876 authority had been systemically and intentionally abused, but the district court nonetheless,

"decline[d] to create a suppression remedy for evidence collected in violation of Section 876." *Id.* at 85.[3] The court emphasized that the Supreme Court has expressed a reluctance to expand the scope of the exclusionary rule. *Id.* at 86 (citing *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350 (2006)). This was particularly true in instances, like here, where the evidence was obtained from a third party and in which the defendant had no reasonable expectation of privacy. *Id.*

Defendants' motions fixate on the fact that the § 1509 summons authority originally and traditionally was for the former Customs Service to investigate adherence to importation and international trade statutes. But this glosses over Congress's creation of DHS, which vested DHS with broad investigative responsibilities. Under the legal axiom *lex posterior derogat legi priori*, the subsequent legislation overrides any prior legislation. *See Patterson v. Indep. School Dist.*, 742 F.2d 465, 468 (8th Cir. 1984) (abrogated by later statute). The Homeland Security Act dissolved the United States Customs Service and transferred all its responsibilities to DHS. DHS also inherited the responsibilities of INS and Secret Service, thereby housing a broad portfolio of

[3] *Hassanshahi* involved a motion to suppress based on the alleged abuse of administrative subpoenas issued under 21 U.S.C. 876, which is a tool for investigating narcotics violations. But the charges in the case were for violations of foreign sanctions, completely unrelated to controlled substances.

criminal and national security investigative responsibilities within DHS. And while Congress expressly assigned specific investigative and enforcement functions to DHS (*e.g.,* 6 U.S.C. § 211), it did not specifically prohibit DHS from investigating certain crimes.

As explained in *United States v. Smajlovic*, a recent district court case from the Eastern District of Missouri, the creation of the Department of Homeland Security abolished the Customs Service and transferred all its responsibilities to DHS. 2026 WL 785026 at *3, 2026 U.S. Dist. LEXIS 59147 (E.D. Mo. Mar. 20, 2026) (citing Homeland Security Act of 2002, 6 U.S.C. § 203). *Smajlovic* involved an investigation into cyber-crime and child pornography. A host of other courts have similarly found that DHS has broad investigative powers and approved the use of § 1509 summonses for non-traditional customs investigations. *See, e.g., United States v. Merrell*, 88 F.Supp.3d 1017 (D. Minn. 2015) (approving use of § 1509 summonses in child pornography investigation); *United States v. Cray*, 673 F.Supp.2d 1368 (S.D. Ga. 2009) (same).

Historically, the legacy DHS agencies like the Customs Service or the Immigration & Naturalization Service ("INS") had broad investigative authority that have now been assumed by DHS. Indeed, 8 U.S.C. § 1103(a) specifically states that "[t]he Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter [Immigration and

Naturalization] and all other laws relating to the immigration and naturalization of aliens." Since its creation in 2002, DHS has assumed a broad investigative portfolio beyond legacy customs and immigration enforcement.

Although some of the related statutory provisions have not been updated to reflect the merger of Customs into DHS, 19 U.S.C. § 1589a states that Customs officers may "execute and serve any order, warrant, subpoena, summons, or other process issued under the authority of the United States" and make lawful arrests without a warrant "for **any offense** against the United States … or for a felony, **cognizable under the laws of the United States**." *See, e.g., United States v. Jackson*, 2023 WL 7320614 at *11-12, 2023 U.S. Dist. LEXIS 199739 (D. Vt., Nov. 7, 2023) (noting traditionally broad investigative power of Customs Service now merged into DHS) (emphases added)*; see also Hallock v. United States*, 253 F. Supp.2d 361, 365 (N.D.N.Y. 2003) (noting broad authority of legacy Customs agents to assist in investigating "any crime" including those not "traditionally thought to be a customs function").

One historical responsibility that DHS inherited from the legacy Customs Service is the investigation of assaults on federal officers. DOJ's Justice Manual, which also has not been accurately updated to reflect the advent of DHS, notes that the Customs Service (now subsumed into ICE and HSI) typically maintains the authority to investigate assaults on its own

federal officers. *See* Justice Manual § 9-65-600, Assaults on and Kidnappings of Federal Officers, (updated Jan. 2020). The Defendants invaded the church specifically to threaten or intimidate the acting Regional Director of Immigration and Customs Enforcement ("ICE"), an agency within DHS. This was an attempted assault on a federal officer, chargeable under 18 U.S.C. § 111, or 18 U.S.C. § 372. Because 6 U.S.C. § 203(1) transferred all "functions, personnel, assets, and liabilities of the United States Customs Service of the Department of Treasury" to DHS, it is DHS and its primary investigative and enforcement agency (HSI) that has the responsibility to investigate assaults or attempted assaults on ICE officials. The fact that—to date—the investigation has resulted only in the filing of civil rights charges is irrelevant. The use of § 1509 summonses was an appropriate tool employed by HSI.

