| UNITED STATES OF AMERICA, Plaintiff, v. CHAUNTYLL ALLEN (2), Defendant. | Case No. 26-cr-25 (LMP/DLM) **UNITED STATES' RESPONSE IN OPPOSITION TO ALLEN'S MOTION TO SUPPRESS (DOC. 738)** |
|---|---|

Defendant Allen moves to suppress evidence obtained during the search of her phone and all evidence derived from that search. Doc. 738 ("Motion"). This Court should deny her motion.

## BACKGROUND

On January 22, 2026, federal agents arrested Allen pursuant to a bench warrant. Doc. 3. The agents transported Allen to a federal building, where they searched her person and found a phone in the front pockets of her sweatpants. Doc. 739-1 at 25 (¶ 62).

On January 23, Homeland Security Investigations Special Agent Timothy Gerber applied for a warrant to search Allen's phone. The Application sought "[a]ll records … that relate to violations of 18 U.S.C. §§ 241 [and] 248(a)(2)." Doc. 739-1 at PDF p. 34 (Attachment B). This included "the contents of all call logs [and] text messages, "[p]hotographs or videos," records relating to geolocation, travel, and bank transactions, and any passwords needed to access the phone. *Id.* The same day, Magistrate Judge Elkins issued

a search warrant. *Id.* at PDF p. 2, 34-35. Agents subsequently searched Allen's phone.

## ARGUMENT

Allen challenges both the seizure of her cell phone and the search warrant. Because both the seizure and search were lawful, this Court should deny her motion.

### I. Federal agents lawfully seized Allen's phone.

Law-enforcement officers ordinarily need a warrant to conduct a search or seize property. However, the Supreme Court has long recognized a "search-incident-to-arrest exception to the Fourth Amendment's warrant requirement." *Arizona v. Gant*, 556 U.S. 332, 335 (2009). When conducting a search incident to arrest, police may search "the space within an arrestee's immediate control, meaning the area from within which he might gain possession of … destructible evidence." *Id.* (quotation marks omitted). This space includes "the area into which an arrestee might reach." *Chimel v. California*, 395 U.S. 752, 763 (1969). "Because a seizure is generally less intrusive than a search, the Supreme Court 'has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant, where a warrantless search … would have been impermissible.'" *United States v. Bragg*, 44 F.4th 1067, 1071 (8th Cir. 2022) (quoting *Segura v. United States*, 468 U.S. 796, 806 (1984)). Thus, a search

incident to arrest justifies seizing and securing items that later will be searched.

Federal agents seized Allen's phone while conducting a search incident to a lawful arrest. The agents removed the phone from Allen's pocket, an area plainly within her "immediate control." *See generally United States v. Robinson*, 414 U.S. 218 (1973) (approving seizure of heroin seized from an arrestee's pocket). It makes no difference whether Allen was handcuffed or otherwise restrained at this time. *United States v. Perdoma*, 621 F.3d 745, 750-751 (8th Cir. 2010). The "seizure of [a] cell phone on [her] person was not unlawful." *United States v. Black*, 2015 WL 13660478 at *7 (D. Minn. Apr. 10, 2015); *see also Bragg*, 44 F.4th at 1071 (holding that a phone taken from a car's seat pocket was seized incident to the arrest of defendant in his car).

Allen does not explain why the seizure of her phone apparently was unlawful. According to her motion, she "asserts that government agents lacked probable cause to seize the phone on January 22, 2026, or that seizure of the phone was allowed by any exception to the warrant requirement." Mot. 3. Her "contention is unsupported by specific reasons, citations to the record, or relevant legal authority." *United States v. McAdory*, 501 F.3d 868, 870 n.3. (8th Cir. 2007).

Invoking the "fruit of the poisonous tree" doctrine, Allen also argues that any evidence obtained from her phone after this supposedly illegal seizure

must be suppressed. Mot. 3. That doctrine is inapplicable because "the agents' decision to seek the warrant was [not] prompted by what they had seen" during the seizure. *Murray v. United States*, 487 U.S. 533, 542 (1988). Even absent the search indictment to arrest, federal agents inevitably would have sought a warrant to search Allen's phone. And Allen does not claim that the agents viewed her phone's contents before obtaining a warrant. Thus, she offers no basis for concluding that the decision to seek warrant was motivated by any information the agents learned from the seizure.

## II. The search warrant was lawful.

### A. Legal standard

Courts may issue a warrant only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. When evaluating an application for a warrant, the "task of the issuing magistrate is simply to make a practical, common-sense decision whether … there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983) (cleaned up). In other words, courts reviewing a warrant after the fact should "accord[] great deference to the issuing judge's

determination that [the] affidavit established probable cause." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (quotation marks omitted).

**B. Argument**

"[T]he question of what police must do before searching a cell phone seized incident to an arrest is … simple—get a warrant." *Riley v. California*, 573 U.S. 373, 403 (2014). That is precisely what the federal agents did. They obtained a warrant to "search digital information on a cell phone seized from an individual who ha[d] been arrested." *Id.* at 378. *See* Doc. 739-1 at 2.

Allen asserts that the application for the search warrant "failed to establish a required nexus between the phone sought to be searched and the events" at Cities Church and "lacked particularity and was overbroad." Mot 3. Her arguments fail.

*First,* the application for the warrant provided the requisite nexus. "In order to support an application for a search warrant, there must be evidence of a nexus between the contraband and the place to be searched." *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017) (cleaned up). A nexus exists where "information in the affidavit establishe[s]" a search … would likely result in the discovery of evidence" of a crime. *Id.*

The warrant application makes clear that there is a "fair probability" that evidence related to Allen's alleged crimes would be found on her cell phone. *Gates*, 573 U.S. at 238. Allen is charged with conspiracy, and the

application contains facts highlighting her role in and leadership of this conspiracy. Specifically, it indicates that Allen was a key organizer of the mob invasion of Cities Church. At the protest's staging location, Allen "address[ed] the crowd in a motivational manner" and "instructed" her codefendants on how to travel to Cities Church. Doc. 739-1 at PDF p. 7-8 (¶ 20). Considering her leadership role, there accordingly was a "fair probability" that Allen used her phone "to contact co-conspirators during or after [or before] committing a crime." *Gates*, 462 U.S. at 238 (first quote); *United States v. James*, 3 F.4th 1102, 1105 (8th Cir. 2021) (second quote). The warrant application explained this. *See* Doc. 739-1 PDF p. 31 (¶ 67(f)) (explaining that the phone "will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime").

Allen argues that the warrant application failed to "connect[] the phone to [her] other than by her physical possession of the phone at the moment of her arrest." Mot 4. That is untrue. The application explains that Allen "identified [the phone] as hers." Doc. 739-1 at PDF p. 25 (¶ 62).

*Second*, the warrant is not an impermissible general warrant. The Fourth Amendment requires that warrants "particularly describ[e] the place to be searched." U.S. Const. Amend. IV. The particularity requirement "is a standard of practical accuracy rather than a hypertechnical one." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007) (quotation marks

omitted). "The degree of specificity required will depend on the circumstances of the case and the type of items involved." *Id.*

The warrant authorized the United States to search only "records … that relate to violations of 18 U.S.C. §§ 241 [and] 248(a)(2)." Doc. 739-1 at PDF p. 34 (Attachment B). Although the warrant contained "broad language," it did "did not authorize a blanket search of documents for no particular purpose, but rather for the purpose of discovering evidence" of a specific crime. *United States v. Fiorito*, 640 F.3d 338, 346-347 (8th Cir. 2011) (upholding as "sufficiently particularized" a warrant seeking "[e]ntire files involving [a mail-fraud defendant], including but not limited to … any other document for any other residential real property transaction."). The warrant did not, as Allen suggests, "grant authority to obtain information about all 'contacts' and 'associates.'" Mot. 5. The United States may not review information about her contacts who played no role in Allen's alleged crimes. Nor is the warrant unlimited in time. *Contra id.* Although it lacks an explicit temporal limitation, the requirement that all searched records must relate to her alleged crimes eliminates the need to search records that predate Operation Metro Surge—the inspiration for Defendants' actions.

Allen also protests that because she is a "public official … the overbreadth of the warrant raises the real spectre of the Government intruding upon and gaining access to private information about protected First

Amendment activity." Mot. 5. That is irrelevant. Even though her "phone very likely also contain[ed] a plethora of information unrelated to the government's investigation, such as business-related correspondence and transactions; photographs; passwords; apps; potential attorney-client communications; and private communications with friends, family, and business associates, this fact does not transform the warrant into a general warrant." *Lindell v. United States*, 82 F.4th 614, 620 (8th Cir. 2023). Further, the United States established a filter team in accordance with standard Department of Justice procedures to ensure that prosecutors would not have access to any information about "materials protected by the First Amendment" that are unrelated to Allen's alleged crimes. Mot. 5. *See* Doc. 85 at 4-5 (describing the filter team); Doc. 86 at 2 (order recognizing that the use of the filter team is "appropriate and assuage[s] any concern regarding privileged materials").

Even if the application and warrant violate the Fourth Amendment, the good-faith exception requires this Court to deny Allen's request to suppress "all physical evidence obtained pursuant to the warrant." Mot. 6. Pursuant to the good-faith exception, suppression is not "an appropriate remedy" where officers "obtained [evidence] in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). "[A]n officer cannot be expected to question the magistrate's probable-cause

determination or his judgment that the form of the warrant is technically sufficient." *Id.* at 921. Thus, "suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926; *see also United States v. Dickerman*, 954 F.3d 1060, 1065 (8th Cir. 2020) (same). Allen does not argue that Special Agent Gerber or any other law-enforcement officer was dishonest, reckless, or lacked an objectively reasonable belief that there was probable cause to search Allen's phone. The good-faith exception therefore applies.

## CONCLUSION

For the foregoing reasons, Allen's motion to suppress should be denied.[1]

[1] Not including this footnote, this motion response is 1,891 words as measured by Microsoft Word.

DATED: October 13, 2026.

DANIEL N. ROSEN
United States Attorney

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE S. HEDLEY
Acting Senior Litigation Counsel

*/s/ Joshua R. Zuckerman*

JOSHUA R. ZUCKERMAN
KELSEY E. MCGEE
Attorneys
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 514-3847
E-Mail: joshua.zuckerman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA