| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br>v.<br><br>**MONIQUE CULLARS-DOTY (16),**<br><br>Defendant. | Case No. 26-cr-25 (LMP/DLM)<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO CULLARS-DOTY'S MOTION TO SUPPRESS (DOC. 699)** |

Defendant Cullars-Doty moves to suppress evidence obtained during the search of his phone and all evidence derived from that search. She also requests a *Franks* hearing. Doc. 699 ("Motion"). This Court should deny her motion.

## BACKGROUND

On February 27, 2026, federal agents arrested Cullars-Doty pursuant to a bench warrant. Doc. 152. "At the time of the arrest, [she] was on the phone." Doc. 699-1 at 4 (¶12). Agents seized her phone during the arrest. *Id.* (¶ 13).

On March 13, Homeland Security Investigations Special Agent Timothy Gerber applied for a warrant to search the phone. The Application sought all "records and information" that are "evidence, fruits, and instrumentalities" of "violation[s] of 18 U.S.C. §§ 241 and 248(a)(2)." Doc. 699-1 at PDF p. 21 (Attachment B). The application sought only records created after January 1, 2026. *Id.* This included call logs, internet activity, and messages "evidencing or relating to "(a) planning, organizing, scheduling, and commission of the

SUBJECT OFFENSES and other organized protest activity; (b) subsequent communications regarding the SUBJECT OFFENSES and other organized protest activity; and (c) other communications, activities, and associations that CULLARSDOTY had with any of the indicted co-defendants and/or other as yet unidentified persons who participated in the planning or commission of the SUBJECT OFFENSES." *Id.* at PDF p. 21-22 (Attachment B). Magistrate Judge Elkins issued the search warrant. *Id.* at 27.

## ARGUMENT

Cullars-Doty challenges both the seizure of her cell phone and the search warrant. Because both the seizure and search were lawful, this Court should deny her motion.

### I. Federal agents lawfully seized Cullars-Doty's phone.

Law-enforcement officers ordinarily need a warrant to conduct a search or seize property. However, the Supreme Court has long recognized a "search-incident-to-arrest exception to the Fourth Amendment's warrant requirement." *Arizona v. Gant*, 556 U.S. 332, 335 (2009). When conducting a search incident to arrest, police may search "the space within an arrestee's immediate control, meaning the area from within which he might gain possession of … destructible evidence." *Id.* This space includes "the area into which an arrestee might reach." *Chimel v. California*, 395 U.S. 752, 763 (1969). "Because a seizure is generally less intrusive than a search, the

Supreme Court 'has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant, where a warrantless search … would have been impermissible.'" *United States v. Bragg*, 44 F.4th 1067, 1071 (8th Cir. 2022) (quoting *Segura v. United States*, 468 U.S. 796, 806 (1984)). Thus, a search incident to arrest justifies seizing and securing items that later will be searched.

As Cullars-Doty acknowledges, she was "holding a cellular phone" during her arrest. Mot. 2. The phone therefore was plainly within her "immediate control." This "seizure of [a] cell phone on [her] person was not unlawful." *United States v. Black*, 2015 WL 13660478 at *7 (D. Minn. Apr. 10, 2015).

Invoking the "fruit of the poisonous tree" doctrine, Cullars-Doty also argues that any evidence obtained from her phone after this supposedly illegal seizure must be suppressed. Mot. 4. That doctrine is inapplicable because the seizure here followed a textbook example of a search incident to arrest.

## II. The search warrant was lawful.

### A. Legal standard

Courts may issue a warrant only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. When evaluating an application for a warrant, the "task of the issuing magistrate is simply to make a practical, common-sense decision whether … there is a fair probability

that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983) (cleaned up). In other words, courts reviewing a warrant after the fact should accord "great deference to the issuing judge's determination that [the] affidavit established probable cause." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (quotation marks omitted).

**B. Argument**

"[T]he question of what police must do before searching a cell phone seized incident to an arrest is … simple—get a warrant." *Riley v. California*, 573 U.S. 373, 403 (2014). That is precisely what the federal agents did. They obtained a warrant to "search digital information on a cell phone seized from an individual who ha[d] been arrested." *Id.* at 378. *See* Doc. 699-1 at PDF p. 27.

Cullars-Doty asserts that the application for the search warrant "failed to establish a required nexus between the phone sought to be searched and the events" at Cities Church and "lacked particularity and was overbroad." Mot 4. Her arguments fail.

*First,* the application for the warrant provided the requisite nexus. "In order to support an application for a search warrant, there must be evidence of a nexus between the contraband and the place to be searched." *United States*

*v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017) (cleaned up). A nexus exists where "information in the affidavit establishe[s]" a search … would likely result in the discovery of evidence" of a crime. *Id.*

The warrant application makes clear that evidence related to Cullars-Doty's alleged crimes could be found on her cell phone. Cullars-Doty is charged with conspiracy, so there was a "fair probability" that she used her phone "to contact co-conspirators during or after [or before] committing a crime." *Gates*, 462 U.S. at 238 (first quote); *United States v. James*, 3 F.4th 1102, 1105 (8th Cir. 2021) (second quote). The warrant application explained this. *See* Doc. 699-1 at PDF p. 8 (¶ 34(f)) (explaining that the phone "will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime").

Cullars-Doty argues that the warrant application failed to "set forth grounds to establish that Cullars-Doty owned the phone or had used the phone at any time prior to February 27, 2026." Mot. 3. That is incorrect. As Cullars-Doty acknowledges, the application asserts that Cullars-Doty was using the phone in her house at the time of her arrest. Doc. 699-1 at PDF p. 4 (¶ 12). That assertion creates probable cause that Cullars-Doty owned the phone and therefore that she had previously used the phone. People ordinarily do not use other people's phones in their own homes.

*Second*, the warrant is not an impermissible general warrant. The Fourth Amendment requires that warrants "particularly describ[e] the place to be searched." U.S. Const. Amend. IV. The particularity requirement "is a standard of practical accuracy rather than a hypertechnical one." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007) (quotation marks omitted). "The degree of specificity required will depend on the circumstances of the case and the type of items involved." *Id.*

The warrant authorized the United States to search only "evidence, fruits, and instrumentalities of the … SUBJECT OFFENSES." Doc. 699-1 at PDF p. 21 (Attachment B). Although the warrant contained "broad language," it did "did not authorize a blanket search of documents for no particular purpose, but rather for the purpose of discovering evidence" of a specific crime. *United States v. Fiorito*, 640 F.3d 338, 346-347 (8th Cir. 2011) (upholding as "sufficiently particularized" a warrant seeking "[e]ntire files involving [a mail-fraud defendant], including but not limited to … any other document for any other residential real property transaction.").

Cullars-Doty protests that "the warrant grants authorization to search for all information from January 1, 2026, to the present," whereas the "target of the planned protest [at Cities Church] did not come to public attention until January 16, 2026." Mot. 5 (quotation marks omitted). Even if Cullars-Doty and her codefendants had no knowledge of the target until January 16, there

was still probable cause to believe that evidence relevant to the conspiracy charge could be found on her phone insofar as she used the phone "to contact co-conspirators during or after [or before] committing a crime." *James*, 3 F.4th at 1105 (8th Cir. 2021). Any pre-January 16 communications between Cullars-Doty and her codefendants could uncover evidence relating to "motive, opportunity, [or] intent" to conspire to use force or threat of force against ICE agents. Fed. R. Evid. 404(b)(2).

In any event, "the infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant … but does not require the suppression of anything described in the valid portions of the warrant." *United States v. Fitzgerald*, 724 F.2d 633, 636 (8th Cir. 1983). If this Court determines that the warrant is temporally overbroad, evidence created on or after January 16, 2026, therefore should not be suppressed.

Cullars-Doty also argues that the warrant is overbroad because it allows agents to search "information related to 'other organized protest activity' without any requirement that such activity relate to a crime or be likely to reveal evidence of a crime." Mot. 6. That is factually inaccurate. Again, the warrant authorizes a search only of "records and information" that are "evidence, fruits, and instrumentalities" of "violation[s] of 18 U.S.C. §§ 241 and 248(a)(2). Doc. 699-1 at PDF p. 21 (Attachment B). Evidence of similar "organized protest activity," even lawful protest activity, can be evidence of a

conspiracy to the extent it reveals connections between the co-conspirators or "motive, opportunity, [or] intent" to target federal agents. *See* Fed. R. Evid. 404(b)(2).

That the warrant may "authorize[] the seizure of material protected by the First Amendment" is beside the point. Mot. 6. Every cell phone—except for those used solely in furtherance of crimes—contains materials protected by the First Amendment: text messages to friends, family photos, work emails, and so on. Although Cullars-Doty's "phone very likely also contain[ed] a plethora of information unrelated to the government's investigation, such as business-related correspondence and transactions; photographs; passwords; apps; potential attorney-client communications; and private communications with friends, family, and business associates, this fact does not transform the warrant into a general warrant." *Lindell v. United States*, 82 F.4th 614, 620 (8th Cir. 2023).

## III. The good-faith exception applies.

Even if the application and warrant violate the Fourth Amendment, the good-faith exception requires this Court to deny Cullars-Doty's request to suppress "all physical evidence obtained pursuant to the warrant." Mot. 6. Pursuant to the good-faith exception, suppression is not "an appropriate remedy" where officers "obtained [evidence] in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S.

897, 922 (1984). "[A]n officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id.* at 921. Thus, "suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926; *see also United States v. Dickerman*, 954 F.3d 1060, 1065 (8th Cir. 2020) (same).

Cullars-Doty baselessly accuses Special Agent Gerber of dishonesty. The "warrant application … states that [she] 'obstructed the religious service and intimidated, harassed, oppressed and terrorized the congregants' and 'physically obstructed congregants as they attempted to leave the church.'" Mot. 7. According to Cullars-Doty, unspecified "video evidence and witness statements" show that she did not engage in this misconduct.[1] *Id.* Her "contention is unsupported by specific reasons, citations to the record, or relevant legal authority." *United States v. McAdory*, 501 F.3d 868, 870 n.3. (8th Cir. 2007). And at the most, it would show that Special Agent Gerber was incorrect, not that he had "knowledge that the statements were false" or

[1] In other words, Cullars-Doty believes that a warrant seeking evidence of a FACE Act violation should be suppressed because she did not violate the FACE Act.

"reckless disregard for the truth." Mot. 7. That is not enough to overcome the good-faith exception.

## IV. A *Franks* Hearing Is Unnecessary

An affidavit in support of a search warrant is presumptively valid. *Franks v. Delaware*, 438 U.S. 154 171 (1978). A defendant seeking a *Franks* hearing must make a substantial preliminary showing that: (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement; and (2) that the statement was necessary to the probable cause finding. *Id.* at 155-156. The allegations must be specific and supported by affidavits or other reliable evidence; negligence and innocent mistake are insufficient. *United States v. Brackett*, 846 F.3d 987, 993 (8th Cir. 2017). Cullars-Doty's request fails at the first prong. As discussed above, she provides no evidence that Special Agent Gerber made knowingly, intentionally, or recklessly false statements. A passing reference to unspecified "video evidence" and statements from unidentified "witnesses," Mot. 7, is not a "substantial preliminary showing." And even if it were, it would not establish that the challenged statement "was necessary to the probable cause finding" because whether Cullars-Doty obstructed or intimidated congregants is a distinct inquiry from whether she conspired to do so.

## V. The United States used a filter team to review Cullars-Doty's phone.

Cullars-Doty "requests disclosure of whether a taint team was … used, the search methodology it employed, and whether the unredacted extraction report was made available to the prosecution team." Mot. 8. The United States established a filter team in accordance with standard Department of Justice procedures to ensure that prosecutors would not have access to messages outside the "temporal limitation" of the warrant. *Id.* The United States has explained that the filter team "has been instructed to respect the attorney-client privilege and related interests and to seize only those items falling within the scope of the warrant." And this Court has recognized that these procedures are "appropriate." Doc. 86 at 2. The United States has followed the filter procedures in searching Cullars-Doty's phone. The filter team produced to the prosecution team only the post-filter documents that fall within the scope of the warrant, and the filter team did not produce any "unredacted extraction report" or other documents that fall outside the scope of the warrant.

## <u>CONCLUSION</u>

For the foregoing reasons, Cullars-Doty's motion to suppress should be denied.[2]

DATED: October 13, 2026.

DANIEL N. ROSEN
United States Attorney

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE HEDLEY
Acting Senior Trial Attorney

*/s/ Joshua R. Zuckerman*

JOSHUA R. ZUCKERMAN
KELSEY E. MCGEE
Attorneys
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 514-3847
E-Mail: joshua.zuckerman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

[2] Not including this footnote, this motion response is 2,321 words as measured by Microsoft Word.