**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br>v.<br><br>**DAVID ANTHONY OKAR (27),**<br><br>Defendant. | Case No. 26-cr-25 (LMP/DLM)<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO OKAR'S MOTION TO SUPPRESS AND REQUEST FOR *FRANKS* HEARING (DOC. 747)** |

Defendant Okar moves to suppress evidence obtained during the search of his phone and all evidence derived from his search. Doc. 747 ("Motion"). He also requests a *Franks* hearing. This Court should deny his motion.

## BACKGROUND

On February 27, 2026, federal agents arrested Okar pursuant to an arrest warrant. Okar was "holding a cellphone" at the time of his arrest, and agents seized the phone. Mot. 1.

On or about March 10, Homeland Security Investigations Special Agent Timothy Gerber applied for a warrant to search Okar's phone. The Application sought records relating to violations of 18 U.S.C. §§ 241 and 248(a)(2). Search Warrant Attachment B, 26-mj-252 (D. Minn., Mar. 10, 2026).[1] This included

[1] The affidavit and warrant are under seal, but Okar's motion discusses their contents and thus requires the United States to respond. Given the number of motions, the United States cannot file all of the challenged affidavits and related documents under seal, nor can it timely file motions to unseal in each

the contents of call logs and text messages, photographs, videos, location data, records relating to travel and bank transactions, and any passwords needed to access the phone. *Id.* The same day, Magistrate Judge Elkins issued a search warrant. Agents subsequently searched Okar's phone.

## ARGUMENT

Okar challenges both the seizure of his cell phone and the search warrant. Because both the seizure and search were lawful, this Court should deny his motion.

### I. Federal agents lawfully seized Okar's phone.

Law-enforcement officers ordinarily need a warrant to conduct a search or seize property. However, the Supreme Court has long recognized a "search-incident-to-arrest exception to the Fourth Amendment's warrant requirement." *Arizona v. Gant*, 556 U.S. 332, 335 (2009). When conducting a search incident to arrest, police may search "the space within an arrestee's immediate control, meaning the area from within which he might gain possession of … destructible evidence." *Id.* This space includes "the area into

---

case for each warrant. If the Court believes it is necessary, the United States will request entry of a general order that unseals all of the challenged warrants or allows the parties to make reference to the contents of the affidavits and warrants (as Okar already has), except to the extent they disclose personally identifying information.

which an arrestee might reach." *Chimel v. California*, 395 U.S. 752, 763 (1969).

Federal agents seized Okar's phone while conducting a search incident to a lawful arrest. The phone was in Okar's hands—an area plainly within his "immediate control." Thus, the "seizure of [a] cell phone on [his] person was not unlawful." *United States v. Black*, 2015 WL 13660478 at *7 (D. Minn. Apr. 10, 2015).

Okar argues that "this seizure was not supported by probable cause." Mot. 1 (¶ 3). But when "seiz[ing] evidence to prevent its concealment or destruction" following a search incident to arrest, agents need only "probable cause for [the] arrest" itself. *United States v. Chartier*, 772 F.3d 539, 545 (8th Cir. 2014). "Following a lawful custodial arrest, a search of the arrestee's person incident to arrest requires no additional justification." *United States v. Brewer*, 624 F.3d 900, 905 (8th Cir. 2010) (quotation marks omitted). Here, there was probable cause for Okar's arrest because a judge issued an arrest warrant. The warrant justifies a search incident to arrest and the seizure of Okar's phone.

## II. The search warrant was lawful.

### A. Legal standard

Courts may issue a warrant only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and

the persons or things to be seized." U.S. Const. Amend. IV. When evaluating an application for a warrant, the "task of the issuing magistrate is simply to make a practical, common-sense decision whether … there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983) (cleaned up). In other words, courts reviewing a warrant after the fact should accord[] great deference to the issuing judge's determination that [the] affidavit established probable cause." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (quotation marks omitted).

**B. Argument**

"[T]he question of what police must do before searching a cell phone seized incident to an arrest is … simple—get a warrant." *Riley v. California*, 573 U.S. 373, 403 (2014). That is precisely what the federal agents did. They obtained a warrant to "search digital information on a cell phone seized from an individual who ha[d] been arrested." *Id.* at 378.

Okar argues that the warrant is deficient because the warrant application contained "demonstrably false" allegations and because his conduct was "not criminal" or "protected by the First Amendment." Mot. 2-3. He claims that the application lacked sufficient information "to establish a nexus between

the items sought and the cellphone to be searched." Mot. 3. He also asserts that "the warrant lacks particularity and is overly broad." *Id.*

*First*, the allegations in the warrant application were not "demonstrably false." Mot. 2. The application states that Okar "was present in the crowd of disruptors at the pre-operating briefing," that he traveled to Cities Church." And that "[d]isruptors … yell[ed] various chants" inside the Church and that "congregants [were] confused, scared and shocked by the disruptors' conduct." These undisputed facts establish probable cause. *Contra* Mot. 4. ("Without this allegation, there are no other facts the Court could rely on for probable cause.").

Okar disputes just one statement in the application: that he physically obstructed congregants. Mot. at 2. Okar asserts that the congregants were able to "mov[e] freely around the church and leav[e] the building." *Id.* But even if some congregants were able to move freely, there would still be probable cause to believe that Okar violated the FACE Act for the reasons discussed immediately above. Further, some freedom of movement is "beside the point" because "obstruction need not be permanent or entirely successful" to violate the FACE Act. *New York v. Cain*, 418 F. Supp. 2d 457, 480 n.18 (S.D.N.Y. 2006).

Okar also attempts to shoehorn his doomed merits arguments into an attack on probable cause, asserting that the facts alleged in the warrant application concern "protected free speech." Mot. 2. That is incorrect for the

reasons discussed in the United States' forthcoming opposition to Okar's motion to dismiss. It is also irrelevant. Even if Okar is innocent of the charged conduct, the warrant application nevertheless establishes probable cause for a search.

*Second*, the application for the warrant provided the requisite nexus. "In order to support an application for a search warrant, there must be evidence of a nexus between the contraband and the place to be searched." *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017) (cleaned up). A nexus exists where "information in the affidavit establishe[s] a search … would likely result in the discovery of evidence" of a crime. *Id.*

The warrant application makes clear that there is a "fair probability" that evidence related to Okar's alleged crimes would be found on his cell phone. *Gates*, 573 U.S. at 238. Okar is charged with conspiracy, and the application contains facts highlighting his attendance at the pre-operation briefing. These facts suggest that Okar may have used his phone "to contact co-conspirators during or after [or before] committing a crime." *United States v. James*, 3 F.4th 1102, 1105 (8th Cir. 2021). The warrant application explained this. Search Warrant ¶ 38(o).

*Third*, the warrant is not an impermissible general warrant. The Fourth Amendment requires that warrants "particularly describ[e] the place to be searched." U.S. Const. Amend. IV. The particularity requirement "is a

standard of practical accuracy rather than a hypertechnical one." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007) (quotation marks omitted). "The degree of specificity required will depend on the circumstances of the case and the type of items involved." *Id.*

The warrant authorized the United States to search only records that relate to violations of 18 U.S.C. §§ 241 and 248(a)(2). Search Warrant Attachment B. Although the warrant contained "broad language," it did "did not authorize a blanket search of documents for no particular purpose, but rather for the purpose of discovering evidence" of a specific crime. *United States v. Fiorito*, 640 F.3d 338, 346-347 (8th Cir. 2011) (upholding as "sufficiently particularized" a warrant seeking "[e]ntire files involving [a mail-fraud defendant], including but not limited to … any other document for any other residential real property transaction.").

Okar protests that the warrant application "seeks financial records and travel records." Mot. 3. These records can show when Okar decided to travel to Minnesota and therefore can evidence his intent to conspire and/or violate the FACE Act. True, some financial and travel records on his phone might be irrelevant, but the fact that the "phone very likely also contain[ed] a plethora of information unrelated to the government's investigation, such as business-related correspondence and transactions; photographs; passwords; apps; potential attorney-client communications; and private communications with

friends, family, and business associates … does not transform the warrant into a general warrant." *Lindell v. United States*, 82 F.4th 614, 620 (8th Cir. 2023). Further, the United States, established a filter team in accordance with standard Department of Justice procedures to ensure that prosecutors would not have access to any information about any materials that are unrelated Okar's alleged crimes. *See* Doc. 85 at 4-5 (describing the filter team); Doc. 86 at 2 (order recognizing that the use of the filter team is "appropriate and assuage[s] any concern regarding privileged materials").

Even if the application and warrant violate the Fourth Amendment, the good-faith exception requires this Court to deny Okar's motion. Pursuant to the good-faith exception, suppression is not "an appropriate remedy" where officers "obtained [evidence] in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). "[A]n officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id.* at 921. Thus, "suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926. While Okar claims that Special Agent Gerber made a "false" allegation "about him obstructing congregants," Mot. 4, he offers no evidence

that Special Agent Gerber lacked a reasonable belief that there was, as the grand jury found, probable cause to believe Okar obstructed congregants.

## III. A *Franks* Hearing Is Unnecessary

An affidavit in support of a search warrant is presumptively valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). A defendant seeking a *Franks* hearing must make a substantial preliminary showing that: (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement; and (2) that the statement was necessary to the probable cause finding. *Id.* at 155-156. The allegations must be specific and supported by affidavits or other reliable evidence; negligence and innocent mistake are insufficient. *United States v. Brackett*, 846 F.3d 987, 993 (8th Cir. 2017).

Okar cannot make either showing. First, he accuses Special Agent Gerber of making a false statement about obstruction, but offers no evidence that this statement was knowingly, intentionally, or recklessly false. He alludes to unspecified other "agents" in unspecified "other cases giving false information in reports and arresting people with legal justification." Mot. 4. This Court should reject Okar's guilt-by-association approach to *Franks*, especially because agents arrested Okar pursuant to a lawful warrant.

Second, the statement about physical obstruction was not material. As discussed above, the statements relating to Okar's presence at the pre-

operation briefing and inside Cities Church independently establish probable cause.

## CONCLUSION

For the foregoing reasons, Okar's motion to suppress should be denied.[2]

DATED: October 14, 2026.

DANIEL N. ROSEN
United States Attorney

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE HEDLEY
Acting Senior Trial Attorney

*/s/ Joshua R. Zuckerman*
JOSHUA R. ZUCKERMAN
KELSEY E. MCGEE
Attorneys
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 514-3847
E-Mail: joshua.zuckerman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

[2] Not including this footnote, this motion response is 1,870 words as measured by Microsoft Word.