**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br>v.<br><br>**CATIE MICHAELSON,**<br>Defendants. | Case No. 26-cr-25 (LMP/DLM)<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS SEARCH RECORDS AND DATA SEIZED FROM APPLE AND REQUEST FOR *FRANKS* HEARING (ECF. 766)** |

Defendant Catie Michaelson moves to suppress records and data seized from Apple and alternatively requests a *Franks* hearing. Dkt. 766. This Court should deny her motion.

## BACKGROUND.

On February 27, 2026, federal agents executed two arrest warrants on Catie and Eric Michaelson at their residence. While agents secured Catie Michaelson, agents conducted a security sweep and observed a "dark blue iPhone with broken screen protector," in "plain sight" that they reasonably believed belonged to Catie Michaelson. Search Warrant, 26-mj-358, at 4, ¶ 12 (D. Minn., April 16, 2026).[1] The phone was seized and secured in a faraday bag.

On March 16, 2026, SA Timothy Gerber sought and obtained a search warrant for Catie Michaleson's phone. And on April 8, 2026, SA Gerber sought

[1] The affidavit and warrant are still under seal, but Michaelson's motion discusses their contents and thus requires the Government to respond. Given the number of motions, the Government cannot file all of the challenged affidavits and related documents under seal, nor can we currently file motions to unseal in each miscellaneous case number for each warrant. If the Court believes it is necessary, the Government will request entry of a general order that unseals all of the challenged warrants or allows the parties to make reference to the contents of the affidavits and warrants (as Michaelson already has), except to the extent they disclose personally identifying information.

to amend the previously granted search warrant for Catie Michaelson's phone. *Id.* at 4, ¶ 13. Between April 10, 2026, and April 13, 2026, agents reviewed the forensic extraction of Catie Michaelson's cellphone that was extracted prior to the amended search warrant based on an error in device identification that was corrected in the amended April 8, 2026, warrant. At this time, the device's battery had lost power, and Agents could not re-extract her cellphone pursuant to the amended search warrant. Therefore, out of an abundance of caution, on April 16, 2026, SA Gerber sought and obtained a search warrant for Catie Michaelson's iCloud data.

## ARGUMENT.

### I. THE SEARCH WARRANT WAS VALID.

#### i. Legal Standard

Courts may issue a warrant only "upon probable cause, supported by Oath of affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. When evaluating an application for a warrant, the "task of the issuing magistrate is simply to make a practical, common-sense decision whether… there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983) (cleaned up). In other words, courts reviewing a

warrant after the fact should "accord great deference to the issuing judge's determination that [the] affidavit established probable cause." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (quotation marks omitted).

**ii. Argument**

"[T]he question of what police must do before searching a cell phone seized incident to arrest is… simple—get a warrant." *Riley v. California*, 573 U.S. 373, 403 (2014). That is precisely what the federal agents did. They obtained a warrant to "search digital information on a cellphone seized from an individual who ha[d] been arrested." *Id*. at 378. Indeed, on April 16, 2026, HSI Special Agent Timothy Gerber sought and obtained a search warrant for information associated with Catie Michaelson's iCloud data. *See* 26-mj-358, (D. Minn., April 16, 2026).

Catie Michaelson asserts that the warrant is unconstitutional on its face because it fails to provide a reasonable basis for finding probable cause and because it fails to establish a nexus between the items sought and the place to be searched. *See* Dkt. 766. Her arguments fail.

### iii. The warrant properly established probable cause that an offense had been committed.

First, Defendant Catie Michaelson asserts that the iCloud warrant failed to establish probable cause that an offense had been committed. Dkt. 766 at 4-7. Not so. "It is not necessary for an affidavit to include the name of the specific crime alleged." *United States v. Summage,* 481 F.3d 1075, 1078 (8th Cir. 2007). Rather, "only a *probability* of criminal conduct need be shown." *Id.* (cleaned up). Indeed, "only the probability, and not a prima facie showing, of criminal activity is the standard for probable cause." *Illinois v. Gates*, 462 U.S. 213, 235 (1983). The Supreme Court has recognized that "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *Illinois v. Gates,* 462 U.S. 213, 235 (1983). The warrant applications exceeded this standard.

The affidavit in support of the search warrant explained that "disruptors, including C. MICHAELSON, obstructed the religious service and intimidated, harassed, oppressed, and terrorized the congregants… causing the service to end prematurely and forcing parishioners to flee the church, which resulted in one victim falling and sustaining an injury." 26-mj-358, at 5, ¶ 17. Additionally, the affidavit describes the manner and means by which the conspiracy was organized; "electronically promot[ing] the operation on the

Internet via flyer posted on Instagram and Facebook accounts," *Id.* at 7, ¶ 21, and describes the pre-brief in which co-defendants, to include Catie Michaelson, made "plans for their actions inside the church". *Id.* at 6, ¶ 19. The affidavit further describes the Cate Michaelson's involvement at the pre-brief, travel to target location, and her conduct at the target location, to include "yelling various statements in an aggressive manner," *Id.* at 9, ¶ 30. Additionally, the affidavit described the interference, *Id.* at 5, ¶ 17 ("causing the service to end prematurely and forcing congregants to flee…") and the intimidation, *Id.* at 9, ¶ 30 ("congregants are confused, scared and shocked by the disruptors' conduct").

While it is true that this affidavit does not specifically include Catie Michaelson as among the individuals alleged to have blocked congregants' freedom of movement, the affidavit nevertheless described the formation of the conspiracy, and defendant's status as a co-conspirator. *See Pinkerton v. United States*, 328 U.S. 640, 646-647 (1946) ("an overt act of one partner may be the act of all without any new agreement specifically directed at that act"). The absence of this fact does not change the analysis. "Judges "may draw reasonable inferences from the totality of the circumstances whether probable cause exists to issue a warrant."' *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008) (citing *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000). A reasonable inference in light of the language of the affidavit would be

that Catie Michaelson was present and engaged in physical obstruction, and if not, the actions of those who were could be "the act of all." *Pinkerton*, 328 U.S. at 646-647. Indeed, here, the affidavit provided sufficient facts to support the *probability* that Catie Michaelsons' actions constituted a violation of 18 U.S.C. §§ 241, 248(a)(2). Even if the affidavit did not adequately set forth that Catie Michaelson's actions constituted a crime, the standard is not whether the affidavit established that a particular person committed a crime, rather the standard is whether the warrant "sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found *in the particular place to be searched*." *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010) (emphasis added). The Government submits that the warrant established sufficient facts to support the probability that Catie Michaelson committed the charged conduct, *and* that it set forth sufficient facts to establish that evidence of criminal activity would be found in the place to be searched. *Id.*

**iv. The warrants established a nexus between the alleged crimes and iCloud data.**

Defendant Catie Michaelson argues that the affidavit submitted to obtain the iCloud data contained no allegation of a direct connection between the crimes committed on January 18, 2026, and the data seized. Dkt. 766 at 7. The Government disagrees. The affidavit provided the requisite nexus. "In

order to support an application for a search warrant, there must be evidence of a nexus between the contraband and the place to be searched." *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017) (cleaned up). A nexus exists where information in the affidavit establishe[d] a search … would likely result in the discovery of evidence" of a crime. *Id.* Factors to consider in determining if a nexus exists include "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *Id.*

The affidavit in support of the application for the search warrant, Ex. 1, established that a search of Catie Michaelson's iCloud data would likely result in discovery of evidence relating to the formation and agreement to the conspiracy, her participation in the alleged conduct, and her association to other co-defendants. Catie Michaelson is charged with conspiracy against rights in violation of 18 U.S.C. §241, and the affidavit highlights the organization of the conspiracy. Specifically, the affidavit discusses that the operation was "electronically promoted … on the internet via flyer posted on Instagram and Facebook." 26-mj-358 at 7, ¶ 21. The affidavit further established that Catie Michaelson was present at the pre-operation briefing where 38 other co-defendants "met together in the parking lot of a nearby shopping center and made plans for their actions inside the church." *Id.* at 6, ¶ 19. And ties the Defendant's phone to the scene of the crime. *Id* at 8, ¶ 26

("C. MICHAELSON is seen practicing the "ICE out of Minnesota!" and holding her cellphone [at the pre-operation briefing]").

In light of Catie Michaelson's attendance at the pre-operation briefing, and similar evidence found in co-defendant's devices, there accordingly was a "fair probability" that Catie Michaleson's phone contained evidence in connection with the organization of the conspiracy, such as where and when to meet before the operation. The warrant application explained the connection, noting that "iCloud stores and backs up user data from the user's iPhone," 26-mj-358 at 5, ¶ 15, and that "iCloud is a cloud storage and cloud computing service from Apple that allows users to interact with Apple's servers to utilize iCloud connected services to create, store, access, share and synchronize data on Apple devices or via icloud.com on any Internet connected device. *Id.* at 11, ¶ c. This data includes "user's photos and videos, iMessages, Short Message Service ("SMS"), Multimedia Messaging Service ("MMS") messages, voicemails, call history, contacts," *Id.* at 15-16, ¶ 41. "The stored communications and files" connected to an Apple ID may provide direct evidence of the offenses under investigation." *Id.* at 17, ¶ 43. "Instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation." *Id.* The affidavit further describes the existence of "user attribution" evidence, explaining that it is analogous to

"indicia of occupancy" and such information allows "investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation." *Id.* at 17, ¶ 44. Taken together with Catie Michaelson's described conduct, the electronic formation of the conspiracy and organization thereof, those facts established a "fair probability" that Catie Michaelson's iCloud data contained evidence of the alleged crimes. *Gates*, 462 U.S. at 238.

Defendant Michaelson offers innocent possibilities for holding a phone, such as checking the time or an unrelated notification. Dkt. 766 at 8. This argument "misunderstands the meaning of probable cause, which merely requires a reasonable belief that the search may yield something that is "*useful as evidence* of a crime," not that it will reveal a smoking gun." *United States v. Gogic,* 770 F. Supp. 3d 529, 547 (E.D.N.Y. 2025) (internal citations omitted). The affidavit identified specific pieces of attribution evidence in the iCloud account that connects to the charged conduct. To use defendant's hypothetical as an example, defendant's possible "shutting her phone off" is indicia of "consciousness of guilt," or concealment of location, which is attribution evidence that the affidavit notes as possibly being contained within the account activity being sought. *See* 26-mj-358 at 18, ¶ 45 ("Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation…for example…consciousness of guilt.").

Indeed, these potential 'innocent' explanations cannot be viewed in isolation without considering the broader context of the affidavit which describes electronic promotion, advance planning, coordinated travel between 39 unrelated individuals, and participation in the invasion. Accordingly, the warrant properly established a nexus between the data sought to be searched and the crime.

### v. The warrant was not an impermissible general warrant.

The Fourth Amendment requires that warrants "particularly describe[e] the place to be searched." U.S. Const. Amend. IV. The particularity requirement "is a standard of practical accuracy rather than a hypertechnical one." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007) (quotation marks omitted). Indeed, "[w]arrants need not describe the place to be searched with exact precision." *United States v. Thurman*, 625 F.3d 1053, 1057 (8th Cir. 2010). Rather, "[t]o satisfy the particularity requirement of the Fourth Amendment, the items to be seized and the places to be searched must be described with sufficient particularity as to enable the searcher to locate and identify the places and items with reasonable effort and to avoid mistakenly searching the wrong places or seizing the wrong items." *United States v. Gleich*, 397 F.3d 608, 611 (8th Cir. 2005) (citing *United States v. Thomas*, 263 F.3d 805, 807 (8th Cir. 2001)). The warrant here met that standard. It only

authorized agents to obtain information specifically subject to the charged offenses; 18 U.S.C. §§ 241 and 248(a)(2). 26-mj-358 at v. Although the warrant contained "broad language," it "did not authorize a blanket search of documents for no particular purposes, but rather for the purpose of discovering evidence" of a particular crime. *United States v. Fiorito*, 640 F.3d 338, 346-347 (8th Cir. 2011) (upholding as "sufficiently particularized" a warrant seeking "[e]ntire files involving [a mail-fraud defendant], including but not limited to … any other document for any other residential real property transaction."). Therefore, any data obtained, and the timeframe thereof, must have had a defined nexus to the charged conduct, to include communications, digital media, geolocation data, and user-attribution data. *Id.* Thus, the warrant adequately provided agents with sufficient information to "locate and identify the places and items with reasonable effort" and "avoid mistakenly searching the wrong places or seizing the wrong items." *Gleich*, 397 F.3d at 611. Lastly, even if this Court were to conclude that the warrant was so obviously overbroad as to render official belief in its validity objectively unreasonable, this Court should suppress only that information obtained pursuant to the potentially overbroad portion of the warrant. *See United States v. Fitzgerald*, 724 F.2d 633, 636 (8th Cir. 1983) (en banc). Furthermore, any evidence officers observed in plain view while executing the valid portion of the warrant should not be suppressed. *Id.*

**II. A *Franks* hearing is unwarranted.**

An affidavit in support of a search warrant is presumptively valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). A defendant seeking a *Franks* hearing must make a substantial preliminary showing that: (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement; and (2) that the statement was necessary to the probable cause finding. *Id.* at 155-156. The allegations must be specific and supported by affidavits or other reliable evidence; negligence and innocent mistake are insufficient. *United States v. Brackett*, 846 F.3d 987, 993 (8th Cir. 2017). Here, Defendant Catie Michaelson cannot make either showing.

First, Catie Michaelson cannot show that SA Timothy Gerber "knowing and intentionally, or with reckless disregard for the truth, included a false statement." *Franks*, 438 U.S. at 155-156. Catie Michaelson argues that because the affidavit "assert[ed] that the phone [was] "locked" and access to her iCloud is needed to obtain evidence relevant to the investigation," this must mean that either SA Gerber lied about access to evidence or due to lack of context and explanation recklessly disregarded the truth. Dkt. 766 at 11. This is insufficient. SA Gerber did not lie. "Clearly established Fourth Amendment law requires a warrant application to contain a truthful factual showing of probable cause— "truthful in the sense that the information put

forth is 'believed or appropriately accepted by the affiant as true.'" *Mueller v. Tinkham*, 162 F.3d 999, 1003 (8th Cir. 1998).

Out of an abundance of caution, agents sought to re-extract data pursuant to the amended search warrant. However, the phone was locked and agents did not possess a passcode to the device. As is standard protocol, the device's battery was no longer preserved after the initial extraction, and the device entered Before First Unlock ("BFU") mode, complicating investigators ability to re-extract the data pursuant to the amended warrant application for the Catie Michaelson's phone. Thus, SA Gerber's representation that the phone was locked was not a false statement. Nor was his failure to explain this fact a material omission in "reckless disregard for the truth." *Franks*, 438 U.S. at 155-156. Indeed, "A law enforcement official is not required to include everything he knows about a subject in his affidavit, whether it is material to a finding of probable cause or not." *Tech. Ordnance, Inc. v. United States,* 244 F.3d 641, 649 (8th Cir. 2001). Nor does careless error show reckless or intentional misconduct. *Id.,* at 650. Therefore, defendant fails the first prong.

Second, even if the Court finds that SA Gerber's failure to explain in detail what the word "locked" means, the statement was not necessary to the probable cause finding. *Franks*, 438 U.S. at 155-156. "[R]eckless disregard for the truth may be inferred … only when the material omission would have been clearly critical to the finding of probable cause." *United States v. Randle*, 39

F.4th 533, 537-538 (8th Cir. 2022). Thus, Catie Michaelson must "show that the affidavit would not establish probable cause if the allegedly false information is ignored, or the omitted information is supplemented." *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008). This she cannot do. Supplementing SA Gerber's statement that the phone is "locked" because it was in BFU mode, or ignoring the statement altogether does nothing to diminish the substantial information contained in the affidavit "set[ting] forth sufficient facts to establish that there is a "fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *Id.* at 817. Indeed, the correction leaves the affidavit's substantive grounds unchanged. It still describes an electronically promoted operation and places Catie Michaelson at the pre-operation brief with her phone and 39 unrelated people. 26-mj-358 at 8, ¶ 26. It still identifies her traveling with co-defendants from the pre-operation brief to the site of incident and participating in the invasion of Cities Church. *Id.* at 8-9.

The nexus between the place to be searched and the crime still survives. It still describes the fact that "Instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation." *Id.* at 17, ¶43. And still describes the existence of "user attribution" evidence, explaining that it is analogous to "indicia of occupancy"

and such information allows "investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation." *Id.* at 17, ¶ 44. Those allegations—not an *assumption* that the phone has not yielded evidence—support the fair probability that the identified Apple account information would contain evidence of the charged conduct. As such, defendant fails this prong as well.

Accordingly, Catie Michaelson fails to make a substantial preliminary showing that: (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement; and (2) that the statement was necessary to the probable cause finding, and therefore is not entitled to a *Franks* hearing. *Franks*, 438 U.S. at 155-156

### III. The Good-faith exception applies to the search.

Even if the application and warrant violate the Fourth Amendment, the good-faith exception requires this Court to deny Catie Michaelson's request to suppress "evidence obtained from Apple." Dkt. 766. Pursuant to the good-faith exception, suppression is not "an appropriate remedy" where officers "obtained [evidence] in objectively reasonably reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). "[A]n officer cannot be expected to question the magistrate's probable-cause determination of his judgment that the form of the warrant is technically sufficient." *Id.* Thus, "suppression is appropriate only if the officers were dishonest or reckless in

preparing their affidavit or could not have harbored an objectively reasonably belief in the existence of probable cause." *Id.* at 926; *United States v. Dickerman*, 954 F.3d 1060, 1065 (8th Cir. 2020) (same). Here, as established above, the affiant, SA Timothy Gerber was not dishonest or reckless in preparing the affidavit and had a substantial objective reasonable belief that probable cause existed to search Catie Michaelson's iCloud account. Therefore, suppression is not warranted.

[Page intentionally left blank]

## CONCLUSION

For the foregoing reasons, Catie Michaelson's motion to suppress should be denied. [2]

DATED: October 15, 2026.

DANIEL N. ROSEN
United States Attorney

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

JOHN R. ARBOLEDA
Acting Trial Attorney

*/s/ John R. Arboleda*
John R. Arboleda
Acting Trial Attorney
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 304-8928
E-Mail: john.arboleda@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

[2] The undersigned certifies that this brief is 3675 words, including headings and footnotes as measured by Microsoft Word.