UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br>v.<br>**SHANE RYAN BOLLMAN (14),**<br>Defendant. | Case No. 26-cr-25 (LMP/DLM)<br>**UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO (1) SUPPRESS SEARCH WARRANTS, (2) RETURN PROPERTY, AND (3) HOLD A FRANKS HEARING (DOC. 713)** |

## INTRODUCTION

Bollman seeks suppression of all evidence obtained during execution of the warrants for his cellphone, Nikon camera and storage media, and Apple account. His demand includes the incident photographs recovered from the camera media, and he also requests a *Franks* hearing, return of the seized property, and destruction of copies. Doc. 713 at 27; Doc. 731-17 at 3. The Court should deny suppression because the warrants were supported by probable cause, connected the identified devices and account to evidence of the investigated conduct, and described the evidence to be seized with sufficient particularity.

The affidavits described a coordinated operation to disrupt worship, identified Bollman at the preliminary gathering and the church, and alleged his participation in the interference with congregants. Doc. 731-10 at 7; Doc. 731-10 at 9; Doc. 731-10 at 10. His asserted journalistic purpose does not erase those allegations or the evidentiary connection between the camera and the

photographs it recorded. The government did not attempt to shield the court from this information, but willingly supplied it by including photographs of Bollman taking photographs during the crime. Doc. 731-11 at 11; Doc. 731-11 at 12. Including his asserted journalistic status would not eliminate the warrant-specific probable-cause showing.

Bollman did not chant inside Cities Church. The Government acknowledges the contrary error in the cellphone affidavit and does not rely on it. Doc. 731-10 at 10, ¶ 28. With that sentence excised, the remaining showing supports the warrants and does not require a *Franks* hearing. *Franks v. Delaware*, 438 U.S. 154, 172 (1978).

Even if the Court finds a deficiency in probable cause, nexus, or particularity, the officers' objectively reasonable reliance on the warrants provides a separate ground for denying suppression. *United States v. Leon*, 468 U.S. 897, 922 (1984). That alternative does not excuse a proven material *Franks* violation.

The Government also invokes the Privacy Protection Act's suspect exception for materials possessed by Bollman and relating to the offenses in which the affidavits establish probable cause to believe he participated. 42 U.S.C. § 2000aa(a)(1), (b)(1). The Government did not violate the Privacy Protection Act. In any event, the Act expressly bars exclusion of otherwise admissible evidence solely because of a statutory violation. § 2000aa-6(e). The

Court should reject blanket suppression and destruction and resolve any remaining return-of-property dispute item by item.

## BACKGROUND

The investigation concerns the January 18, 2026, interruption of a religious service at Cities Church. There, according to the affidavits, approximately forty disruptors entered in a coordinated, clandestine manner after participants met at a nearby shopping center and planned their actions inside the church. The operation had been promoted electronically as "Operation Pullup"; the ensuing interference ended the service prematurely and frightened congregants, including children. Doc. 731-10 at 7. Gerber identified Bollman at the preliminary gathering and the church and stated that he traveled to the church after the briefing. Doc. 731-10 at 9. The camera affidavit described Bollman photographing the disruption and included still images of him at different positions inside the church. Doc. 731-11 at 11; Doc. 731-11 at 12.

The March affidavits attribute physical obstruction to the group and to Bollman. The phone affidavit includes him in descriptions of obstruction of departing congregants and interference with movement inside the church. Doc. 731-10 at 7, ¶ 18; Doc. 731-10 at 10, ¶ 30. The camera affidavit includes a corresponding allegation. Doc. 731-11 at 14, ¶ 34.

An arrest warrant issued on February 26. The contemporaneous arrest report states that on February 27, at approximately 9:55 a.m., task-force personnel encountered Bollman in the public area in front of his apartment building as he was leaving his residence and placed him under arrest without incident. Doc. 731-15 at 3. At the time of contact, the report states that Bollman was in possession of personal effects including his cellphone, digital camera, laptop, memory card, and journals, and that those items were seized and retained as evidence at the request of HSI Minnesota personnel. *Id.* The device-specific warrant attachments add that the iPhone, Nikon camera with its storage card, and separate SanDisk 128GB card were found on his person during the arrest. Doc. 731-10 at 21; Doc. 731-11 at 25; Doc. 731-11 at 29.

Gerber's transfer report then lists an iPhone, a Nikon camera, a SanDisk card, a MacBook Pro, and two journals shipped to St. Paul, with receipt recorded on March 2 and transfer to seized-property and computer-forensic personnel, including the taint-analyst team, for preservation and storage. Doc. 731-16 at 3.

This Court's magistrate judges approved three search warrants: (1) the March 13 warrant to search Bollman's cellphone ("cellphone warrant"); (2) the March 23 warrant to search his Nikon camera and storage media ("camera warrant"); and (3) the April 17 warrant to search information associated with

his Apple account ("Apple warrant"). Doc. 731-10 at 28; Doc. 731-11 at 35; Doc. 731-12 at 31.

The cellphone warrant. On March 13, Magistrate Judge Shannon G. Elkins authorized the search of Bollman's identified iPhone based on Special Agent Timothy Gerber's affidavit. Doc. 731-10 at 2; Doc. 731-10 at 28. The affidavit described the coordinated operation, identified Bollman at the advance briefing and church, and alleged interference with congregants. Doc. 731-10 at 7; Doc. 731-10 at 9; Doc. 731-10 at 10. Seeley's examination report records an unsupported-device result during a March 3 preservation attempt, followed by further unsupported processing on March 13 after receipt of the warrant. Exhibit 4, Forensic Examination Report at 1. Hudgens later reported that investigators could not extract the encrypted phone data. Doc. 731-12 at 6, ¶ 11.

The camera warrant. On March 23, Judge Elkins authorized the search of the Nikon camera, its installed card, and the separately carried SanDisk card on Gerber's application. Doc. 731-11 at 2; Doc. 731-11 at 35. Gerber described Bollman using a camera during the disruption and compared its distinctive white marking with the seized Nikon; he also described the separately recovered card. Doc. 731-11 at 11; Doc. 731-11 at 13; Doc. 731-11 at 7. The warrant required execution by April 6, but the return form in the exhibit does not state an execution date. Doc. 731-11 at 35; Doc. 731-11 at 36. Williams

received a filtered extraction on April 7 and reviewed it on April 8 and 9, identifying photographs of the church incident. Doc. 731-17 at 3. Those delivery and review dates do not establish when the original extraction occurred.

The Apple warrant. On April 17, Magistrate Judge Elsa M. Bullard authorized the search of the identified Apple-held information on Special Agent David Hudgens's affidavit. Doc. 731-12 at 2; Doc. 731-12 at 31. Hudgens described the unsuccessful cellphone extraction, Bollman's presence at the preliminary gathering and church, and Apple's communications and storage services. Doc. 731-12 at 6; Doc. 731-12 at 10; Doc. 731-12 at 15. The application sought the account information identified in Attachment A. Doc. 731-12 at 23. Hudgens emailed the warrant packet to Apple on April 20. Exhibit 5 at 2. His execution report documents transmission of the warrant, not the contents of any resulting Apple production.

## ARGUMENT

### I. The warrants were supported by probable cause and described the evidence to be seized with sufficient particularity.

### A. Bollman's asserted journalistic purpose does not defeat the warrant-specific probable-cause showing.

Bollman argues that the applications treated his possession of electronic devices and his newsgathering activity as sufficient grounds to search, without connecting the devices to evidence of a crime. Doc. 713 at 11; Doc. 713 at 12. Bollman's argument fails because the applications did considerably more than

establish his possession of electronic devices. The applications described a coordinated operation, identified Bollman at its preliminary gathering and at the church, and linked particular repositories to the evidence sought. The governing standard asks whether the circumstances establish a fair probability that evidence of a crime will be found in the place identified. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Courts assess the information presented to the issuing judge and give appropriate deference to that judge's determination. *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009). Later discoveries cannot validate a warrant that was invalid when issued. *Maryland v. Garrison*, 480 U.S. 79, 85 (1987).

The required connection remains specific: evidence sought must be linked to the place to be searched. *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). But the issuing judge may draw practical inferences from detailed circumstances rather than demand direct observation of every evidentiary link. *Keele*, 589 F.3d at 944. *United States v. Ventresca* similarly requires a commonsense reading of a fact-supported affidavit, while preserving the requirement of underlying circumstances rather than bare conclusions. 380 U.S. 102, 109 (1965).

In rejecting a facial challenge to Iowa's restriction on camera use during an unlawful trespass, the Eighth Circuit explained: "Without a doubt, trespassing is a legally cognizable injury because it harms the privacy and

property interests of property owners and other lawfully-present persons. Trespassers exacerbate that harm when they use a camera while committing their crime." *Animal Legal Defense Fund v. Reynolds*, 89 F.4th 1071, 1082 (8th Cir. 2024). The court assumed without deciding that using a camera while trespassing implicated protected First Amendment activity. *Id.* at 1080.

The affidavits here describe a conspiracy to obstruct Cities Church, including coordinated entry, disruption of worship, and interference with congregants. Doc. 731-10 at 7. Bollman contributed to that interference not only with his physical presence but also by recording the event. The Government draws the following inferences from that conduct: By positioning his camera close to congregants' faces during the attack, Bollman heightened the parishioner's intimidation and shame—the very purposes of the attack in the first place. Further, recording and publicizing the attack served to embolden codefendants by blessing their actions through participating in the trespass and interruption. His asserted newsgathering purpose may be a competing explanation relevant to a jury, but it does not sever the connection between the event and the records documenting it.

The evidence-to-place nexus also differs from the possessor's culpability. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). Thus, the Government's allegation of participation and the warrants' evidentiary foundations present distinct questions.

Bollman also argues that omitting his status as a journalist concealed the nature of his conduct from the issuing judges. Doc. 713 at 7. The camera application did not conceal his photography: it expressly described that activity and supplied images of him taking photographs during the disruption. Doc. 731-11 at 11; Doc. 731-11 at 12. Adding his asserted journalistic status does not eliminate the warrant-specific probable-cause showing addressed below.

His asserted journalistic status and intended publication purpose raise the statutory issues addressed in Section III. For constitutional probable cause to obtain incident images, however, adding that explanation does not sever the connection between the observed camera and the recordings sought.

The distinction is material under the cases Bollman invokes. In *United States v. Jacobs*, the omitted fact was a drug dog's failure to alert, which undermined the very basis for inferring that the package contained drugs. 986 F.2d 1231, 1235 (8th Cir. 1993). The court also recognized that recklessness may be inferred when omitted information is clearly critical. *Id.* That permissible inference concerns culpability; whether the corrected affidavit still supports probable cause is a separate inquiry.

Here, the asserted journalistic purpose does not undermine the direct observation that the identified camera recorded the incident. It has greater significance to the inference of participation and to statutory coverage, which the Government addresses rather than assumes away. *United States v. Reed*

granted a hearing where omitted observations and a receipt linking a backpack to someone else undermined the already limited connection between the defendant and the gun used to justify a DNA warrant. No. 18-CR-143, 2018 WL 6427897, at *2 (D. Minn. Dec. 7, 2018). *Reed* ordered further inquiry, not final suppression. *Id.* at *3. The camera nexus here does not depend on treating the journalist as someone else or inferring possession of a recording device never associated with him.

*United States v. Glass*, the Fourth Circuit case invoked in the motion, likewise asks whether inclusion of the favorable information defeats the remaining probable-cause showing. 160 F.4th 563, 571 (4th Cir. 2025). It does not make a favorable omission automatically immaterial. The question here is what the corrected account establishes for each proposed search.

**B. Each warrant connected the identified device or account to evidence of the investigated conduct.**

**1. The cellphone warrant connected the device to the operation's preparation and execution.**

Bollman argues that the cellphone application established only that he possessed the phone when arrested and supplied no further connection to the alleged crimes. Doc. 713 at 11. That characterization overlooks the sequence described in the affidavit. Gerber identified Bollman at the advance gathering and the ensuing church incident and stated that he traveled to the church following the briefing. Doc. 731-10 at 9, ¶¶ 25 and 26. The affidavit described

online promotion of the operation and explained how phone communications can preserve arrangements and associated records. Doc. 731-10 at 7; Doc. 731-10 at 5. The Government draws the inference that the identified participant's phone was likely to contain communications or records concerning the gathering, destination, travel, or event. The affidavit does not report recovered planning messages or direct observation of Bollman using this phone for those communications. The issue is whether the stated circumstances nevertheless support a fair probability, not whether investigators had already obtained the communications for which they sought a warrant.

In *United States v. James*, the Eighth Circuit permitted an inference that cellular records would identify a person connected to a series of robberies even without direct observation of a phone. 3 F.4th 1102, 1105 (8th Cir. 2021). The case involved limited tower records, not a categorical authorization to search anyone's phone contents. *Id.* at 1106. Its relevant principle is that a factual sequence and practical inferences may supply the connection; the scope of a resulting search remains independently constrained.

The March 6 decision in *In re Search Warrants* does not require a different result. No. 26-mj-205, 2026 WL 1487454, at *3 (D. Minn. Mar. 6, 2026). The court rejected the requested Austin telephone records because the affidavit failed to connect them to the crime, notwithstanding allegations about his church conduct and later disposal of a phone. Bollman's affidavit adds his

presence at the advance briefing and subsequent travel to the church as part of the described operation. Doc. 731-10 at 9. Those facts, read with the online promotion and Gerber's explanation of phone records, support the Government's communication inference. They do not establish that Bollman received or sent a particular flyer: the affidavit attributes recovery of flyers to Armstrong's and Allen's phones, not his. Doc. 731-10 at 7, ¶ 16. The distinction from the March 6 ruling therefore concerns the additional event-specific sequence, not a claim that every participant's phone is automatically searchable.

**2. The camera warrant connected the Nikon and associated cards to the photographed incident.**

Bollman argues that possession of the camera and cards supplied an insufficient nexus and that his observed photography was journalistic activity. Doc. 713 at 12. But the camera application supplied a direct connection between the identified equipment and recordings of the incident, not possession alone. Gerber described Bollman using a black digital camera with a white logo during the disruption and supplied incident stills for comparison. Doc. 731-11 at 11, ¶ 32; Doc. 731-11 at 12. He then identified the white marking near the lens and presented the seized Nikon. Doc. 731-11 at 13, ¶ 33; Doc. 731-11 at 14. The issuing judge could assess the comparison rather than accept an unexplained assertion that any camera might contain evidence.

The application identified the card inside the camera and a separately carried SanDisk 128GB card. Doc. 731-11 at 6, ¶ 13; Doc. 731-11 at 7, ¶¶ 14 and 15. The observed camera use supplied a direct reason to expect incident images on its installed medium. Recovery of the additional card with the camera, and its described similarity to the installed card, supported an inference of associated storage. That is an inference, not a claim that officers observed use of the second card on January 18. Each repository was separately identified. Doc. 731-11 at 25; Doc. 731-11 at 29.

A recording of the incident could preserve participants' positions, interactions, and conduct during the interruption of worship. The camera application identified the observed recording activity, not simply ownership of photographic equipment. Doc. 731-11 at 11, ¶ 32. Bollman likewise acknowledges that the affidavit described his use of the camera to document the event. Doc. 713 at 12. Whether particular images favor the Government or the defense does not eliminate that evidentiary connection.

*Zurcher* is particularly instructive on that point. Its warrant sought photographs of a confrontation between demonstrators and police from a newspaper whose staff was not alleged to have participated unlawfully. 436 U.S. at 551. The Court rejected the proposed categorical constitutional bar to such a warrant. *Id.* at 565. Here, too, the fact that images could serve a newsgathering purpose did not eliminate their evidentiary value. The original

camera observations and comparison supplied probable cause before investigators recovered the photographs. The breadth of the authorized categories and statutory press protections are separate questions addressed below.

**3. The Apple warrant identified a distinct repository for related communications and account records.**

Bollman argues that the Apple application merely shifted to iCloud after the failed cellphone extraction and offered only boilerplate about what account records might show. Doc. 713 at 11. The Government relies instead on the identified account, the described event sequence, and the services through which related information could be stored. The Apple application explained the turn to Apple after investigators could not extract the phone's encrypted contents. Doc. 731-12 at 6, ¶¶ 9 through 11. It also identified Bollman at the preliminary gathering and the church. Doc. 731-12 at 10, ¶¶ 23 and 24. The failed extraction explains the investigative route; it is neither evidence of guilt nor proof that corresponding information actually reached Apple.

Hudgens described Apple communications, identifiers, connection records, and storage services. Doc. 731-12 at 15; Doc. 731-12 at 16. Attachment A limited the requested information by Bollman's name and a listed identifier; it did not itself supply independent provider confirmation of account ownership or settings. Doc. 731-12 at 23. Read with the briefing-and-travel sequence, the

affidavit supports the Government's inference that the targeted Apple-held information would include records relevant to the arrangements and event. That is an inference from the warrant presentation, not a claim that every iPhone produces a complete cloud copy or that later provider process supplied the original nexus.

The inference must be tested against the particular information sought. Account and connection records bear on attribution and use; communications may document arrangements surrounding the event; location records may document travel. The authorized categories reflect those purposes. Doc. 731-12 at 24; Doc. 731-12 at 25; Doc. 731-12 at 26. The affidavit's description of possible storage does not establish that backups or synchronization were enabled, that Nikon images were uploaded, or that Apple produced any particular record. The Government does not premise probable cause on those unproved facts. The media provision and the scope of provider production require the additional analysis below.

Attachment A describes Apple-held information, not authority to physically search every computer Bollman owned. Doc. 731-12 at 23. The signed extension order required service within fourteen days and extended the provider-production period. Doc. 731-12 at 46; Doc. 731-12 at 47. Hudgens subsequently recorded emailing the warrant packet for Bollman's Apple warrant, No. 26-mj-365, on April 20. Exhibit 5 at 2. That report documents

transmission of process, not Apple's production, the contents of a return, or substantive review. It does not add evidence to the probable-cause showing made on April 17.

**C. The warrants articulated sufficient particularity.**

Bollman argues that the warrants authorized a general search without meaningful limits. Doc. 713 at 24. His cited authorities do not establish that defect here. Particularity requires tailoring to the search's justification. *United States v. Pennington*, 287 F.3d 739, 744 (8th Cir. 2002). The terms must be read in context. *United States v. Fiorito*, 640 F.3d 338, 347 (8th Cir. 2011).

The cellphone warrant incorporated Attachments A and B identifying the iPhone and limiting seizure to evidence, fruits, and instrumentalities of the specified §§ 241 and 248(a)(2) offenses. Doc. 731-10 at 28; Doc. 731-10 at 21; Doc. 731-10 at 22. Its communications categories included a January 1-through-present period; its additional travel, contact, access, and contextual provisions did not all repeat that limit. Doc. 731-10 at 22; Doc. 731-10 at 24.

The camera warrant incorporated descriptions of the Nikon and separate card and corresponding evidentiary attachments. Doc. 731-11 at 35; Doc. 731-11 at 25; Doc. 731-11 at 29. The photographic provisions identified the events discussed in the affidavit and a January 1-through-present period. Doc. 731-11 at 26; Doc. 731-11 at 30.

Under the Government's construction, "other organized protest activity" reaches records of another protest only when they supply evidence of the specified offenses, not unrelated lawful protest activity. Doc. 731-10 at 22; Doc. 731-11 at 27. *Andresen v. Maryland* permits a broad phrase to be read with the particular transaction and accompanying evidentiary list. 427 U.S. 463, 480 (1976).

In *United States v. Jackson*, the magistrate judge recommended suppression because the cellphone warrant authorized any and all files without an offense-based restriction. No. 18-cr-211, 2019 WL 13127190, at *10 (D. Minn. Jan. 4, 2019) (corrected report and recommendation). There, the court held that the Government could not cure the defect through an application the warrant failed to incorporate. *Id.* at *11. Here, the signed warrants incorporate their evidentiary attachments. That also distinguishes *Groh v. Ramirez*, which requires particularity in the warrant rather than a separate, unincorporated application. 540 U.S. 551, 557 (2004).

The Apple warrant specified the account and separate production periods: January 1 through January 31 for communications and January 11 through January 18 for connection and location records. Doc. 731-12 at 24; Doc. 731-12 at 25; Doc. 731-12 at 26. The media provision covered material stored on January 18, not just created that day; not every auxiliary category had a date limit. Doc. 731-12 at 26. Attachment B, Section II separately limited

Government seizure to information constituting evidence, fruits, contraband, or instrumentalities of the specified offenses involving Bollman. Doc. 731-12 at 27.

Unlike the political-materials warrant invalidated in *Stanford v. Texas*, these warrants describe offense-related evidence. 379 U.S. 476, 486 (1965). First Amendment interests still require scrupulous Fourth Amendment safeguards. *Zurcher*, 436 U.S. at 564. Read in context, the restrictions supply sufficient particularity. Bollman is not entitled to suppression on that ground.

**D. The Court should deny a *Franks* hearing on the corrected, warrant-specific showing.**

Bollman requests a *Franks* hearing. Doc. 713, at 20-22. However, he is not entitled to a *Franks* hearing because the corrected warrants contained probable cause to believe Bollman conspired to violate the FACE Act. A *Franks* hearing addresses deliberate or reckless deception that matters to probable cause. *Franks*, 438 U.S. at 156. It is not a hearing to resolve every disagreement with an affidavit's wording or every dispute about the defendant's ultimate guilt. *Id.* at 170; *id.* at 171. The defendant must make a substantial preliminary showing of a knowing or reckless falsehood, supported by a specific proffer; negligence or innocent mistake is insufficient. *Id.* at 171. An omission requires an intentional or reckless misleading omission and a

showing that including the omitted information would defeat probable cause. *United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015).

Bollman identifies two principal categories of alleged deception. First, he attacks descriptions of his conduct, particularly chanting and obstruction. Second, he contends that the affidavits concealed his photojournalistic role. Doc. 713 at 6; Doc. 713 at 7; Doc. 713 at 21.

**1. The remaining showing supports each warrant without the chanting statement.**

Cellphone. Removing the chanting sentence leaves Gerber's identification of Bollman at the preliminary gathering and church, the travel sequence, the operation's online promotion, the identified device, and the contested obstruction allegations. Doc. 731-10 at 9; Doc. 731-10 at 7; Doc. 731-10 at 21. Adding the asserted newsgathering purpose and absence of personal flyer distribution does not eliminate the reasonable inference of communications or associated records concerning those arrangements. That is the inferential nexus defended in Section I.B.1, not a claim that any specific message was observed or extracted.

Camera and cards. The camera affidavit does not repeat the phone affidavit's individual chanting sentence. Its visual comparison, observed camera use, and descriptions of the installed and separately carried cards remain after adding Bollman's journalistic role and his denial of unlawful

participation. Doc. 731-11 at 11; Doc. 731-11 at 13; Doc. 731-11 at 7. Those facts support the probability that the media contain incident recordings. The Government preserves the separate obstruction allegation; it does not need to convert every recording into evidence of its creator's guilt to establish that constitutional evidence-to-place nexus. *Zurcher*, 436 U.S. at 556. The PPA requires the distinct analysis in Section III.

Apple. The Apple affidavit contains no corresponding individual chanting statement and uses "some of the disruptors" when describing physical obstruction of departing congregants. Doc. 731-12 at 8, ¶ 16. Its account of blocking within the church is general rather than the March affidavits' specific assertion that Bollman could be seen doing so. Doc. 731-12 at 11, ¶ 28. The Government does not import the more specific March wording into Hudgens's affidavit. For this materiality analysis, the Government assumes inclusion of the credentials, newsgathering purpose, and March 24 disclosure that Bollman identifies. Doc. 713 at 7. Even with that information included, the affidavit still identifies Bollman at the advance gathering and church and describes the Apple-held information sought. Doc. 731-12 at 10; Doc. 731-12 at 23. The resulting constitutional nexus is the account-specific inference defended in Section I.B.3, subject to its category-specific limits, not an assumption of successful phone extraction or enabled backup.

These materiality arguments rest on the warrant presentations themselves. *United States v. Reinholz* does not permit retroactive supplementation with additional Government facts to repair a knowingly or recklessly false statement. 245 F.3d 765, 775 (8th Cir. 2001). The photographs reviewed in April therefore are not added to the March affidavits to establish probable cause. Nor does the fact that the Apple application followed the camera review prove that Hudgens used the photographs. The April 20 transmission report likewise cannot supply the April 17 application's original nexus. The Government relies on the sources and allegations actually presented.

**2. The chanting error does not eliminate the remaining probable-cause showing.**

The cellphone affidavit's statement that Bollman was among those chanting inside Cities Church is inaccurate. Doc. 731-10 at 10, ¶ 28. That sentence should be excluded from the probable-cause analysis. The resulting question is what the affidavit establishes without it, not whether the mistake can be relabeled as accurate. *Franks*, 438 U.S. at 172.

Falsity, culpability, and materiality are separate inquiries. In *United States v. Reinholz*, the court approved deletion of reckless misrepresentations. 245 F.3d 765, 775 (8th Cir. 2001). It nevertheless held that the existing remainder established probable cause. *Id.* at 776. Even a knowingly or

recklessly false statement does not require a hearing when the remaining affidavit still establishes probable cause. *Franks*, 438 U.S. at 172.

Bollman contends that the video reviewed by Gerber plainly showed that he was "engaged only in newsgathering." Doc. 713 at 7. His claim identifies the reviewed footage as the asserted reason Gerber should have doubted the chanting statement. However, Bollman cannot show that Gerber entertained serious doubts or had obvious reasons to question accuracy; inaccuracy does not automatically establish deliberate fabrication. *United States v. Johnson*, 75 F.4th 833, 842 (8th Cir. 2023). Even assuming the required preliminary showing of knowing or reckless falsity for that sentence, its removal leaves the warrant-specific foundations discussed above.

**3. The obstruction allegations concern Bollman's movement and participation in the crowd, not his chanting.**

Bollman contends that the photographs show him physically apart from the group throughout the incident. Doc. 713 at 6. The stills included in the camera application show him in several positions, including near other attendees and between seating areas. Doc. 731-11 at 12; Doc. 731-11 at 13. Those images support a more limited conclusion than either side's categorical characterization: he was not shown only in a single, isolated location, but proximity in a still image does not itself establish that he impeded a congregant. The camera affidavit's separate allegation attributes interference

with congregants' freedom of movement to the disruptors, including Bollman. Doc. 731-11 at 14, ¶ 34.

Bollman's movement and occupation of space within the group contributed to its collective obstruction. That is the Government's inference from the conduct described in the affidavits, not a contention that every nearby photographer committed an offense. The phone affidavit separately alleges obstruction of departing congregants and blocking of movement inside the church. Doc. 731-10 at 7, ¶ 18; Doc. 731-10 at 10, ¶ 30. Absence of chanting does not disprove those different allegations. Nor does lack of a still identifying a particular doorway, by itself, establish that the collective-interference account was fabricated. The actual conduct and the evidentiary basis for the affiant's characterization remain the pertinent questions.

Bollman argues that his finished photographs show that he documented congregants and interactions at the scene. Doc. 713 at 8; Doc. 713 at 11. However, this does not undermine the probable cause Agent Gerber had to believe that Bollman participated in a conspiracy and that evidence of that conspiracy might properly be found on his cellphone.

Next, Bollman challenges the affidavit's collective attribution of organizing activity to the co-defendants. Doc. 713 at 6. The cellphone affidavit identifies the flyers recovered from Armstrong's and Allen's phones. Doc. 731-10 at 7, ¶ 16. These flyers describe the operation's promotion; they do not

attribute another person's messages to Bollman. Removing any suggested inference of his personal flyer distribution does not remove his separately described attendance at the briefing and subsequent travel. Doc. 731-10 at 9, ¶¶ 25 and 26.

Bollman also points to prior warrant proceedings and the March 6 court's criticism of the failure to address the PPA. Doc. 713 at 16; *In re Search Warrants*, 2026 WL 1487454, at *2. That statutory issue is addressed in Section III. The order addressed different applications and did not decide the factual accuracy or materiality of these affidavits. It left three applications under advisement for notice and briefing and denied the separate Austin application for lack of nexus. *Id.* at *4. Neither those dispositions nor the later procedural history described in the motion substitutes for the required showing of deception material to one of Bollman's warrants. The Government accordingly requests denial of a *Franks* hearing on the corrected, warrant-specific analysis above.

**II. The good-faith exception provides an alternative ground for denying suppression.**

Bollman argues that knowing or reckless misrepresentations, an obviously deficient nexus, and facial overbreadth preclude good-faith reliance. Doc. 713 at 25; Doc. 713 at 26. The Government does not invoke *Leon* to excuse a proven material *Franks* violation. For the remaining warrant objections,

however, suppression still turns on objective reliance even if the Court identifies a deficiency in probable cause, nexus, or particularity. *Leon*, 468 U.S. at 922. The issue is not whether the Court can identify a better affidavit or narrower category, but whether a reasonably trained officer would have known the search was illegal despite judicial authorization. *United States v. Houston*, 665 F.3d 991, 995 (8th Cir. 2012).

The camera application's incident stills and distinctive-mark comparison provide the strongest basis for reliance. Doc. 731-11 at 12; Doc. 731-11 at 13. The phone application identifies the advance gathering, ensuing travel, and described operation, supporting the communication inference even if the Court finds its explanation incomplete. Doc. 731-10 at 7; Doc. 731-10 at 9. The Apple application likewise combines the identified participant's event sequence with an explanation of the requested services, although it does not establish enabled backups. Doc. 731-12 at 10; Doc. 731-12 at 15. These are the concrete features on which the Government bases objective reliance, not the affidavits' length. *United States v. Dickerman* sustained reliance on detailed investigative and technical information rather than an isolated conclusion about a computer system. 954 F.3d 1060, 1067 (8th Cir. 2020). The Government's reliance argument here is confined to the documented investigative information, without assuming additional officer knowledge.

The Eighth Circuit distinguishes an insufficient nexus from an affidavit so lacking in indicia of probable cause that reliance is entirely unreasonable. *United States v. Proell*, 485 F.3d 427, 432 (8th Cir. 2007). The Government invokes that distinction particularly for the inferential phone and account connections. *United States v. Frangenberg* questioned the warrant's probable cause but reversed suppression under *Leon* after considering the concrete information known to the officers. 15 F.3d 100, 103 (8th Cir. 1994). It supports a separate reliance inquiry, not a presumption that every weak nexus is cured by a warrant.

Bollman relies on *Groh* to argue that the warrants failed to describe with particularity the places to be searched and things to be seized. Doc. 713 at 24. Yet the incorporated descriptions distinguish these authorizations from *Groh*'s failure to identify any items to be seized. Doc. 731-10 at 28; Doc. 731-11 at 35; Doc. 731-12 at 31; *Groh*, 540 U.S. at 557. But an incorporated category can still be so broad that reliance is unreasonable. *Jackson* recommended suppression where both the warrant's breadth and the absence of evidence about execution defeated the Government's reliance position. 2019 WL 13127190, at *12. The Government relies here on the offense-based restrictions and separately described evidentiary categories, not an assumption that judicial signature alone cures all defects or that every reviewer followed the intended restrictions.

*Leon*'s limits remain controlling: material knowing or reckless deception, abandonment of the judicial role, an affidavit so lacking in probable-cause indicia that reliance is entirely unreasonable, and a facially deficient warrant on which an officer cannot reasonably rely. 468 U.S. at 923. The Government does not use this alternative to cure a proven material *Franks* violation. *Jacobs* expressly rejects that approach. 986 F.2d at 1235. Nor does the Government ask the Court to disregard the March 6 media-related warning or assume compliance with procedures not established here. The officers' objectively reasonable reliance thus provides an alternative ground for denying suppression for the warrant defects addressed above. The PPA presents a separate statutory question.

**III. The Government invokes the Privacy Protection Act's suspect exception, and the Act does not supply the requested exclusionary remedy.**

The Government invokes the Privacy Protection Act's suspect exception for Bollman-held materials relating to the offenses in which the affidavits establish probable cause to believe he participated. 42 U.S.C. § 2000aa(a)(1), (b)(1). Bollman argues that the Government searched journalistic materials without addressing the Act and that the violation requires suppression. Doc. 713 at 25. That argument does not overcome the suspect exception or the Act's express rule against exclusion solely for a statutory violation. § 2000aa-6(e).

The Privacy Protection Act protects qualifying journalistic materials and must be analyzed on its own terms. Work-product materials require the statutory elements concerning preparation in anticipation of public communication, possession for that purpose, and the creator's mental impressions, conclusions, opinions, or theories. 42 U.S.C. § 2000aa-7(b). Documentary materials include photographs and other recorded information, subject to the statute's exclusions. § 2000aa-7(a). Sections 2000aa(a) and (b) protect the categories separately where their public-dissemination and interstate-or-foreign-commerce conditions are met. Their exceptions also differ: the destruction-of-evidence exception in subsection (b)(3) is not a general exception for work product under subsection (a). Ownership by an indicted person does not by itself resolve coverage.

The statutory exclusions for contraband, fruits, criminally possessed property, and instrumentalities do not remove every evidentiary photograph from the protected categories merely because it may prove an offense. § 2000aa-7(a), (b). The Government therefore addresses the suspect exception rather than declaring all journalistic images unprotected at the outset.

The statute permits otherwise lawful searches of covered materials where there is probable cause to believe their possessor committed the offense to which they relate, subject to the proviso for offenses consisting of receipt, possession, communication, or withholding of the materials or information. §

2000aa(a)(1), (b)(1). The Government invokes that exception for Bollman-held materials on the basis of his alleged participation in the described interference, not his photography or intended publication. The March affidavits identify his attendance at the advance briefing, travel, and alleged contribution to obstruction. Doc. 731-10 at 7; Doc. 731-10 at 9; Doc. 731-11 at 14.

Bollman identifies no authority permitting exclusion of otherwise admissible evidence solely because of a Privacy Protection Act violation. Congress expressly foreclosed that remedy: "Evidence otherwise admissible in a proceeding shall not be excluded on the basis of a violation of this chapter." § 2000aa-6(e). Congress provided a civil damages remedy, including covered claims against the United States, rather than an exclusionary remedy based solely on the Act. § 2000aa-6(a). Thus, even assuming a statutory violation, the evidence's admissibility must be determined under the independent constitutional arguments addressed above.

## IV. Agents lawfully seized the identified devices during Bollman's arrest; examination of digital contents required separate authority.

### A. The on-person seizures fall within the arrest exception.

The contemporaneous arrest report, HSI ROI 267, filed as Defendant's Exhibit O (Doc. 731-15), documents that, when agents contacted Bollman in the public area in front of his apartment building, he was in possession of a cellphone, digital camera, laptop, memory card, and journals, and that those

items were seized and retained as evidence at the request of HSI Minnesota personnel. Doc. 731-15 at 3. For the phone, camera, and storage media challenged here, the warrant attachments supply the more specific location detail: they identify the iPhone, Nikon camera with its installed card, and separate SanDisk 128GB card as found on Bollman's person. Doc. 731-10 at 21; Doc. 731-11 at 25; Doc. 731-11 at 29. Those documented on-person seizures fall within the arrest exception.

A lawful custodial arrest permits a search of the arrestee's person and the area within his immediate control. *United States v. Perdoma*, 621 F.3d 745, 750 (8th Cir. 2010). *United States v. Bragg* applies the principle directly to a phone: officers lawfully seized the device incident to arrest, then obtained a warrant to examine its digital contents. 44 F.4th 1067, 1071 (8th Cir. 2022).

The arrest did not authorize an unrestricted search of digital contents, and the Government does not use it for that purpose. Nor is it necessary to assume that the arresting agents knew every fact later assembled for the camera warrant in order to defend taking the on-person items into custody.

ROI 267 also establishes that the laptop and journals were among Bollman's personal effects in his possession at the time of the arrest and were seized and retained as evidence. Doc. 731-15 at 3. The report does not state whether either item was in Bollman's clothing, hand, a bag, or another location within his immediate control, and, unlike the device-specific warrant

attachments, it does not describe the laptop or journals as "found on" his person. The Government therefore does not extend that more precise on-person formulation to those items. Their continuing retention presents the separate property questions addressed in Section V.

**B. Preservation of a physical device is distinct from examining its information.**

*Riley v. California* preserves this distinction. Officers may secure a phone while seeking judicial authorization, but arrest authority alone generally does not permit examination of its digital information. 573 U.S. 373, 388 (2014). The ordinary course for the digital search is to obtain a warrant. *Id.* at 403. Here, separate warrants identified the phone and camera media and described the information subject to seizure. Doc. 731-10 at 28; Doc. 731-11 at 35. The Court should therefore distinguish the lawful physical seizure from the separate authority required for any examination of digital contents.

The March 3 interaction presents a separate issue: what information, if any, the tool accessed. Seeley reports an unsupported-device limitation, continued charging, and a further processing attempt after receipt of the warrant. Exhibit 4, Forensic Examination Report at 1. The software's "Paired/Consent" label is not evidence of Bollman's legal consent. Hudgens subsequently reported that agents could not extract the encrypted data. Doc. 731-12 at 6, ¶ 11. Neither that reported failure nor the product's name

establishes every technical effect of the earlier connection. The Government does not rely on arrest authority or the later warrant to retroactively authorize an earlier digital examination.

Delay is measured by the totality of the circumstances, including the possessory interest, duration, evidentiary need, investigative complexity, and diligence. *Bragg*, 44 F.4th at 1072. ROI 267 establishes the February 27 arrest and seizure and states that the property was seized and retained as evidence at the request of HSI Minnesota personnel. Doc. 731-15 at 3. The transfer report records shipment on February 27 and receipt on March 2; the Seeley report records the March 3 forensic interaction; and the phone and camera warrants issued on March 13 and March 23, 14 and 24 days after the arrest, respectively. Doc. 731-16 at 3; Exhibit 4, Forensic Examination Report at 1; Doc. 731-10 at 28; Doc. 731-11 at 35. That sequence documents interoffice transfer and, for the phone, a preservation step while judicial authorization was being sought; it does not establish comparable prewarrant forensic activity for the camera or every intermediate drafting and review step.

The Government also does not rely on continued detention to diminish Bollman's possessory interest: ROI 267 states that, after his same-day initial appearance, he was released on personal recognizance. Doc. 731-15 at 4. *Bragg*'s approval of a 24-day period therefore remains fact-specific and is not a numerical safe harbor. 44 F.4th at 1073. The intervals here must stand on

the other circumstances actually documented, including the evidentiary purpose, interoffice transfer, preservation activity, investigative demands shown by the record, and diligence.

Likewise, the brief reasonable-suspicion detention addressed in *United States v. Place*, 462 U.S. 696, 709 (1983), does not establish a fixed deadline for these arrest-related seizures. Any disputed period and its claimed evidentiary consequences require that fact-specific analysis; present retention is a separate issue addressed in Section V.

**V. The Court should reject wholesale destruction and resolve any remaining return request item by item.**

Bollman's final request extends beyond exclusion at trial. He seeks the return of the phone, camera, lens, laptop, storage devices, notebooks, and cloud data, and destruction of copies held by the Government and codefendants. Doc. 713 at 27. Those remedies require distinctions between physical property, responsive evidence, unrelated material, and protected communications.

The incident photographs are an identifiable evidentiary record. Doc. 731-17 at 3. Their newsgathering purpose does not justify destruction of all copies. *Matter of Search of Natanson* preserved access to responsive documents while protecting other material through judicial review. 2026 WL 1458902, at *9 (E.D. Va. May 4, 2026). The appropriate distinction is between evidence within a lawful authorization and nonresponsive or protected information, not

between images made by journalists and images made by everyone else. Thus, the Court should reject the demand for wholesale destruction of responsive incident images and copies.

Physical devices may have evidentiary value apart from their contents. *United States v. Burris* applied that principle to seven phones whose possession itself helped establish the investigated drug activity. 22 F.4th 781, 785 (8th Cir. 2022). It did not hold that every seized phone has independent evidentiary value indefinitely. Here, the Nikon's appearance and distinctive marking supplied part of the incident identification comparison. Doc. 731-11 at 13; Doc. 731-11 at 14. That concrete characteristic supports considering retention of the camera separately from preservation of its images. Continued need for the phone, each card, and other physical items must be assessed on their own facts.

The warrant addenda preserve requests for copies and motions for return. Doc. 731-10 at 26; Doc. 731-10 at 27; Doc. 731-11 at 33; Doc. 731-11 at 34. The camera application also contemplates return when equipment is no longer needed for retrieval or preservation and is not otherwise properly seizable. Doc. 731-11 at 23. The Government does not assert that inability to extract the phone establishes an endless need to hold it, that successful extraction necessarily ends every evidentiary need for a device, or that all material described as filtered may be retained without further review.

The Court should reject the requested blanket order, including indiscriminate destruction of copies, and resolve remaining return and protection issues on a dated, item-specific custody and access record. For the phone, camera, lens, and cards, the record should identify the current custodian, present evidentiary need, and means of preserving responsive evidence.

ROI 267 establishes that a laptop and journals were among Bollman's personal effects in his possession at the arrest and were seized and retained as evidence at the request of HSI Minnesota personnel; the transfer report identifies a MacBook Pro and two journals in the later shipment to St. Paul. Doc. 731-15 at 3; Doc. 731-16 at 3. Those reports establish the seizure, but not their exact physical location at seizure, their current custodian, their present evidentiary need, or independent authority for continued retention. They cannot be retained merely by extending the phone warrant to every item in the shipment.

For cloud data and extracted copies, the inquiry should distinguish responsive, nonresponsive, privileged, and otherwise protected material and identify who holds or has accessed it. The Government does not represent that the historical reports establish current return, deletion, distribution, or access status. Focused judicial review can protect those interests without destroying the entire incident record. See *Natanson*, 2026 WL 1458902, at *9.

## CONCLUSION

The Court should deny Bollman's motion to suppress and his request for a *Franks* hearing. It should also deny his demand for blanket destruction and wholesale return, while preserving an item-specific determination of continued physical retention and any identified nonresponsive, privileged, or otherwise protected material.

DATED: October 1, 2026.

Respectfully submitted,

**DANIEL N. ROSEN**
United States Attorney

**HARMEET K. DHILLON**
Assistant Attorney General

**ROBERT J. KEENAN**
Acting Dep. Asst. Attorney General

**NEVILLE HEDLEY**
Acting Senior Trial Attorney

*/s/ Flávio Abreu*
Flávio Abreu
Attorney
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 514-3847
E-Mail: Flavio.abreu@usdoj.gov

*Attorneys for Plaintiff*
**UNITED STATES OF AMERICA**