**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

NEKIMA VALDEZ LEVY ARMSTRONG, *et al.*,

Defendants.

Case No. 0:26-cr-025-LMP-DLM

**OPPOSITION TO DEFENDANTS' JOINT MOTION TO STRIKE APPEARANCE OF GOVERNMENT'S COUNSEL**

The United States of America submits this brief in response to Defendants' Joint Motion to Strike Appearance of Government's Counsel. (Dkt. 701.)[1]

## INTRODUCTION

Defendants move this Court to strike the appearance of Acting Trial Attorney John R. Arboleda and bar his continued representation of the Government in this case. Mr. Arboleda is a Captain in the United States

[1] The moving defendants for the subject motion (ECF 701) are: Tier, Armstrong, Allen, Crews, Austin, Richardson, Lundy, Aboud, Blumenfeld, Carey, Cullars-Doty, Dunlap, Edwards, Gogligoski, Hauptman, Hogan, Matthias, Catie and Eric Michaelson, Okar, Perry, Persigehl, Moreno, Bocanegra, Shaw, Strong-Allen, Charles Swenson, and Vergin (collectively, "Defendants").

Army's Judge Advocate General Corps and is currently on a full-time, 18-month, reimbursable detail to the Civil Rights Division of the U.S. Department of Justice. As that arrangement reflects, the Army and Department of Justice has determined that Mr. Arboleda's detail and his representation of the Government in this case is in the best interests of the Army and the Department of Justice.

Defendants allege that Mr. Arboleda's participation in this case as an attorney for the Government violates the Posse Comitatus Act of 1878 ("PCA"), 18 U.S.C. § 1385, and unrelated Army regulations regarding the service of Army JAGs as counsel to other components of the Executive Branch. The motion lacks merit and should be denied.

The PCA expressly acknowledges that Congress may by law provide exceptions to the Act, and Congress has *expressly* authorized the appointment of military lawyers to assist in prosecuting civilian criminal offenses. Thus, Mr. Arboleda's service as one of the prosecutors assigned to this case is valid and legally permissible under the express provisions of 10 U.S.C. §§ 806(e)(1) and 973(b)(2)(B). He is on a full-time, 18-month, reimbursable detail to the Civil Rights Division, performing the functions of a federal prosecutor in an entirely civilian capacity and supervised entirely by civilian employees of the Department of Justice. Finally, Defendants' reliance on the Army regulations is also without merit. Defendants have no standing to invoke

those regulations to challenge whether Mr. Arboleda's statutorily-valid detail is "in the interest of the Army," and the regulations do not bar his work on this case.

## ARGUMENT

### I. Legal Standard

Courts interpret statutory language "according to its ordinary and contemporary, common meaning." *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022) (internal quotation marks removed). Where this ordinary meaning is unambiguous or plain, "the judicial inquiry is complete." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2020); *Bostock v. Clayton Cty*, 590 U.S. 644, 674 (2020); *see also United States v. Vig*, 167 F.3d 443, 448 (8th Cir. 1999) ("[W]hen the terms of a statute are unambiguous, judicial inquiry is complete.").

"The Court may not 'replace the actual text with speculation as to Congress' intent.' Rather, the Court 'will presume more modestly that the 'legislature says what it means and means what it says.'" *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) (citations omitted). When "statutes are straightforward and clear, legislative history and policy arguments are at best interesting, and at worst distracting and misleading, and in neither case authoritative." *Northern States Power Co. v. United States*, 73 F.3d 764, 766 (8th Cir. 1996).

When reviewing multiple statutes, "the Court will 'regard each as effective' — unless Congress' intention to repeal is 'clear and manifest,' or the two laws are 'irreconcilable.'" *Main Community Health Options v. United States*, 590 U.S. 296, 315 (2020) (citing *Morton v. Mancari*, 417, U.S. 535, 550-51 (1974)). Likewise, when reviewing "two acts of Congress allegedly touching on the same topic, [the] Court is not at "liberty to pick and choose among congressional enactments' and must instead strive to 'give effect to both.'" *Morton*, 417 U.S. at 551.

## II. The Posse Comitatus Act is Inapplicable, and Congress Has Expressly Authorized JAG Attorneys to Serve Details as Federal Prosecutors

The Posse Comitatus Act ("PCA) does not bar Mr. Arboleda's service as an Acting Trial Attorney in this case, under civilian control. The PCA says it is subject to express exceptions authorized by Congress, and, as detailed below, Congress has enacted statutes that expressly authorize the appointment of active-duty officers to assist in civilian law enforcement. Thus, the defendants' argument ignores the law and is plainly invalid.

### A. The Posse Comitatus Act

The PCA is a criminal statute that provides as follows:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army . . . as a posse comitatus or otherwise to execute the

> laws shall be fined under this title or imprisoned not more than two years, or both.

*See* 18 U.S.C. § 1385.

The Act was passed in 1878, around the end of the Reconstruction Era, as part of the compromise that resolved the disputed 1876 Hayes-Tilden presidential election. Democratic politicians had once again gained control of the former Confederate states, and they insisted on the PCA to ensure federal troops were no longer able to counter the Klan, block enforcement of Jim Crow laws, or "to police state elections in ex-Confederate states." *See, e.g., United States v. Allred*, 867 F.2d 856, 870 (5th Cir. 1989); *see also* J. Nunn, The Posse Comitatus Act Explained (Sep. 29, 2025). Despite these "ignominious origins" (*id.*), the PCA embodies a legitimate interest in civilian control of the government and "a long tradition of suspicion and hostility towards the *use of military force* for domestic purposes." *See Bissonette v. Haig*, 776 F.2d 1384, 1389 (8th Cir. 1985), *aff'd on reh'g*, 800 F.2d 812 (8th Cir. 1986) (emphasis added).

Because it defines a crime, the PCA's text must be construed and applied in accordance with its "ordinary" meaning, not with the sophistry and legerdemain deployed in Defendants' pending motion. *See, e.g., Burrage v. United States*, 571 U.S. 204, 210, 216 (2014) ("Especially in the interpretation of a criminal statute subject to the rule of lenity," … [the courts] cannot give

the text a meaning that is different from its ordinary, accepted meaning, and that disfavors the defendant.") (citation omitted)).

### B. <u>The Detail of a JAG Attorney Does Not Constitute Use of a Part of the Military In Violation of the PCA</u>

The PCA is obviously inapplicable because, as explained below, Congress has passed laws that expressly authorize details of judge advocates to other agencies of the U.S. Government to represent the Government in civil and criminal civilian cases. Before getting to those statutory exceptions, however, it bears noting that use of a JAG attorney as a prosecutor in a federal civilian case does not even fall within the PCA's proscriptive scope.

Defendants' motion rests on a vacuous "Military Bad!" conception of the PCA. Defendants suggest that the PCA is violated whenever an active-duty service member does anything to assist a civilian law enforcement officer "execute the laws." That, however, is not true.

Under settled law, the "standard for determining whether a violation of the Posse Comitatus Act had occurred" is as follows:

> Were Army . . . personnel used by the civilian law enforcement officers . . . in such manner that the military personnel subjected the citizens to the exercise of military power which was regulatory, proscriptive, or compulsory in nature?

*See Bissonette*, 776 F.2d at 1390 (quoting *United States v. Casper*, 541 F.2d 1275, 1278 (8th Cir. 1976)). The phrase "regulatory, proscriptive, or

compulsory" means that the activities of military personnel constituted the use of "military power" were used in a manner that "directly restrained plaintiffs' freedom of movement." *Id.*

"[M]ilitary involvement, *even when not expressly authorized by the Constitution or a statute*, does not violate the Posse Comitatus Act unless it actually regulates, forbids, or compels some conduct on the part of those claiming relief. A mere threat of some future injury would be insufficient." *Id.* at 1390. Indeed, even the military's "furnishing of materials and supplies cannot violate the statute," and "[t]he same thing is true . . . of the use of military personnel, planes, and cameras to fly surveillance and *the advice of military officers in dealing with the disorder*, *advice*, that is, *as distinguished from active participation or direction*." *Id.* (emphasis added).

The Eighth Circuit's application of this test in multiple cases demonstrates why defendants' reliance on the PCA must be rejected. In *Casper*, for example, a case involving the Government's response to the 1973 seizure and occupation of the Village of Wounded Knee, South Dakota, by 200 Lakota Indians, several defendants who were convicted of attempting to interfere with agents of the FBI and U.S. Marshals Service appealed their convictions on the ground that the agents had illegally used military personnel and assets in violation of the PCA. *See Casper*, 541 F.2d at 1275-78. The district court found on a stipulated record that the following

activities *did not violate the PCA*: the use of Air Force personnel, planes, and cameras to fly surveillance; the advice of military officers in dealing with the disorder; and the furnishing of equipment and supplies. *Id*. at 1277. On appeal, the Circuit affirmed "on the basis of the trial court's thorough and well-reasoned opinion," which set out the above-referenced standard and then applied it to the facts of that case. *Id*. at 1276-78.

*Bissonette* is another case arising from the Wounded Knee incident. Based on the *Casper* test, the Eighth Circuit held that the plaintiff's claim that the FBI and USMS used military personnel to "maintain[] roadblocks and armed patrols constituting an armed perimeter around the village" and that defendants' conduct "seized, confined, and made prisoners [of plaintiffs] against their will" was sufficient to allege a violation of the PCA and the Fourth Amendment. *See Bissonette*, 776 F.2d at 1390-91. *However, the Circuit rejected the plaintiff's second claim*, which alleged that military personnel, working together with the FBI and USMS, "subjected [plaintiffs] to surveillance against their will by aerial photographic and visual search and surveillance" does not constitute a violation of the PCA. *Id*. at 1391. Even though these acts were done by military personnel to assist an active law enforcement operation (which was basically a 71-day siege), the Circuit held that this sort of activity d*id not violate the PCA*. *Id*.

Other Circuits are in accord. In *United States v. Hartley*, 796 F.2d 112 (5th Cir. 1986), for example, the Fifth Circuit *rejected* a PCA-based challenge to the defendant's drug-trafficking conviction *even though* the defendant was apprehended through the assistance of an Air Force reconnaissance plane, which monitored his drug-laden aircraft as he flew it to the United States and coordinated with U.S. Customs Service to facilitate the defendant's arrest. *Id*. at 114. As the Circuit explained, "'aerial photographic reconnaissance flights and other like activities' do not reflect direct military involvement violative of the Posse Comitatus Act." *Id*. In addition, the Circuit noted that "[n]o military personnel directly participated in the interdiction of defendants' aircraft or in their arrest. Rather, the Air Force personnel and equipment provided only information regarding the movement of an unidentified aircraft entering the United States." *Id*. As such, the Government's Customs agents did not violate the PCA because there was no "widespread or direct participation of the military in the interdiction of a vessel or aircraft, or in any search, seizure, or arrest." *Id*.

In *United States v. Allred*, 867 F.2d 856 (5th Cir. 1989), the Fifth Circuit rejected the defendant's PCA-based challenge to his conviction for the use of a judge advocate as a Special Assistant U.S. Attorney ("SAUSA") to prosecute the case. *Id*. at 870-71. The Circuit rejected the claim based on the statutes discussed below, which expressly authorize the detail or assignment

of JAG attorneys to serve as federal prosecutors in civilian criminal cases. *Id*. at 871. Before doing so, however, the Circuit seemingly scoffed at the defendant's argument that the JAG's "hybrid position [as a SAUSA] constitutes the very merger of the civil laws and military authority that the Posse Comitatus Act prohibits." *Id*. at 870. As the Circuit noted, there was good reason to doubt that the use of a JAG attorney would ever violate the PCA even in the absence of those statutory exceptions, given that the PCA's "purpose springs from an attempt to end the use of federal troops to police state elections in ex-Confederate states." *Id*. at 870. The court cited *Casper* and *Bissonette* with approval "[kept] sight of [the Act's] original purpose" in holding that military involvement does not violate the PCA "unless it actually regulates, forbids, or compels some conduct on the part of those claiming relief." *Id*. at 870-71.

Under this precedent, the Department's "use" of Mr. Arboleda as a federal prosecutor in this case does not come within a country mile of violating the PCA. First, although he is still an active-duty officer in the Army, he is not serving in that capacity as "part" the military, because he has been detailed on a full-time basis for 18 months to the Department's Civil Rights Division, and during that time is working under the supervision and control of the Department's civilian attorneys. Second, even if he is still considered "part" the military for purposes of the PCA while on this detail,

Mr. Arboleda is not being used "as a posse comitatus or otherwise to execute the laws," as construed under *Casper* and *Bissonette*. Mr. Arboleda is serving as an attorney for the Government. None of his current duties while on detail to the Department "subject[] … citizens to the *exercise of military power*" of any type, and certainly no "power" that is "regulatory, proscriptive, or compulsory in nature," as required by the standard established in *Casper* and *Bissonette*. That is true no matter how forcefully he punches the keyboard or argues a point in court. Third, Mr. Arboleda commenced his detail with the Civil Rights Division and entered an appearance in this case on or about March 19, 2026 (*see* Dkt. 398), after the superseding indictment was filed. (Dkt. 144.) Thus, even if the activities could constitute a violation of the PCA (and they never could), it bears noting that he did not participate in the core investigation of the case or present the case to the grand jury.

In their motion, Defendants rely on three district court cases arising out of the Wounded Knee incident, and they argue that the Department's use of Mr. Arboleda as an attorney in this case violates "every" test enunciated in those cases. (*See* Mtn. at 2-4 (citing *United States v. Red Feather*, 392 F. Supp. 916, 921-22 (D.S.D. 1975); *United States v. Jaramillo*, 380 F. Supp. 1375, 1379 (D. Neb. 1974); and *United States v. McArthur*, 419 F. Supp. 186, 194 (D.N.D. 1975).) None of those cases are binding, and they predate the Eight Circuit decisions in *Casper* and *Bissonette*. Their "tests" are irrelevant.

Moreover, they all considered the conduct at the Wounded Knee incident, which was not at all like the legal work being done by Mr. Arboleda.

### C. **Express Statutory Provisions Authorize Mr. Arboleda's Representation of the Government in this Case**

Even assuming, *arguendo*, that Mr. Arboleda's activities could fall within the general scope of the PCA, statutory exceptions to the PCA render it inapplicable here. Contrary to defendants' motion (Mtn. at. 6, 8-9), Congress has, in fact, passed legislation that expressly authorizes active-duty officers to exercise the functions of any civil office of the United States Government and specifically authorizes judge advocates to represent the Government in the prosecution of civilian criminal cases.

In the Armed Forces Code (Title 10), Congress provided that a regular officer of an armed force on active duty (as well as certain other officers) "*may hold or exercise the functions of a civil office in the Government of the United States* [except for positions not relevant here] when *assigned or detailed* to that office or to perform those function." *See* 10 U.S.C. § 973(b)(2)(B) (emphases added).[2] This provision alone is enough to demonstrate the facial invalidity of Defendants' entire reliance on the PCA.

---

[2] The excepted positions are set forth in § 973(b)(2)(A), and none of them are relevant here. The positions that an active-duty officer may *not* fill include an office in the United States Government "**(i)** that is an elective office; **(ii)** that requires an appointment by the President by and with the advice

In addition to § 973(b)(2)(B), Congress enacted a similar provision relating directly to judge advocates. Specifically, § 806(e)(1) of Title 10 provides that "[a] judge advocate who is assigned or detailed to perform the functions of a civil office in the Government of the United States under [10 U.S.C. § 973(b)(2)(B)] may perform such duties as may be requested by the agency concerned, including representation of the United States in civil and criminal cases." 10 U.S.C. § 806(e)(1). This language is express, unambiguous, and imposes no limitations on a judge advocate's ability to represent the United States. That is for the "agency concerned" to decide — not the defense bar or (respectfully) the Court.

In this case, Mr. Arboleda is an "officer" (*i.e.*, a Captain) on active-duty with the U.S. Army, and he is currently serving on a full-time, 18-month, fully-reimbursable "*detail*" to DOJ's Civil Rights Division, which is "a civil office in the Government of the United States." His position is that of an Acting Trial Attorney. That job is a standard attorney position within the Department of Justice, not an elective office, or one requiring the President's nomination and Senate confirmation, or one of the high-ranking appointed positions falling within the Executive Schedule under 5 U.S.C. §§ 5312-5317.

---

and consent of the Senate; or **(iii)** that is a position in the Executive Schedule under [5 U.S.C. §§ 5312-5317]."

Thus, Mr. Arboleda's detail to the Civil Rights Division is clearly authorized under the provisions of § 806(e)(1) and § 973(b)(2)(B). As a result, § 806(e)(1) clearly authorizes Mr. Arboleda to "perform the functions of a civil office in the Government of the United States" and to "perform such duties as may be requested by the agency concerned, *including representation of the United States in civil and criminal cases*." 10 U.S.C. § 806(e)(1) (emphasis added).

For these reasons, defendants' motion must be denied to the extent it relies on the PCA.

**D. Defendants' Arguments Misconstrue the PCA and Statutory Exceptions Thereto, As Many Courts Have Held**

Defendants acknowledge that the PCA allows the detailing of military lawyers where "expressly authorized" by an "Act of Congress" and that they may serve as prosecutors in civilian criminal cases under some "circumstances." (Dkt. 701 at 2, 10.) By their lights, however, defendants argue that Sections 806(e)(1) and 973(b)(2)(B) of Title 10 just aren't as "express" as they should be. (*Id*. at 8-12.) Moreover, although § 806(e)(1) contains no language that limits such JAG attorney details to a limited class of cases where the Army has an interest in the case, defendants argue that the Court should, by fiat, graft that limitation into the statutory text based on internal memoranda and regulations of the Army. (*Id*. at 8-12.)

The defendants' statutory arguments are invalid, and the courts have unanimously rejected them. Within this year alone, judges of this Court have unanimously rejected the exact same arguments in multiple other criminal cases. *See United States v. Johnson*, 2026 WL 1194953 (D. Minn. May 1, 2026) (Elkins, J.) (denying motion to strike appearance of SAUSA as government counsel) *United States v. Redmond*, 2026 WL 1196702 (D. Minn. May 2, 2026) (Elkins, J.) (same); and *United States v. Doyle*, 2026 WL 1329182, 6 (D. Minn. May 13, 2026) (Bullard, J.) (denying motion to strike appearance of SAUSA as government counsel and related motion to dismiss the information signed by the SAUSA); *United States v. Ramirez*, No. 26-mj-45-KMM-DTS (D. Minn. Aug. 21, 2026) (Shultz, J.) (denying motion to strike appearance of SAUSA as government counsel).

In *Johnson*, for example, the defendant and amici curiae (namely, attorney John Marti) likewise "urged the Court to ignore 10 U.S.C. § 806(e)(1) and *Allred's* [conclusion] that this statute operates as an exception to the PCA." *Johnson*, 2026 WL 1194953, at *4. The Court (per the Honorable Shannon G. Elkins, United States Magistrate Judge) rejected the defendant's arguments as follows:

> The unambiguous text of § 806(e)(1) specifically authorizes JAG lawyers to prosecute criminal cases when assigned to an agency such as the Department of Justice ("DOJ"), and neither Mr. Johnson nor amici curiae argue to the contrary. Rather, they urge the

> Court to reject the plain language of § 806(e)(1) because it is not an "express" exception to the PCA.
>
> Again, neither Mr. Johnson nor amici curiae explain what they mean by "express," expound on what "expressly authorized" requires under the PCA, or provide legal authority for either proposition. Amici curiae merely state that § 806(e)(1) does not create an exception to the PCA because it "references neither [the PCA], civilian prosecution, civilian arrests, nor the execution of civilian laws." This argument ignores the plain text of § 806(e)(1), which explicitly allows JAG lawyers to "represent[ ] ... the United States in civil and criminal cases." Similarly, the court in *Allred* held that 10 U.S.C. § 806(e)(1), in addition to 28 U.S.C. § 543(a), provided "authority" for the appointment of a JAG lawyer as a SAUSA despite the PCA. *Allred*, 867 F.2d at 871 (citing 10 U.S.C. § 806(d)(1)). And this court agrees.

*Johnson*, 2026 WL 1194953, at *4 (footnotes and internal record citations omitted).

In a separate part of its order, the Court also concluded that the appointment of a Judge Advocate as a SAUSA was authorized under 28 U.S.C. § 543(a) ("The Attorney General may appoint attorneys to assist United States attorneys when the public interest so requires....," without any exclusion for JAG attorneys); *see also* 28 U.S.C. § 515(a) (authorizing "specially appointed" attorneys to represent the Government in "civil or criminal" cases, again without any exclusion for JAG attorneys). "In conclusion," the Court in *Johnson* finds that the Attorney General's appointment of JAG lawyers as SAUSAs in the District of Minnesota to

prosecute civilians in criminal cases is authorized by both 28 U.S.C. § 543 and 10 U.S.C. § 806(e)(1), two Acts of Congress which created exceptions to the PCA." *Id.* In so doing, the Court rejected the defense argument that § 806(e)(1) and § 543 were not sufficiently "express," valid exceptions to the PCA. *See also Doyle*, 2026 WL 13291826, at *6 (reaching the same conclusion and adopting *Johnson's* "well-reasoned order").

*Johnson* also dismantled the other argument made by defendants here, namely, that legislative history indicates that JAG lawyers should prosecute only those cases that have a military nexus (*i.e.*, cases "in which the Army has an interest") and that the appointment of a JAG lawyer is not proper in a case like this, where the offense does not involve military personnel, military installations, or other military property. *Johnson*, 2026 WL 1194953, at *2-3. As Judge Elkins explained, § 973(b)(2)(B) — the statute referenced in § 806(e)(1) — plainly states that an officer of the armed forces "may hold or exercise the functions of a civil office in the Government of the United States ... when assigned or detailed to that office or to perform those functions." *Id.* at *2 (quoting 10 U.S.C. § 973(b)(2)(B)). "The statute does not include language requiring any military nexus," and Judge Elkins found that "the statute is unambiguous." *Id.* at *2. Thus, Judge Elkins rejected defendant's reliance on legislative history because that "is irrelevant to the interpretation

of an unambiguous statute." *Id.* (quoting based on *Davis v. Michigan Dept. of the Treasury*, 489 U.S. 803, 808 n.3 (1989)).

As Judge Elkins also explained, the defense argument — the same one made here — is illogical. *Johnson*, 2026 WL 1194953, at *3. As with the defendants here, the defendant in *Johnson* acknowledged that the above-referenced code sections (*e.g.*, Sections 543, 806(e)(1), and 973(b)(2)(b)) provide a limited exception to the PCA that allows JAG lawyers to prosecute civilian criminal cases that have "a military nexus," but also argue that the statutes are not "express" enough to constitute an exception to the PCA at all. *Id.* Judge Elkins rejected that argument because, "[t]o state the obvious, a statute cannot both be 'silent as to the precise' question and unambiguously answer it at the same time." *Id.* (quoting *3M Co. v. Commissioner of Internal Revenue Service*, 154 F.4th 574, 582 (8th Cir. 2025)).

Judge Elkins further explained that a "federal law need not contain an express reference" to a statute (*e.g.*, the PCA) "in order to qualify under the 'expressly authorized' exception" of the statute. *Id.* at *3 (quoting *Mitchum v. Foster*, 407 U.S. 225, 237 (1972)). As in *Johnson*, the defendants have also "provided no legal authority supporting the argument that, to fall under the 'expressly authorized' exception of the PCA, Congress must, in all subsequent statutes, refer to the PCA explicitly." *Id.* Thus, this Court declined to impose such a requirement as to the PCA and §§ 543, 806(e)(1), or 973(b)(2)(B).

In this Court's most recent ruling on this issue, Magistrate Judge David Shultz found the appointment of a Judge Advocate to "serve as a SAUSA in [the] case was authorized by 28 U.S.C. § 543 and 10 U.S.C. § 806(e)(1)," and "decline[d] [Defendant's] invitation" to "rely on each statutes' legislative history." *See* Report and Recommendation in *United States v. Ramirez*, No. 26-mj-45-KMM-DTS (D. Minn. Aug. 21, 2026), ECF No. 65.

The Government is not aware of any Eighth Circuit decision addressing whether the PCA bars Judge Advocates from serving as federal prosecutors in a civilian criminal case as part of a detail to any component of the Department of Justice. However, the First and Fifth Circuits have both held that JAG attorneys may serve as SAUSAs in criminal cases under 28 U.S.C. §§ 515 and 543 and 10 U.S.C. § 806(e)(1). In *Allred*, 867 F.2d at 870-71, the Fifth Circuit held that the unambiguous language of § 543 and § 806(e)(1), taken in concert, create an express authorization for the appointment of JAG attorneys as SAUSAs. "Considering the Posse Comitatus Act's own indication that it should be interpreted in light of the co-existing statutory framework," *Allen* also held that "it seems clear that [the JAG SAUSA's] participation in no way violates the Act's provisions." *Id*. at 871. In *United States v. Silva-Rosa*, 275 F.3d 18 (1st Cir. 2001), the First Circuit did not consider the PCA, but it nonetheless approved the use of JAG attorneys as

SAUSAs in federal criminal cases. In that regard, *Silva-Rosa* notes that § 543(a)'s "authorization contains no limitation on the persons whom the Attorney General may appoint." *Id.*[3]

Accordingly, Mr. Arboleda's appointment and appearance in this case is congressionally authorized and does not violate the PCA.

## III. Army Regulations (32 C.F.R. § 516.4 and AR 27-10) Do Not Prohibit the Detail of Judge Advocates in Cases Without a Case-Specific Army Interest

Defendants finally argue that in addition to the PCA, "the Government's appointment of [Mr. Arboleda] as a [Special Attorney] to prosecute civilians for civilian offenses in civilian courts also violates government regulations." (Dkt. 701 at 12.) Specifically, Defendants contend that Mr. Arboleda's appearance in this case violates 32 C.F.R § 516.4 and Army Regulation 27-10. For the following reasons, however, defendants' invocation of Army regulations must also be rejected.

---

[3] *See also Smart v. Holder*, 2009 WL 2498213 (W.D. Tex. Aug. 12, 2009), *aff'd,* 368 F. App'x 591 (5th Cir. 2010) ("The [PCA] is also inapplicable because it does not limit the Attorney General's power to appoint active-duty military members as Special Assistant United States Attorneys."); *United States v. Ventura Melendez*, 186 F. Supp. 2d 55 (D.P.R. 2001), *aff'd,* 321 F.3d 230 (1st Cir. 2003); *United States v. Rivera-Solis*, 129 F. Supp. 2d 108 (D.P.R. 2000) (rejecting defendant's challenge to the use of JAG attorneys as SAUSAs).

### A. Defendants Lack Standing to Challenge Mr. Arboleda's Appearance in this Case Based on Army Regulations

To have standing to challenge a government action, a party must, among other things, have suffered an injury in fact" — *i.e.*, an "actual or imminent" invasion of a "concrete" "legally protected interest," and "there must be a causal connection between the injury and the conduct complained of." *Id*. at 560. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

In this case, defendants have no standing to invoke the Army regulations found in 32 C.F.R § 516.4 and AR 27-10 to challenge whether Mr. Arboleda's *statutorily-valid* detail is "in the interest of the Army." That regulatory gloss is obviously designed to serve as internal administrative guidance for Army leadership to ensure the resources of the JAG Corps are well utilized primarily for the interests of the Army. As such, it relates to an issue that is entirely a matter for the Army to consider and weigh, not defendants in a criminal case.

Even if, assuming *arguendo*, Mr. Arboleda's appearance in this case was not expressly authorized under the cited regulations, defendants' interests are not injured thereby. It would be to the detriment (*arguendo*) of the Army alone. Defendants have no standing as taxpayers or citizens because they have no "particularized" injury from any inefficiency in the administration of the Army. *See Lujan*, 504 U.S. at 560 (a "generally

available grievance about government" does not satisfy standing requirements).

**B. <u>The Army Regulations Do Not Forbid the Assignment or Detail of Mr. Arboleda to Represent the Government in this Case</u>**

Even if defendants could properly assert the alleged regulatory violation (and they can't), the Army's detail/assignment of Mr. Arboleda to the Civil Rights Division and his service as Government counsel in this particular case does not violate the cited Army regulations. Thus, the defense argument is invalid on the merits as well.

Defendants' argument is a clear misunderstanding of Federal and Army regulations. The starting point is the regulation's scope provision. Section 516.1 of the Army's regulations regarding JAG attorneys says that Part 516 "prescribes policies and procedures" for several categories of litigation, including "[d]efensive and affirmative litigation in Federal and state civilian courts where the Army or [Department of War] has an interest in the matter." 32 C.F.R. § 516.1(a). That language identifies the categories of cases for which Part 516 supplies Army litigation-management procedures. It does not purport to define the outer limits of the authority of the Secretary of War or The Judge Advocate Generals (TJAG) to detail or assign JAG attorneys to other civilian components of the Executive Branch, such as the

Department of Justice. Indeed, it contains no language purporting to do that — *i.e.*, stating that details of JAG attorneys to work on cases not covered by Part 516 are prohibited, void, *ultra vires*, or otherwise a violation of any law.

The same is true of 32 C.F.R. § 516.4(e). That provision explains that Army attorneys, when appointed as SAUSAs under 28 U.S.C. § 543, represent Army interests in federal court. It states that Army attorneys *at the installation level*, after being duly appointed, "will prosecute cases, in which the Army has an interest, in Federal court." 32 C.F.R. § 516.4(e)(1). Read in context, that language implements Part 516's litigation procedures for cases within Part 516's defined scope. It does not say that TJAG lacks authority to assign a Judge Advocate to a detail otherwise authorized by Congress or that Judge Advocates may ***only*** serve as SAUSAs in a case in which the Army has an interest. Nor does the regulation have the lawful effect of restricting the authority of the Secretary, TJAG, or other members of Army leadership to authorize details of JAG attorneys under 10 U.S.C. § 806(e)(1) and § 973(b)(2)(B).

Moreover, Part 516 contains an express provision that guts the defendants' entire reliance on the Army regulations. Section 516.6(a) provides as follows:

> (a) Military personnel on active duty and DA civilian personnel will not appear as counsel before any civilian court or in any preliminary proceeding, *for*

> *example*, deposition, *in litigation in which the Army has an interest* without the prior written approval of TJAG, except under the following conditions:
>
> . . . .
>
> (4) The individual is a judge advocate assigned or detailed by TJAG to DOJ to represent the United States in civil or criminal cases, for example, a Special Assistant U.S. Attorney, or an attorney assigned to Litigation Division.

*See* 32 CFR § 516.6(a)(4) (emphasis added).

This regulation is consistent in scope with § 806(e)(1). In contrast to § 516.4(e), this regulation bars active-duty members from "appear[ing] as counsel" in "*any* civilian court or in *any* preliminary proceeding." It then refers to "litigation in which the Army has an interest," but only as one of many potential "example[s]." Thus, that language does not limit the TJAG's authority to detail JAG attorneys to DOJ for the purpose of handling other cases in which the Army has no interest in the outcome of the case.

Moreover, § 516.6(a) makes clear that there are two exceptions to that general ban against active-duty members appearing in any civilian litigation. It does not establish a flat ban against it, as defendants imagine is established by the PCA. Quite the contrary. First, § 516.6(a) expressly authorizes active-duty members to appear as counsel in civilian cases if the TJAG provides "prior written approval." *See* 32 CFR § 516.6(a). Second,

§ 516(a)(4) expressly provides that JAG attorneys who are "detailed to DOJ to represent the United States in civil or criminal cases" are expressly excepted from the regulation. *Id.*

Accordingly, defendants have once again tried to cherry-pick language in Part 516 of the Army regulations, all while ignoring the most relevant provision. Defendants' construction of § 516.4(a) cannot be reconciled with § 516.6(a)(4). Nor should the Court strain to adopt defendants' misguided statutory analysis because § 516.6(a)(4) is entirely consistent with the controlling statute, 10 U.S.C. § 806(e)(1), which, as explained above, likewise authorizes JAG attorneys to be detailed to DOJ and to represent the Government in *any* civil or criminal civilian case. For all the same reasons, defendants' reliance on Army Regulation 27-10 is likewise misplaced. AR 27-10 also does not impose the limitation that Defendants seek to graft upon § 806(e)(1) and § 973(b)(2)(B). Paragraph 23-1(a) of AR 27-10 states that Chapter 23 contains policies and procedures for federal prosecutions "for violations of Federal law committed on Army installations or violations that involve Army interests or property." Thus, it says nothing of relevance to the appointment of Mr. Arboleda in this case. Moreover, if it were construed in the manner that defendants propose, it would conflict with § 516.6(a)(4).'

Regulations should not be interpreted to create a conflict with the governing statutory scheme, or with other regulations, where another

reasonable reading is available. *See Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."). Here, the better reading is that 32 C.F.R. § 516.4 and AR 27-10 provide administrative guidance for purposes of ensuring that JAG attorneys are available to represent the Government in civilian cases "in which the Army has an interest," but they do not prohibit other details of JAG attorneys to DOJ of the type at issue here, which is clearly authorized by 10 U.S.C. § 806(e)(1) and 32 C.F.R. § 516.6(a)(4).

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

## CONCLUSION

For all the foregoing reasons, Defendants' Joint Motion to Strike Appearance of Mr. Arboleda should be denied in its entirety.[4]

DATED: October 15, 2026.

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE S. HEDLEY
Acting Senior Litigation Counsel

/s/ Robert J. Keenan
ROBERT J. KEENAN
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 230-2216
E-Mail: robert.keenan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

[4] This brief contains a total of 5,702 words, excluding the caption and signature block.