**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>NEKIMA VALDEZ LEVY-ARMSTRONG, et al.,<br>Defendants. | No. 0:26-cr-025-LMP-DLM<br>**OPPOSITION TO DEFENDANTS' MOTIONS TO STRIKE SURPLUSAGE FROM THE INDICTMENT (DOCS. 142 AND 809)** |

Defendants Ian Davis Austin, William Scott Kelly, Charles Swenson, and Robyn Swenson are charged with violations of 18 U.S.C. § 241 and the Freedom of Access to Clinic Entrances Act ("FACE Act"), 18 U.S.C. § 248(a)(2). They filed motions to strike surplusage from the indictment targeting six phrases that they argue "add characterization and catastrophic injury that the Government does not need to prove its case." Mot. 13.[1] However, each of the challenged phrases contains information that is relevant to the charges and otherwise proper. Accordingly, Defendants' motions should be denied.

[1] "Mot." refers to Austin and Kelly's Motion to Strike. (Doc. 142.) Charles Swenson and Robyn Swenson filed a separate Motion to Strike. (Doc. 809, ("Swenson Mot.").

## BACKGROUND

Defendants Austin and Kelly filed their motion to strike in February. Their motion challenges six phrases:

1. "Potential prelude to a mass shooting,"
2. "Young children will left to wonder … if their parents were going to die,"
3. "Coordinated takeover-style attack" and "takeover-style attack,"
4. "Agitators,"
5. "Menacing,"
6. "Traumatizing."

Mot. 3-4 (capitalization altered).

Charles Swenson and Robyn Swenson filed their motion to strike in August. They challenge the same six phrases, with a few immaterial additions. For example, they challenge the phrase "takeover operation" in addition to "takeover attack." Swenson Mot. 2

## LEGAL STANDARD

Federal Rule of Criminal Procedure 7(d) allows a court to "strike surplusage from the indictment." Fed. R. Crim. P. 7(d). "Motions to strike surplusage are rarely granted." *United States v. Hedgepeth*, 434 F.3d 609, 611 (3d Cir. 2006). Although a district court has "discretion" to grant a motion to

strike surplusage, "such a motion should be granted only where it is clear the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter." *United States v. DeRosier*, 501 F.3d 888, 897 (8th Cir. 2007); *see also Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962) (same). "This is an exacting standard, and courts are often slow to grant a motion to strike surplusage." Wright & Miller, 1 Fed. Prac. & Proc. Crim. § 128 (5th ed. 2025). When courts do grant such motions, it is often because the challenged material relates to inadmissible evidence such as prior bad acts. *Id.* at n.48 (collecting cases).

"Legally relevant information is not surplusage. To determine whether a matter is relevant under Rule 7(d), courts are guided by Federal Rule of Evidence 401 which provides that evidence is relevant if 'it has any tendency to make a fact more or less probable than it would be without the evidence' and 'the fact is of consequence in determining the action.'" *United States v. Saggar*, 2023 WL 11806219 (E.D. Mo. December 20, 2023) (quoting Fed. R. Evid. 401(a)) (cleaned up). Allegations are prejudicial only if they are irrelevant. "[I]nformation that is prejudicial, yet relevant to the indictment" is not surplusage. *Hedgepeth*, 434 F.3d at 612; *see also United States v. Laurienti*, 611 F.3d 530, 547 (9th Cir. 2010) (affirming denial of motion to strike where "the allegation was relevant," "[e]ven if [it] … could be considered prejudicial.").

**ARGUMENT**

Defendants argue that six phrases in the indictment are surplusage. All these phrases contain "[r]elevant language" and therefore "may not be stricken" "regardless of how prejudicial the language is." *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990).

The indictment charges Defendants with violations of Sections 241 and 248(a)(2). In summary, Section 241 requires the Government to allege three elements: (1) two or more people agreed to injure, oppress, threaten, or intimidate a person in the exercise of enjoyment of a federally-secured right (*i.e.*, free exercise of religion at a place of worship); (2) the defendant intentionally joined the agreement with the intent to accomplish the object thereof; and (3) the victims were present in a State or District of the Untied States. *United States v. McDermott*, 29 F.3d 404, 408 (8th Cir. 1994); *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit* at 205 (2025). Section 248(a)(2) also has three elements: (1) the defendant used force, threat of force or physical obstruction; (2) the defendant intentionally injured, intimidated, or interfered with any person (or attempted to do so); and (3) the person was lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship.

18 U.S.C. § 248(a)(2).[2] In addition, Count Two alleges that all of the defendants were aiding and abetting the others. Thus, each defendant may also be liable as a principal for the FACE Act violation even if they did not personally commit the acts essential to establish a violation of § 248(a)(2).

All the challenged phrases are relevant to one or more elements of these crimes.

## I. <u>The Challenged Phrases are Relevant to the Charges</u>

Four of the phrases to which Defendants object are relevant to the question whether Defendants violated the FACE Act by using "force," "threat of force," or "intimidat[ion]" because they show how Defendants' actions affected their alleged victims. To determine whether conduct constitutes "threat of force" under the FACE Act, courts ask "whether the recipient of the alleged threat could reasonably conclude that it expresses a determination or intent to injure presently or in the future." *United States v. Dinwiddie*, 76 F.3d 913, 925 (8th Cir. 1996). To determine whether conduct constitutes "intimidat[ion]" under the FACE Act, courts examine "the manner and context" of Defendants' conduct "and the reaction they elicited." *United States v. Hart*, 212 F.3d 1067, 1072 (8th Cir. 2000).

---

[2] As discussed in the Government's forthcoming opposition to Austin's motion to dismiss, Doc. 97, Austin incorrectly argues that Section 248(a)(2) requires that a defendant acts "because a person was exercising religious freedom." Mot. 5.

First, the phrase "potential prelude to a mass shooting," Doc. 144 ¶ 25, is relevant to the charged offenses. The indictment states that congregants interpreted Defendants' chants, accompanied by "aggressive and hostile" gestures, as "a potential prelude to a mass shooting." Doc. 144 at 12. This allegation is relevant to the FACE Act charge because it describes the context of Defendants' alleged threats and conduct, as well as how the congregants interpreted and reacted to said threats and conduct. *Cf. United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998) (allegations about shooting airline passengers are "clearly relevant to establishing" that defendant hijacker used "force" or "intimidation").

Second, the phrase "young children were left to wonder … if their parents were going to die," Doc. 144 ¶ 4, is relevant because it describes "the reaction [Defendants] elicited" from their victims. *See Hart*, 212 F.3d at 1072. By alleging that children feared that their parents would die, the indictment pleads Defendants' conduct intimidated the children and was intended to intimidate. *United States v. Johnson*, 2024 WL 323574 (D. Minn. Jan. 29, 2024), is instructive. There, the indictment alleged various child-abuse offenses, and the defendant moved to strike "allegations regarding the minor victim's starvation, deprivation of sleep, assaults, threats, withholding of medical care, and social isolation." *Id.* at *2. The court denied the motion, holding that the description of the child's suffering "are plainly relevant to the

charges." *Id.* The same result should follow here. If graphic physical descriptions of child abuse are not inflammatory, neither is a short, factual description of children's mental state in this case.

Third and fourth, the words "traumatizing" and "menacing" are relevant for the same reason. The indictment alleges that Defendants' conduct was "chaotic, menacing, and traumatizing to Church members." Doc. 144 at 12. Defendant Don Lemon admits this; he described the attack as "traumatic." *Id.* at 14. The indictment also alleges that Austin and other defendants "approached the pastor and congregants in a menacing manner." *Id.* at 13. Again, these allegations are relevant because they describe how the congregants reacted to or perceived Defendants' actions. Language describing a charged mental state or element is not surplusage merely because the statute uses different words. *See United States v. DeRosier*, 501 F.3d 888, 898 (8th Cir. 2007) ("Because the 'reckless disregard' standard is an acceptable specification of the term 'intent to defraud', the language does not constitute surplusage.").

Defendants also challenge the indictment's use of the word "takeover." The indictment alleges that Defendants perpetrated a "coordinated takeover-style attack of the Church," Doc. 144 ¶ 3, and "entered the Church to conduct a takeover-style attack," *id.* ¶ 7(b). It also alleges that Defendants "traveled to the Church to engage in the planned takeover-style operation," *id.* at 11; that

Defendants participated in a "disruptive takeover operation," *id.*; and that Defendants "joined in" a "takeover attack," *id.* at 12. These phrases fairly and accurately describe Defendants' conduct. They also are relevant to the Section 241 charge. By alleging that Defendants' efforts were "coordinated," the United States has established that "two or more people agreed" to participate in the challenged conduct. 18 U.S.C. § 241. And by describing the conduct as a "takeover," the United States has alleged interference with the exercise of the constitutional right to religious worship, as necessary to state violations of Section 241 and the FACE Act. The phrase "takeover operation" is a concise description of the alleged coordinated activity. Whether and to what extent Defendants took over the Church and disrupted the worship service is a question of fact to be determined at trial.[3]

Lastly, Defendants seek to strike the term "agitators," which appears throughout the indictment in reference to members of the mob that attacked Cities Church. To "agitate" means "to excite and often trouble the mind or feelings of" another person. *See Agitate*, Webster's English Dictionary (3d Ed.). One who agitates is an agitator, and whether Defendants agitated the

---

[3] Austin previously moved to dismiss the original indictment because it "pleads no facts showing fear of injury" and "relies on conclusory assertions that movement was obstructed." Doc. 97 at 13-14. By challenging the phrases "potential prelude to a mass shooting" and "takeover-style attack," Austin now seeks to strike the allegations he complained were absent from the original indictment.

congregants is relevant to the question whether the congregants were intimidated in violation of the FACE Act. The term 'agitator' "is simply a succinct method of describing the alleged activities" of Defendants. *United States v. Riggs*, 739 F. Supp. 414, 424 (N.D. Ill. 1990) (holding that labeling defendants "computer hackers" is not surplusage). As such, the word and related phrases should not be stricken from the superseding indictment.

## II. Austin and Kelly's Arguments are Unpersuasive.

Austin and Kelly do not dispute that five of the six phrases are relevant to the FACE Act charge. Instead, they argue that the phrases are "untethered to § 241." Mot. 7.

| Phrase | Austin and Kelly's response |
|---|---|
| "Potential prelude to a mass shooting." | "That phrase does not identify an agreement. It does not define specific intent." Mot. 7. |
| "Coordinated takeover-style attack." | "Section 241 requires no proof of institutional seizure, armed aggression, or organized violent overthrow." Mot. 9. |
| "Agitators" | "Repeatedly labeling defendants as 'agitators' shifts the inquiry from whether the Government can prove agreement and specific intent to whether defendants fit a pejorative narrative." Mot. 10. |
| "Menacing" | "Section 241 demands proof of specific intent, not proof that conduct seemed ominous." Mot. 11. |

| | |
|---|---|
| "Traumatizing" | "[T]his term neither advances proof of agreement nor clarifies intent." Mot. 8 |

In arguing that these five phrases are irrelevant to the Section 241 charge, Austin and Kelly, as noted above, overlook the phrases' plain relevance to the FACE Act charge.

Austin and Kelly at least try to argue that the sixth phrase ("Children were left wondering if their parents were going to die") is not relevant to the FACE Act. They claim "[f]ear of death is not an element of either offense." Mot. 8. However, they simultaneously acknowledge that the "Government may attempt to prove force or threat of force." Mot. 8-9. Allegations regarding fear of death certainly are relevant to whether the defendants' conduct amounted to a threat of force.

Austin and Kelly misstate the legal standard for striking surplusage from an indictment by arguing that the phrases are "not necessary to plead §§ 241 or 248. Mot. 5 (capitalization altered). As discussed above, the question is not whether language in an indictment is *necessary*. It is whether the language is *relevant*. Because all six challenged phrases are relevant to the FACE Act charge and/or the Section 241 charge, they are not surplusage, even if striking the phrases "would remove no statutory element." Mot. 12.

Austin and Kelly also assert that the phrases should be struck because they amount to inflammatory or prejudicial "rhetorical amplification." Mot. 7. Charles Swenson and Robyn Swenson similarly assert that the phrases are "inflammatory," and they challenge the phrases referencing a potential mass shooting and children's fears as "beyond inappropriate." Swenson Mot. 2-3.

This argument misses the mark. "While defendants doubtless wish the government had employed less colorful" phrases, the challenged language in the indictment is "relevant to the [charges] of which they stand accused" and therefore "may not be stricken," *United States v. Stein*, 429 F. Supp. 2d 633, 647 (S.D.N.Y. 2006), even if it does "introduce imagery of uncharged homicide-level violence" or carry "political connotations independent of the elements the Government must prove," Mot. 6-7.

## III. <u>The Swenson Defendants' Arguments are Unpersuasive</u>

Charles Swenson and Robyn Swenson advance two additional arguments against the challenged phrases, but each lacks merit and should be rejected.

First, they make the conclusory assertion that the phrases are not "relevant to … any consequential fact." Swenson Mot. 3, 5. They never explain why the phrases are irrelevant, and their undeveloped argument fails for the reasons discussed above.

Second, they attempt to liken this indictment to other cases in which district courts have struck surplusage from indictments. Swenson Mot. 3. In *United States v. Quinn*, 401 F. Supp. 2d 80, 98-100 (D.D.C. 2005), the court struck references to Iran's support for terrorism from an indictment alleging violations of the Trading with the Emeny Act. *See also United States v. Groos*, 616 F. Supp. 2d 777, 789 (N.D. Ill. 2008) (similar). These cases struck language referencing "irrelevant" events. *Quinn*, 401 F. Supp. 2d at 98 ("[T]he Court concludes that the policies underlying the trade embargo against Iran are irrelevant to the charges defendants face."). In contrast, all the language that Defendants challenge here is directly relevant to the charges and the actual offense conduct, and Charles Swenson and Robyn Swenson do not seriously argue otherwise.

*United States v. Augustine Med., Inc.*, 2004 WL 502183, at *6 (D. Minn. Mar. 11, 2004), also is easily distinguishable. There, the court struck a reference to "widespread Medicare abuse and fraud" from an indictment in a fraud case. The court determined that references to uncharged individuals' criminal conduct prejudiced the individuals who were actually charged. The challenged phrases here, however, relate to the Defendants' own conduct.

In *United States v. Harder*, 2014 WL 12783296, at *2 (D. Ore. Mar. 17, 2014), the court struck the phrase "Ponzi scheme" from an indictment alleging mail fraud and money laundering as prejudicial given its "wide use … in the

media." The striking of the phrase "Ponzi scheme" from an indictment alleging white-collar crimes does not suggest that the challenged phrases here are impermissibly inflammatory. Likewise, the striking of the phrase "loansharking" from a racketeering indictment is of no relevance here. *See United States v. Hubbard*, 474 F. Supp. 64, 83 (D.D.C. 1979).

## CONCLUSION

For the foregoing reasons, defendants' motions to strike surplusage should be denied.[4]

DATED: October 16, 2026.

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE S. HEDLEY
Acting Senior Litigation Counsel

*/s/ Joshua R. Zuckerman*
JOSHUA R. ZUCKERMAN
Attorney
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 514-3847
E-Mail: joshua.zuckerman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

[4] Not including this footnote, this motion response is 2,575 words as measured by Microsoft Word.