**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

NEKIMA VALDEZ LEVY ARMSTRONG, *et al.*,

Defendants.

Case No. 0:26-cr-025-LMP-DLM

**OPPOSITION TO DEFENDANTS' MOTION FOR AN ORDER TO SHOW CAUSE, DISCOVERY, PROTECTIVE ORDER, AND EVIDENTIARY HEARING RE. ALLEGED VIOLATION OF SEALING ORDER (DKT. 718, 860)**

The United States of America submits this brief in response to defendant Kelly's Motion for an Order to Show Cause ("OSC"), Discovery, A Protective Order, and an Evidentiary Hearing. (Dkt. 718.)[1] This response generally applies to all joined defendants, but the defendants who filed the belated joinder are not similarly situated with defendant Kelly. Thus, it's not clear they have standing to join in Kelly's arguments. (*See* Dkt 857.)

---

[1] Defendants Armstrong, Allen, Richardson, Cullars-Doty, Dunlap, Edwards, Goligoski, Hauptman, Hogan, Matthias, C. Michaelson, E. Michaelson, Perry, Persighel, Moreno, R. Swenson, Tier, Vergin, and Weinfurter have moved to join Kelly's motion. (Dkt. 860.)

## INTRODUCTION

Defendant Kelly moves the Court for an OSC "why the Government should not be held in contempt and [be sanctioned] under the Court's inherent authority for violating the Court's sealing order by publishing an inflammatory "press release" about Kelly while the complaint against him was still under seal. (Dkt. 718 at 1.) Defendant Kelly also requests related discovery, a protective order, and an evidentiary hearing. *Id.*

This motion is meritless and should be denied in its entirety.

## STATEMENT OF FACTS

### A. Offense Conduct

On Sunday, January 18, 2026, defendant Kelly and his co-defendants formed a mob to assault the congregants of Cities Church in St. Paul, Minnesota. Defendants conspired to disrupt a liturgical worship service in "a coordinated take-over style attack." (Dkt. 144 at 3.) While inside the Church, defendant Kelly (a) disrupted the service by loudly proclaiming, "This ain't God's house. This is the house of the devil."; (b) approached one female congregant, who was with two young children, and demanded to know in a hostile manner why she was not involved and supportive of the takeover operation; and (c) screamed "Nazi" in congregants' faces and asked child congregants, "Do you know your parents are Nazis? They're going to burn in hell." (Dkt. 144 at 14.)

Because of defendants' hostile and threatening attack on the church, the pastor and congregants were forced to end their worship service. (*Id.*) Several congregants fled the Church, fearing a mass shooting. (*Id.* at 2.) While acting jointly as a mob, defendants also assembled in a manner that obstructed and impeded several congregants as they attempted to flee and move around the church. (*Id.* at 2, 16.) In the rush to escape, one congregant suffered an injury to an elbow when she slipped on an icy, unused sidewalk. (Dkt. 23-1 at ¶ 43.)

The video evidence of the incident makes clear that defendant Kelly's conduct was hostile and offensive.

### B. <u>The Complaint & Sealing Order</u>

On January 20, 2026, the Government obtained a complaint and arrest warrant against defendant Kelly for a Conspiracy Against Rights Secured by Federal Law, in violation of 18 U.S.C. § 241. (Dkt. 23-1.) At the Government's request, the Court issued an order directing that the complaint and other case records shall be sealed. (*See* Sealing Order, attached hereto as Exhibit 1.) The Sealing Order reads, in full, as follows:

> This matter is before the Court on the Government's Motion to Seal Documents in the above-captioned matter. Based on all the records, files, and proceedings before the Court, the Court being otherwise fully informed of the premises, and good cause having been shown, IT IS HEREBY ORDERED THAT:

> 1. The Government's motion to seal documents is GRANTED;
>
> 2. **Documents filed in the above-captioned matter**, including the Complaint, Arrest Warrant, the Affidavit of Timothy Gerber in support thereof, and the Motion to Seal, **be sealed** for a period of one year until January 19, 2027 or until the Defendants are arrested on the Complaint-Warrant and make their initial appearance before a United States Magistrate Judge, or a later date if so granted by a further Order of this Court.

(*See* Ex. 1 hereto (emphasis added).)

Per standard protocol, the Government's DC-based counsel used the sealing forms used by the U.S. Attorney's Office ("USAO"). We obtained the form from the USAO's then-Criminal Division Chief. So, there was good reason to trust that the form would be fit for purpose. In retrospect, as the Government has previously explained and does so again herein, the USAO's form sealing motion and order are not what they need to be.[2]

---

[2] This is not intended to be critical of anyone, but the proceedings in this case have made clear that the Government's understanding of the force and effect of a sealing order differs markedly from the Court's and local bar's understanding. Moreover, the form sealing order can be easily improved **by making clear to whom the order is directed** and what that person must do or refrain from doing. *E.g.*, Look at the bolded phrase in the order: "**be sealed**." "Be sealed" by whom? When the order's term expires, who does the unsealing? <u>**Answer**</u>: **The order is directed to the Clerk and no one else**. *See, e.g.*, L.R. 49.1(d)(4) ("an order granting a motion to seal must direct the Clerk" to do certain things). **The order does not tell the Government to do, or refrain from doing, anything**. And what exactly is being sealed? As to that the order is clear, but defendants don't seem to know the answer. The order directs the Clerk to seal "**the Documents <u>filed</u> in the above-captioned matter**." This reflects the fact that the order

Although not expressed in the Government's motion, the reason for such sealing orders is well-known to the Court. By keeping the complaint under seal, it helps reduce the risk that defendants will become aware that charges have been filed and thus be prompted to flee, barricade themselves, destroy evidence, corruptly influence witnesses, etc. In this case, there was special concern that defendants' compatriots might form a human barricade around the charged defendants' location, which would put arresting officers' safety at risk and thwart the ability of the Government to execute the arrest warrants.

These interests are those of the Government, not of any defendant. The sealing order (as with most of this type) are not designed to protect the privacy of a defendant. Indeed, the sealing order contains a provision that says the complaint will be unsealed once the defendant is arrested and brought before the Court. (*See* Ex. 1.)

### C. <u>The Indictments</u>

On January 29, 2026, a federal grand jury issued an indictment against nine defendants, including Kelly, for violation of 18 U.S.C. § 241 (Conspiracy Against Federal Rights) and 18 U.S.C. § 248(a)(2) (FACE Act violation for

---

**relates to the maintenance of the Court's records** — *i.e.*, that the Court's records should not be publicly available — and nothing else.

Interference with the Free Exercise of Religion at a Place of Religious Worship). On February 26, 2026, the grand jury issued a superseding indictment charging an additional 30 defendants with the same two offenses. (Dkt. 144.)

### D. Initial Social Media Posts by Government Officials and Defendants

On January 18, 2026, publicly available videos from the Cities Church take-over attack in St. Paul, Minnesota quickly circulated on social media and triggered national news coverage. Defendant Armstrong posted on a social media account to thank those who participated in the operation against the church, including Kelly, who she described as an "independent journalist." Kelly posted a video to his YouTube account later that day as well. *See* https://www.youtube.com/shorts/5fLzsinlQ2k.

Later that day, on January 18, 2026, Attorney General Pam Bondi posted on X that she had spoken "to the Pastor in Minnesota whose church was targeted" and ***assured the public*** that "[a]ttacks against law enforcement and the intimidation of Christians are being met with the full force of the law."[3] General Bondi also said, "If state leaders refuse to act responsibly to prevent lawlessness, this Department of Justice will remain

---

[3] https://x.com/AGPamBondi/status/2013093526867689835

mobilized to prosecute federal crimes and ensure that the rule of law prevails." *Id.*

On the same day, January 18, 2026, Assistant Attorney General Harmeet K. Dhillon ***assured the public*** via an X post that the Civil Rights Division was "investigating the potential violations of the federal FACE Act by these people desecrating a house of worship and interfering with Christian worshippers."[4] In an interview the next day, AAG Dhillon ***assured the public*** that the Department of Justice was taking the matter seriously.[5]

On January 20, 2026, the day on which the Government submitted a complaint against Kelly and other defendants, the President posted to Truth Social with comments that, in substance, were designed ***to assure the public*** that the incident at Cities Church had his attention and thus that of his administration.[6]

### E. Arrest of Initial Defendants & Subsequent Media Posts by Government Officials and Defendants

On January 22, 2026, the Government executed an arrest warrant on defendant Kelly. Defendants Armstrong and Allen had their initial appearances on January 22, 2026, but the Clerk's minute entries indicate

---

[4] https://x.com/AAGDhillon/status/2013003168179724426

[5] https://x.com/AAGDhillon/status/2013263800783303161

[6] https://truthsocial.com/@realDonaldTrump/posts/115926042315145030

that the complaint would remain under seal until 12:30 p.m. on January 23, 2026. (Dkt. 9, 11.) The Government's counsel cannot recall the reason for that, but it might have been due to (1) the need to redact the names of potential defendants as to whom the Court found no probable cause or (2) perhaps because Kelly had not been apprehended by that time. Counsel simply does not recall the hearing.

Defendant Kelly had his initial appearance on the following day, January 23, 2026. (Dkt. 26.) On January 23, 2026, the Government moved to unseal the case, and Judge Elkins granted the Government's Motion. (Dkt. 26.)

On January 22, 2026, General Bondi posted on her X account an "update" to ***advise the public*** that "William Kelly is now in custody."[7] Around the same time, Secretary Kristi Noem of the Department of Homeland ***advised the public*** of Kelly's arrest via an X post of his arrest photo and an accurate statement that "William Kelly is being charged with conspiracy to deprive rights, a federal crime, for his involvement in the St. Paul church riots."[8]

---

7 https://x.com/AGPamBondi/status/2014399597335269553

8 https://x.com/EnvoyNoem/status/2014410433281622347?lang=en

Similarly, the White House ***advised the public*** of Kelly's arrest via a post on its X account, which attached the same arrest photo along with the words, "Arrested, William Kelly for his involvement in the St. Paul Church Riots," and the comment "Checkmate." This was in reference to a number of pre-charging videos that Kelly posted challenging General Bondi to arrest and charge him.

On January 22, 2026, the White House also reposted General Bondi's X post ***advising the public*** that arrest warrants had been executed on co-defendants Armstrong and Allen and promised "more to come," and also ***conveying a strong deterrent message*** that the Department of Justice was not going to tolerate attacks on places of worship.[9] On January 23, 2026, during an interview, Assistant Attorney General Dhillon provided limited remarks about the FACE Act, this case, and ***assured the public*** of the Department's commitment to ensuring that people would feel safe going to church, synagogue, or any other house of worship, without worrying that "they might face the same kind of mob, [or] mob harassment."[10] AAG Dhillon did not identify Kelly by name, although the interviewer did. *Id.*

---

[9] https://x.com/WhiteHouse/status/2014358141933121912
[10] https://www.youtube.com/watch?v=4i5xhWd2o2w

On January 29, 2026, approximately one week after the Government's challenged social media posts, the Government obtained the initial indictment against Kelly and eight other defendants. During that time, Kelly did not object to the challenged social media posts or petition the Court for relief from what he now claims is Government misconduct. Instead, defendant Kelly leaned into the media spotlight, touting his arrest on his social media accounts the week leading up to the initial indictment. In fact, Kelly leaned into the media soon after the defendants' assault on the church, daring General Bondi to arrest him.

On January 30, 2026, Kelly stood before a large crowd of protestors in Minneapolis, declaring that, "I'm facing 10 years for preaching the words of Jesus in the House of God."[11] On February 1, 2026, Kelly posted on his Instagram account that, "I just want to thank all of you for your relentless support….its been amazing,[] people coming out to me and hugging me[], and telling me that I'm the reason they're out there…," and thanking his viewers for "the financial donations[]I've raised, I'm almost at $120,000 which I am going to need now for my legal battles []I'm facing federal charges."[12] Indeed, Kelly is the beneficiary of a personal gofundme account, which he promotes,

---

[11] https://www.instagram.com/p/DUJpdzEERxE/

[12] https://www.instagram.com/p/DUPRYJcDtzb/

as well as the beneficiary of a Joint gofundme account, that has raised $38,867.00.[13]

Notably, Kelly continued to lean into the spotlight outside of his own social media. On February 24, 2025, he spoke at a press conference before a crowd of people at the federal courthouse in St. Paul, Minnesota, dubbing himself and his co-defendants as the "Peaceful 9."[14] Kelly's media campaign continued unabated even after the initial and superseding indictments.

On April 8, 2026, Kelly posted to his Instagram account a video of himself discussing Bondi and noting that, "The righteous 39 ain't hiding, in fact we're hoping it makes it to trial so we can humiliate your prosecution on these bullshit charges."[15] Kelly regularly attends press conference rallies, and discusses this case, along with other cases tangentially related to this prosecution on his social media.

In short, Kelly and many of his co-defendants have generated the bulk of the pre-indictment and pre-trial publicity in this case, not the Government. Moreover, the Government's initial public statements were legitimate efforts to assure the public and to deter similar crimes.

---

13 https://www.gofundme.com/f/support-minnesota-activists
14 https://www.instagram.com/p/DUuZyapjfPI/
15 https://www.instagram.com/p/DW4h6-Aj2yd/

## ARGUMENT

### I. The Government Did Not Violate The Sealing Order

The Government did not violate the Court's sealing order by publicizing defendant's Kelly's name and photograph while the charging document was still under. As noted above (*supra* at 4, n.2), the language of the USAO's standard form sealing order should be revised given the apparent lack of agreement about what it means. The Government, however, has a very clear, reasonable, and well-founded understanding of what the sealing order means ***and what it does not mean***. Nothing about the public disclosure of Kelly's arrest by high-ranking Government officials violated the Court's sealing order, as understood by the Government's counsel of record.

#### A. An Order Cannot Be Violated Unless It Is Clear and Unambiguous

In order to establish that the Government violated the sealing order, defendant Kelly must show by "clear and convincing evidence" that the Government violated an unambiguous order "that left no reasonable doubt as to what behavior was to be expected." *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16-17 (1st. Cir. 1991); *International Longshoremen's Association, Local 1291 v. Philadelphia Marine Trade Association*, 389 U.S. 64, 76 (1967) ("a federal court [must] frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid.").

This is because "civil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous." *Kemp*, 947 F.2d at 17. "In determining specificity, the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden." *Drywall Tapers & Pointers of Greater New York, Loc. 1974 v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989).

Related to that principle is that any ambiguities or omissions in such a court order must be read in a light favorable to the person charged with contempt. *See NBA Props., Inc. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990); *see also C.H. Robinson Co. v. Medco, Inc.*¸406 F.3d 1066, 1071 (8th Cir. 2005) (contempt only available for violating an order sufficiently specific to be enforceable); *Imageware, Inc. v. U.S.W. Commun.*, 219 F.3d 793, 797 (8th Cir. 2000) (finding of contempt requires the court order in question to be clear and unambiguous).

### B. <u>The Sealing Order Did Not Obligate the Government to Do Anything, and Defendant's Contrary Interpretation of the Order is Unreasonable</u>

In an early order in this case, the Court admonished the Government because, in response to Armstrong's motion for return of her cellphone, the Government provided a *very* general summary of the facts that established probable cause in support of the search warrant on her phone. We did that to

explain why we had a legitimate reason for retaining and searching it. Nonetheless, the Court said that was improper because the referenced search warrant affidavit was still filed under seal with the Court.[16] In a few later filings, the Government apologized for any misunderstanding, but it also made clear that it's understanding of sealing orders did, in fact, differ from the Court's view.

For the same reasons, the Government disagrees with the defendants' construction of the sealing order regarding the complaint, and we submit that the Government's understanding of the force and effect of the sealing order — indeed, all sealing orders — is correct and reasonable. *First*, to be clear, the Government's counsel of record in this case do not control the social media posts of the White House or of any leaders or press offices within the Departments of Justice and Homeland Security. What the press officers and leadership knew of the sealing order is unclear, but it is also very much irrelevant because none of the posts about defendant Kelly's arrest violated the terms of the sealing order.

*Second*, sealing orders are not gag orders or non-disclosure orders. They are entirely different things. In this instance, the Court's sealing order

16 To be clear, however, that order was issued *after* the social media posts challenged in the pending motion regarding Kelly's arrest.

regarding the complaint against Kelly was not a gag order that obligated the Government to avoid all public statements about the course of its ongoing investigation and the fact that it had filed a criminal complaint against Kelly. Specifically, it clearly did not require the Government to refrain from public announcements of any defendant's arrest until he Court unsealed its records.

*Third*, in the Government's view, the entire point of a sealing order is to direct the *Court Clerk* on how to file and maintain a document that is submitted to the Court. *In short, it relates to the maintenance of Court records, nothing else*. A sealing order tells the *Court Clerk* that a given document or set of documents must be *filed and maintained by the Clerk* under seal so that the documents are not freely accessible to the public, in contrast to most documents, which are subject to First Amendment public-access rights. *See In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988) (discussing restricting public access to documents when necessitated by a compelling Government interest). When the time comes for a document to be "unsealed," it is again the *Court Clerk* that is responsible for doing that. On that big occasion, the Government does nothing to unseal anything.

So understood, a standard sealing order, such as the one at issue here, is not directed to, and does not require anything of any litigant (here, the Government) that submits a document to the Court for filing under seal.

Thus, a standard sealing order regarding a *Government-filed document* (no less) should not be construed as limiting the Government's ability to disclose the document to defense counsel *or* to make discreet references to such documents in a separate public filing necessary to address a given issue. (For example, although PSRs must be filed under seal per L.R. 49.1, defendants and the Government regularly cite to the contents of a PSR in public sentencing briefs when addressing a disputed sentencing issue. That's typically considered appropriate — at least in other districts — because the public has a First Amendment right to know, at least generally, what facts are being considered by the Court when formulating a sentence.)

*Fourth*, the text of the subject sealing order supports the Government's view and, at a minimum, is not inconsistent with it. For example, although the order is not directed *expressly* at the Clerk (as it should have been), the order says that the things to "**be sealed**" are the "***[d]ocuments filed in the above-captioned matter***, including the Complaint, Arrest Warrant," etc. (*See* Ex. 1.) Because the Clerk is responsible for the filing and maintenance of all documents "filed" with the Court, the order that the documents "be sealed" is obviously directed to the Clerk. That understanding is also consistent with the Local Rules. *See* L.R. 49.1(d)(4) ("an order granting a motion to seal must ***direct the Clerk***" to do certain things). Moreover, defendant Kelly cannot point to anything in the Court's sealing order that

explicitly prohibits disclosure of any defendant's name or his/her photograph because the order contains no such provision.

*Fifth*, for all of these reasons, the Government submits that the challenged social media posts announcing defendant Kelly's arrest did not violate the subject sealing order. And that's not a close call. Any suggestion that they did is not a fair or reasonable interpretation of the sealing order and its general force and effect. In light of the Government's reasonable and good faith understanding of the sealing order, the order "must be read in a light favorable" to the Government. *Kemp*, 947 F.2d at 16.

The Government is aware of *United States v. Flores*, 26-MJ-57-PAM-DFJ, in which Judge Foster determined that Bondi's pre-initial appearance X posts of the defendant violated the Court's order sealing the case. (Dkt. No. 19 at 4, n.6) *See Flores*, 26-MJ-57-PAM-DJF (Order, Dkt. 19 at 4, n.6; Dkt. 26 at 2). Although this case involves similar facts, it is the Government's understanding that the Government was not afforded an opportunity to properly brief the issue in *Flores*, and the issue of whether the sealing order had been violated was not an issue that had been fully presented to the Court. Similarly, the Government is also aware of *United States v. Ahmed*, No. 26-MJ-24 (JRT/ECW), 2026 WL 1724159 (D. Minn. June 12, 2026), in which Judge Tunheim, under similar circumstances related to General Bondi's X posts, found that the Government had violated the Court's sealing

order. For the reasons set forth herein, the Government respectfully disagrees with the Court's findings in both *Flores* and *Ahmed*.

Court orders must be construed according to their "plain meaning." *Minch Fam. LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 967 (8th Cir. 2010). In this case, as explained above, the sealing order contains no language whatsoever that purports to prohibit the Government from disclosing the arrest of a defendant or publishing the defendant's arrest photo before the Court Clerk formally unseals the Court's records. Therefore, by the clear directive of the order, and according to its plain meaning, the Government did not violate the Court's sealing order by publicizing defendant's Kelly's name and photograph when it announced his arrest on the afternoon or evening of January 22, 2026.

For all of the foregoing reasons, defendant Kelly's argument that the "the Government's conduct — viewed in context — constituted noncompliance with the Court's order" is not true. (Dkt. 718 at 6.) Moreover, the social media posts did not prejudice any interest of defendant Kelly that the sealing order was designed to protect. As explained above (*supra* at 4-5), the Government asked the Court to file the complaint and other records under seal *to protect the Government's interests*, not to protect the privacy of the three charged defendants. By ensuring the complaint would not be publicly accessible like most court records, the Government intended to ensure the

safety of officers effectuating the arrest warrants, prevent the destruction of evidence or corrupt influence of witnesses. The Government was *not* trying to protect the defendants' identity or privacy. Any such effort would have been foolish, of course, since each defendant's identity, arrest, and charges are all publicly disclosed during their initial appearance.

Reading the sealing order as defendants propose would be to "construe an order as going beyond the motion in pursuance of which the order was made," and a "court is presumed not to intend to grant relief which was not demanded." *McKenzie Cnty., ND v. United States*, 131 F.4th 877, 890 (8th Cir. 2025).

Accordingly, the Government did not violate the Court's sealing order, and defendants' motion for an OSC re. contempt is groundless and must be denied.

## II. <u>**There Is No Basis for the Court to Consider Any Contempt Finding or Other Sanctions**</u>

For all of the foregoing reasons, defendant Kelly's request for civil contempt sanctions must be denied. Assuming that certain actions by Government officials violated the Court's sealing order — and they did not — the Court cannot *properly* hold a party in civil contempt for conduct that does not actually violate a clear and unambiguous court order. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) ("[C]ivil

contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience...").

A district court may punish contempt in three ways: (1) when a person misbehaves in such a way as to obstruct the administration of justice; (2) when an officer of the court misbehaves while performing their official duties; and (3) when a person violates a lawful court order. *See* 18 U.S.C. § 401; *ecoNugenics, Inc. v. Bioenergy Life Sci.*, Inc., 381 F. Supp. 3d 1082, 1088 (D. Minn. 2019). Defendant Kelly's motion is based on the last circumstance — an alleged violation of a court order. (*See* Dkt 718.)

The Supreme Court has made clear that civil contempt "is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (U.S. 1949). As such, "[t]here are two kinds of civil contempt penalties a court can impose." *Sisney v. Kaemingk,* 15 F.4th 1181, 1200 (8th Cir. 2021) (citing *Klett v. Pim*, 956 F.2d 587, 590 (8th Cir. 1992)). In this case, neither is appropriate. "The first is a coercive penalty… designed to force the offending party to comply with the court's order." *Id.* However, because the subject sealing order is no longer in effect (*see* Dkt. 26), the court cannot *properly* "impose a coercive civil contempt sanction if [(as here)] the underlying [order] is no longer in effect." *Id.*

The second kind of civil contempt penalty is compensation to the movant for damages incurred "as a result of the offending party's contempt." *Id.* at 1200. This rationale, however, does not support defendant Kelly's request for the Court to fine the "Government for failure to remove [the social media posts] immediately." (Dkt. 718 at 8.) As explained above, the Government's challenged social media posts did not violate the sealing order, and that should be the end of discussion regarding any contempt issues.

Moreover, "[a]bsent an express waiver of sovereign immunity, money awards cannot be imposed against the United States." *McBride v. Coleman*, 955 F.2d 571, 576 (8th Cir. 1992). The Eighth Circuit has held that the federal Government has not waived sovereign immunity under the federal contempt statute, 18 U.S.C. § 401. *See Coleman v. Espy*, 986 F.2d 1184, 1190 (8th Cir. 1993) ("[F]or purposes of determining whether these actions may proceed, we must determine whether there has been an explicit, unequivocal waiver of sovereign immunity to proceed for an action alleging compensatory civil contempt of such a judge-made order. We find no such waiver."); *see McBride* 955 F.2d at 576 (holding same). Therefore, no compensatory civil contempt fine is permitted here.

Lastly, defendant Kelly's remaining requests that the Court "enforce the seal order in a manner that preserves its practical effect" (Dkt. 718 at 7) by "forcing the Government to take down its social media posts" (*Id.*) must

also be denied. *First*, as explained above, the sealing order's "practical effect" was to protect the *Government's* investigation and related interests, *not* defendant Kelly's identity, privacy, or reputational interests. In short, once defendant Kelly and the other two first-charged defendants (Armstrong and Allen) were arrested, the order's intent and practical effect had already been served. *See, e.g., United States v. Fry*, 2019 WL 856863, *2 (N.D. Cal. Feb. 23, 2019) ("A violation of the sealing order…does not obviously have consequences for [defendant] because the sealing order was to protect *the Government's* investigation temporarily until the initial appearance. There is no prejudice to [defendant] from disclosure of court documents that are now public record.") (emphasis added).

*Second*, an order "forcing" the Government to take down its social media posts does not make sense considering defendant's own acknowledgement of the "permanency of information shared on social media." (Dkt. 718 at 12.) *See United States v. Doyle*, 2026 WL 1329182, *5 (D. Minn. May 13, 2026) (highlighting defendant's failure to address the fact that if General Bondi's posts were reposted by others, ordering her to delete her original posts would not resolve the problem of potential prejudice that the defendant claimed existed).

*Finally*, defendant Kelly has cited no authority providing the Court with the power to grant that type of injunctive relief under its civil contempt

power. There are also good legal reasons to question whether the Court has any such power. The arrest of defendant Kelly was a public act by Government actors as part of an effort to enforce federal law. That's not something that any court can sweep under the rug. The public has a First Amendment right to know such things are being in their name.

## III. Defendant Kelly Fails to Establish Need for the Court's Inherent Power to Sanction

Sealing order aside, defendant Kelly requests that the Court use its inherent authority to sanction the Government for "misconduct that abuses the judicial process." (Dkt. 718 at 8-10.) In essence, defendant Kelly proposes that sanctions are appropriate due to what he perceives as unfair pretrial publicity. This request must also be denied.

Courts have the inherent power to police those appearing before them. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). A court's inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (citing *Link v. Wabash R. Co.,* 370 U.S. 626, 630-631 (1962)). This power "must be exercised with restraint and discretion" and used "to fashion an appropriate sanction for conduct which abuses the judicial process." *Id* at 44-45.

A court may exercise this power to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 557 (2014). Again, however, the Government did not violate the subject sealing order, and there is no reason for the Court to invoke its inherent powers to punish the Government. *See, e.g., United States v. Pope*, 2025 WL 2105571, *2 (D.D.C. July 28, 2025) (citing *Chambers* 501 U.S. 32 at 43). In other words, the Court "must find some connection between the sanctioned conduct and a process of the court in the litigation before it." *Id*. at *2.

Here, defendant Kelly has failed to demonstrate how the conduct in question has interfered with the "orderly and expeditious disposition" of this case, or how the conduct has "abused the judicial process" so as to warrant the Court's inherent sanctions authority. Indeed, defendant Kelly has failed to show how the conduct in question has tainted his future trial at all, or the integrity of further proceedings. *Cf. Harlan v. Lewis*, 982 F.2d 1255, 1261(8th Cir. 1993) (upholding district court's use of inherent authority sanctions where the court found that the offending conduct "tainted the trial of the cause and threatened the integrity of further proceedings."). Kelly's claim that the Government's conduct "was foreseeably harmful to the fairness and dignity of the proceedings" (Dkt. 718 at 9) is untrue.

Kelly has failed to articulate how any of the challenged social media posts made by Government officials are "sufficiently corrupting" that the court must presume "unfairness of constitutional magnitude." *United States v. Nelson*, 347 F.3d 701,707-708 (8th Cir. 2003)). Indeed, he has not challenged the accuracy of the social media posts, which accurately reported the fact of his arrest and the pending charges. "It is not asking too much that the burden of showing essential unfairness be sustained by [he] who claims such injustice… and that it be sustained not as a matter of speculation but as a demonstrable reality." *Beck v. Washington*, 369 U.S. 541, 558 (1962) *see also Doyle*, 2026 WL 1329182, at *5 (finding that defendant failed to meet his burden under *Beck* to demonstrate the "reality" that General Bondi's publications of two X posts would cause essential unfairness at trial in violation of his Sixth Amendment rights).

Because the "imposition of sanctions is a serious matter and should be approached with circumspection," this Court should not accept mere speculation of a "lack of fairness and dignity" as sufficient to impose sanctions. *See Vandanacker v. Main Motor Sales Co.*, 109 F. Supp. 2d 1045, 1047 (D. Minn. 2000). Defendant Kelly has failed to establish a "demonstrable reality" that he has suffered any prejudice at all. Indeed, defendant's motion fails to even use the word prejudice at all and admits that witnesses were only "*potentially* intimidated." (Dkt.718 at 8) (emphasis

added). Moreover, in light of Defendant's own self-generated publicity regarding this case, this Court has a greater reason to assess Defendant's motion with "restraint and discretion." *Harlan*, 982 F.2d at 1262 ("A court must exercise its inherent powers with restraint and discretion...").

Defendant Kelly's reliance on *Fredin v. Middlecamp*, 2020 WL 6867424 (D. Minn. Nov. 23, 2020), and *United States v. Bowen*, 799 F.3d 336 (5th Cir. 2015), is unpersuasive and unavailing. In *Fredin*, the Court found that plaintiff's conduct was a sanctionable abuse of the judicial process because plaintiff generated *over twenty* websites disparaging attorneys, judges, jurors, and court personnel involved in the lawsuit. 2020 WL 6867424, *2. These websites contained photographs of victims, along with "conclusory, baseless accusations that the victims engaged in racism, torture and terrorism." *Id*. Moreover, the plaintiff explicitly admitted to using these websites and videos to pressure defendants into favorable settlement terms. *Id*. Even after defendants moved for a temporary restraining order, the plaintiff "doubled down" on his "vigilante campaign." *Id*. The facts of this case do not even bear a family resemblance to those in *Fredin*, and its holding is irrelevant.

Defendant Kelly's reliance on *Bowen* suffers from the same ailment. *Bowen* dealt with "thousands" of anonymous comments made by three supervisory-level prosecutors that "spanned the entire prosecution, and went directly to the guilt of the defendants, the collective guilt of the NOPD, and

relative competence and integrity of defense counsel versus the USAO." 799 F.3d 336, 350 (5th Cir. 2015). Moreover, *Bowen* concerned repeated misrepresentation of facts before the District Court ultimately leading to a finding by the district court that "the Government's pervasive misconduct so contaminated every phase of the prosecution that this case [was] unique "in nature [and] in scope…"' *Id.* at 352.

In this case, the same cannot be said of the Government's challenged social media posts. Contrary to Defendant's assertions, the Government has not commented on Defendant's "guilt." (Dkt. 718 at 8.) Indeed, only *three* of the 11 cited social media 'posts' even mention defendant Kelly at all.[17] Of the ones that directly mention him, only the fact that he was arrested or charged is mentioned.[18] As to the posts that do not directly mention him, nothing in those posts or interviews speak to defendant Kelly's guilt; rather, they are

---

[17] The subject Government posts do not even mention Kelly. *See* https://x.com/AGPamBondi/status/2013093526867689835. Dkt. 718 at Footnote 2; https://x.com/AAGDhillon/status/2013003168179724426. *Id* at Footnote 3; https://x.com/AAGDhillon/status/2013263800783303161. *Id* at Footnote 4; https://truthsocial.com/@realDonaldTrump/posts/115926042315145030. *Id* at Footnote 5; https://x.com/WhiteHouse/status/2014358141933121912 . *Id* at Footnote 6; https://www.youtube.com/watch?v=pcztJ4EirAw. *Id* at Footnote 9.

[18] https://x.com/AGPamBondi/status/2014399597335269553. (Dkt. 718 at Footnote 6); https://x.com/EnvoyNoem/status/2014410433281622347?lang=en. *Id;* https://x.com/WhiteHouse/status/2014408947692716332?lang=en. *Id*.

impressions of his actions pursuant to publicly available information posted by co-defendant Lemon and others, including Kelly himself.[19]

"Government officials are presumed to act in good faith when exercising their authority..." *United States v. Concord Mgmt. & Consulting LLC*, 2019 WL 7758635, *9 (D.D.C. July 1, 2019). Indeed, it should come as no surprise that the Government believes that Defendant's actions constituted a crime, and the grand jury has concurred with that assessment. (*See* Dkt. 144.) Moreover, because the subjects of this motion hold "public policy" positions, "there is ample reason for the Court to proceed with caution…. [so as] not [to] unduly encroach upon [executive officials] legitimate political functions." *See United States v. Koubriti*, 305 F. Supp. 2d 723, 755-756 (E.D. Mich. 2003). We made this point in a recent brief. A republican form of government requires that public officials be able to communicate with the public, and the courts (respectfully) have no *proper, lawful* authority to police or interfere with those communications.

Ordering the Government "to remove content related to this case from official websites and social media channels… is a drastic remedy…[that] could raise various constitutional issues, public access, and record-keeping issues," *United States v. Nunez*, 2026 WL 1192411, *2 (S.D.N.Y. Apr. 30,

---

[19] https://www.youtube.com/watch?v=v4ctuhv-cck;

2026), particularly in light of the fact that Defendant Kelly has failed to show any *actual* prejudice or falsity in the challenged postings. *See United States v. Burke*, 700 F.2d 70, 82 (2d Cir.1983) ("[A] criminal conviction appealed on grounds of adverse preindictment publicity will not be overturned unless the moving party can bear the heavy burden of demonstrating that he has suffered actual prejudice as a result of the publicity."). If Kelly is truly concerned about prejudicial publicity,[20] the Court should "explore whether other available remedies would effectively mitigate the [alleged] prejudicial publicity," rather than casually wield its inherent authority. *See Application of Dow Jones & Co., Inc.,* 842 F.2d 603, 611 (2d Cir. 1988) (discussing that before entering an injunction against speech the district court properly recognized that the Court had to explore whether other available remedies would effectively mitigate prejudicial publicity). Such measures include "change of venue, postponing trial, a searching voir dire, emphatic jury instructions, change in division, or jury questionnaires. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1031-1032 (1991).

Lastly, defendant's reliance on 28 C.F.R. § 50.2 and Department of Justice Manual §1-7.500 is equally unavailing. Failure to adhere to § 50.2 or similar policies does not necessarily result in unfair prejudice to a criminal

[20] He's not.

defendant. *See, e.g., United States v. Civella*, 648 F.2d 1167, 1174 (8th Cir. 1981). Moreover, both federal policies provide an exemption for information and photographs when a law enforcement function is served. A proper law enforcement function was served here by General Bondi's posting of defendant Kelly's arrest photo and announcement of his arrest. That posting, and similar social media posts and statements from the White House and other leaders in the Departments of Justice and Homeland Security, served the ***legitimate purposes of advising the public*** that the administration was taking prompt steps to enforce the law and protect public safety, ***assuring the public*** it would be safe to go back to church, and to ***convey a strong deterrent message*** to thwart copycat offenses against Cities Church or other houses of worship. *See, e.g., United States v. Koubriti,* 305 F. Supp. 2d 723, 748-749 (E.D. Mich. 2003) (in discussing whether Attorney General Ashcroft should be held in criminal contempt, the Court found that "[v]iewed as a whole, the Attorney General's press briefing, coming shortly after September 11, served the important and wholly legitimate purpose of keeping the American Public informed about the latest developments in the war on terror").[21]

---

[21] https://www.youtube.com/watch?v=4i5xhWd2o2w

Again, the Government is aware that other cases in this district have found that General Bondi's X posts did not serve a legitimate law enforcement purpose. *See, e.g., United States v. Ahmed*, 2026 WL 1724159 (D. Minn. June 12, 2026). Those cases, however, are factually distinguishable from this case. Those cases concerned violations of 18 U.S.C. §111, assault on federal officers. Although serious offenses that hamper the Government's ability to enforce federal law, the alleged criminal conduct on its own did not generate the same public concern and publicity as this case. Considering the reprehensible attack on the Annunciation Catholic Church in Minneapolis on August 27, 2025, the public had a substantial interest in being informed about this new attack on a house of worship and what the administration was doing to keep communities safe. These compelling interests override defendant Kelly's specious assertion of a "right to privacy."

## IV. Defendant's Motions for Related Discovery, a Protective Order, and an Evidentiary Hearing Are Meritless

For all of the foregoing reasons, the Government objects to defendants' motions for related discovery, a protective order, and an evidentiary hearing. There is simply nothing to defendant's motion, and each of these motions should be denied. The Government did not violate the sealing order under any reasonable construction thereof, and the challenged social media posts were accurate and made for legitimate public purposes.

**A. <u>Discovery Request</u>**

Pursuant to Fed. R. Crim. P. 16, defendant Kelly requests the identities of any law enforcement and Government personnel who "participated, took, or appeared in the staged photograph of Mr. Kelly after his self-surrender." (Dkt. 718 at 12.) Defendant Kelly further requests "[d]isclosure of any communications by any officials at the Department of Justice, DHS, or the White House regarding the publication of Mr. Kelly's photograph by Attorney General Pam Bondi's X account or Secretary of Homeland Security Kristi Noem's X account, or the White House's X account, or the timing of Mr. Kelly's charging and **self-surrender**." *Id.*

To begin, Kelly's claim that he self-surrendered is untrue. Defendant Kelly was arrested pursuant to a lawfully issued arrest warrant. Therefore, there is no evidence connected to, or relevant to his "self-surrender," and "the Government cannot be ordered to produce evidence that does not exist…" *United States v. Graham*, 2008 WL 11450763, *3 (D.S.D. June 20, 2008).

Beyond that, discovery regarding the identities of the agent(s) who took the photo and communications among leadership offices relating to *his arrest* or the timing of charges is beyond the scope of discovery authorized by Rule 16 or any other rule. To the extent Kelly thinks that information may be relevant to his claims of selective and vindictive prosecution, this motion should be denied as clearly improper. *See United States v. Armstrong*, 517

U.S. 456, 463 (1996) (holding that Rule 16(a)(1)(C), the predecessor to Rule (a)(1)(E), "authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, *but not* to the preparation of selective prosecution claims") (emphasis added). The binding Supreme Court authority in *Armstrong* — glaringly absent from defendant Kelly's motion — rejected the respondent's arguments that "documents 'within the possession…of the Government' that discuss the Government's prosecution strategy for cocaine cases are 'material' to respondents' selective-prosecution claim," and similarly rejected the respondent's proposition that "the Rule applies because any claim that "results in non-conviction" if successful is a "defense" for the Rule's purposes, and a selective prosecution claim has that effect." *Id.* The holding in *Armstrong* logically applies to a vindictive prosecution claims as well.

Additionally, as the Government has explained in its opposition to Defendants' Joint Motion to Dismiss for Selective or Vindictive Prosecution (Dkt.674), Defendants have failed to make a prima facie case of either selective prosecution or vindictive prosecution — and, as such, are not entitled to discovery on those claims. *See* Gov't Opp. to Defendants' Joint Motion to Dismiss for Selective or Vindictive Prosecution (docket number not yet designated).

As to discovery pursuant to Rule 16 related to the Government's *case in chief*, this request should also be denied as the requested items are not material and are also protected from disclosure under Rule 16. Rule 16 (a)(1)(E) allows for disclosure of "documents" or "objects" "if the item is material to preparing the defense." A "showing of materiality [] is not satisfied by a mere conclusory allegation that the requested information is material to the preparation of the defense." *United States v. Krauth*, 769 F.2d 473, 476 (8th Cir. 1985) (cleaned up). Here, Kelly has failed to articulate how the identities of law enforcement and Government personnel involved with his arrest are material to preparing his defense *of the charged conduct*.

The same lack of materiality exists as to "communications by any officials at the [DOJ], DHS, or the White House regarding the publication of" defendant's photograph by Government Officials. (Dkt. 718 at 13.) Any such communications are irrelevant to the preparation of a defense against the Government's case in chief. Indeed, the kerfuffle about the photo would not even be admissible at trial under Rules 402 and 403. Moreover, any such communications would be protected from discovery under Rule 16(a)(2). *See Krauth*, 769 F.2d at 476 ("Fed. R. Crim. P. 16(a)(2) authorizes the Government to refuse discovery of reports, memoranda, or other Government documents made by the attorney for the Government or other Government

agents in connection with the investigation or prosecution of the case prior to trial."). Additionally, Rule 16 "does not allow the discovery of statements other than those of the defendant." *United States v. Mayberry*, 896 F.2d 1117, 1122 (8th Cir. 1990).

Finally, if the discovery request is aimed at demonstrating that the social media posts and arrest photos created unfair pretrial publicity, then Kelly's request is misplaced. It is not the source of alleged prejudice that is relevant, but rather "the prejudicial effect" of the publicity. *Civella*, 648 F.2d at 1174. Thus, Kelly's discovery request is irrelevant because it is seeking information regarding the "source" of the pretrial publicity, rather than its effect.

### B. <u>There is No Justification for a Protective Order</u>

Under Federal Rule of Criminal Procedure 16(d)(1), "the court may, for good cause, deny, restrict, defer discovery, or grant other appropriate relief" to protect a party or nonparty from disclosure of sensitive information. *See* Fed. R. Crim. P. 16(d)(1). "The rule vests broad discretion in the trial court to issue protective orders to safeguard confidential materials, prevent undue burden, and preserve the integrity of ongoing investigations." *United States v. Richmond*, 2026 WL 381746, *2 (D.S.D. Feb. 11, 2026) (citing *United States v. Ladeaux*, 61 F.4th 582 (8th Cir. 2023)).

Here, Kelly makes no showing of "good cause" for a protective order. First, Kelly cites to no authority supporting that request. Second, the relief sought would be of no practical effect to his claim of prejudice if, as he claims, defendant Kelly's "[photo has been shared] to millions of X users, which has been reposted and displayed to additional millions via news broadcasts." (Dkt. 718 at 12.) Third, Kelly has failed to show that an order barring Government officials from sharing the widely-distributed photograph amongst themselves would address a "clearly defined and serious injury," much less any *actual* privacy concerns. Fourth, Defendant's proposed protective order ignores one central fact: he damaged his own reputation and disclosed his involvement by engaging in disgraceful conduct at Cities Church and then freely posting video of it to proudly declare his role in the crime. Accordingly, Kelly's request for the proposed protective order is facially absurd.

### C. **An Evidentiary Hearing is Unwarranted**

For all of the foregoing reasons, Kelly's request for an evidentiary hearing on this motion should also be denied. There is no basis for an evidentiary hearing to explore the non-existent violation of the sealing order. (Dkt. 718 at 13.)

## CONCLUSION

For all the foregoing reasons, Defendant's subject motion should be denied in its entirety.[22]

DATED: October 15, 2026.

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE S. HEDLEY
Acting Senior Litigation Counsel

*/s/John R. Arboleda*
JOHN R. ARBOLEDA
Acting Trial Attorney (No. 1050716FL)
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: 202-304-8928
E-Mail: john.arboleda@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

[22] This brief contains 7,590 words, except for the caption and signature block.