Even assuming HSI exceeded its statutory authority in the use of § 1509, suppression is not an available remedy because the evidence obtained is not covered by the Fourth Amendment. "Applying the exclusionary rule to statutory as opposed to constitutional violations is appropriate only when: (1) the evidence arose directly from the violation and the statute itself mandates suppression; or (2) the violation implicates important Fourth or Fifth Amendment interests." *United States v. Reed*, 2008 WL 11350272, 2008 U.S. Dist. LEXIS 129651 at *11 (D.S.D. Nov. 17, 2008). Here, the statute does not mandate suppression. And there are no Fourth of Fifth Amendment interests,

as noted above, notwithstanding Defendants misplaced reliance on *Chatrie v. United States*, 609 U.S. ___, 146 S. Ct. 2193 (2026). *Chatrie* addressed whether geo-fence search warrants, which involved the government acquisition via warrant of cell phone-tracking location data, satisfied the Fourth Amendment. The government has not used § 1509 summonses to obtain location data. *Chatrie* is irrelevant, for it created neither a Fourth Amendment privacy interest, nor a Fifth Amendment due process interest with respect to the third-party data HSI obtained using § 1509 summonses.

## II. Defendants Request for Discovery for Policies, Procedures and Guidance Should be Denied

Rule 16(a)(2) of the Federal Rules of Criminal Procedure exempts from discovery internal government documents made by government agencies in connection with the investigation or prosecution of the case. While any DHS policies, procedures, or guidance regarding use of § 1509 summons authority may not have been prepared specifically for this case, the underlying principle of Rule 16(a)(2) is applicable. "Materials relevant to agency guidelines are not discoverable as 'material to the defense' or *Brady*." *United States v. Salyer*, 271 F.R.D. 148, 168-69 (E.D. Cal. 2010) (citing *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000)). There, like here, the defendant sought discovery of internal guidelines, policies and procedures to "check the government's work." The Court, relying on Rule 16, denied the discovery

request, emphasizing that "courts do not enforce internal executive branch guidelines." *Id.* (citing *United States v. Caceres*, 440 U.S. 741, 755-56 (1979)); *see also United States v. Riese*, 2024 WL 3402832, 2024 U.S. Dist. LEXIS 125162 at *10 (D.S.D May 23, 2024) (order denying discovery regarding law enforcement operations), *adopted by* 2024 WL 3400699, 2024 U.S. Dist. LEXIS 125470 (D.S.D. July 11, 2024).

"It is well established that the executive branch is privileged not to disclose intra-governmental documents reflecting advisory opinion, recommendations and deliberations compromising part of a process by which governmental decisions are formulated." *United States v. Berrigan*, 482 F.2d 171, 181 (3d Cir. 1973). The material Defendants seek in discovery is not relevant to the guilt or innocence of Defendants and is outside the scope of Rule 16 because it is unnecessary for their defense. Defendants' request is overbroad and moreover, seeks agency work-product which "enjoys almost absolute immunity" from production. *In re GMC*, 209 F.3d 1051, 1054 (8th Cir. 2000). "Criminal defendants do not have a general constitutional right to discovery." *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000). Accordingly, Defendants overbroad and irrelevant discovery request for agency work-product related to the utilization of § 1509 summonses should be denied.

Moreover, discovery with respect to DHS/HSI policies and procedures regarding the use of § 1509 summonses would be irrelevant and would not aid

defendants in their effort to suppress evidence. "[E]xclusion based on failure to follow regulatory procedure is only warranted if (1) the procedure is mandated by the Constitution or (2) the defendants reasonably relied on the procedure governing his conduct." *United States v. Haito Ziang*, 67 F.4th 895, 902 (8th Cir. 2023) (citing *Caceres*, 440 U.S. at 749-53). Defendants have not alleged any reliance on any DHS procedures related to use of § 1509 summonses, and any procedures for obtaining third party data in which defendants do not have a Fourth Amendment privacy interest do not implicate the Constitution.

## CONCLUSION

For the foregoing reasons, Defendants' motions should be denied.

DATED: September 18, 2026.

DANIEL N. ROSEN
United States Attorney

ABRAHAM KAPLAN
Assistant United States Attorney

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE S. HEDLEY
Acting Senior Litigation Counsel

*/s/ Neville S. Hedley*
Neville S. Hedley
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 297-3424
E-Mail: neville.hedley@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA